# EXHIBIT A

PLD-C-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Lia C Javier<br>805 Freldstone St.<br>Brentwood, Ca 94513 | RECEIVED<br>JAN 0 3 2020<br>LEGAL DEPARTMENT |
| TELEPHONE NO: 510-701-771   FAX NO. *(Optional)*: | F I L E D<br>NOV 19 2019<br>K. BREER CLERK OF THE COURT<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF CONTRA COSTA<br>By_____ B. Gonzalez, Deputy Clerk |
| E-MAIL ADDRESS *(Optional)*: | |
| ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS: 725 Court St

MAILING ADDRESS:

CITY AND ZIP CODE: Martinez Ca 94553

BRANCH NAME:

PLAINTIFF: Lia C Javier

DEFENDANT: Kaiser Permanente Retirement

☐ DOES 1 TO _____

**SUMMONS ISSUED**

**CONTRACT**

☒ COMPLAINT   ☐ AMENDED COMPLAINT *(Number)*:

☐ CROSS-COMPLAINT   ☐ AMENDED CROSS-COMPLAINT *(Number)*:

PER LOCAL RULE, THIS CASE IS ASSIGNED TO DEPT. 2 FOR ALL PURPOSES.

| Jurisdiction *(check all that apply)*: | CASE NUMBER: |
|---|---|
| ☐ ACTION IS A LIMITED CIVIL CASE<br>Amount demanded ☐ does not exceed $10,000<br>☐ exceeds $10,000 but does not exceed $25,000<br>☒ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br>☐ ACTION IS RECLASSIFIED by this amended complaint or cross-complaint<br>☐ from limited to unlimited<br>☐ from unlimited to limited | C19-02437 |

1. **Plaintiff*** *(name or names)*: Lia C Javier

   alleges causes of action against defendant* *(name or names)*: Kaiser Permanente Retirement

2. This pleading, including attachments and exhibits, consists of the following number of pages:

3. a. Each plaintiff named above is a competent adult —
      ☒ except plaintiff *(name)*: Lia C Javier
         (1) ☐ a corporation qualified to do business in California
         (2) ☐ an unincorporated entity *(describe)*:
         (3) ☐ other *(specify)*:

   b. ☐ Plaintiff *(name)*:
      a. ☐ has complied with the fictitious business name laws and is doing business under the fictitious name *(specify)*:

      b. ☐ has complied with all licensing requirements as a licensed *(specify)*:
   c. ☒ Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.

4. a. Each defendant named above is a natural person
      ☐ except defendant *(name)*:                    ☐ except defendant *(name)*:
         (1) ☐ a business organization, form unknown        (1) ☐ a business organization, form unknown
         (2) ☐ a corporation                                (2) ☐ a corporation
         (3) ☐ an unincorporated entity *(describe)*:       (3) ☐ an unincorporated entity *(describe)*:

         (4) ☐ a public entity *(describe)*:                (4) ☐ a public entity *(describe)*:

         (5) ☐ other *(specify)*:                           (5) ☐ other *(specify)*:

* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

Page 1 of 2

Form Approved for Optional Use<br>Judicial Council of California<br>PLD-C-001 [Rev. January 1, 2007]

**COMPLAINT—Contract**

Code of Civil Procedure, § 425.12

PLD-C-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Lia CJavier vs Kaiser Permanente Ret. | C19-02437 |

4.  *(Continued)*

    b. The true names of defendants sued as Does are unknown to plaintiff.

        (1) ☐ Doe defendants *(specify Doe numbers):* _____ were the agents or employees of the named defendants and acted within the scope of that agency or employment.

        (2) ☐ Doe defendants *(specify Doe numbers):* _____ are persons whose capacities are unknown to plaintiff.

    c. ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.

    d. ☒ Defendants who are joined under Code of Civil Procedure section 382 are *(names):* Kaiser Permanente Retirement

5. ☒ Plaintiff is required to comply with a claims statute, and

    a. ☒ has complied with applicable claims statutes, *or*

    b. ☐ is excused from complying because *(specify):*

6. ☐ This action is subject to ☐ Civil Code section 1812.10 ☐ Civil Code section 2984.4.

7. This court is the proper court because

    a. ☐ a defendant entered into the contract here.

    b. ☐ a defendant lived here when the contract was entered into.

    c. ☐ a defendant lives here now.

    d. ☐ the contract was to be performed here.

    e. ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.

    f. ☐ real property that is the subject of this action is located here.

    g. ☐ other *(specify):*

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

    ☒ Breach of Contract

    ☐ Common Counts

    ☐ Other *(specify):*

9. ☐ Other allegations:

10. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

    a. ☐ damages of: $ Retirement re-instated

    b. ☐ interest on the damages

        (1) ☒ according to proof

        (2) ☐ at the rate of *(specify):* _____ percent per year from *(date):*

    c. ☐ attorney's fees

        (1) ☐ of: $

        (2) ☐ according to proof.

    d. ☐ other *(specify):*

11. ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: 11/03/19

Lia CJavier
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001(1)

| SHORT TITLE: Lia C Javier VS Kaiser Permanente Retirement | CASE NUMBER: C19-02437 |

## CAUSE OF ACTION—Breach of Contract

_____ (number)

ATTACHMENT TO ☒ Complaint ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1.  Plaintiff *(name):* Lia C Javier

alleges that on or about *(date):*

a ☒ written ☐ oral ☐ other *(specify):*

agreement was made between *(name parties to agreement):*

☒ A copy of the agreement is attached as Exhibit A, or
☒ The essential terms of the agreement ☐ are stated in Attachment BC-1 ☒ are as follows *(specify):*

Proof of Disability
Proof of uncashed Check
Proof of denial letter from Kaiser Permanente / Kaiser has audio of conversations explaining I was mentally disabled.

BC-2.  On or about *(dates):*
defendant breached the agreement by ☐ the acts specified in Attachment BC-2 ☐ the following acts
*(specify):* Lia C Javier is Mentally Disabled, Kaiser gave her access to her Retirement fund, but not under the disabled contract that Kaiser has. There are recorded calls of Kaiser's contracted company know that she was Mentally Disabled

BC-3.  Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4.  Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
☐ as stated in Attachment BC-4 ☒ as follows *(specify):* taxes, loss of Retirement, and disabled help from Retirement Plan.

BC-5.  ☐ Plaintiff is entitled to attorney fees by an agreement or a statute
☐ of $
☐ according to proof.

BC-6.  ☒ Other: Wants to be re-instated in Retirement Through Kaiser Permanente

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]

**CAUSE OF ACTION—Breach of Contract**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

PLD-C-001(2)

| SHORT TITLE: Liz C Javier vs. Kaiser Permanente Retirement | CASE NUMBER: C19-02437 |

_____ **CAUSE OF ACTION—Common Counts**
(number)

ATTACHMENT TO ☒ Complaint   ☐ Cross - Complaint
*(Use a separate cause of action form for each cause of action.)*

CC-1. Plaintiff *(name):* Liz C Javier

alleges that defendant *(name):*

became indebted to   ☐ plaintiff   ☐ other *(name):*

a.  ☐   within the last four years
    (1) ☐   on an open book account for money due.
    (2) ☐   because an account was stated in writing by and between plaintiff and defendant in which it
             was agreed that defendant was indebted to plaintiff.

b.  ☒   within the last ☒ two years   ☐ four years
    (1) ☒   for money had and received by defendant for the use and benefit of plaintiff.
    (2) ☒   for work, labor, services and materials rendered at the special instance and request of defendant
             and for which defendant promised to pay plaintiff.
             ☐   the sum of $ 29,263.94   ( Plantiff has not cashed the check )
             ☐   the reasonable value.
    (3) ☐   for goods, wares, and merchandise sold and delivered to defendant and for which defendant
             promised to pay plaintiff
             ☐   the sum of $
             ☐   the reasonable value.
    (4) ☐   for money lent by plaintiff to defendant at defendant's request.
    (5) ☐   for money paid, laid out, and expended to or for defendant at defendant's special instance and
             request.
    (6) ☐   other *(specify):*

CC-2. $ over $100,000 + continuing toward retirement years.
       , which is the reasonable value, is due and unpaid despite plaintiff's demand,
plus prejudgment interest   ☒ according to proof   ☐ at the rate of _____ percent per year
from *(date):*

CC-3. ☐   Plaintiff is entitled to attorney fees by an agreement or a statute
          ☐   of $
          ☐   according to proof.

CC-4. ☐   Other:

Page _____

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(2) [Rev. January 1, 2009]

**CAUSE OF ACTION—Common Counts**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
Suite 200 N
1301 Clay Street
Oakland, CA 94612-9837

Date: August 27, 2013

Lia Crasona Javier
805 Fieldstone Ct
Brentwood, CA 94513

## Notice of Senior Attorney Adjudicator Decision – Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision on your application(s) for a period of disability, disability insurance benefits, and Supplemental Security Income. I found that your disability began on January 1, 2013. I explain the basis for my decision in the attached decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements for Supplemental Security Income payments. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

**If You Agree With My Decision**

If you agree with my decision, you will not have a hearing with an administrative law judge.

**If You Disagree With My Decision**

If you disagree with my decision, you may still have a hearing with an administrative law judge. If you still want to have a hearing, you or your representative must ask us to continue with your request for a hearing. You must make your request in writing. Mail your request to the address shown at the top of this notice. Please put the Social Security number shown above on any request you make. If you need help, you may go to any Social Security or hearing office.

If you ask for further review of a favorable decision, an administrative law judge will consider the entire case record including the decision. Further review may result in a new decision that is less favorable or unfavorable to you.

**Time Limit For Asking to Continue With A Hearing**

You must ask us to continue with your hearing request **within 60** days after you receive this notice. We assume you received this notice five days after the date of the notice unless you show you did not get it within five days. If your request to continue with your hearing is timely, you

Form HA-L10 (11-2011)

See Next Page

Lia Crasona Javier (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)                                      Page 2 of 2

will have a hearing. We will give you more time if you show that you had good cause, or a good reason, for missing the deadline.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.

If the Appeals Council does not review my decision on its own and you have not asked us to continue with your hearing request, my decision will become final. We will change a final decision only under special circumstances. You will not have the right to Federal court review.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866)331-2324. Its address is:

                          Social Security
                          2508 Verne Roberts Cir
                          Antioch, CA 94509-7916


                             Judith A. Dickman
                             Senior Attorney Adjudicator


Enclosures:
Decision Rationale


cc:    Johna Littlejohn
       1030 36th St
       Richmond, CA 94804

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| IN THE CASE OF | CLAIM FOR |
|---|---|

CLAIM FOR

Period of Disability, Disability Insurance
Benefits, and Supplemental Security Income

Lia Crasona Javier
(Claimant)

-1687

(Wage Earner)                                    (Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

This case is before me on a request for hearing dated July 5, 2013 (20 CFR 404.929 *et seq.* and
416.1429 *et seq.*). The evidence of record supports a fully favorable decision; therefore no
hearing has been held (20 CFR 404.948(a) and 416.1448(a)). The claimant is represented by
Johna Littlejohn, an attorney.

The claimant has amended the alleged onset date of disability to January 1, 2013.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of
the Social Security Act. Disability is defined as the inability to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment or combination
of impairments that can be expected to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an
additional issue whether the insured status requirements of sections 216(i) and 223 of the Social
Security Act are met. The claimant's earnings record shows that the claimant has acquired
sufficient quarters of coverage to remain insured through September 30, 2017. Thus, the
claimant must establish disability on or before that date in order to be entitled to a period of
disability and disability insurance benefits.

After careful review of the entire record, I find that the claimant has been disabled from January
1, 2013, through the date of this decision. I also find that the insured status requirements of the
Social Security Act were met as of the date disability is established.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has
established a five-step sequential evaluation process for determining whether an individual is

disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e); and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual

functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1.    The claimant's date last insured is September 30, 2017.**

**2.    The claimant has not engaged in substantial gainful activity since January 1, 2013, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

There is no evidence that the claimant has engaged in substantial gainful activity at any time since January 1, 2013 (see, Earnings Records, Dis. Rpt. & Wk. Hx. Rpt.). Therefore, a finding of disability is not precluded on the basis of work activity.

**3.    The claimant has the following severe impairment: a depressive disorder (20 CFR 404.1520(c) and 416.920(c)).**

The claimant has alleged disability on the basis of depression, anxiety and schizophrenia. Her symptoms include hearing voices, suicidal thoughts, tearfulness, fatigue and feeling stressed. She has also alleged number of disabling physical problems including hypertension, headaches, a heart problem, kidney problems, shortness of breath, neck and body pain, welts and swelling in her feet, a compromised immune system and poor vision at times, and has also reported that she is afraid that she will have a heart attack or stroke. The claimant reported that she often stays in bed, neglects her personal hygiene and self-grooming, cannot be around people for too long, may not eat for days at a time and generally has difficulty functioning on a day-to-day basis (see, Dis. Rpt., Dis. Rpt.-Appeal & Func. Rpt.). The claimant's daughter, Chelseay Javier, stated that the claimant spends her days watching TV and crying (see, 3rd Party Func. Rpt.).

As will be discussed below, the findings reported in the claimant's medical records indicate that the above impairment has more than a minimal effect on her ability to work. I therefore find that the claimant's mental impairment is "severe."

Although the claimant has also alleged disabling high blood pressure, no significant positive objective findings or complications associated with that condition have been reported in her treatment records which indicate that that condition is generally well-controlled (see, Tx. Notes fr. Kaiser Hospital, Brentwood Health Center & Contra Costa Regional Medical Center). There

is nothing in the claimant's medical records to suggest that her hypertension has more than a minimal effect on her ability to work and I find that it is "non-severe."

**4.    The severity of the claimant's impairments meet the criteria of section 12.04 and section 12.06 of the Listing of Impairments found at 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) and 416.925).**

Although the claimant has a long history of multiple somatic complaints, no significant positive objective findings have been reported on physical examinations or laboratory testing performed in connection with those complaints. Instead, the claimant's somatic complaints have repeatedly been linked to psychological symptoms.

Thus, when the claimant reported dizziness/disequilibrium on a visit to Kaiser Hospital in October 2008, her physician suspected that the problem was stress-related (10/30/08 Tx. Note). Thereafter, in April 2011, when the claimant presented to the emergency room at Contra Costa Regional Medical Center stating that she feared that she had irritation due to an STD, her emergency room physician noted that the claimant appeared extremely paranoid and concluded that her irritation was likely stress-related (4/2/11 Contra Costa Regional Medical Center ER Report). When the claimant returned to the emergency room in the following month reporting high blood pressure, she was diagnosed with a generalized anxiety disorder with panic attacks (5/2/11 ER Report).

Moreover, when the claimant reported blurry vision, lightheadedness, dizziness and poor sleep in July 2011 on a visit to Brentwood Health Center, her visual acuity was measured at 20/20 in both eyes and no physical source of her complaints was identified. The claimant was again diagnosed with anxiety and psychotropic medication was prescribed (7/21/11 Tx. Note). In the following month, on complaints of insomnia and fatigue, the claimant was diagnosed with depression and anxiety, and additional psychotropic medication was prescribed (8/5/11 Tx. Note).

When the claimant returned to Brentwood Health Center in May and June 2012 with various physical complaints, her blood pressure was found to be normal and physical examinations were unremarkable. The claimant's health concerns were again linked to anxiety at that time (5/4/12 & 6/15/12 Tx. Notes). Thereafter, the claimant began seeing Holly Handy LMFT, a therapist, on a weekly basis beginning in September 2012 (9/12/12 Tx. Note).

In October 2012, the claimant told consultative psychologist, Dr. Khalifeh, that she felt depressed, had difficulty sleeping, had had changes in her appetite, had feelings of hopelessness, helplessness and worthlessness, had no interest in her usual activities, was struggling to make it through most days, had difficulty completing her activities of daily living and was spending her days day crying and watching television. On mental status examination, the claimant's mood was depressed, and she was tearful and upset. Dr. Khalifeh diagnosed a major depressive disorder and assigned the claimant a GAF score of 41 indicating serious symptoms. See, DSM-IV-TR (Washington, DC, American Psychi. Ass'n., 2004). She then concluded that the claimant would have significant emotional difficulties maintaining a consistent work schedule, would have a moderate impairment in her ability to maintain adequate pace, concentration and persistence throughout an 8 hour workday, would have a moderate impairment in her ability to

manage routine changes in a work environment and would have a moderate impairment in her ability to interact appropriately with coworkers, supervisors and the public (10/16/12 Report).

In November 2012, when Ms. Hand saw the claimant, she noted that she was rambling, tangential, irritable and angry, had pressured speech and racing thoughts and exhibited forgetfulness (11/13/12, 11/20/12 & 11/27/12 Tx. Notes). In the following month, Ms. Hand assessed the claimant's overall functioning. She noted that the claimant had symptoms including "borderline anorexia," social isolation, significant interpersonal conflicts with family members and friends, paranoia and was pre-occupation with resentments/hostility towards others. In addition, Ms. Hand noted that the claimant had limited insight, significant mood swings/agitation, difficulty with concentration, a significant perceptual and thought disturbance, tangentiality, mania, pressured/rapid speech, delusions, paranoid ideation and some evidence of disorganization. She also observed that the claimant's interpersonal relationships were significantly impacted by her hostility and argumentativeness and, consequently, she was becoming increasingly isolated over time. Ms. Hand diagnosed a bipolar disorder, borderline personality disorder, a delusional disorder and anorexia nervosa and concluded that the claimant's intensive level of hostility, paranoia and anger rendered her unemployable except under very limited circumstances (12/11/12 Mental Disorder Q'aire. Form).

The claimant also began receiving treatment from Dr. Sachdev in December 2012. Dr. Sachdev diagnosed a major depressive disorder, severe, with possible paranoid thoughts and a possible bipolar disorder. He then ordered changes in the claimant's psychotropic medications (12/21/12 Tx. Note). In January 2013, Dr. Sachdev noted that the claimant continued to struggle with depression and anger, was irritable and had a hard time being around other people. On mental status examination, the claimant appeared anxious, had a depressed mood and irritable affect and exhibited some paranoia (1/18/13 Tx. Note). Thereafter, when Ms. Hand saw the claimant in February 2013, she noted that the claimant continued to have rapid and rambling speech as well as agitation and irritation (2/19/13 Tx. Note).

In April 2013, the claimant told her physician at Brentwood Health Center that she was still experiencing anxiety and was withdrawn from others despite taking her psychotropic medications. The claimant also complained of feeling that she was immune-compromised but her physician noted that all work-ups performed in connection with that complaint had been unremarkable and, while the claimant was "worried about the possibility of immunodeficiency...there really seem[ed] to be no evidence of this." Finally, the claimant complained of joint pain in the same month, but x-rays of her hands were negative (4/10/13 and 4/21/13 Tx. Notes & 4/16/13 X-ray Report).

In May 2013, Ms. Hand reevaluated the claimant and diagnosed a borderline personality disorder, a delusional disorder and anorexia nervosa. She also stated that under stress, the claimant was experiencing transient paranoid ideation, that her thoughts were frequently distorted and confused and that she had had significant impairments in understanding, memory and sustain concentration. Ms. Hand further noted that the claimant had significant affective instability with marked reactivity of mood resulting in displays of inappropriate anger, argumentativeness and irritability that had caused a long history of difficulty interacting with friends, family, care providers and strangers, unstable and intense relationships, and frequent

Lia Crasona Javier (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)                                        Page 6 of 8

disruption of her functioning. Thus, in Ms. Hand's opinion, the claimant was disabled from any employment involving cooperative interaction with others (5/3/13 Letter).

When Dr. Sachdev saw the claimant in the same month, he reported pressured speech, irritability and some paranoia. Dr. Sachdev then confirmed the diagnosis of bipolar disorder and concluded that the claimant had poor abilities to complete a normal work day and work week without interruptions from psychologically-based symptoms and respond appropriately to changes in a work setting (5/11/13 Tx. Note & Short-Form Evaluation for Mental Disorders). In August 2013, Dr. Sachdev stated that the claimant continued to be extremely unstable with worsening of her psychological condition despite her maintenance on multiple psychotropic medications. He then stated that in his opinion, the claimant was incapable of maintaining any type of employment (8/9/13 Letter).

The findings reported in the claimant's medical records indicate that the severity of her mental impairment meets the criteria of Section 12.04. The "paragraph A" criteria of Section 12.04 are satisfied because the record describes anhedonia, an appetite disturbance, a sleep disturbance, psychomotor agitation, feelings of worthlessness, difficulty concentrating, thoughts of suicide and paranoid thinking.

In terms of the "paragraph B" criteria of section 12.04, although the claimant has reported that she has been able to care for her son, washed dishes and go grocery shopping, she has also reported that she needs assistance from her son to maintain their household and complete errands. In addition, she has reported that she often stays in bed, will go for long periods of time without washing her hair, has severely restricted food intake and needs reminders from her son to take care of her personal needs and grooming. The claimant and her daughter further reported that the claimant generally spends her days at home watching TV and crying. Although the claimant attempted to return to school in 2013, she did not do well and was placed on probation (see, Dis. Rpt.-Appeal, Func. Rpt., 3rd Party Func. Rpt., 10/16/12 Report of Dr. Khalifeh, 12/11/12 Mental Disorder Q'aire. Form fr. Ms. Hand & 5/11/13 Tx. Note fr. Dr. Sachdev). Consequently, I find that the claimant's impairment causes a marked restriction in activities of daily living.

Furthermore, the record describes the claimant's increasing social isolation, paranoia and anger towards other. Thus, in October 2012, Dr. Khalifeh noted that the claimant had "significant emotional difficulties" which impeded her ability to interact with others (10/16/12 Report); in December 2012, Ms. Hand noted that the claimant had become increasingly isolated because of her hostility and argumentativeness, and that her intensive level of hostility, paranoia and anger rendered her essentially unemployable (12/11/12 Mental Disorder Q'aire. Form); social isolation was noted by the claimant's physician at Brentwood Health Center in April 2013 (4/10/13 & 4/21/13 Tx. Notes); in January 2013, Dr. Sachdev noted that the claimant was irritable, paranoid and had a hard time being around other people (1/18/13 Tx. Note); and in May 2013, Ms. Hand noted that the claimant had a long history of unstable and intense relationships with difficulty interacting with friends, family, care providers and strangers, and that her functioning was frequently disrupted due to displays of inappropriate anger, argumentativeness and irritability (5/3/13 Letter). Consistent with this evidence, I find that the claimant has marked difficulties in maintaining social functioning,

The evidence of record thus satisfies all of the criteria of Section 12.04 for a Listing level affective disorder.  In so concluding, I have considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-6p and 06-3p.  I give great weight to the findings by Ms. Hand, Dr. Sachdev and Dr. Khalifa whose opinions are consistent with the claimant's history and supported by the findings reported on psychological examinations.  While the State Agency physician found that the claimant had no Listing level mental impairment, I do not find that opinion persuasive and entitled to great weight since it is not consistent with the record as a whole including the August 2013 report by Dr. Sachdev which was not before the State Agency at the time of its determination.

I have also considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.

**5.   The claimant has been under a disability as defined in the Social Security Act since January 1, 2013, the amended alleged onset date of disability, and disability is reasonably expected to last for at least 12 continuous months (20 CFR 404.1520(d) and 416.920(d)).**

<u>**DECISION**</u>

Based on the application for a period of disability and disability insurance benefits protectively filed on July 6, 2012, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since January 1, 2013, and disability is reasonably expected to last for at least 12 continuous months.

Based on the application for supplemental security income protectively filed on July 6, 2012, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act since January 1, 2013, and disability is reasonably expected to last for at least 12 continuous months.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

Medical improvement is expected with appropriate treatment.  Consequently, a continuing disability review is recommended in 36 months.

Lia Crasona Javier (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)                              Page 8 of 8

/s/ *Judith A. Dickman*
_____
Judith A. Dickman
Senior Attorney Adjudicator

August 27, 2013
_____
Date

 **KAISER PERMANENTE.**

Kaiser Permanente Administrative Committee
c/o Kaiser Foundation Health Plan, Inc.
One Kaiser Plaza, Floor 20B
Oakland, CA 94612

*Notice of Decision on Appeal*

December 10, 2018

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Re:**      Eligibility to Revoke Pension Election
**Plan:**   Kaiser Permanente Salaried Retirement Plan Supplement To the Kaiser
            Permanente Retirement Plan

Dear Ms. Javier:

The Appeals Subcommittee of the Kaiser Permanente Administrative Committee (the "Committee") has reviewed your appeal to revoke your lump sum pension election made under the limited one-time pension election opportunity program (the "Special Distribution Program"). For the reasons explained below, the Committee has denied your appeal.

**Background**

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election opportunity to certain former employees who have a vested pension benefit. This postcard informed you to be on the lookout for your personalized election kit, and that you would need to act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit contained instructions and forms to complete in order to receive a single lump sum payment or a monthly annuity. The election kit also provided that you must mail your completed forms or complete your election online and provide any required documentation no later than October 5, 2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5, 2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you of the deadline.

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that the postcard was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information, and then called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. During this call, you stated that this was a hard decision for you because you are disabled. You also asked if there was a way to cancel an election to participate in the Special Distribution Program, and the representative explained that the deadline to cancel an election would be October 31st. Later than day, you called the PEHD again to speak with a third representative, who answered your questions about how to complete the election kit online.

That same day, you completed your online election kit and elected a lump sum payment.

On November 10, 2017, a check in the net amount of $29,263.94 was issued to you. Out of the gross amount payable of $37,517.88, $8,253.94 was withheld from your lump sum payment for federal and state tax withholding.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability, and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you were disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback, and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that because you are mentally disabled, someone should have explained your options to you and informed you that your benefits from the

2

Social Security Administration would be impacted. The KPRC representative stated that they would send you a claim initiation form ("CIF").

On March 26, 2018, the Plan received your CIF, in which you stated that the PEHD representative that you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request. You also stated that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice of Adjudicator Decision – Fully Favorable (the "Social Security Determination") from the Social Security Administration dated August 27, 2013, which provides that you have alleged disability on the basis of depression, anxiety, and schizophrenia. The Social Security Determination finds that you have a depressive disorder that significantly limits your ability to perform basic work activities, and that you have marked difficulties in maintaining social function. The Social Security Determination also states that medical improvement is expected with appropriate treatment, and that a continuing disability review is recommended in 36 months.

On June 21, 2018, the Plan sent you a notice of denial on the grounds that you did not revoke your election within the period of time prescribed by the Plan and that your election was now irrevocable. The notice of denial also explained that you completed an election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment, and that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

On October 2, 2018, an appeal letter was received from your daughter, on your behalf. In the letter, your daughter states that you are mentally disabled and that you should never have been allowed to make a lump sum election. She also states that the lump sum will affect your Social Security benefits, food stamps, and taxes.

**Governing Provisions**

The Plan's applicable governing provisions are included as Appendix A.

**Analysis**

The Plan provides that a participant has a limited time during which he or she can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that a participant may elect a Form of Payment during the Election Period, which is the 90-day period ending on the participant's elected Benefit Commencement Date. The Plan also provides that a participant may revoke such an election at any time during the Election Period, but that an election is irrevocable when the Election Period expires. (See Section 8.1(c) in Appendix A).

3

Under federal law applicable to employee benefit plans, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Plan must be administered in accordance with its terms. Your elected Benefit Commencement Date was November 1, 2017. Therefore, under the terms of the Plan, your election of a lump sum became irrevocable on that date. Accordingly, the Committee has denied your appeal.

**ERISA Rights**

The decision of the Committee is final. Your appeal to the Committee is the last step in the Plan's administrative appeal process. If you disagree with the Committee's decision, you have the right to bring a civil action under Section 502(a) of ERISA within one year of the date of this letter. Additionally, you are entitled to receive, upon request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to your claim for benefits (other than documents or records that are protected and privileged).

Sincerely,

Leighton N. Hasegawa
Chairperson
Appeals Subcommittee of the Kaiser Permanente Administrative Committee


cc:     Shirley H. Liu
        Benjamin F. Spater

TAKE TO COURT

## Appendix A

### APPLICABLE PLAN PROVISIONS[1]

### KAISER PERMANENTE RETIREMENT PLAN

2.8    Benefit Commencement Date. Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

2.30    Election Period. Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

8.1    Payment Election.

****

(c)    Participant Election. The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee. The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires. The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

****

9.7    Miscellaneous

****

(d)    Notices and Missing Persons. Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address. Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan. ****

APPENDIX 9<br/>2017 SPECIAL DISTRIBUTION ELECTION

---

[1] A sequence of four asterisks (* * * *) means a portion of the Plan text has been omitted.

5

1.1    <u>2017 Special Distribution Election</u>. This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

****

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

****



## U.S. REPRESENTATIVE MARK DESAULNIER

## __Constituent Service Request Form__

*To begin having your case processed, please complete all of the information below. Service request forms **must** be signed by the individual seeking assistance:*

**Name:** Lia C. Javier
**Address:** 805 Fieldstone Ct.  **City:** Brentwood  **State:** CA  **Zip Code:** 94513
**Phone Number (day):** (510) 701-1771  **(mobile):** (  )  **(evening):** (  )
**Fax Number:** 510-555-2082 **E-mail:** Shecancer777@yahoo.com

**Federal agency with which you need help:** Kaiser Permanente Pension Appeal
Please list anyone else you've contacted about this issue (e.g., government office, nonprofit agency, etc.)
Website

How did you hear about us? Website

*Please include the following information only if it pertains to your inquiry:*

**Social Security#:** 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 **Date of Birth:** 07/17/1970  **OWCP Claim**
**Alien Registration#:**_____  **Branch of Service:**_____  **OPM#**_____
**USCIS Receipt#:**_____  **Rank:**_____  **Medicare Claim#:**_____
**Form#:**_____  **VA File#:**_____  **Civil Service Claim#:**_____
**Date File:**_____  **Bank/Loan#:**_____
**Priority Date:**_____  **Student Lender Name/Loan#**_____

**Please state your request for assistance\*:** My mom is mentally disabled,
Kaiser Permanente offered a early pension. My mom
didn't know that she wasn't supposed to take it because
it would jeopardize her SSI, Medicaid taxes. etc... Instead
of Kaiser going through a disabled hardship to have it
work more smoothly Its became very difficult trying to
return the check. My mother wasn't given all of the right
information before making a decision.
_____ More details in next page
\*Please attach copies of any supporting documentation or additional pages if needed to explain explanation of your request.

### Disclosure Authorization
In accordance with the provisions of the Privacy Act, I hereby authorize U.S. Representative Mark DeSaulnier and his staff to receive information pertinent to my request for assistance indicated above.
**Signature:** Lia C.  **Date:** 8/12/18

**Third Party Disclosure (optional):**
I hereby authorize U.S. Representative Mark DeSaulnier and his staff to discuss the results of this inquiry on my behalf with the following individual: Chelsea Javier
**Signature:** Chelsea J.  **Date:** 8/12/18

#### Please return this completed form to either:

<table>
<tr><td>Walnut Creek District Office</td><td>Richmond District Office</td></tr>
<tr><td>3100 Oak Road Suite 110</td><td>440 Civic Center, 2nd Floor</td></tr>
<tr><td>Walnut Creek, CA 94596</td><td>Richmond, CA 94804</td></tr>
<tr><td>Phone: (925) 933-2660</td><td>Phone: (510) 620-1000</td></tr>
<tr><td>Fax: (925) 933-2677</td><td>Fax: (510) 620-1005</td></tr>
</table>

4/22/15

Kaiser Permanente Admn. Committee
Ordway Building, 1 Kaiser Plaza, Ca
94612, Floor 20 B

**RECEIVED**

JAN 0 3 2020

LEGAL DEPARTMENT

Dropped
Served.
At 22nd Floor
Ordway