# EXHIBIT 2

KAISER PERMANENTE RETIREMENT PLAN

As Amended and Restated Effective September 1, 2015

# TABLE OF CONTENTS

Article 1 General ........................................................................................................................ 1

    1.1     Introduction ....................................................................................................... 1
    1.2     History ................................................................................................................ 1
    1.3     Technical Structure ........................................................................................... 2
    1.4     September 1, 2015 Restatement ........................................................................ 2

Article 2 Definitions ................................................................................................................. 3

    2.1     Accrued Benefit ................................................................................................. 3
    2.2     Accumulated Sick Leave ................................................................................... 3
    2.3     Actuarial Equivalent ......................................................................................... 3
    2.4     Administrative Committee ................................................................................. 3
    2.5     Affiliate ............................................................................................................. 3
    2.6     Alternate Payee ................................................................................................. 3
    2.7     Beneficiary ........................................................................................................ 3
    2.8     Benefit Commencement Date ........................................................................... 4
    2.9     Board ................................................................................................................. 4
    2.10   Certain and Life Annuity .................................................................................. 4
    2.11   Claims Administrator ........................................................................................ 4
    2.12   Code .................................................................................................................. 4
    2.13   Committee ......................................................................................................... 5
    2.14   Company ............................................................................................................ 5
    2.15   Compensated Month ......................................................................................... 5
    2.16   Controlled Group Company .............................................................................. 5
    2.17   Controlled Group Termination .......................................................................... 5
    2.18   Covered Compensation ..................................................................................... 5
    2.19   Death Benefit .................................................................................................... 5
    2.20   Deferred Vested Retirement Benefit ................................................................. 5
    2.21   Direct Rollover .................................................................................................. 5
    2.22   Disability Retirement Benefit ........................................................................... 6
    2.23   Disability Retirement Date ................................................................................ 6
    2.24   Distributee ......................................................................................................... 6
    2.25   Domestic Partner ............................................................................................... 6
    2.26   Domestic Relations Order ................................................................................. 7
    2.27   Early Retirement Benefit .................................................................................. 7
    2.28   Early Retirement Date ....................................................................................... 7
    2.29   Elected Union Official Leave ............................................................................ 7
    2.30   Election Period .................................................................................................. 7
    2.31   Eligible Employee ............................................................................................. 7
    2.32   Eligible Retirement Plan ................................................................................... 8
    2.33   Eligible Rollover Distribution ........................................................................... 9
    2.34   Employee .......................................................................................................... 9
    2.35   ERISA ............................................................................................................. 10

i

## TABLE OF CONTENTS
### (continued)

| | | |
|---|---|---|
| 2.36 | Fiduciary | 10 |
| 2.37 | Final Average Compensation | 10 |
| 2.38 | Form of Payment | 11 |
| 2.39 | Health Plan | 11 |
| 2.40 | Highly Compensated Employee | 11 |
| 2.41 | Hour of Credited Service | 11 |
| 2.42 | Hour of Vesting Service | 11 |
| 2.43 | In-Service Retirement Benefit | 11 |
| 2.44 | In-Service Retirement Benefit Commencement Date | 11 |
| 2.45 | In-Service Retirement Date | 11 |
| 2.46 | Investment Adviser | 11 |
| 2.47 | Investment Committee | 11 |
| 2.48 | Investment Manager | 11 |
| 2.49 | Joint and Survivor Annuity | 12 |
| 2.50 | Joint Annuitant | 12 |
| 2.51 | Leased Employee | 12 |
| 2.52 | Long Term Union Leave | 12 |
| 2.53 | Lump Sum | 12 |
| 2.54 | Medical Care Organization | 12 |
| 2.55 | Medical Care Organization Employee | 12 |
| 2.56 | Medical Care Organization Plan | 12 |
| 2.57 | Monthly Compensation | 13 |
| 2.58 | Named Fiduciary | 13 |
| 2.59 | Non-Controlled Group Company | 13 |
| 2.60 | Non-Participating Medical Care Organization | 13 |
| 2.61 | Normal Retirement Age | 13 |
| 2.62 | Normal Retirement Benefit | 13 |
| 2.63 | Normal Retirement Date | 13 |
| 2.64 | Offset Years of Credited Service | 13 |
| 2.65 | Original Plan | 14 |
| 2.66 | Original Plan Average Compensation | 14 |
| 2.67 | Original Plan Benefit | 14 |
| 2.68 | Original Plan End Date | 14 |
| 2.69 | Original Plan Offset | 14 |
| 2.70 | Original Plan Years of Credited Service | 14 |
| 2.71 | Participant | 15 |
| 2.72 | Participating Company | 15 |
| 2.73 | Payee | 15 |
| 2.74 | Plan | 15 |
| 2.75 | Plan Administrator | 15 |
| 2.76 | Plan Assets | 16 |
| 2.77 | Plan Year | 16 |
| 2.78 | Postponed Retirement Benefit | 16 |

20824725v.2

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 2.79 | Qualified Dependent | 16 |
| 2.80 | Qualified Domestic Relations Order | 16 |
| 2.81 | Required Beginning Date | 17 |
| 2.82 | Retirement Eligible | 17 |
| 2.83 | Retirement Income | 17 |
| 2.84 | Retirement Income Formula | 18 |
| 2.85 | Section 401(a)(17) Participant | 18 |
| 2.86 | Section 415 Affiliate | 18 |
| 2.87 | Section 415 Compensation | 18 |
| 2.88 | Short-Term Union Leave | 20 |
| 2.89 | Single Life Annuity | 20 |
| 2.90 | Social Security Retirement Age | 20 |
| 2.91 | Spouse | 20 |
| 2.92 | Termination of Employment | 20 |
| 2.93 | Transfer | 20 |
| 2.94 | Trust | 21 |
| 2.95 | Trust Agreement | 21 |
| 2.96 | Trustee | 21 |
| 2.97 | Union Trust | 21 |
| 2.98 | Union Trust Benefit | 21 |
| 2.99 | Union Trust Years of Credited Service | 21 |
| 2.100 | Vested | 21 |
| 2.101 | Workers Compensation Hours | 21 |
| 2.102 | Workers Compensation Leave | 21 |
| 2.103 | Year of Credited Service | 21 |
| 2.104 | Year of Retirement Eligibility Service | 22 |
| 2.105 | Year of Vesting Service | 22 |

**Article 3 Service** .................................................................................................. 23

| | | |
|---|---|---|
| 3.1 | Hour of Credited Service | 23 |
| 3.2 | Hour of Vesting Service | 26 |
| 3.3 | Workers Compensation Hours | 30 |
| 3.4 | Year of Credited Service | 32 |
| 3.5 | Year of Retirement Eligibility Service | 34 |
| 3.6 | Year of Vesting Service | 34 |

**Article 4 Eligibility and Participation** ................................................................. 36

| | | |
|---|---|---|
| 4.1 | Participation | 36 |
| 4.2 | Termination of Participation | 36 |

**Article 5 Retirement Income Formula** ............................................................... 38

| | | |
|---|---|---|
| 5.1 | Retirement Income Formula | 38 |
| 5.2 | Transfers | 38 |

**TABLE OF CONTENTS**
**(continued)**

| | | |
|---|---|---|
| 5.3 | Union Trust Offset | 38 |
| 5.4 | Nonduplication of Benefits | 39 |

Article 6 Eligibility For Retirement Benefits ........................................................ 40

| | | |
|---|---|---|
| 6.1 | Normal Retirement Benefit | 40 |
| 6.2 | Early Retirement Benefit | 40 |
| 6.3 | Disability Retirement Benefit | 40 |
| 6.4 | Deferred Vested Retirement Benefit | 40 |
| 6.5 | Postponed Retirement Benefit | 41 |
| 6.6 | In-Service Retirement Benefit | 41 |

Article 7 Amount of Retirement Benefits ............................................................. 42

| | | |
|---|---|---|
| 7.1 | Amount of Retirement Benefits | 42 |
| 7.2 | Normal Retirement Benefit | 42 |
| 7.3 | Early Retirement Benefit | 42 |
| 7.4 | Disability Retirement Benefit | 43 |
| 7.5 | Deferred Vested Retirement Benefit | 44 |
| 7.6 | Postponed Retirement Benefit | 45 |
| 7.7 | In-Service Retirement Benefit | 47 |

Article 8 Elections ................................................................................................ 49

| | | |
|---|---|---|
| 8.1 | Payment Election | 49 |
| 8.2 | Spousal Consent | 49 |
| 8.3 | Information for Participants | 50 |
| 8.4 | Beneficiary Change | 51 |

Article 9 Timing of Benefit Payments ................................................................. 52

| | | |
|---|---|---|
| 9.1 | Normal Retirement Benefit | 52 |
| 9.2 | Early Retirement Benefit | 52 |
| 9.3 | Disability Retirement Benefit | 52 |
| 9.4 | Deferred Vested Retirement Benefit | 52 |
| 9.5 | Postponed Retirement Benefit | 53 |
| 9.6 | In-Service Retirement Benefit | 53 |
| 9.7 | Miscellaneous | 53 |

Article 10 Forms of Benefit Payments ................................................................. 55

| | | |
|---|---|---|
| 10.1 | Normal Form of Benefit | 55 |
| 10.2 | Forms of Payment | 55 |
| 10.3 | Payments Following In-Service Retirement Benefit | 58 |
| 10.4 | Death of Spouse or Dissolution of Marriage | 58 |
| 10.5 | Direct Rollovers | 58 |
| 10.6 | Application of Code Section 401(a)(9) | 59 |

iv

**TABLE OF CONTENTS**
**(continued)**

10.7    Forms of Payment Subject to Code Section 417(e) ...................................................... 60

Article 11 Reemployment ................................................................................................................ 61

11.1    General .......................................................................................................................... 61
11.2    Reemployment After Initial Benefit Commencement Date........................................... 61

Article 12 Death Benefits................................................................................................................. 63

12.1    Death Benefits ............................................................................................................... 63
12.2    Pre-Retirement Death Benefits ..................................................................................... 63
12.3    Death Before Benefit Commencement Date But After Payment Election ................... 67
12.4    Death After an In-Service Retirement Benefit or Reemployment................................ 67

Article 13 Limitations on Benefits .................................................................................................. 68

13.1    Section 415 Limits ........................................................................................................ 68
13.2    Top-25 Restriction ........................................................................................................ 72
13.3    Funding Limitations ...................................................................................................... 73

Article 14 Contributions and Funding ........................................................................................... 75

14.1    Plan Contributions ........................................................................................................ 75
14.2    Tax Deductibility .......................................................................................................... 75
14.3    Trust and Trust Agreement ........................................................................................... 75

Article 15 Amendment or Termination .......................................................................................... 76

15.1    Amendment.................................................................................................................... 76
15.2    Termination.................................................................................................................... 77
15.3    Early Termination of Plan ............................................................................................ 78
15.4    Merger or Consolidation ............................................................................................... 78

Article 16 Powers and Duties of Committees ................................................................................. 79

16.1    Plan Administration ...................................................................................................... 79
16.2    Establishment of Administrative and Investment Committees..................................... 79
16.3    Appointment and Composition of the Committees ...................................................... 79
16.4    Committees In General .................................................................................................. 79
16.5    Duties and Powers of Administrative Committee ........................................................ 80
16.6    Information Required for Administration ...................................................................... 81
16.7    Duties and Powers of Investment Committee............................................................... 81
16.8    Indemnification .............................................................................................................. 82
16.9    Expenses of the Plan ..................................................................................................... 83

Article 17 Application of Benefits and Review Procedures .......................................................... 85

17.1    Interpretation................................................................................................................. 85

v

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 17.2 | Application for Benefits | 85 |
| 17.3 | Claims | 86 |
| 17.4 | Appeals | 86 |
| 17.5 | Exhaustion Requirement | 87 |
| 17.6 | Time Limitation and Forum Selection | 88 |

**Article 18 Top Heavy Provisions** ........ 90

| | | |
|---|---|---|
| 18.1 | General | 90 |
| 18.2 | Top-Heavy Determination | 90 |
| 18.3 | Top Heavy Group Determination | 90 |
| 18.4 | Minimum Benefit | 91 |
| 18.5 | Minimum Vesting | 91 |
| 18.6 | Additional Rules | 91 |
| 18.7 | Coordination with Top Heavy Defined Contribution Plan | 92 |

**Article 19 Military Service** ........ 93

| | | |
|---|---|---|
| 19.1 | Service | 93 |
| 19.2 | Benefit Accruals | 93 |
| 19.3 | Death During Military Service | 93 |

**Article 20 Miscellaneous** ........ 94

| | | |
|---|---|---|
| 20.1 | Headings | 94 |
| 20.2 | Nonalienation | 94 |
| 20.3 | Qualified Domestic Relations Order | 94 |
| 20.4 | Governing Law | 95 |
| 20.5 | No Guarantee of Employment | 95 |
| 20.6 | Evidence | 95 |
| 20.7 | Limitation to Trust Fund | 95 |
| 20.8 | Recovery of Overpayment | 95 |
| 20.9 | Prohibition Against Profiting From Participant's Death | 96 |
| 20.10 | Separability | 96 |
| 20.11 | Rules of Interpretation | 96 |
| 20.12 | Compliance With Code Section 401(a)(4) | 96 |

## TABLE OF CONTENTS
### (continued)

Appendix 1 Medical Care Organizations Appendix ........................................................... 1

Appendix 2 Participating Companies ............................................................................... 1

Appendix 3 Special Original Plan Benefit Rules.............................................................. 1

Appendix 4 Minimum Distribution Incidental Benefit Table............................................ 1

Appendix 5 Funding Based Limits .................................................................................... 1

Appendix 6 Retiree Health Care ....................................................................................... 1

Appendix 7 After-Tax Contributions................................................................................ 1

20824725v.2

**TABLE OF CONTENTS**
**(continued)**

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| 1-A | Kaiser Permanente Salaried Retirement Plan (KPSRP) | Salaried Employees (excluding an Employee of Camp Bowie Service Center) |
| | | Non-union hourly Employees of the Mid-Atlantic region |
| | | Kaiser Foundation Health Plan of the Northwest Class 07 Employees reclassified from a salaried status to non-union, non-exempt (Effective 12/17/95) |
| | | Kaiser Foundation Hospital in Northern California Region Physical or Occupational Therapists classified as non-union, non-exempt (Effective 7/1/01) |
| | | Kaiser Foundation Health Plan of the Northwest and of Kaiser Foundation Hospitals in the Northwest region categorized as Administrative Confidential I and classified as hourly Employees (Effective 1/1/04) |
| | | Non-union Employees of Kaiser Foundation Health Plan of Colorado |
| | | An Employee in the Hawaii region of Kaiser Foundation Health Plan, Inc. (i) who is a non-union, exempt Employee, or (ii) who was reclassified as a non-union, non-exempt Employee pursuant to federal law and was participating in the Kaiser Permanente Salaried Retirement Plan as of the date of reclassification |
| | | Non-union Employees of the National Business Units – Program Office and KPIT |
| | | Non-union Employees of Kaiser Foundation Health Plan of Ohio, excluding non-union, non-exempt Emergency Department Registered Nurses  (Before 10/1/13) |
| | | Theater Performers of Northern California (Effective 7/1/03) |
| | | Midwife Wound Ostomy RNs (KPMWON) represented by UNAC/UHCP (Effective 8/1/2013 through 12/31/13) |
| | | A non-union Employee of the Northern California Region of Kaiser Foundation Health Plan, Inc., |

**TABLE OF CONTENTS**
(continued)

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| | | excluding Followers of L250, Followers of CNA, and resident physicians |
| | | A non-union Employee of the Southern California Region of Kaiser Foundation Health Plan, Inc., excluding lifestyle educators, physician assistants, PT's, OTs, RTs, Los Angeles hourly (research), students, trainees, and interns and fellows |
| 2-A | Kaiser Permanente Employees Pension Plan (KPEPP) | Northern California region represented by Service Employees International Union, UHW-West (Health Care Workers), excluding registered dietitians |
| | | Northern California region represented by Office and Professional Employees Union, Local 29 (Clerical Workers) |
| 2-B | Kaiser Permanente Employees Pension Plan (KPEPP) | Northern California region follower of the Service Employees International Union, UHW-West (Health Care Workers), excluding registered dietitians |
| 2-C | Kaiser Permanente Employees Pension Plan (KPEPP) | Northern California region represented by Service Employees International Union, UHW-West (Medical Social Workers) |
| | | Northern California region represented by California Nurses Association who elected to remain Participants on 12/31/75 |
| | | Northern California region represented by California Nurses Association who are Kaiser Permanente post-acute care registered nurses who elected to remain participants on 12/31/1975 |
| 2-D | Kaiser Permanente Employees Pension Plan (KPEPP) | Northern California region represented by National Union of Healthcare Workers - Optical Workers (NUHW-Optical Workers) |
| | | Northern California region who are contact lens assistants, contact lens fitter trainees, or contact lens fitters hired before 11/01/1990 who are Employees represented by National Union of Healthcare Workers – Optical Workers (NUHW-Optical Workers) |
| 2-E | Kaiser Permanente Employees Pension Plan (KPEPP) | Northern California region represented by the International Union of Operating engineers, Stationary Local 39, AFL-CIO who met the eligibility requirements before 6/1/1972 |

20824725v.2

## TABLE OF CONTENTS
### (continued)

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| 2-F | Kaiser Permanente Employees Pension Plan (KPEPP) | Northern California region who are followers of Hourly Employees in the Northern California region represented by California Nurses Association |
| 2-G | Kaiser Permanente Employees Pension Plan (KPEPP) | Northern California region represented by Guild for Professional Pharmacists (Effective 6/6/00 through 1/1/10) and effective 1/1/10, excluding such Employees who had less than 5 Years of Vesting Service on 6/1/09 and did not elect to participate or who were hired by or transferred to a participating company on or after 6/1/09 |
| 2-H | Kaiser Permanente Employees Pension Plan (KPEPP) | Hourly Employee in the Northern California region who is a Physical and Occupational Therapist who elected to remain a Participant (Before 7/1/01) |
| | | Hourly Employee in the Northern California region who is a Follower of L250 |
| | | Theater Performers (Effective 1/1/87 through 7/20/03) |
| 3-A | Kaiser Permanente Fontana Pension Plan (KPFPP) | Southern California region represented by United Steelworkers of America, AFL-CIO, Local 7600 |
| 4-A | Kaiser Permanente Southern California Employees Pension Plan (KPSCEPP) | Southern California region represented by SEIU United HealthCare Workers - West (formerly Local 399) |
| | | Southern California region represented by OPEIU Local 30 - California Service Center |
| | | Southern California region represented by the National Union of Healthcare Workers (NUHW), Sunset (Registered Nurses) formerly SEIU-UHW-American Federation of Nurses - Sunset Local 535 |
| | | Southern California region represented by OPEIU Local 30 - San Diego |
| | | Southern California region represented by UNAC Registered Nurses, Los Angeles, Bakersfield, San Diego, Woodland Hills and Riverside |
| | | Southern California region represented by UNAC Physician Assistants, Woodland Hills |
| 4-B | Kaiser Permanente Southern California | Southern California region represented by UFCW (Bakersfield - Clerical/Service/Pt Care) |

20824725v.2

## TABLE OF CONTENTS
### (continued)

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| | Employees Pension Plan (KPSCEPP) | Southern California region represented by UFCW (Kern County-Administrative) Local 770 (Effective 11/19/09) |
| 4-C | Kaiser Permanente Southern California Employees Pension Plan (KPSCEPP) | Southern California region represented by Local 121 UHW-MV United Healthcare Workers Moreno Valley (Effective 6/20/08 - 12/31/14) |
| | | Southern California region who are Non-Union Moreno Valley (Effective 6/20/08) |
| | | Southern California region who are not covered by another qualified retirement plan |
| 4-D | Kaiser Permanente Southern California Employees Pension Plan (KPSCEPP) | Southern California region represented by United Therapists of Southern California (UTSC) physical, occupational and recreational therapists (Effective 6/1/14) |
| 4-E | Kaiser Permanente Southern California Employees Pension Plan (KPSCEPP) | Southern California region represented by Moreno Valley Service Employees International Union, Local 121RN (Effective 1/1/15) |
| | | Southern California region represented by Moreno Valley Service Employees International Union, United Healthcare Workers-West (Effective 1/1/15) |
| 4-F | Kaiser Permanente Southern California Employees Pension Plan (KPSCEPP) | Southern California region represented by NUHW - Health Care Professionals (formerly SEIU, Local 535 Kaiser Permanente Southern California Professionals) hired or rehired on or before 12/31/14 who remains an employee through 1/1/15. |

20824725v.2

**TABLE OF CONTENTS**
**(continued)**

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| 5-A | Kaiser Permanente Southern California Social Services Pension Plan (KPSCSSPP) | Southern California region represented by the National Union of Healthcare Workers (NUHW), Psych-Social, formerly United Healthcare Workers-West, Kaiser Psych-Social Chapter (formerly SEIU UHW, Social Services Union, Local 535)<br><br>(Excluding employees at the San Diego location before 2/1/1998)<br><br>(Excluding employees hired or rehired on or after 1/1/15) |
| 6-A | Kaiser Permanente Southern California Pharmacists Pension Plan (KPSCPPP) | Southern California region represented by Guild for Professional Pharmacists (hired or rehired before 1/1/14) |
| 7-A | Kaiser Permanente Northwest Pension Plan (KPNPP) | Northwest region represented by OFNHP Local 5017 Registered Nurses (formerly Oregon Federation of Nurses (OFN)) (Effective 3/1/03) |
| | | Northwest region who are registered nurses represented by OFNHP Local 5017 (formerly Oregon Federation of Nurses (OFN)) employed before 9/1/1988 who did not elect to cease accruals in KPNPP |
| 7-B | Kaiser Permanente Northwest Pension Plan (KPNPP) | Northwest region who are represented by OFNHP Local 5017 Technical Employees |
| | | Northwest region represented by OFNHP Technical Employees if hired before 1/1/1994 and did not elect to cease participation in the plan or the sum of age and service as of 1/1/1994 was 60 or more |
| | | Northwest region represented by OFNHP, Local 5017, Registered Dental Hygienists |
| | | Northwest region represented by OFNHP Dental Hygienists if hired before 1/1/1994 and did not elect to cease participation in the plan or the sum of age and service as of 1/1/1994 was 60 or more |
| 7-C | Kaiser Permanente Northwest Pension Plan (KPNPP) | Northwest region represented by SEIU, Local 49 |

20824725v.2

## TABLE OF CONTENTS
### (continued)

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| 7-D | Kaiser Permanente Northwest Pension Plan (KPNPP) | Northwest region represented by Guild for Professional Pharmacists (hired or rehired before 1/1/14) |
| 7-E | Kaiser Permanente Northwest Pension Plan (KPNPP) | Northwest region who are registered nurses represented by Oregon Nurses Association (ONA) hired before 9/1/88 who did not elect to cease accruals in KPNPP |
| | | Northwest region represented by Oregon Nurses Association (ONA) (Effective 3/1/03) |
| 7-F | Kaiser Permanente Northwest Pension Plan (KPNPP) | Northwest region represented by ILWU, Local 28 (Security Personnel) (Effective 1/1/05) |
| 7-G | Kaiser Permanente Northwest Pension Plan (KPNPP) | Hourly Employee in the Northwest region not covered under a collective bargaining agreement, excluding an Employee of Kaiser Foundation Health Plan of the Northwest who is Class 07 and who on 12/17/95 became non-union non-exempt (effective 12/17/95) and an administrative confidential Employee who is reclassified from salaried to hourly and not covered by a CBA (NUE) on 1/1/04 |
| 8-A | Kaiser Permanente Hawaii Employees' Pension Plan (KPHEPP) | Hawaii region represented by International Longshoremen's and Warehousemen's Union, Local 142 or a follower of an employee represented by International Longshoremen's and Warehousemen's Union, Local 142 and who was hired or rehired before 1/1/15. |
| 8-B | Kaiser Permanente Hawaii Employees Pension Plan (KPHEPP) | Hawaii region represented by Hotel Employees and Restaurant Employees Union, Local 5 |
| 8-C | Kaiser Permanente Hawaii Employees Pension Plan (KPHEPP) | Hawaii region represented by the Hawaii Nurses Association |
| | | Hawaii region who are Oahu Home Health Nurses represented by Hawaii Nurses Association (Effective 1/1/10) |

20824725v.2

## TABLE OF CONTENTS
## (continued)

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| 8-D | Kaiser Permanente Hawaii Employees Pension Plan (KPHEPP) | Hawaii region not covered under a collective bargaining agreement, excluding an Employee who is reclassified as non-union non-exempt pursuant to federal law and who continues to be covered by Supplement 1. |
| 9-A | Kaiser Permanente Ohio Employees Pension Plan (KPOEPP) | Ohio region represented by OPEIU, AFL-CIO Local 17 |
| 9-B | Kaiser Permanente Ohio Employees Pension Plan (KPOEPP) | Ohio region represented by Ohio Nurses Association (Medical Office Unit) |
| 9-C | Kaiser Permanente Ohio Employees Pension Plan (KPOEPP) | Ohio region represented by SEIU, AFL-CIO, Local 47 (Before 4/1/02) |
| 9-D | Kaiser Permanente Ohio Employees Pension Plan (KPOEPP) | Ohio region represented by Local 244 and affiliated with IBT who are Registered Nurses employed 20 hours or more per week in the Operating Room, Ambulatory Surgery Center, Post-Anesthesia Care Unit, Clinical Decision Unit, Emergency Department, and Member Service Center at the Kaiser Permanente facilities in Parma and Brooklyn Heights, OH who became eligible before 1/1/14 |
| 9-E | Kaiser Permanente Ohio Employees Pension Plan (KPOEPP) | Ohio region represented by Ohio Nurses Association (formerly non-union emergency department Registered Nurses) |
| 10-A | Kaiser Permanente Colorado Pension Plan (KPCPP) | Colorado region represented by SEIU, AFL-CIO, Local 105 |
| 11-A | Kaiser Permanente Colorado Professional Employees Pension Plan (KPCPEPP) | Colorado region represented by UFCW International Union, AFL-CIO, Local 7 (Professional Health Care Employees) |
| | | Colorado region represented by UFCW International Union, AFL-CIO Local 7 (Opticians) |

# TABLE OF CONTENTS
## (continued)

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| | | Colorado region represented by UFCW International Union, AFL-CIO Local 7 (Mental Health Workers), including, effective 7/19/12, chemical dependency counselors |
| | | Colorado region represented by International Union of Operating Engineers, Local 1, effective 1/1/15. |
| 12-A | Kaiser Permanente Mid-Atlantic Employees Pension Plan (KPMAEPP) | Mid-Atlantic region represented by OPEIU, Local 2, Baltimore and OPEIU, Local 2, Washington D.C., including, effective 5/1/12, material coordinators and coders, effective 1/1/13, member assistance resource specialists, and effective 5/17/15, Health Information Correspondents Technicians and Leads (HCITs) |
| | | Mid-Atlantic region represented by UFCW, Local 27 |
| | | Mid-Atlantic region represented by UFCW, Local 400 |
| 13-A | Kaiser Permanente Physicians and Employees Retirement Plan (KPPERP) | Salaried or non-union hourly Employees of KFHP of Georgia |
| 13-B | Kaiser Permanente Physicians and Employees Retirement Plan (KPPERP) | Regular full-time and regular part-time technical employees, service and maintenance employees who are members of the OPEIU, Local 153, AFL-CIO (Effective 1/1/90) |
| | | Regular full-time and part-time pharmacists, staff and telephone advice registered nurses who are members of OPEIU, Local 153, AFL-CIO (Effective 1/1/90) |
| | | Members of the UFCW, Local 204, who are employees of KFHP of North Carolina (Effective 12/17/97) |
| 13-C | Kaiser Permanente Physicians and Employees Retirement Plan (KPPERP) | Members of the UFCW Local 1996 (Clerical, Technical, and Professional) who are employees of KFHP of Georgia (Effective 1/1/03) |
| 13-D | Kaiser Permanente Physicians and Employees Retirement Plan (KPPERP) | Members of the Technical Clerical Unit of the SEIU, Local 96 who are employees of KFHP of Kansas City, Inc. (Effective 10/1/99) |
| | | Members of the Professional Unit of the SEIU, Local 96 who are employees of KFHP of Kansas City, Inc. (Effective 10/1/09) |

20824725v.2

# TABLE OF CONTENTS
## (continued)

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
| 14-A | Retirement Plan for Kaiser Permanente Employees (RPKPE) | Employed by a Participating Company on or after 4/1/1998 |
| | | Represented by OPEIU, Local 153, AFL-CIO and are regular full-time and part-time pharmacists, staff and telephone advice registered nurses |
| 15-A | Kaiser Permanente Represented Employees Pension Plan (KPREPP) | Northern California region represented by SEIU, Local 250, Health Care Worker's Union, classified as Registered Dieticians (Effective 1/29/03) |
| 15-B | Kaiser Permanente Represented Employees Pension Plan (KPREPP) | Represented by California Nurses Association, is an Enterostomal Therapist or Chronic Conditions Care/Case Manager, and who on 10/1/2003 was employed by Kaiser Foundation Hospitals. The term Chronic Conditions Care/Case Manager includes Diabetes, Multifit, Complex Chronic, Chronic Pain, Congestive Heart Failure, Asthma, and Cholesterol classifications. |
| 15-C | Kaiser Permanente Represented Employees Pension Plan (KPREPP) | Represented by National Union of Healthcare Workers (NUHW) Health Care Professionals (formerly SEIU, Local 535, Kaiser Permanente Southern California Professionals) (Effective 6/21/04 - 12/31/14) |
| 15-D | Kaiser Permanente Represented Employees Pension Plan (KPREPP) | Northwest region represented by OFNHP, Local 5017, classified as a Laboratory Professional (Effective 8/13/01) |
| | | Northwest region represented by OFNHP, Local 5017, classified as a Professional Employee (Effective 2/25/02) |
| | | Mid-Atlantic region represented by OPEIU, Local 2, classified as an Optometrist (Effective 9/6/07) |
| | | KFHP of the Mid-Atlantic States, represented by OPEIU, Local 2, and classified as a clinical pharmacist, admixture pharmacist, ambulatory care pharmacist or staff pharmacist (Effective 6/22/09) |
| 15-E | Kaiser Permanente Represented Employees Pension Plan (KPREPP) | Southern California region represented by UNAC/UHCP and classified as a case manager registered nurse, coordinator emergency prospective review program registered nurse, patient educator registered nurse, lactation consultant registered nurse, |

20824725v.2

<p style="text-align:center"><b>TABLE OF CONTENTS</b><br>(continued)</p>

| SUPPLEMENT NUMBER | OLD PLAN NAME | ELIGIBLE EMPLOYEE GROUPS |
|---|---|---|
|  |  | staff educator registered nurse, or midwife wound ostomsy registered nurse (Effective 1/1/14) |
| 15-F | Kaiser Permanente Represented Employees Pension Plan (KPREPP) | Represented by Service Employees International Union (SEIU), IT Desktop Support Workers |
| 16-A | Kaiser Permanente Employees Pension Plan for California Nurses Association (KPEPP) | Northern California region represented by the California Nurses Association, excluding such Employee who elected on 12/31/75 to remain participants in KPEPP |
| 17-A | Health Care Management Solutions LLC Retirement Plan (HCMSRP) | Employees of Health Care Management Solutions, LLC |

<p style="text-align:center">xvii</p>

# ARTICLE 1

## GENERAL

1.1  <u>Introduction</u>.  This plan is the Kaiser Permanente Retirement Plan.  Kaiser Foundation Health Plan, Inc. adopted the Plan to provide income and financial security for certain employees who meet specified requirements.  The Plan and the Trust forming a part thereof are established with the intent that the Plan shall qualify under Code Section 401(a) and that the Trust shall be exempt from Federal income tax under Code Section 501(a).  The Plan is intended to be construed, maintained, and administered in compliance with the requirements of the Code and ERISA as in effect from time to time.

1.2  <u>History</u>.  The original effective date of the Plan is April 1, 1958.  The Plan has subsequently been amended from time to time.  The Plan was formerly known as the Kaiser Permanente Salaried Retirement Plan.  The following plans have merged into the Plan:

- Kaiser Permanente Colorado Pension Plan (effective December 31, 1991)

- Kaiser Permanente Colorado Professional Employees Pension Plan (effective December 31, 1991)

- Kaiser Permanente Employees Pension Plan (effective December 31, 1991)

- Kaiser Permanente Fontana Pension Plan (effective December 31, 1991)

- Kaiser Permanente Hawaii Employees Pension Plan (effective December 31, 1991)

- Kaiser Permanente Mid-Atlantic Employees Pension Plan (effective December 31, 1991)

- Kaiser Permanente Northwest Pension Plan (effective December 31, 1991)

- Kaiser Permanente Ohio Employees Pension Plan (effective December 31, 1991)

- Kaiser Permanente Southern California Employees Pension Plan (effective December 31, 1991)

- Kaiser Permanente Southern California Pharmacists Pension Plan (effective December 31, 1991)

- Kaiser Permanente Southern California Social Services Pension Plan (effective December 31, 1991)

- Kaiser Permanente Physicians and Employees Retirement Plan (effective January 1, 2001)

1

- Health Care Management Solutions LLC Retirement Plan (effective January 1, 2013)

1.3 <u>Technical Structure</u>. Except as otherwise provided in this document, the terms and conditions of this document are supplemented by the terms and provisions of any Appendix or Supplement hereto and the Trust Agreement, and the same are hereby incorporated herein by reference. The Plan is a single plan under the Code and ERISA that is funded by a single pool of assets. In the event of any conflict between the terms of this document and the terms of an Appendix or Supplement, the terms of the Appendix or Supplement shall control unless specifically provided otherwise. In the event of a conflict between the terms of this document and the terms of the Trust, the terms of this document shall control. Certain terms are capitalized and have the respective meanings set forth in Article 2. Any term which is defined in Article 2 and also defined in an Appendix or Supplement shall have the meaning assigned to it under that Appendix or Supplement for purposes of that Appendix or Supplement.

1.4 <u>September 1, 2015 Restatement</u>.

   (a) <u>In General</u>. The Plan is amended and restated effective September 1, 2015, except as specifically provided otherwise. This amendment and restatement is primarily designed to make clarifying and design changes as may be necessary or desirable to comply with applicable laws and simplify Plan administration and to incorporate the First through Sixth Amendments to the January 1, 2014 restatement. No provision of the Plan will be construed to retroactively eliminate or reduce any early retirement benefit or subsidy that continues after retirement or optional form of benefit that existed under the Plan before this restatement or otherwise reduce a Participant's accrued benefit protected by Code Section 411(d)(6), except to the extent permitted by applicable law.

   (b) <u>Participants Covered by Restatement</u>. This amendment and restatement shall apply to Participants and Beneficiaries whose Benefit Commencement Date is on or after September 1, 2015. The rights of all other Participants or Beneficiaries shall be governed by the terms of the Plan in effect on the applicable Benefit Commencement Date.

20824725v.2

# ARTICLE 2

## DEFINITIONS

2.1    <u>Accrued Benefit</u>.  Subject to the conditions and limitations of the Plan, Accrued Benefit means the benefit earned, as of any determination date, calculated according to the Retirement Income Formula and expressed as the Single Life Annuity paid as of the Participant's Normal Retirement Date.

2.2    <u>Accumulated Sick Leave</u>.  Accumulated Sick Leave means unused banked sick leave or unused extended sick leave as reflected on the Participating Company's payroll records. This Section 2.2 shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Section.

2.3    <u>Actuarial Equivalent</u>.  Actuarial Equivalent means a benefit of equivalent actuarial value as determined in accordance with uniform procedures proposed by an actuary and adopted by the Company using the factors and/or assumptions set forth in this Section or as specifically provided elsewhere in the Plan.

    (a)    <u>Time of Payment</u>.  Except as otherwise specifically provided, the Actuarial Equivalent of a benefit or amount is determined using an interest rate of 6% and the UP-1984 Mortality Table set back five years for Participants and two years for Beneficiaries.

    (b)    <u>Forms of Payment</u>.  For purposes of calculating Actuarial Equivalent Forms of Payment, Actuarial Equivalent will be determined using the applicable mortality table described in Code Section 417(e) as in effect from time to time and as set forth in guidance issued by the Department of the Treasury, and the applicable interest rate as defined in Code Section 417(e), as amended from time to time, for the calendar month which is two calendar months immediately preceding the Benefit Commencement Date.

2.4    <u>Administrative Committee</u>.  Administrative Committee means the committee that is responsible for administering the Plan and the other duties specified in Section 16.5.

2.5    <u>Affiliate</u>.  Affiliate means a member of a controlled group of corporations (as defined in Code Section 414(b)) with the Company, member of a group of commonly controlled trades or businesses (as defined in Code Section 414(c)) that includes the Company, or an affiliated service group (as defined in Code Section 414(m)) of which the Company is a member, and any other entity required to be aggregated with the Company pursuant to Code Section 414(o).

2.6    <u>Alternate Payee</u>.  Alternate Payee means a Spouse, former Spouse, child, or other dependent of a Participant who has the right to receive all, or a portion, of such Participant's Accrued Benefit under a Qualified Domestic Relations Order.

2.7    <u>Beneficiary</u>.  Beneficiary means a Participant's Spouse or other individual who is designated by the Participant in the manner and time set forth in procedures established by

the Administrative Committee.  Such designation must be received by the Administrative Committee before the Participant's death.  A Participant may name one or more persons or institutions as a Beneficiary.  If a Participant fails to designate a Beneficiary or the designated Beneficiary does not survive the Participant, the Beneficiary is the first of the following to survive:

(a)    For all purposes other than the 100% Joint and Survivor Annuity with 15 Year Guarantee Period and Pop-Up,

    (i)    Participant's surviving Spouse;

    (ii)   Participant's surviving Domestic Partner (but only if Domestic Partners are specifically recognized in the applicable Supplement);

    (iii)  Participant's surviving children and children of deceased children (by right of representation);

    (iv)   Participant's surviving dependents for federal income tax purposes;

    (v)    Participant's surviving parents; or

    (vi)   Participant's estate.

(b)    For purposes of the 100% Joint and Survivor Annuity with 15 Year Guarantee Period and Pop-Up,

    (i)    Participant's surviving Spouse;

    (ii)   Participant's surviving Domestic Partner (but only if Domestic Partners are specifically recognized in the applicable Supplement); or

    (iii)  Participant's estate.

2.8    <u>Benefit Commencement Date</u>.  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

2.9    <u>Board</u>.  Board means the Board of Directors of the Company.

2.10   <u>Certain and Life Annuity</u>.  Certain and Life Annuity means the Form of Payment described in Section 10.2(d) that provides monthly benefit payments for the Participant's life with guaranteed payments over a period of 60, 120, 180, or 240 months as elected by the Participant.

2.11   <u>Claims Administrator</u>.  Claims Administrator means the person(s) appointed by the Plan Administrator to decide claims pursuant to Section 17.3.

2.12   <u>Code</u>.  Code means the Internal Revenue Code of 1986, as amended from time to time, and any applicable guidance issued by the Internal Revenue Service thereunder.

4

2.13    Committee.    Committee means the Administrative Committee or the Investment Committee, or both, as the context requires.

2.14    Company.    The Company means Kaiser Foundation Health Plan, Inc., or any successor thereto.

2.15    Compensated Month.

    (a)    General.    Compensated Month means a calendar month for which a Participant is credited with Monthly Compensation and has at least one Hour of Credited Service. Lump sum cashout of vacation paid at Controlled Group Termination or Termination of Employment is converted into additional Compensated Months.

    (b)    Transfers.    If a Participant Transfers from the Plan and becomes a participant in a Medical Care Organization Plan, Compensated Month includes a calendar month for which such Participant is credited with Monthly Compensation and has at least one hour of credited service under such Medical Care Organization Plan.

2.16    Controlled Group Company.    Controlled Group Company means the Company or any Affiliate.

2.17    Controlled Group Termination.    Controlled Group Termination means when a Participant ceases to be an Employee of all Controlled Group Companies.

2.18    Covered Compensation.    Covered Compensation means the average (without indexing) of the social security taxable wage bases in effect for each calendar year during the Determination Period (as defined in this Section). In determining a Participant's Covered Compensation for a Plan Year, the taxable wage base for each calendar year beginning after the first day of that Plan Year is assumed to be the same as the taxable wage base in effect at the beginning of such Plan Year. A Participant's Covered Compensation for a Plan Year beginning after the Determination Period is the Participant's Covered Compensation for the Plan Year during which the Determination Period ends. A Participant's Covered Compensation for a Plan Year beginning before the Determination Period is the taxable wage base in effect as of the beginning of the Plan Year. For this purpose, "Determination Period" means the 35-year period ending with the last day of the calendar year in which the Participant attains (or will attain) his Social Security Retirement Age.

2.19    Death Benefit.    Death Benefit means the Retirement Income payable according to Article 12 of the Plan.

2.20    Deferred Vested Retirement Benefit.    Deferred Vested Retirement Benefit means the Retirement Income calculated under Section 7.5 paid to a terminated Vested Participant.

2.21    Direct Rollover.    Direct Rollover means a payment by the Plan to the Eligible Retirement Plan specified by a Distributee.

20824725v.2

2.22   <u>Disability Retirement Benefit</u>.  Disability Retirement Benefit means the Retirement Income calculated under Section 7.4.

2.23   <u>Disability Retirement Date</u>.  Disability Retirement Date means the first day of any month before a Participant's Normal Retirement Date as of which the Participant becomes eligible for a Disability Retirement Benefit.

2.24   <u>Distributee</u>.  Distributee means an Employee, a former Employee, an Employee's or former Employee's surviving Spouse with regard to such Spouse's interest in the Plan, or an Employee's or former Employee's Spouse or former Spouse who is an Alternate Payee with regard to such Spouse's interest in the Plan.

2.25   <u>Domestic Partner</u>.  This Section 2.25 shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Section.  Domestic Partner means an individual who is not a Spouse and who satisfies the following requirements:

(a)   He provides documentation to the Plan Administrator, pursuant to the administrative procedures established by the Plan Administrator, of his domestic partner relationship with a Participant.

(b)   He and the Participant both satisfy the following requirements on the day before the Participant's death:

    (i)   Live together, sharing the same living quarters as their primary residence, and holding themselves out as domestic partners;

    (ii)   Are not married to someone else;

    (iii)   Are not a member of another domestic partnership, civil union, or similar partnership recognized by a government, with someone else unless that domestic partnership, or civil union, or similar partnership recognized by a government has been terminated, dissolved, or adjudged a nullity, or the parties are legally separated;

    (iv)   Are not related by blood in a way that would prevent them from being married;

    (v)   Are each 18 years of age or older;

    (vi)   Are both capable of consenting to the domestic partnership; and

    (vii)   Are not related to each other as a parent, brother or sister, half brother or sister, niece, nephew, aunt, uncle, grandparent, or grandchild.

(c)   His relationship with the Participant has not been documented with the Plan Administrator as terminated pursuant to the administrative procedures established by the Plan Administrator.

6

2.26    <u>Domestic Relations Order</u>.  Domestic Relations Order means a judgment, decree or order (including approval of a property settlement agreement) made pursuant to a state domestic relations law (including a community property law) which relates to the provision of child support, alimony payments or marital property rights to an Alternate Payee.

2.27    <u>Early Retirement Benefit</u>.  Early Retirement Benefit means the Retirement Income calculated under Section 7.3.

2.28    <u>Early Retirement Date</u>.  Early Retirement Date means the first day of any month before a Participant's Normal Retirement Date as of which the Participant becomes eligible for an Early Retirement Benefit.

2.29    <u>Elected Union Official Leave</u>.  Elected Union Official Leave means an approved unpaid leave of absence for the purpose of discharging duties as an elected official of the Eligible Employee's collective bargaining unit, pursuant to a collective bargaining agreement, letter of agreement or other applicable agreement between the Participating Company and such collective bargaining unit.

2.30    <u>Election Period</u>.  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

2.31    <u>Eligible Employee</u>.

   (a)    Eligible Employee means an Employee of a Participating Company who is paid on a U.S. dollar payroll and who is classified as identified in the applicable Supplement.

   (b)    Eligible Employee also includes any individual who was an Eligible Employee and his position becomes governed by a collective bargaining agreement during the period the new collective bargaining agreement is being negotiated.

   (c)    Notwithstanding the foregoing, the following individuals are not Eligible Employees and will not be eligible to participate in the Plan:

       (i)    Any individual who is not on the payroll of a Participating Company and who, at any time and for any reason, is deemed to be an Employee;

       (ii)    Any Employee whose employment is governed by the terms of a collective bargaining agreement if retirement benefits were the subject of good faith bargaining between a Participating Company and the Employees' representative and such collective bargaining agreement does not provide for participation in the Plan;

       (iii)    Any Leased Employee within the meaning of Code Section 414(n);

       (iv)    Other individuals designated by a Participating Company on its records as, independent contractors or consultants (even if a court, the Internal Revenue

7

Service, or another entity or body determines that such individuals are Employees);

(v)     Individuals who are compensated, directly or indirectly, by a Participating Company and with respect to whom compensation is not treated by the Participating Company at the time of payment as being subject to statutorily required payroll tax withholding, such as withholding of federal and/or state income tax and/or withholding of the Employee's share of Social Security tax, and for this purpose statutorily required backup withholding is not payroll tax withholding (even if a court, the Internal Revenue Service or another entity or body determines that such individuals are common law employees); and

(vi)    An individual who is employed by an entity that is acquired by a Participating Company in either a stock or asset purchase will not become an Eligible Employee until the Participating Company explicitly designates the entity that includes the individual as eligible to participate in the Plan.

(d)    An Eligible Employee who becomes disabled and continues to receive Hours of Credited Service during his disability as specifically provided in the applicable Supplement remains an Eligible Employee until he ceases to receive Hours of Credited Service.

(e)    An individual's status as an "Eligible Employee" shall be determined by the Participating Company, and any such determination shall be conclusive and binding on all persons.

2.32    <u>Eligible Retirement Plan</u>.  Eligible Retirement Plan means any retirement plan within the meaning of Code Section 402(c)(8), and includes:

(a)    An individual retirement account described in Code Sections 408(a);

(b)    An individual retirement annuity described in Code Section 408(b);

(c)    An annuity plan described in Code Section 403(a);

(d)    A qualified trust described in Code Section 401(a);

(e)    An annuity contract described in Code Section 403(b) that accepts the Distributee's Eligible Rollover Distribution;

(f)    An eligible deferred compensation plan described in Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this plan; and

(g)    A Roth individual retirement account described in Code Section 408A.

8

2.33   Eligible Rollover Distribution.

    (a)    Eligible Rollover Distribution means any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include:

        (i)    Any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more;

        (ii)    Any distribution to the extent such distribution is required under Code Section 401(a)(9); or

        (iii)    The portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

    (b)    Eligible Rollover Distribution also includes any distribution of any portion of the balance to the credit of the Distributee that is not includible in gross income if the distribution is made directly in a trust to trust transfer to:

        (i)    A qualified trust or annuity contract under Code Section 403(b) and such trust or contract agrees to separately account for such transferred amounts (and earnings thereon);

        (ii)    An individual retirement account described in Code Section 408(a); or

        (iii)    An individual retirement annuity described in Code Section 408(b) (other than an endowment contract).

2.34   Employee.

    (a)    General.  Employee means any individual who is employed as a common law employee by a Controlled Group Company, and any individual who is a Leased Employee and who is providing services to a Controlled Group Company.

    (b)    Certain Leased Employees Excluded.  Notwithstanding the foregoing, a Leased Employee will not be an Employee if both paragraphs (i) and (ii) are satisfied:

        (i)    The individual is covered by a money purchase pension plan providing a nonintegrated employer contribution rate of at least 10 percent of compensation (defined in Code Section 415(c)(3)), but including amounts contributed pursuant to a salary reduction agreement that are excludable from gross income under Code Section 125 or 402(a)(8), immediate participation, and full and immediate vesting.

9

20824725v.2

        (ii)    Leased Employees do not constitute more than 20 percent of the entire non-highly compensated workforce of the Controlled Group Companies.

2.35    <u>ERISA</u>.  ERISA means the Employee Retirement Income Security Act of 1974, as amended from time to time and regulations issued thereunder.

2.36    <u>Fiduciary</u>.  Fiduciary means a person who is a fiduciary as defined in ERISA.

2.37    <u>Final Average Compensation</u>.  Final Average Compensation means a Participant's average Monthly Compensation for the 60 consecutive Compensated Months for which he had the greatest Monthly Compensation in the last 120 consecutive Compensated Months, as is determined in accordance with the following:

        (a)    If a Participant has less than 60 consecutive Compensated Months, the Final Average Compensation is his average Monthly Compensation for all Compensated Months.

        (b)    The highest 60 consecutive Compensated Months including up to twelve months of any approved unpaid leave of absence as if the Participant received the same Monthly Compensation while on leave as he was paid in the month before the leave began.  In all other instances, Compensated Months immediately before a period in which the Participant did not have Compensated Months, and any Compensated Months immediately after such a period, are considered to be consecutive Compensated Months.

        (c)    Monthly Compensation shall be limited, if applicable, in accordance with Code Section 401(a)(17)(B) before Final Average Compensation is determined. Effective as of January 1, 2002, the amount of compensation included in Final Average Compensation for any Plan Year will not exceed $200,000, adjusted as provided in Code Section 401(a)(17)(B).  Such $200,000 limit, as adjusted, shall be used for compensation paid in years prior to January 1, 2002 in determining benefit accruals in years beginning after December 31, 2001.  As reflected in Section 5.1 of the Plan, benefit accruals under the Plan after 1993 are determined in accordance with the "formula with extended wear-away" method for applying Code Section 401(a)(17) after 1993, as described in Treas. Reg. Section 1.401(a)(4)-13(c)(4)(iii).

        (d)    Effective January 1, 1989, with respect to a Participant who ceases to be an Employee before January 1, 1994 and who does not have any Compensated Months after January 1, 1994, the amount of annual compensation included in Final Average Compensation for any Plan Year or other 12-month computation period, including periods before January 1, 1989, will not exceed $200,000, as adjusted by the Commissioner of Internal Revenue to reflect increases in the cost-of-living in accordance with Code Section 415(d) as then in effect. With respect to any other Participant, except as provided in subsection (c), effective January 1, 1994, the amount of annual compensation included in Final Average Compensation for any Plan Year, including Plan Years before January 1, 1994, will not exceed $150,000,

  
as adjusted by the Commissioner of Internal Revenue to reflect increases in the cost-of-living in accordance with Code Section 401(a)(17)(B). For any Plan Year that is less than 12 consecutive months, these dollar limitations shall be prorated.

2.38    Form of Payment. Form of Payment means the form in which Retirement Income is paid, as described in Article 10.

2.39    Health Plan. Health Plan means Kaiser Foundation Health Plan, Inc., a California nonprofit corporation.

2.40    Highly Compensated Employee. The determination of who is a Highly Compensated Employee shall be made in accordance with Code Section 414(q) and regulations thereunder. Highly Compensated Employee means an active Employee who:

(a)    During the Plan Year for which the determination is being made (Determination Year) or the 12-month period preceding the Determination Year (Look-Back Year) was a 5-percent owner; or

(b)    During the Look-Back Year received Section 415 Compensation of more than $80,000 as adjusted pursuant to Code Sections 414(q) and 415(d).

2.41    Hour of Credited Service. Hour of Credited Service means each hour credited under Section 3.1.

2.42    Hour of Vesting Service. Hour of Vesting Service means each hour credited under Section 3.2.

2.43    In-Service Retirement Benefit. In-Service Retirement Benefit means the Retirement Income calculated under Section 7.7. The In-Service Retirement Benefit provisions in the Plan shall only apply to an Eligible Employee covered by a Supplement that specifically provides for the In-Service Retirement Benefit.

2.44    In-Service Retirement Benefit Commencement Date. In-Service Retirement Benefit Commencement Date means the Benefit Commencement Date for a Participant's In-Service Retirement Benefit.

2.45    In-Service Retirement Date. In-Service Retirement Date means the last day of the month before the In-Service Retirement Benefit Commencement Date.

2.46    Investment Adviser. Investment Adviser means a Person engaged by the Investment Committee to provide advice with respect to investment of Plan Assets.

2.47    Investment Committee. Investment Committee means the committee that is responsible for investing the Plan Assets and the other duties specified in Section 16.7.

2.48    Investment Manager. Investment Manager means a person who is an investment manager as defined in ERISA Section 3(38).

2.49    <u>Joint and Survivor Annuity</u>.  Joint and Survivor Annuity means the Form of Payment described in Section 10.2(b) that provides monthly benefit payments to the Participant during the joint lives of the Participant and the Joint Annuitant, and after the death of either, monthly benefit payments continue to the survivor for life at the elected percentage.

2.50    <u>Joint Annuitant</u>.  Joint Annuitant means a person designated by the Participant or Alternate Payee to receive benefits after the Participant's or Alternate Payee's death under a Joint and Survivor Annuity**.**

2.51    <u>Leased Employee</u>.  To the extent required by Code Section 414(n):

    (a)    Leased Employee means any individual who is not a common law employee and who provides services to a Controlled Group Company if:

        (i)    The services are provided pursuant to an agreement between the Controlled Group Company and any other person;

        (ii)    The individual has performed those services for the Controlled Group Company (or for such employer and related persons) on a substantially full-time basis for a period of at least one year; and

        (iii)    The services are under the primary direction and control of the Controlled Group Company.

    (b)    Contributions or benefits provided to a Leased Employee by the leasing organization that are attributable to services performed for the Controlled Group Company shall be treated as provided by the Controlled Group Company.

2.52    <u>Long Term Union Leave</u>.  Long Term Union Leave means an unpaid leave of at least 31 consecutive days for the purpose of discharging duties as required by the Eligible Employee's collective bargaining unit, pursuant to a collective bargaining agreement, letter of agreement or other applicable agreement between the Participating Company and such collective bargaining unit.

2.53    <u>Lump Sum</u>.  Lump Sum means the Form of Payment described in Section 10.2(e) that provides a single payment to the Payee.

2.54    <u>Medical Care Organization</u>.  Medical Care Organization means any organization listed in Appendix 1 (Medical Care Organization Appendix), and if applicable, as of the effective date reflected on such Appendix.

2.55    <u>Medical Care Organization Employee</u>.  Medical Care Organization Employee means any individual who is a common-law employee of a Medical Care Organization.

2.56    <u>Medical Care Organization Plan</u>.  Medical Care Organization Plan means a defined benefit plan maintained and sponsored by a Medical Care Organization.

20824725v.2

2.57    Monthly Compensation.  Monthly Compensation means:

    (a)    The Participant's monthly base pay rate, as determined by the Participating Company, as of the first compensated hour of the applicable month, calculated at the full-time equivalent rate regardless of actual work schedule.

    (b)    For employees who are compensated on an hourly basis, the Participant's base hourly wage rate, as determined by the Participating Company, for the first compensated hour of each month, multiplied by 173.33.

    (c)    All forms of compensation, other than those specifically included in subsection (a) and (b), are excluded from Monthly Compensation.  Types of payments excluded include, but are not limited to:

        (i)    Bonuses,

        (ii)    Differential pay,

        (iii)    Meal allowances,

        (iv)    On-call pay,

        (v)    Overtime,

        (vi)    Shift differential, and

        (vii)    Special allowances.

2.58    Named Fiduciary.  Named Fiduciary shall have the meaning assigned to it in ERISA Section 402(a)(2).

2.59    Non-Controlled Group Company.  Non-Controlled Group Company means a Medical Care Organization that is not a Controlled Group Company.

2.60    Non-Participating Medical Care Organization.  Non-Participating Medical Care Organization means a Medical Care Organization that is not a Participating Company.

2.61    Normal Retirement Age.  Normal Retirement Age means age 65.

2.62    Normal Retirement Benefit.  Normal Retirement Benefit means the Retirement Income calculated under Section 7.2.

2.63    Normal Retirement Date.  Normal Retirement Date means the day a Participant attains Normal Retirement Age.

2.64    Offset Years of Credited Service.  Offset Years of Credited Service means, for a Participant who incurs a Transfer, the Participant's Years of Credited Service attributable to imputed Hours of Credited Service attributable to periods through the Original Plan End Date.

2.65    Original Plan.  Original Plan means:

    (a)    Effective January 1, 2014, the Medical Care Organization Plan, and if applicable, the supplement under such plan under which the Medical Care Organization Employee was covered immediately before a Transfer.

    (b)    Before January 1, 2014, the Medical Care Organization Plan, and if applicable, a different benefit formula (and its associated rules) within the Medical Care Organization Plan under which the Medical Care Organization Employee was covered immediately before a Transfer.

2.66    Original Plan Average Compensation.  Original Plan Average Compensation means as applicable: (a) final average compensation as defined under the Original Plan calculated at Termination of Employment, or (b) highest average compensation as defined under the Original Plan calculated at the Original Plan End Date.

2.67    Original Plan Benefit.  Original Plan Benefit means with respect to each Transfer, the amount determined under this Section at the time of that Transfer.  The Original Plan Benefit is the amount calculated under this Section and it is not necessarily the benefit payable to the Participant under the Original Plan.

    (a)    General.

        (i)    If the Participant was not vested in the Original Plan at the time of Transfer the Original Plan Benefit is zero

        (ii)    If the Participant was vested in the Original Plan at the time of Transfer, the Original Plan Benefit is the amount calculated under the Original Plan's retirement income formula (as adjusted for postponed retirement under the Original Plan if the Participant incurs the Transfer after his Normal Retirement Date) in effect on the Original Plan End Date (after applying any offset for prior Original Plan Benefits for prior Transfers) using Original Plan Years of Credited Service and Original Plan Average Compensation.

    (b)    Multiple Transfers.  When applying paragraph (ii) for a Participant who has more than one Transfer, the Original Plan Benefit with respect to each Transfer will be calculated in chronological order.

2.68    Original Plan End Date.  Original Plan End Date means the earlier of (a) the day the Participant ceases to be an eligible employee under the Original Plan, or (b) the day before the Transfer.

2.69    Original Plan Offset.  Original Plan Offset means the amount calculated under this Section. The method used to calculate a Participant's Original Plan Offset depends on the number of Transfers a Participant has incurred.

14

(a)     No Transfer.  The Original Plan Offset for a Participant who has not incurred a Transfer is zero.

(b)     One Transfer.  The Original Plan Offset for a Participant who has incurred only one Transfer is the lesser of the following on the date as of which such calculation is being performed:

    (i)     The Original Plan Benefit actuarially increased using the Original Plan's actuarial factors; or

    (ii)     The Actuarial Equivalent of the benefit calculated under the Retirement Income Formula in Section 5.1, using Final Average Compensation in effect at Termination of Employment (or the calculation date, if earlier, for a Postponed Retirement Benefit), and Offset Years of Credited Service.

(c)     Multiple Transfers.  The Original Plan Offset for a Participant who has incurred more than one Transfer is the lesser of the following calculated on the date as of which such calculation is being performed:

    (i)     The sum of all Original Plan Benefits each actuarially increased using the applicable Original Plan's actuarial factors; or

    (ii)     The Actuarial Equivalent of the benefit calculated under the Retirement Income Formula in Section 5.1, calculated using such Participant's Final Average Compensation in effect at Termination of Employment (or the calculation date, if earlier, for a Postponed Retirement Benefit), and Offset Years of Credited Service as of the Original Plan End Date for the Original Plan immediately preceding his participation in this Plan.

2.70     Original Plan Years of Credited Service.  Original Plan Years of Credited Service means, for a Participant who incurs a Transfer, years of credited service credited under the Original Plan applying that plan's service crediting rules to hours of credited service under the Original Plan.

2.71     Participant.  Participant means an Eligible Employee who satisfies the requirements of Section 4.1(a) or Section 4.1(b), as applicable, and who has not terminated participation under Section 4.2.

2.72     Participating Company.  Participating Company means each of the companies listed on Appendix 2 (Participating Companies).

2.73     Payee.  Payee means any individual with Vested benefits under the Plan, including a Participant, Beneficiary, and Alternate Payee.

2.74     Plan.  Plan means the Kaiser Permanente Retirement Plan.

2.75     Plan Administrator.  Plan Administrator means the Administrative Committee.

15

2.76    Plan Assets.  Plan Assets means assets of the Plan held by a Trustee pursuant to a Trust Agreement.

2.77    Plan Year.  Plan Year means a calendar year.

2.78    Postponed Retirement Benefit.  Postponed Retirement Benefit means the Retirement Income calculated under Section 7.6.

2.79    Qualified Dependent.  This Section 2.79 shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Section.  Qualified Dependent means the Participant's biological or legally adopted child(ren) who is 18 years of age or younger on the date of the Participant's death.  If there is no individual who meets this description, then the Qualified Dependent is the individual(s) who occupies the first of the following groups who survive the Participant and who, on the date of the Participant's death, is claimed as a dependent on the Participant's tax return and either lives in the Participant's home, as the principal abode, or is enrolled in and actively attending school:

(a)    Participant's biological or legally adopted child(ren) who is more than 18 years of age at the time of the Participant's death;

(b)    Participant's foster child;

(c)    A descendant of the Participant's son or daughter (including a legally adopted child);

(d)    Participant's stepson or stepdaughter;

(e)    Participant's brother, sister, stepbrother, or stepsister;

(f)    Father or mother of Participant;

(g)    Ancestor of the father or mother of the Participant;

(h)    Participant's stepfather or stepmother;

(i)    Son or daughter of Participant's brother or sister;

(j)    Brother or sister of Participant's father or mother;

(k)    Participant's son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law.

2.80    Qualified Domestic Relations Order.  A Qualified Domestic Relations Order is a Domestic Relations Order which has been approved by the Administrative Committee in accordance with the procedures established by the Administrative Committee and which:

(a)    Creates or recognizes the existence of an Alternate Payee's right to, or assigns to an Alternate Payee the right to, receive all or a portion of a Participant's benefits under the Plan;

16

    (b)    Clearly specifies:

        (i)    The name and last known mailing address (if any) of the Participant and the name and mailing address of each Alternate Payee covered by the order,

        (ii)    The amount or percentage of the Participant's benefits to be paid by the Plan to any Alternate Payee, or the manner in which such amount or percentage is to be determined,

        (iii)    The number of payments or the period to which the order applies, and

        (iv)    Each plan to which the order applies; and

    (c)    Does not require the Plan to:

        (i)    Provide any type or form of benefit, or any Form of Payment, not otherwise provided under the Plan,

        (ii)    Provide increased benefits (determined on the basis of actuarial value),

        (iii)    Pay benefits to an Alternate Payee that are required to be paid to another Alternate Payee under a previous Qualified Domestic Relations Order, or

        (iv)    Pay any benefits to an Alternate Payee before the Participant's "earliest retirement age" (as defined in Code Section 414(p) and ERISA Section 206(d)(3)(E)(ii)).

2.81    <u>Required Beginning Date</u>.  Required Beginning Date means:

    (a)    For any Participant who is a 5% owner (as defined in Code Section 416(i)(1)(B)(i)), the April 1 of the calendar year following the calendar year in which a Participant attains age 70½.

    (b)    With regard to any Participant who is not a 5% owner and who attains age 70½ on or after January 1, 1999, April 1 of the calendar year following the calendar year in which the later of the following occurs (i) the Participant attains age 70½ or (ii) has a Controlled Group Termination.

2.82    <u>Retirement Eligible</u>.  Retirement Eligible means that a Participant is eligible to receive a Normal Retirement Benefit, Early Retirement Benefit, Disability Retirement Benefit, In-Service Retirement Benefit, or Postponed Retirement Benefit when he incurs a Termination of Employment.

2.83    <u>Retirement Income</u>.  Retirement Income means the benefit payable from the Plan as a Normal Retirement Benefit, Early Retirement Benefit, Disability Retirement Benefit, Deferred Vested Retirement Benefit, In-Service Retirement Benefit, Postponed Retirement Benefit, or Death Benefit.

2.84    Retirement Income Formula. Retirement Income Formula means the formula described in Section 5.1.

2.85    Section 401(a)(17) Participant. Section 401(a)(17) Participant means a Participant with an Accrued Benefit under the Plan in Plan Years beginning before January 1, 1994 that was determined by taking into account Monthly Compensation that exceeded $150,000 in any Plan Year. Notwithstanding the foregoing, the effective date for plans maintained pursuant to a collective bargaining agreement ratified before August 10, 1993, is the first day of the first Plan Year beginning on or after the earlier of:

(a)    January 1, 1997, or

(b)    The latest of:

   (i)    January 1, 1994, or

   (ii)    The date on which the last of the collective bargaining agreements ratified before August 10, 1993, pursuant to which the plan is maintained, terminates (without regard to any extension, amendment, or modification after that date).

2.86    Section 415 Affiliate. Section 415 Affiliate means a member of a controlled group of corporations (as defined in Code Section 414(b) and as modified by Code Section 415(h)) with the Company, a member of a group of commonly controlled trades or businesses (as defined in Code Section 414(c) and as modified by Code Section 415(h)) that includes the Company, an affiliated service group (as defined in Code Section 414(m)) of which the Company is a member, or any other entity required to be aggregated with the Company pursuant to Code Section 414(o).

2.87    Section 415 Compensation. Section 415 Compensation means:

(a)    Effective January 1, 2008, Section 415 Compensation means:

   (i)    All amounts paid to an Employee by the Company and any Section 415 Affiliate, including:

      (A)    Bonuses, special allowances and other amounts included in the Employee's gross income, including any elective deferral (as defined in Code Section 402(g)(3));

      (B)    Any amount which is not includible in the gross income of the Employee by reason of Code Sections 125, 129, 403(b) or 457, including any amounts not available to an Employee in cash in lieu of group health coverage because the Employee is unable to certify that he has other health coverage;

18

20824725v.2

        (C)     Elective amounts paid or made available during Plan Years that are not includible in the gross income of the Employee by reason of Code Section 132(f)(4);

        (D)     Any amounts received by the later of (i) 2 1/2 months after severance from employment or (ii) the end of the calendar year that includes that date of severance from employment, if absent a severance from employment, such payments would have been paid to the Employee while the Employee continued employment with the Company and are regular compensation for services during the Employee's regular working hours, compensation for services outside the Employee's regular working hours (such as overtime or shift differential), commissions, bonuses or other similar compensation.

    (ii)     Effective January 1, 2009 and in accordance with Code Section 414(u)(12)(A)(ii) and any Treasury regulations and other guidance promulgated thereunder, Section 415 Compensation shall include any differential pay paid by the Company and any Section 415 Affiliate:

        (A)     That is paid to an Employee with respect to any period during which the Employee is performing services in the uniformed services while on active duty for a period of more than 30 days and

        (B)     Represents all or a portion of the wages the Employee would have received from the Company and any Section 415 Affiliate if the Employee had remained actively employed.

(b)    Before January 1, 2008, Section 415 Compensation meant:

    (i)     Before January 1, 1998, all amounts paid to an Employee by the Company and any Section 415 Affiliate, including bonuses, special allowances and other amounts included in the Employee's gross income, but does not include amounts contributed by the Company and any Section 415 Affiliate, on behalf of an Employee, pursuant to the terms of a salary reduction agreement, to a plan or program under Sections 403(b), 401(k), 129 or 125 of the Internal Revenue Code.

    (ii)     Effective January 1, 1998, Section 415 Compensation paid or made available during a calendar year shall include any elective deferral (as defined in Code Section 402(g)(3)), and any amount which is not includible in the gross income of the Employee by reason of Code Sections 125, 129, 403(b) or 457, including amounts not available to an Employee in cash in lieu of group health coverage because the Employee is unable to certify that he has other health coverage.

        (iii)     Effective January 1, 2001, Section 415 Compensation includes elective amounts paid or made available during Plan Years that are not includible in the gross income of the Employee by reason of Code Section 132(f)(4).

    (c)     To the extent required by Treasury Regulations Section 1.415(b)-1(a)(5), Section 415 Compensation for purposes of Article 13 (Limitations on Benefits) will not exceed $200,000 as adjusted for cost-of-living increases in accordance with Code Section 401(a)(17)(B).

2.88    <u>Short-Term Union Leave</u>.  Short-Term Union Leave means a period of unpaid leave that does not exceed 30 days for purposes of discharging duties as required by the Eligible Employee's collective bargaining unit.

2.89    <u>Single Life Annuity</u>.  Single Life Annuity means the Form of Payment described in Section 10.2(a) that provides a monthly benefit to the Participant for life, with no benefit paid after the Participant's death.

2.90    <u>Social Security Retirement Age</u>.  Social Security Retirement Age means:

    (a)     Age 65, if the Participant was born before January 1, 1938;

    (b)     Age 66, if the Participant was born after December 31, 1937, but before January 1, 1955;

    (c)     Age 67, if the Participant was born after December 31, 1954; or

    (d)     Any other Social Security retirement age prescribed by Code Section 415(b)(8).

2.91    <u>Spouse</u>.  Spouse means the person who is recognized as the Participant's spouse in accordance with the laws of the state, the District of Columbia, a United States territory or a foreign jurisdiction where the marriage took place.  Spouse shall not include a Domestic Partner or a civil union partner.

2.92    <u>Termination of Employment</u>.  Termination of Employment means when a Participant is no longer employed by any Medical Care Organization.

2.93    <u>Transfer</u>.  Transfer means:

    (a)     Effective January 1, 2014, each change in a Medical Care Organization Employee's employment that results in that individual becoming:

        (i)     Eligible for a different Medical Care Organization Plan; or

        (ii)     Covered by a different retirement income formula under the main plan document, a supplement or a different supplement of the same Medical Care Organization Plan.

20

(b)    Before January 1, 2014, means each change in a Medical Care Organization Employee's employment that results in that individual becoming:

    (i)    Eligible for a different Medical Care Organization Plan; or

    (ii)    Covered by a different benefit formula (and its associated rules) within the same Medical Care Organization Plan.

(c)    For purposes of this Section, a Medical Care Organization Employee has a change in employment if he has a Termination of Employment and is then hired by a Medical Care Organization.

2.94    <u>Trust</u>.  Trust means the trust established by the Trust Agreement.

2.95    <u>Trust Agreement</u>.  Trust Agreement means the agreement entered into by Health Plan and the Trustee to fund benefits under this Plan.

2.96    <u>Trustee</u>.  Trustee means the bank or banks or Fiduciary or Fiduciaries and their successors holding funds or property of the Plan under a Trust Agreement.

2.97    <u>Union Trust</u>.  Union Trust means a Taft-Hartley defined benefit plan to which a Medical Care Organization contributed pursuant to a collective bargaining agreement.

2.98    <u>Union Trust Benefit</u>.  Union Trust Benefit means the Actuarial Equivalent of a Participant's vested benefit under a Union Trust for periods of employment with a Medical Care Organization expressed in the form of a Single Life Annuity payable at Normal Retirement Date.

2.99    <u>Union Trust Years of Credited Service</u>.  Union Trust Years of Credited Service means the Years of Credited Service credited to a Participant under the applicable Supplement for any period of employment during which he participated in a Union Trust.

2.100    <u>Vested</u>.  Vested means entitled to receive benefits under the Plan regardless of Termination of Employment.  A Participant who has completed five Years of Vesting Service, or who is credited with at least one Hour of Vesting Service on or after attaining Normal Retirement Age, is Vested and has a nonforfeitable right to 100 percent of his Accrued Benefit.

2.101    <u>Workers Compensation Hours</u>.  Workers Compensation Hours means hours credited pursuant to Section 3.3.

2.102    <u>Workers Compensation Leave</u>.  Workers Compensation Leave means the period during which an Eligible Employee is eligible for and receives workers compensation disability payments from the Participating Company's workers compensation provider.

2.103    <u>Year of Credited Service</u>.  Year of Credited Service has the meaning assigned to it under Section 3.4.

2.104   <u>Year of Retirement Eligibility Service</u>.   Year of Retirement Eligibility Service has the meaning assigned to it under Section 3.5.

2.105   <u>Year of Vesting Service</u>.   Year of Vesting Service has the meaning assigned to it under Section 3.6 and is commonly referred to as Year of Service.

20824725v.2

# ARTICLE 3

## SERVICE

3.1    <u>Hour of Credited Service</u>.  An Hour of Credited Service is credited to an Eligible Employee as described in this Section.  An Eligible Employee will only receive credit for an Hour of Credited Service under one of the paragraphs listed in this Section and will not be credited with more than one Hour of Credited Service for any one hour.

    (a)    <u>General Rules</u>.  Hours for non-performance of duties will be credited in a manner consistent with DOL Regulations Section 2530.200b-2(b).  Hours shall be credited to the applicable computation period consistent with DOL Regulations Section 2530.200b-2(c).

    (b)    <u>Active Service</u>.

        (i)    Each hour for which an Eligible Employee is paid or entitled to payment for the performance of duties for the Participating Company, credited to the period to which payment relates.

        (ii)    Each hour for which an Eligible Employee is paid or entitled to payment from a Participating Company for the non-performance of duties (including payment for sick leave, vacation, and holidays), credited to the period to which payment relates; provided, however, that, except as otherwise provided in the Plan, an hour for which an Eligible Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not credited to an Eligible Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable workers compensation, unemployment compensation or disability insurance laws.

        (iii)    Each hour for which an Eligible Employee is compensated or entitled to compensation on account of an award or agreement by the Participating Company for back pay, irrespective of mitigation of damages to the extent that such award or agreement is intended to compensate the Eligible Employee for periods during which he would have been engaged in the performance of duties for the Participating Company.

    (c)    <u>Absences</u>.  Hours of Credited Service not otherwise credited under subsection (b) are credited for hours attributable to the periods of approved unpaid absence from the Participating Company identified in this subsection only if the applicable Supplement specifically provides for the application of the specific paragraph.

        (i)    Periods of approved unpaid absence during which an Eligible Employee is disabled and eligible to receive disability income benefits as provided by the Participating Company's short-term or long-term disability insurance program, except that accrual of service under this provision ends on the earlier of death, Benefit Commencement Date, or the end of disability

income benefits.  Hours so credited are based on the rate of scheduled hours on the last day worked preceding absence for disability.

(ii)    Periods of Long-Term Union Leave that begin on or after the date specified in the Supplement, except that no more than one year is counted for each leave event.  Hours of Credited Service credited for a Long-Term Union Leave are based on the rate of scheduled hours on the first day preceding the leave, unless the Eligible Employee was scheduled to work short-hour, on-call, or per diem, in which case the hours are based on the Eligible Employee's average rate of scheduled hours over the six-month period immediately preceding the unpaid absence.

(iii)   Periods of Elected Union Official Leave that begin on or after the date specified in the Supplement, except that no more than two consecutive years are counted for each leave event.  Hours of Credited Service credited for Elected Union Official Leave are based on the rate of scheduled hours on the first day preceding the leave, unless the Eligible Employee was scheduled to work short-hour, on-call, or per diem, in which case the hours are based on the Eligible Employee's average rate of scheduled hours over the six-month period immediately preceding the unpaid absence.

(iv)   Periods of Short-Term Union Leave that begin on or after the date specified in the Supplement.  Hours of Credited Service credited for Short-Term Union Leave are based on the rate of scheduled hours on the first day preceding the leave, unless the Eligible Employee was scheduled to work short-hour, on-call, or per diem, in which case the hours are based on the Eligible Employee's average rate of scheduled hours over the six-month period immediately preceding the unpaid absence.

(d)    Imputed Service.  An individual who was an employee of a Non-Participating Medical Care Organization before becoming an Eligible Employee shall have Hours of Credited Service imputed for periods before becoming an Eligible Employee as provided in Sections 3.1(d)(i), (ii), and (iii).

(i)    Active Service with Non-Participating Medical Care Organization Before Becoming an Eligible Employee.

(A)   Each hour for which such individual was paid or entitled to payment for the performance of duties for a Non-Participating Medical Care Organization.

(B)   Each hour for which such individual was paid or entitled to payment by a Non-Participating Medical Care Organization for the non-performance of duties (including payment for sick leave, vacation, and holidays); provided, however, that, except as otherwise provided in the Plan, an hour for which an individual was directly or indirectly paid, or entitled to payment, on account of a period

24

during which no duties were performed is not credited to an individual if such payment is made or due under a plan maintained solely for the purpose of complying with applicable workers compensation, unemployment compensation or disability insurance laws.

(C)     Each hour for which an individual is compensated or entitled to compensation by a Non-Participating Medical Care Organization on account of an award for back pay, irrespective of mitigation of damages.

(D)     Any additional hours as specifically provided in the applicable Supplement.

(ii)     <u>Absences with Non-Participating Medical Care Organization Before Becoming an Eligible Employee</u>.  Hours of Credited Service not otherwise credited under paragraph (i) are credited for hours attributable to the periods of absence from a Non-Participating Medical Care Organization before becoming an Eligible Employee identified in this paragraph only if the applicable Supplement specifically provides for the application of the specific subparagraph.

(A)     Periods of approved unpaid absence for periods during which an individual is disabled and eligible to receive disability income benefits as provided by the applicable Non-Participating Medical Care Organization's short-term or long-term disability insurance program, except that accrual of service under this provision ends on the earlier of death, Benefit Commencement Date, or the end of disability income benefits.  Hours so credited are based on the rate of scheduled hours on the last day worked preceding absence for disability.

(B)     Periods of long-term union leave that begin on or after the date specified in the Supplement, except that no more than one year is counted for each leave event.  Hours of Credited Service credited for a long-term union leave are based on the rate of scheduled hours on the first day preceding the leave, unless the individual was scheduled to work short-hour, on-call, or per diem, in which case the hours are based on the individual's average rate of scheduled hours over the six-month period immediately preceding the unpaid absence.

(C)     Periods of elected union official leave that begin on or after the date specified in the Supplement, except that no more than two consecutive years are counted for each leave event.  Hours of Credited Service credited for elected union official leave are based on the rate of scheduled hours on the first day preceding the leave,

25

unless the individual was scheduled to work short-hour, on-call, or per diem, in which case the hours are based on the individual's average rate of scheduled hours over the six-month period immediately preceding the unpaid absence.

(D)     Periods of short-term union leave that begin on or after the date specified in the Supplement. Hours of Credited Service credited for short-term union leave are based on the rate of scheduled hours on the first day preceding the leave, unless the individual was scheduled to work short-hour, on-call, or per diem, in which case the hours are based on the individual's average rate of scheduled hours over the six-month period immediately preceding the unpaid absence.

(iii)   <u>Equivalency Rule</u>. A Participant who incurs a Transfer and who was covered under an Original Plan that did not count hours of credited service will be credited with:

(A)     190 Hours of Credited Service for any month in which the Participant is actively employed for at least one day in an employment position covered by such an Original Plan; and

(B)     For any Participant who Transfers during a month and as a result is credited with Hours of Credited Service for the applicable month, the Hours of Credited Service credited for the month of Transfer is the greater of the Hours of Credited Service actually credited for the applicable month or 190.

(e)     <u>Periods of Employment Excluded From Hours of Credited Service</u>. Notwithstanding anything in this Section to the contrary, Eligible Employees do not receive Hours of Credited Service for any period of employment during which such individual was not an eligible employee in any Medical Care Organization Plan and for which a Medical Care Organization made a contribution on behalf of such individual to an individual retirement account plan, defined contribution plan, or 403(b) plan, or for any period as a Leased Employee.

3.2     <u>Hour of Vesting Service</u>. An Hour of Vesting Service is credited to an Employee as described in this Section. An Employee will only receive credit for an Hour of Vesting Service under one of the paragraphs listed in this Section and will not be credited with more than one Hour of Vesting Service for any one hour.

(a)     <u>General Rules</u>. Hours for non-performance of duties will be credited in a manner consistent with DOL Regulations Section 2530.200b-2(b). Hours shall be credited to the applicable computation period consistent with DOL Regulations Section 2530.200b-2(c).

26

(b)  <u>Active Service</u>.

    (i)  Each hour for which an Employee is paid or entitled to payment for the performance of duties for the Controlled Group Company, credited to the period to which payment relates.

    (ii)  Each hour for which an Employee is paid or entitled to payment from a Controlled Group Company for the non-performance of duties (including payment for sick leave, vacation, and holidays), credited to the period to which payment relates; provided, however, that, except as otherwise provided in the Plan, an hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not credited to an Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable workers compensation, unemployment compensation or disability insurance laws.

    (iii)  Each hour for which an Employee is compensated or entitled to compensation on account of an award or agreement by the Controlled Group Company for back pay, irrespective of mitigation of damages to the extent that such award or agreement is intended to compensate the Employee for periods during which he would have been engaged in the performance of duties for the Controlled Group Company.

(c)  <u>Absences</u>.  Hours of Vesting Service not otherwise credited under subsection (b) are credited for hours attributable to the periods of absence from a Controlled Group Company identified in this subsection only if the applicable Supplement specifically provides for the application of the specific paragraph.

    (i)  Periods of approved unpaid absence for periods during which an Employee is disabled and eligible to receive disability income benefits as provided by a Controlled Group Company's short-term or long-term disability insurance program, except that accrual of service under this provision ends on the earlier of death, Benefit Commencement Date, or the end of disability income benefits.  Hours so credited are based on the rate of scheduled hours on the last day worked preceding absence for disability.

    (ii)  Periods of Long-Term Union Leave that begin on or after the date specified in the Supplement, except that no more than one year is counted for each leave event.  Hours of Vesting Service credited for a Long-Term Union Leave are based on the rate of scheduled hours on the first day preceding the leave, unless the Employee was scheduled to work short-hour, on-call, or per diem, in which case they are based on the Employee's average rate of scheduled hours over the six-month period immediately preceding such unpaid absence.

(iii)    Periods of Elected Union Official Leave that begin on or after the date specified in the Supplement, except that no more than two consecutive years are counted for each leave event. Hours of Vesting Service credited for Elected Union Official Leave are based on the rate of scheduled hours on the first day preceding the leave, unless the Employee was scheduled to work short-hour, on-call, or per diem, in which case they are based on the Employee's average rate of scheduled hours over the six-month period immediately preceding such unpaid absence.

(iv)    Periods of Short-Term Union Leave that begins on or after the date specified in the Supplement. Hours of Vesting Service credited for Short-Term Union Leave are based on the rate of scheduled hours on the first day preceding the leave, unless the Employee was scheduled to work short-hour, on-call, or per diem, in which case they are based on the Employee's average rate of scheduled hours over the six-month period immediately preceding such unpaid absence.

(v)    Periods of industrial leave, credited as provided in (A) and (B):

    (A)    Such hours are credited based upon the Participant's average rate of scheduled hours over the six-month period immediately preceding the industrial leave.

    (B)    Hours will not be credited for industrial leave if it would be more advantageous to the Participant to be credited with Hours of Retirement Eligibility Service for a period of Workers Compensation Leave.

(d)    <u>Imputed Service</u>. Hours of Vesting Service shall be imputed to an individual who was an employee (other than a Leased Employee) of a Non-Controlled Group Company before becoming an Eligible Employee and/or after his Controlled Group Termination as follows.

(i)    <u>Active Service</u>.

    (A)    Each hour for which such individual is paid or entitled to payment for the performance of duties for a Non-Controlled Group Company whether before or after he becomes an Employee.

    (B)    Each hour for which such individual is paid or entitled to payment for the non-performance of duties for the Non-Controlled Group Company (including payment for sick leave, vacation, and holidays); provided, however, that, except as otherwise provided in the Plan, an hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not credited to an Employee if such payment is made or due under a plan maintained solely for the purpose of

complying with applicable workers compensation, unemployment compensation or disability insurance laws.

(C) Each hour for which an individual is compensated or entitled to compensation by a Non-Controlled Group Company on account of an award for back pay, irrespective of mitigation of damages, whether before or after he becomes an Employee.

(D) Employment before July 22, 1996 with CHP Companies, Inc. and Community Health Plan.

(E) Effective for Plan Years beginning January 1, 1997, employment with Group Health Cooperative, Group Health Northwest, and Group Health Permanente Medical Group if the Participant transferred within 30 days of termination of employment from such entity to a Medical Care Organization and the transfer date is before March 1, 2001. Effective March 1, 2001, employment with such entities will not count as Hours of Vesting Service.

(F) Employment with OnCall Healthcare Communications if the Participant was employed by OnCall Healthcare Communications on November 27, 2001.

(G) Employment with Moreno Valley Community Hospital before June 20, 2008 if the Participant was employed by Moreno Valley Community Hospital on June 19, 2008 and employed by a Medical Care Organization on or before June 20, 2008.

(H) Any additional hours as specifically provided in the applicable Supplement.

(ii) Absences. Hours of Vesting Service not otherwise credited under paragraph (i) are credited for hours attributable for periods of absence from a Non-Controlled Group Company whether before or after the individual became an Employee as identified in this paragraph only if the applicable Supplement specifically provides for the application of the specific subparagraph.

(A) Periods of approved unpaid absence for periods during which an individual is disabled and eligible to receive disability income benefits as provided by the Non-Controlled Group Company's short-term or long-term disability insurance program, except that accrual of service under this provision ends on the earlier of death, Benefit Commencement Date, or the end of disability income benefits. Hours so credited are based on the rate of scheduled hours on the last day worked preceding absence for disability.

29

(B)     Periods of long-term union leave that begin on or after the date specified in the Supplement, except that no more than one year is counted for each leave event. Hours of Vesting Service credited for a long-term union leave are based on the rate of scheduled hours on the first day preceding the leave, unless the individual was scheduled to work short-hour, on-call, or per diem, in which case they are based on the individual's average rate of scheduled hours over the six-month period immediately preceding such unpaid absence.

(C)     Periods of elected union official leave that begin on or after the date specified in the Supplement, except that no more than two consecutive years are counted for each leave event. Hours of Vesting Service credited for elected union official leave are based on the rate of scheduled hours on the first day preceding the leave, unless the individual was scheduled to work short-hour, on-call, or per diem, in which case they are based on the individual's average rate of scheduled hours over the six-month period immediately preceding such unpaid absence.

(D)     Periods of short-term union leave that begin on or after the date specified in the Supplement. Hours of Vesting Service credited for short-term union leave are based on the rate of scheduled hours on the first day preceding the leave, unless the individual was scheduled to work short-hour, on-call, or per diem, in which case they are based on the individual's average rate of scheduled hours over the six-month period immediately preceding such unpaid absence.

(iii)   Equivalency Rule. A Participant who Transfers and who was covered under an Original Plan that did not count hours of service will be credited with:

(A)     190 Hours of Vesting Service for any month in which the Participant is actively employed for at least one day in an employment position covered by the Original Plan; and

(B)     For any Participant who Transfers during a month and as a result is credited with Hours of Vesting Service for that month, the Hours of Vesting Service credited for the month of Transfer is the greater of the Hours of Vesting Service credited for that month or 190.

3.3   Workers Compensation Hours. This Section 3.3 shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Section. Workers Compensation Hours means any hour imputed for a Workers Compensation Leave. Workers Compensation Hours are imputed only for the purpose of calculating Years of Retirement Eligibility Service and are not imputed for purposes of calculating Years of Vesting Service, Years of Credited Service, or any other purpose.

30

(a)    Eligibility.

    (i)    To receive Workers Compensation Hours, the Participant must be represented by the union identified in the applicable Supplement as of the Participant's Termination of Employment;

    (ii)    Hours may be credited only for any Workers Compensation Leave that begins on or after the date specified in the Supplement; and

    (iii)    Hours may be credited only for any Workers Compensation Leave that is immediately preceded by a period in which the Participant was credited with Hours of Credited Service.

(b)    General.  A Participant who satisfies the requirements in subsection (a) will be credited, at Termination of Employment, with Workers Compensation Hours for any Plan Year in which he had a Workers Compensation Leave as follows:

    (i)    Such hours will only be credited in a Plan Year during which a Participant did not receive a full Year of Vesting Service and only to augment or complete a Year of Retirement Eligibility Service in the year or years in which the Workers Compensation Leave occurred.

    (ii)    Such hours are limited to a lifetime maximum of 1,000 hours.

    (iii)    If a Workers Compensation Leave spans more than one Plan Year, hours may be credited to more than one Plan Year, but only for the period in each Plan Year during which the Participant was on a Workers Compensation Leave.

    (iv)    Such hours are credited based upon the Participant's average rate of scheduled hours over the six-month period immediately preceding the Workers Compensation Leave.

    (v)    If the Participant receives Hours of Vesting Service for the leave because it is also an industrial leave, Workers Compensation Hours will not be imputed.

20824725v.2

3.4    Year of Credited Service.  A Participant is credited with full and partial Years of Credited Service as determined under the rules in this Section that are specifically identified in the applicable Supplement.

(a)    Full Year of Credited Service.

(i)    2,000 Hour Rule.  A Participant is credited with a Year of Credited Service for each calendar year in which he is credited with at least 2,000 Hours of Credited Service.

(ii)    1,900 Hour Rule.  A Participant is credited with a Year of Credited Service for each calendar year in which he is credited with at least 1,900 Hours of Credited Service.

(iii)    1,800 Hour Rule.  A Participant is credited with a Year of Credited Service for each calendar year in which he is credited with at least 1,800 Hours of Credited Service.

(iv)    Time Equivalency Method.  A Participant is credited with Years of Credited Service and fractional Years of Credited Service equal to the sum of: (A) one-twelfth (1/12) of a Year of Credited Service for each full calendar month worked, and (B) one-three hundred sixtieth (1/360) of a Year of Credited Service for each day worked during a month in which less than a full calendar month was worked.  In no event will the fractional Years of Credited Service credited be less than the Participant's Hours of Credited Service divided by 2,000.

(b)    Partial Year of Credited Service.

(i)    Proportional Credit for less than 2,000.  A Participant who is credited with fewer than 2,000 Hours of Credited Service during a calendar year shall be credited with a fractional Year of Credited Service for that calendar year equal to his Hours of Credited Service during the calendar year divided by 2,000.

(ii)    Proportional Credit for 1,000 to 2,000.  A Participant who is credited with at least 1,000 Hours of Credited Service but fewer than 2,000 Hours of Credited Service during a calendar year shall be credited with a fractional Year of Credited Service for that calendar year equal to his Hours of Credited Service during the calendar year divided by 2,000.  A Participant who is credited with less than 1,000 Hours of Credited Service for a calendar year will not be credited with a full or fractional Year of Credited Service for that calendar year.

(iii)    Proportional Credit for < 1,000 but scheduled hours > 20 based on 2,000.  A Participant who is credited with fewer than 1,000 Hours of Credited Service during a calendar year and who was scheduled to work at least one-half of the full time work schedule of such Participant's department during

32

20824725v.2

such calendar year shall be credited with a fractional Year of Credited Service equal to his Hours of Credited Service during the calendar year while scheduled to work at least one-half of the full-time work schedule of such Participant's department divided by 2,000. A Participant who is credited with fewer than 1,000 Hours of Credited Service during a calendar year and was never scheduled to work at least one-half of the full-time work schedule of such Participant's department during such calendar year will not be credited with any Credited Service for that calendar year.

(iv)    Proportional Credit for less than 1,900. A Participant who is credited with fewer than 1,900 Hours of Credited Service during a calendar year shall be credited with a fractional Year of Credited Service for that calendar year equal to his Hours of Credited Service during the calendar year divided by 1,900.

(v)    Proportional Credit for less than 1,800. A Participant who is credited with fewer than 1,800 Hours of Credited Service during a calendar year shall be credited with a fractional Year of Credited Service for that calendar year equal to his Hours of Credited Service during the calendar year divided by 1,800.

(vi)    Proportional Credit for 1,000 to 1,800. A Participant who is credited with at least 1,000 Hours of Credited Service but fewer than 1,800 Hours of Credited Service during a calendar year shall be credited with a fractional Year of Credited Service for the calendar year equal to his Hours of Credited Service during the calendar year divided by 1,800.

(vii)    Partial Year Time Equivalency Method. A Participant is credited with Years of Credited Service and fractional Years of Credited Service equal to the sum of: (A) one-twelfth (1/12) of a Year of Credited Service for each full calendar month worked, and (B) one-three hundred sixtieth (1/360) of a Year of Credited Service for each day worked during a month in which less than a full calendar month was worked. In no event will the fractional Years of Credited Service credited be less than the Participant's Hours of Credited Service divided by 2,000.

(viii)    Proportional Credit for < 1,000 but scheduled hours > 20 based on 1,800. A Participant who is credited with fewer than 1,000 Hours of Credited Service during a calendar year and who was scheduled to work at least one-half of the full time work schedule of such Participant's department during such calendar year shall be credited with a fractional Year of Credited Service equal to his Hours of Credited Service during the calendar year while scheduled to work at least one-half of the full-time work schedule of such Participant's department divided by 1,800. A Participant who is credited with fewer than 1,000 Hours of Credited Service during a calendar year and was never scheduled to work at least one-half of the full-time work

33

schedule of such Participant's department during such calendar year will not be credited with any Credited Service for that calendar year.

3.5     Year of Retirement Eligibility Service.

(a)     General.  Years of Retirement Eligibility Service means a Participant's Years of Vesting Service.

(b)     Workers Compensation Hours.  If a Participant is credited with Workers Compensation Hours, Years of Retirement Eligibility Service means the Years of Vesting Service, as determined under Section 3.6, that a Participant would have earned if his Workers Compensation Hours were treated as Hours of Vesting Service as described in Section 2.101.

3.6     Year of Vesting Service.  A Participant is credited with full and partial Years of Vesting Service as determined under the following rules as specified in the applicable Supplement.

(a)     Full Year of Vesting Service.  An Employee is credited with a Year of Vesting Service for each calendar year in which he is credited with at least 1,000 Hours of Vesting Service.

(b)     Partial Year of Vesting Service.

(i)     Proportional Credit.  An Employee who is credited with fewer than 1,000 Hours of Vesting Service during a calendar year will be credited with a fractional Year of Vesting Service for the calendar year equal to his Hours of Vesting Service for the year divided by 1,000.

(ii)     No Partial Year.  An Employee who is credited with fewer than 1,000 Hours of Vesting Service during a calendar year will not be credited with a full or partial Year of Vesting Service for that calendar year.

(iii)     Monthly Hours Method.  An Employee who is credited with fewer than 1,000 Hours of Vesting Service during a calendar year will be credited with a fractional Year of Vesting Service for the calendar year equal to 1/12 of a Year of Vesting Service for each month in which the Employee is credited with at least 150 Hours of Vesting Service.

(iv)     Partial Year Time Equivalency Method.  An Employee who is credited with fewer than 1,000 Hours of Vesting Service during a calendar year will be credited with a fractional Year of Vesting Service for the calendar year equal to:

(A)     1/12 of a Year of Vesting Service for each full calendar month worked; and

(B)     1/360 of a Year of Vesting Service for each day worked during a month in which less than a full calendar month was worked.

34

(c)    <u>Vesting Service for Transfer</u>.  A Participant who incurs a Transfer is credited with Years of Vesting Service equal to the greater of:

(i)    The Participant's Years of Vesting Service; or

(ii)    The sum of the Participant's years of vesting service in each calendar year calculated under the rules of the defined benefit plan sponsored by a Medical Care Organization in which he participated as of December 31 of each calendar year.  If the Participant did not participate in a defined benefit plan sponsored by a Medical Care Organization as of December 31 of a calendar year but is credited with imputed Hours of Vesting Service, he is credited with a Year of Vesting Service if he is credited with at least 1,000 Hours of Vesting Service for that year.

(iii)    For purposes of paragraph (ii), for a Plan Year for which a Participant was credited with imputed Hours of Vesting Service for a period of time when he was not an eligible employee in a qualified defined benefit plan sponsored by a Medical Care Organization, and was not an eligible employee in a qualified defined benefit plan sponsored by a Medical Care Organization as of December 31 of that Plan Year, the Participant is credited with a Year of Vesting Service only if he is credited with at least 1,000 Hours of Vesting Service.

20824725v.2

## ARTICLE 4

## ELIGIBILITY AND PARTICIPATION

4.1   <u>Participation</u>.  An Eligible Employee shall become a Participant upon satisfying the rule specifically identified in the applicable Supplement.

    (a)   <u>Immediate Participation</u>.  An Eligible Employee becomes a Participant on the first date on which he is both:

        (i)   An Eligible Employee, and

        (ii)   Credited with an Hour of Vesting Service.

    (b)   <u>Hours Based Participation</u>.  An Eligible Employee becomes a Participant on the latest of:

        (i)   The first anniversary of the date on which he is first credited with an Hour of Vesting Service if he is credited with at least 1,000 Hours of Vesting Service during that 12-month period;

        (ii)   The first day of a Plan Year beginning after the date on which he is first credited with an Hour of Vesting Service during which he is credited with 1,000 Hours of Vesting Service; or

        (iii)   The date he becomes an Eligible Employee.

4.2   <u>Termination of Participation</u>.

    (a)   A Participant will cease to be a Participant as of his Termination of Employment, unless he has a Vested benefit under the Plan, in which event his participation will continue for the limited purpose of receiving such benefits until the earlier of:

        (i)   The date when all of the Participant's benefits have been distributed or have been deemed to have been distributed; or

        (ii)   The date of the Participant's death.

    (b)   If a Participant incurs a Transfer, but does not incur a Termination of Employment, his participation will continue for purposes of determining his Final Average Compensation and Years of Vesting Service until his Termination of Employment. Following his Termination of Employment, the Participant will cease to be a Participant as of his Termination of Employment, unless he has a Vested benefit under the Plan, in which event his participation will continue for the limited purpose of receiving his benefits under the Plan until the earlier of:

        (i)   The date when all of the Participant's benefits have been distributed or have been deemed to have been distributed; or

      (ii)     The date of the Participant's death.

(c)     If a Participant has a Termination of Employment and is not Vested, the Participant shall be deemed to receive an immediate distribution of his benefit.

37

# ARTICLE 5

## RETIREMENT INCOME FORMULA

5.1    <u>Retirement Income Formula</u>.  A Participant's benefit shall be calculated under the Retirement Income Formula identified in the applicable Supplement.

5.2    <u>Transfers</u>.

    (a)    <u>Single Transfer</u>.  For a Participant who has incurred a Transfer, the amount determined under Section 5.1 shall be offset by the lesser of:

        (i)    The Original Plan Benefit; or

        (ii)    The benefit calculated under the Retirement Income Formula in Section 5.1, using Final Average Compensation in effect at Termination of Employment, and Offset Years of Credited Service.

    (b)    <u>Multiple Transfers</u>.  If a Participant has incurred more than one Transfer, the amount determined under Section 5.1 shall be offset by the lesser of:

        (i)    The sum of all Original Plan Benefits; or

        (ii)    The benefit under Section 5.1, calculated using such Participant's Final Average Compensation in effect at Termination of Employment, and Offset Years of Credited Service as of the Original Plan End Date for the Original Plan immediately preceding his participation in this Plan.

    (c)    <u>Postponed Retirement</u>.  This Section 5.2 does not apply to a Participant who has incurred at least one Transfer and who receives a Postponed Retirement Benefit. Such Participant's Postponed Retirement Benefit and any applicable offset shall be determined under Section 7.6.

5.3    <u>Union Trust Offset</u>.  This Section 5.3 shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Section.  A Participant's benefit shall equal the greater of:

    (a)    The benefit calculated under Section 5.1 excluding Union Trust Years of Credited Service; or

    (b)    The benefit equal to (i) minus (ii).

        (i)    The benefit calculated under Section 5.1 using the Participant's Final Average Compensation at Termination of Employment and including Union Trust Years of Credited Service.

        (ii)    The Union Trust Benefit.

38

(c)     If subsection (b) applies and an Eligible Employee is entitled to a Postponed Retirement Benefit, then Postponed Retirement Benefit shall be calculated under Section 7.6 by applying the Union Trust Offset in each step where the Original Plan Offset is applied.

5.4     <u>Nonduplication of Benefits</u>.  Notwithstanding anything in this Article to the contrary, Retirement Income payable to or on behalf of a Participant under this Plan at any subsequent Benefit Commencement Date will be offset by the Actuarial Equivalent of any Retirement Income previously paid to or on behalf of the Participant under this Plan.

20824725v.2

## ARTICLE 6

### ELIGIBILITY FOR RETIREMENT BENEFITS

6.1    Normal Retirement Benefit. A Participant who has a Controlled Group Termination on his Normal Retirement Date is eligible to receive a Normal Retirement Benefit.

6.2    Early Retirement Benefit. A Participant who has a Termination of Employment before his Normal Retirement Date is eligible to receive an Early Retirement Benefit if he satisfies the rule in this Section that is specifically identified in the applicable Supplement.

(a)    55 and 15. A Participant has attained age 55 and completed at least 15 Years of Retirement Eligibility Service as of his Termination of Employment.

(b)    55 and 10. A Participant has attained age 55 and completed at least 10 Years of Retirement Eligibility Service as of his Termination of Employment.

(c)    70 Point Rule. The sum of the Participant's age and Years of Retirement Eligibility Service is at least 70 as of his Termination of Employment.

(d)    75 Point Rule. The sum of the Participant's age and Years of Retirement Eligibility Service is at least 75 as of his Termination of Employment.

(e)    Grandfathered 55 and 10. A Participant has attained age 55 and completed at least 10 Years of Retirement Eligibility Service as of his Termination of Employment, but only if he was a Participant in the Plan on December 31, 1968.

6.3    Disability Retirement Benefit. This Section 6.3 shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Section. A Participant is eligible for a Disability Retirement Benefit if he has a Termination of Employment and:

(a)    He has completed at least 10 Years of Vesting Service;

(b)    He is eligible to receive disability income benefits under Title II of the Social Security Act for such disability; and

(c)    The effective date of the disability, as determined by the Social Security Administration, is during a period while he is employed by a Participating Company, and is on or before his Termination of Employment.

6.4    Deferred Vested Retirement Benefit. A Participant is eligible for a Deferred Vested Retirement Benefit if he has a Controlled Group Termination before his Normal Retirement Date, is Vested, and is not eligible for an Early Retirement Benefit or Disability Retirement Benefit, if applicable.

6.5     <u>Postponed Retirement Benefit</u>.  A Participant who has a Controlled Group Termination after his Normal Retirement Date and who has not elected an In-Service Retirement Benefit is eligible for a Postponed Retirement Benefit.

6.6     <u>In-Service Retirement Benefit</u>.  This Section 6.6 shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Section.  A Participant who has reached his Normal Retirement Date and has not incurred a Controlled Group Termination is eligible for an In-Service Retirement Benefit.

41

## ARTICLE 7

### AMOUNT OF RETIREMENT BENEFITS

7.1 <u>Amount of Retirement Benefits</u>. A Participant's retirement benefit is based on his Accrued Benefit as of his Benefit Commencement Date. This Article provides the methodology for calculating a Participant's Normal Retirement Benefit, Early Retirement Benefit, Disability Retirement Benefit, Deferred Vested Retirement Benefit, Postponed Retirement Benefit, and In-Service Retirement Benefit.

7.2 <u>Normal Retirement Benefit</u>.

    (a) <u>General</u>. A Participant's Normal Retirement Benefit equals the Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

    (b) <u>Minimum</u>. In no event will a Participant's Accrued Benefit be less than the largest Early Retirement Benefit the Participant could have received if he had retired on an Early Retirement Date.

7.3 <u>Early Retirement Benefit</u>. A Participant's Early Retirement Benefit equals his Accrued Benefit as of his Benefit Commencement Date, adjusted as provided in this Section.

    (a) <u>Commencement Before Normal Retirement Date</u>. If a Participant elects to begin receiving his Early Retirement Benefit before his Normal Retirement Date, his Early Retirement Benefit equals the amount calculated according to the rule in this subsection specifically provided in the applicable Supplement.

        (i) <u>Actuarial Equivalent</u>. The Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

        (ii) <u>5%, Act. Equiv. pre-55</u>. His Accrued Benefit reduced:

            (A) By .4167% (5% per year) for each of the first 120 complete months and prorated for any portion of a month that his Benefit Commencement Date precedes his Normal Retirement Date; and

            (B) Using the actuarial factors in Section 2.3(a) for the period by which his Benefit Commencement Date precedes age 55.

        (iii) <u>3%, 5%, No pre-55</u>. His Accrued Benefit reduced by:

            (A) .25% (3% per year) for each of the first 60 completed months and prorated for any portion of a month that his Benefit Commencement Date precedes his Normal Retirement Date; and

            (B) .4167% (5% per year) for each additional complete month and prorated for any portion of a month for each of the next 60 months that his Benefit Commencement Date precedes age 60.

42

    (iv)    <u>3%, 5%</u>. His Accrued Benefit reduced by:

        (A)    .25% (3% per year) for each of the first 60 completed months and prorated for any portion of a month that his Benefit Commencement Date precedes his Normal Retirement Date; and

        (B)    .4167% (5% per year) for each additional complete month and prorated for any portion of a month for each month that his Benefit Commencement Date precedes age 60.

(b)    <u>Commencement On or After Normal Retirement Date</u>. If a Participant elects to begin receiving his Early Retirement Benefit on or after his Normal Retirement Date, his Early Retirement Benefit equals the Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

(c)    <u>Minimum</u>. In no event will a Participant's Early Retirement Benefit be less than the Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

7.4    <u>Disability Retirement Benefit</u>. A Participant's Disability Retirement Benefit equals his Accrued Benefit earned as of his Disability Retirement Date, adjusted as provided in this Section.

(a)    <u>Commencement Before Normal Retirement Date</u>. If the Participant elects to begin receiving his Disability Retirement Benefit before his Normal Retirement Date, his Disability Retirement Benefit equals the amount calculated according to the rule in this subsection specifically provided in the applicable Supplement.

    (i)    <u>Actuarial Equivalent</u>. The Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

    (ii)    <u>5%, Act. Equiv. pre-55</u>. His Accrued Benefit reduced:

        (A)    .4167% (5% per year) for each additional complete month and prorated for any portion of a month for each of the next 120 months that his Benefit Commencement Date precedes his Normal Retirement Date; and

        (B)    Using the actuarial factors in Section 2.3(a) for the period by which his Benefit Commencement Date precedes age 55.

    (iii)    <u>Unreduced</u>. The Actuarial Equivalent, as of his Benefit Commencement Date, of the unreduced Accrued Benefit he would have received on his earliest possible Benefit Commencement Date.

(b)    <u>Commencement On or After Normal Retirement Date</u>. If a Participant elects to begin receiving his Disability Retirement Benefit on or after his Normal Retirement

Date, his Disability Retirement Benefit equals the Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

(c)    <u>Minimum</u>. In no event will a Participant's Disability Retirement Benefit be less than the Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

7.5    <u>Deferred Vested Retirement Benefit</u>. A Participant's Deferred Vested Retirement Benefit equals his Accrued Benefit as of his Benefit Commencement Date, adjusted as described in this Section:

(a)    <u>Commencement Before Normal Retirement Date</u>. If a Participant who satisfies the requirements of Section 9.4(a) elects to begin receiving his Deferred Vested Retirement Benefit before his Normal Retirement Date, his Deferred Vested Retirement Benefit equals the amount calculated according to the rule in this subsection specifically provided in the applicable Supplement.

(i)    <u>Actuarial Equivalent</u>. The Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

(ii)    <u>5%, Act. Equiv. pre-55</u>. His Accrued Benefit is reduced:

(A)    .4167% (5% per year) for each additional complete month and prorated for any portion of a month for each of the 120 months that his Benefit Commencement Date precedes his Normal Retirement Date; and

(B)    Using the actuarial factors in Section 2.3(a) for the period by which his Benefit Commencement Date precedes age 55.

(iii)    <u>3%, 5%, No pre-55</u>. His Accrued Benefit is reduced by:

(A)    .25% (3% per year) for each of the first 60 completed months and prorated for any portion of a month that his Benefit Commencement Date precedes his Normal Retirement Date; and

(B)    .4167% (5% per year) for each additional complete month and prorated for any portion of a month for each of the next 60 months that his Benefit Commencement Date precedes age 60.

(iv)    <u>3%, 5%</u>. His Accrued Benefit is reduced by:

(A)    .25% (3% per year) for each of the first 60 completed months and prorated for any portion of a month that his Benefit Commencement Date precedes his Normal Retirement Date; and

44

(B)    .4167% (5% per year) for each additional complete month and prorated for any portion of a month for each of additional month that his Benefit Commencement Date precedes age 60.

(b)    <u>Commencement On or After Normal Retirement Date</u>. If a Participant elects to begin receiving his Deferred Vested Retirement Benefit on or after his Normal Retirement Date, his Deferred Vested Retirement Benefit equals the Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

(c)    <u>Minimum</u>. In no event will a Participant's Deferred Vested Retirement Benefit be less than the Actuarial Equivalent of his Accrued Benefit as of his Benefit Commencement Date.

7.6    <u>Postponed Retirement Benefit</u>. If a Participant is eligible for a Postponed Retirement Benefit and has not elected an In-Service Retirement Benefit, the method for calculating his Postponed Retirement Benefit will depend on whether he has a Controlled Group Termination in the same Plan Year as his Normal Retirement Date (subsection (a)), has a Controlled Group Termination in a Plan Year after his Normal Retirement Date (subsection (b)), is commencing his Postponed Retirement Benefit as of his Required Beginning Date (subsection (c)), or is commencing his Postponed Retirement Benefit after receiving an In-Service Retirement Benefit (subsection (d)).

(a)    <u>Controlled Group Termination In Same Plan Year As Normal Retirement Date</u>. If a Participant eligible for a Postponed Retirement Benefit has a Controlled Group Termination in the same Plan Year as his Normal Retirement Date, his Postponed Retirement Benefit is determined according to the following steps:

(i)    As of the date of his Controlled Group Termination, calculate the greater of:

(A)    The Actuarial Equivalent of the Participant's Accrued Benefit on his Normal Retirement Date reduced by the Original Plan Offset, or

(B)    The benefit calculated using the Retirement Income Formula and Final Average Compensation and Years of Credited Service reduced by the Original Plan Offset.

(ii)    The Postponed Retirement Benefit payable at the Participant's Benefit Commencement Date is the Actuarial Equivalent of the amount calculated under paragraph (i).

(b)    <u>Controlled Group Termination in Plan Year after Normal Retirement Date</u>. If a Participant eligible for a Postponed Retirement Benefit incurs a Controlled Group Termination in a Plan Year after the Participant's Normal Retirement Date, his Postponed Retirement Benefit is determined according to the following steps:

45

(i)     As of December 31 of the Plan Year in which his Normal Retirement Date occurs, calculate the greater of:

    (A)     The Actuarial Equivalent, as of such date, of his Accrued Benefit as of his Normal Retirement Date reduced by the Original Plan Offset, or

    (B)     The benefit calculated using the Retirement Income Formula and Final Average Compensation and Years of Credited Service as of such date reduced by the Original Plan Offset.

(ii)     As of the December 31 of each subsequent Plan Year in which the Participant does not incur a Controlled Group Termination, calculate the greater of:

    (A)     The Actuarial Equivalent of the Postponed Retirement Benefit to which he would have been entitled as of the previous December 31, or

    (B)     The benefit calculated using the Retirement Income Formula and Final Average Compensation and Years of Credited Service reduced by the Original Plan Offset.

(iii)     For the Plan Year in which the Participant incurs a Controlled Group Termination, calculate as of his Controlled Group Termination the greater of:

    (A)     The Actuarial Equivalent of the Postponed Retirement Benefit to which he would have been entitled as of the previous December 31, or

    (B)     The benefit calculated using the Retirement Income Formula and Final Average Compensation and Years of Credited Service reduced by the Original Plan Offset.

(iv)     The Postponed Retirement Benefit payable at the Participant's Benefit Commencement Date is the Actuarial Equivalent of the amount calculated under paragraph (iii).

(v)     If the Participant has a Controlled Group Termination that is not a Termination of Employment and his Benefit Commencement Date is before his Termination of Employment, upon the Participant's subsequent Termination of Employment, the Participant's Postponed Retirement Benefit will be recalculated as provided in this subsection (b) and then reduced by the Actuarial Equivalent of all the benefits received under the Plan before the Termination of Employment.

46

(c)   <u>Commencement At Required Beginning Date</u>. If the Participant's Benefit Commencement Date is his Required Beginning Date, the Participant's Postponed Retirement Benefit is the greater of the amount calculated under subsection (b) or the following:

(i)   The Actuarial Equivalent of the Postponed Retirement Benefit as calculated under subsection (b) that would have been paid to the Participant as of the April 1 following the calendar year in which the Participant attains age 70 1/2, plus

(ii)   The Actuarial Equivalent of any additional benefits accrued after the April 1 following the calendar year in which the Participant attains age 70 1/2, less

(iii)   The Actuarial Equivalent of any distributions under the Plan made after the April 1 of the calendar year following the calendar year in which the Participant attains age 70 1/2.

(iv)   If the Participant has a Controlled Group Termination that is not a Termination of Employment after his Required Beginning Date, upon the Participant's subsequent Termination of Employment, the Participant's Postponed Retirement Benefit will be recalculated as provided in this subsection (c) and then reduced by all the benefits received under the Plan before the Termination of Employment.

(d)   <u>Commencement Following In-Service Retirement</u>. This Section 7.6(d) shall only apply to an Eligible Employee covered by a Supplement that specifically provides for In-Service Retirement. If a Participant elects an In-Service Retirement Benefit, the benefit he earns after his In-Service Retirement Benefit Commencement Date shall be calculated and automatically commence in accordance with this subsection.

(i)   Upon a Participant's Controlled Group Termination that is not a Termination of Employment after receiving an In-Service Retirement Benefit, the Participant's benefit will be recalculated by determining the Participant's Postponed Retirement Benefit, as provided in Section 7.6(a) and (b)(i) through (iv), and then reducing that amount by the In-Service Retirement Benefit received before the Controlled Group Termination.

(ii)   Upon the Participant's Termination of Employment (including a Termination of Employment after a Controlled Group Termination), the Participant's In-Service Retirement Benefit will be recalculated as provided in Section 7.6(b)(v), and then reducing that amount by the benefits from the Plan received before the Termination of Employment.

7.7   <u>In-Service Retirement Benefit</u>. This Section 7.7 shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Section. If a Participant is eligible for and elects to receive an In-Service Retirement Benefit, the amount of his In-Service Retirement Benefit is determined as described in subsection (a). The

47

Participant's remaining benefit is a Postponed Retirement Benefit calculated under Section 7.6, which is calculated following the Participant's Controlled Group Termination

(a)    Calculation of Benefit at In-Service Benefit Commencement Date. A Participant's In-Service Retirement Benefit equals the Postponed Retirement Benefit to which he would be entitled as of the last day of the month immediately preceding his In-Service Retirement Benefit Commencement Date, calculated as provided in Section 7.6(a) and 7.6(b)(i) through (iv), but substituting In-Service Retirement Date for Controlled Group Termination.

(b)    A Participant who elects to receive an In-Service Retirement Benefit will continue to accrue benefits under the Plan after commencing such benefit. A Participant will not receive such additional benefit until his Controlled Group Termination.

48

## ARTICLE 8

### ELECTIONS

8.1    <u>Payment Election</u>.

(a)    <u>General</u>.  Unless the Participant elects otherwise, distribution of Retirement Income will begin no later than the 60th day after the latest of the close of the Plan Year in which:

(i)     The Participant attains Normal Retirement Age;

(ii)    Occurs the 10th anniversary of the year in which the Participant commenced participation in the Plan; or

(iii)   The Participant incurs a Controlled Group Termination.

(b)    <u>Deemed Election To Defer</u>.   Notwithstanding subsection (a), the failure of a Participant to consent to a distribution when eligible to receive Retirement Income shall be deemed an election to defer distribution of benefits sufficient to satisfy this Section.

(c)    <u>Participant Election</u>.  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

8.2    <u>Spousal Consent</u>.

(a)    <u>General Rule</u>.  When a Participant makes an election under Section 8.1(c), a Participant with a Spouse may elect any Form of Payment or designate a Beneficiary other than his Spouse only with the Spouse's consent.  A Spouse's consent pursuant to this subsection is effective only with respect to the Spouse who gives such consent.

(b)    <u>Requirements</u>.  A Spouse's consent is only effective if it:

(i)     Is in writing;

(ii)    Is witnessed by a notary public;

(iii)   Is given after the Participant elects a Form of Payment and/or designates a Beneficiary;

(iv)    Is given during the Election Period;

    (v)      Acknowledges the effect of the Participant's election; and

    (vi)     Is irrevocable with respect to this election unless the Participant revokes his election.

(c)     <u>Designation of Beneficiary</u>.  The Participant's election must designate a specific Beneficiary and/or Form of Payment which may not be changed by the Participant without further spousal consent.

(d)     <u>No Spousal Consent Required</u>.  Notwithstanding any contrary Plan provision, no Spouse's consent is required if:

    (i)      It is established to the satisfaction of the Administrative Committee that there is no Spouse or that the Spouse cannot be located;

    (ii)     The Participant is legally separated or has been abandoned (within the meaning of local law) and the Participant has a court order to such effect, unless a Qualified Domestic Relations Order provides otherwise;

    (iii)    The Participant elects the normal form of benefit as described in Section 10.1 with his Spouse as the Joint Annuitant; or

    (iv)    Consent cannot be obtained because of other circumstances as permitted by Treasury Regulations and ERISA.

(e)     <u>Legally Incompetent Spouse</u>.  If the Spouse is legally incompetent to consent, the Spouse's legal guardian (including the Participant) may consent.

8.3    <u>Information for Participants</u>.

(a)     During the Election Period, but at least 30 days before the Benefit Commencement Date, the Plan shall provide the Participant with a written explanation in nontechnical language of:

    (i)      The terms and conditions of the Forms of Payment available to the Participant;

    (ii)     The relative values of those Forms of Payment;

    (iii)    An explanation of the Participant's right to make or revoke an election under this Article and the effect thereof;

    (iv)    The effect of a failure to elect a Form of Payment;

    (v)     The rights of the Participant's Spouse under this Article;

    (vi)     The Participant's rights (if any) to defer payment to a later date; and

    (vii)   The consequences of not deferring payment to a later date.

20824725v.2

(b)     Notwithstanding the foregoing, the distribution may commence less than 30 days after the written explanation is given to the Participant, provided that:

   (i)     The Participant is clearly informed that he has the right to a period of at least 30 days after receiving the written explanation to consider the decision of whether or not to elect a distribution and a particular Form of Payment;

   (ii)    The Participant, after receiving the written explanation, affirmatively elects a distribution; and

   (iii)   The distribution commences more than seven days after the written explanation is provided to the Participant.

8.4     <u>Beneficiary Change</u>.  A Participant who elects one of the Forms of Payment listed in this subsection may change his Beneficiary designation after payments commence in accordance with the requirements in Section 8.1, including the spousal consent requirements in Section 8.2 (excluding the requirement in Section 8.2(b)(iv)):

(a)     Certain and Life Annuity,

(b)     Social Security Level Income with Certain and Life Annuity,

(c)     Fixed Monthly Installments, or

(d)     100% Joint and Survivor Annuity with 15 Year Guarantee Period and Pop-Up (but only for the 15-Year Guarantee period portion as described in Section 10.2(c)(iv)).

20824725v.2

## ARTICLE 9

## TIMING OF BENEFIT PAYMENTS

9.1   <u>Normal Retirement Benefit</u>.  A Participant who is eligible for a Normal Retirement Benefit may elect a Benefit Commencement Date that is any date following his Normal Retirement Date.

9.2   <u>Early Retirement Benefit</u>.  A Participant who is eligible for an Early Retirement Benefit may elect a Benefit Commencement Date on or after the date he satisfies the requirements of Section 6.2.

9.3   <u>Disability Retirement Benefit</u>.  A Participant who is eligible for a Disability Retirement Benefit may elect a Benefit Commencement Date on or after the date he satisfies the requirements of Section 6.3.

9.4   <u>Deferred Vested Retirement Benefit</u>.

(a)   <u>General</u>.  A Participant who is eligible for a Deferred Vested Retirement Benefit may elect a Benefit Commencement Date on or after his Normal Retirement Date.

(b)   <u>Early Commencement</u>.  A Participant who is eligible for a Deferred Vested Retirement Benefit and has a Termination of Employment before his Normal Retirement Date may elect a Benefit Commencement Date that is before his Normal Retirement Date and after he satisfies the rule identified in this subsection that is specifically identified in the applicable Supplement.

(i)   <u>55 and 15</u>.  A Participant has completed at least 15 Years of Retirement Eligibility Service as of his Termination of Employment and attained age 55.

(ii)   <u>55 and 10</u>.  A Participant has completed at least 10 Years of Retirement Eligibility Service as of his Termination of Employment and attained age 55.

(iii)   <u>70 Point Rule</u>.  The sum of the Participant's age and Years of Retirement Eligibility Service is at least 70 as of his Benefit Commencement Date.

(iv)   <u>75 Point Rule</u>.  The sum of the Participant's age and Years of Retirement Eligibility Service is at least 75 as of his Benefit Commencement Date.

(v)   <u>Grandfathered 55 and 10</u>.  A Participant has completed at least 10 Years of Retirement Eligibility Service as of his Termination of Employment and attained age 55, but only if he was participating in the Plan on December 31, 1968.

9.5     <u>Postponed Retirement Benefit</u>.  A Participant who is eligible for a Postponed Retirement Benefit may elect a Benefit Commencement Date any time following his Controlled Group Termination.

9.6     <u>In-Service Retirement Benefit</u>.  A Participant who is eligible for an In-Service Retirement Benefit may elect a Benefit Commencement Date any time following his Normal Retirement Date.

9.7     <u>Miscellaneous</u>.

    (a)     <u>Required Distributions</u>.

        (i)     Notwithstanding the foregoing, payment of a Participant's Retirement Income shall commence by the Participant's Required Beginning Date in accordance with Code Section 401(a)(9) as described in Section 10.6.  If the Participant does not commence by his Required Beginning Date, his Required Beginning Date shall be the Benefit Commencement Date.

        (ii)     Any Participant (except one who is a 5% owner) who attained age 70½ in years after 1995 and before 1999 was permitted to elect, by April 1 of the calendar year following the year in which the Participant attained age 70½ (or by December 31, 1997 in the case of a Participant attaining age 70½ in 1996) to defer distributions until the calendar year following the calendar year in which the Participant has a Controlled Group Termination.  If no such election is made, the Required Beginning Date was the April 1 of the calendar year following the year in which the Participant attained age 70½ (or by December 31, 1997 in the case of a Participant attaining age 70½ in 1996).

    (b)     <u>Mandatory Distributions to Comply With Benefit Limits</u>.

        (i)     Any Actuarial Equivalent adjustment required under Section 7.6(c) is not limited by Code Section 415 in accordance with Treasury Regulation Section 1.415(a)-1(f)(7).  To comply with Treasury Regulation Section 1.415(a)-1(f)(7), if any actuarial increase to a Participant's Postponed Retirement Benefit required under Section 7.6(c) would otherwise be limited by Section 13.1, payment of the Participant's Postponed Retirement Benefit, calculated as of the date that the actuarial increase to the Participant's Postponed Retirement Benefit would otherwise first be limited, shall begin on the Benefit Commencement Date coinciding with or immediately following such date.

        (ii)     A Participant who must begin receiving Retirement Income pursuant to this subsection may elect to receive that Retirement Income in any Form of Payment during the 90-day period ending no later than the date that the first payment is required.  Solely for purposes of this subsection, if the Participant does not make an election by the date that such first payment is

required, the Participant's Retirement Income shall be paid as provided in Section 10.1.

(c)    <u>Facility of Payment</u>. If the Administrative Committee determines, in its sole discretion, that any person entitled to a Retirement Income under the Plan is actually or legally incompetent, the Administrative Committee in its sole discretion may direct that the Retirement Income be paid to one of the following:

    (i)    a duly appointed guardian, conservator or other legal representative of such person;

    (ii)    a relative or friend of such person for such person's benefit; or

    (iii)    to be applied for the benefit of such person in any manner determined by the Administrative Committee to be permitted by federal law and consistent with the Plan.

Any payments made in accordance with this subsection shall be a full and complete discharge of the Plan's liability for such payment.

(d)    <u>Notices and Missing Persons</u>. Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address. Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan. If after benefits become due and payable, the Administrative Committee is unable to authorize payment because the whereabouts of the person entitled to such payment cannot be ascertained, the Administrative Committee shall send written notice of such benefit to such person's last known address in the Plan's records. If the Administrative Committee is unable, after making a reasonably diligent effort, within 90 days of the date on which the benefit becomes payable, to locate the individual to whom a benefit is due, such benefit shall be forfeited and used to reduce the administrative costs of the Plan. If such individual later claims the benefit, such benefit shall be reinstated and paid in compliance with the requirements of this Article.

20824725v.2

**ARTICLE 10**

**FORMS OF BENEFIT PAYMENTS**

10.1    Normal Form of Benefit.  Except as provided in Sections 10.3 and 11.2(c)(ii), unless a Participant elects otherwise in accordance with Article 8, a Participant's Retirement Income will be paid as:

(a)    Participants Without a Spouse.  If a Participant does not have a Spouse on his Benefit Commencement Date, a Single Life Annuity.

(b)    Participants With a Spouse.   If a Participant has a Spouse on his Benefit Commencement Date, a 50% Joint and Survivor Annuity with his Spouse as Joint Annuitant.

10.2    Forms of Payment.  Subject to the requirements of this Article and Article 8, a Participant may elect one of the Forms of Payment described in this Section.

(a)    Single Life Annuity.  Under this Form of Payment, the Participant receives monthly payments for life, with no benefit paid after the Participant's death.

(b)    Joint and Survivor Annuity.  Under this Form of Payment, the Participant receives monthly payments during the joint lives of the Participant and his Joint Annuitant. Upon the death of either, monthly payments continue to the survivor for life at the elected continuation percentage.  If a Participant's Joint Annuitant dies before the first day of the month following the Participant's death, no further payments are made.  The Participant may elect a continuation percentage to the survivor of 75%, 66 2/3%, or 50%. If the continuation percentage elected by the Participant is 75% or 66 2/3%, then the Joint and Survivor Annuity will be the Actuarial Equivalent of the Single Life Annuity.  If the continuation percentage elected by the Participant is 50%, then the Joint and Survivor Annuity will be the Actuarial Equivalent of the 100% Joint and Survivor Annuity with 15-Year Guarantee Period and Pop-Up.

(c)    100% Joint and Survivor Annuity with 15 Year Guarantee Period and Pop-Up.

(i)    General.  Under this Form of Payment, the Participant receives monthly payments during the joint lives of the Participant and his Joint Annuitant. This Form of Payment will be the Actuarial Equivalent of the Single Life Annuity; provided, however, that there is no actuarial adjustment for the Pop-Up or 15-Year Guaranteed features of this Form of Payment.

(ii)    If Participant Dies First.  If the Participant dies before the Joint Annuitant, the Joint Annuitant will continue to receive monthly payments equal to 100% of the amount paid during their joint lives.

(iii)    Pop-Up If Joint Annuitant Dies First.  If the Joint Annuitant dies before the Participant, the monthly amount paid to the Participant for the remainder of his life will increase to the unreduced amount that would have been paid to

55

the Participant if the Participant had elected a Single Life Annuity starting with the first month after the Joint Annuity's death.

(iv)    <u>15-Year Guarantee Period</u>.  If both the Participant and the Joint Annuitant die before 180 monthly payments are made:

(A)    If the Beneficiary is not the Participant's estate, monthly payments will be made to the Beneficiary until a total of 180 payments are made to the Participant, the Joint Annuitant and the Beneficiary. The Beneficiary will receive monthly payments in the amount made during the joint lives of the Participant and the Joint Annuitant.  If the Beneficiary dies after receiving payments but before a total of 180 payments have been made, the Actuarial Equivalent of the remaining guaranteed payments will be paid as a Lump Sum to the Beneficiary's estate.

(B)    If the Beneficiary is the Participant's estate, the Actuarial Equivalent of the remaining guaranteed payments will be paid as a Lump Sum.

(d)    <u>Certain and Life Annuity</u>.

(i)    <u>General</u>.  Under this Form of Payment, the Participant receives monthly payments for life that are guaranteed for a fixed period.  A Participant may elect a fixed period of 5, 10, 15 or 20 years.  This Form of Payment is the Actuarial Equivalent of the Single Life Annuity.

(ii)    <u>Payments Upon Participant's Death</u>.  If the Participant dies before the end of the elected fixed period:

(A)    If the Beneficiary is not the Participant's estate, payments are made to his Beneficiary until the fixed period expires.  If the Beneficiary dies after the Participant but before all fixed period payments have been made, the Actuarial Equivalent of the remaining fixed period payments will be made in a Lump Sum to the Beneficiary's estate.

(B)    If the Beneficiary is the Participant's estate, the Actuarial Equivalent of the remaining fixed period payments will be paid in a Lump Sum.

(iii)    <u>Beneficiary Change</u>.  The Participant may change the designated Beneficiary at any time, including after payments commence, with spousal consent.

(e)    <u>Lump Sum</u>.  Under this Form of Payment, the Participant receives a one-time single sum payment.  If the Participant dies before payment has been made, the Lump Sum is paid to his Beneficiary.  The Lump Sum shall be the Actuarial Equivalent of the Single Life Annuity.

56

(f)     <u>Social Security Level Income Annuity</u>.  This Form of Payment is designed to provide an approximately level monthly income, when Social Security benefits and benefits from the Plan are considered, throughout retirement.  Under this Form of Payment, the Participant receives increased monthly benefit payments before his elected Social Security leveling age and reduced monthly benefit payments after he attains the elected Social Security leveling age.  There is no benefit paid after the Participant's death.  A Participant may elect a Social Security leveling age of 62, 65, or his Social Security Retirement Age.  This Form of Payment shall be the Actuarial Equivalent of the Single Life Annuity.

(g)     <u>Social Security Level Income with Certain and Life Annuity</u>.

    (i)     <u>General</u>.  This Form of Payment is designed to provide an approximately level monthly income, when Social Security benefits and benefits from the Plan are considered, throughout retirement.  Under this Form of Payment, the Participant receives increased monthly benefit payments before his elected Social Security leveling age and reduced monthly benefit payments after he attains the elected Social Security leveling age.  If the Participant dies before the end of the elected fixed period, payments are made to the Beneficiary as described in (ii).  The Participant may elect a fixed period of 5, 10, 15 or 20 years.  A Participant may elect a Social Security leveling age of 62, 65, or his Social Security Retirement Age.  This Form of Payment shall be the Actuarial Equivalent of the Single Life Annuity.

    (ii)     <u>Payments Upon Participant's Death</u>.  If the Participant dies before the end of the elected fixed period:

        (A)     If the Beneficiary is not the Participant's estate, the monthly amount that would have been paid to the Participant will be paid to his Beneficiary until the fixed period expires.  If the Beneficiary dies after the Participant but before all fixed period payments have been made, the Actuarial Equivalent of the remaining fixed period payments will be made in a Lump Sum to the Beneficiary's estate.

        (B)     If the Beneficiary is the Participant's estate, the Actuarial Equivalent of the remaining fixed period payments will be paid in a Lump Sum.

    (iii)     <u>Beneficiary Change</u>.  The Participant may change the designated Beneficiary at any time, including after payments commence, with spousal consent.

(h)     <u>Fixed Monthly Installments</u>.  This Form of Payment is only available if specifically provided in the applicable Supplement.

    (i)     <u>General</u>.  Under this Form of Payment, the Participant receives equal monthly installments for the fixed number of months (not exceeding 360) elected by the Participant.  The payments cease after the fixed number of

payments are made. This Form of Payment shall be the Actuarial Equivalent of the Single Life Annuity.

(ii)     <u>Payments Upon Participant's Death</u>. If the Participant dies before receiving all installments:

(A)     If the Beneficiary is not the Participant's estate, the remaining installments will be paid to his Beneficiary. If the Beneficiary dies after the Participant but before all installments have been paid, the Actuarial Equivalent of the remaining installments will be made in a Lump Sum to the Beneficiary's estate.

(B)     If the Beneficiary is the Participant's estate, the Actuarial Equivalent of the remaining installments will be paid in a Lump Sum.

10.3     <u>Payments Following In-Service Retirement Benefit</u>. When a Participant who has elected an In-Service Retirement Benefit has a Controlled Group Termination, his remaining benefit shall be paid pursuant to Section 7.6(d) in the same Form of Payment as his In-Service Retirement Benefit.

10.4     <u>Death of Spouse or Dissolution of Marriage</u>. If a Participant elects a Form of Payment with his Spouse as Joint Annuitant, and either the Spouse dies or the Participant and Spouse are divorced before the Participant's Benefit Commencement Date, then the elected Form of Payment is automatically canceled and the benefit shall be paid as a Single Life Annuity unless the Participant elects another Form of Payment. The Participant's election of a Form of Payment shall become irrevocable upon the Benefit Commencement Date even if the Participant elected a Form of Payment with his Spouse as Joint Annuitant and the Spouse dies or the Participant and Spouse divorce.

10.5     <u>Direct Rollovers</u>.

(a)     A Distributee may elect, at the time and in the manner prescribed by the Administrative Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover, provided that the Eligible Retirement Plan accepts such rollover. This Section is intended only to implement Code Section 401(a)(31) and shall be construed accordingly.

(b)     Not more than 90 days before the Eligible Rollover Distribution, the Administrative Committee shall provide the Distributee with a written notice setting forth the information regarding Direct Rollovers and the Direct Rollover election as required under Code Section 402(f) and the regulations issued and effective thereunder.

(c)     In the case of an Eligible Rollover Distribution to a Beneficiary who is a designated beneficiary as defined in Code Section 401(a)(9)(E), but is not a surviving Spouse or former Spouse of the Participant, such Beneficiary may elect a Direct Rollover of his Eligible Rollover Distribution to an individual retirement plan as described

in Code Section 402(c)(11), which is treated as an inherited individual retirement account or individual retirement annuity, as defined in Code Section 408(d)(3)(C).

10.6    <u>Application of Code Section 401(a)(9)</u>. Any Form of Payment selected by the Participant shall be designed to pay the Participant the value of his benefit over a period not to exceed his life expectancy or the joint life expectancy of the Participant and his designated Beneficiary or Joint Annuitant. The life expectancy of a Participant and the joint life expectancy of a Participant and his designated Beneficiary or Joint Annuitant shall be determined in accordance with the regulations prescribed under Code Section 401(a)(9) including Treasury Regulation Section 1.401(a)(9)-1 through Section 1.401(a)(9)-9 as applicable, and their successors, and shall not be recalculated. Code Section 401(a)(9) and the regulations issued thereunder are hereby incorporated by reference, and distributions under this Plan shall be made in accordance with the same. Provisions reflecting Code Section 401(a)(9) shall override any Form of Payment that may be inconsistent with Code Section 401(a)(9) and this Section. Any distributions required under the minimum distribution incidental death benefit requirements of Code Section 401(a) shall be treated as distributions required under Code Section 401(a)(9) and this Section. In no event shall the amount distributable in any year be less than the amount determined in accordance with the minimum distribution incidental benefit requirements of Treasury Regulation Section 1.401(a)(9)-2.

(a)    <u>Joint and Survivor Annuity</u>. If a Participant elects a Joint and Survivor Annuity with a Joint Annuitant who is not his Spouse, the percentage paid to the Participant's Joint Annuitant after the Participant's death will not exceed the applicable percentage determined under Appendix 4 (Minimum Distribution Incidental Benefit Table), provided, however that if the Participant's Benefit Commencement Date precedes the year in which the Participant attains age 70, the Participant's and non-Spouse Joint Annuitant's age difference shall be adjusted as provided in Treasury Regulation §1.401(a)(9)-6 Q&A-2(c) when determining the applicable percentage from Appendix 4 (Minimum Distribution Incidental Benefit Table).

(b)    <u>100% Joint and Survivor Annuity with 15 Year Guarantee Period and Pop-Up</u>. If a Participant elects the 100% Joint and Survivor Annuity with 15 Year Guarantee Period and Pop-Up, the amounts paid under this Form of Payment will be adjusted if necessary to comply with Code Section 401(a)(9).

(c)    <u>Certain and Life Annuity or Social Security Level Income with Certain and Life Annuity</u>. If a Participant elects a Certain and Life Annuity or a Social Security Level Income with Certain and Life Annuity, the Participant may not elect a fixed period that exceeds the Participant's applicable distribution period under the Uniform Lifetime Table in Treasury Regulation §1.401(a)(9)-9 for the calendar year that contains the Participant's Benefit Commencement Date. If the Benefit Commencement Date precedes the year in which the Participant attains age 70, the Participant's applicable distribution period is the distribution period for age 70 plus the excess of 70 over the age of the Participant as of his birthday in the year that contains the Participant's Benefit Commencement Date. If the Participant's Spouse

59

is the Participant's sole designated Beneficiary, the distribution period may not exceed the longer of the Participant's applicable distribution period or the joint life and last survivor expectancy of the Participant and the Participant's Spouse under Treasury Regulation §1.401(a)(9)-9 using the Participant's and Spouse's ages as of the calendar year that contains the Participant's Benefit Commencement Date.

(d)      <u>Fixed Monthly Installments</u>. A Participant who elects Fixed Monthly Installments may not elect installments over a period that exceeds the Participant's applicable distribution period under the Uniform Lifetime Table in Treasury Regulation §1.401(a)(9)-9 for the calendar year that contains the Participant's Benefit Commencement Date. If the Benefit Commencement Date precedes the year in which the Participant attains age 70, the applicable distribution period is the distribution period for age 70 plus the excess of 70 over the age of the Participant as of his birthday in the year that contains the Participant's Benefit Commencement Date. If the Participant's Spouse is the Participant's sole designated Beneficiary, the distribution period may not exceed the longer of the Participant's applicable distribution period or the joint life and last survivor expectancy of the Participant and the Participant's Spouse under Treasury Regulation §1.401(a)(9)-9 using the Participant's and Spouse's ages as of the calendar year that contains the Participant's Benefit Commencement Date.

10.7      <u>Forms of Payment Subject to Code Section 417(e)</u>. In accordance with Treasury Regulation § 1.417(e)-1(d)(5), Retirement Income paid in a Form of Payment, other than a Form of Payment described in Treasury Regulation § 1.417(e)-1(d)(6), will not be less than the Actuarial Equivalent of the Retirement Income calculated using the interest rate and mortality table in Section 2.3(b).

60

## ARTICLE 11

## REEMPLOYMENT

11.1    General.  If a Participant who ceases to be employed by a Participating Company is reemployed by the same Participating Company and is covered by the same supplement within the Plan, all prior Years of Vesting Service, Years of Credited Service, Years of Retirement Eligibility Service, and Monthly Compensation as of his earlier termination will be restored upon such reemployment for all Plan purposes, regardless of whether the Participant was Vested at the prior termination.

11.2    Reemployment After Initial Benefit Commencement Date.  If a Participant is reemployed by a Participating Company after his initial Benefit Commencement Date:

(a)    Reemployed at Rate of Less Than 20 Hours Per Week.

(i)    If the Participant is reemployed at a work schedule of less than 20 hours per week (and does not actually receive credit for 1,000 or more Hours of Vesting Service in a year), any Retirement Income being paid under the Plan will continue.

(ii)    Upon the Participant's subsequent Termination of Employment (or election of an In-Service Retirement Benefit), the Participant is entitled to an additional benefit, adjusted appropriately for time of commencement as of his Benefit Commencement Date, calculated as follows:

(A)    The amount calculated under the Retirement Income Formula as of his subsequent Benefit Commencement Date, less

(B)    The amount calculated under the Retirement Income Formula as of the prior Benefit Commencement Date.

(b)    Reemployed at Rate of At Least 20 Hours Per Week.

(i)    If the Participant is reemployed at a work schedule of at least 20 hours per week (or actually receives credit for at least 1,000 Hours of Vesting Service in a year), any Retirement Income being paid under the Plan will cease.

(A)    Payment of such Participant's Retirement Income shall resume no later than the first day of the third calendar month after the calendar month in which the Participant fails to be employed at a work schedule of at least 20 hours per week.  The initial payment upon resumption shall include the payment scheduled to occur in the calendar month when payments resume and any amounts withheld during the period between the first calendar month in which the Participant fails to be employed at a work schedule of at least 20 hours per week, and the resumption of payments.

61

20824725v.2

(B)    In the event that the Participant's benefits are once again stopped because the Participant is once again employed at a work schedule of at least 20 hours per week, any amounts due under subparagraph (A) which are not paid before the calendar month in which the Participant is once again employed at a work schedule of at least 20 hours per week shall be paid in a Lump Sum at later retirement.

(ii)    Upon the Participant's subsequent Termination of Employment (or election of an In-Service Retirement Benefit), the initial Retirement Income will resume and the Participant is entitled to an additional benefit, adjusted appropriately for time of commencement as of his Benefit Commencement Date, calculated as follows:

(A)    The amount calculated under the Retirement Income Formula as of his subsequent Benefit Commencement Date, less

(B)    The amount calculated under the Retirement Income Formula as of the prior Benefit Commencement Date.

(c)    <u>Form of Payment for Additional Benefit</u>.

(i)    If the Participant is reemployed before his Normal Retirement Date, the Participant must select a Form of Payment (which may be the same as or different from the previously elected Form of Payment) with respect to the additional benefit.

(ii)    If the Participant is reemployed on or after his Normal Retirement Date, the Participant's additional benefit will be paid in the same Form of Payment that applied before reemployment.

## ARTICLE 12

### DEATH BENEFITS

12.1    Death Benefits.

(a)    If a Participant dies before he is Vested, no death benefit is paid from the Plan.  If a Vested Participant dies after his Benefit Commencement Date, death benefits, if any, are paid in accordance with the Participant's elected Form of Payment.  If a Vested Participant elected a Form of Payment that does not provide for payments after his death, no death benefit is paid.

(b)    If a Vested Participant dies before his Benefit Commencement Date and before the Administrative Committee receives his valid election of a Form of Payment, a death benefit may be paid as described in Section 12.2.  If a Vested Participant dies before his Benefit Commencement Date but after the Administrative Committee receives his valid election of a Form of Payment, a death benefit may be paid as described in Section 12.3.

(c)    If a Participant dies after commencing an In-Service Retirement Benefit and before his Controlled Group Termination, a death benefit may be paid as described in Section 12.4.  If a Participant has a Controlled Group Termination, commences his Retirement Income, is reemployed, and dies before a subsequent Controlled Group Termination, a death benefit may be paid as described in Section 12.4.

(d)    The Domestic Partner provisions of this Article 12 only apply to an Eligible Employee covered by a Supplement that provides Domestic Partner benefits and do not apply to an Eligible Employee covered by a Supplement that does not provide Domestic Partner benefits.  The Qualified Dependent provisions of this Article 12 only apply to an Eligible Employee covered by a Supplement that provides Qualified Dependent benefits and do not apply to an Eligible Employee covered by a Supplement that does not provide Qualified Dependent benefits.

12.2    Pre-Retirement Death Benefits.

(a)    Death Before Controlled Group Termination.  If the Participant dies while employed by a Controlled Group Company and has a Spouse, Domestic Partner (subject to Section 12.1(d)), or one or more Qualified Dependents (subject to Section 12.1(d)), death benefits will be paid as provided in this subsection.  If the Participant dies while employed by a Controlled Group Company and does not have a Spouse, Domestic Partner, or one or more Qualified Dependents, no death benefit is paid from the Plan.

(i)    If the Participant has a Spouse:

(A)    The Spouse receives a monthly benefit for the remainder of his life beginning on the Spouse's Benefit Commencement Date.

63

(B)    The Spouse may elect any Benefit Commencement Date that is on or after the date the Participant would have first satisfied the requirements of Section 6.2 and no later than the Participant's Required Beginning Date. If the Spouse does not commence by the Participant's Required Beginning Date, the Participant's Required Beginning Date shall be the Spouse's Benefit Commencement Date.

(C)    The Spouse's monthly benefit equals the survivor annuity the Spouse would have received if the Participant had survived to the Spouse's Benefit Commencement Date, elected a Joint and Survivor Annuity with the survivor percentage reflected in the applicable Supplement with the Spouse as the Joint Annuitant, and died the next day. The Joint and Survivor Annuity for this purpose is calculated as of the Spouse's Benefit Commencement Date applying the early retirement reduction factors (if any) under Section 7.3, the actuarial factors in Section 2.3, the Participant's Years of Vesting Service, the age the Participant would have attained, and the Spouse's age.

(D)    If the Spouse dies before the tenth anniversary of the Participant's death, an additional death benefit may be paid as described in paragraph (iv).

(ii)    If the Participant has no Spouse, but has a Domestic Partner:

(A)    The Domestic Partner receives a monthly benefit for the remainder of his life beginning on the Domestic Partner's Benefit Commencement Date.

(B)    The Domestic Partner's Benefit Commencement Date is the first day of the month immediately following the Participant's death, unless the Domestic Partner elects a later Benefit Commencement Date. The Domestic Partner may elect a Benefit Commencement Date that is on or before the first day of the month immediately preceding the first anniversary of the Participant's death.

(C)    The Domestic Partner's monthly benefit equals the survivor annuity the Domestic Partner would have received if the Participant had survived to the Domestic Partner's Benefit Commencement Date, elected a Joint and Survivor Annuity with the survivor percentage reflected in the applicable Supplement with the Domestic Partner as the Joint Annuitant, and died the next day. The Joint and Survivor Annuity for this purpose is calculated as of the Benefit Commencement Date applying the early retirement reduction factors (if any) under Section 7.3, the actuarial factors in Section 2.3, the Participant's Years of Vesting Service, the age the Participant would have attained, and the Domestic Partner's age.

64

(D)    If the Domestic Partner dies before the tenth anniversary of the Participant's death, an additional death benefit may be paid as described in paragraph (iv).

(iii)    If the Participant does not have a Spouse or a Domestic Partner but has one or more Qualified Dependents:

(A)    Each Qualified Dependent receives a monthly benefit for 120 months beginning on the Qualified Dependent's Benefit Commencement Date.

(B)    A Qualified Dependent's Benefit Commencement Date is the first day of the month immediately following the Participant's death.

(C)    Each Qualified Dependent's monthly benefit equals a *per capita* share of the monthly survivor benefit a Beneficiary would have received if the Participant had retired the day before his death and elected the Certain and Life Annuity with a guaranteed period of ten years. The monthly survivor benefit the Beneficiary would have received if the Participant had retired the day before his death and elected the Certain and Life Annuity with a guaranteed period of ten years is calculated as of the Qualified Dependent's Benefit Commencement Date applying the early retirement reduction factors (if any) under Section 7.3, the actuarial factors in Section 2.3, the Participant's Years of Vesting Service, and the age the Participant would have attained.

(iv)    If the Participant has a Spouse or a Domestic Partner and one or more Qualified Dependents, and the Spouse or Domestic Partner, as applicable, dies before the tenth anniversary of the Participant's death:

(A)    Each Qualified Dependent receives a monthly benefit beginning on the Qualified Dependent's Benefit Commencement Date and payable through the month containing the tenth anniversary of the Participant's date of death.

(B)    A Qualified Dependent's Benefit Commencement Date is the first of the month immediately following the date of the Spouse's (or Domestic Partner's, if applicable) death.

(C)    Each Qualified Dependent's monthly benefit equals a *per capita* share of the monthly survivor benefit the Beneficiary would have received if the Participant had retired the day before his death and elected the Certain and Life Annuity with a guaranteed period of ten years. The monthly survivor benefit a Beneficiary would have received if the Participant had retired the day before his death and elected the Certain and Life Annuity with a guaranteed period of ten years is calculated as of the Qualified Dependent's Benefit

65

Commencement Date applying the early retirement reduction factors (if any) under Section 7.3, the actuarial factors in Section 2.3, the Participant's Years of Vesting Service, and the age the Participant would have attained.

(b)     <u>Death After Controlled Group Termination</u>.   If the Participant dies after his Controlled Group Termination, death benefits will be paid as follows:

(i)     If the Participant has a Spouse:

(A)     The Spouse receives a monthly benefit for the remainder of his life beginning on the Spouse's Benefit Commencement Date.

(B)     The Spouse's Benefit Commencement Date is the first day of the month following the later of the Participant's death or Normal Retirement Date, unless the Spouse elects an earlier Benefit Commencement Date.   The Spouse may elect a Benefit Commencement Date that is on or after the date the Participant would have first satisfied the requirements of Section 6.2.

(C)     The Spouse's monthly benefit equals the survivor annuity the Spouse would have received if the Participant had survived to the Spouse's Benefit Commencement Date, elected a Joint and Survivor Annuity with a 50% continuation percentage with the Spouse as the Joint Annuitant, and died the next day.   The Joint and Survivor Annuity for this purpose is calculated as of the Benefit Commencement Date applying the early retirement reduction factors (if any) under Section 7.3, the actuarial factors in Section 2.3, the Participant's Years of Vesting Service, the age the Participant would have attained, and the Spouse's age.

(ii)     If the Participant has no Spouse, but has a Domestic Partner (subject to Section 12.1(d)):

(A)     The Domestic Partner receives a monthly benefit for the remainder of his life beginning on the Domestic Partner's Benefit Commencement Date.

(B)     The Domestic Partner's Benefit Commencement Date is the first day of the month immediately following the Participant's death, unless the Domestic Partner elects a later Benefit Commencement Date.   The Domestic Partner may elect a Benefit Commencement Date that is on or before the first day of the month immediately preceding the first anniversary of the Participant's death.

(C)     The Domestic Partner's monthly benefit equals the survivor annuity the Domestic Partner would have received if the Participant had survived to the Domestic Partner's Benefit Commencement Date,

elected a Joint and Survivor Annuity with a 50% continuation percentage with the Domestic Partner as the Joint Annuitant, and died the next day. The Joint and Survivor Annuity for this purpose is calculated as of the Benefit Commencement Date applying the early retirement reduction factors (if any) under Section 7.3, the actuarial factors in Section 2.3, the Participant's Years of Vesting Service, the age the Participant would have attained, and the Domestic Partner's age.

(iii)   If the Participant has no Spouse or Domestic Partner, no death benefit is paid from the Plan.

12.3   <u>Death Before Benefit Commencement Date But After Payment Election</u>.

(a)   If a Participant dies before his Benefit Commencement Date but after electing a Form of Payment, the death benefit is such benefit provided under the elected Form of Payment. If a Participant elected a Lump Sum but dies before such payment is made, the Lump Sum shall be paid to the Participant's Beneficiary.

(b)   Notwithstanding the foregoing, if the Participant is survived by a Spouse and elected a Form of Payment with no death benefit, a death benefit to someone other than the Spouse, or a death benefit to the Spouse that is less than the death benefit provided under Section 12.2(a)(i)(C), the elected Form of Payment shall be invalid and, instead, the Spouse shall receive a death benefit as if the Participant had elected a Joint and Survivor Annuity with the survivor percentage reflected in the applicable Supplement with his Spouse as Joint Annuitant.

12.4   <u>Death After an In-Service Retirement Benefit or Reemployment</u>. If a Participant either dies after commencing an In-Service Retirement Benefit and before his Controlled Group Termination, or has a Controlled Group Termination, commences his Retirement Income, and is reemployed and dies before a subsequent Controlled Group Termination, any death benefit with respect to initial Retirement Income is paid in accordance with the elected Form of Payment, and amounts accrued after the Benefit Commencement Date shall be paid in accordance with Section 12.2.

## ARTICLE 13

## LIMITATIONS ON BENEFITS

13.1 <u>Section 415 Limits</u>. Notwithstanding any other provision of the Plan, in no event shall any annual benefit exceeding the limitations under this Section, Code Section 415, and its regulations, which are hereby incorporated by reference, be accrued or paid in any Form of Payment (including the normal form of benefit) at any time.

    (a)    <u>General Limitation on Benefits</u>.

        (i)    Unless the alternative limitation of subsection (g) applies, no Participant may accrue or receive an Annual Benefit for any Plan Year which exceeds the lesser of the following amounts:

            (A)    The applicable dollar limitation for defined benefit plans, as defined by Code Section 415(b)(1)(A) and as adjusted under Code Section 415(d) for cost of living increases (dollar limit); or

            (B)    An amount equal to 100 percent of the Participant's Section 415 Compensation averaged over that series of three consecutive Plan Years during which he was an Employee and for which his Section 415 Compensation is the highest (compensation limit).

        (ii)    The maximum limit as determined under paragraph (i) shall apply to the Annual Benefit as a Single Life Annuity. If the benefit is paid in a form other than a Single Life Annuity or if the Employee contributes to the Plan, or has made rollover contributions, the benefit shall be adjusted in accordance with Code Sections 415(b)(2)(B) and 415(b)(2)(E)(i), (ii) and (v), and applicable regulations to determine if the limitation in paragraph (i) has been satisfied.

    (b)    <u>Annual Benefit</u>. For purposes of this Section, Annual Benefit shall be determined as follows.

        (i)    "Annual Benefit" means the sum of the following:

            (A)    The annual Retirement Income to which the Participant is entitled under the Plan; and

            (B)    The aggregate annual retirement benefits (if any) to which the Participant is entitled under all other qualified defined benefit plans maintained by the Company and any Section 415 Affiliate.

        (ii)    An Annual Benefit is a benefit that is paid annually in the form of a Single Life Annuity (with no ancillary benefits). Except as provided in this Section, where a benefit is paid in a form other than a Single Life Annuity, then such benefit shall, for purposes of this Section, be converted into a

20824725v.2

Single Life Annuity which is its Actuarial Equivalent that begins at the same time as such other form of benefit and is paid on the first day of each month before applying the limitations of this Section.

(iii)    Effective January 1, 2008, for a Participant who has, or will have, benefits commencing at more than one Benefit Commencement Date, the Annual Benefit shall be determined as of each Benefit Commencement Date (and shall satisfy the limitations of this Section as of each date), actuarially adjusting for past and future distributions of benefits commencing at the other Benefit Commencement Dates in accordance with Treasury Regulation Section 1.415(b)-1(b)(1)(iii).

(iv)    No actuarial adjustment will be made for (A) survivor benefits paid to a surviving Spouse under a qualified joint and survivor annuity (as defined in Code Section 417(b)) to the extent that such benefits would not be paid if the Participant's benefit were paid in another form; or (B) benefits that are not directly related to retirement benefits (such as qualified disability benefits, preretirement incidental death benefits, and post-retirement medical benefits).

(v)    The Annual Benefit shall include Social Security supplements described in Code Section 411(a)(9) and benefits transferred from another defined benefit plan, other than transfers of distributable benefits pursuant to Treasury Regulation Section 1.411(d)-4, Q&A-3(c), but exclude benefits attributable to employee contributions or rollover contributions.

(c)    <u>Adjustments for Early or Late Commencement</u>.

(i)    If the benefit of a Participant begins before age 62, the defined benefit dollar limitation is the Actuarial Equivalent to the defined benefit dollar limitation applicable to the Participant at age 62 (adjusted under subsection (d), if required). The benefit may not exceed an Annual Benefit of the dollar limit described in subsection (a)(i)(A) adjusted in accordance with Code Sections 415(b)(2)(C), 415(b)(2)(E)(i), and 415(b)(2)(E)(v) and applicable regulations. For purposes of this paragraph, the interest assumption used to determine actuarial equivalence shall be the greater of that specified in the definition of Actuarial Equivalent or 5%.

(ii)    If the benefit of a Participant begins after the Participant attains age 65, the defined benefit dollar limitation is the Actuarial Equivalent to the defined benefit dollar limitation applicable to the Participant at age 65 (adjusted under subsection (d), if required). The benefit may not exceed an Annual Benefit of the dollar limit described in subsection (a)(i)(A) adjusted in accordance with Code Sections 415(b)(2)(D), 415(b)(2)(E)(iii), and 415(b)(2)(E)(v) and applicable regulations. For purposes of this paragraph, the interest assumption used to determine actuarial equivalence shall be as

described in the definition of Actuarial Equivalent, except that the interest assumption shall not exceed 5%.

(d) <u>Adjustment for Fewer Than Ten Years of Participation or Vesting Service</u>.

    (i) If a Participant has completed fewer than 10 years of participation (as defined in the applicable Regulations under Code Section 415) in the Plan, the dollar amount described in subsection (a)(i)(A) shall be multiplied by a fraction determined as follows:

        (A) The numerator of such fraction shall be the greater of one or the number of years of the Participant's Plan participation; and

        (B) The denominator of such fraction shall be 10.

    (ii) If a Participant has completed fewer than 10 Years of Vesting Service with the Company and any Section 415 Affiliate (determined as of the date when his Retirement Income payments are to commence), the compensation limit described in subsection (a)(i)(B) and the $10,000 amount described in subsection (g) shall be multiplied by a fraction determined as follows:

        (A) The numerator of such fraction shall be the greater of one or the number of the Participant's Years of Vesting Service with the Company and any Section 415 Affiliate; and

        (B) The denominator of such fraction shall be 10.

(e) <u>Adjustment for Other Forms of Benefit</u>.

    (i) For benefit forms not subject to Code Section 417(e)(3), the actuarially equivalent Single Life Annuity is determined using the applicable mortality table as defined in Code Section 417(e)(3) and an interest rate equal to the greater of:

        (A) 5%; or

        (B) The rate described in the definition of Actuarial Equivalent in Section 2.3(b).

    (ii) For benefit forms subject to Code Section 417(e)(3) for Benefit Commencement Dates in Plan Years 2004 or 2005, the actuarially equivalent Single Life Annuity is determined using the applicable mortality table as defined in Code Section 417(e)(3) and an interest rate equal to the greater of:

        (A) 5.5%;

70

(B)    The rate described in the definition of Actuarial Equivalent in Section 2.3(b).

(iii)    For benefit forms subject to Code Section 417(e)(3) for Benefit Commencement Dates on or after January 1, 2006, the actuarially equivalent Single Life Annuity is determined using the applicable mortality table as defined in Code Section 417(e)(3) and an interest rate equal to the greatest of:

(A)    5.5%;

(B)    The interest rate that would provide a benefit of not more than 105% of the benefit if the applicable interest rate as defined in Code Section 417(e) is used; or

(C)    The rate described in the definition of Actuarial Equivalent in Section 2.3(b).

(iv)    In no event, however, will the amount that is paid in a form subject to Code Section 417(e)(3) with a Benefit Commencement Date after December 31, 2003 and before January 1, 2005, be less than the amount that would have been determined using the rate described in the definition of Actuarial Equivalent in effect on the last day of the last Plan Year beginning before January 1, 2004.

(f)    <u>Reductions Among Defined Benefit Plans</u>.  If an individual participates or has participated in the Plan and in one or more other defined benefit tax-qualified plans maintained by a Controlled Group Company, the benefits accrued under the Plan and all such other plans shall be reduced in proportion to the total benefits accrued under each such plan but only to the extent necessary to comply with the limits on benefits in this Section.  For purposes of this subsection: (i) the termination of any plan shall be disregarded, and (ii) the total benefits accrued under each plan for calculating the proportional reduction shall be determined without regard to the limitations of this Section.

(g)    <u>Exception to Limitation on Benefits</u>.  A Participant's Retirement Income shall not be subject to the limitations of this Section if each of the following requirements is met:

(i)    The sum of the Participant's annual Retirement Income under the Plan and his aggregate annual retirement benefits under all other qualified defined benefit plans maintained by a Controlled Group Company do not exceed $10,000; and

(ii)    The Participant has never participated in a qualified defined contribution plan maintained by a Controlled Group Company.

71

13.2    <u>Top-25 Restriction</u>.

    (a)    <u>Definitions</u>.  The following definitions apply for purposes of this Section.  If a term is capitalized but not defined, it shall have the meaning assigned to it in Article 2.

        (i)    <u>Benefit</u>.  Benefit means, among other benefits, loans in excess of the amount set forth in Code Section 72(p)(2)(A), any periodic income, any withdrawal values paid to a living Participant and any death benefits not provided by insurance on the Participant's life.

        (ii)    <u>Current Liabilities</u>.  Current Liabilities means the Plan's current liabilities as defined in Code Section 412(l)(7).

        (iii)    <u>Highly Compensated Former Employee</u>.  Highly Compensated Former Employee means a former Employee who separated from service (or was deemed to have separated) before the Determination Year, performs no service for the Company and any Section 415 Affiliate during the Determination Year, and was a Highly Compensated Employee as an active Employee for either the separation year or any Determination Year ending on or after the Employee's 55th birthday.

        (iv)    <u>Restricted Employee</u>.

            (A)    Restricted Employee means with respect to any Plan Year one of the 25 Highly Compensated Employees and Highly Compensated Former Employees whose compensation (as defined in subparagraph (B)) is highest for such Plan Year.

            (B)    For purposes of determining the 25 Highly Compensated Employees and Highly Compensated Former Employees as provided in subparagraph (A), compensation shall mean wages within the meaning of Code Section 3401(a) and all other payments of compensation by the Company and any Section 415 Affiliate to the Employee (in the course of the Company and any Section 415 Affiliate's trade or business) for which the Company and any Section 415 Affiliate is required to furnish the Employee a written statement under Code Sections 6041(d), 6051(a)(3), and 6052.  Compensation under this paragraph shall be determined without regard to any rules under Code Section 3401(a) that limit the remuneration in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code Section 3401(a)(2)), and shall not include any distributions from a nonqualified deferred compensation plan.

    (b)    <u>Payment Restrictions</u>.

        (i)    In any year, the payment of any Benefit to or on behalf of a Restricted Employee shall not exceed an amount equal to the payments that would be

made to or on behalf of the Restricted Employee in that year under a Single Life Annuity that is the Actuarial Equivalent of the sum of the Accrued Benefit and other benefits to which the Restricted Employee is entitled under the Plan (other than a social security supplement); and the amount of the payments that the Restricted Employee is entitled to receive under any social security supplement.

(ii)     Notwithstanding the foregoing, the provisions of this Section do not apply if the Commissioner determines that such provisions are not necessary to prevent the prohibited discrimination that may occur in the event of an early termination of the Plan.

(c)     Exclusions.  The payment restriction in this Section shall not apply if:

(i)     After payment to or on behalf of the Restricted Employee of all Benefits paid to or on behalf of that Restricted Employee under the Plan, the value of Plan Assets equals or exceeds 110 percent of the value of Current Liabilities;

(ii)     The value of the Benefits paid to or on behalf of the Restricted Employee is less than one percent of the value of Current Liabilities; or

(iii)     The value of the Benefits paid to or on behalf of the Restricted Employee does not exceed the amount described in Code Section 411(a)(11)(A) (restrictions on certain mandatory distributions).

(d)     Permitted Distributions to Restricted Employees.  A Restricted Employee whose benefits would otherwise be restricted under this Section may receive a full distribution of benefits if he secures the Plan's interest in such distribution by either of the following methods as selected by the Investment Committee in its sole discretion:

(i)     Depositing property with an acceptable depository having a fair market value equal to 125 percent of the amount the Participant would have been required to repay if the Plan terminated on the distribution date.  If the market value of that property falls below 110 percent of the amount the Participant would have been required to repay if the Plan then terminated, he must deposit additional property necessary to bring the value of the property held up to 125 percent of such amount; or

(ii)     Obtaining a bond or bank letter of credit in an amount equal to 100 percent of the amount the Participant would have been required to repay if the Plan terminated on the distribution date.

13.3     Funding Limitations.  Notwithstanding any other provision of this Plan, no benefit will accrue under the Plan if such accruals would not comply with the requirements of Code Section 436 and Appendix 5 (Funding Based Limits), which limit benefit accruals under plans with severe funding shortfalls.  Additionally, no shutdown benefits or other

73

unpredictable event benefits will be paid under the Plan if they would not comply with the requirements of Code Section 436 and Appendix 5 (Funding Based Limits).

# ARTICLE 14

## CONTRIBUTIONS AND FUNDING

14.1    <u>Plan Contributions</u>.    The Plan is funded exclusively by contributions made by each Participating Company to the Trust.  A Participating Company shall determine, with the advice of an actuary and in accordance with the funding requirements of the Code, the amount of the annual contribution to be made to the Trust to provide retirement benefits to Participants and Beneficiaries under the Plan.  Participants are neither required nor permitted to make contributions to the Plan.

14.2    <u>Tax Deductibility</u>.  Each contribution by a Participating Company is made on the express condition that the contribution is deductible under Code Section 404.  Notwithstanding anything contained herein to the contrary, in the event that a deduction is disallowed for all or part of a Participating Company contribution, or all or any part of a Participating Company contribution is made as a result of a mistake of fact, then the Trustee shall, upon written request made by the Participating Company within one year of such disallowance or payment made as a result of a mistake of fact, return the contribution (to the extent the deduction was disallowed) or mistaken contribution to the Participating Company.

14.3    <u>Trust and Trust Agreement</u>.  All assets of the Plan shall be held in the Trust in accordance with the terms of the Trust Agreement for the benefit of Participants and their Beneficiaries, and no part of the corpus or income will be used for or diverted to purposes other than for the exclusive benefit of Participants and their Beneficiaries under the Plan and for the payment of proper Plan expenses, except to the extent permitted by law.  No Participant or Beneficiary under the Plan, nor any other person, will have any interest in or right to any part of the earnings of the Trust, or any rights in, to, or under the Trust or any part of the assets thereof, except as and to the extent expressly provided in the Plan and Trust Agreement or under applicable law.

20824725v.2

# ARTICLE 15

## AMENDMENT OR TERMINATION

15.1    <u>Amendment</u>.  The Company shall have the right to amend the Plan at any time and in any respect which it deems desirable including, but not limited to, amendments necessary or appropriate to qualify the Plan or Trust under the provisions of the Code, amendments which take effect retroactively to the extent permitted by law, and amendments which increase or diminish contributions to be made to the Plan or to change or modify the benefits provided to Participants, except as limited by subsection (b).

   (a)    <u>Amendment Procedure</u>.  The Plan may be amended in the following ways:

   (i)    By resolution of the Company's Board of Directors.

   (ii)    By written action of the CEO, President/COO or the Senior Vice President of Human Resources - Chief Human Resources Officer of the Company.

   (iii)    The Vice President - Compensation and Benefits (or his successor) has power, by sole action, to adopt only amendments that have a present value that does not exceed $5 million, as determined by the Company in its sole discretion.

   (b)    <u>Limitation on Amendments</u>.  No amendment to the Plan may:

   (i)    Allow any part of the Plan Assets to revert to or be recoverable by a Participating Company before satisfaction of all liabilities with respect to Participants and their Beneficiaries, or to be used for or diverted to purposes other than the exclusive benefit of Participants and their Beneficiaries;

   (ii)    Increase the duties, powers or liabilities of the Trustee without its written consent; or

   (iii)    To the extent prohibited by Code Section 411(d)(6), eliminate or reduce (A) retroactively any Early Retirement Benefit or subsidy that continues after retirement, (B) any optional form of benefit, or (C) otherwise retroactively reduce a Participant's Accrued Benefit.

   (c)    <u>Amendment to Vesting Schedule</u>.  If the Plan's vesting provisions are amended, then the following provisions shall apply:

   (i)    In the case of any Employee who is a Participant on the later of the date the amendment is adopted or the date the amendment is effective, the nonforfeitable percentage (determined as of such date) of such Employee's right to his employer-derived Accrued Benefit will not be less than the percentage computed under the Plan without regard to such amendment.

76

(ii)     Each Participant with three or more Years of Vesting Service whose benefits would otherwise be determined under such schedule shall have the right to elect, during the applicable period specified in this paragraph, to have the Participant's non-forfeitable benefit determined without regard to such amendment.  However, no such election shall be provided to any Participant whose non-forfeitable percentage under the amended vesting schedule cannot at any time be less than the percentage computed without regard to such amendment.

   (A)     The election period shall commence on the date the amendment is adopted and end sixty (60) days after the latest of the date the amendment is adopted, the date the amendment becomes effective, or the date the Participant is notified of the amendment in writing by a Participating Company or the Plan Administrator.  Such election, if exercised, shall be irrevocable and shall be available only to an Employee who is a Participant at the time the election is made.

   (B)     Each Participant's nonforfeitable percentage with respect to the Participant's employer-derived Accrued Benefit determined as of the later of the date the amendment is adopted or the date the amendment is effective, will not be less than the nonforfeitable percentage determined under the Plan without regard to the amendment.

15.2   Termination.

(a)     The Company may at any time and for any reason completely or partially terminate the Plan.  The Company may delegate such termination authority.  Upon termination or partial termination of the Plan, the rights of each affected Participant to his Accrued Benefit under the Plan to the date of such termination or partial termination is nonforfeitable to the extent funded.  Affected Participants shall be determined in accordance with Code Section 411, its regulations, and applicable case law.  The Administrative Committee shall determine in accordance with applicable law whether the Plan has incurred a partial plan termination.

(b)     Allocation of Plan Assets.

   (i)     In the event of the Plan's termination, the Plan Administrator shall give any required notice of the termination to the PBGC, and comply with all applicable requirements of the PBGC.  Plan Assets will be allocated to provide benefits as provided by law.  To the extent consistent with the foregoing requirements, Plan Assets will be allocated in the following order of priority:

      (A)     Benefits that had been in pay status for three years or more or could have been in pay status for three years if the Participant had retired at the earliest opportunity and received the normal form of benefit.

77

Allocation shall be based on the lowest benefit provided by Plan provisions in effect within the last five years.

(B)     Other benefits guaranteed under ERISA, disregarding ERISA Sections 4022(b)(5) and (6) of ERISA, including benefits not covered by subparagraph (A) because of the exclusion of benefit increases within five years.

(C)     All other vested Accrued Benefits including benefits not covered by subparagraph (A) because of the exclusion of benefit increases within five years and not covered by subparagraph (B).

(D)     All other Accrued Benefits.

(ii)     Any remaining surplus arising out of erroneous actuarial computations reverts to each Participating Company to the extent attributable thereto, as determined by the Investment Committee.

15.3    <u>Early Termination of Plan</u>.  Any other provision of the Plan notwithstanding, the benefit of a Highly Compensated Employee (as defined in Section 13.2) or Highly Compensated Former Employee (as defined in Section 13.2) that is paid on account of Plan termination shall be limited to benefits that are nondiscriminatory under Code Section 401(a)(4).

15.4    <u>Merger or Consolidation</u>.  No merger, consolidation, or transfer of Plan Assets or liabilities of the Plan to another plan qualified under Code Section 401(a) is authorized, unless each Participant in the Plan would (if the Plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit the Participant would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan then terminated).  If the Company reorganizes, merges, consolidates, or sells substantially all its assets, a successor corporation, firm, or person may continue the Plan by adopting it pursuant to resolution of its governing board submitted to the Board, which in turn must resolve to permit continuation of the Plan.  If within 180 days of such reorganization, merger, consolidation, or sale of assets, the Plan is not adopted as provided in this Section, the Plan and the Trust shall terminate with respect to such successor in interest and its employees, and the Plan Assets shall be disposed of in accordance with the provisions of Section 15.2.

## ARTICLE 16

## POWERS AND DUTIES OF COMMITTEES

16.1    Plan Administration.  For purposes of ERISA, the Administrative Committee is the "Plan Administrator" and a Named Fiduciary for all respects other than investment matters.  The Investment Committee is a Named Fiduciary with respect to investment of Plan Assets.

16.2    Establishment of Administrative and Investment Committees.  The Plan is administered by the Administrative Committee and the Administrative Committee is responsible for all duties and responsibilities as Plan Administrator other than investment matters.  Plan Assets are invested by the Investment Committee.  The Investment Committee is responsible for investing Plan Assets as provided in Section 16.7.  The enumeration of specific duties and powers of each Committee is illustrative and not a limitation.

16.3    Appointment and Composition of the Committees.  The Chief Executive Officer ("CEO") of the Company determines the number of members of each Committee, and is responsible for appointing and removing Committee members.  The CEO has the authority to designate other Named Fiduciaries.  If necessary, the CEO decides which Committee has jurisdiction over a particular matter.  The CEO shall exercise these powers in writing.

16.4    Committees In General.

(a)    Each Committee shall establish the rules and procedures by which it will operate.

(b)    Each Committee may allocate and delegate any of its duties (other than trustee responsibilities as defined in ERISA) to any other person or persons, which may include but is not required to include Committee members.  No person has any discretionary authority in connection with the Plan or Plan Assets unless properly delegated.  If a Committee delegates any portion of its authority, any reference to the Committee's authority shall include the delegate to the extent such authority has been delegated.

(c)    Each Committee may act by meeting or by written document approved by a majority of the Committee members without meeting.

(d)    Except as required by law, no Committee member shall be liable or responsible for an act or omission of other Committee members in which he has not concurred.

(e)    A Committee member may also be a Participant, but no Committee member shall have the power to take part in any discretionary decision or action affecting his own interest as a Participant under this Plan unless such decision or action is upon a matter affecting all other Participants similarly situated and confers no special right, benefit or privilege not simultaneously conferred upon all other such Participants.

(f)    Each Committee may engage the services of actuaries, accountants, lawyers, other advisers and any other entity to help it carry out its responsibilities.  Any agreement

79

20824725v.2

or arrangement authorized or required by this Article or by ERISA, is entered into at the direction of the appropriate Committee.

(g)    Each Committee shall establish procedures for carrying out its duties and powers, and keep records of its proceedings, acts, and other data necessary to administer the Plan. A Committee member may resign by following the procedure adopted by the Committee. The CEO may remove any member of the Committee at any time and for any reason. Any member appointed to the Committee shall automatically cease to be a member of the Committee, effective on the date that he or she dies or ceases to be employed by (or otherwise ceases performing services for) a Medical Care Organization unless the CEO approves otherwise in writing.

16.5    <u>Duties and Powers of Administrative Committee</u>. The Administrative Committee has all the duties and responsibilities as Plan Administrator and named fiduciary not assigned to the Investment Committee under Section 16.7. The Administrative Committee has full discretionary power and authority to administer the Plan, and to do all things necessary or convenient in connection therewith, including but not limited to the things described in Section 17.1 and the following:

(a)    Assuring prompt and correct payment of all Plan benefits;

(b)    Reviewing a claim appeal in accordance with Section 17.4 (after the initial claim has been reviewed by the Plan Administrator in accordance with Section 17.3);

(c)    Prescribing rules for the operation of the Plan;

(d)    Complying with the requirements of reporting and disclosure under ERISA and any other applicable law, and preparing and distributing other communications to employees as a part of Plan operations;

(e)    Prescribing forms to facilitate the operation of the Plan;

(f)    Securing government approvals for the Plan;

(g)    Construing and interpreting the terms of the Plan, including determining eligibility for benefits, the power to remedy possible ambiguities, inconsistencies or omissions;

(h)    Determining the amount of benefits and authorize payments from the Trust;

(i)    Maintaining records;

(j)    Litigating, settling claims, and responding to and complying with court proceedings and orders (other than court proceedings or claims relating to the investment of Plan Assets) on the Plan's behalf;

(k)    Entering into contracts on the Plan's behalf; and

(l)     Correcting any error or defect in the administration of the Plan, supplying any omission or reconciling any inconsistency, including, but not limited to, mathematical or arithmetical errors, collection of overpayments and correction of underpayments, in such manner and to such extent as it shall deem necessary or appropriate to carry out the purposes of the Plan.

16.6    <u>Information Required for Administration</u>.  Each Participating Company shall furnish the Plan Administrator and Administrative Committee with such data and information they consider necessary or desirable to perform their duties under the Plan.  The records of a Participating Company concerning an Employee or Participant, including but not limited to periods of employment, Termination of Employment, leaves of absence, reemployment, Monthly Compensation and Compensation will be conclusive on all persons unless the Plan Administrator or Administrative Committee determines that the Participating Company's records are not correct.  Participants and other persons entitled to benefits under the Plan will furnish the Plan Administrator and Administrative Committee with such evidence, data or information as it considers necessary or desirable to perform its duties under the Plan.

16.7    <u>Duties and Powers of Investment Committee</u>.  The Investment Committee shall have the duties and powers provided in this Section.  The Investment Committee has full discretionary power and authority to carry-out its duties and responsibilities.

(a)     The Investment Committee has full power, authority and discretion to invest, manage, purchase, sell, and control Plan Assets, and has the powers and duties specified in the Trust Agreement.

(b)     The Investment Committee appoints any Trustee, enters into any Trust Agreement, and has authority to direct the Trustee with respect to management and control of Plan Assets deposited with the Trustee.

(c)     The Investment Committee may transfer assets and associated liabilities between Trustees, and may authorize the deposit of Plan Assets with and investment of Plan Assets in pooled investment funds maintained by any bank, insurance company, or similar institution which is a Trustee or Fiduciary.

(d)     No Plan Assets may be invested or maintained in Participating Company securities or in real or other property owned by or leased to a Participating Company.

(e)     The Investment Committee may employ one or more Investment Managers to manage, acquire, and dispose of Plan Assets.  The Investment Committee may employ one or more Investment Advisers to provide advice with respect to the management, acquisition and disposition of the Plan Assets.

(f)     The Investment Committee determines whether benefits are paid (i) directly from Plan Assets, (ii) as an annuity purchased with Plan Assets from one or more insurance companies, or (iii) through any combination of the foregoing.

81

(g)     To the extent permitted by law, the Investment Committee may indemnify any person dealing with Plan Assets.

(h)     The Investment Committee establishes a funding policy and method to carry out the Plan's objectives. In establishing this policy, the Investment Committee determines the Plan's short and long-run financial needs. The Investment Committee also determines whether the Plan has a short-run need for liquidity, or whether liquidity is a long-run goal and investment growth is a more current need, and communicates this policy to the persons responsible for investments so that investment policy can be appropriately coordinated with Plan needs.

16.8    Indemnification.

(a)     Health Plan shall indemnify and hold harmless each of the following persons ("Indemnified Persons") pursuant to the terms and conditions of subsection (b):

    (i)     The Administrative Committee;

    (ii)    The Investment Committee; and

    (iii)   Each Employee of the Company, former Employee of the Company; each employee of a Participating Company, former employee of a Participating Company; current and former members of each Committee; or current or former members of the Board of Directors of the Company who have, or had, responsibility (whether by delegation from another person, an allocation of responsibilities under the terms of the Plan document, or otherwise) for a duty, function, or an administrative task relating to the Plan.

(b)     Health Plan shall indemnify and hold harmless each Indemnified Person against any and all claims, losses, damages, and expenses, including reasonable attorney fees and court costs, incurred by that person on account of his actions or failures to act with respect to his responsibilities relating to the Plan, excepting any liability for his willful misconduct as determined by Health Plan in its sole discretion. Health Plan's indemnification shall include payment of any amounts due under a settlement of any lawsuit or investigation, but only if Health Plan agrees to the settlement.

    (i)     An Indemnified Person shall be indemnified pursuant to this Section only if he notifies the Appropriate Person of any claim asserted against, or any investigation of, the Indemnified Person within a reasonable period of time, not to exceed 180 days, that relates to the Indemnified Person's responsibilities with respect to the Plan.

        (A)     The "Appropriate Person" to receive notice of the claim or investigation is Health Plan's General Counsel.

        (B)     The notice must be provided in writing. The notice must be provided to the Appropriate Person promptly after the Indemnified

Person becomes aware of the claim or investigation. No indemnification shall be provided pursuant to this Section to the extent that Health Plan or the Participating Company is materially prejudiced by the unreasonable delay of the Indemnified Person in notifying an Appropriate Person of the claim or investigation.

(ii)     An Indemnified Person shall be indemnified pursuant to this Section with respect to attorneys' fees, court costs, or other litigation expenses or any settlement of such litigation only if the Indemnified Person agrees to permit Health Plan (or its delegate) to select counsel and to conduct the defense of the lawsuit and agrees not to take any action in the lawsuit that Health Plan (or its delegate) believes would be prejudicial to the interests of Health Plan.

(iii)    No Indemnified Person, including an Indemnified Person who is a Participant or former Participant, may be indemnified pursuant to this Section unless he makes himself reasonably available to assist Health Plan (or its delegate) with respect to the matters in issue and agrees to provide whatever documents, testimony, information, materials, or other forms of assistance that Health Plan (or its delegate) shall reasonably request.

(iv)     Notwithstanding anything in this subsection (b) to the contrary, no Indemnified Person may be indemnified pursuant to this Section with respect to any action or failure to act that is judicially determined to constitute or be attributable to the gross negligence or willful misconduct of the Indemnified Person.

(c)     Health Plan shall continue to have a duty to indemnify and hold harmless an Indemnified Person for actions taken while in a status described in this Section, even after the individual no longer serves in that status. For example, a former Employee shall be indemnified for actions taken as an Employee.

(d)     Notwithstanding anything in this Section, the rights of an Indemnified Person to indemnification under this Section shall be limited to the extent required to comply with applicable law.

16.9   <u>Expenses of the Plan</u>.  All reasonable and proper expenses of administering the Plan may be paid by the Trustee out of the Trust unless paid by the Plan Administrator or a Participating Company.    Such expenses shall include any expenses incident to the administration of the Plan and the functions carried out by each Committee, including, but not limited to, fees of actuaries, accountants, counsel, and other specialists, and other costs of administering the Plan and investing the Trust. The Plan Administrator or a Participating Company may pay any such expense, and upon presentation of sufficient evidence of the payment and the characteristics of the expenses to the Administrative Committee, the Trust shall reimburse the Plan Administrator or a Participating Company for such expenses. The Plan Administrator or a Participating Company, in its sole discretion, may pay any such expense directly and not seek reimbursement, or reimburse the Plan for any proper expenses incurred by the Plan.  Any expense paid as a reimbursement of the Trust by the

83

Plan Administrator or a Participating Company will not be construed as a contribution by a Participating Company.

## ARTICLE 17

### APPLICATION OF BENEFITS AND REVIEW PROCEDURES

17.1    Interpretation.

(a)    The Plan Administrator or Administrative Committee (as applicable) shall have full and sole discretionary authority to interpret all Plan documents, and to make all interpretive and factual determinations as to whether any individual is entitled to receive any benefit under the terms of this Plan.  Any construction of the terms of any Plan document and any determination of fact adopted by the Plan Administrator or Administrative Committee (as applicable) shall be final and legally binding on all parties.

(b)    Any interpretation, determination, rules, computations or other action of the Plan Administrator or Administrative Committee (as applicable) shall be subject to review only if it is arbitrary or capricious or otherwise an abuse of discretion.  Any review of a final decision or action of the Plan Administrator or Administrative Committee (as applicable) shall be based only on such evidence presented to or considered by the Plan Administrator or Administrative Committee (as applicable) at the time it made the decision that is the subject of review.  Accepting any benefits or making any claim for benefits under this Plan constitutes agreement with and consent to any decisions that the Plan Administrator or Administrative Committee (as applicable) makes, in its sole discretion and, further, constitutes agreement to the limited standard and scope of review described by this paragraph.

(c)    The Plan Administrator or Administrative Committee (as applicable) shall establish procedures for determining questions arising in the administration, interpretation, and application of the Plan.  The Plan Administrator or Administrative Committee (as applicable) in its sole discretion shall make such rules, interpretations and computations, and shall take such other actions to administer the Plan as it may deem appropriate.    In administering the Plan, the Plan Administrator or Administrative Committee (as applicable) shall act in a nondiscriminatory manner to the extent required by Code Section 401(a) and related Code Sections, and at all times discharge its duties in accordance with the standards set forth in ERISA Section 404(a)(1).

17.2    Application for Benefits.

(a)    Any election, revocation of an election, or application for benefits pursuant to the Plan will not be effective unless it is:

(i)    Made on such form, in such method, and/or through such media as the Administrator Committee may prescribe for such purpose;

(ii)    Signed by the Participant and, if required under Section 8.12, by the Participant's Spouse; and

85

        (iii)    Received by the Administrative Committee.

(b)    Any person who believes that he is entitled to receive a benefit under the Plan, including a benefit other than that initially determined by the Administrative Committee, must file an application for benefits with the Administrative Committee at least 30 days before his Benefit Commencement Date.

(c)    Any person must file a claim when seeking a determination or redetermination of his benefits, and/or a determination of his current or future rights under the Plan.

17.3    <u>Claims</u>.

(a)    All claims for benefits must be made in writing to the Claims Administrator. The Claims Administrator shall promptly approve or deny each claim and shall notify the claimant no later than 90 days after the receipt of the written claim. If an extension of time for processing the claim is required due to special circumstances, written notice of the extension shall be provided to the claimant before the termination of the initial 90-day period. In no event shall the extension exceed a period of 90 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Claims Administrator expects to render a benefit determination.

(b)    <u>Content of Notice of Adverse Decision on Claim</u>. If a claim is denied, the claimant shall be advised in writing of:

        (i)    The specific reasons for denial;

        (ii)    Specific reference to pertinent Plan provisions on which the denial is based;

        (iii)    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why the material or information is necessary; and

        (iv)    An explanation of the Plan's claim review procedure, and the time limits applicable to such procedures, including that claimant may have the claim reviewed by the Claims Administrator and that the claimant has the right to bring a civil action under ERISA Section 502(a) following an adverse determination on review.

17.4    <u>Appeals</u>. A claimant or claimant's authorized representative may request a review of a denied claim if such request is filed within 90 days of the date of the written notification of the denial or partial denial of the claim. In connection with the appeal, upon request and free of charge the claimant or the claimant's counsel shall be given (a) reasonable access to and copies of pertinent documents and records to the extent not inconsistent with other Participants' and Beneficiaries' privacy rights, (b) other information relevant to the claim (as determined in accordance with Department of Labor Regulation Section 2560.503-1(m)(8)), and (c) the opportunity to submit any statements, documents, records or written argument in support of the claim.

(a)    Review of Appeal.

    (i)    A decision upon review of the claim shall be made by the Administrative Committee at its next regularly scheduled meeting following receipt of the request for review. If the request for review is received within 30 days before the date of such meeting, the determination may be made by the date of the second regularly scheduled meeting following the receipt of the request for review. If special circumstances require a further extension of time for processing, a benefit determination shall be rendered not later than the third regularly scheduled meeting after the receipt of the request for review. If such an extension is required, the Administrative Committee shall provide the claimant with written notice of the extension, describing the special circumstances requiring extension and the date as of which the benefit determination will be made before the commencement of the extension. The Administrative Committee shall notify the claimant within five days of its determination.

    (ii)    In performing the review, the Administrative Committee will take into account all comments, documents, records and other information submitted by the claimant relating to the claim without regard to whether such information was submitted or considered in the initial benefit determination.

(b)    Decision on Review. The decision on review shall be in writing and set forth in understandable language. The notice of an adverse decision shall set forth the following information in a manner calculated to be understood by the claimant:

    (i)    The specific reason or reasons for the denial;

    (ii)    Reference to the specific provision or provisions of the Plan or other documents governing the Plan on which the denial is based;

    (iii)    A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records or other information relevant (within the meaning of Department of Labor Regulation Section 2560.503-1(m)(8)) to the claimant's request for review; and

    (iv)    A statement of the claimant's right to bring a civil action under ERISA Section 502(a).

(c)    The decision of the Administrative Committee on any request for review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

17.5    Exhaustion Requirement. A claimant must exhaust the claims and review procedures described in this Article before he may bring a legal action in court relating to the claim; however, if the Claims Administrator or Administrative Committee (as applicable) fails to render a decision within the time limits set forth in Sections 17.3 and 17.4, the claimant

shall be deemed to have exhausted his remedies under this Article. This paragraph applies if a claimant does not receive payment of the benefits he believes he is entitled to receive under the Plan or has any other grievance with respect to his benefits under the Plan (including but not limited to a redetermination of his benefits, or his current or future rights under the Plan).

17.6    <u>Time Limitation and Forum Selection</u>. Nothing in this Section excuses a person from the exhaustion requirement in Section 17.5.

    (a)    <u>Time Limitations for Benefit Claims</u>. Any claim for benefits under the Plan, pursuant to this Section, must be filed with the Plan Administrator within two years following the latest of:

        (i)    Two years following the date a Participant has a Termination of Employment;

        (ii)    Two years following the date the Participant is provided with written notice (including electronic information made available to the Participant by the Plan) of the Participant's Vested status and/or the components of his benefit payment as applicable to the claim; and

        (iii)    . December 31, 2017.

    (b)    <u>Time Limitations for Timeliness of Payment</u>. If the Plan Administrator fails to timely pay, in whole or in part, a claimant's Retirement Income as of the claimant's Benefit Commencement Date, then the claimant shall have one year from the claimant's Benefit Commencement Date, or, if later, the deadline set forth in subsection (a), to file a claim solely with regard to the failure to timely pay the claimant's Retirement Income. Any claim submitted after the period described in subsection (a) expires shall be precluded, including claims that relate to the calculation of Retirement Income, the Benefit Commencement Date, or any other claim, unless that claim relates solely to:

        (i)    The Failure to timely pay the previously determined amount of Retirement Income;

        (ii)    The Form of Payment, and/or

        (iii)    The adjustment to the claimant's Retirement Income for commencement before Normal Retirement Date.

    (c)    <u>Administrative Committee Discretion</u>. The Administrative Committee, in its sole discretion, shall determine whether any limitation in (a) or (b) has been exceeded.

    (d)    <u>Statute of Limitations</u>. No legal action (whether in law, in equity or otherwise) shall be commenced seeking judicial review of a decision under this Article more than one year after the later of the date of the initial denial of the claim, or if a

timely request for appeal of the denial has been made, the date the Administrative Committee denies the claimant's appeal.

(e)    <u>Forum Selection</u>.  Any legal action (whether in law, in equity, or otherwise) must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

20824725v.2

# ARTICLE 18

## TOP HEAVY PROVISIONS

18.1   <u>General</u>.  For each Plan Year that the Plan is "Top Heavy" as defined in Section 18.2, the provisions of this Article shall apply and supersede any conflicting provisions of the Plan. In addition, the requirements of Code Section 416 and applicable regulations thereunder are hereby incorporated by reference into the Plan.

18.2   <u>Top-Heavy Determination</u>.  The Plan shall be Top-Heavy for a Plan Year if, as of the last day of the preceding Plan Year (determination date), (a) the present value of the Accrued Benefits under the Plan for Participants who are Key Employees (as defined in Code Section 416(i)) exceeds 60 percent of the present value of the Accrued Benefits under the Plan for all Participants (other than former Employees who received no Section 415 Compensation from the Company or an Affiliate during the one year period ending on the determination date and former Key Employees as defined in Code Section 416(i)), or (b) the Plan is part of a Top Heavy Group (as defined in Section 18.3).  However, the Plan shall not be considered to be Top-Heavy for any Plan Year in which the Plan is a part of a required or permissive aggregation group (within the meaning of Code Section 416(g)) which is not Top-Heavy.  To determine whether the Plan is Top Heavy, Accrued Benefits shall be calculated in accordance with Code Section 416, as amended from time to time.

18.3   <u>Top Heavy Group Determination</u>.  Top Heavy Group means a group that meets the requirements of both subsections (a) and (b).

(a)   A Top Heavy Group is a group containing:

(i)   Each plan maintained by a Controlled Group Company in which a Key Employee is a Participant,

(ii)   Each plan maintained by a Controlled Group Company (including a frozen plan or a plan which has been terminated during the 1-year period ending on the determination date) which enables any plan described in paragraph (i) to meet the requirements of Code Sections 401(a)(4) and 410, and

(iii)   Each plan maintained by a Controlled Group Company (including a frozen plan or a plan which has been terminated during the 1-year period ending on the determination date) which the Company elects to aggregate with the plans described in paragraphs (i) and (ii) if such group would continue to meet the requirements of Code Sections 401(a)(4) and 410 with such additional plans being taken into account.

(b)   A group is a Top Heavy Group only if, as of the determination date, the sum of the present value of the accumulated accrued benefits for Key Employees under all defined benefit plans included in the group and the aggregate of the accounts of Key Employees under all defined contribution plans included in the group exceeds 60 percent of a similar sum determined for all Employees.  The present value of an accrued benefit shall be the benefit paid on the Participant's Normal Retirement

90

Date, assuming that the Participant terminated, with full vesting, on the plan funding valuation date falling within the Plan Year in which the determination date falls and based on the definition of Actuarial Equivalent. The "valuation date" shall be the first day of the preceding Plan Year.

18.4    <u>Minimum Benefit</u>. For each Plan Year for which the Plan is Top-Heavy, the Accrued Benefit under the Plan for any Participant who is a Non-Key Employee (as defined in Code Section 416(i)) and has 1,000 or more Hours of Vesting Service in such Plan Year will not be less than the lesser of: (i) the product of 2% of the Participant's average Section 415 Compensation for the consecutive Plan Years (not exceeding five) during which the Plan was a top-heavy Plan and the Participant's Section 415 Compensation was highest, multiplied by the number of Years of Vesting Service completed by the Participant for which the Plan also was Top-Heavy or (ii) 20% of the Participant's average Section 415 Compensation for the consecutive Plan Years (not exceeding five) during which the Plan was a top-heavy Plan and the Participant's Section 415 Compensation was highest. To comply with the foregoing, the Participant's Accrued Benefit shall be calculated as an annual retirement benefit paid in the form of a Single Life Annuity commencing at the Participant's Normal Retirement Date. In determining Years of Vesting Service with the Company or an Affiliate, any service shall be disregarded to the extent that such service occurs during a Plan Year when the Plan benefits (within the meaning of 410(b)) no Key Employee or former Key Employee.

18.5    <u>Minimum Vesting</u>. Benefits accrued during a Plan year in which the Plan is top-heavy shall be vested as follows:

| Years of Vesting Service | Vesting Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 25% |
| 3 | 50% |
| 4 | 75% |
| 5 | 100% |

No reduction in the Participant's Vested Accrued Benefit may occur in the event the Plan ceases to be top-heavy, and any Participant with three or more Years of Vesting Service will continue to vest in his Accrued Benefit in accordance with this schedule when the Plan ceases to be top-heavy.

18.6    <u>Additional Rules</u>. For purposes of this Article the following shall apply:

(a)    The aggregate distributions (without interest thereon) made under the plan to a Participant during the 1-year period ending on the determination date shall be included for purposes of applying Sections 18.2 and 18.3(b).

(b)    Rollover contributions (or similar transfers) to the Plan will not be included for purposes of applying Sections 18.2 and 18.3(b), except as otherwise provided in applicable Treasury Regulations.

20824725v.2

(c)    The Accrued Benefit of a Non-Key Employee (as defined in Code Section 416(i)) shall be determined by one of the following methods:

    (i)    Under a uniform accrual method that applies to all defined benefit plans of the Company and any Affiliates.

    (ii)    If there is no method described in paragraph (i), as if the benefit accrued at or below the slowest accrual rate permitted under the fractional rule of Code Section 411(b)(1)(C).

18.7    <u>Coordination with Top Heavy Defined Contribution Plan</u>.  For any year in which a Participant in the Plan also participates in a defined contribution plan maintained by the Company and an Affiliate which is aggregated with the Plan under Section 18.3 and, when taken together, the group constitutes a Top Heavy Group, then the minimum benefit requirement with respect to such Participant shall be satisfied in the Plan.

92

## ARTICLE 19

## MILITARY SERVICE

19.1    <u>Service</u>.  Employees who perform qualified military service shall receive Hours of Vesting Service and Hours of Credited Service for periods of an unpaid absence to perform qualified military service as required by Code Section 414(u).

19.2    <u>Benefit Accruals</u>.  Employees who return to employment following a period of qualified military service shall receive contributions and benefits as required by Code Section 414(u).

19.3    <u>Death During Military Service</u>.  If a Participant dies on or after January 1, 2007, while performing qualified military service (as defined in Code Section 414(u)), the Beneficiary of that Participant is entitled, to the extent required by Section 401(a)(37) of the Code or any Treasury regulations or other guidance promulgated thereunder, to any additional benefits (other than benefit accruals relating to the period of qualified military service) provided under the Plan as if the Participant had resumed employment on the day immediately before the Participant's death and then terminated employment on account of death.

93

## ARTICLE 20

### MISCELLANEOUS

20.1    Headings.  The headings and subheadings in the Plan have been inserted for convenience of reference only.  In the event of a conflict between a heading and the content of a section, the content of the section shall control.

20.2    Nonalienation.  No Participant shall have any right to sell, assign, pledge, hypothecate, anticipate or in any way create a lien upon any part of the Trust Fund.  Except to the extent required by law (including, but not limited to tax withholding) or provided in the Plan, no interest in the Trust Fund, or any part thereof, shall be assignable in or by operation of law, or be subject to liability in any way for the debts or defaults of Participants, their beneficiaries, spouses or heirs at law, whether to the Participating Company or to others.  To the extent permitted under Code Section 401(a)(13)(c) and ERISA Section 206(d)(4), the preceding sentence will not apply to an order or requirement to pay funds to the Plan arising under a judgment or conviction for a crime involving the Plan or under a civil judgment entered by a court in an action alleging a violation of Part 4 of ERISA.  Before the time that distributions are to be made hereunder, the Participants, their Spouses, Beneficiaries, heirs at law or legal representatives will have no right to receive cash or other things of value from the Company, its Affiliates or the Trustee from or as a result of the Plan and Trust.

20.3    Qualified Domestic Relations Order.  Notwithstanding this Section or anything else in the Plan to the contrary, the Administrative Committee may direct the Trustee to comply with a Qualified Domestic Relations Order.

(a)     The Administrative Committee shall establish a procedure for determining the qualified status of Domestic Relations Orders and administering Plan distributions in accordance with Qualified Domestic Relations Orders.  Such procedure shall be in writing, shall specify the notification requirements enumerated in Section 2.80(b), shall permit an Alternate Payee to designate a representative for receipt of communications from the Administrative Committee and shall include such other provisions as the Administrative Committee determines, consistent with Code Sections 401(a)(13) and 414(p), ERISA Section 206(d)(3) and regulations thereunder.

(b)     During any period in which the issue of the qualified status of a Domestic Relations Order is being determined, the Administrative Committee may direct the Trustee to separately account for the amounts, if any, which would have been paid to the Alternate Payee during such period if the order had been determined to be a Qualified Domestic Relations Order.

(c)     The Alternate Payee may elect a Benefit Commencement Date in accordance with Article 8, except that the Spousal Consent provisions of Section 8.2 do not apply.  The Alternate Payee may elect a Form of Payment in accordance with Article 10,

except that the Alternate Payee may not elect a Joint and Survivor Annuity with his subsequent Spouse as the Joint Annuitant.

20.4 <u>Governing Law</u>. To the extent not inconsistent with ERISA or preempted by federal law pursuant to ERISA, the Plan shall be construed in accordance with and its validity shall be determined under the laws of the State of California.

20.5 <u>No Guarantee of Employment</u>. Neither the creation of the Plan nor anything contained in the Plan or Trust Agreement shall be construed as a contract of employment between any Controlled Group Company and the Participant or as giving any Participant or other employee of a Controlled Group Company any right to remain in the employ of such employer, any equity or other interest in the assets, business or affairs of the Controlled Group Company, or any right to complain about any action taken or any policy adopted or pursued by a Controlled Group Company.

20.6 <u>Evidence</u>. Evidence required of anyone under the Plan may be by certificate, affidavit, document or other information that the Administrative Committee considers pertinent and reliable, and signed, made or presented by the proper party.

20.7 <u>Limitation to Trust Fund</u>. Neither the Company nor any Affiliate shall have any liability for benefits under the Plan beyond the contributions required by the terms of the Plan. Nothing in the Plan shall be deemed to give any Participant or Beneficiary any right to assets of the Company or any Affiliates and all Plan benefits shall be limited to the amounts in the Trust. The Company, any Affiliates, Health Plan, the Administrative Committee and the Investment Committee do not guarantee the Trust in any manner against loss or depreciation and do not guarantee the payment of any benefit that may become due under the Plan.

20.8 <u>Recovery of Overpayment</u>.

  (a) <u>General</u>. If the Plan makes an overpayment or pays a benefit in error, the Plan has the right at any time, as elected by the Administrative Committee, to offset the amount of that overpayment from a future payment under the Plan, recover that overpayment from the person to whom it was made, a combination of both, or pursue any other lawful means of recovering such overpayment.

  (b) <u>Lien</u>. Any person in receipt of a payment from the Plan promises to reimburse the Plan any overpayment. Any person in receipt of any benefit paid but not owed has an obligation to immediately notify the Administrative Committee of the overpayment and to return the overpaid benefits to the Plan. The Plan possess a lien on any benefit paid but not owed under the terms of the Plan. The lien is enforceable regardless of the reason for the mistake in payment or the fault or knowledge of the person in possession of the mistakenly paid Plan Assets. The lien shall remain in effect until the Plan is repaid in full.

  (c) <u>Corrective Action</u>. The Administrative Committee may take whatever action is necessary to enforce the Plan's lien on any overpayments. The Administrative Committee has sole discretion to choose the methods for enforcing the Plan's lien.

These methods include, without limitation, the Plan's recoupment of the overpayment from future benefit payments or a court action seeking imposition of a constructive trust and disgorgement of the overpaid Plan benefits plus interest, or any other claim to recover Plan Assets under ERISA or any applicable law.

20.9    Prohibition Against Profiting From Participant's Death. If the Administrative Committee, in its sole discretion, determines that a Beneficiary may have intentionally caused the Participant's death, the Administrative Committee in its sole discretion may take any action the Administrative Committee determines appropriate, including but not limited to:

(a)    Delaying payments of any benefit to such Beneficiary for any period the Administrative Committee determines appropriate, including until there is a judicial determination of the Beneficiary's guilt or innocence; and

(b)    Deciding to pay the benefit otherwise payable to the Beneficiary to another Beneficiary.

20.10    Separability. If any provision of the Plan shall be held invalid or unenforceable, such invalidity or unenforceability will not affect any other provision of the Plan, and the Plan shall be construed and enforced as if such provision had not been included.

20.11    Rules of Interpretation. If the Plan's language is in the present tense, that language includes the future tense. References in the Plan to the masculine gender include the feminine. Whenever the context of the Plan dictates, the plural shall be read as singular and the singular as the plural.

20.12    Compliance With Code Section 401(a)(4). The Plan is subject to Code Section 401(a)(4) and is intended to comply Code Section 401(a)(4) and the applicable Treasury Regulations in all respects, including, without limitation, imputed service, Forms of Payment and other benefits, rights, and features.

IN WITNESS WHEREOF, Kaiser Foundation Health Plan, Inc. has caused a duly authorized officer to execute this Kaiser Permanente Retirement Plan on the date written below.

**KAISER FOUNDATION HEALTH PLAN, INC.**

By: _____

Debora Catsavas

Its:  VP Compensation and Benefits

Date:  September 15, 2015

97

## APPENDIX 1

## MEDICAL CARE ORGANIZATIONS APPENDIX

Kaiser Foundation Health Plan, Inc.
Kaiser Foundation Health Plan of Colorado
Kaiser Foundation Health Plan of Connecticut, Inc.
Kaiser Foundation Health Plan of Georgia, Inc.
Kaiser Foundation Health Plan of Kansas City
Kaiser Foundation Health Plan of Massachusetts, Inc.
Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.
Kaiser Foundation Health Plan of New York
Kaiser Foundation Health Plan of North Carolina
Kaiser Foundation Health Plan of the Northwest
Kaiser Foundation Health Plan of Ohio (before October 1, 2013)
Kaiser Foundation Health Plan of Texas

Kaiser Foundation Hospitals (excluding CareTouch, Inc.)

Kaiser Permanente International

Mid-Atlantic Permanente Medical Group, P.C.
Colorado Permanente Medical Group, P.C.
Hawaii Permanente Medical Group, Inc.
Northeast Permanente Medical Group, P.C., CT.
Northeast Permanente Medical Group, P.C., MA.
Northeast Permanente Medical Group, P.C., N.Y.
Northeast Permanente Medical Group of the Capital Area, PC
Northeast Permanente Medical Group of the Hudson Valley, PC
Northeast Permanente Medical Group, PC (Vermont)
Northwest Permanente P.C./Physicians & Surgeons
Ohio Permanente Medical Group, Inc.
Permanente Medical Association of Texas
Permanente Medical Group of Mid-America, P.A.
Southern California Permanente Medical Group (a partnership)
The Carolina Permanente Medical Group, P.A.
The Permanente Medical Group, Inc.
The Southeast Permanente Medical Group, Inc.

Kaiser Foundation International

Kaiser Permanente Advisory Services

The Permanente Federation, LLC
The Permanente Company, LLC

20824725v.2

Permanente Dental Associates

Camp Bowie Service Center (which was known as the Consolidated Service Center prior to January 29, 1999)

Community Health Plan, effective as of December 31, 1997

Health Care Management Solutions, LLC, effective as of April 1, 2007

Permanente Advantage, LLC, effective as of January 1, 2013
KP OnCall, LLC, effective as of January 1, 2013

A1-2

## APPENDIX 2

### PARTICIPATING COMPANIES

Kaiser Foundation Health Plan, Inc.
Kaiser Foundation Health Plan of Colorado
Kaiser Foundation Health Plan of Connecticut, Inc.
Kaiser Foundation Health Plan of Georgia, Inc.
Kaiser Foundation Health Plan of Kansas City
Kaiser Foundation Health Plan of Massachusetts, Inc.
Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.
Kaiser Foundation Health Plan of New York
Kaiser Foundation Health Plan of North Carolina
Kaiser Foundation Health Plan of the Northwest
Kaiser Foundation Health Plan of Ohio (before October 1, 2013)
Kaiser Foundation Health Plan of Texas (until 12/31/98)

Kaiser Foundation Hospitals (excluding CareTouch, Inc.)

Kaiser Permanente International

Kaiser Permanente Advisory Services

KP OnCall LLC (effective November 27, 2001)

Community Health Plan, for Employees formerly employed by Kaiser Foundation Health Plan of Massachusetts or Kaiser Foundation Health Plan of New York, Inc.

Camp Bowie Service Center (effective 1/1/99)

A2-1

**APPENDIX 3**

**SPECIAL ORIGINAL PLAN BENEFIT RULES**

1.1    <u>Application</u>.  With respect to a Transfer where the Participant was accruing a benefit under the RPPSM Plan immediately before the Transfer, the Original Plan Benefit shall be calculated applying the rules described in this Appendix.

1.2    <u>Definitions</u>.

    (a)    <u>RPPSM Plan</u>.  "RPPSM Plan" means The Retirement Plan for Physicians Serving Members of Kaiser Foundation Health Plan, Inc.

    (b)    <u>Historic Physician</u>.  "Historic Physician" means an individual who was a physician at the Ohio Permanente Medical Group, the Colorado Permanente Medical Group, or The Permanente Medical Group and accruing benefits under the RPPSM Plan immediately before a Transfer.

    (c)    <u>SCPMG Physician</u>.  "SCPMG Physician" means an individual who was a physician at the Southern California Medical Group and accruing benefits under the RPPSM Plan immediately before a Transfer.

1.3    <u>Original Plan Benefit</u>.

    (a)    <u>SCPMG Physician</u>.  If a SCPMG Physician was not vested in his RPPSM Plan benefit at the time of Transfer, the Original Plan Benefit is zero.  If a SCPMG Physician was vested in his RPPSM Plan benefit at the time of Transfer, the Original Plan Benefit equals 2.0% times Highest Average Compensation times Credited Service (up to 20 years) plus 1.0% times highest average compensation times credited service (over 20 years) where:

        (i)     "Highest average compensation" is the average "monthly pay" for the 36 consecutive compensated months for which he had the greatest monthly compensation in the last 120 compensated months subject to any frozen highest average compensation.

        (ii)    For purposes of paragraph (i), "monthly pay" is the highest rate of base pay for the month subject to any frozen highest average compensation.

        (iii)   Credited Service is credited service as defined in the RPPSM Plan.

    (b)    <u>Historic Physician</u>.  The Original Plan Benefit for a Historic Physician is his benefit under the RPPSM Plan immediately before the Transfer.

A3-1

## APPENDIX 4

## MINIMUM DISTRIBUTION INCIDENTAL BENEFIT TABLE

| Excess Of Age Of Participant Over Age of Non-Spouse Joint Annuitant | Applicable Percentage |
|---|---|
| 10 years or less | 100% |
| 11 | 96% |
| 12 | 93% |
| 13 | 90% |
| 14 | 87% |
| 15 | 84% |
| 16 | 82% |
| 17 | 79% |
| 18 | 77% |
| 19 | 75% |
| 20 | 73% |
| 21 | 72% |
| 22 | 70% |
| 23 | 68% |
| 24 | 67% |
| 25 | 66% |
| 26 | 64% |
| 27 | 63% |
| 28 | 62% |
| 29 | 61% |
| 30 | 60% |
| 31 | 59% |
| 32 | 59% |
| 33 | 58% |
| 34 | 57% |
| 35 | 56% |
| 36 | 56% |
| 37 | 55% |
| 38 | 55% |
| 39 | 54% |
| 40 | 54% |
| 41 | 53% |
| 42 | 53% |
| 43 | 53% |
| 44 and greater | 52% |

A4-1

## APPENDIX 5

### FUNDING BASED LIMITS

1.1    General.  This Appendix applies to limit benefit accruals, benefit payments and Plan amendments to the extent required by, and in accordance with, Code Section 436.  The limitations imposed by this Appendix shall be interpreted and administered in accordance with Code Section 436 and Treasury Regulation Section 1.436-1.  This Appendix is effective for Plan Years beginning after December 31, 2007.

1.2    Definitions.  The definitions in the following Treasury Regulations apply for purposes of this Appendix: Section 1.436-1(j)(1) defining adjusted funding target attainment percentage ("AFTAP"); Section 1.436-1(j)(2) defining annuity starting date; Section 1.436-1(j)(6) defining prohibited payment; Section 1.436-1(j)(8) defining Section 436 measurement date; and Section 1.436-1(j)(9) defining an unpredictable contingent event benefit.

1.3    Limitations Applicable if the Plan's AFTAP Is Less Than 80 Percent, but not Less Than 60 Percent.  Notwithstanding any other provisions of this Plan, if the Plan's AFTAP for a Plan Year is less than 80 percent (or would be less than 80 percent to the extent described in subsection (b)) but is not less than 60 percent, then the limitations set forth in this Section apply.

(a)    50 Percent Limitation On Lump Sum Payments or Other Prohibited Payments.  A Participant or Beneficiary is not permitted to elect, and the Plan will not pay, a Lump Sum payment or other Form of Payment that includes a prohibited payment with an annuity starting date on or after the applicable Code Section 436 measurement date, and the Plan will not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment, unless the present value of the portion of the benefit that is being paid in a prohibited payment does not exceed the lesser of:

(i)    50 percent of the present value of the benefit payable in the Form of Payment that includes the prohibited payment; or

(ii)    100 percent of the PBGC maximum benefit guarantee amount (as defined in Treasury Regulation Section 1.436-1(d)(3)(iii)(C)).

If a Form of Payment that is otherwise available under the terms of the Plan is not available to a Participant or Beneficiary as of the annuity starting date because of the application of this subsection, the Participant or Beneficiary is permitted to elect (in writing at the time and in the manner required by the Plan Administrator) to bifurcate the benefit into unrestricted and restricted portions (as described in Treasury Regulations Section 1.436-1(d)(3)(iii)(D)).    The Participant or Beneficiary may also elect any other Form of Payment otherwise available under the Plan at that annuity starting date that would satisfy the requirements of this

A5-1

subsection, or may elect to defer the benefit in accordance with any general right to defer commencement of benefits under the Plan.

(b)     Plan Amendments Increasing Liability for Benefits. No amendment to the Plan that has the effect of increasing liabilities of the Plan by reason of increased in benefits, establishment of new benefits, changing the rate of benefit accrual, or changing the rate at which benefits become nonforfeitable shall take effect in a Plan Year if the AFTAP for the Plan Year is:

(i)     Less than 80 percent; or

(ii)    80 percent or more, but would be less than 80 percent if the benefits attributable to the amendment were taken into account in determining the AFTAP.

The limitation set forth in this subsection does not apply to any amendment to the Plan that provides a benefit increase under a Retirement Income Formula that is not based on compensation, provided that the rate of such increase does not exceed the contemporaneous rate of increase in the average wages of Participants covered by the amendment.

1.4    Limitations Applicable if the Plan's AFTAP Is Less Than 60 Percent. Notwithstanding any other provisions of the Plan, if the Plan's AFTAP for a Plan Year is less than 60 percent (or would be less than 60 percent to the extent described in subsection (b)), then the limitations of this Section apply.

(a)     Lump Sum Payments or Other Prohibited Payments Not Permitted. A Participant or Beneficiary is not permitted to elect, and the Plan will not pay, a Lump Sum payment or other Form of Payment that includes a prohibited payment with an annuity starting date on or after the applicable Code Section 436 measurement date, and the Plan will not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment.

(b)     Shutdown Benefits and Other Unpredictable Contingent Event Benefits Not Permitted to be Paid. An unpredictable contingent event benefit with respect to an unpredictable contingent event occurring during a Plan Year will not be paid if the AFTAP percentage for the Plan Year is:

(i)     Less than 60 percent; or

(ii)    60 percent or more, but would be less than 60 percent if the AFTAP were redetermined applying an actuarial assumption that the likelihood of occurrence of the unpredictable contingent event during the Plan Year is 100 percent.

(c)     Benefit Accruals Frozen. Benefit accruals under the Plan shall cease as of the applicable Code Section 436 measurement date. In addition, if the Plan is required

A5-2

> to cease benefit accruals under this subsection, then the Plan is not permitted to be amended in a manner that would increase the liabilities of the Plan by reason of an increase in benefits or establishment of new benefits.

1.5    <u>Limitations Applicable If the Company Is In Bankruptcy</u>.  Notwithstanding any other provisions of the Plan, a Participant or Beneficiary is not permitted to elect, and the Plan will not pay, a Lump Sum payment or other Form of Payment that includes a prohibited payment with an annuity starting date that occurs during any period in which the Company is a debtor in a case under Title 11, United States Code, or similar Federal or State law, except for payments made within a Plan Year with an annuity starting date that occurs on or after the date on which the Plan's enrolled actuary certifies that the Plan's AFTAP for that Plan Year is not less than 100 percent.  In addition, during such period in which the Company is a debtor, the Plan will not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment, except for payments that occur on a date within a Plan Year that is on or after the date on which the Plan's enrolled actuary certifies that the Plan's AFTAP for that Plan Year is not less than 100 percent.

1.6    <u>Provisions Applicable After Limitations Cease to Apply</u>.

   (a)    <u>Resumption of Prohibited Payments</u>.  If a limitation on prohibited payments under Section 1.3(a), 1.4 or 1.5 of this Appendix 5 applied to the Plan as of a Code Section 436 measurement date, but that limit no longer applies to the Plan as of a later Code Section 436 measurement date, then that limitation does not apply to benefits with annuity starting dates that are on or after that later Code Section 436 measurement date.

   (b)    <u>Resumption of Benefit Accruals</u>.  If a limitation on benefit accruals under Section 1.4 of this Appendix 5 applied to the Plan as of a Code Section 436 measurement date, but that limitation no longer applies to the Plan as of a later Code Section 436 measurement date, then benefit accruals shall resume prospectively and that limitation does not apply to benefit accruals that are based on service on or after that later Code Section 436 measurement date, except as otherwise provided under the Plan.  Any benefit accruals will not be restored retroactively unless and until an amendment to the Plan is adopted to restore such accruals.  The Plan shall comply with the rules relating to partial years of participation and the prohibition on double proration under Department of Labor regulations.

   (c)    <u>Shutdown and Other Unpredictable Contingent Event Benefits</u>.  If an unpredictable contingent event benefit with respect to an unpredictable contingent event that occurs during the Plan Year is not permitted to be paid after the occurrence of the event because of the limitation of Section 1.4(b) of this Appendix 5, but is permitted to be paid later in the same Plan Year (as a result of additional contributions or pursuant to the enrolled actuary's certification of the AFTAP for the Plan Year that meets the requirements of Treasury Regulation Section 1.436-1(g)(5)(ii)(B)), then that unpredictable contingent event benefit shall be paid, retroactive to the period that benefit would have been payable under the terms of the Plan (determined

A5-3

without regard to Section 1.4(b) of this Appendix 5). If the unpredictable contingent event benefit does not become payable during the Plan Year in accordance with the preceding sentence, then the Plan is treated as if it does not provide for that benefit.

(d)     Treatment of Plan Amendments That Do Not Take Effect. If a Plan amendment does not take effect as of the effective date of the amendment because of the limitation of Section 1.3(b) or 1.4(c) of this Appendix 5, but is permitted to take effect later in the same Plan Year (as a result of additional contributions or pursuant to the enrolled actuary's certification of the AFTAP for the Plan Year that meets the requirements of Treasury Regulation Section 1.436-1(g)(5)(ii)(C)), then the Plan amendment must automatically take effect as of the first day of the Plan Year (or, if later, the original effective date of the amendment). If the Plan amendment cannot take effect during the same Plan Year, then it shall be treated as if it were never adopted, unless the Plan amendment provides otherwise.

1.7     Notice Requirement. In the event that the Plan becomes subject to a restriction described in Section 1.3(a), 1.4 or 1.5 of this Appendix 5, the Plan Administrator shall provide written notice thereof to Participants and Beneficiaries in accordance with ERISA Section 101(j) and any applicable guidance thereunder.

1.8     Methods to Avoid or Terminate Benefit Limitations. The rules in Code Sections 436(b)(2), (c)(2), (e)(2) and (f), and Treasury Regulation Section 1.436-1(f) relating to employer contributions and other methods to avoid or terminate the application of the limitations under Sections 1.3 through 1.5 of this Appendix 5 for a Plan Year are hereby incorporated by reference. In general, the methods the Company may use to avoid or terminate one or more of the benefit limitations under Sections 1.3 through 1.5 of this Appendix 5 for a Plan Year include (i) making one or more contributions in and electing to increase the amount of Plan assets which are taken into account in determining the AFTAP, (ii) making a contribution that is specifically designated as a current year contribution that is made to avoid or terminate application of certain of the benefit limitations, or (iii) providing security to the Plan.

1.9     Special Rules.

(a)     Rules of Operation for Periods Before and After Certification of Plan's AFTAP.

(i)     In General. Code Section 436(h) and Treasury Regulation Section 1.436-1(h) of the set forth a series of presumptions that apply (A) before the Plan's enrolled actuary issues a certification of the Plan's AFTAP for the Plan Year; and (B) if the Plan's enrolled actuary does not issue a certification of the Plan's AFTAP for the Plan Year before the first day of the tenth month of the Plan Year (or if the Plan's enrolled actuary issues a range certification for the Plan Year pursuant to Treasury Regulation Section 1.436-1(h)(4)(ii) but does not issue a certification of the specific AFTAP for the Plan by the last day of the Plan Year). For any period during which a presumption under Code Section 436(h) and Treasury Regulation Section 1.436-1(h) applies to

A5-4

the Plan, the limitations under Sections 1.3 through 1.5 of this Appendix 5 are applied to the Plan as if the AFTAP for the Plan Year were the presumed AFTAP determined under the rules of Code Section 436(h) and Treasury Regulation Sections 1.436-1(h)(1), (2) or (3). These presumptions are set forth in paragraphs (ii) though (iv).

(ii)    <u>Presumption of Continued Underfunding Beginning First Day of Plan Year</u>. If a limitation under Section 1.3, 1.4 or 1.5 of this Appendix 5 applied to the Plan on the last day of the preceding Plan Year, then, commencing on the first day of the current Plan Year and continuing until the Plan's enrolled actuary issues a certification of the AFTAP for the Plan for the current Plan Year, or, if earlier, the date paragraph (iii) or (iv) applies to the Plan:

    (A)    the AFTAP of the Plan for the current Plan Year is presumed to be the AFTAP in effect on the last day of the preceding Plan Year, and

    (B)    the first day of the current Plan Year is a Section 436 measurement date.

(iii)    <u>Presumption of Underfunding Beginning First Day of Fourth Month</u>. If the Plan's enrolled actuary has not issued a certification of the AFTAP for the Plan Year before the first day of the fourth month of the Plan Year and the Plan's AFTAP for the preceding Plan Year was either at least 60% but less than 70% or at least 80% but less than 90%, or is described in Treasury Regulation Section 1.436-1(h)(2)(ii), then, commencing on the first day of the fourth month of the current Plan Year and continuing until the Plan's enrolled actuary issues a certification of the AFTAP for the Plan for the current Plan Year, or, if earlier, the date paragraph (iv) applies to the Plan:

    (A)    the AFTAP of the Plan for the current Plan Year is presumed to be the Plan's AFTAP for the preceding Plan Year reduced by ten percentage points, and

    (B)    the first day of the fourth month of the current Plan Year is a Section 436 measurement date.

(iv)    <u>Presumption of Underfunding On and After First Day of Tenth Month</u>. If the Plan's enrolled actuary has not issued a certification of the AFTAP for the Plan Year before the first day of the tenth month of the Plan Year (or if the Plan's enrolled actuary has issued a range certification for the Plan Year pursuant to Treasury Regulation Section 1.436-1(h)(4)(ii) but has not issued a certification of the specific AFTAP for the Plan by the last day of the Plan Year), then, commencing on the first day of the tenth month of the current Plan Year and continuing through the end of the Plan Year:

    (A)    the AFTAP of the Plan for the current Plan Year is presumed to be less than 60%, and

A5-5

(B)     the first day of the tenth month of the current Plan Year is a Section 436 measurement date.

(b)     <u>Special Rules Relating to Unpredictable Contingent Event Benefits and Plan Amendments Increasing Benefit Liability</u>.  During any period in which none of the presumptions under Section 1.9(a) of this Appendix 5 apply to the Plan and the Plan's enrolled actuary has not yet issued a certification of the Plan's AFTAP for the Plan Year, the limitations under Sections 1.3(b) and 1.4(b) of this Appendix 5 shall be based on the inclusive presumed AFTAP for the Plan, calculated in accordance with the rules of Treasury Regulation Section 1.436-1(g)(2)(iii).

<u>Special Rules under PRA 2010</u>.  For purposes of determining whether the accrual limitation under Section 1.4(c) of this Appendix 5 applies to the Plan, the AFTAP for a Plan Year shall be determined in accordance with the "Special Rule for Certain Years" under Code Section 436(j)(3) (except as provided under Section 203(b) of the Preservation of Access to Care for Medicare Beneficiaries and Pension Relief Act of 2010, if applicable).

(c)     <u>Rules for Beneficiaries and Alternate Payees</u>.

(i)     <u>Beneficiary</u>.  If the only benefit paid with respect to a Participant under the Plan is a death benefit, then the rules of this Appendix shall be applied by substituting the lifetime of the Spouse, Domestic Partner, if applicable, or Beneficiary instead of the lifetime of the Participant in determining a prohibited payment.

(ii)    <u>Alternate Payee</u>.  For this Appendix, the Accrued Benefit shall be allocated among the Participant and an Alternate Payee in the same manner as the accrued benefit is allocated under the QDRO, unless the QDRO provides otherwise.

(d)     <u>Consent Rules Apply Separately to Unrestricted and Restricted Portions</u>.  The consent and present value requirements of Treasury Regulation Section 1.417(e)-1 apply separately with respect to the unrestricted and restricted portions of the benefit.

A5-6

## APPENDIX 6

### RETIREE HEALTH CARE

1.1    General.  This Appendix establishes the basis to fund retiree health care provided by the Participating Companies in accordance with Code Section 401(h) and Treasury Regulation section 1.401-14.  This Appendix is a part of the Plan and shall be administered in accordance with the provisions thereof, except as expressly provided in this Appendix.  Capitalized terms used in this Appendix and not defined herein shall have the same meanings as in the Plan.

1.2    Health Care Coverage.

   (a)    Coverage Provided.  A portion of the cost of medical benefits as described in Code Section 401(h) under the health care plan that the Participating Companies provide to an eligible retired Participant and his or her eligible dependents (the "Health Care Plan") may be paid by the Plan under this Appendix.

   (b)    Eligibility for Coverage.  The payment of medical expenses under this Appendix shall only be made for an eligible retired Participant and his or her eligible dependents as described in the Health Care Plan.

   Notwithstanding the foregoing, no funding is authorized pursuant to this Appendix for any retired Participant who is or was a "key employee" (as defined in Code Section 416(i)) during a Plan Year or any preceding Plan Year in which contributions to this Appendix were made, or for the eligible dependents of such a retired Participant.

   (c)    Limitation on Rights.  This Appendix does not provide greater rights to coverage than those rights provided under the Health Care Plan, nor will any rights be vested in any retired Participant or his or her dependents as a result of this Appendix.  The Company reserves the right to amend this Appendix to modify, reduce or eliminate coverage for eligible retired Participants and their eligible dependents under the Health Care Plan, or to add to or increase the amount of required or optional contributions by eligible retired Participants and their eligible dependents for such coverage.  Such amendments may apply to any individual or dependent, whether or not the individual is a retired Participant at the time the amendment is made or becomes effective.

1.3    Separate Account.

   (a)    In General.  Contributions to the Plan pursuant to this Appendix shall be maintained for bookkeeping purposes as a separate account within the Trust pursuant to the Plan, but assets credited to such account may be commingled and invested in common with the Plan's other assets.

   (b)    Non-Diversion.  Prior to the satisfaction of all liabilities to fund medical benefits under the Health Care Plan pursuant to this Appendix, no part of the assets credited

to the Health Care Plan account described in Section 1.3(a) of this Appendix 6 may be used or diverted to any purpose other than the purpose of providing such medical benefits and of defraying the reasonable expenses of administering this Appendix.

1.4    Funding.

(a)    Contributions by Participating Companies. The Participating Companies may make reasonable and ascertainable contributions that are designated as allocable to the Health Care Plan account pursuant to this Appendix in such amounts and at such time or times as the Participating Companies may determine to be necessary to fund normal and past service costs to provide Health Care Plan benefits in accordance with any reasonable, generally accepted actuarial method. The contributions of the Participating Companies to the Health Care Plan account maintained pursuant to this Appendix, when added to any contributions for life insurance protection under the Plan, will not exceed 25% of the Total Contributions to the Plan. For purposes of this subsection, "Total Contributions" includes contributions made to the Health Care Plan account and any other contributions made to the Plan (excluding any contributions made by the Participating Companies to fund past service credits).

(b)    Effect of Forfeitures. In the event that an individual's interest under this Appendix is forfeited prior to the termination of this Appendix or of the Plan, an amount equal to the amount of the forfeiture shall be applied as soon as practicable to reduce future Participating Company contributions to this Appendix.

1.5    Amendment and Termination of this Appendix.

(a)    Amendment and Termination. The Participating Companies reserve the right to amend or terminate this Appendix at any time, whether or not in conjunction with the termination of the Plan. Termination of the Plan, however, shall automatically terminate this Appendix. No Participant will become vested in his rights under the Plan or this Appendix if this Appendix is terminated.

(b)    Satisfaction of Liabilities. Notwithstanding any contrary provision of the Plan, upon the satisfaction of all liabilities to provide coverage under the Health Care Plan to existing eligible retired Participants or their eligible dependents pursuant to this Appendix, any funds credited to the Health Care Plan account shall be returned to the Participating Companies and, at such time, any amounts remaining in the Health Care Plan account shall revert to each Participating Company to the extent attributable thereto, as determined by the Investment Committee, in its sole discretion.

20824725v.2

## APPENDIX 7

### AFTER-TAX CONTRIBUTIONS

1.1    <u>General</u>.

    (a)    <u>History</u>.  This Appendix establishes Voluntary Contributions Accounts to which Eligible Employees may contribute after-tax and rollover contributions.

    (b)    <u>Technical Structure</u>.  This Appendix shall only apply to an Eligible Employee covered by a Supplement that specifically provides for application of this Appendix.  In the event of any conflict between the terms of the Plan document or an applicable Supplement and the terms of this Appendix, the terms of this Appendix shall control unless specifically provided otherwise.

1.2    <u>Definitions</u>.

    (a)    <u>Account</u>.  Account means each of the individual accounts established pursuant to Section 1.4 of this Appendix 7 representing a Participant's allocable share of the Trust under this Appendix.

    (b)    <u>Annual Addition</u>.  Annual Addition means for any Plan Year, an Eligible Employee's Voluntary Contributions, and employer and employee contributions and forfeitures under any other qualified defined contribution plan to which a Controlled Group Company contributes with respect to that Plan Year.

    (c)    <u>Average Contribution Percentage</u>.  Average Contribution Percentage means the sum of the Contribution Percentages for all Eligible Employees in either the Highly Compensated Employee or Non-Highly Compensated Employee group divided by the number of Eligible Employees in that group.

    (d)    <u>Compensation</u>.  Compensation means the amount paid to an Eligible Employee by a Participating Company during employment (and normally paid within 31 days following Termination of Employment and that otherwise meets the requirements of Treas. Reg. Section 1.415(c)-2(e)(3)) including shift differential, meal allowance and all other special bonuses or allowances.  Effective January 1, 2002, Total Compensation shall exclude any compensation in excess of $200,000, adjusted as provided in Code Section 401(a)(17)(B).  Compensation includes the amount contributed by a Participating Company on behalf of an Eligible Employee, pursuant to the terms of a salary reduction agreement, under Code Section 401(k), 125, 129, or effective with Plan Years beginning after December 31, 2000, Code Sections 132(f)(4).

    (e)    <u>Contribution Percentage</u>.  The ratio of an Eligible Employee's Voluntary Contributions for the Plan Year to the Eligible Employee's compensation (as defined in Code Section 414(s) and subject to the limits in Code Section 401(a)(17)).

A7-1

(f)  Investment Funds.  Investment Funds mean the funds selected by the Investment Committee among which a Participant may elect to invest his Account.

(g)  Non-Highly Compensated Employees.  Non-Highly Compensated Employee means an Employee who is not a Highly Compensated Employee.

(h)  Lump Sum.  The Payment Option described in Section 1.5(f) of this Appendix 7.

(i)  Payment Option.  Payment Option means the form in which the Participant's Account is paid as described in Section 1.5 of this Appendix 7.

(j)  Rollover Contribution.  Rollover Contribution means:

  (i)  Amounts eligible for tax-free rollover treatment that an Eligible Employee elects to contribute to this Plan from a plan described in Code Sections 401(a) or 403(b)(7), or a plan under Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state (a "governmental 457 plan") and excluding designated Roth contributions under Code Section 402A;

  (ii)  A distribution described in (i) above that is received by an Eligible Employee and is eligible for tax-free rollover treatment and which is contributed by the Eligible Employee to this Plan within sixty (60) days following receipt of the distribution;

  (iii)  Amounts transferred to this Plan from a conduit individual retirement account, provided that such account does not include amounts designated as a Roth IRA described in Code Section 408A and further has no assets other than assets which were previously distributed to the Eligible Employee by a plan described in Code Sections 401(a) or 403(b)(7), or from a governmental 457 plan and further provided that such amounts met the applicable requirements of Code Section 408(d)(3) for rollover treatment on transfer to the conduit individual retirement account;

  (iv)  Amounts distributed to an Eligible Employee from a conduit individual retirement account meeting the requirements of (iii) above which are distributed by the Eligible Employee to this Plan within 60 days of his receipt from such account; and

  (v)  An eligible rollover distribution from a qualified defined benefit plan sponsored by a Medical Care Organization, if an Eligible Employee directly contributes the distribution to this Plan, or if the Participant deposits the distribution into this Plan within sixty (60) days following receipt of the distribution.

(k)  Voluntary Contributions Account.  Voluntary Contributions Account means the individual account maintained for a Participant's Voluntary Contributions.

A7-2

(l)     <u>Voluntary Contributions</u>.  Voluntary Contributions mean amounts contributed by an Eligible Employee to the Plan pursuant to this Appendix.

1.3     <u>Contributions</u>.

(a)     <u>Voluntary Contribution Election</u>.  An Eligible Employee may elect to contribute, as Voluntary Contributions on an after-tax basis, any full percentage from 1% to 10% of his Compensation.  Subject to reasonable rules established by the Administrative Committee, an Eligible Employee may increase, decrease, cease or resume Voluntary Contributions.  Voluntary Contributions shall cease during periods of unpaid leave.  Notwithstanding any provision of this Appendix to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u).

(b)     <u>Rollover Contributions</u>.  An Eligible Employee may elect to make Rollover Contributions to the Plan provided that the Administrative Committee is reasonably satisfied that such Rollover Contribution will not jeopardize the tax-exempt status of the Plan.  Rollover Contributions are Vested.  Rollover Contributions are not Annual Additions and are not considered when calculating an Eligible Employee's Contribution Percentage.

(c)     <u>Eligible Employee</u>.  A Participant who ceases to be an Eligible Employee is not permitted to make Voluntary Contributions or Rollover Contributions.

1.4     <u>Accounts</u>.

(a)     <u>General</u>.  For each Eligible Employee, there shall be a separate Voluntary Contribution Account and Rollover Account.  Each Account shall be credited with the amount of contributions, interest and earnings of the Trust allocated to such Account.  Voluntary Contributions will be allocated to an Eligible Employee's Account no later than the date required for contributions to be made to the Trust pursuant to Department of Labor Regulation Section 2510.3-102.  Each Participant's Account is Vested.

(b)     <u>Investment Funds</u>.  Subject to the discretion of the Investment Committee to consolidate, eliminate or create Investment Funds, the Trustee shall establish and maintain in the Trust various Investment Funds. The Investment Committee may establish uniform nondiscriminatory rules regarding a Participant's ability to invest his Account in one or more of the Investment Funds.

(c)     <u>Investment Direction</u>.  A Participant's Account shall be invested in one or more Investment Funds.  The amounts to be invested in the Investment Funds shall be in integral multiples of 1% of the amounts contributed by the Participant.  If the Participant fails to make an investment election, any amounts allocated to such Participant's Account shall be invested in the Investment Fund(s) designated by the Investment Committee.

(d)  Change in Investment Direction.  Any investment direction by a Participant pursuant to Section 1.4(c) of this Appendix 7 is a continuing direction until changed by the Participant.  Such change shall be implemented in accordance with the conditions and procedures prescribed by the Investment Committee.

(e)  Reallocation of Investments.  Any Participant may direct a reallocation of the investment of his Account among the various Investment Funds.  The Investment Committee may prescribe limitations upon transfers between any two or more Funds.

1.5  Payment of Account.

(a)  General.  The Participant shall elect a Benefit Commencement Date and Payment Option for payment of his Account by filing the prescribed form, in writing, with the Administrative Committee at any time during the Election Period and any other information required by the Administrative Committee.  The Participant may revoke a prior Payment Option (but not Benefit Commencement Date) election at any time during the Election Period, but the election shall become irrevocable when the Election Period expires.

    (i)  General.  Unless the Participant elects otherwise, distribution of his Account will begin no later than the 60th day after the latest of the close of the Plan Year in which:

        (A)  The Participant attains Normal Retirement Age;

        (B)  Occurs the 10th anniversary of the year in which the Participant commenced participation in the Plan; or

        (C)  The Participant incurs a Controlled Group Termination.

    (ii)  Deemed Election To Defer.  Notwithstanding subsection (a), the failure of a Participant to consent to a distribution when eligible to receive his Account shall be deemed an election to defer distribution of benefits sufficient to satisfy this Section.

(b)  Small Cash Outs.  Notwithstanding anything to the contrary, if the Participant's Account is $1,000 or less, the Participant's Account will be paid as a Lump Sum as soon as administratively practicable after the Participant's Termination of Employment.

(c)  Spousal Consent.  If the Participant is married and the Value of his Account is greater than $1,000, the Participant's Spouse must consent (in accordance with Plan Section 8.2) to any Payment Option other than the Joint and Survivor Annuity with the Spouse as Joint Annuitant.

A7-4

20824725v.2

(d)   <u>Information for Participants</u>.

    (i)   If a Participant's Account is greater than $1,000, during the Election Period, but at least 30 days before the Benefit Commencement Date, the Plan shall provide the Participant with a written explanation in nontechnical language of:

        (A)   The terms and conditions of the Forms of Payment available to the Participant;

        (B)   An explanation of the Participant's right to make or revoke an election under this Article and the effect thereof;

        (C)   The effect of a failure to elect a Form of Payment;

        (D)   The rights of the Participant's Spouse under this Article;

        (E)   The Participant's rights (if any) to defer payment to a later date; and

        (F)   The consequences of not deferring payment to a later date.

    (ii)   Notwithstanding the foregoing, the distribution may commence less than 30 days after the written explanation is given to the Participant, provided that:

        (A)   The Participant is clearly informed that he has the right to a period of at least 30 days after receiving the written explanation to consider the decision of whether or not to elect a distribution and a particular Form of Payment;

        (B)   The Participant, after receiving the written explanation, affirmatively elects a distribution; and

        (C)   The distribution commences more than seven days after the written explanation is provided to the Participant.

(e)   <u>Normal Form of Payment</u>.  Unless a Participant elects otherwise, a Participant's Account will be paid as:

    (i)   <u>Participants Without a Spouse</u>.  If a Participant does not have a Spouse on his Benefit Commencement Date, a Single Life Annuity.

    (ii)   <u>Participants With a Spouse</u>.  If a Participant has a Spouse on his Benefit Commencement Date, a 50% Joint and Survivor Annuity with the Participant's Spouse as Joint Annuitant.

(f)   <u>Forms of Payment</u>.  Subject to the requirements of this Appendix, a Participant may elect one of the Payment Options described in this Section:

A7-5

(i)    <u>Single Life Annuity</u>.  Under this option, the Participant's Account is used to purchase a single premium non-transferable life annuity contract for the Participant, which is payable monthly for the Participant's life and ceases on his death.

(ii)    <u>Joint and Survivor Annuity</u>.  Under this Form of Payment, the Participant's Account is used to purchase a single premium non-transferable joint and survivor annuity contract for the Participant and the Participant's Joint Annuitant.  The annuity is paid monthly during their joint lives and continues to the survivor for life.  The Participant may elect a continuation percentage to the survivor of 100%, 75%, 66 2/13% or 50%.  If the Participant's Joint Annuitant is not his Spouse and the Joint Annuitant is more than 10 years younger than the Participant, the continuation payment percentage elected by the Participant may not exceed the applicable percentage from the Applicable Percentage Appendix in compliance with the incidental death benefit requirement of Code Section 401(a)(9)(G).

(iii)    <u>Lump Sum</u>.  Under this Form of Payment, the Participant's Account is paid to the Participant in a single cash payment.

(iv)    <u>Installments</u>.  Under this Form of Payment, the Participant's Account is paid in annual, quarterly or monthly installments over the period of years elected by the Participant, at least two and no more than 25 years.  In no event will the elected period extend beyond the life expectancy of the Participant.  No installment, other than the last installment, will be less than $100.  A Participant may request a total or partial distribution of his remaining Account at any time during the elected installment period.  The Participant continues to direct the investment of his Account pursuant to this Appendix until the entire Account is distributed.

(v)    <u>Direct Rollovers</u>. Plan Section 10.5 (Direct Rollovers) applies to this Appendix.

1.6    <u>In-Service Withdrawals</u>.

(a)    A Participant may withdraw all or a portion of his Voluntary Contributions Account before his Termination of Employment by filing the prescribed form, in writing, with the Administrative Committee.

(b)    A Participant may withdraw all or a portion of his Voluntary Contributions Account in a Lump Sum by filing a written election with the Administrative Committee, provided that, if the Participant is married payment shall be made in the form of a Joint and Survivor Annuity with the Participant's Spouse as Joint Annuitant, unless the Spouse consents (in accordance with Plan Section 8.2(b)) to the Lump Sum.

(c)    A Participant may only make two in-service withdrawal elections in any Plan Year. A Participant who elects an in-service withdrawal may continue making Voluntary Contributions.

A7-6

1.7    <u>Loans</u>.

    (a)    <u>Availability</u>.  An Eligible Employee may request a loan by completing a form provided by the Administrative Committee.  Loans are approved and administered by the Administrative Committee.  When determining whether to grant or deny a loan, the Administrative Committee may rely on the Participant's statement and make a determination without further investigation.  Loans shall be made available to all Eligible Employees and Beneficiaries on a non-discriminatory and reasonably equivalent basis in accordance with policies and procedures implemented to administer loans.

    (b)    <u>Amount</u>.  A Participant may borrow up to the lesser of: (i) $50,000, less the highest outstanding principal balance of all loans to the Participant from this Plan or any other qualified plan maintained by a Controlled Group Company during the 12-month period ending on the day before the new loan is to be made, or (ii) 50% of the Participant's Account less the outstanding balance of any prior loans under the Plan.

    (c)    <u>Terms</u>.

        (i)    <u>Interest Rate</u>.  Each loan shall bear interest at a fixed rate equal to the prime rate plus one percent (1%).  The prime rate will be based on the prime rate published in the Reuters on the first publication day of each month.  The rate is valid for thirty (30) business days from the date the loan application is mailed to the Eligible Employee.

        (ii)    <u>Loan Term</u>.  The term of each loan, except for a loan made to an Eligible Employee which is intended to be used for the purpose of purchasing a principal residence of the Eligible Employee, is limited to not more than five years. A loan made to an Eligible Employee which is intended to be used for the purpose of purchasing a principal residence of the Eligible Employee may be repaid over a period of time not to exceed fifteen years. Payment on the loan amount plus interest shall be made by payroll reduction no less frequently than quarterly and shall reflect a substantially level of amortization of such loan.  Loan repayments will be suspended under this Plan as permitted under Code Section 414(u)(4).

        (iii)    <u>Security</u>.  Each loan shall be secured by 50% of the Eligible Employee's Account at the time of the application.  Each loan shall be evidenced by a written promissory note for the amount of the loan, including interest, payable to the Trust.

        (iv)    <u>Changes to Loan Terms</u>.  No change may be made in the terms and conditions of any outstanding loan that is current without the approval of the Eligible Employee, except as required by law, or to maintain the Plan's tax qualified status.

A7-7

(v)     Spousal Consent. If an Eligible Employee is married, the Spouse must consent to a Participant's loan request pursuant to Plan Section 8.2(b). The Spouse's consent must be obtained within the 90-day period ending on the date on which the loan is issued.

(vi)     Reasonable Fees. An Eligible Employee who receives a loan under this Appendix shall be required to pay such fees as the Administrative Committee may impose in order to defray the cost of administering the loan.

(vii)     Investment. If an Eligible Employee receives a loan, a loan fund shall be established as an investment of the Participant's Account. The loan fund shall be held by the Trustee and the amount of the loan shall be transferred from the Participant's other Investment Funds with repayments credited back to the Investment Funds.

(viii)     Default. A loan defaults if a periodic payment is not made by the end of the calendar quarter following the calendar quarter of the Participant's first missed payment or if the Participant has a Termination of Employment and does not repay the full outstanding loan balance plus accrued interest within 90 days. A loan defaults upon the death of the Participant, unless the Spouse or Beneficiary elects to defer payment of the account and continue making the full scheduled loan repayments. Any loss caused by nonpayment or other default on a Participant's loan obligations shall be borne solely by that Participant's Account. Upon default, the portion of a Participant's Account held as security for the loan immediately will be reduced by the unpaid balance of the loan plus interest, and the Participant's indebtedness will be discharged to the extent of the reduction.

1.8     Death Benefits.

(a)     General. If the Participant dies before his Benefit Commencement Date, the Administrative Committee shall pay the Participant's Account to the Participant's Beneficiary or Beneficiaries in accordance with this Section. If a Participant dies after his Benefit Commencement Date, no benefit is payable under this Section and the benefit payable, if any, shall be payable in accordance with the Participant's Form of Payment.

(b)     Beneficiary Designation.

(i)     A Participant may designate his Beneficiary or Beneficiaries for his Account by filing with the Administrative Committee, at any time, and any number of times, a written designation of Beneficiary or Beneficiaries.

(ii)     If a Participant fails to file a Beneficiary designation, or if his designated Beneficiary or Beneficiaries do not survive him, his Account is paid as a Lump Sum to the person or persons, on an equal share basis, in which there is a survivor in the first of the following categories: the Participant's Spouse; the Participant's surviving child or children, natural or adopted; and

A7-8

the Participant's parent or parents. If there is no such survivor, the Participant's Account shall be paid to the Participant's estate.

(c)   <u>Waiver of Spouse's Survivor Benefit</u>.  If the Participant is married and makes a Beneficiary designation that provides his Spouse with less than 50% of the Participant's Account upon the Participant's death, then that election must be made pursuant to a "qualified election" within the "election period."

   (i)    For this purpose, a "qualified election" is an election that includes the consent of the Participant's Spouse that satisfies the requirements of Plan Section 8.2.

   (ii)   For this purpose, the "election period" is the period beginning on the first day of the Plan Year in which the Participant attains age 35 and ends on the date of the Participant's death.  If a Participant's Termination of Employment occurs before the first day of the Plan Year in which he attains age 35, then for his Account as of the date of such termination, the election period begins on the date of Termination of Employment.

(d)   <u>Payment to Non-Spouse Beneficiary</u>.

   (i)    If a Participant's Beneficiary is not his Spouse, the Participant's Account shall be paid to the designated non-Spouse Beneficiary in a Lump Sum as soon as practicable after the later of the date the Administrative Committee receives notification of the Participant's death or the date the Administrative Committee receives a completed set of all required forms.  Notwithstanding the foregoing, all distributions shall commence in accordance with Code Section 401(a)(9) and the Regulations thereunder.

   (ii)   If a married Participant's Beneficiary is not his Spouse, but a properly witnessed spousal consent was not filed with the Administrative Committee, a Life Annuity for the Participant's Spouse shall be purchased with 50% of the Participant's Account, unless the Spouse elects otherwise, and the balance of the Account shall be paid to the non-Spouse Beneficiary or Beneficiaries as a Lump Sum.

(e)   <u>Payment to Spouse Beneficiary</u>.

   (i)    The Spouse may elect, in writing, to waive the Life Annuity and elect any other applicable Form of Payment.

   (ii)   The Participant's Spouse may elect to have payments commence immediately after the Participant's death or, if the Participant's Account is more than $1,000, to defer commencement of payments to April 1 of the year following the year in which the Participant would have attained age 70 1/2.  If deferral is elected, the Account remains invested in the Trust and the Participant's Spouse may continue to direct the investment of the Account as described in this Appendix.

A7-9

        (iii)    If no election is made, payments will commence as of the Participant's Normal Retirement Date. The Spouse must consent in writing, no more than 90 days before payments begin, to any payment which commences before the Participant's Normal Retirement Date.

1.9    Miscellaneous.

    (a)    Qualified Domestic Relations Order. Benefits shall be paid in accordance with a Qualified Domestic Relations Order with respect to the Plan. Any portion of a Participant's Account assigned to an Alternate Payee may commence at any time specified in the Qualified Domestic Relations Order. Benefits may be paid to an Alternate Payee under any of the Form of Payment, except for a Joint and Survivor Annuity with the Alternate Payee's subsequent Spouse as Joint Annuitant.

    (b)    Required Distributions.

        (i)    Notwithstanding any other Plan provision to the contrary, all distributions under this Appendix shall commence on the Participant's Required Beginning Date and in accordance with Treasury Regulations under Code Section 401(a)(9), including Treasury Regulations Section 1.401(a)(9)-2 through Section 1.401(a)(9)-9, as applicable. These regulations are incorporated by reference and shall override any inconsistent Plan provisions. For purposes of calculating minimum distributions, life expectancies shall be determined without recalculation.

        (ii)    Any Payment Option must be paid over a period not to exceed the life of the Participant or the joint lives of the Participant and the Participant's designated Beneficiary, or over a period not extending beyond the life expectancy of the Participant or the life expectancy of the Participant and the Participant's designated Beneficiary on the Benefit Commencement Date. If the designated Beneficiary or Joint Annuitant is not the Participant's Spouse and is more than 10 years younger than the Participant, the continuation payment percentage elected by the Participant may not exceed the applicable percentage from Plan Appendix 5 (Minimum Distribution Incidental Benefit Table) in compliance with the incidental death benefit requirements of Code Section 401(a)(9)(G).

    (c)    Section 415 Limits.

        (i)    Except to the extent permitted under Code Section 414(v), the Annual Additions a Participant's Account for any limitation year shall not exceed the lesser of:

           (A)    $40,000, as adjusted for increases in the cost-of-living under Code Section 415(d), or

           (B)    100 percent of the Participant's Section 415 Compensation for the limitation year.

A7-10

(ii)    If the Participant participates in one or more qualified defined contribution plans maintained by the Company or any Controlled Group Company in addition to this Plan and such other plan or plans are subject to Code Section 412, then Annual Additions will be credited to the Participant's accounts under such other plan or plans prior to crediting Annual Additions to the Participant's Account under this Plan. If the Participant participates in one or more qualified defined contributions plans maintained by the Company or an Affiliate in addition to this Plan and such other plan or plans are not subject to Code Section 412, then the maximum Annual Additions under this Plan shall equal the product of (i) the maximum Annual Additions under this Section for the limitation year minus any Annual Additions credited under the preceding sentence, multiplied by (ii) a fraction, (A) the numerator of which is the Annual Additions which would be credited to the Participant's Account without regard to the limits of this Section, and (B) the denominator of which is such Annual Additions for all such qualified defined contribution plans of the Company or an Affiliate.

(iii)    Code Section 415 and the Regulations thereunder are incorporated by reference.

(d)    <u>Discrimination Tests</u>. Voluntary Contributions under the Appendix are intended to meet all requirements of Code Section 401(m).

(i)    <u>ACP Test</u>. For each Plan Year, the Contribution Percentages for Eligible Employees will be tested to determine compliance with Code Section 401(m). Such Eligible Employees will be divided into two groups: Highly Compensated Employees and Non-Highly Compensated Employees. The Average Contribution Percentage (ACP) for each group shall be calculated as the sum of the Contribution Percentages for all Eligible Employees in that group divided by the number of Eligible Employees in the group. For this purpose, the ACP of the group of Non-Highly Compensated Employees for the current Plan Year will be used. For each Plan Year, one of the following discrimination tests must be satisfied.

(A)    The ACP for the Highly Compensated Employee group does not exceed the ACP for the Non-Highly Compensated Employee group multiplied by 1.25.

(B)    The ACP for the Highly Compensated Employee group does not exceed the lesser of: (A) the ACP for the Non-Highly Compensated Employee group plus two percentage points, or (B) the ACP for the Non-Highly Compensated Employee group multiplied by two.

(ii)    If at any time during the Plan Year the Plan Administrator determines that the discrimination tests may not or have not been satisfied, the Plan Administrator will reduce the contribution level of the Highly Compensated Employee with the greatest dollar amount of Voluntary Contributions for

A7-11

that Plan Year to date, by returning amounts of such Voluntary Contributions until either (i) the Plan satisfies one of the discrimination tests or (ii) the amount of Voluntary Contributions credited for the Plan Year to date to such Employee's Account is equal to that of the Highly Compensated Employee with the next-highest amount of Voluntary Contributions credited for the Plan Year to date to such Employee's Account. This leveling process is repeated until the Plan satisfies one of the discrimination tests.

(iii)    The reduction described in subsection (b) will entail a reduction in the amount of Voluntary Contributions for such Participants pursuant to Treasury Regulation 1.401(m)-2(b)(2)(iv). If such reduction is required, the Plan Administrator shall distribute the amount in excess of the allowed Voluntary Contributions, plus allocated income or loss for the Plan Year and including gap earnings (for years before January 1, 2008), to each Highly Compensated Employee whose Voluntary Contributions were reduced. Such amounts, plus allocated income or loss for the Plan Year and including gap earnings (for years before January 1, 2008), will generally be distributed by March 15 of the following Plan Year, but in no event later than December 31 of the following Plan Year. Effective January 1, 2008, a distribution of the amount in excess of the allowed Voluntary Contributions under this Section will not include gap earnings.  For this purpose, gap earnings are earnings for the period between the end of the Plan Year and the date of distribution.

(iv)    Aggregation.  In the event that this Plan is aggregated with one or more other plans in order to satisfy the requirements of Code Section 401(m), then all such aggregated plans, including the Plan, shall be treated as a single plan for all purposes under such Code Section 401(m).