# EXHIBIT B

## Lia Javier

| Date | Contact Type | Contact Description |
|------|--------------|---------------------|
| August 8, 2017 | Outbound Mail | Announcement postcard mailed to 805 Fieldstone Court, Brentwood, CA 94513 |
| August 18, 2017 | Outbound Mail | Election kit and decision guide mailed to 805 Fieldstone Court, Brentwood, CA 94513 |
| September 11, 2017 | Outbound Mail | Reminder Postcard #1 mailed to 805 Fieldstone Court, Brentwood, CA 94513 |
| September 25, 2017 | Outbound Mail | Reminder Postcard #2 mailed to 805 Fieldstone Court, Brentwood, CA 94513 |
| October 4, 2017 | Inbound Call | VT advised she received a reminder notice and asked what it was regarding. The CSR advised the VT it was a reminder regarding the lump sum offer mailed in August. |
| October 4, 2017 | Inbound Call | VT advised she received a reminder notice, however she never received any other information. The CSR advised the VT an announcement letter was mailed in August, followed by the election kit and reminder notices. The CSR advised the VT she had until October 5th to complete her election, and can do so online. The CSR provided the VT with her login information. The VT expressed concerns about having only day to make a decision and asked for more time. The CSR advised the VT the deadline is strict. The CSR recommended the VT view her benefit online, complete the election process if she is interested, and that she would have until October 31st to revoke her election. The VT expressed that she felt more comfortable knowing she would have time to change her mind. |
| October 4, 2017 | Inbound Call | VT advised she was having trouble logging in online. The CSR attempted to troubleshoot the VT's issues. The VT advised she would continue to try and call back if she still had issues. |
| October 4, 2017 | Online Activity | VT completed lump sum election online. |
| October 8, 2017 | Outbound Mail | Confirmation letter mailed to 805 Fieldstone Court, Brentwood, CA 94513 |
| November 16, 2017 | Inbound Call | VT asked why taxes were withheld from the payment, and advised she is on disability.  The CSR advised the VT taxes are required to be withheld from any cash payment. The CSR recommended the VT reach out to a tax professional to see if her situation would allow her to receive the withholding back when he filed her taxes. The CSR reviewed the options available during the offer with the VT. The VT advised we did not inform her of her options and requested to speak to a supervisor. The CSR advised the VT he was one of the supervisors. The CSR advised the VT the information had been available on the website, and she also had the option to print her election kit. The CSR advised the VT there was one other supervisor the VT could speak to, and offered to schedule a callback within one business day. |

© 2017 Willis Towers Watson. All rights reserved. Proprietary and Confidential. For Willis Towers Watson and Willis Towers Watson client use only.

**Willis Towers Watson**

| November 17, 2017 | Outbound Call | Supervisor returned the VT's request for a callback. The VT advised the supervisor she had received assistance from her tax advisor, and no longer needed assistance from the Help Desk. |
| --- | --- | --- |

© 2017 Willis Towers Watson. All rights reserved. Proprietary and Confidential. For Willis Towers Watson and Willis Towers Watson client use only.

KFHP000181












# Your pension.
# Your choice.

Receive your pension benefit as early as **November 2017**.



KAISER PERMANENTE®

KFHP000182

**KAISER PERMANENTE**

Pension Election Opportunity Processing Center
P.O. Box 419090
Rancho Cordova, CA 95741-9812

## Act by October 5, 2017

Kaiser Permanente is offering you a limited-time opportunity to receive your pension benefit as early as **November 2017**. To take advantage of this opportunity, you must make your decision by **October 5, 2017**.

Review the Election Kit you received in mid-August to learn about your options and decide whether this opportunity is right for you.

### Save Time: Make Your Election Online!

To make your election online, visit **www.eepoint. com/KP**, sign in using your personal user ID and password (see page 4 of the Decision Guide or page 2 of the Election Kit), then follow the steps provided.

## Questions?

Call the Pension Election Help Desk toll-free at **1-855-235-8684**. The Help Desk is available Monday through Friday, 7 a.m. to 4 p.m. Pacific time.

If you've already submitted your election, you will soon receive a letter confirming your decision.

KFHP000183

**Your Personal and Confidential Information**

Lia Javier
805 Fieldstone Court
Brentwood, CA 94513



_P_KPBLS_81429_/

KFHP000184



**August 16, 2017**

**Personal and Confidential**

**Subject:  Limited-Time Pension Election Opportunity**
**Kaiser Permanente Retirement Plan**

Dear Lia Javier,

Kaiser Foundation Health Plan, Inc. recently announced a limited-time Pension Election Opportunity. This program allows you to receive your entire vested pension benefit from the Kaiser Permanente Retirement Plan (the "Plan") by November 30, 2017 — as a single lump sum payment or a recurring monthly annuity — if you act by **October 5, 2017**. During this limited-time program, your options are:

| Choice | Action by October 5, 2017 |
|---|---|
| 1.   Receive a single lump sum payment of **$32,693.00** by November 30, 2017 | ➢ Online: Visit https://www.eepoint.com/KP, select Option 1 and follow the steps provided. OR <br> ➢ By Mail: Complete and return Form 1 and Form 2, and Form 3 if you are married; Form 4 is optional |
| 2.   Start monthly benefit payments as early as November 2017 (the amount depends on the form of payment you choose — See Notice 1) | ➢ Call the Pension Election Help Desk at 1-855-235-8684, Monday through Friday, 7 a.m. to 4 p.m. Pacific time |
| 3.   Wait until later to receive your benefit (on or after your early commencement date) | ➢ Do nothing — no action is required at this time |

**If you decide not to take your benefit now, you will still be eligible to receive a lump sum or an annuity later, on or after your earliest commencement date, based on the provisions of the Plan.**

The lump sum shown above and monthly benefit payments shown on Notice 1 are estimates because the interest rates that will apply for a November payment are not yet available. Your final benefit will be recalculated using the actual interest rates for November, and may be larger or smaller.

This Election Kit contains your personal information and the forms you need to choose a lump sum. Please review this kit carefully and consider your choices. If you are married, you should share this material with your spouse, who will need to agree to your election. You are encouraged to consult a financial advisor prior to making a payment option election.

If you choose a lump sum payment, you can use the Lump Sum Election Checklist as a guide for completing all required steps.



KFHP000185

Mail your completed forms or complete your election online and provide any required documentation **no later than October 5, 2017**.

If you have questions, call the Pension Election Help Desk at 1-855-235-8684 for assistance.

Sincerely,

Pension Election Help Desk

---

To make your election online, visit **https://www.eepoint.com/KP**, sign in using your personal user ID and password (detailed below), then follow the steps provided. **Keep this package for your records.** You must complete your online election and mail any required documentation (as described when you make your election online) using the enclosed return envelope by October 5, 2017.

➢ **Your user ID** is your first initial, your last name, and the month, day, and year you were born (mmddyyyy). For example, John Doe's birthday is December 2, 1955. His User ID is jdoe12021955.
➢ If your last name includes a suffix (e.g., Jr or III), that suffix is considered part of your last name. For example, John Doe Jr's birthday is July 16, 1963. His User ID is jdoe jr07161963.
➢ **Your password** is last name initial (capitalized), your Social Security number (SSN) and an exclamation point (!). For example, John Doe's SSN is 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. His password is D123456789! Please note: After your first log in, you will be prompted to change your password. The new password you select will be used for all subsequent logins on the site.



KFHP000186

**SUMMARY OF MATERIAL MODIFICATIONS**

> **The information contained in this letter is a Summary of Material Modification (the "SMM") for the Plan. To reflect recent changes to the Plan, this SMM is being distributed to affected plan participants. This SMM is now part of your Summary Plan Description for the Plan, and should replace any information to the contrary. Please keep this SMM with your important Plan materials.**
>
> **If any conflict should arise between this SMM and the full legal Plan documents, the terms of the full legal Plan documents will govern in all cases. As always, Kaiser Foundation Health Plan, Inc. reserves the right to amend or terminate the Plan in its sole discretion.**



KFHP000187

## Notice 1 – Lump Sum and Annuity Amounts

Prepared for: Lia Javier                    Pension Election Opportunity Available Until: **October 5, 2017**

**PAYMENT OPTIONS**

The options below are available to you during this limited-time program. These options were calculated using a Benefit Commencement Date of November 1, 2017 and will be paid by November 30, 2017. Your options are based on your date of birth of July 17, 1970 and your accrued benefit. Please refer to **Notice 2 – Important Information** for an explanation of how each option works.

The amounts shown below are estimates because the interest rates that will apply for a November payment are not yet available. Your final benefit will be recalculated using the actual interest rates for November, and may be larger or smaller.

**Your accrued benefit payable as a Single Life Annuity at your Normal Retirement Date (age 65) is $530.30 per month.**

| OPTION 1 – Lump Sum Payment – To Complete Your Election Online, Go to https://www.eepoint.com/KP |
| :---: |
| To Complete Your Election by Mail, Complete Form 1 and Form 2, and Form 3 if you are married; Form 4 is optional |

**$32,693.00** by November 30, 2017. No other benefits will be paid from the Plan.

| OPTION 2 – Immediate Annuity Payment – Call the Pension Election Help Desk at 1-855-235-8684 |
| :---: |

These options are provided for informational purposes only, assume you are married, and that you and your spouse have the same date of birth.

| Annuity Form | Monthly Amount Payable for Your Life | Monthly Amount Payable After Your or Your Spouse's Death |
| --- | --- | --- |
| Single Life Annuity | $152.83 | $0.00 (no other benefits paid from the Plan) |
| 50% Joint and Survivor Annuity | $152.83 | $76.42 (paid for the rest of your spouse's or your life) |
| 75% Joint and Survivor Annuity | $147.73 | $110.80 (paid for the rest of your spouse's or your life) |

| OPTION 3 – Payment Later – Do Nothing |
| :---: |

You may request to receive your benefit on or after your early commencement date. If you receive your benefit before your Normal Retirement Date (age 65), your benefit may be reduced to account for the longer period of time you will receive payments. You can always choose to delay your benefit until your Normal Retirement Date to avoid this reduction.



KFHP000188

**Lump Sum Election Checklist**                                    **Information Only**

Kaiser Permanente Retirement Plan

---

> **If you would like to elect a lump sum online, please visit https://www.eepoint.com/KP and follow the steps provided online to complete your election no later than October 5, 2017.**

**To elect a lump sum by mail, COMPLETE the following forms and mail no later than October 5, 2017:**

☐  **Form 1 – Lump Sum Benefit Election**. Use this form to choose the lump sum payment option. Review the entire package of materials before you make your election.

☐  **Form 2 – Payment Method Election**. Use this form to direct how you want your lump sum to be paid.

☐  **Form 3 – Spouse's Waiver of Survivor Annuity**. If you are married, your spouse MUST sign this form in the presence of a notary.

☐  **Form 4 – Beneficiary Designation**. Use this form to designate the person who will receive the Lump Sum payment if you die before receiving your payment.

 Look for this symbol, which identifies the forms you need to complete and return within this kit.

**REVIEW the following forms before making your election:**

☐  **All Personal Data on Form 1**. Changes to your personal data may change the amount of your benefit. If your date of birth is incorrect, please contact the Pension Election Help Desk immediately at 1-855-235-8684.

  **If any of your corrections on Form 1 require proof** (e.g., name, address, date of birth), be sure to provide it, following the instructions in Section 2 of Form 1.

☐  **Notice 1 – Lump Sum and Annuity Amounts**. This notice includes the amounts and forms of payment available to you under the limited-time Pension Election Opportunity.

☐  **Notice 2 – Important Information**. This notice includes a description of the payment options available under the Plan, a Joint and Survivor Annuity illustration, details regarding your right to defer payment of your benefit, information regarding how your lump sum is calculated, and information on the relative value of your payment options.

☐  **Notice 3 – Special Tax Notice**. This notice includes tax and withholding information regarding your lump sum distribution. You should discuss this notice with your tax advisor.

☐  **Decision Guide**. This guide includes answers to frequently asked questions and information regarding some of the factors you may want to consider before making your election.

---

Please use blue or black ink, print clearly, sign, and date where appropriate, and make a copy of your completed forms for your records.

If you have questions about the forms, please contact the Pension Election Help Desk at 1-855-235-8684.



KFHP000189

**Lump Sum Election Checklist**                                    **Information Only**

Kaiser Permanente Retirement Plan

---

**USING THE ENCLOSED POSTAGE-PAID ENVELOPE,**
**MAIL YOUR COMPLETED FORMS OR COMPLETE YOUR ONLINE ELECTION AND PROVIDE ANY**
**REQUIRED DOCUMENTATION TO:**


**Pension Election Opportunity Processing Center**
P.O. Box 419090
Rancho Cordova, CA 95741-9812


**PLEASE NOTE: ONLY UNITED STATES POSTAL SERVICE MAIL WILL BE ACCEPTED; PLEASE USE PRIORITY**
**OR EXPRESS MAIL FOR EXPEDITED SERVICE. FEDEX, UPS AND OTHER COURIER SERVICES CANNOT**
**BE ACCEPTED AT THIS ADDRESS. FAX AND EMAIL DELIVERY ARE NOT AVAILABLE.**


_ P _ K P B L S _ 8 1 4 2 9 _ /

KFHP000190

## Form 1 – Lump Sum Benefit Election



Prepared for: Lia Javier                    **COMPLETE and RETURN BY: October 5, 2017**

**To Elect a Lump Sum Payment – Complete and Return All Sections**

### 1.  LUMP SUM ELECTION

I understand that by completing, signing, and returning this form, I am electing to receive my lump sum payment of **$32,693.00** and that no further benefits will be due to me or to my beneficiary from this Plan.

I understand the actual lump sum paid to me may be larger or smaller than the estimated amount provided in this Election Kit because it will be recalculated using the actual interest rates for payments in November.

### 2.  INFORMATION VERIFICATION

If any information below is NOT correct, please cross out the incorrect information and print the correct information in the space provided.

| Information on Record | | Corrections (if any) |
|---|---|---|
| **Name** | Lia Javier | |
| | **Provide proof of any changes in your name with your completed forms.** Acceptable proof includes a copy of your driver's license, passport, or Social Security card. Do NOT send originals. | |
| **Address** | 805 Fieldstone Court<br>Brentwood, CA  94513 | |
| | **Provide proof of any change of address with your completed forms.** Acceptable proof includes a copy of your driver's license, bank statement, or utility bill. Do NOT send originals. | |

Please provide the appropriate information below. All fields **MUST BE ACCURATELY COMPLETED** or your election will not be valid.

| Declarations | |
|---|---|
| **Date of Birth** | July 17, 1970   ☐ The date of birth listed is incorrect. My correct date of birth is: _____ |
| | **If your date of birth is incorrect, STOP. You MUST call the Pension Election Help Desk** at 1-855-235-8684 for a new Election Kit, **and immediately mail this page along with a copy of your birth certificate, passport, or driver's license to: Pension Election Opportunity Processing Center**, P.O. Box 419090, Rancho Cordova, CA 95741-9812. |
| **Marital Status**<br><br>**(MUST check an option)** | My current marital status is :<br><br>☐ I am single.       ☐ I am legally separated.<br><br>☐ I am married.*     ☐ I am widowed. |
| | ***If you are married, your spouse MUST sign Form 3 in the presence of a notary.** |
| **Divorce or Lien Notification (If Applicable)** | You **must** disclose whether your benefit is subject to any of the following:<br><br>☐ Qualified Domestic Relations Order(s) (QDRO)       ☐ Pending Domestic Relations Order(s) (DRO)<br><br>☐ IRS Lien on Retirement Benefits |
| | **Provide a copy of your QDRO, DRO, or IRS Form 668-A. Do not send any other liens. If you do not check any of the boxes above, you are declaring that your benefit is not subject to any QDRO, DRO, or IRS lien.** |



KFHP000191

# Form 1 – Lump Sum Benefit Election



Prepared for: Lia Javier                    **COMPLETE and RETURN BY: October 5, 2017**

## 3.  PARTICIPANT ACKNOWLEDGMENTS

**By signing Form 1 – Lump Sum Benefit Election, I acknowledge that I have been informed by the Plan administrator and understand and represent all of the following:**

**ELECTION**

- My Social Security number (last 4 digits), full legal name, and date of birth, as provided or completed on **Form 1 – Lump Sum Benefit Election** are correct.

- I waive my right to receive my benefits under the Plan in the form of a 50% Joint and Survivor Annuity (if I am married) or a Single Life Annuity (if I am unmarried). If I am married, my spouse has consented to this waiver by completing **Form 3 – Spouse's Waiver of Survivor Annuity**.

- I have reviewed all of my options, and I understand the financial effect of waiving the Joint and Survivor Annuity or Single Life Annuity available to me.

- I have been informed of the estimated amount of my benefit under each optional form of payment currently available under the terms of this limited-time program.

- I have had at least 30 days to consider my election. If I have not had at least 30 days to consider, I am waiving the 30 days by signing this Form 1.

- I may rescind my election or revoke my waiver at any time prior to November 1, 2017.

- If I die after submitting a lump sum election and before my payment is made, I understand my lump sum payment will be made to my spouse if I am married, or if I am not married, to the beneficiary I designate by completing Form 4 or will default to the beneficiary designated by the Plan's rules.

- I understand that my benefit was calculated based upon a variety of factors, including years of credited service, eligible earnings, the Plan's funded status and certain actuarial assumptions. To the extent that any of these factors change, I understand that my benefit may change.

- I understand that my Plan benefit will be interpreted, calculated and administered in accordance with the terms of the official Plan documents, and in the event of any inconsistency, omission, or conflict, the terms of the official Plan documents will always govern. As a result, I understand that in the event of any inconsistency, omission, or conflict, changes to my benefit will be made in accordance with terms of the Plan. I further understand that I must follow the Plan's Claim Procedures in the event of a dispute regarding the Plan, that the Claims Procedures include time limits for filing a claim, and that I may obtain a copy of the Plan's Claims Procedures by contacting the Pension Election Help Desk.

- I understand that if I believe any information in this Election Kit is incorrect, I should contact the Pension Election Help Desk as soon as possible. I understand that I must file any claim disputing the calculation of my benefit, including disputes related to the employment data used to calculate that benefit, within two years of the date of this letter.

_P_KPBLS_81429_/

KFHP000192

**Form 1 – Lump Sum Benefit Election**



Prepared for: Lia Javier                    **COMPLETE and RETURN BY: October 5, 2017**

**MARITAL STATUS AND SPOUSAL CONSENT**

- My spouse's consent is irrevocable unless I revoke my waiver of the 50% Joint and Survivor Annuity.

- If I attested to being single, legally separated, or widowed in the "Marital Status" section of this form, I acknowledge and represent that I am not married and do not have a spouse as of the date this form is signed.

- If I attested to being married in the "Marital Status" section of this form, I acknowledge and represent that the notarized spousal consent provided on Form 3 was completed by the person who is my spouse on the date this form is signed. If I marry for the first time or remarry between the date this form is signed and my Benefit Commencement Date of November 1, 2017, I am required to notify Kaiser Foundation Health Plan, Inc. of my new marriage, and if I fail to do so, I accept legal and financial liability for my failure to notify.

- I understand any Qualified Domestic Relations Order (QDRO) or pending Domestic Relations Order (DRO) that has assigned or will assign all or a portion of my benefit to an alternate payee will affect the payment of my benefit. I am required to notify Kaiser Foundation Health Plan, Inc. of the existence of any such QDRO or DRO, and if I fail to do so, I accept legal and financial liability for my failure to notify. Except as disclosed in the section entitled "Information Verification," there is no QDRO or pending DRO relating to my benefit.

**DISTRIBUTION AND TAX INFORMATION**

- I cannot change my Benefit Commencement Date of November 1, 2017.

- I have received and read **Notice 3 – Special Tax Notice**. I understand that I should consult my professional tax advisor about this distribution.

- I have had at least 30 days to consider whether to elect a direct rollover to an eligible employer plan or IRA. If I have not had at least 30 days to consider, I am waiving the 30 days by signing Form 1.

- If payment is made directly to me, federal income tax will be withheld at the rate of 20%. Additional state income tax may be withheld, if applicable. I may be subject to additional income taxes and federal or state tax penalties when I file my annual income tax returns.

- If payment is made directly to me, and I do not roll it over, I will also have to pay a 10% additional federal income tax on early distributions (unless an exception applies).

- Federal and state income tax will not be withheld for payments made as a direct rollover.

**MY STATUS**

- I am not currently on long-term disability from or employed by Kaiser Permanente or any of its affiliates.

- If I elect to receive a lump sum payment and am subsequently rehired by Kaiser Permanente, or any of its affiliates, I will not be allowed to repay my lump sum payment to the Plan.

KFHP000193

## Form 1 – Lump Sum Benefit Election



Prepared for: Lia Javier                    **COMPLETE and RETURN BY: October 5, 2017**

**4.   ELECTION AND CERTIFICATION**

By signing this form and inserting the last four digits of my Social Security Number in the space provided, I certify that I am the person named above, that the information in Section 2 of this form is correct, and that I have elected to waive the 50% Joint and Survivor Annuity form of payment (if married) or Single Life Annuity form of payment (if not married) and receive my benefit under the Plan as a lump sum payment.

I acknowledge that I have read and understand this Lump Sum Benefit Election form (including the "Participant Acknowledgments") and other accompanying notices, and that I made this lump sum election with the understanding of all the payment options available to me currently and in the future. I understand that the lump sum payment option is my full benefit under the Plan, and neither I nor my spouse or other beneficiaries will be entitled to any future benefit payments.

_____          \_\_ \_\_ / \_\_ \_\_ / **2017**
**Signature of Participant**                    **Today's Date**

_____          (\_\_ \_\_ \_\_) \_\_ \_\_ \_\_ -\_\_ \_\_ \_\_ \_\_
**Printed Name of Participant**                 **Daytime Telephone Number**

**XXX-XX-**\_\_\_ \_\_\_ \_\_\_ \_\_\_
**Last 4 digits of Social Security Number**
**(required)**

| |
|---|
| **YOU WILL RECEIVE A CONFIRMATION STATEMENT APPROXIMATELY THREE WEEKS AFTER WE RECEIVE YOUR COMPLETED FORMS** |

_ P _ K P B L S _ 8 1 4 2 9 _ /

KFHP000194

## Form 2 – Payment Method Election



Prepared for: Lia Javier                    **COMPLETE and RETURN BY: October 5, 2017**

**To Elect a Lump Sum Payment — Complete and Return**

**TAXABLE CASH OR ROLLOVER ELECTION**

I have read and understand **Notice 3 - Special Tax Notice**, and elect to receive my lump sum payment of $32,693.00 by November 30, 2017, by one of the following methods:

☐ **Direct rollover** to an eligible IRA (one only) – Print Institution Name Below

_____

☐ **Direct rollover** to an eligible employer plan (one only) – Print Eligible Employer Plan Below

_____

☐ **Direct rollover** to a Roth IRA (one only) – Print Institution Name Below

_____

☐ Taxable **Cash** payment, by check, directly to me. Direct deposit is not available.

☐ **Split** distribution of $_____ (before taxes are withheld) taxable cash paid directly to me, **and** the remainder of $500 or more (choose one):

    ☐    As a direct rollover to an eligible IRA, or

    ☐    As a direct rollover to an eligible employer plan, or

    ☐    As a direct rollover to a Roth IRA

_____
Print Institution or Name or Eligible Employer Plan

**Additional Important Information**

**TAXABLE CASH PAYMENT:** If payment is made directly to you, federal income tax will be withheld at the rate of 20%, and additional state income tax may be withheld, if applicable. If payment is made directly to you, and you do not roll it over, you will also have to pay a 10% additional federal income tax on early distributions (unless an exception applies).

**DIRECT ROLLOVER**: Direct rollover payments are made by check mailed directly to you, payable to the financial institution or eligible employer plan you name above. Federal and state income tax will not be withheld. **You are responsible for providing the correct official name of the IRA financial institution or eligible employer plan, and for delivering the check to that institution or administrator.**

The name you print for the financial institution or eligible employer plan will be *exactly* how your check will be printed. Please note that you will be limited to 32 characters in the name. You must check with your Financial Institution or Eligible Employer Plan first to confirm the appropriate name limited to 32 characters.



KFHP000195

## Form 3 – Spouse's Waiver of Survivor Annuity



Prepared for: Lia Javier                    **COMPLETE and RETURN BY: October 5, 2017**

**If Married:**    **To Elect a Lump Sum Payment — Complete and Return**

By signing this document I, the spouse of Lia Javier, acknowledge the following:

- I have read and understand **Notice 1 – Lump Sum and Annuity Amounts** and **Notice 2 – Important Information**. I acknowledge that these notices explain the 50% Qualified Joint and Survivor Annuity (QJSA) form of payment and that all of my questions have been answered.

- I understand that the normal form of payment for a married participant from the Plan is the 50% Qualified Joint and Survivor Annuity (QJSA), which would provide a monthly income for life to me if my spouse died before me.

- I am the legal spouse of the above-named participant in the Plan.

- I understand that my spouse has elected to receive his or her entire benefit from the Plan in a lump sum payment and that no further benefits will be paid to me or anyone else.

- I understand that my spouse's election is not valid unless I consent to it, and that my consent is irrevocable unless my spouse revokes the benefit election.

- I consent to my spouse's election to receive his or her entire benefit from the Plan as a lump sum.

- I waive my right to a survivor annuity from the Plan, if my spouse dies before me.

> **IMPORTANT! This form must be signed in the presence of a notary** and will not be accepted as complete if the Certification of Notary is missing.
>
> **If prepared outside of the United States**, compliance with the notary requirements of the foreign jurisdiction is required.

_____          _____
Signature of Spouse                              Spouse's Printed Name

### CERTIFICATION OF NOTARY

On this _____ day of _____, 2017, the above listed person personally acknowledged and completed this instrument before me.

_____          _____
Signature of Notary                              Notary's Printed Name

_____          _____
Commission Expiration                            Notary Seal and/or Ink Stamp
                                                 as required by State or Foreign Jurisdiction

**Note: You can usually find a notary at your bank**

California Notary Disclosure:  A Notary Public completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, not the truthfulness, accuracy, or validity of that document.


_P_KPBLS_81429_/

## Form 4 – Beneficiary Designation



Prepared for: Lia Javier                    **COMPLETE and RETURN BY: October 5, 2017**

**Optional:** **To Select a Pre-Commencement Death Beneficiary — Complete and Return**

Designate the person who will receive the Lump Sum payment from the Kaiser Permanente Retirement Plan if you die before November 1, 2017:

_____          _____
Name                                        Relationship

_____          _____
Date of Birth                               Address

**IF YOU ARE NOT MARRIED**: Your Lump Sum payment will be made to the beneficiary you designate by completing this Form 4. If you do not designate a beneficiary, or if your designation is incomplete, the Lump Sum payment will default to the beneficiary designated by the Plan's rules.

**IF YOU ARE MARRIED:** Your Lump Sum payment will be made to your spouse.

_P_KPBLS_81429_/

## Notice 2 – Important Information                              Information Only

Prepared for: Lia Javier                Pension Election Opportunity Available Until: **October 5, 2017**

**PLAN PAYMENT OPTIONS**

Please read this notice to help you understand the payment options available under this limited-time program. You are encouraged to discuss these options with your spouse (if married), and to consult a financial advisor prior to making a payment option election.

**1. NORMAL FORMS OF PAYMENT**

**If you are not married —** You will receive a Single Life Annuity, which is a fixed monthly payment for your lifetime. When you die, payments will stop, with no further benefits paid to anyone.

**If you are married —** You will receive a 50% Qualified Joint and Survivor Annuity (QJSA), which is a fixed monthly payment while you and your spouse are both alive. When you or your spouse die, the survivor will receive 50% of your fixed monthly payment for his or her lifetime.

**2. OPTIONAL FORMS OF PAYMENT**

Other optional forms of payment are currently available under this limited-time program, as described below. The optional forms you are eligible to receive are shown on **Notice 1 – Lump Sum and Annuity Amounts**.

**Lump Sum Payment —** A lump sum payment is a single payment of the total value of your benefit under the Plan. No other benefits will be paid from the Plan to you or anyone else. A Lump Sum election can be rolled over to a traditional IRA, Roth IRA, or a different employer's qualified plan, as long as that plan accepts rollovers. If electing a Lump Sum, please refer to the Special Tax Notice for additional information. If additional help is required please see a tax consultant for further explanation.

**Single Life Annuity —** A Single Life Annuity is a fixed monthly payment for your lifetime. When you die, payments stop, with no further benefits paid to anyone. If you are married, your monthly payments under this option will be larger than those under the 50% QJSA described above.

**Joint and Survivor Annuities —** A Joint and Survivor Annuity provides a fixed monthly payment while you and your spouse are both alive. If you die before your spouse, your spouse will receive a reduced benefit for their lifetime. If your spouse dies before you, you will receive the reduced benefit for your lifetime. The continuing payment is determined as a percentage of the monthly payment you receive, either 50% or 75%, as elected by you.



_P_KPBLS_81429_/

KFHP000198

**Notice 2 – Important Information**                               **Information Only**

Prepared for: Lia Javier                 Pension Election Opportunity Available Until: **October 5, 2017**

### JOINT AND SURVIVOR ANNUITY ILLUSTRATIONS

The Joint and Survivor Annuity options shown on **Notice 1 – Lump Sum and Annuity Amounts** were determined assuming you and your spouse (if applicable) have the same date of birth. Your actual Joint and Survivor Annuity options will be different if your survivor is older or younger than you. Below is an illustration of how your Joint and Survivor Annuity options would change for different survivor ages.

Remember, a Joint and Survivor Annuity provides:

- A fixed monthly payment while you and your spouse are both alive; and

- A continuing fixed monthly payment, determined as a percentage of your monthly payment, to the survivor for his or her lifetime after your or your spouse's death.

Please note that the optional annuity forms of payment shown on Notice 1 assumed you are married and that you and your spouse (if applicable) have the same date of birth. The table below shows your fixed monthly payment under the available Joint and Survivor Annuity options for a variety of survivor age differences. When reviewing, please note that the values below represent the corresponding benefits where the survivor's age is different from yours by the years shown.

| Joint and Survivor Annuities: Survivor Age is: | | | | | |
|---|---|---|---|---|---|
| **Annuity Option** | **5 years younger** | **3 years younger** | **Same age** | **3 years older** | **5 years older** |
| 50% | $149.35 | $150.63 | $152.83 | $155.44 | $157.45 |
| 75% | $144.68 | $145.85 | $147.73 | $149.77 | $151.21 |

This illustration is meant to give you an idea of how Joint and Survivor Annuity options will vary based on a range of sample age combinations. Actual Joint and Survivor Annuity options will vary for every combination of participant and survivor ages. If you want to obtain your actual Joint and Survivor Annuity option values, please contact the Pension Election Help Desk at 1-855-235-8684.



KFHP000199

**Notice 2 – Important Information**                                    **Information Only**

Prepared for: Lia Javier                   Pension Election Opportunity Available Until: **October 5, 2017**

**YOUR RIGHT TO DEFER PAYMENT**

You have the right to delay receiving benefits until your Normal Retirement Date (age 65). You should consider the consequences of receiving benefits now or waiting until later, including what happens if you die before your payments begin. These consequences are described below and reflect the Plan's current terms. When your benefit is paid, it will be subject to income taxes. Choosing to receive your benefit now may result in immediate taxation, unless you roll it over to an eligible employer plan or IRA. Delaying the start of your benefit will delay taxation. Kaiser Foundation Health Plan, Inc. reserves the right to change the terms at any time, even for participants who have already terminated employment. However, Kaiser Foundation Health Plan, Inc. cannot reduce the accrued benefit you have already earned.

If you do not make an election by October 5, 2017, you are deferring payment of benefits.

- **The lump sum provided here is only payable during this limited-time program.** If you elect a lump sum later, the amount will vary based on interest rates and may be larger or smaller.

- **Your payments will be deferred until you elect to commence**, after meeting the Plan's requirements for early or normal commencement.

- **Your benefit options will be recalculated to reflect your actual benefit commencement date.**

- **The size of your monthly annuity payment may be larger**, because you will receive these annuity payments over a shorter expected time period.

- **Other forms of payment may be available if you wait to begin your payments.**

- Please refer to your Summary Plan Description for additional information about other available forms of payment.



KFHP000200

**Notice 2 – Important Information**                                    **Information Only**

Prepared for: Lia Javier          Pension Election Opportunity Available Until: **October 5, 2017**

**HOW YOUR LUMP SUM IS CALCULATED**

A lump sum represents the present value of all the future monthly annuity payments you are expected to receive under the Plan using specified assumptions. Lump sum payments are calculated in accordance with the requirements of the Plan and federal law. Your lump sum payment amount is calculated by taking into account:

- Your age, which is used with a mortality table to determine life expectancy, and

- Interest rates, which are used to determine the current value of future payments

The mortality table and interest rates for calculating the lump sum meet the requirements set by federal law for determining lump sum amounts. You should be aware that the mortality tables and interest rates can change periodically. The mortality table required by federal law for determining the minimum permissible lump sum is currently under review and it seems probable that the table will be revised to reflect longer life expectancies, likely as early as 2018. If such a revision were to take place, the effect would be higher lump sums, all else being equal. The lump sum calculation is also significantly affected by the required interest rate, which can change periodically. Other factors being equal, a lower interest rate results in a larger lump sum and a higher interest rate results in a smaller lump sum.

Your lump sum was calculated using the following interest and mortality assumptions:

Interest rates:

- 2.46% for benefit payments occurring within 5 years,

- 4.10% for payments occurring in the subsequent 15 years,

- 4.89% for payments occurring more than 20 years in the future

Mortality Table: 2017 unisex §430(h)(3)(A) table of the Internal Revenue Code

Your lump sum is an estimate because the interest rates that will apply for payments made in November are not yet available. Your final lump sum will be recalculated using the actual interest rates for November, and may be larger or smaller.

The lump sum is calculated based on the assumption that you will receive an annuity for your life only commencing at your normal retirement date. *The lump sum does not reflect benefits commencing at any other date or in any other optional form, as the Plan provides a lump sum only on the basis of the Single Life Annuity at normal retirement.*

The opportunity to receive your vested pension right away, either as a lump sum payment or monthly annuity payment, is completely voluntary during this limited-time program.


_P_KPBLS_81429_/

KFHP000201

**Notice 2 – Important Information**                            **Information Only**

Prepared for: Lia Javier                    Pension Election Opportunity Available Until: **October 5, 2017**

## RELATIVE VALUE OF PAYMENT OPTIONS

To help you understand the optional forms of payment currently available to you, the chart below shows the "relative value" of these options compared to a Single Life Annuity. (The relative value comparison is made by comparing the "actuarial present value" of each available optional form of payment to the actuarial present value of the Single Life Annuity.) This chart helps you to compare the value of distributions paid in different forms. The comparison is made using IRS interest rates and life expectancy assumptions, which may be different than the Plan's interest rates and life expectancy assumptions. The IRS interest rates are:

- 2.46% for benefit payments occurring within 5 years,

- 4.10% for payments occurring in the subsequent 15 years,

- 4.89% for payments occurring more than 20 years in the future

Keep in mind that the actual value of your payments will depend on how long you actually live.

It is important to understand that, because the relative value comparison is based on assumptions about interest rates and how long you will live, we cannot guarantee that the actual value of the benefit you receive from the Plan in a lump sum will be more or less than the value of the benefit you would have received had you elected a different form of payment. The actual value to you of any optional form of payment will ultimately depend on a number of factors, including how long you live, as well as how long your beneficiary lives (if applicable). In other words, these values are based on average circumstances for participants as a whole and do not reflect your individual situation.

Your election is an important decision and the best choice for you will depend on many factors. Since your election is a one-time choice, you should discuss it with your family and your financial advisor.

| Optional Form of Payment | Relative Value as a % of the Single Life Annuity |
|---|---|
| **Single Life Annuity** | 100% |
| **50% Joint and Survivor Annuity\*** | 100% |
| **75% Joint and Survivor Annuity\*** | 100% |
| **Lump Sum Payment** | 100% |

\*Joint and Survivor Annuity options were determined assuming you and your spouse (if applicable) have the same date of birth.



KFHP000202

**Notice 3 – Special Tax Notice**                                    **Information Only**

Prepared for: Lia Javier          Pension Election Opportunity Available Until: **October 5, 2017**

## YOUR ROLLOVER OPTIONS

You are receiving this notice because all or a portion of a payment you are receiving from the Kaiser Permanente Retirement Plan (the "Plan") is eligible to be rolled over to an IRA or an employer plan. This notice is intended to help you decide whether to do such a rollover.

This notice describes the rollover rules that apply to payments from the Plan that are not from a designated Roth account (a type of account with special tax rules in some employer plans). If you also receive a payment from a designated Roth account in the Plan, you will be provided a different notice for that payment, and the Plan administrator or the payor will tell you the amount that is being paid from each account.

Rules that apply to most payments from a plan are described in the "General Information About Rollovers" section. Special rules that only apply in certain circumstances are described in the "Special Rules and Options" section.

## GENERAL INFORMATION ABOUT ROLLOVERS

**How can a rollover affect my taxes?**

You will be taxed on a payment from the Plan if you do not roll it over. If you are under age 59½ and do not do a rollover, you will also have to pay a 10% additional income tax on early distributions (unless an exception applies). However, if you do a rollover, you will not have to pay tax until you receive payments later and the 10% additional income tax will not apply if those payments are made after you are age 59½ (or if an exception applies).

**Where may I roll over the payment?**

You may roll over the payment to either an IRA (an individual retirement account or individual retirement annuity) or an employer plan (a tax-qualified plan, section 403(b) plan, or governmental section 457(b) plan) that will accept the rollover. The rules of the IRA or employer plan that holds the rollover will determine your investment options, fees, and rights to payment from the IRA or employer plan (for example, no spousal consent rules apply to IRAs and IRAs may not provide loans). Further, the amount rolled over will become subject to the tax rules that apply to the IRA or employer plan.

**How do I do a rollover?**

There are two ways to do a rollover. You can do either a direct rollover or a 60-day rollover.

If you do a direct rollover, the Plan will make the payment directly to your IRA or an employer plan. You should contact the IRA sponsor or the administrator of the employer plan for information on how to do a direct rollover.

If you do not do a direct rollover, you may still do a rollover by making a deposit into an IRA or eligible employer plan that will accept it. You will have 60 days after you receive the payment to make the deposit. If you do not do a direct rollover, the Plan is required to withhold 20% of the payment for federal income taxes (up to the amount of cash and property received other than employer stock). This means that, in order to roll over the entire payment in a 60-day rollover, you must use other funds to make up for the 20% withheld. If you do not roll over the entire amount of the payment, the portion not rolled over will be taxed and will be subject to the 10% additional income tax on early distributions if you are under age 59½ (unless an exception applies).



KFHP000203

**Notice 3 – Special Tax Notice**                                    **Information Only**

Prepared for: Lia Javier                    Pension Election Opportunity Available Until: **October 5, 2017**

**How much may I roll over?**

If you wish to do a rollover, you may roll over all or part of the amount eligible for rollover. Any payment from the Plan is eligible for rollover, except:

- Certain payments spread over a period of at least 10 years or over your life or life expectancy (or the lives or joint life expectancy of you and your beneficiary)

- Required minimum distributions after age 70½ (or after death)

The Plan administrator or the payor can tell you what portion of a payment is eligible for rollover.

**If I don't do a rollover, will I have to pay the 10% additional income tax on early distributions?**

If you are under age 59½, you will have to pay the 10% additional income tax on early distributions for any payment from the Plan (including amounts withheld for income tax) that you do not roll over, unless one of the exceptions listed below applies. This tax is in addition to the regular income tax on the payment not rolled over.

The 10% additional income tax does not apply to the following payments from the Plan:

- Payments made after you separate from service if you will be at least age 55 in the year of the separation

- Payments that start after you separate from service if paid at least annually in equal or close to equal amounts over your life or life expectancy (or the lives or joint life expectancy of you and your beneficiary)

- Payments made due to disability

- Payments after your death

- Payments made directly to the government to satisfy a federal tax levy

- Payments made under a qualified domestic relations order (QDRO)

**If I do a rollover to an IRA, will the 10% additional income tax apply to early distributions from the IRA?**

If you receive a payment from an IRA when you are under age 59½, you will have to pay the 10% additional income tax on early distributions from the IRA, unless an exception applies. In general, the exceptions to the 10% additional income tax for early distributions from an IRA are the same as the exceptions listed above for early distributions from a plan. However, there are a few differences for payments from an IRA, including:

- There is no exception for payments after separation from service that are made after age 55.

- The exception for qualified domestic relations orders (QDROs) does not apply (although a special rule applies under which, as part of a divorce or separation agreement, a tax-free transfer may be made directly to an IRA of a spouse or former spouse).

- The exception for payments made at least annually in equal or close to equal amounts over a specified period applies without regard to whether you have had a separation from service.

- There are additional exceptions for (1) payments for qualified higher education expenses, (2) payments up to $10,000 used in a qualified first-time home purchase, and (3) payments for health insurance premiums after you have received unemployment compensation for 12 consecutive weeks (or would have been eligible to receive unemployment compensation but for self-employed status).

**Will I owe State income taxes?**

This notice does not describe any State or local income tax rules (including withholding rules).



KFHP000204

**Notice 3 – Special Tax Notice**                                    **Information Only**

Prepared for: Lia Javier                     Pension Election Opportunity Available Until: **October 5, 2017**

## SPECIAL RULES AND OPTIONS

**If You Miss the 60-Day Rollover Deadline**

Generally, the 60-day rollover deadline cannot be extended. However, there are two situations in which the deadline may be extended: self-certification and private letter ruling.

In the event that you miss the 60-day rollover, you may certify that you are entitled to a waiver. A waiver allows you to report your IRA or Qualified Plan contribution as a valid rollover even after the 60-day period. To qualify for a self-certified waiver, you must (1) have no prior waiver denials by the IRS with respect to a rollover of all or part of the distribution to which the contribution relates, (2) have a qualifying reason for missing the 60-day deadline, and (3) have made the contribution as soon as practicable (generally within 30 days) after the qualifying reason for delay has ended. The Plan Administrator and the IRA trustee may, but are not required to, rely on this self-certification when deciding whether to accept a late rollover. In addition, the IRS may determine whether you have met the requirements for self-certification. For more information, see Revenue Procedure 2016-47, Waiver of 60-Day Rollover Requirement.

Second, the IRS has the limited authority to waive the deadline under certain extraordinary circumstances, such as when external events prevented you from completing the rollover by the 60-day rollover deadline. To apply for a waiver, you must file a private letter ruling request with the IRS. Private letter ruling requests require the payment of a nonrefundable user fee. For more information, see IRS Publication 590-A, Contributions to Individual Retirement Arrangements (IRAs).

**If your payment includes after-tax contributions**

After-tax contributions included in a payment are not taxed. If a payment is only part of your benefit, an allocable portion of your after-tax contributions is included in the payment, so you cannot take a payment of only after-tax contributions. In addition, special rules apply when you do a rollover, as described below.

You may roll over to an IRA a payment that includes after-tax contributions through either a direct rollover or a 60-day rollover. You must keep track of the aggregate amount of the after-tax contributions in all of your IRAs (in order to determine your taxable income for later payments from the IRAs). If you do a direct rollover of only a portion of the amount paid from the Plan and at the same time the rest is paid to you, the portion directly rolled over consists first of the amount that would be taxable if not rolled over. For example, assume you are receiving a distribution of $12,000, of which $2,000 is after-tax contributions. In this case, if you directly roll over $10,000 to an IRA that is not a Roth IRA, no amount is taxable because the $2,000 amount not directly rolled over is treated as being after-tax contributions. If you do a direct rollover of the entire amount paid from the Plan to two or more destinations at the same time, you can choose which destination receives the after-tax contributions.

If you do a 60-day rollover to an IRA of only a portion of a payment made to you, the after-tax contributions are treated as rolled over last. For example, assume you are receiving a distribution of $12,000, of which $2,000 is after-tax contributions, and no part of the distribution is directly rolled over. In this case, if you roll over $10,000 to an IRA that is not a Roth IRA in a 60-day rollover, no amount is taxable because the $2,000 amount not rolled over is treated as being after-tax contributions.

You may roll over to an employer plan all of a payment that includes after-tax contributions, but only through a direct rollover (and only if the receiving plan separately accounts for after-tax contributions and is not a governmental section 457(b) plan). You can do a 60-day rollover to an employer plan of part of a payment that includes after-tax contributions, but only up to the amount of the payment that would be taxable if not rolled over.



KFHP000205

**Notice 3 – Special Tax Notice**                                    **Information Only**

Prepared for: Lia Javier                    Pension Election Opportunity Available Until: **October 5, 2017**

**If you were born on or before January 1, 1936**

If you were born on or before January 1, 1936, and receive a lump sum distribution that you do not roll over, special rules for calculating the amount of the tax on the payment might apply to you. For more information, see IRS Publication 575, *Pension and Annuity Income*.

**If you roll over your payment to a Roth IRA**

If you roll over a payment from the Plan to a Roth IRA, a special rule applies under which the amount of the payment rolled over (reduced by any after-tax amounts) will be taxed. However, the 10% additional income tax on early distributions will not apply (unless you take the amount rolled over out of the Roth IRA within 5 years, counting from January 1 of the year of the rollover).

If you roll over the payment to a Roth IRA, later payments from the Roth IRA that are qualified distributions will not be taxed (including earnings after the rollover). A qualified distribution from a Roth IRA is a payment made after you are age 59½ (or after your death or disability, or as a qualified first-time homebuyer distribution of up to $10,000) and after you have had a Roth IRA for at least 5 years. In applying this 5-year rule, you count from January 1 of the year for which your first contribution was made to a Roth IRA. Payments from the Roth IRA that are not qualified distributions will be taxed to the extent of earnings after the rollover, including the 10% additional income tax on early distributions (unless an exception applies). You do not have to take required minimum distributions from a Roth IRA during your lifetime. For more information, see IRS Publication 590-A, *Contributions to Individual Retirement Arrangements (IRAs),* and IRS Publication 590-B, *Distributions from Individual Retirement Arrangements (IRAs)*.

You cannot roll over a payment from the Plan to a designated Roth account in an employer plan.

**If you are not a Plan participant**

<u>Payments after death of the participant</u>. If you receive a distribution after the participant's death that you do not roll over, the distribution will generally be taxed in the same manner described elsewhere in this notice. However, the 10% additional income tax on early distributions do not apply, and the special rule described under the section "If you were born on or before January 1, 1936" applies only if the participant was born on or before January 1, 1936.

> **If you are a surviving spouse.** If you receive a payment from the Plan as the surviving spouse of a deceased participant, you have the same rollover options that the participant would have had, as described elsewhere in this notice. In addition, if you choose to do a rollover to an IRA, you may treat the IRA as your own or as an inherited IRA.
>
> An IRA you treat as your own is treated like any other IRA of yours, so that payments made to you before you are age 59½ will be subject to the 10% additional income tax on early distributions (unless an exception applies) and required minimum distributions from your IRA do not have to start until after you are age 70½.
>
> If you treat the IRA as an inherited IRA, payments from the IRA will not be subject to the 10% additional income tax on early distributions. However, if the participant had started taking required minimum distributions, you will have to receive required minimum distributions from the inherited IRA. If the participant had not started taking required minimum distributions from the Plan, you will not have to start receiving required minimum distributions from the inherited IRA until the year the participant would have been age 70½.
>
> **If you are a surviving beneficiary other than a spouse**. If you receive a payment from the Plan because of the participant's death and you are a designated beneficiary other than a surviving spouse, the only rollover option you have is to do a direct rollover to an inherited IRA. Payments from the inherited IRA will not be subject to the 10% additional income tax on early distributions. You will have to receive required minimum distributions from the inherited IRA.
>
> **Payments under a qualified domestic relations order**. If you are the spouse or former spouse of the participant who receives a payment from the Plan under a qualified domestic relations order (QDRO), you generally have the same options the participant would have (for example, you may



KFHP000206

## Notice 3 – Special Tax Notice                                    **Information Only**

Prepared for: Lia Javier                    Pension Election Opportunity Available Until: **October 5, 2017**

roll over the payment to your own IRA or an eligible employer plan that will accept it). Payments under the QDRO will not be subject to the 10% additional income tax on early distributions.

**If you are a nonresident alien**

If you are a nonresident alien and you do not do a direct rollover to a U.S. IRA or U.S. employer plan, instead of withholding 20%, the Plan is generally required to withhold 30% of the payment for federal income taxes. If the amount withheld exceeds the amount of tax you owe (as may happen if you do a 60-day rollover), you may request an income tax refund by filing Form 1040NR and attaching your Form 1042-S. See Form W-8BEN for claiming that you are entitled to a reduced rate of withholding under an income tax treaty. For more information, see also IRS Publication 519, *U.S. Tax Guide for Aliens*, and IRS Publication 515, *Withholding of Tax on Nonresident Aliens and Foreign Entities*.

**Other special rules**

If a payment is one in a series of payments for less than 10 years, your choice whether to make a direct rollover will apply to all later payments in the series (unless you make a different choice for later payments).

If your payments for the year are less than $200 (not including payments from a designated Roth account in the Plan), the Plan is not required to allow you to do a direct rollover and is not required to withhold for federal income taxes. However, you may do a 60-day rollover.

Unless you elect otherwise, a mandatory cashout of more than $1,000 (not including payments from a designated Roth account in the Plan) will be directly rolled over to an IRA chosen by the Plan administrator or the payor. A mandatory cashout is a payment from a plan to a participant made before age 62 (or normal retirement age, if later) and without consent, where the participant's benefit does not exceed $5,000 (not including any amounts held under the plan as a result of a prior rollover made to the plan).

You may have special rollover rights if you recently served in the U.S. Armed Forces. For more information, see IRS Publication 3, *Armed Forces' Tax Guide*.

### FOR MORE INFORMATION

You may wish to consult with the Plan administrator or payor, or a professional tax advisor, before taking a payment from the Plan. Also, you can find more detailed information on the federal tax treatment of payments from employer plans in: IRS Publication 575, Pension and Annuity Income; IRS Publication 590, Individual Retirement Arrangements (IRAs); and IRS Publication 571, Tax-Sheltered Annuity Plans (403(b) Plans). These publications are available from a local IRS office, on the web at www.irs.gov, or by calling 1-800-TAX-FORM.



KFHP000207

You're running out of time to choose when and how you would like to receive your Kaiser Permanente pension.

**Decide by October 5, 2017.**












KFHP000208

**KAISER PERMANENTE**®

Pension Election Opportunity Processing Center
P.O. Box 419090
Rancho Cordova, CA 95741-9812

## It's not too late, but time is running out!

Kaiser Permanente is offering you a limited-time opportunity to receive your entire pension benefit as a single lump sum payment or as recurring monthly payments starting as early as November 2017. This opportunity is completely voluntary, but you must act soon to take advantage:

- Review the Election Kit you received in early August
- Make your choice by **October 5, 2017**



### Save Time: Make Your Election Online!

To make your election online, visit **www.eepoint.com/KP**, sign in using your personal user ID and password (see page 4 of the Decision Guide or page 2 of the Election Kit), then follow the steps provided.

## Questions?

Call the Pension Election Help Desk toll-free at **1-855-235-8684**. The Help Desk is available Monday through Friday, 7 a.m. to 4 p.m. Pacific time.

If you've already submitted your election, you will soon receive a letter confirming your decision.

KFHP000209

You're running out of time to choose when and how you would like to receive your Kaiser Permanente pension.

**Decide by October 5, 2017.**













**KAISER PERMANENTE**

Pension Election Opportunity Processing Center
P.O. Box 419090
Rancho Cordova, CA 95741-9812

## It's not too late, but time is running out!

Kaiser Permanente is offering you a limited-time opportunity to receive your entire pension benefit as a single lump sum payment or as recurring monthly payments starting as early as November 2017. This opportunity is completely voluntary, but you must act soon to take advantage:

- Review the Election Kit you received in early August
- Make your choice by **October 5, 2017**



### Save Time: Make Your Election Online!

To make your election online, visit **www.eepoint.com/KP**, sign in using your personal user ID and password (see page 4 of the Decision Guide or page 2 of the Election Kit), then follow the steps provided.

## Questions?

Call the Pension Election Help Desk toll-free at **1-855-235-8684**. The Help Desk is available Monday through Friday, 7 a.m. to 4 p.m. Pacific time.

If you've already submitted your election, you will soon receive a letter confirming your decision.

KFHP000211

**BLS_Kaiser_Lia Javier_10.04_Call 1**





Transcribing·Editing

203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000212

**BLS_Kaiser_Lia Javier_10.04_Call 1**

[Start of recorded material]

Chris:              Good morning, this is Chris speaking. Can I please have your name
                    and date of birth?

Lia Javier:         Um, yes. Lia Javier, <sup>REDACTED</sup>.

Chris:              And what's a good phone number to reach you at?

Lia Javier:         580-701-1771.

Chris:              And how can I help you today?

Lia Javier:         I have a question. I'm wondering what happened to the mailing
                    because I just got this yesterday, um, via the post card, and it's
                    saying it ends tomorrow.

Chris:              Okay.

Lia Javier:         And what is this about? It just has the post card with no -- really, no
                    information. It said call and then a special offer or something.

Chris:              The information that was sent out about the lump sum?

Lia Javier:         Yeah.

KFHP000213

Chris:            Yeah, that's in reference to the current lump sum offer that's
                  available from the plan.

Lia Javier:       Okay, I'm-I'm asking what is it about? Because I got a post card
                  yesterday. It doesn't say everything on it. It says to call between
                  7:00 a.m. -- it says, "Act" -- it says, "Act by October 5th, 2017."
                  The election kit that I was supposed to be receiving in mid-
                  August.

Chris:            Right. So that's about the current lump sum option that's available
                  from the pension plan.

Lia Javier:       Okay, I'm saying -- okay, is there someone else I can speak to? I-I
                  don't know if you're understanding what I'm saying. I just got this in
                  the mail so you're -- I don't know what's going on. Is there -- is
                  there someone else I could speak to?

Chris:            Any representative here can assist you, ma'am. We all have the
                  same information.

Lia Javier:       Okay, what is your name?

Chris:            My name is Chris.

Lia Javier:       Okay, Chris, you're very rude because you're not telling me
                  anything, and I don't know anything that's going on so can I speak
                  to another representative, please?

Chris:            Yeah, any representative can assist you, ma'am. Uh, there's not anyone available to direct you to or transfer you to. I can [unintelligible]--

[Crosstalk]

Lia Javier:       Oh, there's no one to transfer me to? I can call back? Thank you. Bye-bye.

[End of recorded material]

KFHP000215

**BLS_Kaiser_Lia Javier_10.04_Call 2**





Transcribing·Editing

203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000216

**BLS_Kaiser_Lia Javier_10.04_Call 2**

[Start of recorded material]

Christina:         Good morning, my name is Christina. Can I have your first and last name, please?

Lia Javier:        Um, yes, Lia Javier.

Christina:         Your date of birth and a good phone number?

Lia Javier:        Um, REDACTED. And a phone number, 510-701-1771.

Christina:         Thank you. How can I help you?

Lia Javier:        Yeah, I just called about five minutes ago. I spoke with someone named Chris which I want to see about making a complaint against him. Um, I'm calling about the, uh, thing that I got in the mail that's saying, I guess, the thing ends tomorrow. Some type of thing for Kaiser--

Christina:         Correct.

Lia Javier:        --program? And it says, um, I want to know what this all is telling me, but it says, "Act by tomorrow." And, um--

[Crosstalk]

Christina:          So -- go ahead.

Lia Javier:         Yeah, I, uh, uh, it said something like it had been received in mid-August.

Christina:          Correct. We originally sent out all of the notifications, um, via mail. We sent out an announcement letter as well as the retirement kit, um, along with reminder post cards which it sounds like you received one of them. Do you have -- let me see something. Just a moment.

Lia Javier:         Mm-hmm.

Christina:          Do you have access to the Internet?

Lia Javier:         Um, y-yes, but I have--

[Crosstalk]

Christina:          Well, you can actually--

Lia Javier:         --to go buy it on my phone so I don't know if my phone is going to let it go.

[Crosstalk]

Christina:          [Unintelligible] the information.

KFHP000218

Lia Javier:        Well, what is -- is there, uh, an email?

Christina:         No, so let me give you the information on where you would go to access this information. Um--

Lia Javier:        Mm-hmm.

Christina:         --that way you can complete your election online. So you have the option to log in, print out the retirement kit, or complete it out. Complete the forms online.

Lia Javier:        Okay, I see. It says, "Save time. Make your election online."

Christina:         Correct. So it's www.eepoint.com/kp. Does it tell you that?

Lia Javier:        Yes.

Christina:         Okay.

Lia Javier:        And it say -- yeah. It, uh, yeah, I had to get my mail from my mailbox because people's been stealing it for the last two months so, um, I just recently got-got my mail. So they been taking my packet. I hope no one called before this.

Christina:         No, not [unintelligible]--

[Crosstalk]

KFHP000219

Lia Javier:          Did anyone? No, okay, good.

Christina:           This is the first time [unintelligible] call--

[Crosstalk]

Lia Javier:          Um--

Christina:           Which was [unintelligible]--

[Crosstalk]

Lia Javier:          Yeah. Okay, yeah because I have my mail forwarded now to the mailbox, uh, for the past week so I didn't know people were stealing it, and my neighbor told me sh -- uh, she saw people in my mailbox. That would have been nice to know. So, um, what I'm going to do -- so I don't know how to do this. I mean, I only have a day to figure this out of what I want to do?

Christina:           You do.

Lia Javier:          Yikes.

Christina:           Unfortunately. So I can go--

[Crosstalk]

KFHP000220

Lia Javier:          And it's--

Christina:           --over your log in criteria because it's going to ask you for a password.

Lia Javier:          Okay.

Christina:           So your user name is going to be ljavier.

Lia Javier:          Uh-huh.

Christina:           And then it's REDACTED.

Lia Javier:          Uh-huh.

Christina:           And then your password is capital J.

Lia Javier:          Mm-hmm.

Christina:           Your social security number with an exclamation point.

Lia Javier:          Okay.

Christina:           And then it will ask you -- once you do that it will ask you to confirm your old password, and they will ask you to create a new one, and then some security questions. And then everything is pretty basic from there.

Lia Javier:        Okay, and there was no supervisors because this is only giving me a
                   day to figure this stuff out. And if it's saying, uh, my election, I
                   mean . . .

Christina:         So there's time.

Lia Javier:        What is this anyway?

Christina:         I mean, at this time there's no open leeway as to receiving, you
                   know, the-they're not providing extensions. Um--

Lia Javier:        Okay.

Christina:         I mean, I wish there was an option to do that, but it's pretty --
                   they're pretty strict on the deadline only because it's a limited time
                   offering. So they need to review the paperwork. Be able to review
                   it. Make sure everything is received in good order.

                   For whatever reason if something's missing they do -- they make
                   sure that they give time to provide that. And then we have to start
                   processing the payments and then [unintelligible] the process as
                   well. And the payments will be processed, um, by the end of -- will
                   be starting to be issued, um, in November. So it's kind of crunch
                   time right now.

Lia Javier:        Okay. Is -- so there's no supervisors available?

KFHP000222

Christina:          They want to call you back in one business day, but I'm letting you
                    know they're--

Lia Javier:         Right.

Christina:          --not going to give you an extension. They kind of set that in the
                    contract.

[Crosstalk]

Lia Javier:         Hey, the only thing that's hard for me -- I know it's saying pension
                    so I don't want to make decisions, but I should have had the right
                    [unintelligible] to this to see if I needed it and to see what it entails.
                    Like it's not telling me anything on here.

Christina:          Well, once you log on to--

[Crosstalk]

Lia Javier:         So I don't even know what's going on.

Christina:          Once you log on to the website you'll be able to see that
                    information. Um, so everything will be provided to you on there. It
                    will give your -- what they're offering, the lump sum amount as
                    well as your options. You can take it out as a lump sum payment.
                    You can roll it over in to an IRA. You can leave it where it's at or
                    you can start to receive monthly payments. So, I mean, the best

thing to do is probably log on there now, start reviewing it, um, if need be, and the deadline is tomorrow.

Lia Javier:      Okay, I can't make -- I can't believe they don't make exceptions.

Christina:       I'm sorry.

Lia Javier:      Uh, this is hard--

[Crosstalk]

Christina:       [Unintelligible].

Lia Javier:      --for me because I'm disabled, and there's no way I'm going to be able to make a decision within a day or a few hours. So, um, yeah, I'm disabled.

[Crosstalk]

Christina:       We-we originally mailed out--

Lia Javier:      So there's no way.

Christina:       We originally mailed out the kits August 18th. Um, we sent out two reminder post cards. One on the eighth of September. One on the 22nd. Um, and then [unintelligible]--

[Crosstalk]

Lia Javier:        Okay, that's great and everything. If I were to receive that then I would have more time to see what this is about. That would have been great to receive it. That's why I asked you was anybody -- did anybody call in for me because I never received this information.

I just got this post card from the post person when I had to go to get my mail. Get it picked up so that's not helping me. So I worked for Kaiser for years, and I -- you see, if I'm disabled there has to be some type of something. Uh, I can't -- I can't make a decision in-in a few hours. That-that's not going to happen.

Christina:        I mean, you--

Lia Javier:        Um--

Christina:        --have until tomorrow. The end of tomorrow to [unintelligible]--

[Crosstalk]

Lia Javier:        That's still a few hours.

[Crosstalk]

Christina:        [Unintelligible].

Lia Javier:          Is there a supervisor available? There should be. You guys still should have supervisors available there.

Christina:           We do have supervisors--

Lia Javier:          I mean, it's a--

Christina:           --but it will allow -- we ask that you allow--

Lia Javier:          Yeah.

Christina:           --one business day to receive a return call.

Lia Javier:          Okay, that's great, but I'm asking you for a supervisor so can you just transfer me to one?

Christina:           I cannot. One will call you back in one business day.

Lia Javier:          Okay, and what is your name?

Christina:           My name is Christina.

Lia Javier:          Okay.

Christina:           [Unintelligible].

[Crosstalk]

KFHP000226

Lia Javier:          And then who is from, uh--

Christina:          Go ahead.

Lia Javier:          Is this from Kaiser original? Like from Kaiser because what I'm going to have to do is call Kaiser. I mean, I worked for Kaiser. I'm going to see if they're giving us an early option, and I just get it. There has to be something. I can't make a decision, like you said, within a day. Especially, in hours, but I can make a decision within days. It's 24 hours. So, um--

Christina:          Yes, this is Kaiser.

[Crosstalk]

Lia Javier:          [Unintelligible].

Christina:          So Kaiser is giving you this opportunity to take this benefit, um, at your current age. If it's missed then you won't be able to take until age 65.

Lia Javier:          Hmm.

Christina:          I mean, I wish there was something we could do and offer these extensions, but like I said, there's, uh, a process to receiving all this information. That's why we start to send out this information prior.

KFHP000227

Giving you, you know, a month and a half to kind of figure out what you would like to do.

I know you were having mailing issues, um, but, I mean, that's out of our control. We send the kits then we send the reminder post cards. And, I mean, I know you're now just receiving it, but at the time there's nothing on our end. They're not going to provide any extensions only because we have to process this information.

If we allow you another week to get this information processed, uh, i-it-it-it goes in to effect with all the paychecks. So, I mean, you're not the only one that, you know, is in the same boat.

Lia Javier:          Yeah.

Christina:          And they are not even being offered this opportunity to have it extended by a day or two.

Lia Javier:          Okay, so what--

[Crosstalk]

Christina:          I would just--

Lia Javier:          --[unintelligible]--

KFHP000228

Christina:        --log online. Log online. Review your options. Kind of see if that's something you -- that you would be willing to take at this point. Um, if so, you can complete the forms online, and it will be processed.

Lia Javier:       So, but there's no way that you can cancel it. Say, if you do do it there's no way you can cancel the option?

Christina:        So the deadline to request that you do not want this -- so say you make a lump sum. You want to take it as a lump sum payment. And then, let's say, mid-October you're like, "Uh, I don't want to take it." Then you would -- the deadline to do so is this, um, October 31st. So that's the last day that you can request you do not want to take this offer.

Lia Javier:       Oh, okay. So I could go online now and then I could -- okay. That sounds better. I can go online and just accept it. Their one lump sum, but then by October 31st I could just, uh, tell them, "No, I changed my mind," and it will go back to normal, right?

Christina:        Correct.

Lia Javier:       Okay. Then what's what I'll probably have to do because I don't know this stuff at all. Like I don't know. I don't want to, you know?

Christina:        I understand. It's a lot of information to process. It's just -- it's just a limited time opportunity that Kaiser is allowing this window. So

KFHP000229

they're strict on, you know, the opening date to the closing date. And it has to be done within a certain timeframe because, I mean, anything outside of that, you know, it does start to cost the company since they do hire a third party to do so. So--

Lia Javier:        Okay.

Christina:        That's the only reason why--

Lia Javier:        Okay.

Christina:        --it's a limited time, okay?

Lia Javier:        That's perfect. So I'd rather do that and then I'll have a chance to cancel that. At least I know, you know, to really read up on it and ask people about what should I do? Like I want that option so okay, that helps me better. That-that-that's great. I can do that and then-then if not, if I change my mind I'll cancel it out and everything will go back to normal. Okay.

Christina:        Okay.

Lia Javier:        Perfect.

Christina:        Sounds great.

KFHP000230

Lia Javier:          Okay, and-and you gave me so J, okay. Did you say it's a J like J? Capital J as far as --th-then my social security number then an exclamation?

Christina:           Yes, that's going to be your password. And then your user name is ljavier <sup>REDACTED</sup>.

Lia Javier:          Okay. Is there any upper case or lower case? So I'll just, uh--

Christina:           Not for the user name. It's not case sensitive.

Lia Javier:          But for the other one it is? It's the capital J, right?

Christina:           That's correct, yeah.

Lia Javier:          Okay, so let me go on here now and fill this out. Okay, thank you so much. Thank you, Christina. Thank you.

[Crosstalk]

Christina:           [Unintelligible]. Of course. Enjoy your day.

Lia Javier:          You, too. Bye-bye.

[End of recorded material]

**BLS_Kaiser_Lia Javier_10.04_Call 3**





Transcribing·Editing

203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000232

**BLS_Kaiser_Lia Javier_10.04_Call 3**

[Start of recorded material]

Josh:               Thank you for calling. My name is Josh. Can I please get your name and date of birth?

Lia Javier:         Oh, yes. Lia Javier. Date of birth <sup>REDACTED</sup>.

Josh:               Thank you, and a good phone number in case we need to reach you in the future?

Lia Javier:         510-701-1771.

Josh:               Thank you, and how can I help you today?

Lia Javier:         Um, I actually, had a question. I just called, and I spoke with someone named Christina who was very nice. Um, she was giving me my information to log in because I just got the little post card and I don't know what's going on.

                    So, uh, uh, she gave me the information to log in. And I, uh, insert, uh, the password, and I don't have -- it says, "Old password," and then it says, "New password." And it has some security questions.

Josh:               Old password would be the--

KFHP000233

[Crosstalk]

Josh:             Yeah, old password would be the password that you just used to log in. It's asking you to create a new password so you would go ahead and-and make one for yourself.

Lia Javier:       So would tell -- what is it? So the password would be the J and my social security?

Josh:             Yeah, the password is a capital letter. You have -- the old password is the capital letter of your name followed by your nine-digit social security followed by an exclamation point.

Lia Javier:       Okay, and then when I put it in then I just make one up? And then-then it will go through?

Josh:             Yes, just make sure you're the password policy. I do believe there should be a section that, um, that-that you can click in order to see what that is. [Unintelligible]--

[Crosstalk]

Lia Javier:       Okay, with the se -- with the security questions?

Josh:             Yes, but, I mean, as long as your password fulfills the password requirements. Um, so I can, uh, I can tell you what those are or you can hit the password policy button, uh, but--

KFHP000234

Lia Javier:        Yes.

Josh:              --to make sure it works. [Unintelligible]--

[Crosstalk]

Lia Javier:        Okay, let me -- okay, and what I'm going to do if you don't mind
                   I'm going to try to do this now and then see what it brings up.

Josh:              Sure.

Lia Javier:        If that's okay.

Josh:              Yeah.

Lia Javier:        Okay, thank you.

Josh:              Mm-hmm.

Lia Javier:        Um, I'm a little nervous online. [Laughs] Uh, like this is so weird. I
                   didn't -- I'm happy Kaiser came up with this, but I don't know what
                   I'm doing so I'm going to make sure. So what she was telling me
                   was that I'm able to go ahead.

                   She said I don't have the time to-to decide so she said I was able to
                   go ahead and, um, uh, opt for it. Whatever it states to opt for what I

KFHP000235

want and then I can always change it. She said -- she said I had up to Oct-October 31st.

Josh:              Yes, so in order to revoke the election you would have until then. You'll just want to give us a call if you [unintelligible]--

[Crosstalk]

Lia Javier:       Yeah, that's what I was saying. Okay, so let's see if this works. I think I'll [unintelligible]. Okay, with the -- with the new password does it need to be caps, or anything, or is this okay if I just put a password?

Josh:              So you just need to follow the password policy. I can advise what that is if you don't see it listed there.

Lia Javier:       Oh, I'm sorry. Go ahead. Tell me. I'm just putting in this -- okay, yeah. Tell me what the password policy is.

Josh:              No problem at all. Just one moment while I pull that up. So it would have to be at least eight characters in length, and it would need to at least -- it would need to contain at least one character from three of the four categories.

                   So the different categories are an upper case letter, a lower case letter, a number, and a symbol. A symbol being like an exclamation

point or a dollar sign. Uh, so it would need to have at l-least three of those four things and be at least eight characters long.

Lia Javier:    Okay. I think I can do that. Let's see if it works. Um, bear with me. I'm sorry.

Josh:    No problem. Take your time.

Lia Javier:    Thank you. Let me see if it worked. Okay, I think it didn't work because I don't think I put the old password in correctly. Okay. Okay, wait. Okay, that's right. It said eight. Okay, I'm sitting up here putting in the -- okay, I'm going to try this again. Hopefully, this works.

Okay, I followed the password -- oh, confirm password. I didn't do that [unintelligible]. Okay, and-and with the security questions can I put any one that I want and answer them or is there specific ones?

Josh:    Um, you should be able to use what-whatever it allows you to. I don't have too much information on the security questions, but they are case sensitive.

Lia Javier:    Oh.

Josh:    So just make sure however you put it you're aware that they're case sensitive. So if you ever have to answer them again you would need

|   |   |
|---|---|
|   | to be able to follow the same case sensitive, um, answer that you put in. |
| Lia Javier: | Okay, with the password I'm doing it, and it's still not working. Let's see. One upper case. Okay, one lower case. Yeah, one number. One symbol, and it says, uh . . . |
| Josh: | And it has to be at least eight characters long as well. So try making it nine-- |

[Crosstalk]

| Lia Javier: | Yeah, so when-- |
| Josh: | --even. |
| Lia Javier: | --it -- when it says, "Password cannot match your previous 24 passwords." That doesn't make sense. Okay, I'm going to try this again. Okay, I'll put -- I'll try to put nine this time so [unintelligible]. |

[Extended period of silence]

| Lia Javier: | Oh. Okay, it says, "Confirm password." Okay. |
| Josh: | Yeah, so on the confirm password you would want to put the same new password that you put in. |

KFHP000238

Lia Javier:        Yeah, okay. And then it says -- okay, what? Okay. I don't know if it's going to -- let's see if it lets me do again. I don't -- nope, it's not letting me do it. Yeah, it's not letting me. It's saying, "General error," at the bottom.

Josh:             That would mean that one of those things were incorrect whether that was the old password or that was the new password not following the password requirements. That would something was incorrect so you would want to try that again.

Lia Javier:        Do you think, uh, do I need to get out again and maybe that's what it is? Like try it all over again?

Josh:             You-you can try that, but . . .

Lia Javier:        Let's see. Uh, so is there? Tell me something. Oh, I think -- okay. I'm sorry, I think I know what it is. I have issues. I'm so sorry.

Josh:             That's okay.

Lia Javier:        [Laughs] I tell you, it's late. It's crazy. I'm-I'm just nervous because this is -- this -- I have a day to do this stuff so I'm thinking like, "What is going on?" So I think I'm -- my nerves were getting to me. Okay. And then once I get in -- so i-is it a quickly done, or is it a long thing, or?

Josh:             I mean, it does take a few -- it does take a little bit of time to review your information and decide what you want to do. Once you know what you want to do then it's -- it doesn't take -- it wouldn't take too long to go through and actually, follow that process. But it is something I would make to think about carefully.

Lia Javier:       Okay, and-and then tell me something. Is -- so is there any dashes in the social security or no?

Josh:             No dashes. Just the number.

Lia Javier:       Okay. [Unintelligible] that why it's not going through. Okay, [unintelligible] me because it's like still not letting me go through, and I just figured out what the problem is, is what I thought. [Unintelligible]. No, it's not working. I don't know what's going on. Uh, I'm reading the -- I read the password policy, and you told me. It makes sense.

                  O-one upper case. One lower case. One number. At least eight characters. And last, it con-contain at least one-one symbol. Okay. Um, it's probably -- maybe I just -- do you think I should try and pick another security question or something?

Josh:             I mean, you can -- I'm not sure what you, uh, a d-different security question? That shouldn't affect it which particular security question you answer.

KFHP000240

Lia Javier:        Well, that's -- [unintelligible]. This is crazy unless my [laughs]

                   okay. I don't want to waste your time. I'm going to try to figure this

                   out and then call back, okay? I don't want to--

Josh:              Okay, no problem.

Lia Javier:        Thank you so much.

Josh:              Absolutely. Have a great rest of your day.

Lia Javier:        You, too. Bye-bye.

Josh:              Bye-bye.

[End of recorded material]

| Mercer Person ID | SSN or Tax ID | First Name | Last Name | ERISA Plan Full Name | ERISA Plan Code | Online Option Election | Marital Status | Lien Notification | Payment Method | Authorization Required | Date and Time | Confirmed Kit Review | Confirmed Date of Birth |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 364553 | Redacted | Lia | Javier | KPRP Plan for Participants | PP001 | Option 1 | I am single. | Does Not Apply | Cash Payment | FALSE | 10/04/2017 01:10PM | TRUE | TRUE |

KFHP000242

**Your Personal and Confidential Information**

Lia Javier
805 Fieldstone Court
Brentwood, CA 94513

KFHP000243



October 10, 2017


Lia Javier
805 Fieldstone Court
Brentwood, CA 94513


Dear Lia,

We have received your completed lump sum Election Forms for the limited-time Pension Election Opportunity announced by the Kaiser Permanente Retirement Plan (the "Plan"). Your paperwork has been reviewed and the information received is complete and accurate.

Your lump sum payment from the Plan will be processed by the end of November 2017. You elected to receive your lump sum payment as a taxable **cash** payment paid directly to you. Federal income tax will be withheld at the rate of 20% and additional state income tax may be withheld, if applicable. You may be subject to additional income taxes and federal or state tax penalties when you file your annual income tax returns. You may also have to pay a 10% additional federal income tax on early distributions. See Your Rollover Options that was included in your election kit for an explanation.

If you elected a direct rollover to an eligible IRA, eligible employer plan or Roth IRA, you will receive a check made payable to the financial institution or eligible employer plan, mailed directly to you. **Please review the institution name/eligible employer name listed above for accuracy, as you are responsible for delivering the check to that IRA institution or eligible employer plan.** You may also want to send a copy of this letter to your financial institution or provide it to your employer as verification that the Plan meets the qualification requirements of the Internal Revenue Code Section 401(a) and the Employee Retirement Income Security Act of 1974 (ERISA).

If you have any questions, or if you move before receiving your payment, please contact the Pension Election Help Desk at 1-855-235-8684, Monday through Friday between 7 a.m. and 4 p.m. Pacific time.


Sincerely,

Pension Election Help Desk

ì_P_KPBLS_124518_Èî

**BLS_Kaiser_Lia Javier_11.16**





203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000245

**BLS_Kaiser_Lia Javier_11.16**

[Start of recorded material]

Josh:               Thank you for calling. My name is Josh. Can I please get your name
                    and date of birth?

Lia Javier:         Um, yes, Lia Javier. REDACTED

Josh:               Thank you, and a -- and a good phone number in case we need to
                    reach you in the future.

Lia Javier:         Uh, sure. 510-701-1771.

Josh:               Thank you, and how can I help you today?

Lia Javier:         I had a question. I thought when I read that it's stated like if you're
                    disabled I don't get it. Like they're supposed to withhold your
                    federal taxes and stuff if you're disabled?

Josh:               We just are required to withhold taxes regardless. So any kind of
                    cash payment we have to withhold 20 percent for federal and then if
                    your state has any requirements we withhold what your state
                    requires.

Lia Javier:         Okay, so because I read something about people who are disabled,
                    and there was a different tax thing. I thought they said that they
                    would waive the tax, um--

KFHP000246

Josh:           No, I'm not aware of anything like that being in the election kit. I can take a look.

Lia Javier:     You could, yeah. I was reading something. I don't know maybe if it's -- it was saying that it wouldn't take out the 20 percent if you were disabled. Uh, people with, uh, disability, or like a-an SSI, or something, or S -- social security. Uh, because I'm thinking, "How do they take out taxes when I, you know, um, this is, you know, I don't work. So they were saying that they didn't -- they weren't going to take out that ta -- that-that money.

Josh:           Well, the only thing that--

Lia Javier:     And now--

Josh:           --here that I can see is that if you're un -- uh, so there's a potential 10 percent is a -- r-real quick. I first want to verify. Were you taking a cash payment?

Lia Javier:     Yeah, I put the lump sum.

Josh:           Okay.

Lia Javier:     Yeah.

Josh:           Okay, yeah, so the only thing I see here in regards to that would be if you're under the age of 59.5, uh, in-in most circumstances you

would have to pay an additional 10 percent, uh, tax penalty when you file for taxes. And it's saying if there are payments made due to disability that would, um, not apply, but it's the only thing that I see here other than confirming that you're not on long term disability from Kaiser specifically.

Those are the only two references to that, that I see here. Um, so we-we are required to withhold that amount for taxes. You can see with a tax professional if, when you file for taxes if maybe it's something you're eligible to-to get back in the form of a tax return. But you would need to reach out to a tax professional to verify if that's something that-that applies for you.

Lia Javier:    Oh, okay, because that's -- yeah. That's a lot of money they took out. If that's the case, I'm like -- I needed it to-to save my home, but I'm thinking, "Man, I would have never took this out. That's too much money." That's like 10 grand almost to take out for -- no, that's crazy.

Josh:    I understand.

Lia Javier:    So, uh--

Josh:    You-you can reach out to a tax professional and verify if there's anything you can do being under that status and-and go from there. We just aren't tax professionals here so I can't verify how the tax laws would work in the syst -- in your kind of situation.

Lia Javier:        Okay. Okay, let me -- yeah. I'll-I'll do that. I'll ask questions. Yeah, I-I wonder -- yeah. I'm-I'm not, uh, I don't know. I'm not happy with this at all. I'm like, "This is something I'm not cool with at all." I-I don't know what to do. Is there someone that can call me back because now I feel like I've made a mistake, but I know we only have a certain amount of time. But I'm not cool with this at all.

Like I didn't want to do this, and I'm trying to keep my home, and that's the only reason I took this money. And I'm like, "This is not something that I want to -- wanted to do at all," because this is nothing. This is like nothing. No money. This is zero. This is like really -- yeah. Um, is there like a-a--

[Crosstalk]

Josh:              [Unintelligible].

Lia Javier:        Uh, I just -- is there someone, um, who I would be able to speak to regarding this? Because this wasn't stated how much -- I mean, I'm looking and everything that I've read that you got -- and I don't see anything at all. This is [unintelligible]. It's like this is -- this is -- you can't -- you can't live off this at all. They-they-they, uh, I-I am really irritated right now. I'm like, "Wow."

Josh:              If you're having a problem I-I can try and help you. There isn't really anyone who can help you within regard to what tax implications you may due or what you may be able to get in tax

purposes, but in regard to our offer I can help answer any questions now if have them. Um, did-did you have any-any questions. It does state that if you do not do a direct rollover the plan is required to withhold 20 percent of the payment for income ta -- for federal income taxes.

Lia Javier:     Yeah, well, so what's a direct rollover?

Josh:           A direct rollover--

[Crosstalk]

Lia Javier:     Like what I [unintelligible]?

[Crosstalk]

Josh:           [Unintelligible].

Lia Javier:     Yeah, well, she was explaining to me, and she told me to write this stuff down, but I never got all the information on it. And then you -- then you guys sent me out a ta -- a thing. I see the book, and it was after I did it because I had -- it was like the last day that I was able to do it. I think I had two days, and I had to make a decision.

And you guys said, "Well, we-we can go ahead and send you out the thing, but you need to tell us yes or no today. So the lady said, "Well, if you do do it," she said, "Well, you can always change your

KFHP000250

mind." And, you know, see it, but the other thing didn't go through. So if you don't roll it over like roll it over to what?

Josh:
So, uh, uh, it's worth noting that you had until October 31st to revoke your election. You wouldn't be able to revoke it at this point. If you were -- if we were still in the offer window, and you decided to do a rollover you could have rolled it over in to another retirement account like a traditional IRA or 401(k), as example. A- as examples.

Those are both tax-deferred accounts, um, so it would still remain tax-deferred in that account until you were to take it out of one of those accounts. It was an option when you [unintelligible]--

[Crosstalk]

Lia Javier:
Oh, and I would -- I would have been able to do that?

Josh:
You were able to do that, but you had elected the cash payment.

Lia Javier:
Yeah, so why -- oh, my goodness. You know what? This is what -- this is the hard thing for me to get this stuff, and I'm asking her so why -- it should have been told. "You know what? You can go ahead and do it this way," and then it would -- it would not -- I read it because I'm telling them I have social security.

KFHP000251

It's going to mess with my Medicaid and they're like, "Well, you need to talk to those people." And I'm like, "I don't know what I'm supposed to do because I never got the information so I could talk to anyone." They were like, "Well, you need to tell us yes or no."

But in that offer they were like, "Well, if you don't want it you can go ahead and deny it wh -- by October 31st." But like you're telling me when I'm asking her all this stuff and then I talked to another guy and asked him everything why wasn't it told that you can go ahead and go -- put it in to a -- I'd rather have done that so it wouldn't bother my Medicaid.

And that's what I kept asking them, and they're like, "Well, you have to talk to someone." How can I talk with someone if I don't have the information on it?

Josh:                   Well, we sent out--

Lia Javier:           So, oh--

Josh:                   --the paperwork, and I'm sorry if the people you called and spoke to didn't answer your questions fully. Um, I-I do really apologize about that, but we did send you the packet of information which does show this here. Um, and when you elected the cash payment there were also, uh, did you do your election online?

KFHP000252

Lia Javier:    No, I had to do it on the phone. I had to do it on the phone because, uh, yeah, I think I did it on the phone because -- or no, online because I didn't get the ta -- I didn't get the-the paperwork. I didn't get anything on it. And so, that's why I was asking her. I said, "Wait a minute. I would like." I said, "I got a single card," and I got the card in the mail. And I was like, "Well, what's going on? Like what is this?"

And she was like, "Well, you only have a-a couple of days to make your decision." And I said, "Well, what is it concerning? Like I-I only have a card." And she was like, "Well, you could take the money out." And I'm thinking, "Okay, good. This is perfect because I need to save my house."

But I'm asking her questions like, "Well, I'm on-on social security." And I said, "And it's going to mess with my Medicaid, and I'm just worried about the Medicaid because if you take out a big lump sum they're going to say, "Where did you get this money?" And I'm telling her everything. I'm like, "I don't know what to do."

And she was like, "Well, what you can do is go ahead and get this information. I mean, do it now because you only have, uh, until tomorrow. Do it now and then you have until the 31st to, uh, uh, what do you call it? To change your mind."

Josh:    To revoke.

KFHP000253

Lia Javier:    But I'm saying I didn't have anything to tell me what to do. That I could roll it in to, uh, a qualified retirement plan and do all this stuff. Like no one told me this stuff so if I were to--

[Crosstalk]

Josh:    [Unintelligible].

Lia Javier:    I'm telling her, "Look, I'm on -- I'm on Medicaid. That takes partial money, and I'm going to -- if I get a big lump sum they're going to take that." And no one said, "Well, you know, you could roll it over to--" But all that I heard was, "Well, we can't tell you what to do," but if I don't have a thing to tell me and -- then what am I supposed to do?

That's why I'm irritated because if I would have known I could have put it in to a rollover. That's what I would have done because I'm telling them that I'm trying to save my home, and I just need a certain amount. And then when I talked to Social Security they were like, "Well, you could probably explain to them why." Um, and then they told me about rolling it over in to, uh, another plan.

And I said, "Oh, okay," but if I would have known that I could do it before they could tax it down where all my money would go to a thing where it's not on me then I wouldn't have to go through that. Then I wouldn't have a -- then I would be fine. So that's why I'm

trying to speak to someone because I want someone to pull the calls that I've called, and I've asked these questions.

So that I'm telling them, "I don't want to have the money. I just need a certain amount to-to get back -- through with my -- to pay my house." And they were like, they didn't tell me that I could do this. To take it in to a roller, uh, a qualified plan where it's out of my hands, but if I needed it I can get it.

Josh:            I understand.

Lia Javier:      That--

Josh:            It-it's worth noting when you made your election online there were certain boxes for you to check. One of them that said, "Cash payment," and other ones that said, "Rollovers." Um, there was also a way to do a split distribution. It's something where, uh, when you went online there was also, a full -- there was also, a way for you to access the full election kit.

There was a section that said, "Election kit," and you could click it, and it would pull up the entire election kit with all the information as well. I'm sorry if we -- if the people you spoke to on the phone didn't give you as much information as you would -- as you wanted. We can't provide any advice over the phone. That may have had something to do with it. Um, but, um, the information was all provided for you.

KFHP000255

Lia Javier:      I didn't get this -- the booklet. That's what I'm saying. I didn't get the stuff.

Josh:            Yes--

Lia Javier:      I didn't get

Josh:            --but it was online. We can't make an election on the phone which means you made an election online, and it was accessible there.

Lia Javier:      Yeah, but it was, uh, how can I say this? It was the box that I'm asking them, and it wasn't explained to me. If I'm telling her that, "You need to explain it because I don't have the paperwork to take it to anybody to ask." So what I'm telling her--

[Crosstalk]

Josh:            You could've printed out the paperwork.

Lia Javier:      --it's -- you said what?

Josh:            O-on the website. The paperwork was on the website, and you would have had the ability to print it out and take it to someone if you were trying to make an informed decision.

Lia Javier:      Y-yeah, well, what wa -- what was told to me from her is that you can change your mind, and this is -- but if I would have known. She

did-didn't explain that. The rollover plan because I'm telling her, "I don't want the money for myself because it's going to mess with my Medicaid." If someone was telling you that then explain the plan to me and say, "I can make sure you get -- go to the rollover plan."

You guys are there to know more than what we know so if I'm asking you guys, I'm telling you the situation. I didn't get the paperwork in the mail and they're like, "Well, you only have a certain amount, and you were rushed." You have no clue what you're doing.

So when I'm telling her, "Look, I don't want the money, but I want to try to save my house, but I don't want the money as cash because it's going to mess with my Medicaid. What can I do?" All I was told from her, "Well, you need to go ahead and do the plan. And then, uh, sign what you need to sign. You need to hurry up and do it because you only have a certain amount of time."

And I couldn't even get in for a long time. I have to keep calling you guys back because I couldn't get in. I-I-I didn't have the right password. It didn't work. And then finally, it worked and I was like, "Well, let me go ahead and do it." She said, "Well, you have -- you have until the 31st to change your mind if they -- you don't want the money."

Which I had been hoping something else would come through with my house that I wouldn't need the money so I could say no. But if it

was told to me to go to a plan that meant that it goes in to the plan and then I wouldn't have -- it wouldn't be on my hands. But I could -- if I needed to take some money out to help my house that would have done it?

Josh:            I-I--

[Crosstalk]

Lia Javier:      I would have been able to do that?

Josh:            Well, you would have been able to roll it over in to another retirement account. If you needed the money as cash to do anything with you would have had to take it as cash or at least part of it as cash. But, I mean, at-at this point in time there isn't anything that we can do to change your election. Everything has already been finalized.

Lia Javier:      Yeah, but what I'm saying is you say -- what I'm-I'm hearing from you now, I could have rolled it over to a plan, and I would have been able to take a certain amount out, but it would have been less there. And there wouldn't have been no big taxes taken out?

Josh:            Well, I'm saying that you could have rolled it over in to another retirement account like an IRA--

Lia Javier:      Uh-huh.

KFHP000258

Josh:                 --or a 401(k). I don't know if -- it would have been up to that
account if you would have been able to take it out at this time from
that account. I don't know what-what your specific IRA or 401(k)
may have allowed. What we can do is we could have issued it as
cash or as a rollover, and you had elected a cash payment so that's
how it was processed.

Lia Javier:           See, that's what I'm saying. I -- you know what? What I'm going to
have to do, and I see what I'm going to have to do now. I'm going to
have to, um, I -- and that's why I'm telling you. I need to speak to
someone who is over you like you have a supervisor because what-
what-what's making me upset is that I don't understand a lot of
things, and I told the beef to you guys.

What's going on? How to help me regardless of you guys saying
whenever I'm telling you that I didn't get the paperwork. I'm asking
questions. I'm frustrated. I'm nervous. I don't know what I'm doing.
I'm asking them, "Look, I'm on social security. I have a mental
disability. I cannot understand everything all the time, and I --
things get mixed up."

So what I need to do, I've been asking them to let me speak to
someone who can help me to understand how to make a decision
because I didn't have anyone that could help me because I didn't
have the paperwork. I've been asking that through every call that
I've called. No one has done it.

KFHP000259

So what I need to do, I'm asking. I need to speak to someone else. Someone in the plan. If I have to write a letter because none of this stuff was stated to me so I can make an informed de-de-decision on what to do. I'm telling her everything and telling the other guy everything of what's going on, and what I need help with, and what I don't understand. And that wasn't explained to me.

I'm thinking it's just the one thing to do was either get the money, or get the-the-the payments, uh, divided out, or you get the, uh -- I only thought those two actually. So that's why I'm saying I need to speak to someone else. I want them to pull the calls, and I need to write a letter because this -- I don't -- um, this is not okay.

This should have been told to me where the money -- I-I don't want the money in my hands. Then you take out so much for taxes, but nobody explained, and I'm telling them this stuff. I don't understand. Instead of saying, "You need to -- uh, let us have someone call you back that they can go over this with you." You guys should have people there that can do that. I'm pretty sure you do.

Josh:              We can go over--

[Crosstalk]

Lia Javier:       Right?

Josh:                    --the kit with you. It's worth noting that I am a supervisor here, and we can go over the kit with you, and if you have those kind of questions I can't -- none of us here would be able to tell you how to resolve your-your personal situation. We can only advise you on how you can take the payment from the plan whether that's cash or a rollover.

I do apologize if in the past you weren't advised of-of what you were wanting to be advised of, but all the information was on the website, including the kit for you. And we were here to help answer questions.

Lia Javier:              But if you have someone who is disabled you cannot let them make a-a-an informed decision. Which I'm telling them, "You guys have to really help me understand this." And it was a thing of, "You have one day to do it." She said, "You have to do this stuff by tomorrow, and you can always change your mind once you do it."

And I'm asking her, "What is the pro -- what is the things that [unintelligible]?" I'm telling her constantly, "I-I don't want the money." I'm trying to say, "Well, I understand and -- but you have until the 31st," instead of explaining to me, "Well, if you don't want the money because you'd rather -- do have some-some--" Like a normal what to say to people.

"If you don't want the money there is a rollover plan where you put it in that, and you're able to get it. Let me give you their phone

number to that plan or if you need to find out more about that." No
one ever stated it to me.

Josh:                    We don't offer--

[Crosstalk]

Lia Javier:              That's why I'm asking you guys who could pull the calls? It doesn't
                         matter what you're saying right now. I need to see who I need to
                         speak to because this should have been told to me, but now, I'm
                         having to deal with this problem with my Medicaid. That's what I'm
                         asking. I don't know whatever more that I have to keep saying. I'm
                         telling you, I didn't get anything. I get the card, and I'm asking,
                         "What's going on? Well, how do I do this?"

                         And I'm telling her the specifics. That's why I'm asking you every
                         call that I make to you guys I've asked the same questions. What --
                         and I'm not telling you -- telling you what to do, but tell me how --
                         what-what is this thing? What's there for me if I'm telling you my
                         situation? Can you?

                         Well, that should have been told to me, "There's a rollover par-part.
                         You could put it in there where it's out of your hands, but if you
                         need it then you have to go through that plan." No one stated that,
                         and I kept saying, "I don't want the money in my hand. I don't want
                         a check because it's going to mess with my Medicaid, and it may

KFHP000262

even get me kicked off the social security," which I was nervous with that.

And they were like, "Well, no, social security is separate from whatever." So okay, I got that answer, but why didn't anyone answer when I said I didn't want the money in my hand. I wanted it to be out of my hands so if I needed it. If didn't get the [remodification] on my home I had access to it.

Josh:            We can't [unintelligible]--

[Crosstalk]

Lia Javier:      So now, I'm hearing, "Oh, yeah, that was a-a thing that we could -- you could have did, but you should have read it." But if I'm telling you I'm disabled. There's no way I'm going to make an informed decision. So that's why I'm saying I need to speak to someone else because you guys are telling the same things everybody else is telling me instead of getting me to the people that I need to hear from. That's what I'm saying.

Josh:            We cannot [unintelligible]--

[Crosstalk]

Lia Javier:      So you're telling me this stuff and help me. It doesn't help me at all because now, I'm screwed where they're telling me any money, and

they're going to take my Medicaid. So that's what -- that's what I'm angry about. And you're telling me now, "I'm sorry someone didn't tell you," but I'm just asking to speak to someone that can tell me what you just told me, and they wouldn't let me.

So I-I --like I said, there has to be someone who is higher up in your department that can help me get to the right people to-to give my grievance to. To tell them why I'm upset, and why this happened to me, and no one helped.

Josh:              What do you want me to do for you right now?

Lia Javier:        I want to speak to someone who can get this grievance because I'm not cashing this check. I want to have it to go in to a rollover plan where it should have helped me, but I kept telling them, "I don't want to touch this money." I may not even need it. I'm trying to work with the remodification. I told each representative, and I kept saying, "Well, we can't -- we can't tell you what to do."

"Can you -- then let me speak to someone who can help me decide. Give me every avenue there because I'm telling you I'm on disability. This is hard for me. I have no clue what I'm doing." Oh, no. "We're just telling you," but now, you're telling me something, and I kept saying, "Let me speak to a supervisor." "Oh, no, there's no supervisor.

KFHP000264

"They're -- I'm telling you, this is -- this is just the one call thing. We're just people who tell you that, you know, if you didn't get the paperwork you can get online," blah-blah-blah. Now, you're telling me, "Oh, yes, there was a rollover plan. Sorry no one told you that." When I'm constantly telling them my situation.

So I am not okay with this at all. I made a bad decision because no one took out the time and said, "Look, you're on Medicaid." We-we -- you guys are trained for this and said, "Well, you [unintelligible]. There's a rollover plan so what you need to do, you need to talk to someone who can help you with this rollover plan before you make this decision.

"Go ahead and take the money and then you can change the thing," or whatever, but it wasn't told to me. And even if -- e-even if the deadline date has passed, and I made that decision just to get the lump sum it still wouldn't matter because I didn't, you know, I would have picked the rollover from explaining what I don't want to do and what I need to do.

So I've been asking to speak to someone who is higher up in Kaiser. Whoever. I want [unintelligible]. Why can't I speak to someone to let them know, "Look, you guys know I'm dis-disabled. What's going on?"

Josh:          I can see if another supervisor can call you back, if you'd like. Um, but at this point in time we can't make any changes to your election.

KFHP000265

Lia Javier:        There has to be someone that can -- that I can write to, and someone in higher office in this plan that gave these things to give our people their money. I don't want the money. I want it to go to a rollover plan which I should have been told in the beginning. "That that's the best option probably for you to do it in a rollover plan, but you need to check with the rollover plan. Whatever plan you get you have to make sure if you've got assets to get your stuff."

                   And I'm telling them, "What are the issues with this with me?" And they don't want to even help. Now, I'm hearing this with this -- see, and I'm telling them, "I don't want the money." I'm telling them, "I don't want the money."

[Crosstalk]

Josh:              I think [unintelligible] you. I've-I've heard you state that. I understand my complaint. I can have another supervisor call you back, but if-if you're asking us, "What's the best option for me," we cannot answer that for you. We are not allowed to provide any kind of advice, and I'm sorry that you didn't get advice, but we cannot provide it. I can have another supervisor call you back.

[Crosstalk]

Lia Javier:        It's not the plan -- you guys are advising this if I have -- it's not -- it's the -- kind of what you just told me, right? That the rest rolled

over to an employer-qualified retirement. That's what you just said, right?

Lia Javier:    Those were all listed on the website. I was going over what different forms of payment you had. You had selected one specific form of payment when making the election, but they were all shown.

Lia Javier:    Yeah, but what I'm saying is if I'm telling the person when I'm on the phone with them because they had to go through it with me because I-I didn't understand. When I'm telling them, "Look, I don't want the money," and I'm explaining the whole situation that should have been told what you just stated to me. "No, you would want to take this one."

Not that you're telling me what to do, but you're directing me in to the right place. "If you don't want the money and you're worried about your Medicaid go ahead and take this one. This one might be best for you." You're not telling me, but saying, "Look, this is an option for you. Once again, I'm not giving you what to do, but this is an option. You said you don't want the money. You want to see it, but you've got to--"

What you just told me, that would have helped me make a -- the-the best decision for me which would have been, uh, a quickly to put it -- to push that.

[Crosstalk]

Josh:                    [Unintelligible] did nothing, but--

Lia Javier:           I don't w-want cash. And still, I don't want the money.

Josh:                    There's nothing I can do about what people in the past have told
                         you. In regard to what we can do now at this point in time I
                         understand that you-you're stating you didn't receive the
                         information you needed to when you called us before.

                         Right now, I'm telling you all I can do is I can have another
                         supervisor call you back. And if there's any other questions you
                         have that we can do right now I can help you with, but I do
                         understand that [unintelligible]--

Lia Javier:           What I'm saying is I need to speak to someone that's higher up. I
                         don't want to just speak to a supervisor at your level. I need to speak
                         to someone that's high in-in the -- in this -- in-in my plan. What is
                         the number that I am able to speak to people? This is my retirement
                         plan supposedly that is supposed to be a -- back my retirement
                         cushion, and I'm saying what I'm needing, and no one is explaining.

                         Like no one is letting us make an informed decision because it's so
                         quick. "You've got this much time to take it. Do this, but no one has
                         taken out the time to talk and explain, "Okay, this is going to--"
                         This is our life thing. "Okay, this is what you need." I'm explaining

that [unintelligible]. It is -- it's not like I said, "Oh, I want the money. That's it." Whatever.

I'm telling you my situation. Regardless of if someone told me in the past or not. I'm saying what I'm explaining, and that person, when I kept saying, "Well, why can't they have--?" I said, "Well, let me speak to someone who can let me know how to do this. I don't know what I'm doing. Like I don't have the paperwork in front of me. I don't know anything because I never got it.

"All I had was this card." "Okay, well, go ahead and do this. You've got to do it before tomorrow. Tomorrow is your last day. That's it, and you need to do it tomorrow."

Josh:            I understand you. When you went over this information I do understand that you didn't receive the information you needed these various calls. It's something where normally, we do recommend you speak with a financial advisor because they can really go over your situation and help you -- and help actually, give advice. We're not authorized to give advice. And this is [unintelligible]--

[Crosstalk]

Lia Javier:      But how would I know if I don't have the book?

[Crosstalk]

KFHP000269

Josh:              [Unintelligible].

Lia Javier:        If you guys would have sent me out my stuff I would have been able to take it someone and ask them what about it, but everything was done for me quickly. [Unintelligible] the phone calls. I had no clue what's going on so everything had to be done bam, bam, bam. And I'm telling you [unintelligible]--

[Crosstalk]

Josh:              Do you need us to send you all of your paperwork?

Lia Javier:        --what's going on.

Josh:              And if you--

[Crosstalk]

Lia Javier:        I never got my paperwork.

Josh:              --didn't receive that I'm sorry, but it was accessible on the website. When you went on the website to make your election you were able to print out the election kit. At this time, I-I would need to ask if you don't have any new questions I would need to just schedule a supervisor call with you. And with another supervisor if you wanted to speak to someone else here, but we're---

Lia Javier:          But I want to make sure there's not--

[Crosstalk]

Josh:                --we're running around in circles at this time.

Lia Javier:          But I want to make sure it's not anyone on your level. They need to
                     be above you. I keep asking for people above people so I can get the
                     right stuff, and no one is seeming to do that. There has to be
                     someone that's in your little area that's high. That's up that could
                     really help me to understand what happened, and why wasn't I
                     given the right information?

                     Regardless it's on the website, and I can't -- there's no way I'm
                     going to be able to print it out because I don't have access to a
                     computer, like I told her. I had to be on my iPhone to look it up. So
                     there's no way I have access, and I'm telling them so if I have to
                     make a quick decision within a day I have no clue of what's going
                     on, and I'm nervous.

                     I don't know what I'm doing, and I'm asking her and telling her my
                     situation. And instead of her saying, "You know, well, let me have
                     someone call you back. I'm going to have someone call you back
                     because tomorrow is the last day, and-and you need to be
                     informed." But no one did that for me. That's what I'm saying.

KFHP000271

So I don't want to speak to someone on your level. I need to speak to someone who's higher than you guys to explain why this happened to me and why did I get -- didn't know what I'm doing and did the wrong plan that I explained to her what I needed from my-my money coming to me.

I'm saying everything. It's -- what she's telling me, "Oh, yeah, that would have been the best probably. You know, I don't know for sure if you're telling me, but you're like -- we'll use that. That-that sounds like what you needed. I don't know whoever you would have picked to be your whatever. Wh-whatever [unintelligible]. I don't know who you would have picked, but you would have made sure that it was okay."

It's like a 401(k). I remember my 401(k). You could go in and-and get help. That's something that I needed because I'm saying I'm trying to save my home. That's the only reason that I'm even thinking about doing this. That card came, like I thought, in the nick of time because that's what I needed, but no one explained that to me the way you just did.

Had someone done that then I could have clicked on that rollover plan and then it would have been the end of it. And then I would have had access, but it would have been out of my [unintelligible]. That's all I'm saying. Like I wouldn't have -- it wouldn't have -- it-it wouldn't have stopped me from getting Medicaid or messing with my Medicaid. That's what I've been asking.

KFHP000272

So I need to speak to someone higher than you. I don't want to speak to just another supervisor. They've got to be higher than you, and I've got to get up to the top and see what I can do because I don't want this.

I should have had the rollover plan which should have been told to me. That's what I'm trying to say to you. You're telling me, "You can speak to someone else." No, that doesn't help me. That's not going to help me.

Josh:       I can only schedule a call back with one other supervisor here. There's only one other supervisor that you would be able to speak to. They are above me though.

Lia Javier:  Okay, so they're above you. So once they get above you so it's got to be someone above them. I'm trying to get to the top. Um, I'm trying to speak to -- so I would have to go through them to speak to someone higher than them because I want them to pull the calls and see I kept asking for help. And no one is--

[Crosstalk]

Josh:       You will not be able to speak to anyone above this supervisor. My supervisor is the highest that you would be able to speak to.

Lia Javier:  And there's no one else in the whole place of where we have this retirement stuff? There's no one else? Uh, there's no one head

honcho that I could speak to from Kaiser? Like there's no, uh, I don't even know. I would doubt if that's a -- it's been so long since I've worked at Kaiser that the people who were in-in-in the, you know, in the manager's office from Kaiser or whatever, people who were high up there has to be someone who you guys have a little set thing of you guys giving it. There has to be someone higher than-than someone just there. That's what I'm saying.

Josh:            There is only one--

Lia Javier:      This is what--

Josh:            --supervisor I can -- I can have you speak to. I can have her give you a call back within one business day.

Lia Javier:      Okay, what -- and what is your name?

Josh:            My name is Josh.

Lia Javier:      Okay, Josh, and what is her name that I'll be expecting the call from?

Josh:            Rona.

Lia Javier:      Rona. So is there anything online that I can look up that has, uh, your-your comp -- you know, your little -- because I don't know if

KFHP000274

you guys work for Kaiser or if they're just someone they hire -- you guys. They hired you guys to do this. I'm trying to see--

Josh:                Well, once this window closed, and the website closed as of the election window closing. There is not a website for you to be able to visit regarding this.

Lia Javier:          Okay, so what I'm going to have to do -- see now, I'm going to have to -- yeah. I'm going to have to talk to -- yeah. I'm going to have to call my senator. I'm going to have to have someone help me do that because this is ridiculous. This is my life, and I've been asking, and you guys didn't do your job.

You should have told me, you know, "Hey, we can't tell you, but I know it's rushed." I'm rushed with this. So will you guys be able to pull all the calls so you can see that I've been asking this same questions and asking to speak to someone who actually, can guide me through it?

Not to tell me what to do, but to guide me through since I didn't have the paperwork. I've been asking that so can you guys -- would you guys be able to pull all those calls because I want -- I don't want to take this check. I-I want to -- I don't want to take this check.

There-there has to be something so I'm wondering can you guys pull the calls to see, "Yes, she has been calling and asking. She didn't understand. She kept asking, and asking, and asking, and

KFHP000275

asking to speak to someone that could help her"? And no one gave me that person to help me. So--

Josh:              Did you have--?

Lia Javier:       --is there a way?

Josh:              Our calls are recorded. We do have access to the previous calls.

Lia Javier:       Okay, good. I just want to make sure. Okay, thank you.

Josh:              No problem.

Lia Javier:       Josh, thank you. Uh-huh. Bye-bye.

Josh:              Bye-bye.

[End of recorded material]

**BLS_Kaiser_Lia Javier_11.17**





Transcribing·Editing

203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000277

**BLS_Kaiser_Lia Javier_11.17**

[Start of recorded material]

Lia Javier:          Hello?

Rona:                Hi, can I speak to Lia Javier, please?

Lia Javier:          May I ask who's speaking?

Rona:                Sure, my name is Rona. I'm from the Kaiser Permanente Pension
                     Election Help Desk.

Lia Javier:          Hi, Rona. Yeah, you know what? I did speak to someone, and they
                     told me that you guys weren't able to help me anyways. Like it
                     wouldn't even work so they said there was nothing you guys could
                     do so just let it go and try to figure out what to do now. So that's
                     what I'm going to do.

Rona:                Okay, Uh, did -- I mean, I can try to help provide any direction if
                     you'd like. I believe, um, so Josh did fill me in. Is this -- did you
                     want me to try to help a little bit because I--?

Lia Javier:          Uh, no, because she said she couldn't like -- you couldn't change
                     anything. Like, um, you couldn't go back to do anything. He said,
                     um, going forward, that's all that I have to do. So then I called my
                     tax person and she said, "Let it go, and, um, just -- we'll work on it
                     from here." So I do--

KFHP000278

Rona:               Okay.

Lia Javier:         --thank you for calling me and keeping your -- Ro-Rona. Thank you so much.

Rona:               Okay, all right. No problem.

Lia Javier:         Okay.

Rona:               Uh, you have a good day.

Lia Javier:         Have a good day.

Rona:               Have a good weekend.

Lia Javier:         Uh-huh, you too.

Rona:               Um, bye-bye.

Lia Javier:         Bye-bye.

Rona:               [Unintelligible].

[End of recorded material]

KFHP000279

**1-15JNB4C_01.11.2018**



Tigerfish®

Transcribing·Editing

203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000280

**1-15JNB4C_01.11.2018**

[Start of recorded material]

Cindy:              Thank you for calling Kaiser Permanente Retirement Center. My
                    name is Cindy. Can I get your name, please?

Lia Javier:         Um, yes, Lia Javier.

Cindy:              Hi, Lia, how can I help today?

Lia Javier:         Um, yes, I was told by my tax person to make sure that I, um, that
                    when they [unintelligible] out my -- because I took out the early
                    retirement plan --

Cindy:              Mm-hmm.

Lia Javier:         -- and they want to -- they want to make sure that-that I got a 1099
                    sent out for disabled.

Cindy:              Uh, they will, uh, send the 1099 by the January 31st. And if you
                    took, uh --

Lia Javier:         Okay.

Cindy:              -- an early disability retirement that should be coded as such.

KFHP000281

Lia Javier:      Okay. Will they -- will they know that I was -- that I'm disabled, so there's a different tax bracket for that?

Cindy:           Yes, because you would have, uh, listed that when you pulled your pension; I would assume.

Lia Javier:      I don't think they had a thing for that, for disabled.

Cindy:           And what is your callback phone number, Lia? Let me take a look at your account.

Lia Javier:      Thank you, five, one, zero, seven, zero, one, one, seven, seven, one.

Cindy:           All right, just one moment. I'm going to put you on a brief hold. I'll be right back. Thank you. Lia, thank you so much for holding. Um, I'm --

Lia Javier:      Okay.

Cindy:           -- uh, I-I don't believe it will be coded, uh, disability because you didn't take a disability retirement while you were still with Kaiser. Now, this early cash-out offer is a different type of payment. If, um, I can send a service request forward today to my administrators to ask them, uh, but I'm pretty sure they don't code them that way unless you took an, uh, disability retirement from Kaiser and took your pension at that time. I don't think it would apply for a cash-out

KFHP000282

1-15JNB4C_01.11.2018
Page 3

offer, that's probably going to be counted as income, but I will send this forward today and ask.

Lia Javier:     Okay. Because, yes, I asked my tax person, and the told me that even with an early retirement, uh, this -- for disabled people, it's a different coding bracket. Um, so --

Cindy:          Okay.

Lia Javier:     -- um --

Cindy:          But do we have --

Lia Javier:     Yes.

Cindy:          -- a copy of your disability here at the pension department? I mean, we wouldn't have any record of your disability here.

Lia Javier:     Oh, well, that's what I was saying, is I didn't see anything on there, but when I spoke with her she was telling me that there is a different coding. She said for any type of thing that you take out, like any plan program, they code you differently as a disab-- disabled person because you don't make as much. And there's a different, uh, tax bracket for those who are disabled.

                So, um, I didn't -- I never got the booklet on anything. I just got the- the little -- the little card that said, um, there's an early retirement,

KFHP000283

you know, for Kaiser -- I got the card. And I had to call, and I only had like a day and a half to decide what I was going to do.

Cindy:          Right.

Lia Javier:     And, um, yes, I had to go over with the people on there. So I don't know what was in there. Like I have no clue. Like it was online, but they told me, you know what, go ahead and take it out and if you change your mind -- they sent me the booklet after. So I have to find the booklet, but they sent me the booklet after because I didn't -- I only got the card. And I think they sent me the booklet, or I think I went online. I can't even remember --

Cindy:          Okay.

Lia Javier:     -- this was, uh --

Cindy:          Yes.

Lia Javier:     -- [unintelligible]. And they told me go over it, um, and when I, um, uh, made my decision but, um, there -- I don't even know because there might have been something in there for disabled. I can't remember.

Cindy:          Do you have --

Lia Javier:     But somebody could have --

Cindy:              -- a copy --

Lia Javier:         -- [unintelligible] --

Cindy:              -- of your, uh, disability awards letter?

Lia Javier:         Yes, I do.

Cindy:              Okay. Uh, in the meantime while I send this, um, forward you
                    might want to get a copy of that mailed to the retirement center. I
                    don't know if it's going to help or not. But, um --

Lia Javier:         Okay.

Cindy:              -- that might be one thing you can do in the meantime. You're
                    probably going to get that 1099 form, uh, you know, in the next two
                    weeks. So, um, that would be a step -- being a step ahead if you've
                    already mailed it to us. That way if, uh, you come back and say it
                    wasn't coded as disability. Here -- I'm finally getting an answer
                    here. Hang one. Just one moment.

Lia Javier:         Okay.

Cindy:              Yes, my supervisor does state that it would not be coded as
                    disability, uh, due to the fact that, um, yes, that it wasn't disability

KFHP000285

1-15JNB4C_01.11.2018
Page 6

retirement. It was an early cash-out offer. So it's not going to be coded as disability.

Lia Javier:    Okay. So we just come back to normal, and then I would have to let a tax person to go from there.

Cindy:    Yes, there-there going to have to take it from there. He might be able to figure something out, or a different way of, um, presenting it where it's not going to count against you there.

Lia Javier:    Okay, because I have no clue of how they do that. I don't get it.

Cindy:    I know it.

Lia Javier:    Because I was -- I said, yes. I don't -- I was told that I should give the money back because they took out such a big lump sum out of it. It's a -- they took out almost 10,000.

Cindy:    I know.

Lia Javier:    So, my tax -- I mean, you should be able to get some back. But I don't know how --

Cindy:    Yes, you shouldn't really own any tax on that because you already paid 20 percent, probably, to the Federal. So I would think that you wouldn't owe much of anything after already paying the 20 percent Federal Tax because that's mandatory on a lump sum.

KFHP000286

Lia Javier:        Okay. I just need to see about --

Cindy:            Yes.

Lia Javier:        Okay. Thank you so much.

Cindy:            All right.

Lia Javier:        Thank you.

Cindy:            You're welcome, Lia. Thanks for --

Lia Javier:        Uh-huh.

Cindy:            -- calling the KPRC. You have a great rest of your day.

Lia Javier:        You too.

Cindy:            Bye-bye, now.

Lia Javier:        Bye-bye.

Cindy:            Thank you.

[End of recorded material]

**1-1643Z24_03.02.2018**





Transcribing·Editing

203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000288

**1-1643Z24_03.02.2018**

[Start of recorded material]

Karah:                    Thank you for calling the Kaiser Permanente Retirement Center.
                          My name is Karah. Can I have your full name, please?

Lia Javier:               Um, yes, Lia Javier.

Karah:                    Thank you. And a good call back number for you?

Lia Javier:               Five, one, sev-- five, one zero, seven, zero, one, one, seven, seven,
                          one.

Karah:                    Thank you. And how can I help you today?

Lia Javier:               I wanted to see if Melinda -- I think her names is Melinda -- is
                          available.

Karah:                    Melinda? Um, I don't know if I have a Melinda in the Retirement
                          Center. Let me -- let me take a look here. Melinda?

Lia Javier:               Yes, I had took an early retirement and, um, no one helped me with
                          anything. So she was telling me if I ever needed to talk to her, um, a
                          lot of stuff is messed up with me taking early retirement, and no one
                          told me. And, um, I told them constantly that I am disabled, and I
                          needed to make sure everything was correct, and they told me they
                          couldn't give me any help.

KFHP000289

1-1643Z24_03.02.2018
Page 2

But she-she told me that I should have -- shouldn't have -- she said, I shouldn't have made a decision without any more help. So, I'm trying to see now what I need to do because, um, it's-it's a lot going on. And I wish that -- when I kept telling them I'm disabled, I want to make sure -- my daughter is telling me to make sure you make the right decision and make them help you, and no one would help me. And they told me I had a certain amount of time, and it was very hard. So Melinda told me to call if I never needed to talk to her.

Karah:              Okay. Okay. There is a Melinda. Um, let me see if she is available. Sh-- it doesn't look like she's in my office. She might be in the other office. So, uh, let me see if she is available for you. Okay?

Lia Javier:         Okay. Thank you.

Karah:              Okay. One moment. Okay. So, thank you for holding. It looks like, uh, Melinda has been off this week for vacation. Uh.

Lia Javier:         Okay.

Karah:              I could --

Lia Javier:         [Unintelligible] first person I talked to because, um, there's a lot going on. My daughter is telling me that they should have never -- they should have never, um -- like ever let -- supposed to let me

KFHP000290

speak to someone else if I'm telling them that I'm mentally disabled and I need help with this information that -- my daughter told me they should have not let me make any decisions. Or they should have gotten me in touch with someone like Melinda said, they-they -- I shouldn't have made a decision knowing -- not knowing what I'm doing. And I kept asking them that I needed help. I didn't understand. Um, they told me you have a certain amount of time to get this money out. And the only reason I took the money out was to save my home.

Karah:                    Mm-hmm.

Lia Javier:              And I've been explaining that to them. But instead of them telling me what Melinda told them, they should have just said; you know what, you need to talk to a different person. We can't help you with that, but let's give you a number to someone you can talk to. But they wouldn't do it.

So, everything is screwed up, my taxes, my Social Security, and I told them on Social Security -- I told them everything so I need to see what I can do. I haven't cashed the check because my daughter told me, "Don't do anything, Mom, because you're-you're-you're in a bad state right now, and they messed up everything without giving you the correct information."

Karah:                    Okay. So the early cash-out was actually handled by a different department. Um.

KFHP000291

1-1643Z24_03.02.2018
Page 4

Lia Javier:              Yes.

Karah:                   So-so I mean, we-we don't -- and I'm sorry that we -- because we just deal with the normal retirement. And so it looks like you were going --

Lia Javier:              Yes. Um.

Karah:                   -- to the other department that was handling the early cash-out option. Now, they don't --

Lia Javier:              And they wouldn't --

Karah:                   -- have all the --

Lia Javier:              -- give me --

Karah:                   -- resources that we have. So --

Lia Javier:              Yes, but Melinda told --

Karah:                   -- [unintelligible] --

Lia Javier:              -- them they should have given me more information, and tell you guys like I shouldn't have been talking to them. That's what Melinda said. She said it's late now, but I just talked to my daughter, um, my

KFHP000292

1-1643Z24_03.02.2018
Page 5

daughter talked to some people that was with Social Security, and a lawyer that said that you shouldn't have made any decisions knowing you're mentally disabled. You told them that you were mentally disabled, and you needed help.

I constantly kept telling them, "I don't know what I'm doing." Then-then they kept saying, "Well, you only have a certain amount of time." And, um, no one told me anything. No one helped me. No one said anything. All they told me was that, you know, in order to get your money, you have to make the decision now.

Because there was a card that came in the mail. And I got a card, and they were like, "Well, you didn't get the booklet?" I said, "I didn't get anything." It's a card. I'm like, "Good," you know, maybe this a blessing for me because I'm about to lose my home. And they were telling me, "Well, you have to make the decision." I tried to get help.

Finally, a-a lady said, "Go ahead and accept it." She said, "Go ahead and accept it." And then, you know, um, you could, um, cancel it if anything happens to where you don't want it. I had a month to do it, but I'm trying to get more money to get my home saved, and it wasn't, and that was the only option. And I'm telling them that what other options do I have, but when I spoke with Melinda, she -- hold on -- she said I could have taken a disability to get help with my home because I was losing my home. And --

KFHP000293

1-1643Z24_03.02.2018
Page 6

Karah:                  Mm-hmm. Yes, because the-the department that handles the early cash-out, they don't see the normal retirement information that we see. So, if-if -- yes. So, may-- they should have referred you to us, but they don't -- they just are answering questions that they know -- have information about. Um, so if you had called the retirement center, which is us, um, we could have went over the disability option with you.

Lia Javier:             Yes, and no one --

Karah:                  Yes

Lia Javier:             -- did that. So I told Melinda, I need to see what I can do now because it's screwed up with everything with my -- I-I asked, and I'm telling them, you know, I'm on Social Security. I can't have it mess up anything.

                        I don't know what -- help me. They should have transferred me to someone else, and say we can't do it. You know, don't do anything. You-you know, talk to your -- no one said anything. They were saying, "You only have this amount of time."

Karah:                  Mm-hmm.

Lia Javier:             And I'm not knowing anything --

Karah:                  Yes.

KFHP000294

1-1643Z24_03.02.2018
Page 7

Lia Javier:          -- and they're [unintelligible] --

Karah:               Because they're not going to make that decision for you -- make a
                     decision for you.

Lia Javier:          Yes.

Karah:               Um, that would --

Lia Javier:          [Unintelligible].

Karah:               -- only come from you to speak to somebody else.

Lia Javier:          Uh, yes.

Karah:               Um.

Lia Javier:          But --

Karah:               Yes.

Lia Javier:          -- I'm saying if I'm asking them to do -- what Melinda said was they
                     should have --

Karah:               Mm-hmm.

KFHP000295

1-1643Z24_03.02.2018
Page 8

Lia Javier:    -- gave you some [unintelligible] to say, we can't help you with this. Let us give you this information. She said they have our number. That's what I'm upset about now. I'm stressed out now because this shouldn't have been done the way it was done when I'm telling is that I need help. I'm telling them I don't know what I'm doing, and they're just -- well, we just -- okay, I get -- I und-- I hear them. But it should have been given me to say call your retirement center, but they said we don't -- they didn't give me any other number, any other type of information, and they had it, that's what Melinda said. They have the information.

She said you took this. So what I'm going to have to try to do is take this to court because I'm not knowing what I'm doing, and I'm asking for help, and no one is helping me. That's what getting on my nerves. No one is helping me. I'm constantly saying, "I need help. I don't understand." Then tell me -- give me a different number. I don't know what I'm doing because they won't speak to my daughter because they told me they have to speak to me. So I'm not knowing what I'm doing, and she's trying to write things down, and we're trying to ask questions, and no one is helping. So now everything is --

Karah:    No, they should have --

Lia Javier:    -- messed up --

KFHP000296

Karah:              -- been able to talk to your daughter if you gave them permission to speak with her. Then they should have --

Lia Javier:         They wouldn't.

Karah:              -- they should have been able to talk with her.

Lia Javier:         No. They said we have to speak to you. And I'm sitting up here -- I don't know what I'm doing. I'm asking for help, and all they had to do was say, we can give you to the other part. We can't help you make [unintelligible] -- service. I [unintelligible] service. But I'm not knowing what I'm doing, and so I keep telling you, you're rushing me to do something. And I'm thinking to save my home, and you're not telling me there's other options. Let me give you this phone number for your retirement center. They didn't do that. And had they done that, I would of had all the best options. I'm counting on-on Social Security. I don't want it to mess up my Social Security. So --

Karah:              Yes. They don't have all the information. So they were just going by -- I mean, depending on who you were speaking with, they're just going by this is the deadline to make a decision. That's all that their-their job was; it was to inform people about the decision and the deadline for it. They're not the retirement center. So I-I apologize for that. Now, how can I help you? What-what do you need --

Lia Javier:         I need --

KFHP000297

1-1643Z24_03.02.2018
Page 10

Karah:                 -- from me?

Lia Javier:            -- I need to go further and then see what I can do because I want
                       everything rescinded. I-I want everything --

Karah:                 Okay.

Lia Javier:            -- rescinded. If I have to, my daughter [unintelligible] go to court.
                       We're going to go to court because they didn't tell me anything. If
                       I'm telling you I'm disabled -- I'm mentally disabled. I'm not -- I
                       don't know everything. You got to help me. Then tell me, we can't
                       help you. Let us let you speak to these people. Then they should
                       have let my daughter speak to the people and get everything
                       situated, but they didn't do that.

                       So I made a decision not knowing what I'm doing. And I kept
                       asking them for help. If I'm telling you I don't know what I'm doing,
                       then say, we can't help you. Here's the number. And that's when
                       Melinda kept saying, "Yes, I apologize, they should have gave you
                       the number. This -- they were -- that's a different area. These are
                       people that we hired. So if they're people that we hired, then you
                       can't help me, then say please don't make any decisions now. You
                       know.

Karah:                 Well, they're-they're not hired for that either. They're just hired to
                       make -- inform you of what is happening. That's not on them --

KFHP000298

1-1643Z24_03.02.2018
Page 11

Lia Javier:          Yes, but if someone --

Karah:               -- to-to make the --

Lia Javier:          -- is telling --

Karah:               -- decision for you --

Lia Javier:          -- [unintelligible] --

Karah:               -- either. It's not on them --

Lia Javier:          -- [unintelligible] --

Karah:               -- to make the decision for you.

Lia Javier:          -- [unintelligible]. It's not a decision. If someone tells you you're
                     mentally disabled -- if I'm telling you I'm mentally disabled, then
                     that means don't deal with me. Tell me -- give me some of the
                     numbers. Don't deal with me. That's what I'm saying.

Karah:               Okay.

Lia Javier:          And that's what -- that's what Melinda said, they shouldn't have
                     talked to you. That's what I'm saying. But I made the decision, and
                     it -- and I'm telling you, I don't know what I'm doing.

KFHP000299

1-1643Z24_03.02.2018
Page 12

Karah:              Okay.

Lia Javier:         So if someone -- you mentioned -- that's like someone saying, I
                    blind or whatever, and I'm trying to tell you something that
                    obviously I can't -- I can't help you. Then get -- I-I don't -- I don't --
                    what I don't understand is there's -- I get that there's a different
                    company -- she kept saying it's a different company. I get it. But if
                    I'm telling you, I don't understand, mentally disabled, that's a big
                    trigger. So [unintelligible] -- I don't -- I don't understand.

Karah:              Okay. So I'm-I'm going to send this up to our -- my administration
                    supervisors, um, to see if there's anything that they can do if there's
                    an appeal process for you. Um.

Lia Javier:         It's ridiculous. I don't get it. It's like I-I don't -- I don't understand. I
                    don't -- I don't -- I'm tired. No one is understanding what I'm trying
                    to say. If you don't --

Karah:              No, I understand --

Lia Javier:         -- understand something --

Karah:              -- what you're trying to say. I do understand what you're trying to
                    say, and I apologize that they did not assist you the way that they
                    were --they were supposed to. I understand what you're saying. If
                    you're mentally disabled, then they should not have said anything to

KFHP000300

1-1643Z24_03.02.2018
Page 13

you. But you called them because of the letter that you got, and so they were going by the information that they had for you. But I'm going to send this up to my administration to see if there is an appeal process for you. You said you didn't cash the check. Correct?

Lia Javier:    Correct.

Karah:    Okay.

Lia Javier:    All they had to do was tell me, you guys. They could have check [unintelligible].

Karah:    And I'm sure they'll pull --

Lia Javier:    [Unintelligible].

Karah:    -- the phone calls --

Lia Javier:    [Unintelligible].

Karah:    -- I'm sure they'll pull the phone calls about this as well, so. Yes, because I don't even -- all I see is Melinda's note. I don't even see the-the conversations, um, that are logged in for the other team that was handling the early cash-out. Um, what is the -- this-this is a good phone number for you? The five, one, zero, seven, zero, one, one, seven, seven, one?

KFHP000301

Lia Javier:          Yes.

Karah:               Okay. Okay. [Unintelligible].

Lia Javier:          [Unintelligible].

Karah:               I'm going to place you --

Lia Javier:          [Unintelligible].

Karah:               -- on a qu-- brief hold while I get this typed up and, um, and send it out to-to the supervisors. Okay?

Lia Javier:          Thank you.

Karah:               Okay. Thank you. One moment. Okay. Ms. Javier?

Lia Javier:          Uh-huh.

Karah:               Okay. So I have gone ahead and escalated this issue, um, to our administration and our team of supervisors. So they're going to do some research, probably view the calls that were made to the other team, um, and get back to you. Now, this is going to take a few days, about four to five days before you hear back from us. Okay?

Lia Javier:          Okay.

KFHP000302

1-1643Z24_03.02.2018
Page 15

Karah:              Okay. Um, I do believe that there may be an option that they can, um, because you still have the check, right?

Lia Javier:         Yes.

Karah:              Okay.

Lia Javier:         Uh-huh.

Karah:              So, I-I do believe that there's-there's an option there. Um, but I-I don't want to get your hopes up too high. Okay?

Lia Javier:         Yes.

Karah:              Um, but I-I-I know that we-we can assist with this. And I'm so sorry that this happened, and that you weren't able to, you know, enjoy the money, you know, and-and make it work for you. But we -- we're going to try to fix this. Okay? So, um --

Lia Javier:         Thank you.

Karah:              Yes. So, give it -- give us about four or five days. Um, if you don't hear anything by Friday, um, give us a callback and we'll-we'll, uh, send another email, but you should hear something about Thursday or Friday. Okay?

KFHP000303

1-1643Z24_03.02.2018
Page 16

Lia Javier:          Could you be-be able to call me back? You?

Karah:               No, it would be a supervisor.

Lia Javier:          [Unintelligible].

Karah:               Yes. It would be a supervisor. Yes. Because they have -- they have
                     better access and they can -- they can look into those other calls and
                     stuff. Okay?

Lia Javier:          Okay. What is your name?

Karah:               My name is Karah, and that's K-A-R-A-H.

Lia Javier:          Karah, thank you.

Karah:               Okay.

Lia Javier:           I just [unintelligible].

Karah:               You're welcome.

Lia Javier:          I wished somebody would have talked to me and let me --

Karah:               Yes.

Lia Javier:          -- know and --

1-1643Z24_03.02.2018
Page 17

Karah:              Yes.

Lia Javier:         Yes.

Karah:              I'm sorry that they didn't refer you to just the-the normal retirement,
                    um, because they're-they're no longer in, um, you know, in action
                    right now after that-that deadline. So, I'm sorry that that happened,
                    but we're-we're going to work it out for you. Okay? And we're --

Lia Javier:         Thank you.

Karah:              -- going to do our best.

Lia Javier:         [Unintelligible].

Karah:              Okay.

Lia Javier:         Thank you so much.

Karah:              All right. You're welcome. Okay.

Lia Javier:         Okay. Bye.

Karah:              You'll be hearing from us soon. Thank you. All right.

Lia Javier:         Thank -- bye.

KFHP000305

**1-1643Z24_03.02.2018**
Page 18

Karah:              Okay. Bye-bye.


[End of recorded material]

KFHP000306

**1-1665SN8_03.07.2018**





203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000307

**1-1665SN8_03.07.2018**

[Start of recorded material]

Female Voice:        You have reached the voice mailbox of five, one, zero, seven, zero, one, one, seven, seven, one.

Male Voice:          Hello, this message is for Lia, this is the Kaiser Permanente Retirement Center. We do have some updated information to relay to you. If you can, please, give us a call back at your earliest convenience that would be great. Our phone number is eight, six, six, six, two, seven, two, eight, two, six. We are open 9:00 a.m. to 9:00 p.m., Eastern Standard Time. And when you give us a callback, if you could please supply the representative with this reference number that would be great. The reference number is one, dash, two, five, four, six, four, eight, three, two, six, five. Thank you, and have a good day.

[End of recorded material]

KFHP000308

**1-16648LZ_03.07.2018**



# Tigerfish®

Transcribing·Editing

203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000309

**1-16648LZ_03.07.2018**

[Start of recorded material]

Jeanie:                  Thank you for Kaiser Permanente Retirement Center. My name is
                         [Jeanie]. Who do I have the pleasure of speaking with, please?

Lia Javier:              Um, Lia Javier.

Jeanie:                  Can I get your phone number, please?

Lia Javier:              Five, one, zero, seven, zero, one, one, seven, seven, one.

Jeanie:                  And how can I help you --

Lia Javier:              They gave --

Jeanie:                  -- today?

Lia Javier:              -- they gave me a reference number.

Jeanie:                  Okay. What --

Lia Javier:              And I don't know if I'm in the right department. Huh?

Jeanie:                  Why don't you give me that reference number, please.

1-16648LZ_03.07.2018
Page 2

Lia Javier:        Okay. Um, one, one, two, five, four, six, four, eight, three, two, six, five.

Jeanie:            All right, one moment here. [Unintelligible] pension. All right, one moment.

Lia Javier:        Uh-huh.

Jeanie:            All right, let me look at this really quick. All right, one moment. Okay. So, it looks like they gave you a callback, right?

Lia Javier:        Yes.

Jeanie:            [Unintelligible].

Lia Javier:        If you could just transfer me over there, that would be great.

Jeanie:            If what?

Lia Javier:        If you could just transfer me to the retirement department. They didn't tell me what department to call --

Jeanie:            Oh.

Lia Javier:        -- they just gave him the reference number.

Jeanie:            I'm in the re-- I'm in the retiree, and I'm just looking at the --

KFHP000311

1-16648LZ_03.07.2018
Page 3

Lia Javier:          Oh, okay.

Jeanie:              -- notes right now. Yes. I'm just --

Lia Javier:          Okay.

Jeanie:              -- looking at the notes -- what my, um, uh, administration department said. It said, uh, [unintelligible] employment [unintelligible] under a normal termination, not disability retirement, um, [unintelligible] that she would have [unintelligible]. It says that, um, oh, hold on just a minute. The place of employment sh-- event shows she retired in a normal termination, not a disability retirement.

So Plan 2, the salary retirement plan, Plan A, also does not allow for disability retirement even if you retire due to a disability event. Uh, you would have had to wait until a date of 8/1/2035 to commence, otherwise -- please advise she [unintelligible] -- oh, and [unintelligible] -- okay, so it just states that you're not able to rescind your commencement. Um. I'm actually going to get you over to pension on this, okay, because I think they need to talk to you about this. Is that okay?

Lia Javier:          [Unintelligible] said, what could they -- they told me -- I told them that they shouldn't have -- they [unintelligible] a lot of stuff that I didn't know, and they should have told me --

KFHP000312

1-16648LZ_03.07.2018
Page 4

Jeanie:          Yes.

Lia Javier:      -- and I told them that I was mentally disabled. And they shouldn't have -- they should have given me to you guys to talk to-to make sure I did everything correctly, and they didn't. So that's my whole thing. I don't care about disabilities to know what it was. I should have known what my rights were, even if I didn't [unintelligible] disability, whatever. It should have been told to me, everything that I didn't know.

                 And my, um, my daughter should have been able to talk to them because I have -- I don't know what questions to ask and what to do. So I-I don't want to hear what they have to say. I'm tired of going through this. They should have told me what I needed to do instead of just doing whatever. So I wanted to speak to someone who was, um, you know, able to assist me and listen to the thing. They needed -- they said they were going to pull the calls, and I don't think they did. So I need to speak to someone.

Jeanie:          All right. Well, let me do that. Hold on. I'm going to get you over to pension. Hold on just one moment, and I will talk about this. Hold on just one moment.

Lia Javier:      Thank you.

Jeanie:          You're welcome.

KFHP000313

1-16648LZ_03.07.2018
Page 5

| | |
|---|---|
| Male Voice: | You have reached Mercer. For your protection, all of our lines are recorded. |
| Jeanie: | Lia? |
| Lia Javier: | Uh-huh. |
| Jeanie: | Thank you so much for holding. I have Karah on the phone, and she's going to assist you further from Pension Department, okay? |
| Lia Javier: | Okay. Thank you. |
| Jeanie: | Thank you. Have a great day. |
| Lia Javier: | You too. |
| Jeanie: | Okay. |

[End of recorded material]

KFHP000314

**1-16651EW_03.07.2018**





Tigerfish®
Transcribing·Editing

203 Columbus Avenue · San Francisco  94133
toll-free 877-TIGERFISH

**www.tigerfish.com**

KFHP000315

**1-16651EW_03.07.2018**

[Start of recorded material]

Karah:          Thank you for calling the Kaiser Permanente Retirement Center.
                My name is Karah. Can I have your full name, please?

Jeanie:         Karah, you might want to hang up.

Karah:          [Unintelligible].

Jeanie:         Yes, I got -- I got a bad line. Okay.

Karah:          Oh, okay.

Jeanie:         Um, did she pull up Lia Jav-- is it --

Karah:          Javier?

Jeanie:         -- Javier? Yes. You might want to go into a service request. Um, the
                last one that was made, uh, 3265 is the last four of the service
                request.

Karah:          Thirty-four, sixty-five. Okay. I'm waiting for it to pull up.

Jeanie:         Yes.

Karah:          Oh, there it is. Okay. Okay. I've got it here.

KFHP000316

Jeanie:            So, kind of a run down. Uh, sh-- it's for pension. She had a pension check -- commencement check.

Karah:             Mm-hmm.

Jeanie:            And she received it, but she thinks she, um, is mentally, um, disabled.

Karah:             Mm-hmm.

Jeanie:            So sh-- they -- she should have known her rights before they did this.

Karah:             Okay.

Jeanie:            So, it might -- it might turn into a supervisor call. I just want you to know that.

Karah:             Oh, yes. You know what? I actually talked to this lady.

Jeanie:            Yes, because they're like --

Karah:             Yes.

KFHP000317

1-16651EW_03.07.2018
Page 3

Jeanie:            -- they told her, "No." They said -- they said advise -- she's already
                   gone through the entire commencement process and has received
                   her check. She's not able to rescind her commencement.

Karah:             Okay.

Jeanie:            But --

Karah:             Okay.

Jeanie:            -- I just thought it's going to be a -- not a good one for you. So, I'm
                   sorry.

Karah:             Okay.

Jeanie:            I owe you a candy bar, okay?

Karah:             Oh, no problem.

Jeanie:            Here's the phone number, okay?

Karah:             Okay. Yes.

Jeanie:            Um, five, one, zero.

Karah:             Mm-hmm.

KFHP000318

Jeanie:             Seven, zero, one.

Karah:             Okay.

Jeanie:             One, seven, seven, one.

Karah:             Okay.

Jeanie:             All right.

Karah:             Okay. whenever you're ready.

Jeanie:             All right. All -- I'll get it to you. Hold on, just a moment.

Karah:             Okay-okay.

Jeanie:             Lia?

Lia Javier:        Uh-huh.

Jeanie:             Thank you so much for holding. I have Karah on the phone, and
                    she's going to assist you further from Pension Department, okay?

Lia Javier:        Okay. Thank you.

Jeanie:             Thank you. Have a great day.

KFHP000319

Lia Javier:          You too.

Jeanie:              Okay, ho--, Karah?

Lia Javier:          Hello?

Karah:               Hello. Yes, my name is Karah. Um, what's your full name, please?

Lia Javier:          I've spoken to you last week. I remember Karah, right? I spoke to you last week, Lia Javier.

Karah:               Yes, we did speak. Okay. Yes, I see it here. Um, what's a good call back number for you, Lia?

Lia Javier:          Um, five, one, zero.

Karah:               Mm-hmm.

Lia Javier:          Seven, zero, one, one, seven, seven, one.

Karah:               Okay. Thank you. All right. Let me look at the notes here, so bear with me just a moment. Okay. Okay. So I'm just reading the notes here, and it says, um, the employment event shows that you retired under a normal termination, not disability retirement. Um, the Salary Retirement Plan A also does not allow for disability retirement even if you did retire due to a disability event.

1-16651EW_03.07.2018
Page 6

Um, you should have had -- wait. You would have had to wait until the normal retirement date of August 1, 2035, to commence otherwise. Um, and so since you've gone through the entire process, you're not able to rescind the commencement process that you've already gone through.

Lia Javier:    Well, my whole thing is like I told them, I -- that's not what I'm fighting about the disability stuff. Uh, that's not what I'm fighting about. What I'm fighting about when I asked them what to do -- I don't know what it entails. They did not transfer me to you guys to-to actually speak to me and tell me what this involves.

Because if they really would have pulled the calls, I know I could ask me about Social Security. I don't work. All -- I'm dis-- I'm ment-mentally disabled.

I told them everything. And instead of them transferring me, they didn't. I don't care about disability or what they're trying to say. I told them if you're going to mess with my Social Security -- they kept saying we can't help you with that. Then you need to give me to someone that can help me with that. They should have done that, and they didn't.

Karah:    We wouldn't --

Lia Javier:    [Unintelligible].

KFHP000321

Karah:              -- [unintelligible] help you with the Social Security either. We don't
                    deal --

Lia Javier:         Well, I'm saying --

Karah:              -- with Social Security.

Lia Javier:         Okay.

Karah:              Yes.

Lia Javier:         What I'm --

Karah:              So we don't -- hmm?

Lia Javier:         -- saying --

Karah:              Mm-hmm.

Lia Javier:         -- what I'm saying -- and I'm going to keep saying this until I speak
                    to someone that is high up in your thing. If I'm mentally disabled --
                    if you cannot help me, then tell me -- not these people, but you guys
                    who are -- who have my records. I am so tired of explaining this to
                    everybody. If they couldn't help me when they kept saying, "Well,
                    we're not -- this is a different company." All they had to do is
                    transfer me to you guys. Regardless if this is Social Security --

| Karah: | Why would they have -- |
|---|---|

| Lia Javier: | -- [unintelligible]. |
|---|---|

Karah:        -- to tran-- I don't understand why you would want them to have transferred you to us. You were calling about your early commencement options. Why would they have connected you to the normal retirement department?

Lia Javier:   To you guys to tell me what this is about. They didn't give me --

Karah:        They --

Lia Javier:   -- any information but A, B, C, B, E. If-if I'm mulling what it entails when I kept asking them, they said, "We can't tell you anything." They should have let me speak with you guys. When I talked with the other lady last time, she told me we would have given you a breakdown of what happened. That's what I needed. See --

Karah:        A breakdown --

Lia Javier:   -- I don't understand --

Karah:        -- what do you mean a breakdown --

Lia Javier:   -- [unintelligible] --

Karah:              -- of what happened?

Lia Javier:         -- breakdown [unintelligible] --

Karah:              What do you mean a breakdown of what happened?

Lia Javier:         All [unintelligible] -- a breakdown of this-this can affect -- even to
                    tell me that it doesn't, but this can affect your Social Security. If I'm
                    saying, I'm mentally disabled. I don't work. I'm on disability Social
                    Security, SSDI, that would have told me everything that I needed to
                    know, and that's what the lady told me last time. We would have
                    broke it down [unintelligible] -- you need to call this place. You
                    need to call that place. You need to call this place. That's what I'm
                    saying.

                    She knows she said, we know a lot more than the people who we
                    gave to do this knows. So you're trying to tell me something -- I'm
                    going to argue with you. I asked to speak to someone, and for them
                    to pull the calls and they didn't. Because I kept asking the questions,
                    "What do I do?" And-and-and they were, "We can't answer that."
                    "Well, who can you lead me to?" And they would not give me you
                    guy's phone number.

Karah:              All right. Just-just one moment, Ms. Javier. Okay. What I can do, is
                    I can -- I can have our administration review the calls. Um, and if
                    they-they can send you out a claim form.

1-16651EW_03.07.2018
Page 10

Lia Javier:        Oh.

Karah:             -- once they reviewed --

Lia Javier:        Who else --

Karah:             -- these calls.

Lia Javier:        [Unintelligible].

Karah:             I'm sorry.

Lia Javier:        Who else is there because I'm asking who because I talked to you
                   last time and I explained the situation, and you act like you knew
                   what I was talking about?

Karah:             I do know what your --

Lia Javier:        And now --

Karah:             -- talking about.

Lia Javier:        -- [unintelligible] --

Karah:             And I'm telling you --

Lia Javier:        [Unintelligible].

1-16651EW_03.07.2018
Page 11

Karah:              -- that you went through this whole process and you called the
                    department --

Lia Javier:         If you're asking me --

Karah:              -- about early --

Lia Javier:         -- [unintelligible] trying to tell me now that me and you talked last
                    week and I told you what happened. And you said, "Okay. They're
                    going to pull the calls." You was like --

Karah:              Nobody --

Lia Javier:         -- [unintelligible] --

Karah:              -- said they were going pull --

Lia Javier:         -- [unintelligible] --

Karah:              -- the calls.

Lia Javier:         -- [unintelligible] --

Karah:              I did not say they were going to pull the calls. I did not --

Lia Javier:         Yes, you did.

KFHP000326

1-16651EW_03.07.2018
Page 12

Karah:                  -- say that.

Lia Javier:             You did say they were going to pull -- you-you did say that --

Karah:                  I said --

Lia Javier:             -- [unintelligible] --

Karah:                  -- may.

Lia Javier:             -- [unintelligible] --

Karah:                  I said they may. I didn't say that they were.

Lia Javier:             But-but if you're telling me that, then why would it be different. Is there someone else I can speak to because --

Karah:                  Just a moment --

Lia Javier:             -- if this is [unintelligible] --

Karah:                  -- I sure will get someone --

Lia Javier:             -- [unintelligible] --

Karah:                  -- for you. Just a moment.

Lia Javier:          Thank you. Thank you.

Karah:               Okay. Ms. Javier?

Lia Javier:          Mm-hmm.

Karah:               Okay. I'm going to get you to my Supervisor, and his name is
                     Patrick. Okay?

Lia Javier:          Hmm?

Karah:               Just one --

Lia Javier:          Mm-hmm.

Karah:               I'm sorry. Let me try that one more time.

Patrick:             All right, Karah, you can bring her on the line.

Karah:               Okay. Okay. Thank you for holding, Ms. Javier. I have Patrick on
                     the line, and he'll go ahead and assist you. Okay?

Lia Javier:          Uh-huh.

Karah:               Thank you.

KFHP000328

Patrick:            Okay. Um, like she said, my name is Patrick. I'm one of the
                    Supervisors here at the Kaiser Permanente Retirement Center. Um,
                    and I understand that the issue right now is you're wanting to try to
                    appeal, uh, basically, your participation in the early cash-out, uh,
                    that you believed there might be a chance that you had the ability to
                    commence your pension through disability, um --

Lia Javier:         No.

Patrick:            -- no?

Lia Javier:         No, I didn't. No.

Patrick:            Okay.

Lia Javier:         No, that is not the main thing. The -- I asked them about -- because
                    I am disabled, and I asked them all the questions that I needed to
                    know because I'm telling them, I don't know what I'm doing. I'm
                    telling them I'm mentally disabled. I want to know everything. I
                    have to write things down because my daughter will tell you they
                    wouldn't speak to her.

                    So I'm like I got to write things down, tell me. They said, "Well, we
                    can't help you with anything. We're not that dept-- we're not that --
                    we're just a company that they, you know, hired." And I'm telling
                    them, "Well, who do I need to speak to?" Not once did they give me

KFHP000329

guy's your number. Like I say, they need to talk to your retirement department, and they need to go over things with you.

Patrick:        Okay.

Lia Javier:     So I -- what-what is the problem? They transferred me to someone, and when I was -- I-I can't remember who it was, and they said -- I'm asking them to -- look, I'm disabled. I don't know what I'm doing. You know, what will this effect? Um, tell me, you know, with everything going on like what-what will happen?

                I'm asking questions that I have no clue of what I'm doing. And no one's -- no one's told me anything. No one tells me like -- when I spoke with someone, and I can't remember her name. I want to say, Melinda. I don't even know. I spoke with someone else in your department. They went over everything with me, and she told me, "They should have told you this. They should have transferred you to us so we could have told you what everything was."

                When she broke it down, I said, "Oh, no one told me that." So everything is affecting everything. I tried to call Social Security before, and they were telling me, "No, it-it-it should not mess with anything in your, uh, viewer information." But now when I called back, um, after I got the-the money, they told me, "Oh, you have to be careful it -- when you -- when you're -- when you're older it-it might affect it." Which -- okay, I'm like, okay, if you guys said one thing then -- and then I was told, "Well, you're disabled, so you

KFHP000330

shouldn't have to, uh, have a big amount taken out and [unintelligible] --"

Patrick:        So --

Lia Javier:     -- your [unintelligible] security.

Patrick:        Uh, okay. So I --

Lia Javier:     Like no one --

Patrick:        -- think -- so looking at -- so looking at -- that would be the conversation in January. Reviewing that, the notes we have on our end is that your tax advisor was telling you that your 1099 is supposed to be coded for disability. But the issue is you didn't take your commencement as a disability commencement. Um, when you do the cash-out option, it's not considered disability payment, and that's why your 1099 has the normal distribution code.

Lia Javier:     Yes, that's what they told me, but I'm saying when I spoke to you guys at, um, not -- I think it was September or October -- end of September, October. Not you guys, but the other place. I asked them all the questions that -- telling them, "Look, I don't know what I'm doing. What am I supposed to do?" And they did not say let us let you speak to your retirement department because they will give you the information.

KFHP000331

1-16651EW_03.07.2018
Page 17

All they kept telling me was that "We can't help you." I know that.
Give me to someone that can help me before I make this decision.
So what they told me, "Go ahead. Make the decision, um, and you
have, um, a month to-to-to say no." So they still didn't give me you
guy's number to say -- you know what, they told me -- well, you
know what? I'm telling them, "Well, I'm disabled." And they were
like, "Well, we can't tell you anything. So you can call your-your,"
uh, what do you call it? Your disability? Or you could call them.

Not once did they give me the number to you guys, so then I could
have been told, this is what you need to do. You're mentally
disabled. We cannot help you right now. You need to do A, B, C,
D, or whatever, but no one gave me that option. So I had no clue.
Everything was quickly done. You got to do it now. If you don't do
it now, you're not going to get this.

Instead of giving me you guy's numbers to say, um -- because all
they kept saying, "We can't let you speak to," like, "They're not
going to speak to you because this is -- this -- they're doing this
program." That's what they kept saying. "We're doing this program
so, um, there is -- no one can help you." They're telling you what
you -- what you need to do. "Did you get the package?" And I said,
"No." "Then look online, and read the-the things that are going on."

So I'm sitting up here trying to read everything online which doesn't
make sense. Instead of just giving me you guys to say, talk to them,
they can explain it. I'm not knowing because me and my daughter is

KFHP000332

looking at everything like, "What does this mean?" We have no clue of what to do.

And I'm telling them, "Look, I kept calling --," I don't know what I'm doing. I don't -- well you have -- you have a few more days. You have until October 31st to make this decision. We're trying to call people about disability, and nobody can help us. They said, "That's your retirement program."

So instead of them giving me your number that I got now, they should have done that so that you guys could have broke it down to me and my daughter to say, this is what needs to be done. Don't do this if you don't work. If you weren't on disability and mentally disabled, do not do this. And it's not telling me what to do just giving me my options. I'm not saying that you have to tell me what to do but could say, A, B, C, D, E, um, you know, what are the options do I have and what [unintelligible] my Social Security, my disability, what are the options. You know.

Do I need to need to get a doctor's approval so to prove that I'm okay to make any deci-- anything. No one told me anything, and that's why I'm irritated. So I told my daughter, "I'm not cashing the check because it's going to mess with my-my-my life when I'm older." But nobody said anything when I kept asking them.

Patrick:                    So --

KFHP000333

Lia Javier:          So, I'm -- I told my daughter was that I'm-I'm at this point -- I'm
                     mentally disabled which means I get anger rages, and I'm tired of
                     being nice. I've been taking my medicine, but I don't -- I'm-I'm sick
                     of being calm when no one is listening to me. Once again, no one
                     listens when I keep asking somebody, "I want to speak to someone
                     else." Give me the number -- when I talked to the other lady she
                     said, "They should have given you our number so we could have
                     explained things a little better." And no one did it. And no one
                     wants to pull the calls to see that I kept calling to ask for help.

Patrick:             Uh, well, here's-here's-here's what we have to do going forward.
                     Because right now the-the real issue with pulling some of those
                     calls is related to the fact that the-the cash-out option was run
                     through the assistance of another call center. So we would have to
                     get in touch with them to do any sort of call polls.

                     The problem we have right now is that since you completed, and
                     signed, and did all the paperwork, outside of a claim on the plan, we
                     wouldn't -- we can't -- it's not like we can cancel the check because
                     we've gone -- you've gone through all the steps of the early cash-out
                     disbursement.

                     So right now the-the next step would basically be -- we would have
                     to send you out a claim initiation form or get a written inquiry from
                     yourself about the situation at the time to officially start, basically,
                     an appeal. Because right now what-what we have from the cash-out

KFHP000334

1-16651EW_03.07.2018
Page 20

team is, basically, that you completed all the paperwork correctly, the disbursement was proceeded, and now you have your check.

Lia Javier:       Well, I [unintelligible] --

Patrick:          Uh.

Lia Javier:       -- I don't -- I [unintelligible] -- I had to do everything online because I didn't -- I did any [unintelligible] anything, and I told them that. I just a card in the mail, and it was giving me a-a little time frame. I think I had a day to make a decision, or three days, or two days. The card came in the mail, and I'm, "Oh, what's this," because I was losing my home. I was like, "Wow, this is -- this is a blessing. What's going on?" And it was a very short time frame that I had to make a decision. So even if I [unintelligible] well, I kept calling -- I called her like three times.

                  The call [unintelligible] -- the lady said, well, go ahead and just sign the stuff, you can always rescind it in-in-in a month. But, you know, and I said, "Okay. Is there a number that I can speak with?" Like I need to know what I'm doing. She said, "Just go ahead and sign it. Call the people around that you need to call."

                  Instead of her giving me you guy's number, she should have said, here's the number that you need to call. Talk to these people so you can get the information and see what to do. And make sure you and your daughter -- because I kept explaining my daughter

KFHP000335

[unintelligible] my stuff. Make sure you guys understand before you accept it because I know I had a certain amount of days to say, "No."

And I'm sitting up here trying to get help, calling Social Security. My daughter is talking to these people, and they're telling her one thing, and -- it doesn't -- it doesn't much make sense to us at all. We're like, "What -- is this going to bother my Social Security?" That's all I wanted to know. Is it going to mess with-with my tax [unintelligible] because I don't work? I don't work.

And I don't have any money to [unintelligible] because this is going all go to pay my home. I'm asking these questions, and no one is answering me. So I do want to make an appeal, and I want them to stop doing stuff quickly. When people tell you they need help, give them to the right people who is going to help them.

Now I'm stressed out because I don't know. And I'm like -- I'm like [unintelligible] because I'm not going to put myself in this predicament where I'm going to be in some rest home or somewhere later with no money. Like this is my life, and I'm telling them, instead of them saying let us let you speak to them. You know, um, here's the number that you need to call. They should help you better than we can. They did not do that.

So I want to -- I'm going to make an appeal, and whatever I have to do. If I have to get my psychiatrist to write things out because I

KFHP000336

should not have been able to make these decisions without people talking to me or my daughter, and nobody would.

Patrick:          Okay. So what --

Lia Javier:       That's my Social Security Department to talk to us. It's your department to talk to me. It's my retirement. This -- I went -- I was with Kaiser for years. So -- and no one wants to speak to me at Kaiser which makes it-it-it just -- it's so horrible.

Patrick:          So what I'm -- what I'm going to do on my end here, um, is basically -- I'll be putting in a request to get the claim information sent to you. Um, I want to check and make sure we have the correct address for you. I want to -- what I'm going to be requesting is, if possible, we send it overnight with a -- with a return label so that you can get it overnighted back to us as soon as you've been able to-to basically write-write your appeal, um, get any supporting documents you want. You know you get the things that you-you believe you have on your end, um, for everything that-that went wrong during the process of the early cash-out.

                  Um, how that process works after that is basically, we'll take all your documentation, um, since you're -- since you'll be including, kind of, basically, we need to reference the calls from the early cash-out. Um, any-any calls that need to be pulled for research would be done on our end. Um, and then it actually goes to a, um,

KFHP000337

the Kaiser Permanente Administrative Committee. Um, and they will -- they will review the appeal.

I do want to let you know the time frame for that notice of approval or denial is 90 days. Um, and you actually get a written letter about the decision. So just kind of -- I want you to be aware of the time frame on that, um, as it can take up to 90 days, but what I'm going to do is try to get you to the point where-where we can have a-a good appeal in front of the-the administrative committee, um, in-in a timely fashion.

Um, from-from what you're telling me right here on this call, um, I-I want to apologize just one, that-that you went through this process not-not being aware of what was going on, and not feeling like you had the support. Um, because-because that's not what's intended when you're going through retirement, it's supposed to be informative, and it's supposed to be something you're understanding.

Um, but outside of the appeal process, there's not going to be a way for us to try to make any corrections. So that's where-where I want to get this process started right away. Um, because, basically, you're going to be appealing the documentation you signed, and-and the state that you signed it in. The informed -- and that you were not informed while signing it. So that's-that's the-the direction we're going -- we're going to go to try to-to get some sort of-of correction here.

KFHP000338

Lia Javier:          Thank you. Thank you, very much.

Patrick:             Absolutely. Um, so Ms. Javier, right now, we have for your address, um, 805 Fieldstone Court, Brentwood, California, zip code 94513. Is that still a good address for you?

Lia Javier:          Yes.

Patrick:             Okay. Um, so let me get this over to the administrative team. Um, and your phone number is five, one, zero, seven, zero, one, one, seven, seven, one?

Lia Javier:          Yes.

Patrick:             Okay. So you should expect to -- you'll get a call back from me, um, before Friday of this week just letting you know that the form is on its way. Um, and I'll be able to give you -- give you the tracking number. Okay? So that you can, um, you can kind of keep track of that, and knowing to expect it. Okay?

Lia Javier:          Okay. What is your name?

Patrick:             It's Patrick.

Lia Javier:          Patrick.

KFHP000339

Patrick:                Okay. Um, you know, I -- and I -- and I'm sorry that-that it had to get all the way to this point before-before we're-we're being able to kind of go through this step so that this is the only option that we have left. And that this wasn't caught, you know, and this wasn't explained earlier in the process. Um, but I want to make sure going forward we're doing a very good job of explaining everything that we're -- that we're trying to do to get this corrected. Okay?

Lia Javier:         Got it. Thank you, Patrick. Thank you very much.

Patrick:                Absolutely. And I-I look forward to-to touching base with you before the end of the week. Um, and we will -- we will get working on this to get you set up to-to appeal this, um, and-and work through everything that way. Okay? Um, now --

Lia Javier:         Okay.

Patrick:                -- I will let you know that sometimes there is situations that cannot be appealed. Um. I'm --

Lia Javier:         Mm-hmm.

Patrick:                -- so to this one, uh, this one is kind of unique in that I-I never quite run across this one yet. I'm not sure if this is one of those situations. If it is, I will be calling you back and going over any other options you might have. Um, but as of right now, the best bet to get this

corrected the way you want it to be, would be we-we go through the claim initiation form and the appeals process. Okay?

Lia Javier:        Okay. And thank you so much.

Patrick:          Absolutely. Um, so I will get back to you before the end of day on Friday. Um, I really do hope you have a good rest of your day. Um, and I look forward to-to touching base with you later in the week. Okay.

Lia Javier:        You too. Thank you, Patrick.

Patrick:          All right. Bye.

Lia Javier:        Uh-huh. Bye-bye.

[End of recorded material]

KFHP000341



KFHP000343

## Claim Initiation

**KAISER PERMANENTE.**

### COMPLETE THIS FORM AND PROVIDE ALL REQUESTED INFORMATION

Claimant Name: _Lia_ / _Javier_
First Name / Last Name

Participant Name (if Not Claimant): First Name / Last Name

Claimant Address: _805 Fieldstone Ct._
Street Line 1

Street Line 2

_Brentwood_ _Ca_ _94513_
Street Line 3
City / State / Zip

Participant Social Security Number: REDACTED

**Include the following:**

- Completed **Claim Initiation** form – Claimant must complete and sign this form.
- This written form must be submitted to the address shown below in order to start the formal process of having your claim reviewed.
- Include an explanation of the pension benefits claim you are making (e.g., calculation of service, plan, or benefit eligibility).
- Include a statement describing the reasons why you believe your pension benefits were not calculated correctly or you are entitled to a pension benefit.
- Attach copies of all documents, correspondence and information you have to support your claim for pension benefits. **Please do not submit any original documentation. Documents submitted for claim processing cannot be returned to you.**
- If your claim for pension benefits involves previous discussions/communications, include the date(s), person(s) with whom you spoke, details of the conversation, etc.

INCLUDE ALL FACTS AND SPECIFIC CIRCUMSTANCES THAT YOU WOULD LIKE TO BE CONSIDERED WHEN REVIEWING YOUR CLAIM.

_Hi my name is Lia Javier. I didn't get the form in the mail. I got the information on the card 2 days before it ended. I called on end of August or in September 2017. I talked to a man and asked him about the Kaiser payout. He said he couldn't help me, so I asked him who could. He said they were a company hired to help. Early pay out read info. I told him I didn't get info in mail only card to help me get a payoff to save my home. He said he couldn't help me. That wasn't his job to answer those questions; he can't give me advice. So I called_



#23Z328SUBX

KFHP000344

**Claim Initiation**

**KAISER PERMANENTE.**

| Claimant Name: Lia C. Javier | First Name Lia | Last Name Javier |
|---|---|---|
| Participant Name (if Not Claimant): | First Name | Last Name |

**(Claim Facts and Circumstances Continued)**
Attach additional pages if needed.

back, spoke with a lady the day before sign-
upended. She suggested I end up taking end if I
could cancel. But she gave me no info to call to get
help. I explained to both of them that I am mentally
disabled. I didn't understand. They told me to call my
tax person and Social Security people for help but they
didn't tell me to call KP. I got into a fer. I received the
check. That said I had not to speak to me not my daughter
It isn't think when people are like mean, Cruel they do not wish
**Claim Submission Process** to be nice or help me.

I understand that Kaiser Foundation Health Plan, Inc. will send me a written notice of its determination within
90 days of receipt of my claim. I understand that if Kaiser Foundation Health Plan, Inc. needs additional time
to process the claim, I will receive a written notice of the need for a longer processing period prior to the
expiration of the initial 90-day period, the reasons for the longer period, and the date on which I can expect my
claim to be processed. I understand that in no event shall the extension exceed a period of 90 days from the
end of the initial period.

Limitations on Claims and Legal Action: Any claim under the Plan - including any challenge to whether you
have a vested benefit, your years of vesting service, credited service, compensation, or any other component
of your benefit - must be filed within 2 years following the latest of:
(i)  December 31, 2017,
(ii) Your termination of employment, and
(iii) The date you were provided with written notice (including electronic information made available to you by
     the Plan) of your vested status and/or the components of your benefit.

If, however, your claim relates solely to the failure to pay or begin to pay your Plan benefit as of your benefit
commencement date, your form of payment, or the adjustment to your benefit for commencement before
normal retirement date, your claim must be filed within 1 year of your elected benefit commencement date. Any
legal action must be brought within 1 year after the later of the date of the initial claim denial or, in the event of
a timely appeal, the date the appeal is denied. Additionally, any legal action may only be brought in the U.S.
District Court of the Northern District of California.

In signing this form, I also authorize the release of all records and/or information pertinent to this case to Kaiser
Foundation Health Plan, Inc.

_____
Claimant Signature

3/22/18
Date

**MAIL COMPLETED FORM AND DOCUMENTATION TO:**

Kaiser Permanente Retirement Center



#23Z328SUBX

KFHP000345

I didn't cash the check, cause I didn't know what to do. it would mess up my Social Security. and my living life. money has to last. I needed help and no one helped me. I don't want this money please help me. Nobody helped me. I didn't spend the check. I only got it to help with my house, but a program helped me with saving my home. I told them about my pension they said no, it will not be ok to use, and did my pension people help me. I said no. Please help me.

Lia C. Javier

KFHP000347

 **SOCIAL SECURITY ADMINISTRATION**

Refer To: REDACTED                                  Office of Disability Adjudication and Review
                                                    SSA ODAR Hearing Ofc
                                                    Suite 200 N
                                                    1301 Clay Street
                                                    Oakland, CA 94612-9837

                                                    Date: August 27, 2013

Lia Crasona Javier
805 Fieldstone Ct
Brentwood, CA 94513

<div align="center">Notice of Senior Attorney Adjudicator Decision    Fully Favorable</div>

I carefully reviewed the facts of your case and made the enclosed fully favorable decision on
your application(s) for a period of disability, disability insurance benefits, and Supplemental
Security Income. I found that your disability began on January 1, 2013. I explain the basis for my
decision in the attached decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements
for Supplemental Security Income payments. That office may ask you for more information. If
you do not hear anything within 60 days of the date of this notice, please contact your local
office. The contact information for your local office is at the end of this notice.

**If You Agree With My Decision**

If you agree with my decision, you will not have a hearing with an administrative law judge.

**If You Disagree With My Decision**

If you disagree with my decision, you may still have a hearing with an administrative law judge.
If you still want to have a hearing, you or your representative must ask us to continue with your
request for a hearing. You must make your request in writing. Mail your request to the address
shown at the top of this notice. Please put the Social Security number shown above on any
request you make. If you need help, you may go to any Social Security or hearing office.

If you ask for further review of a favorable decision, an administrative law judge will consider
the entire case record including the decision. Further review may result in a new decision that is
less favorable or unfavorable to you.

**Time Limit For Asking to Continue With A Hearing**

You must ask us to continue with your hearing request **within 60 days** after you receive this
notice. We assume you received this notice five days after the date of the notice unless you show
you did not get it within five days. If your request to continue with your hearing is timely, you

Form HA-L10 (11-2011)

<div align="center">See Next Page</div>

KFHP000348

Lia Crasona Javier REDACTED                           Page 2 of 2

will have a hearing. We will give you more time if you show that you had good cause, or a good reason, for missing the deadline.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.

If the Appeals Council does not review my decision on its own and you have not asked us to continue with your hearing request, my decision will become final. We will change a final decision only under special circumstances. You will not have the right to Federal court review.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866)331-2324. Its address is:

> Social Security
> 2508 Verne Roberts Cir
> Antioch, CA 94509-7916

> > Judith A. Dickman
> > Senior Attorney Adjudicator

Enclosures:
Decision Rationale

cc:    Johna Littlejohn
       1030 36th St
       Richmond, CA 94804

Form HA-L10 (11-2011)

KFHP000349

ॐ

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

## DECISION

**IN THE CASE OF**

**CLAIM FOR**

Lia Crasona Javier

Period of Disability, Disability Insurance
Benefits, and Supplemental Security Income

(Claimant)

REDACTED

(Wage Earner)

(Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

This case is before me on a request for hearing dated July 5, 2013 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The evidence of record supports a fully favorable decision; therefore no hearing has been held (20 CFR 404.948(a) and 416.1448(a)). The claimant is represented by Johna Littlejohn, an attorney.

The claimant has amended the alleged onset date of disability to January 1, 2013.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2017. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, I find that the claimant has been disabled from January 1, 2013, through the date of this decision. I also find that the insured status requirements of the Social Security Act were met as of the date disability is established.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

See Next Page

KFHP000350

disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual

See Next Page

functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1.    The claimant's date last insured is September 30, 2017.**

**2.    The claimant has not engaged in substantial gainful activity since January 1, 2013, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

There is no evidence that the claimant has engaged in substantial gainful activity at any time since January 1, 2013 (see, Earnings Records, Dis. Rpt. & Wk. Hx. Rpt.). Therefore, a finding of disability is not precluded on the basis of work activity.

**3.    The claimant has the following severe impairment: a depressive disorder (20 CFR 404.1520(c) and 416.920(c)).**

The claimant has alleged disability on the basis of depression, anxiety and schizophrenia. Her symptoms include hearing voices, suicidal thoughts, tearfulness, fatigue and feeling stressed. She has also alleged number of disabling physical problems including hypertension, headaches, a heart problem, kidney problems, shortness of breath, neck and body pain, welts and swelling in her feet, a compromised immune system and poor vision at times, and has also reported that she is afraid that she will have a heart attack or stroke. The claimant reported that she often stays in bed, neglects her personal hygiene and self-grooming, cannot be around people for too long, may not eat for days at a time and generally has difficulty functioning on a day-to-day basis (see, Dis. Rpt., Dis. Rpt.-Appeal & Func. Rpt.). The claimant's daughter, Chelseay Javier, stated that the claimant spends her days watching TV and crying (see, 3rd Party Func. Rpt.).

As will be discussed below, the findings reported in the claimant's medical records indicate that the above impairment has more than a minimal effect on her ability to work. I therefore find that the claimant's mental impairment is "severe."

Although the claimant has also alleged disabling high blood pressure, no significant positive objective findings or complications associated with that condition have been reported in her treatment records which indicate that that condition is generally well-controlled (see, Tx. Notes fr. Kaiser Hospital, Brentwood Health Center & Contra Costa Regional Medical Center). There

See Next Page

KFHP000352

is nothing in the claimant's medical records to suggest that her hypertension has more than a minimal effect on her ability to work and I find that it is "non-severe."

**4.    The severity of the claimant's impairments meet the criteria of section 12.04 and section 12.06 of the Listing of Impairments found at 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) and 416.925).**

Although the claimant has a long history of multiple somatic complaints, no significant positive objective findings have been reported on physical examinations or laboratory testing performed in connection with those complaints. Instead, the claimant's somatic complaints have repeatedly been linked to psychological symptoms.

Thus, when the claimant reported dizziness/disequilibrium on a visit to Kaiser Hospital in October 2008, her physician suspected that the problem was stress-related (10/30/08 Tx. Note). Thereafter, in April 2011, when the claimant presented to the emergency room at Contra Costa Regional Medical Center stating that she feared that she had irritation due to an STD, her emergency room physician noted that the claimant appeared extremely paranoid and concluded that her irritation was likely stress-related (4/2/11 Contra Costa Regional Medical Center ER Report). When the claimant returned to the emergency room in the following month reporting high blood pressure, she was diagnosed with a generalized anxiety disorder with panic attacks (5/2/11 ER Report).

Moreover, when the claimant reported blurry vision, lightheadedness, dizziness and poor sleep in July 2011 on a visit to Brentwood Health Center, her visual acuity was measured at 20/20 in both eyes and no physical source of her complaints was identified. The claimant was again diagnosed with anxiety and psychotropic medication was prescribed (7/21/11 Tx. Note). In the following month, on complaints of insomnia and fatigue, the claimant was diagnosed with depression and anxiety, and additional psychotropic medication was prescribed (8/5/11 Tx. Note).

When the claimant returned to Brentwood Health Center in May and June 2012 with various physical complaints, her blood pressure was found to be normal and physical examinations were unremarkable. The claimant's health concerns were again linked to anxiety at that time (5/4/12 & 6/15/12 Tx. Notes). Thereafter, the claimant began seeing Holly Hand, LMFT, a therapist, on a weekly basis beginning in September 2012 (9/12/12 Tx. Note).

In October 2012, the claimant told consultative psychologist, Dr. Khalifeh, that she felt depressed, had difficulty sleeping, had had changes in her appetite, had feelings of hopelessness, helplessness and worthlessness, had no interest in her usual activities, was struggling to make it through most days, had difficulty completing her activities of daily living and was spending her days day crying and watching television. On mental status examination, the claimant's mood was depressed, and she was tearful and upset. Dr. Khalifeh diagnosed a major depressive disorder and assigned the claimant a GAF score of 41 indicating serious symptoms. See, DSM-IV-TR (Washington, DC, American Psychi. Ass'n., 2004). She then concluded that the claimant would have significant emotional difficulties maintaining a consistent work schedule, would have a moderate impairment in her ability to maintain adequate pace, concentration and persistence throughout an 8 hour workday, would have a moderate impairment in her ability to

See Next Page

manage routine changes in a work environment and would have a moderate impairment in her ability to interact appropriately with coworkers, supervisors and the public (10/16/12 Report).

In November 2012, when Ms. Hand saw the claimant, she noted that she was rambling, tangential, irritable and angry, had pressured speech and racing thoughts and exhibited forgetfulness (11/13/12, 11/20/12 & 11/27/12 Tx. Notes). In the following month, Ms. Hand assessed the claimant's overall functioning. She noted that the claimant had symptoms including "borderline anorexia," social isolation, significant interpersonal conflicts with family members and friends, paranoia and was pre-occupation with resentments/hostility towards others. In addition, Ms. Hand noted that the claimant had limited insight, significant mood swings/agitation, difficulty with concentration, a significant perceptual and thought disturbance, tangentiality, mania, pressured/rapid speech, delusions, paranoid ideation and some evidence of disorganization. She also observed that the claimant's interpersonal relationships were significantly impacted by her hostility and argumentativeness and, consequently, she was becoming increasingly isolated over time. Ms. Hand diagnosed a bipolar disorder, borderline personality disorder, a delusional disorder and anorexia nervosa and concluded that the claimant's intensive level of hostility, paranoia and anger rendered her unemployable except under very limited circumstances (12/11/12 Mental Disorder Q'aire. Form).

The claimant also began receiving treatment from Dr. Sachdev in December 2012. Dr. Sachdev diagnosed a major depressive disorder, severe, with possible paranoid thoughts and a possible bipolar disorder. He then ordered changes in the claimant's psychotropic medications (12/21/12 Tx. Note). In January 2013, Dr. Sachdev noted that the claimant continued to struggle with depression and anger, was irritable and had a hard time being around other people. On mental status examination, the claimant appeared anxious, had a depressed mood and irritable affect and exhibited some paranoia (1/18/13 Tx. Note). Thereafter, when Ms. Hand saw the claimant in February 2013, she noted that the claimant continued to have rapid and rambling speech as well as agitation and irritation (2/19/13 Tx. Note).

In April 2013, the claimant told her physician at Brentwood Health Center that she was still experiencing anxiety and was withdrawn from others despite taking her psychotropic medications. The claimant also complained of feeling that she was immune-compromised but her physician noted that all work-ups performed in connection with that complaint had been unremarkable and, while the claimant was "worried about the possibility of immunodeficiency...there really seem[ed] to be no evidence of this." Finally, the claimant complained of joint pain in the same month, but x-rays of her hands were negative (4/10/13 and 4/21/13 Tx. Notes & 4/16/13 X-ray Report).

In May 2013, Ms. Hand reevaluated the claimant and diagnosed a borderline personality disorder, a delusional disorder and anorexia nervosa. She also stated that under stress, the claimant was experiencing transient paranoid ideation, that her thoughts were frequently distorted and confused and that she had had significant impairments in understanding, memory and sustain concentration. Ms. Hand further noted that the claimant had significant affective instability with marked reactivity of mood resulting in displays of inappropriate anger, argumentativeness and irritability that had caused a long history of difficulty interacting with friends, family, care providers and strangers, unstable and intense relationships, and frequent

See Next Page

disruption of her functioning. Thus, in Ms. Hand's opinion, the claimant was disabled from any employment involving cooperative interaction with others (5/3/13 Letter).

When Dr. Sachdev saw the claimant in the same month, he reported pressured speech, irritability and some paranoia. Dr. Sachdev then confirmed the diagnosis of bipolar disorder and concluded that the claimant had poor abilities to complete a normal work day and work week without interruptions from psychologically-based symptoms and respond appropriately to changes in a work setting (5/11/13 Tx. Note & Short-Form Evaluation for Mental Disorders). In August 2013, Dr. Sachdev stated that the claimant continued to be extremely unstable with worsening of her psychological condition despite her maintenance on multiple psychotropic medications. He then stated that in his opinion, the claimant was incapable of maintaining any type of employment (8/9/13 Letter).

The findings reported in the claimant's medical records indicate that the severity of her mental impairment meets the criteria of Section 12.04. The "paragraph A" criteria of Section 12.04 are satisfied because the record describes anhedonia, an appetite disturbance, a sleep disturbance, psychomotor agitation, feelings of worthlessness, difficulty concentrating, thoughts of suicide and paranoid thinking.

In terms of the "paragraph B" criteria of section 12.04, although the claimant has reported that she has been able to care for her son, washed dishes and go grocery shopping, she has also reported that she needs assistance from her son to maintain their household and complete errands. In addition, she has reported that she often stays in bed, will go for long periods of time without washing her hair, has severely restricted food intake and needs reminders from her son to take care of her personal needs and grooming. The claimant and her daughter further reported that the claimant generally spends her days at home watching TV and crying. Although the claimant attempted to return to school in 2013, she did not do well and was placed on probation (see, Dis. Rpt.-Appeal, Func. Rpt., 3rd Party Func. Rpt., 10/16/12 Report of Dr. Khalifeh, 12/11/12 Mental Disorder Q'aire. Form fr. Ms. Hand & 5/11/13 Tx. Note fr. Dr. Sachdev). Consequently, I find that the claimant's impairment causes a marked restriction in activities of daily living.

Furthermore, the record describes the claimant's increasing social isolation, paranoia and anger towards other. Thus, in October 2012, Dr. Khalifeh noted that the claimant had "significant emotional difficulties" which impeded her ability to interact with others (10/16/12 Report); in December 2012, Ms. Hand noted that the claimant had become increasingly isolated because of her hostility and argumentativeness, and that her intensive level of hostility, paranoia and anger rendered her essentially unemployable (12/11/12 Mental Disorder Q'aire. Form); social isolation was noted by the claimant's physician at Brentwood Health Center in April 2013 (4/10/13 & 4/21/13 Tx. Notes); in January 2013, Dr. Sachdev noted that the claimant was irritable, paranoid and had a hard time being around other people (1/18/13 Tx. Note); and in May 2013, Ms. Hand noted that the claimant had a long history of unstable and intense relationships with difficulty interacting with friends, family, care providers and strangers, and that her functioning was frequently disrupted due to displays of inappropriate anger, argumentativeness and irritability (5/3/13 Letter). Consistent with this evidence, I find that the claimant has marked difficulties in maintaining social functioning,

See Next Page

KFHP000355

The evidence of record thus satisfies all of the criteria of Section 12.04 for a Listing level affective disorder. In so concluding, I have considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-6p and 06-3p. I give great weight to the findings by Ms. Hand, Dr. Sachdev and Dr. Khalifa whose opinions are consistent with the claimant's history and supported by the findings reported on psychological examinations. While the State Agency physician found that the claimant had no Listing level mental impairment, I do not find that opinion persuasive and entitled to great weight since it is not consistent with the record as a whole including the August 2013 report by Dr. Sachdev which was not before the State Agency at the time of its determination.

I have also considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.

**5. The claimant has been under a disability as defined in the Social Security Act since January 1, 2013, the amended alleged onset date of disability, and disability is reasonably expected to last for at least 12 continuous months (20 CFR 404.1520(d) and 416.920(d)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on July 6, 2012, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since January 1, 2013, and disability is reasonably expected to last for at least 12 continuous months.

Based on the application for supplemental security income protectively filed on July 6, 2012, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act since January 1, 2013, and disability is reasonably expected to last for at least 12 continuous months.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

Medical improvement is expected with appropriate treatment. Consequently, a continuing disability review is recommended in 36 months.

See Next Page

KFHP000356

Lia Crasona Javier REDACTED

Page 8 of 8

/s/ *Judith A. Dickman*

Judith A. Dickman
Senior Attorney Adjudicator

August 27, 2013
Date

KFHP000357

 **KAISER PERMANENTE**®

NOTICE OF DENIAL

June 21, 2018

*Via Federal Express*

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to revoke your pension election under the limited one-time pension election opportunity program (the "Special Distribution Program"). This letter explains the reasons for the denial.

**Background**

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election opportunity to certain former employees who have a vested pension benefit. This postcard informed you to be on the lookout for your personalized election kit, and that you would need to act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit contained instructions and forms to complete in order to receive a single lump sum payment or a monthly annuity. The election kit also provided that you must mail your completed forms or complete your election online and provide any required documentation no later than October 5, 2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5, 2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
175641.v1

KFHP000358

 **KAISER PERMANENTE** ®

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that the Plan does not permit Disability Retirement Benefits and you stated that that was not the reason you wanted to file a claim. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

175641.v1

KFHP000359



On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request.  You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan).  You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program.  Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled.  However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment.   You also signed that you understood that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits.  The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period.  The Election Period is the 90-day period ending on your Benefit Commencement Date.  The Benefit Commencement Date means the first day of the month in which you begin receiving payments.  The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires.  (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017.  Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

175641.v1

KFHP000360

 **KAISER PERMANENTE**®

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**Your Appeal Rights**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

175641.v1

KFHP000361

**ꙮ KAISER PERMANENTE®**

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,

Benefits Compliance
Kaiser Foundation Health Plan, Inc.

175641.v1

KFHP000362

 **KAISER PERMANENTE**®

## APPENDIX A
## APPLICABLE PLAN PROVISIONS
## KAISER PERMANENTE RETIREMENT PLAN

2.8     <u>Benefit Commencement Date.</u>  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

****

2.30    <u>Election Period.</u>  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

****

8.1     <u>Payment Election.</u>

****

   (c)    <u>Participant Election.</u>  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

****

9.7     <u>Miscellaneous</u>

   (d)    <u>Notices and Missing Persons.</u>  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****

## APPENDIX 9
## 2017 SPECIAL DISTRIBUTION ELECTION

1.1     <u>2017 Special Distribution Election.</u>  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

---

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

A-1

KFHP000363

**KAISER PERMANENTE®**

<center>****</center>

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

<center>****</center>

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.    A-2

175641.v1

KFHP000364

 **KAISER PERMANENTE.**

bcc:    Diane M. Anderson (via email): <u>Diane.M.Anderson@kp.org</u>
        Shirley H. Liu (via email): <u>Shirley.H.Liu@nsmtp.kp.org</u>
        Jennifer Collentro (via email): <u>Jennifer.collentro@mercer.com</u>
        Kelly-Ann Irving (via email): <u>Kelly-Ann.Irving@mercer.com</u>
        Karen Worcester (via email): <u>Karen.Worcester@mercer.com</u>
        Bryan Start (via email): <u>bryan.start@mercer.com</u>
        Benjamin F. Spater (via email): <u>bspater@truckerhuss.com</u>

175641.v1

KFHP000365

June 28, 2018

## Appeal

To Whom it May concern, I Chelsey
Tawn and writing in behalf of my
mother Lia C Tawn. We have sent in
her appeals with her proof that she
is mentally disabled. I take care of
all of her Bills, I am power of
attorney over all of her things. Please
let me understand how you have let
a mentally disabled person take
a life financial sum from her
retirement. she has constantly
asked people to help her and explain
to her. She had no clue how to do
any of this she just wanted to save
her home. she is permanently disabled,
and she is very low income. I
need to understand what part of that
don't you get? You should have
never given such a sum to
a disabled person. This will mess
up her Social Security, her food stamps
and her taxes. If this appeal of the
appeal is denied, we will take it to

Lia C. Javier

REDACTED

KFHP000367

DB 1807

MEETING DATE:

WEDNESDAY
DECEMBER 5, 2018

KFHP000368

THIS PAGE IS INTENTIONALLY BLANK

KFHP000369

DB 1807 003



### A PROFESSIONAL CORPORATION
### ERISA AND EMPLOYEE BENEFITS ATTORNEYS

## M E M O R A N D U M

| | | | |
|---|---|---|---|
| **TO:** | Leighton N. Hasegawa | **CC:** | Shirley H. Liu |
| | Allyson L. Wolfe | | |
| | Tyrone Redden | | |
| | Jack Weberski | | |
| **FROM:** | Benjamin F. Spater | | |
| **DATE:** | November 6, 2018 | | |
| **RE:** | Lia Javier | | |
| | DB 1807 | | |

**Statement of the Appeal:**

Lia Javier was a participant in Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan (the "Plan"). Lia has appealed the Plan's determination that she is not eligible revoke her lump sum pension election made under the limited one-time pension election opportunity program (the "Special Distribution Program").

**Background:**

On August 8, 2017, Lia was sent a postcard announcing a limited one-time pension election opportunity to certain former employees who have a vested pension benefit. This postcard informed her to be on the lookout for her personalized election kit, and that she would need to act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, she was sent a Special Distribution Program election kit. The kit contained instructions and forms to complete in order to receive a single lump sum payment or a monthly annuity. The election kit also provided that she must mail your completed forms or complete her election online and provide any required documentation no later than October 5, 2017.

On September 11, 2017, she was sent another postcard reminding her about the October 5, 2017 deadline. She was also sent a third postcard on September 25, 2017, again reminding her of the deadline.

All of the above correspondence sent to Lia regarding the Special Distribution Program was sent to the last address she had on file with the Plan.

178335

KFHP000370

DB 1807 004

On October 4, 2017, Lia called the Pension Election Help Desk (the "PEHD") and stated that she received a Special Distribution Program postcard reminding her about the October 5, 2017 deadline but that she had not received any other information. The PEHD representative stated that the postcard was in reference to a lump sum offer.  Lia asked to speak with another representative who could provide her with more information, and then called the PEHD back to speak with a different representative.  She asked the second representative for an extended deadline because people had been stealing her mail and she had to have her mail forwarded.  The representative stated that no extension could be provided but that she could complete her election kit online. During this call, Lia stated that this was a hard decision for her because she's disabled. Lia also asked if there was a way to cancel an election to participate in the Special Distribution Program, and the representative explained that the deadline to cancel an election would be October 31st. [Exhibit 1]. Later than day, Lia called the PEHD again to speak with a third representative, who answered her questions about how to complete the election kit online. [Exhibit 2].

That same day, Lia completed her online election kit and elected a lump sum payment.

On November 10, 2017, a check in the net amount of $29,263.94 was issued to Lia. Out of the gross amount payable of $37,517.88, $8,253.94 was withheld from Lia's lump sum payment for federal and state tax withholding.

On November 16, 2017, Lia called the PEHD to state that she believed taxes would not be withheld from her lump sum payment amount because of her disability, and that she was not informed of the option to rollover her benefits.  The PEHD representative stated that all of her options were detailed in both the printed election kit which was mailed to her and the online election kit.  She stated that because she was disabled, she should not have been expected to make an informed decision. [Exhibit 3].

On November 17, 2017, a PEHD representative provided Lia with a callback, and Lia stated that she was working with a tax advisor to resolve the issue. [Exhibit 4].

On January 11, 2018, Lia called the Kaiser Permanente Retirement Center (the "KPRC") and stated that she had approximately $10,000 withheld from her lump sum payment in taxes.  She stated that she only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make her decision. She also stated that she believed she would have had less taxes withheld because of her disability. [Exhibit 5].

On March 2, 2018, she called the KPRC and stated that the only reason she chose to participate in the Special Distribution Program was so that she would have the funds to save her home.  She also stated that she should not have been rushed to make such a decision and that the representatives should not have spoken with her because she is disabled. [Exhibit 6].

On March 7, 2018, Lia called the KPRC and stated that because she's mentally disabled, someone should have explained her options to her and informed her that her benefits from the Social Security Administration would be impacted. The KPRC representative stated that they would send her a claim initiation form ("CIF"). [Exhibit 7].

178335

KFHP000371

DB 1807 005

**Claim**:

On March 26, 2018, the Plan received Lia's CIF, in which she stated that the PEHD representative she spoke with on October 4, 2017 did not help to answer her questions and that the second representative she spoke with suggested that she make an election which could be canceled upon request. [Exhibit 8]. She also stated that although the representatives told her to speak with a tax advisor and the Social Security Administration, no one told her to call the KPRC until after she received her check, which she did not cash. She also submitted a Notice of Adjudicator Decision – Fully Favorable (the "Social Security Determination") from the Social Security Administration dated August 27, 2013, which provides that Lia has alleged disability on the basis of depression, anxiety, and schizophrenia. The Social Security Determination finds that Lia has a depressive disorder that significantly limits her ability to perform basic work activities, and that she has marked difficulties in maintain social function. The Social Security Determination also states that medical improvement is expected with appropriate treatment, and that a continuing disability review was recommended in 36 months.

On June 21, 2018, the Plan sent Lia a notice of denial on the grounds that Lia did not revoke her election within the period of time prescribed by the Plan, and that her election was now irrevocable. [Exhibit 9]. The notice of denial also explained that Lia completed an election kit on which she signed that she understood that she should consult her professional tax advisor about receiving the lump sum benefit payment, and that if payment was made directly to her, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

**Appeal**:

On October 2, 2018, an appeal letter was received from Chelseay Javier (Lia's daughter), on Lia's behalf. [Exhibit 10].  In the letter, Chelseay states that her mother is mentally disabled and that she should never have been allowed to make a lump sum election. She also states that the lump sum will affect Lia's Social Security benefits, food stamps, and taxes.

**Plan Provisions**:

The governing provisions are included as Appendix A.

**Analysis**:

The Plan provides that a participant has a limited time during which he or she can revoke an election to receive benefits and the form of payment of those benefits.  The Plan provides that a participant may a Form of Payment during the Election Period, which is the 90-day period ending on the participant's elected Benefit Commencement Date.  The Plan also provides that a participant may revoke such an election at any time during the Election Period, but that an election is irrevocable when the Election Period expires.  (See Appendix A, Section 8.1(c)).

Lia's elected Benefit Commencement Date was November 1, 2017.  Therefore, her Election Period expired on November 1, 2017, and her election of a lump sum is now irrevocable under the Plan.

- 3 -

KFHP000372

DB 1807 006

Moreover, there is nothing in this case that suggests that Lia did not have the mental capacity to make a retirement plan election. There is no judicial determination that Lia is incapacitated, of unsound mind, or unable to manage her own property or finances. The Social Security Determination submitted by Lia only shows that the Social Security Administration found that Lia is unable to work due to her depressive condition and does not demonstrate that Lia was unable to understand the nature and consequences of the act of making an election. On the contrary, Lia's conversations with the PEHD demonstrate that Lia understood that she was making an pension election that would be irrevocable after October 31, 2018.

### _Recommendation:_

Because Lia elected to receive a lump sum payment and did not revoke her election before her Benefit Commencement Date of November 1, 2017, Lia's election of a lump sum under the Special Distribution Program is irrevocable under the terms of the Plan. Accordingly, we recommend denying her appeal.

178335

KFHP000373

DB 1807 007

**Case Chronology, Appendices and Exhibits
to Lia Javier Appeal Memo**

**Case Chronology**

8/18/17: Special Distribution Program election kit sent to Lia
10/4/17: Lia calls the PEHD about making an Special Distribution Program Election, and then completes her online election kit
10/5/17: Deadline to make Special Distribution Program election
11/10/17: Lump sum distribution check sent to Lia
11/16/17: Lia calls the PEHD and asks to revoke her election
3/26/18: Lia's CIF is received
6/21/18: Notice of denial is sent to Lia
10/2/18: Lia's appeal letter is received

| Appendix | Description | Bates Number |
|---|---|---|
| A | Applicable Plan Provisions | 008 |

| Exhibit # | Description | Bates Number |
|---|---|---|
| 1. | Transcript of Lia's call with the PEHD – dated 10/4/17 | 010 |
| 2. | Transcript of Lia's second call with the PEHD – dated 10/4/17 | 026 |
| 3. | Transcript of Lia's call with the PEHD – dated 11/16/17 | 036 |
| 4. | Transcript of Lia's call with the PEHD – dated 11/17/17 | 068 |
| 5. | Transcript of Lia's call with the KPRC – dated 1/11/18 | 071 |
| 6. | Transcript of Lia's call with the KPRC – dated 3/2/18 | 079 |
| 7. | Transcript of Lia's call with the KPRC – dated 3/7/18 | 098 |
| 8. | Completed Claim Initiation Form – received 3/26/18 | 125 |
| 9. | Notice of Denial – dated 6/21/18 | 140 |
| 10. | Appeal Letter – received 10/2/18 | 148 |

178335

KFHP000374

DB 1807 008

## Appendix A

## APPLICABLE PLAN PROVISIONS

2.8    Benefit Commencement Date.  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

2.30    Election Period.  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

8.1    Payment Election.

****

(c)    Participant Election.  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

****

9.7    Miscellaneous

****

(d)    Notices and Missing Persons.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.

****

## APPENDIX 9
## 2017 SPECIAL DISTRIBUTION ELECTION

1.1    2017 Special Distribution Election.  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

****

A sequence of four asterisks (* * * *) means a portion of the Plan text has been omitted.

- 6 -

178335

KFHP000375

DB 1807 009

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

****

A sequence of four asterisks (* * * *) means a portion of the Plan text has been omitted.

- 7 -

KFHP000376

DB 1807 010

# Exhibit 1

# Exhibit 1

# Exhibit 1

KFHP000377

DB 1807 011

**BLS_Kaiser_Lia Javier_10.04_Call 2**

[Start of recorded material]

KPRP Rep:        Good morning, my name is KPRP Rep. Can I have your first and last name, please?

Lia Javier:      Um, yes, Lia Javier.

KPRP Rep:        Your date of birth and a good phone number?

Lia Javier:      Um,              . And a phone number,

KPRP Rep:        Thank you. How can I help you?

Lia Javier:      Yeah, I just called about five minutes ago. I spoke with someone named Chris which I want to see about making a complaint against him. Um, I'm calling about the, uh, thing that I got in the mail that's saying, I guess, the thing ends tomorrow. Some type of thing for Kaiser--

KPRP Rep:        Correct.

Lia Javier:      --program? And it says, um, I want to know what this all is telling me, but it says, "Act by tomorrow." And, um--

[Crosstalk]

DB 1807 012

BLS_Kaiser_Lia Javier_10.04_Call 2
Page 2

KPRP Rep:        So -- go ahead.

Lia Javier:      Yeah, I, uh, uh, it said something like it had been received in mid-
                 August.

KPRP Rep:        Correct. We originally sent out all of the notifications, um, via mail.
                 We sent out an announcement letter as well as the retirement kit,
                 um, along with reminder post cards which it sounds like you
                 received one of them. Do you have -- let me see something. Just a
                 moment.

Lia Javier:      Mm-hmm.

KPRP Rep:        Do you have access to the Internet?

Lia Javier:      Um, y-yes, but I have--

[Crosstalk]

KPRP Rep:        Well, you can actually--

Lia Javier:      --to go buy it on my phone so I don't know if my phone is going to
                 let it go.

[Crosstalk]

KPRP Rep:        [Unintelligible] the information.

KFHP000379

DB 1807 013

BLS_Kaiser_Lia Javier_10.04_Call 2
Page 3

| | |
|---|---|
| Lia Javier: | Well, what is -- is there, uh, an email? |
| KPRP Rep: | No, so let me give you the information on where you would go to access this information. Um-- |
| Lia Javier: | Mm-hmm. |
| KPRP Rep: | --that way you can complete your election online. So you have the option to log in, print out the retirement kit, or complete it out. Complete the forms online. |
| Lia Javier: | Okay, I see. It says, "Save time. Make your election online." |
| KPRP Rep: | Correct. So it's www.cepoint.com/kp. Does it tell you that? |
| Lia Javier: | Yes. |
| KPRP Rep: | Okay. |
| Lia Javier: | And it say -- yeah. It, uh, yeah, I had to get my mail from my mailbox because people's been stealing it for the last two months so, um, I just recently got-got my mail. So they been taking my packet. I hope no one called before this. |
| KPRP Rep: | No, not [unintelligible]-- |
| [Crosstalk] | |

KFHP000380

DB 1807 014

BLS_Kaiser_Lia Javier_10.04_Call 2
Page 4

| | |
|---|---|
| Lia Javier: | Did anyone? No, okay, good. |
| KPRP Rep: | This is the first time [unintelligible] call-- |
| [Crosstalk] | |
| Lia Javier: | Um-- |
| KPRP Rep: | Which was [unintelligible]-- |
| [Crosstalk] | |
| Lia Javier: | Yeah. Okay, yeah because I have my mail forwarded now to the mailbox, uh, for the past week so I didn't know people were stealing it, and my neighbor told me sh -- uh, she saw people in my mailbox. That would have been nice to know. So, um, what I'm going to do -- so I don't know how to do this. I mean, I only have a day to figure this out of what I want to do? |
| KPRP Rep: | You do. |
| Lia Javier: | Yikes. |
| KPRP Rep: | Unfortunately. So I can go-- |
| [Crosstalk] | |

KFHP000381

DB 1807 015

BLS_Kaiser_Lia Javier_10.04_Call 2
Page 5

Lia Javier:        And it's--

KPRP Rep:         --over your log in criteria because it's going to ask you for a
                  password.

Lia Javier:        Okay.

KPRP Rep:         So your user name is going to be          .

Lia Javier:        Uh-huh.

KPRP Rep:         And then it's          .

Lia Javier:        Uh-huh.

KPRP Rep:         And then your password is capital J.

Lia Javier:        Mm-hmm.

KPRP Rep:         Your social security number with an exclamation point.

Lia Javier:        Okay.

KPRP Rep:         And then it will ask you -- once you do that it will ask you to
                  confirm your old password, and they will ask you to create a new
                  one, and then some security questions. And then everything is
                  pretty basic from there.

KFHP000382

DB 1807 016

BLS_Kaiser_Lia Javier_10.04_Call 2
Page 6

Lia Javier:       Okay, and there was no supervisors because this is only giving me a
                  day to figure this stuff out. And if it's saying, uh, my election, I
                  mean . . .

KPRP Rep:         So there's time.

Lia Javier:       What is this anyway?

KPRP Rep:         I mean, at this time there's no open leeway as to receiving, you
                  know, the-they're not providing extensions. Um--

Lia Javier:       Okay.

KPRP Rep:         I mean, I wish there was an option to do that, but it's pretty --
                  they're pretty strict on the deadline only because it's a limited time
                  offering. So they need to review the paperwork. Be able to review
                  it. Make sure everything is received in good order.

                  For whatever reason if something's missing they do -- they make
                  sure that they give time to provide that. And then we have to start
                  processing the payments and then [unintelligible] the process as
                  well. And the payments will be processed, um, by the end of -- will
                  be starting to be issued, um, in November. So it's kind of crunch
                  time right now.

Lia Javier:       Okay. Is -- so there's no supervisors available?

KFHP000383

DB 1807 017

KPRP Rep:        They want to call you back in one business day, but I'm letting you know they're--

Lia Javier:      Right.

KPRP Rep:        --not going to give you an extension. They kind of set that in the contract.

[Crosstalk]

Lia Javier:      Hey, the only thing that's hard for me -- I know it's saying pension so I don't want to make decisions, but I should have had the right [unintelligible] to this to see if I needed it and to see what it entails. Like it's not telling me anything on here.

KPRP Rep:        Well, once you log on to--

[Crosstalk]

Lia Javier:      So I don't even know what's going on.

KPRP Rep:        Once you log on to the website you'll be able to see that information. Um, so everything will be provided to you on there. It will give your -- what they're offering, the lump sum amount as well as your options. You can take it out as a lump sum payment. You can roll it over in to an IRA. You can leave it where it's at or you can start to receive monthly payments. So, I mean, the best

KFHP000384

DB 1807 018

thing to do is probably log on there now, start reviewing it, um, if need be, and the deadline is tomorrow.

Lia Javier:       Okay, I can't make -- I can't believe they don't make exceptions.

KPRP Rep:       I'm sorry.

Lia Javier:       Uh, this is hard--

[Crosstalk]

KPRP Rep:       [Unintelligible].

Lia Javier:       --for me because I'm disabled, and there's no way I'm going to be able to make a decision within a day or a few hours. So, um, yeah, I'm disabled.

[Crosstalk]

KPRP Rep:       We-we originally mailed out--

Lia Javier:       So there's no way.

KPRP Rep:       We originally mailed out the kits August 18th. Um, we sent out two reminder post cards. One on the eighth of September. One on the 22nd. Um, and then [unintelligible]--

KFHP000385

DB 1807 019

BLS_Kaiser_Lia Javier_10.04_Call 2
Page 9

[Crosstalk]

Lia Javier:        Okay, that's great and everything. If I were to receive that then I
                   would have more time to see what this is about. That would have
                   been great to receive it. That's why I asked you was anybody -- did
                   anybody call in for me because I never received this information.

                   I just got this post card from the post person when I had to go to get
                   my mail. Get it picked up so that's not helping me. So I worked for
                   Kaiser for years, and I -- you see, if I'm disabled there has to be
                   some type of something. Uh, I can't -- I can't make a decision in-in a
                   few hours. That-that's not going to happen.

KPRP Rep:          I mean, you--

Lia Javier:        Um--

KPRP Rep:          --have until tomorrow. The end of tomorrow to [unintelligible]--

[Crosstalk]

Lia Javier:        That's still a few hours.

[Crosstalk]

KPRP Rep:          [Unintelligible].

KFHP000386

DB 1807 020

Lia Javier:  Is there a supervisor available? There should be. You guys still should have supervisors available there.

KPRP Rep:  We do have supervisors--

Lia Javier:  I mean, it's a--

KPRP Rep:  --but it will allow -- we ask that you allow--

Lia Javier:  Yeah.

KPRP Rep:  --one business day to receive a return call.

Lia Javier:  Okay, that's great, but I'm asking you for a supervisor so can you just transfer me to one?

KPRP Rep:  I cannot. One will call you back in one business day.

Lia Javier:  Okay, and what is your name?

KPRP Rep:  My name is KPRP Rep.

Lia Javier:  Okay.

KPRP Rep:  [Unintelligible].

[Crosstalk]

DB 1807 021

BLS_Kaiser_Lia Javier_10.04_Call 2
Page 11

| | |
|---|---|
| Lia Javier: | And then who is from, uh-- |
| KPRP Rep: | Go ahead. |
| Lia Javier: | Is this from Kaiser original? Like from Kaiser because what I'm going to have to do is call Kaiser. I mean, I worked for Kaiser. I'm going to see if they're giving us an early option, and I just get it. There has to be something. I can't make a decision, like you said, within a day. Especially, in hours, but I can make a decision within days. It's 24 hours. So, um-- |
| KPRP Rep: | Yes, this is Kaiser. |
| [Crosstalk] | |
| Lia Javier: | [Unintelligible]. |
| KPRP Rep: | So Kaiser is giving you this opportunity to take this benefit, um, at your current age. If it's missed then you won't be able to take until age 65. |
| Lia Javier: | Hmm. |
| KPRP Rep: | I mean, I wish there was something we could do and offer these extensions, but like I said, there's, uh, a process to receiving all this information. That's why we start to send out this information prior. |

KFHP000388

DB 1807 022

BLS_Kaiser_Lia Javier_10.04_Call 2
Page 12

Giving you, you know, a month and a half to kind of figure out what you would like to do.

I know you were having mailing issues, um, but, I mean, that's out of our control. We send the kits then we send the reminder post cards. And, I mean, I know you're now just receiving it, but at the time there's nothing on our end. They're not going to provide any extensions only because we have to process this information.

If we allow you another week to get this information processed, uh, i-it-it-it goes in to effect with all the paychecks. So, I mean, you're not the only one that, you know, is in the same boat.

Lia Javier:         Yeah.

KPRP Rep:       And they are not even being offered this opportunity to have it extended by a day or two.

Lia Javier:         Okay, so what--

[Crosstalk]

KPRP Rep:       I would just--

Lia Javier:         --[unintelligible]--

KFHP000389

DB 1807 023

KPRP Rep:        --log online. Log online. Review your options. Kind of see if that's something you -- that you would be willing to take at this point. Um, if so, you can complete the forms online, and it will be processed.

Lia Javier:        So, but there's no way that you can cancel it. Say, if you do do it there's no way you can cancel the option?

KPRP Rep:        So the deadline to request that you do not want this -- so say you make a lump sum. You want to take it as a lump sum payment. And then, let's say, mid-October you're like, "Uh, I don't want to take it." Then you would -- the deadline to do so is this, um, October 31st. So that's the last day that you can request you do not want to take this offer.

Lia Javier:        Oh, okay. So I could go online now and then I could -- okay. That sounds better. I can go online and just accept it. Their one lump sum, but then by October 31st I could just, uh, tell them, "No, I changed my mind," and it will go back to normal, right?

KPRP Rep:        Correct.

Lia Javier:        Okay. Then what's what I'll probably have to do because I don't know this stuff at all. Like I don't know. I don't want to, you know?

KPRP Rep:        I understand. It's a lot of information to process. It's just -- it's just a limited time opportunity that Kaiser is allowing this window. So

KFHP000390

DB 1807 024

they're strict on, you know, the opening date to the closing date. And it has to be done within a certain timeframe because, I mean, anything outside of that, you know, it does start to cost the company since they do hire a third party to do so. So--

Lia Javier:     Okay.

KPRP Rep:     That's the only reason why--

Lia Javier:     Okay.

KPRP Rep:     --it's a limited time, okay?

Lia Javier:     That's perfect. So I'd rather do that and then I'll have a chance to cancel that. At least I know, you know, to really read up on it and ask people about what should I do? Like I want that option so okay, that helps me better. That-that-that's great. I can do that and then-then if not, if I change my mind I'll cancel it out and everything will go back to normal. Okay.

KPRP Rep:     Okay.

Lia Javier:     Perfect.

KPRP Rep:     Sounds great.

KFHP000391

DB 1807 025

Lia Javier:        Okay, and-and you gave me so J, okay. Did you say it's a J like J? Capital J as far as --th-then my social security number then an exclamation?

KPRP Rep:        Yes, that's going to be your password. And then your user name is

Lia Javier:        Okay. Is there any upper case or lower case? So I'll just, uh--

KPRP Rep:        Not for the user name. It's not case sensitive.

Lia Javier:        But for the other one it is? It's the capital J, right?

KPRP Rep:        That's correct, yeah.

Lia Javier:        Okay, so let me go on here now and fill this out. Okay, thank you so much. Thank you, KPRP Rep. Thank you.

[Crosstalk]

KPRP Rep:        [Unintelligible]. Of course. Enjoy your day.

Lia Javier:        You, too. Bye-bye.

[End of recorded material]

DB 1807 026

# Exhibit 2

# Exhibit 2

# Exhibit 2

KFHP000393

DB 1807 027

### BLS_Kaiser_Lia Javier_10.04_Call 3

[Start of recorded material]

| | |
|---|---|
| KPRP Rep: | Thank you for calling. My name is KPRP Rep. Can I please get your name and date of birth? |
| Lia Javier: | Oh, yes. Lia Javier. Date of birth                    . |
| KPRP Rep: | Thank you, and a good phone number in case we need to reach you in the future? |
| Lia Javier: |                          . |
| KPRP Rep: | Thank you, and how can I help you today? |
| Lia Javier: | Um, I actually, had a question. I just called, and I spoke with someone named Christina who was very nice. Um, she was giving me my information to log in because I just got the little post card and I don't know what's going on. |
| | So, uh, uh, she gave me the information to log in. And I, uh, insert, uh, the password, and I don't have -- it says, "Old password," and then it says, "New password." And it has some security questions. |
| KPRP Rep: | Old password would be the-- |

KFHP000394

DB 1807 028

BLS_Kaiser_Lia Javier_10.04_Call 3
Page 2

[Crosstalk]

KPRP Rep:      Yeah, old password would be the password that you just used to log in. It's asking you to create a new password so you would go ahead and-and make one for yourself.

Lia Javier:      So would tell -- what is it? So the password would be the J and my social security?

KPRP Rep:      Yeah, the password is a capital letter. You have -- the old password is the capital letter of your name followed by your nine-digit social security followed by an exclamation point.

Lia Javier:      Okay, and then when I put it in then I just make one up? And then-then it will go through?

KPRP Rep:      Yes, just make sure you're the password policy. I do believe there should be a section that, um, that-that you can click in order to see what that is. [Unintelligible]--

[Crosstalk]

Lia Javier:      Okay, with the se -- with the security questions?

KPRP Rep:      Yes, but, I mean, as long as your password fulfills the password requirements. Um, so I can, uh, I can tell you what those are or you can hit the password policy button, uh, but--

KFHP000395

DB 1807 029

BLS_Kaiser_Lia Javier_10.04_Call 3
Page 3

Lia Javier:        Yes.

KPRP Rep:          --to make sure it works. [Unintelligible]--

[Crosstalk]

Lia Javier:        Okay, let me -- okay, and what I'm going to do if you don't mind
                   I'm going to try to do this now and then see what it brings up.

KPRP Rep:          Sure.

Lia Javier:        If that's okay.

KPRP Rep:          Yeah.

Lia Javier:        Okay, thank you.

KPRP Rep:          Mm-hmm.

Lia Javier:        Um, I'm a little nervous online. [Laughs] Uh, like this is so weird. I
                   didn't -- I'm happy Kaiser came up with this, but I don't know what
                   I'm doing so I'm going to make sure. So what she was telling me
                   was that I'm able to go ahead.

                   She said I don't have the time to-to decide so she said I was able to
                   go ahead and, um, uh, opt for it. Whatever it states to opt for what I

KFHP000396

DB 1807 030

BLS_Kaiser_Lia Javier_10.04_Call 3
Page 4

                want and then I can always change it. She said -- she said I had up
                to Oct-October 31st.

KPRP Rep:        Yes, so in order to revoke the election you would have until then.
                You'll just want to give us a call if you [unintelligible]--

[Crosstalk]

Lia Javier:       Yeah, that's what I was saying. Okay, so let's see if this works. I
                think I'll [unintelligible]. Okay, with the -- with the new password
                does it need to be caps, or anything, or is this okay if I just put a
                password?

KPRP Rep:        So you just need to follow the password policy. I can advise what
                that is if you don't see it listed there.

Lia Javier:       Oh, I'm sorry. Go ahead. Tell me. I'm just putting in this -- okay,
                yeah. Tell me what the password policy is.

KPRP Rep:        No problem at all. Just one moment while I pull that up. So it would
                have to be at least eight characters in length, and it would need to at
                least -- it would need to contain at least one character from three of
                the four categories.

                So the different categories are an upper case letter, a lower case
                letter, a number, and a symbol. A symbol being like an exclamation

KFHP000397

DB 1807 031

BLS_Kaiser_Lia Javier_10.04_Call 3
Page 5

point or a dollar sign. Uh, so it would need to have at l-least three of those four things and be at least eight characters long.

Lia Javier:     Okay. I think I can do that. Let's see if it works. Um, bear with me. I'm sorry.

KPRP Rep:       No problem. Take your time.

Lia Javier:     Thank you. Let me see if it worked. Okay, I think it didn't work because I don't think I put the old password in correctly. Okay. Okay, wait. Okay, that's right. It said eight. Okay, I'm sitting up here putting in the -- okay, I'm going to try this again. Hopefully, this works.

                Okay, I followed the password -- oh, confirm password. I didn't do that [unintelligible]. Okay, and-and with the security questions can I put any one that I want and answer them or is there specific ones?

KPRP Rep:       Um, you should be able to use what-whatever it allows you to. I don't have too much information on the security questions, but they are case sensitive.

Lia Javier:     Oh.

KPRP Rep:       So just make sure however you put it you're aware that they're case sensitive. So if you ever have to answer them again you would need

KFHP000398

DB 1807 032

to be able to follow the same case sensitive, um, answer that you put in.

Lia Javier:     Okay, with the password I'm doing it, and it's still not working. Let's see. One upper case. Okay, one lower case. Yeah, one number. One symbol, and it says, uh . . .

KPRP Rep:     And it has to be at least eight characters long as well. So try making it nine--

[Crosstalk]

Lia Javier:     Yeah, so when--

KPRP Rep:     --even.

Lia Javier:     --it -- when it says, "Password cannot match your previous 24 passwords." That doesn't make sense. Okay, I'm going to try this again. Okay, I'll put -- I'll try to put nine this time so [unintelligible].

[Extended period of silence]

Lia Javier:     Oh. Okay, it says, "Confirm password." Okay.

KPRP Rep:     Yeah, so on the confirm password you would want to put the same new password that you put in.

KFHP000399

DB 1807 033

Lia Javier:      Yeah, okay. And then it says -- okay, what? Okay. I don't know if it's going to -- let's see if it lets me do again. I don't -- nope, it's not letting me do it. Yeah, it's not letting me. It's saying, "General error," at the bottom.

KPRP Rep:        That would mean that one of those things were incorrect whether that was the old password or that was the new password not following the password requirements. That would something was incorrect so you would want to try that again.

Lia Javier:      Do you think, uh, do I need to get out again and maybe that's what it is? Like try it all over again?

KPRP Rep:        You-you can try that, but . . .

Lia Javier:      Let's see. Uh, so is there? Tell me something. Oh, I think -- okay. I'm sorry, I think I know what it is. I have issues. I'm so sorry.

KPRP Rep:        That's okay.

Lia Javier:      [Laughs] I tell you, it's late. It's crazy. I'm-I'm just nervous because this is -- this -- I have a day to do this stuff so I'm thinking like, "What is going on?" So I think I'm -- my nerves were getting to me. Okay. And then once I get in -- so i-is it a quickly done, or is it a long thing, or?

KFHP000400

DB 1807 034

KPRP Rep:     I mean, it does take a few -- it does take a little bit of time to review your information and decide what you want to do. Once you know what you want to do then it's -- it doesn't take -- it wouldn't take too long to go through and actually, follow that process. But it is something I would make to think about carefully.

Lia Javier:     Okay, and-and then tell me something. Is -- so is there any dashes in the social security or no?

KPRP Rep:     No dashes. Just the number.

Lia Javier:     Okay. [Unintelligible] that why it's not going through. Okay, [unintelligible] me because it's like still not letting me go through, and I just figured out what the problem is, is what I thought. [Unintelligible]. No, it's not working. I don't know what's going on. Uh, I'm reading the -- I read the password policy, and you told me. It makes sense.

O-one upper case. One lower case. One number. At least eight characters. And last, it con-contain at least one-one symbol. Okay. Um, it's probably -- maybe I just -- do you think I should try and pick another security question or something?

KPRP Rep:     I mean, you can -- I'm not sure what you, uh, a d-different security question? That shouldn't affect it which particular security question you answer.

KFHP000401

DB 1807 035

BLS_Kaiser_Lia Javier_10.04_Call 3
Page 9

| | |
|---|---|
| Lia Javier: | Well, that's -- [unintelligible]. This is crazy unless my [laughs] okay. I don't want to waste your time. I'm going to try to figure this out and then call back, okay? I don't want to-- |
| KPRP Rep: | Okay, no problem. |
| Lia Javier: | Thank you so much. |
| KPRP Rep: | Absolutely. Have a great rest of your day. |
| Lia Javier: | You, too. Bye-bye. |
| KPRP Rep: | Bye-bye. |

[End of recorded material]

KFHP000402

DB 1807 036

# Exhibit 3

# Exhibit 3

# Exhibit 3

KFHP000403

DB 1807 037

**BLS_Kaiser_Lia Javier_11.16**

[Start of recorded material]

| | |
|---|---|
| KPRP Rep: | Thank you for calling. My name is KPRP Rep. Can I please get your name and date of birth? |
| Lia Javier: | Um, yes, Lia Javier. |
| KPRP Rep: | Thank you, and a -- and a good phone number in case we need to reach you in the future. |
| Lia Javier: | Uh, sure. |
| KPRP Rep: | Thank you, and how can I help you today? |
| Lia Javier: | I had a question. I thought when I read that it's stated like if you're disabled I don't get it. Like they're supposed to withhold your federal taxes and stuff if you're disabled? |
| KPRP Rep: | We just are required to withhold taxes regardless. So any kind of cash payment we have to withhold 20 percent for federal and then if your state has any requirements we withhold what your state requires. |
| Lia Javier: | Okay, so because I read something about people who are disabled, and there was a different tax thing. I thought they said that they would waive the tax, um-- |

KFHP000404

DB 1807 038

| | |
|---|---|
| KPRP Rep: | No, I'm not aware of anything like that being in the election kit. I can take a look. |
| Lia Javier: | You could, yeah. I was reading something. I don't know maybe if it's -- it was saying that it wouldn't take out the 20 percent if you were disabled. Uh, people with, uh, disability, or like a-an SSI, or something, or S -- social security. Uh, because I'm thinking, "How do they take out taxes when I, you know, um, this is, you know, I don't work. So they were saying that they didn't -- they weren't going to take out that ta -- that-that money. |
| KPRP Rep: | Well, the only thing that-- |
| Lia Javier: | And now-- |
| KPRP Rep: | --here that I can see is that if you're un -- uh, so there's a potential 10 percent is a -- r-real quick. I first want to verify. Were you taking a cash payment? |
| Lia Javier: | Yeah, I put the lump sum. |
| KPRP Rep: | Okay. |
| Lia Javier: | Yeah. |
| KPRP Rep: | Okay, yeah, so the only thing I see here in regards to that would be if you're under the age of 59.5, uh, in-in most circumstances you |

KFHP000405

DB 1807 039

would have to pay an additional 10 percent, uh, tax penalty when you file for taxes. And it's saying if there are payments made due to disability that would, um, not apply, but it's the only thing that I see here other than confirming that you're not on long term disability from Kaiser specifically.

Those are the only two references to that, that I see here. Um, so we-we are required to withhold that amount for taxes. You can see with a tax professional if, when you file for taxes if maybe it's something you're eligible to-to get back in the form of a tax return. But you would need to reach out to a tax professional to verify if that's something that-that applies for you.

Lia Javier: Oh, okay, because that's -- yeah. That's a lot of money they took out. If that's the case, I'm like -- I needed it to-to save my home, but I'm thinking, "Man, I would have never took this out. That's too much money." That's like 10 grand almost to take out for -- no, that's crazy.

KPRP Rep: I understand.

Lia Javier: So, uh--

KPRP Rep: You-you can reach out to a tax professional and verify if there's anything you can do being under that status and-and go from there. We just aren't tax professionals here so I can't verify how the tax laws would work in the syst -- in your kind of situation.

KFHP000406

DB 1807 040

BLS_Kaiser_Lia Javier_11.16
Page 4

Lia Javier:        Okay. Okay, let me -- yeah. I'll-I'll do that. I'll ask questions. Yeah,
                   I-I wonder -- yeah. I'm-I'm not, uh, I don't know. I'm not happy with
                   this at all. I'm like, "This is something I'm not cool with at all." I-I
                   don't know what to do. Is there someone that can call me back
                   because now I feel like I've made a mistake, but I know we only
                   have a certain amount of time. But I'm not cool with this at all.

                   Like I didn't want to do this, and I'm trying to keep my home, and
                   that's the only reason I took this money. And I'm like, "This is not
                   something that I want to -- wanted to do at all," because this is
                   nothing. This is like nothing. No money. This is zero. This is like
                   really -- yeah. Um, is there like a-a--

[Crosstalk]

KPRP Rep:          [Unintelligible].

Lia Javier:        Uh, I just -- is there someone, um, who I would be able to speak to
                   regarding this? Because this wasn't stated how much -- I mean, I'm
                   looking and everything that I've read that you got -- and I don't see
                   anything at all. This is [unintelligible]. It's like this is -- this is --
                   you can't -- you can't live off this at all. They-they-they, uh, I-I am
                   really irritated right now. I'm like, "Wow."

KPRP Rep:          If you're having a problem I-I can try and help you. There isn't
                   really anyone who can help you within regard to what tax
                   implications you may due or what you may be able to get in tax

KFHP000407

DB 1807 041

purposes, but in regard to our offer I can help answer any questions now if have them. Um, did-did you have any-any questions. It does state that if you do not do a direct rollover the plan is required to withhold 20 percent of the payment for income ta -- for federal income taxes.

Lia Javier:     Yeah, well, so what's a direct rollover?

KPRP Rep:     A direct rollover--

[Crosstalk]

Lia Javier:     Like what I [unintelligible]?

[Crosstalk]

KPRP Rep:     [Unintelligible].

Lia Javier:     Yeah, well, she was explaining to me, and she told me to write this stuff down, but I never got all the information on it. And then you -- then you guys sent me out a ta -- a thing. I see the book, and it was after I did it because I had -- it was like the last day that I was able to do it. I think I had two days, and I had to make a decision.

And you guys said, "Well, we-we can go ahead and send you out the thing, but you need to tell us yes or no today. So the lady said, "Well, if you do do it," she said, "Well, you can always change your

KFHP000408

DB 1807 042

mind." And, you know, see it, but the other thing didn't go through. So if you don't roll it over like roll it over to what?

KPRP Rep:    So, uh, uh, it's worth noting that you had until October 31st to revoke your election. You wouldn't be able to revoke it at this point. If you were -- if we were still in the offer window, and you decided to do a rollover you could have rolled it over in to another retirement account like a traditional IRA or 401(k), as example. A- as examples.

Those are both tax-deferred accounts, um, so it would still remain tax-deferred in that account until you were to take it out of one of those accounts. It was an option when you [unintelligible]--

[Crosstalk]

Lia Javier:    Oh, and I would -- I would have been able to do that?

KPRP Rep:    You were able to do that, but you had elected the cash payment.

Lia Javier:    Yeah, so why -- oh, my goodness. You know what? This is what -- this is the hard thing for me to get this stuff, and I'm asking her so why -- it should have been told. "You know what? You can go ahead and do it this way," and then it would -- it would not -- I read it because I'm telling them I have social security.

KFHP000409

DB 1807 043

It's going to mess with my Medicaid and they're like, "Well, you need to talk to those people." And I'm like, "I don't know what I'm supposed to do because I never got the information so I could talk to anyone." They were like, "Well, you need to tell us yes or no."

But in that offer they were like, "Well, if you don't want it you can go ahead and deny it wh -- by October 31st." But like you're telling me when I'm asking her all this stuff and then I talked to another guy and asked him everything why wasn't it told that you can go ahead and go -- put it in to a -- I'd rather have done that so it wouldn't bother my Medicaid.

And that's what I kept asking them, and they're like, "Well, you have to talk to someone." How can I talk with someone if I don't have the information on it?

KPRP Rep:      Well, we sent out--

Lia Javier:      So, oh--

KPRP Rep:      --the paperwork, and I'm sorry if the people you called and spoke to didn't answer your questions fully. Um, I-I do really apologize about that, but we did send you the packet of information which does show this here. Um, and when you elected the cash payment there were also, uh, did you do your election online?

KFHP000410

DB 1807 044

BLS_Kaiser_Lia Javier_11.16
Page 8

Lia Javier:    No, I had to do it on the phone. I had to do it on the phone because, uh, yeah, I think I did it on the phone because -- or no, online because I didn't get the ta -- I didn't get the-the paperwork. I didn't get anything on it. And so, that's why I was asking her. I said, "Wait a minute. I would like." I said, "I got a single card," and I got the card in the mail. And I was like, "Well, what's going on? Like what is this?"

And she was like, "Well, you only have a-a couple of days to make your decision." And I said, "Well, what is it concerning? Like I-I only have a card." And she was like, "Well, you could take the money out." And I'm thinking, "Okay, good. This is perfect because I need to save my house."

But I'm asking her questions like, "Well, I'm on-on social security." And I said, "And it's going to mess with my Medicaid, and I'm just worried about the Medicaid because if you take out a big lump sum they're going to say, "Where did you get this money?" And I'm telling her everything. I'm like, "I don't know what to do."

And she was like, "Well, what you can do is go ahead and get this information. I mean, do it now because you only have, uh, until tomorrow. Do it now and then you have until the 31st to, uh, uh, what do you call it? To change your mind."

KPRP Rep:    To revoke.

KFHP000411

DB 1807 045

Lia Javier:        But I'm saying I didn't have anything to tell me what to do. That I
                   could roll it in to, uh, a qualified retirement plan and do all this
                   stuff. Like no one told me this stuff so if I were to--

[Crosstalk]

KPRP Rep:          [Unintelligible].

Lia Javier:        I'm telling her, "Look, I'm on -- I'm on Medicaid. That takes partial
                   money, and I'm going to -- if I get a big lump sum they're going to
                   take that." And no one said, "Well, you know, you could roll it over
                   to--" But all that I heard was, "Well, we can't tell you what to do,"
                   but if I don't have a thing to tell me and -- then what am I supposed
                   to do?

                   That's why I'm irritated because if I would have known I could have
                   put it in to a rollover. That's what I would have done because I'm
                   telling them that I'm trying to save my home, and I just need a
                   certain amount. And then when I talked to Social Security they
                   were like, "Well, you could probably explain to them why." Um,
                   and then they told me about rolling it over in to, uh, another plan.

                   And I said, "Oh, okay," but if I would have known that I could do it
                   before they could tax it down where all my money would go to a
                   thing where it's not on me then I wouldn't have to go through that.
                   Then I wouldn't have a -- then I would be fine. So that's why I'm

KFHP000412

DB 1807 046

trying to speak to someone because I want someone to pull the calls that I've called, and I've asked these questions.

So that I'm telling them, "I don't want to have the money. I just need a certain amount to-to get back -- through with my -- to pay my house." And they were like, they didn't tell me that I could do this. To take it in to a roller, uh, a qualified plan where it's out of my hands, but if I needed it I can get it.

KPRP Rep:    I understand.

Lia Javier:    That--

KPRP Rep:    It-it's worth noting when you made your election online there were certain boxes for you to check. One of them that said, "Cash payment," and other ones that said, "Rollovers." Um, there was also a way to do a split distribution. It's something where, uh, when you went online there was also, a full -- there was also, a way for you to access the full election kit.

There was a section that said, "Election kit," and you could click it, and it would pull up the entire election kit with all the information as well. I'm sorry if we -- if the people you spoke to on the phone didn't give you as much information as you would -- as you wanted. We can't provide any advice over the phone. That may have had something to do with it. Um, but, um, the information was all provided for you.

KFHP000413

DB 1807 047

Lia Javier:      I didn't get this -- the booklet. That's what I'm saying. I didn't get
                 the stuff.

KPRP Rep:        Yes--

Lia Javier:      I didn't get

KPRP Rep:        --but it was online. We can't make an election on the phone which
                 means you made an election online, and it was accessible there.

Lia Javier:      Yeah, but it was, uh, how can I say this? It was the box that I'm
                 asking them, and it wasn't explained to me. If I'm telling her that,
                 "You need to explain it because I don't have the paperwork to take
                 it to anybody to ask." So what I'm telling her--

[Crosstalk]

KPRP Rep:        You could've printed out the paperwork.

Lia Javier:      --it's -- you said what?

KPRP Rep:        O-on the website. The paperwork was on the website, and you
                 would have had the ability to print it out and take it to someone if
                 you were trying to make an informed decision.

Lia Javier:      Y-yeah, well, what wa -- what was told to me from her is that you
                 can change your mind, and this is -- but if I would have known. She

KFHP000414

DB 1807 048

BLS_Kaiser_Lia Javier_11.16
Page 12

did-didn't explain that. The rollover plan because I'm telling her, "I don't want the money for myself because it's going to mess with my Medicaid." If someone was telling you that then explain the plan to me and say, "I can make sure you get -- go to the rollover plan."

You guys are there to know more than what we know so if I'm asking you guys, I'm telling you the situation. I didn't get the paperwork in the mail and they're like, "Well, you only have a certain amount, and you were rushed." You have no clue what you're doing.

So when I'm telling her, "Look, I don't want the money, but I want to try to save my house, but I don't want the money as cash because it's going to mess with my Medicaid. What can I do?" All I was told from her, "Well, you need to go ahead and do the plan. And then, uh, sign what you need to sign. You need to hurry up and do it because you only have a certain amount of time."

And I couldn't even get in for a long time. I have to keep calling you guys back because I couldn't get in. I-I-I didn't have the right password. It didn't work. And then finally, it worked and I was like, "Well, let me go ahead and do it." She said, "Well, you have -- you have until the 31st to change your mind if they -- you don't want the money."

Which I had been hoping something else would come through with my house that I wouldn't need the money so I could say no. But if it

KFHP000415

DB 1807 049

was told to me to go to a plan that meant that it goes in to the plan and then I wouldn't have -- it wouldn't be on my hands. But I could -- if I needed to take some money out to help my house that would have done it?

KPRP Rep:     I-I--

[Crosstalk]

Lia Javier:     I would have been able to do that?

KPRP Rep:     Well, you would have been able to roll it over in to another retirement account. If you needed the money as cash to do anything with you would have had to take it as cash or at least part of it as cash. But, I mean, at-at this point in time there isn't anything that we can do to change your election. Everything has already been finalized.

Lia Javier:     Yeah, but what I'm saying is you say -- what I'm-I'm hearing from you now, I could have rolled it over to a plan, and I would have been able to take a certain amount out, but it would have been less there. And there wouldn't have been no big taxes taken out?

KPRP Rep:     Well, I'm saying that you could have rolled it over in to another retirement account like an IRA--

Lia Javier:     Uh-huh.

KFHP000416

DB 1807 050

BLS_Kaiser_Lia Javier_11.16
Page 14

KPRP Rep:        --or a 401(k). I don't know if -- it would have been up to that
                 account if you would have been able to take it out at this time from
                 that account. I don't know what-what your specific IRA or 401(k)
                 may have allowed. What we can do is we could have issued it as
                 cash or as a rollover, and you had elected a cash payment so that's
                 how it was processed.

Lia Javier:       See, that's what I'm saying. I -- you know what? What I'm going to
                 have to do, and I see what I'm going to have to do now. I'm going to
                 have to, um, I -- and that's why I'm telling you. I need to speak to
                 someone who is over you like you have a supervisor because what-
                 what-what's making me upset is that I don't understand a lot of
                 things, and I told the beef to you guys.

                 What's going on? How to help me regardless of you guys saying
                 whenever I'm telling you that I didn't get the paperwork. I'm asking
                 questions. I'm frustrated. I'm nervous. I don't know what I'm doing.
                 I'm asking them, "Look, I'm on social security. I have a mental
                 disability. I cannot understand everything all the time, and I --
                 things get mixed up."

                 So what I need to do, I've been asking them to let me speak to
                 someone who can help me to understand how to make a decision
                 because I didn't have anyone that could help me because I didn't
                 have the paperwork. I've been asking that through every call that
                 I've called. No one has done it.

KFHP000417

DB 1807 051

So what I need to do, I'm asking. I need to speak to someone else. Someone in the plan. If I have to write a letter because none of this stuff was stated to me so I can make an informed de-de-decision on what to do. I'm telling her everything and telling the other guy everything of what's going on, and what I need help with, and what I don't understand. And that wasn't explained to me.

I'm thinking it's just the one thing to do was either get the money, or get the-the-the payments, uh, divided out, or you get the, uh -- I only thought those two actually. So that's why I'm saying I need to speak to someone else. I want them to pull the calls, and I need to write a letter because this -- I don't -- um, this is not okay.

This should have been told to me where the money -- I-I don't want the money in my hands. Then you take out so much for taxes, but nobody explained, and I'm telling them this stuff. I don't understand. Instead of saying, "You need to -- uh, let us have someone call you back that they can go over this with you." You guys should have people there that can do that. I'm pretty sure you do.

KPRP Rep:          We can go over--

[Crosstalk]

Lia Javier:          Right?

KFHP000418

DB 1807 052

KPRP Rep:          --the kit with you. It's worth noting that I am a supervisor here, and we can go over the kit with you, and if you have those kind of questions I can't -- none of us here would be able to tell you how to resolve your-your personal situation. We can only advise you on how you can take the payment from the plan whether that's cash or a rollover.

I do apologize if in the past you weren't advised of-of what you were wanting to be advised of, but all the information was on the website, including the kit for you. And we were here to help answer questions.

Lia Javier:        But if you have someone who is disabled you cannot let them make a-a-an informed decision. Which I'm telling them, "You guys have to really help me understand this." And it was a thing of, "You have one day to do it." She said, "You have to do this stuff by tomorrow, and you can always change your mind once you do it."

And I'm asking her, "What is the pro -- what is the things that [unintelligible]?" I'm telling her constantly, "I-I don't want the money." I'm trying to say, "Well, I understand and -- but you have until the 31st," instead of explaining to me, "Well, if you don't want the money because you'd rather -- do have some-some--" Like a normal what to say to people.

"If you don't want the money there is a rollover plan where you put it in that, and you're able to get it. Let me give you their phone

KFHP000419

DB 1807 053

number to that plan or if you need to find out more about that." No one ever stated it to me.

KPRP Rep:        We don't offer--

[Crosstalk]

Lia Javier:      That's why I'm asking you guys who could pull the calls? It doesn't matter what you're saying right now. I need to see who I need to speak to because this should have been told to me, but now, I'm having to deal with this problem with my Medicaid. That's what I'm asking. I don't know whatever more that I have to keep saying. I'm telling you, I didn't get anything. I get the card, and I'm asking, "What's going on? Well, how do I do this?"

                 And I'm telling her the specifics. That's why I'm asking you every call that I make to you guys I've asked the same questions. What -- and I'm not telling you -- telling you what to do, but tell me how -- what-what is this thing? What's there for me if I'm telling you my situation? Can you?

                 Well, that should have been told to me, "There's a rollover par-part. You could put it in there where it's out of your hands, but if you need it then you have to go through that plan." No one stated that, and I kept saying, "I don't want the money in my hand. I don't want a check because it's going to mess with my Medicaid, and it may

KFHP000420

DB 1807 054

even get me kicked off the social security," which I was nervous with that.

And they were like, "Well, no, social security is separate from whatever." So okay, I got that answer, but why didn't anyone answer when I said I didn't want the money in my hand. I wanted it to be out of my hands so if I needed it. If didn't get the [remodification] on my home I had access to it.

KPRP Rep:        We can't [unintelligible]--

[Crosstalk]

Lia Javier:        So now, I'm hearing, "Oh, yeah, that was a-a thing that we could -- you could have did, but you should have read it." But if I'm telling you I'm disabled. There's no way I'm going to make an informed decision. So that's why I'm saying I need to speak to someone else because you guys are telling the same things everybody else is telling me instead of getting me to the people that I need to hear from. That's what I'm saying.

KPRP Rep:        We cannot [unintelligible]--

[Crosstalk]

Lia Javier:        So you're telling me this stuff and help me. It doesn't help me at all because now, I'm screwed where they're telling me any money, and

KFHP000421

DB 1807 055

they're going to take my Medicaid. So that's what -- that's what I'm angry about. And you're telling me now, "I'm sorry someone didn't tell you," but I'm just asking to speak to someone that can tell me what you just told me, and they wouldn't let me.

So I-I --like I said, there has to be someone who is higher up in your department that can help me get to the right people to-to give my grievance to. To tell them why I'm upset, and why this happened to me, and no one helped.

KPRP Rep:        What do you want me to do for you right now?

Lia Javier:        I want to speak to someone who can get this grievance because I'm not cashing this check. I want to have it to go in to a rollover plan where it should have helped me, but I kept telling them, "I don't want to touch this money." I may not even need it. I'm trying to work with the remodification. I told each representative, and I kept saying, "Well, we can't -- we can't tell you what to do."

"Can you -- then let me speak to someone who can help me decide. Give me every avenue there because I'm telling you I'm on disability. This is hard for me. I have no clue what I'm doing." Oh, no. "We're just telling you," but now, you're telling me something, and I kept saying, "Let me speak to a supervisor." "Oh, no, there's no supervisor.

KFHP000422

DB 1807 056

**BLS_Kaiser_Lia Javier_11.16**
Page 20

"They're -- I'm telling you, this is -- this is just the one call thing. We're just people who tell you that, you know, if you didn't get the paperwork you can get online," blah-blah-blah. Now, you're telling me, "Oh, yes, there was a rollover plan. Sorry no one told you that." When I'm constantly telling them my situation.

So I am not okay with this at all. I made a bad decision because no one took out the time and said, "Look, you're on Medicaid." We-we -- you guys are trained for this and said, "Well, you [unintelligible]. There's a rollover plan so what you need to do, you need to talk to someone who can help you with this rollover plan before you make this decision.

"Go ahead and take the money and then you can change the thing," or whatever, but it wasn't told to me. And even if -- e-even if the deadline date has passed, and I made that decision just to get the lump sum it still wouldn't matter because I didn't, you know, I would have picked the rollover from explaining what I don't want to do and what I need to do.

So I've been asking to speak to someone who is higher up in Kaiser. Whoever. I want [unintelligible]. Why can't I speak to someone to let them know, "Look, you guys know I'm dis-disabled. What's going on?"

KPRP Rep:     I can see if another supervisor can call you back, if you'd like. Um, but at this point in time we can't make any changes to your election.

KFHP000423

DB 1807 057

Lia Javier:    There has to be someone that can -- that I can write to, and someone in higher office in this plan that gave these things to give our people their money. I don't want the money. I want it to go to a rollover plan which I should have been told in the beginning. "That that's the best option probably for you to do it in a rollover plan, but you need to check with the rollover plan. Whatever plan you get you have to make sure if you've got assets to get your stuff."

And I'm telling them, "What are the issues with this with me?" And they don't want to even help. Now, I'm hearing this with this -- see, and I'm telling them, "I don't want the money." I'm telling them, "I don't want the money."

[Crosstalk]

KPRP Rep:    I think [unintelligible] you. I've-I've heard you state that. I understand my complaint. I can have another supervisor call you back, but if-if you're asking us, "What's the best option for me," we cannot answer that for you. We are not allowed to provide any kind of advice, and I'm sorry that you didn't get advice, but we cannot provide it. I can have another supervisor call you back.

[Crosstalk]

Lia Javier:    It's not the plan -- you guys are advising this if I have -- it's not -- it's the -- kind of what you just told me, right? That the rest rolled

KFHP000424

DB 1807 058

BLS_Kaiser_Lia Javier_11.16
Page 22

over to an employer-qualified retirement. That's what you just said, right?

Lia Javier: Those were all listed on the website. I was going over what different forms of payment you had. You had selected one specific form of payment when making the election, but they were all shown.

Lia Javier: Yeah, but what I'm saying is if I'm telling the person when I'm on the phone with them because they had to go through it with me because I-I didn't understand. When I'm telling them, "Look, I don't want the money," and I'm explaining the whole situation that should have been told what you just stated to me. "No, you would want to take this one."

Not that you're telling me what to do, but you're directing me in to the right place. "If you don't want the money and you're worried about your Medicaid go ahead and take this one. This one might be best for you." You're not telling me, but saying, "Look, this is an option for you. Once again, I'm not giving you what to do, but this is an option. You said you don't want the money. You want to see it, but you've got to--"

What you just told me, that would have helped me make a -- the-the best decision for me which would have been, uh, a quickly to put it -- to push that.

KFHP000425

DB 1807 059

BLS_Kaiser_Lia Javier_11.16
Page 23

[Crosstalk]

KPRP Rep:          [Unintelligible] did nothing, but--

Lia Javier:        I don't w-want cash. And still, I don't want the money.

KPRP Rep:          There's nothing I can do about what people in the past have told
                   you. In regard to what we can do now at this point in time I
                   understand that you-you're stating you didn't receive the
                   information you needed to when you called us before.

                   Right now, I'm telling you all I can do is I can have another
                   supervisor call you back. And if there's any other questions you
                   have that we can do right now I can help you with, but I do
                   understand that [unintelligible]--

Lia Javier:        What I'm saying is I need to speak to someone that's higher up. I
                   don't want to just speak to a supervisor at your level. I need to speak
                   to someone that's high in-in the -- in this -- in-in my plan. What is
                   the number that I am able to speak to people? This is my retirement
                   plan supposedly that is supposed to be a -- back my retirement
                   cushion, and I'm saying what I'm needing, and no one is explaining.

                   Like no one is letting us make an informed decision because it's so
                   quick. "You've got this much time to take it. Do this, but no one has
                   taken out the time to talk and explain, "Okay, this is going to--"
                   This is our life thing. "Okay, this is what you need." I'm explaining

KFHP000426

DB 1807 060

BLS_Kaiser_Lia Javier_11.16
Page 24

that [unintelligible]. It is -- it's not like I said, "Oh, I want the money. That's it." Whatever.

I'm telling you my situation. Regardless of if someone told me in the past or not. I'm saying what I'm explaining, and that person, when I kept saying, "Well, why can't they have--?" I said, "Well, let me speak to someone who can let me know how to do this. I don't know what I'm doing. Like I don't have the paperwork in front of me. I don't know anything because I never got it.

"All I had was this card." "Okay, well, go ahead and do this. You've got to do it before tomorrow. Tomorrow is your last day. That's it, and you need to do it tomorrow."

KPRP Rep:    I understand you. When you went over this information I do understand that you didn't receive the information you needed these various calls. It's something where normally, we do recommend you speak with a financial advisor because they can really go over your situation and help you -- and help actually, give advice. We're not authorized to give advice. And this is [unintelligible]--

[Crosstalk]

Lia Javier:    But how would I know if I don't have the book?

[Crosstalk]

KFHP000427

DB 1807 061

KPRP Rep:              [Unintelligible].

Lia Javier:            If you guys would have sent me out my stuff I would have been
                       able to take it someone and ask them what about it, but everything
                       was done for me quickly. [Unintelligible] the phone calls. I had no
                       clue what's going on so everything had to be done bam, bam, bam.
                       And I'm telling you [unintelligible]--

[Crosstalk]

KPRP Rep:              Do you need us to send you all of your paperwork?

Lia Javier:            --what's going on.

KPRP Rep:              And if you--

[Crosstalk]

Lia Javier:            I never got my paperwork.

KPRP Rep:              --didn't receive that I'm sorry, but it was accessible on the website.
                       When you went on the website to make your election you were able
                       to print out the election kit. At this time, I-I would need to ask if
                       you don't have any new questions I would need to just schedule a
                       supervisor call with you. And with another supervisor if you wanted
                       to speak to someone else here, but we're---

KFHP000428

DB 1807 062

Lia Javier:          But I want to make sure there's not--

[Crosstalk]

KPRP Rep:          --we're running around in circles at this time.

Lia Javier:          But I want to make sure it's not anyone on your level. They need to
                     be above you. I keep asking for people above people so I can get the
                     right stuff, and no one is seeming to do that. There has to be
                     someone that's in your little area that's high. That's up that could
                     really help me to understand what happened, and why wasn't I
                     given the right information?

                     Regardless it's on the website, and I can't -- there's no way I'm
                     going to be able to print it out because I don't have access to a
                     computer, like I told her. I had to be on my iPhone to look it up. So
                     there's no way I have access, and I'm telling them so if I have to
                     make a quick decision within a day I have no clue of what's going
                     on, and I'm nervous.

                     I don't know what I'm doing, and I'm asking her and telling her my
                     situation. And instead of her saying, "You know, well, let me have
                     someone call you back. I'm going to have someone call you back
                     because tomorrow is the last day, and-and you need to be
                     informed." But no one did that for me. That's what I'm saying.

KFHP000429

DB 1807 063

BLS_Kaiser_Lia Javier_11.16
Page 27

So I don't want to speak to someone on your level. I need to speak to someone who's higher than you guys to explain why this happened to me and why did I get -- didn't know what I'm doing and did the wrong plan that I explained to her what I needed from my-my money coming to me.

I'm saying everything. It's -- what she's telling me, "Oh, yeah, that would have been the best probably. You know, I don't know for sure if you're telling me, but you're like -- we'll use that. That-that sounds like what you needed. I don't know whoever you would have picked to be your whatever. Wh-whatever [unintelligible]. I don't know who you would have picked, but you would have made sure that it was okay."

It's like a 401(k). I remember my 401(k). You could go in and-and get help. That's something that I needed because I'm saying I'm trying to save my home. That's the only reason that I'm even thinking about doing this. That card came, like I thought, in the nick of time because that's what I needed, but no one explained that to me the way you just did.

Had someone done that then I could have clicked on that rollover plan and then it would have been the end of it. And then I would have had access, but it would have been out of my [unintelligible]. That's all I'm saying. Like I wouldn't have -- it wouldn't have -- it-it wouldn't have stopped me from getting Medicaid or messing with my Medicaid. That's what I've been asking.

KFHP000430

DB 1807 064

So I need to speak to someone higher than you. I don't want to speak to just another supervisor. They've got to be higher than you, and I've got to get up to the top and see what I can do because I don't want this.

I should have had the rollover plan which should have been told to me. That's what I'm trying to say to you. You're telling me, "You can speak to someone else." No, that doesn't help me. That's not going to help me.

KPRP Rep:   I can only schedule a call back with one other supervisor here. There's only one other supervisor that you would be able to speak to. They are above me though.

Lia Javier:   Okay, so they're above you. So once they get above you so it's got to be someone above them. I'm trying to get to the top. Um, I'm trying to speak to -- so I would have to go through them to speak to someone higher than them because I want them to pull the calls and see I kept asking for help. And no one is--

[Crosstalk]

KPRP Rep:   You will not be able to speak to anyone above this supervisor. My supervisor is the highest that you would be able to speak to.

Lia Javier:   And there's no one else in the whole place of where we have this retirement stuff? There's no one else? Uh, there's no one head

KFHP000431

DB 1807 065

honcho that I could speak to from Kaiser? Like there's no, uh, I
don't even know. I would doubt if that's a -- it's been so long since
I've worked at Kaiser that the people who were in-in-in the, you
know, in the manager's office from Kaiser or whatever, people who
were high up there has to be someone who you guys have a little set
thing of you guys giving it. There has to be someone higher than-
than someone just there. That's what I'm saying.

KPRP Rep:      There is only one--

Lia Javier:    This is what--

KPRP Rep:      --supervisor I can -- I can have you speak to. I can have her give
               you a call back within one business day.

Lia Javier:    Okay, what -- and what is your name?

KPRP Rep:      My name is KPRP Rep.

Lia Javier:    Okay, KPRP Rep, and what is her name that I'll be expecting the
               call from?

KPRP Rep:      Rona.

Lia Javier:    Rona. So is there anything online that I can look up that has, uh,
               your-your comp -- you know, your little -- because I don't know if

KFHP000432

DB 1807 066

BLS_Kaiser_Lia Javier_11.16
Page 30

you guys work for Kaiser or if they're just someone they hire -- you guys. They hired you guys to do this. I'm trying to see--

KPRP Rep:        Well, once this window closed, and the website closed as of the election window closing. There is not a website for you to be able to visit regarding this.

Lia Javier:      Okay, so what I'm going to have to do -- see now, I'm going to have to -- yeah. I'm going to have to talk to -- yeah. I'm going to have to call my senator. I'm going to have to have someone help me do that because this is ridiculous. This is my life, and I've been asking, and you guys didn't do your job.

You should have told me, you know, "Hey, we can't tell you, but I know it's rushed." I'm rushed with this. So will you guys be able to pull all the calls so you can see that I've been asking this same questions and asking to speak to someone who actually, can guide me through it?

Not to tell me what to do, but to guide me through since I didn't have the paperwork. I've been asking that so can you guys -- would you guys be able to pull all those calls because I want -- I don't want to take this check. I-I want to -- I don't want to take this check.

There-there has to be something so I'm wondering can you guys pull the calls to see, "Yes, she has been calling and asking. She didn't understand. She kept asking, and asking, and asking, and

KFHP000433

DB 1807 067

BLS_Kaiser_Lia Javier_11.16
Page 31

asking to speak to someone that could help her"? And no one gave
me that person to help me. So--

KPRP Rep:        Did you have--?

Lia Javier:      --is there a way?

KPRP Rep:        Our calls are recorded. We do have access to the previous calls.

Lia Javier:      Okay, good. I just want to make sure. Okay, thank you.

KPRP Rep:        No problem.

Lia Javier:      KPRP Rep, thank you. Uh-huh. Bye-bye.

KPRP Rep:        Bye-bye.

[End of recorded material]

KFHP000434

DB 1807 068

# Exhibit 4

## Exhibit 4

### Exhibit 4

KFHP000435

DB 1807 069

**BLS_Kaiser_Lia Javier_11.17**

[Start of recorded material]

| | |
|---|---|
| Lia Javier: | Hello? |
| KPRP Rep: | Hi, can I speak to Lia Javier, please? |
| Lia Javier: | May I ask who's speaking? |
| KPRP Rep: | Sure, my name is KPRP Rep. I'm from the Kaiser Permanente Pension Election Help Desk. |
| Lia Javier: | Hi, KPRP Rep. Yeah, you know what? I did speak to someone, and they told me that you guys weren't able to help me anyways. Like it wouldn't even work so they said there was nothing you guys could do so just let it go and try to figure out what to do now. So that's what I'm going to do. |
| KPRP Rep: | Okay, Uh, did -- I mean, I can try to help provide any direction if you'd like. I believe, um, so Josh did fill me in. Is this -- did you want me to try to help a little bit because I--? |
| Lia Javier: | Uh, no, because she said she couldn't like -- you couldn't change anything. Like, um, you couldn't go back to do anything. He said, um, going forward, that's all that I have to do. So then I called my tax person and she said, "Let it go, and, um, just -- we'll work on it from here." So I do-- |

KFHP000436

DB 1807 070

KPRP Rep:         Okay.

Lia Javier:       --thank you for calling me and keeping your -- Ro-KPRP Rep.
                  Thank you so much.

KPRP Rep:         Okay, all right. No problem.

Lia Javier:       Okay.

KPRP Rep:         Uh, you have a good day.

Lia Javier:       Have a good day.

KPRP Rep:         Have a good weekend.

Lia Javier:       Uh-huh, you too.

KPRP Rep:         Um, bye-bye.

Lia Javier:       Bye-bye.

KPRP Rep:         [Unintelligible].

[End of recorded material]

KFHP000437

DB 1807 071

# Exhibit 5

# Exhibit 5

# Exhibit 5

KFHP000438

DB 1807 072

**1-15JNB4C_01.11.2018**

[Start of recorded material]

KPRP Rep:    Thank you for calling Kaiser Permanente Retirement Center. My
             name is KPRP Rep. Can I get your name, please?

Lia Javier:    Um, yes, Lia Javier.

KPRP Rep:    Hi, Lia, how can I help today?

Lia Javier:    Um, yes, I was told by my tax person to make sure that I, um, that
               when they [unintelligible] out my -- because I took out the early
               retirement plan --

KPRP Rep:    Mm-hmm.

Lia Javier:    -- and they want to -- they want to make sure that-that I got a 1099
               sent out for disabled.

KPRP Rep:    Uh, they will, uh, send the 1099 by the January 31st. And if you
             took, uh --

Lia Javier:    Okay.

KPRP Rep:    -- an early disability retirement that should be coded as such.

KFHP000439

DB 1807 073

1-15JNB4C_01.11.2018
Page 2

| | |
|---|---|
| Lia Javier: | Okay. Will they -- will they know that I was -- that I'm disabled, so there's a different tax bracket for that? |
| KPRP Rep: | Yes, because you would have, uh, listed that when you pulled your pension; I would assume. |
| Lia Javier: | I don't think they had a thing for that, for disabled. |
| KPRP Rep: | And what is your callback phone number, Lia? Let me take a look at your account. |
| Lia Javier: | Thank you, |
| KPRP Rep: | All right, just one moment. I'm going to put you on a brief hold. I'll be right back. Thank you. Lia, thank you so much for holding. Um, I'm -- |
| Lia Javier: | Okay. |
| KPRP Rep: | -- uh, I-I don't believe it will be coded, uh, disability because you didn't take a disability retirement while you were still with Kaiser. Now, this early cash-out offer is a different type of payment. If, um, I can send a service request forward today to my administrators to ask them, uh, but I'm pretty sure they don't code them that way unless you took an, uh, disability retirement from Kaiser and took your pension at that time. I don't think it would apply for a cash-out |

KFHP000440

DB 1807 074

1-15JNB4C_01.11.2018
Page 3

offer, that's probably going to be counted as income, but I will send this forward today and ask.

Lia Javier:          Okay. Because, yes, I asked my tax person, and the told me that even with an early retirement, uh, this -- for disabled people, it's a different coding bracket. Um, so --

KPRP Rep:          Okay.

Lia Javier:          -- um --

KPRP Rep:          But do we have --

Lia Javier:          Yes.

KPRP Rep:          -- a copy of your disability here at the pension department? I mean, we wouldn't have any record of your disability here.

Lia Javier:          Oh, well, that's what I was saying, is I didn't see anything on there, but when I spoke with her she was telling me that there is a different coding. She said for any type of thing that you take out, like any plan program, they code you differently as a disab-- disabled person because you don't make as much. And there's a different, uh, tax bracket for those who are disabled.

So, um, I didn't -- I never got the booklet on anything. I just got the- the little -- the little card that said, um, there's an early retirement,

KFHP000441

DB 1807 075

1-15JNB4C_01.11.2018
Page 4

|  |  |
|---|---|
|  | you know, for Kaiser -- I got the card. And I had to call, and I only had like a day and a half to decide what I was going to do. |
| KPRP Rep: | Right. |
| Lia Javier: | And, um, yes, I had to go over with the people on there. So I don't know what was in there. Like I have no clue. Like it was online, but they told me, you know what, go ahead and take it out and if you change your mind -- they sent me the booklet after. So I have to find the booklet, but they sent me the booklet after because I didn't -- I only got the card. And I think they sent me the booklet, or I think I went online. I can't even remember -- |
| KPRP Rep: | Okay. |
| Lia Javier: | -- this was, uh -- |
| KPRP Rep: | Yes. |
| Lia Javier: | -- [unintelligible]. And they told me go over it, um, and when I, um, uh, made my decision but, um, there -- I don't even know because there might have been something in there for disabled. I can't remember. |
| KPRP Rep: | Do you have -- |
| Lia Javier: | But somebody could have -- |

KFHP000442

DB 1807 076

1-15JNB4C_01.11.2018
Page 5

KPRP Rep:        -- a copy --

Lia Javier:      -- [unintelligible] --

KPRP Rep:        -- of your, uh, disability awards letter?

Lia Javier:      Yes, I do.

KPRP Rep:        Okay. Uh, in the meantime while I send this, um, forward you
                 might want to get a copy of that mailed to the retirement center. I
                 don't know if it's going to help or not. But, um --

Lia Javier:      Okay.

KPRP Rep:        -- that might be one thing you can do in the meantime. You're
                 probably going to get that 1099 form, uh, you know, in the next two
                 weeks. So, um, that would be a step -- being a step ahead if you've
                 already mailed it to us. That way if, uh, you come back and say it
                 wasn't coded as disability. Here -- I'm finally getting an answer
                 here. Hang one. Just one moment.

Lia Javier:      Okay.

KPRP Rep:        Yes, my supervisor does state that it would not be coded as
                 disability, uh, due to the fact that, um, yes, that it wasn't disability

KFHP000443

DB 1807 077

1-15JNB4C_01.11.2018
Page 6

retirement. It was an early cash-out offer. So it's not going to be coded as disability.

Lia Javier:     Okay. So we just come back to normal, and then I would have to let a tax person to go from there.

KPRP Rep:     Yes, there-there going to have to take it from there. He might be able to figure something out, or a different way of, um, presenting it where it's not going to count against you there.

Lia Javier:     Okay, because I have no clue of how they do that. I don't get it.

KPRP Rep:     I know it.

Lia Javier:     Because I was -- I said, yes. I don't -- I was told that I should give the money back because they took out such a big lump sum out of it. It's a -- they took out almost 10,000.

KPRP Rep:     I know.

Lia Javier:     So, my tax -- I mean, you should be able to get some back. But I don't know how --

KPRP Rep:     Yes, you shouldn't really own any tax on that because you already paid 20 percent, probably, to the Federal. So I would think that you wouldn't owe much of anything after already paying the 20 percent Federal Tax because that's mandatory on a lump sum.

KFHP000444

DB 1807 078

1-15JNB4C_01.11.2018
Page 7

| | |
|---|---|
| Lia Javier: | Okay. I just need to see about -- |
| KPRP Rep: | Yes. |
| Lia Javier: | Okay. Thank you so much. |
| KPRP Rep: | All right. |
| Lia Javier: | Thank you. |
| KPRP Rep: | You're welcome, Lia. Thanks for -- |
| Lia Javier: | Uh-huh. |
| KPRP Rep: | -- calling the KPRC. You have a great rest of your day. |
| Lia Javier: | You too. |
| KPRP Rep: | Bye-bye, now. |
| Lia Javier: | Bye-bye. |
| KPRP Rep: | Thank you. |

[End of recorded material]

KFHP000445

DB 1807 079

# Exhibit 6

# Exhibit 6

# Exhibit 6

KFHP000446

DB 1807 080

**1-1643Z24_03.02.2018**

[Start of recorded material]

| | |
|---|---|
| KPRP Rep: | Thank you for calling the Kaiser Permanente Retirement Center. My name is KPRP Rep. Can I have your full name, please? |
| Lia Javier: | Um, yes, Lia Javier. |
| KPRP Rep: | Thank you. And a good call back number for you? |
| Lia Javier: | |
| KPRP Rep: | Thank you. And how can I help you today? |
| Lia Javier: | I wanted to see if Melinda -- I think her names is Melinda -- is available. |
| KPRP Rep: | Melinda? Um, I don't know if I have a Melinda in the Retirement Center. Let me -- let me take a look here. Melinda? |
| Lia Javier: | Yes, I had took an early retirement and, um, no one helped me with anything. So she was telling me if I ever needed to talk to her, um, a lot of stuff is messed up with me taking early retirement, and no one told me. And, um, I told them constantly that I am disabled, and I needed to make sure everything was correct, and they told me they couldn't give me any help. |

KFHP000447

DB 1807 081

1-1643Z24_03.02.2018
Page 2

But she-she told me that I should have -- shouldn't have -- she said, I shouldn't have made a decision without any more help. So, I'm trying to see now what I need to do because, um, it's-it's a lot going on. And I wish that -- when I kept telling them I'm disabled, I want to make sure -- my daughter is telling me to make sure you make the right decision and make them help you, and no one would help me. And they told me I had a certain amount of time, and it was very hard. So Melinda told me to call if I never needed to talk to her.

KPRP Rep:     Okay. Okay. There is a Melinda. Um, let me see if she is available. Sh-- it doesn't look like she's in my office. She might be in the other office. So, uh, let me see if she is available for you. Okay?

Lia Javier:     Okay. Thank you.

KPRP Rep:     Okay. One moment. Okay. So, thank you for holding. It looks like, uh, Melinda has been off this week for vacation. Uh.

Lia Javier:     Okay.

KPRP Rep:     I could --

Lia Javier:     [Unintelligible] first person I talked to because, um, there's a lot going on. My daughter is telling me that they should have never -- they should have never, um -- like ever let -- supposed to let me

KFHP000448

DB 1807 082

1-1643Z24_03.02.2018
Page 3

speak to someone else if I'm telling them that I'm mentally disabled and I need help with this information that -- my daughter told me they should have not let me make any decisions. Or they should have gotten me in touch with someone like Melinda said, they-they -- I shouldn't have made a decision knowing -- not knowing what I'm doing. And I kept asking them that I needed help. I didn't understand. Um, they told me you have a certain amount of time to get this money out. And the only reason I took the money out was to save my home.

KPRP Rep:          Mm-hmm.

Lia Javier:          And I've been explaining that to them. But instead of them telling me what Melinda told them, they should have just said; you know what, you need to talk to a different person. We can't help you with that, but let's give you a number to someone you can talk to. But they wouldn't do it.

So, everything is screwed up, my taxes, my Social Security, and I told them on Social Security -- I told them everything so I need to see what I can do. I haven't cashed the check because my daughter told me, "Don't do anything, Mom, because you're-you're-you're in a bad state right now, and they messed up everything without giving you the correct information."

KPRP Rep:          Okay. So the early cash-out was actually handled by a different department. Um.

KFHP000449

DB 1807 083

I-1643Z24_03.02.2018
Page 4

| | |
|---|---|
| Lia Javier: | Yes. |
| KPRP Rep: | So-so I mean, we-we don't -- and I'm sorry that we -- because we just deal with the normal retirement. And so it looks like you were going -- |
| Lia Javier: | Yes. Um. |
| KPRP Rep: | -- to the other department that was handling the early cash-out option. Now, they don't -- |
| Lia Javier: | And they wouldn't -- |
| KPRP Rep: | -- have all the -- |
| Lia Javier: | -- give me -- |
| KPRP Rep: | -- resources that we have. So -- |
| Lia Javier: | Yes, but Melinda told -- |
| KPRP Rep: | -- [unintelligible] -- |
| Lia Javier: | -- them they should have given me more information, and tell you guys like I shouldn't have been talking to them. That's what Melinda said. She said it's late now, but I just talked to my daughter, um, my |

KFHP000450

DB 1807 084

1-1643Z24_03.02.2018
Page 5

daughter talked to some people that was with Social Security, and a lawyer that said that you shouldn't have made any decisions knowing you're mentally disabled. You told them that you were mentally disabled, and you needed help.

I constantly kept telling them, "I don't know what I'm doing." Then-then they kept saying, "Well, you only have a certain amount of time." And, um, no one told me anything. No one helped me. No one said anything. All they told me was that, you know, in order to get your money, you have to make the decision now.

Because there was a card that came in the mail. And I got a card, and they were like, "Well, you didn't get the booklet?" I said, "I didn't get anything." It's a card. I'm like, "Good," you know, maybe this a blessing for me because I'm about to lose my home. And they were telling me, "Well, you have to make the decision." I tried to get help.

Finally, a-a lady said, "Go ahead and accept it." She said, "Go ahead and accept it." And then, you know, um, you could, um, cancel it if anything happens to where you don't want it. I had a month to do it, but I'm trying to get more money to get my home saved, and it wasn't, and that was the only option. And I'm telling them that what other options do I have, but when I spoke with Melinda, she -- hold on -- she said I could have taken a disability to get help with my home because I was losing my home. And --

KFHP000451

DB 1807 085

1-1643Z24_03.02.2018
Page 6

| | |
|---|---|
| KPRP Rep: | Mm-hmm. Yes, because the-the department that handles the early cash-out, they don't see the normal retirement information that we see. So, if-if -- yes. So, may-- they should have referred you to us, but they don't -- they just are answering questions that they know -- have information about. Um, so if you had called the retirement center, which is us, um, we could have went over the disability option with you. |
| Lia Javier: | Yes, and no one -- |
| KPRP Rep: | Yes |
| Lia Javier: | -- did that. So I told Melinda, I need to see what I can do now because it's screwed up with everything with my -- I-I asked, and I'm telling them, you know, I'm on Social Security. I can't have it mess up anything.<br><br>I don't know what -- help me. They should have transferred me to someone else, and say we can't do it. You know, don't do anything. You-you know, talk to your -- no one said anything. They were saying, "You only have this amount of time." |
| KPRP Rep: | Mm-hmm. |
| Lia Javier: | And I'm not knowing anything -- |
| KPRP Rep: | Yes. |

KFHP000452

DB 1807 086

1-1643Z24_03.02.2018
Page 7

Lia Javier:         -- and they're [unintelligible] --

KPRP Rep:           Because they're not going to make that decision for you -- make a
                    decision for you.

Lia Javier:         Yes.

KPRP Rep:           Um, that would --

Lia Javier:         [Unintelligible].

KPRP Rep:           -- only come from you to speak to somebody else.

Lia Javier:         Uh, yes.

KPRP Rep:           Um.

Lia Javier:         But --

KPRP Rep:           Yes.

Lia Javier:         -- I'm saying if I'm asking them to do -- what Melinda said was they
                    should have --

KPRP Rep:           Mm-hmm.

KFHP000453

DB 1807 087

1-1643Z24_03.02.2018
Page 8

Lia Javier:        -- gave you some [unintelligible] to say, we can't help you with this. Let us give you this information. She said they have our number. That's what I'm upset about now. I'm stressed out now because this shouldn't have been done the way it was done when I'm telling is that I need help. I'm telling them I don't know what I'm doing, and they're just -- well, we just -- okay, I get -- I und-- I hear them. But it should have been given me to say call your retirement center, but they said we don't -- they didn't give me any other number, any other type of information, and they had it, that's what Melinda said. They have the information.

                   She said you took this. So what I'm going to have to try to do is take this to court because I'm not knowing what I'm doing, and I'm asking for help, and no one is helping me. That's what getting on my nerves. No one is helping me. I'm constantly saying, "I need help. I don't understand." Then tell me -- give me a different number. I don't know what I'm doing because they won't speak to my daughter because they told me they have to speak to me. So I'm not knowing what I'm doing, and she's trying to write things down, and we're trying to ask questions, and no one is helping. So now everything is --

KPRP Rep:          No, they should have --

Lia Javier:        -- messed up --

KFHP000454

DB 1807 088

1-1643Z24_03.02.2018
Page 9

| | |
|---|---|
| KPRP Rep: | -- been able to talk to your daughter if you gave them permission to speak with her. Then they should have -- |
| Lia Javier: | They wouldn't. |
| KPRP Rep: | -- they should have been able to talk with her. |
| Lia Javier: | No. They said we have to speak to you. And I'm sitting up here -- I don't know what I'm doing. I'm asking for help, and all they had to do was say, we can give you to the other part. We can't help you make [unintelligible] -- service. I [unintelligible] service. But I'm not knowing what I'm doing, and so I keep telling you, you're rushing me to do something. And I'm thinking to save my home, and you're not telling me there's other options. Let me give you this phone number for your retirement center. They didn't do that. And had they done that, I would of had all the best options. I'm counting on-on Social Security. I don't want it to mess up my Social Security. So -- |
| KPRP Rep: | Yes. They don't have all the information. So they were just going by -- I mean, depending on who you were speaking with, they're just going by this is the deadline to make a decision. That's all that their-their job was; it was to inform people about the decision and the deadline for it. They're not the retirement center. So I-I apologize for that. Now, how can I help you? What-what do you need -- |
| Lia Javier: | I need -- |

KFHP000455

DB 1807 089

1-1643Z24_03.02.2018
Page 10

KPRP Rep:          -- from me?

Lia Javier:        -- I need to go further and then see what I can do because I want
                   everything rescinded. I-I want everything --

KPRP Rep:          Okay.

Lia Javier:        -- rescinded. If I have to, my daughter [unintelligible] go to court.
                   We're going to go to court because they didn't tell me anything. If
                   I'm telling you I'm disabled -- I'm mentally disabled. I'm not -- I
                   don't know everything. You got to help me. Then tell me, we can't
                   help you. Let us let you speak to these people. Then they should
                   have let my daughter speak to the people and get everything
                   situated, but they didn't do that.

                   So I made a decision not knowing what I'm doing. And I kept
                   asking them for help. If I'm telling you I don't know what I'm doing,
                   then say, we can't help you. Here's the number. And that's when
                   Melinda kept saying, "Yes, I apologize, they should have gave you
                   the number. This -- they were -- that's a different area. These are
                   people that we hired. So if they're people that we hired, then you
                   can't help me, then say please don't make any decisions now. You
                   know.

KPRP Rep:          Well, they're-they're not hired for that either. They're just hired to
                   make -- inform you of what is happening. That's not on them --

KFHP000456

DB 1807 090

**1-1643Z24_03.02.2018**
Page 11

| | |
|---|---|
| Lia Javier: | Yes, but if someone -- |
| KPRP Rep: | -- to-to make the -- |
| Lia Javier: | -- is telling -- |
| KPRP Rep: | -- decision for you -- |
| Lia Javier: | -- [unintelligible] -- |
| KPRP Rep: | -- either. It's not on them -- |
| Lia Javier: | -- [unintelligible] -- |
| KPRP Rep: | -- to make the decision for you. |
| Lia Javier: | -- [unintelligible]. It's not a decision. If someone tells you you're mentally disabled -- if I'm telling you I'm mentally disabled, then that means don't deal with me. Tell me -- give me some of the numbers. Don't deal with me. That's what I'm saying. |
| KPRP Rep: | Okay. |
| Lia Javier: | And that's what -- that's what Melinda said, they shouldn't have talked to you. That's what I'm saying. But I made the decision, and it -- and I'm telling you, I don't know what I'm doing. |

KFHP000457

DB 1807 091

1-1643Z24_03.02.2018
Page 12

| | |
|---|---|
| KPRP Rep: | Okay. |
| Lia Javier: | So if someone -- you mentioned -- that's like someone saying, I blind or whatever, and I'm trying to tell you something that obviously I can't -- I can't help you. Then get -- I-I don't -- I don't -- what I don't understand is there's -- I get that there's a different company -- she kept saying it's a different company. I get it. But if I'm telling you, I don't understand, mentally disabled, that's a big trigger. So [unintelligible] -- I don't -- I don't understand. |
| KPRP Rep: | Okay. So I'm-I'm going to send this up to our -- my administration supervisors, um, to see if there's anything that they can do if there's an appeal process for you. Um. |
| Lia Javier: | It's ridiculous. I don't get it. It's like I-I don't -- I don't understand. I don't -- I don't -- I'm tired. No one is understanding what I'm trying to say. If you don't -- |
| KPRP Rep: | No, I understand -- |
| Lia Javier: | -- understand something -- |
| KPRP Rep: | -- what you're trying to say. I do understand what you're trying to say, and I apologize that they did not assist you the way that they were --they were supposed to. I understand what you're saying. If you're mentally disabled, then they should not have said anything to |

KFHP000458

DB 1807 092

you. But you called them because of the letter that you got, and so they were going by the information that they had for you. But I'm going to send this up to my administration to see if there is an appeal process for you. You said you didn't cash the check. Correct?

Lia Javier:       Correct.

KPRP Rep:       Okay.

Lia Javier:       All they had to do was tell me, you guys. They could have check [unintelligible].

KPRP Rep:       And I'm sure they'll pull --

Lia Javier:       [Unintelligible].

KPRP Rep:       -- the phone calls --

Lia Javier:       [Unintelligible].

KPRP Rep:       -- I'm sure they'll pull the phone calls about this as well, so. Yes, because I don't even -- all I see is Melinda's note. I don't even see the-the conversations, um, that are logged in for the other team that was handling the early cash-out. Um, what is the -- this-this is a good phone number for you? The five, one, zero, seven, zero, one, one, seven, seven, one?

KFHP000459

DB 1807 093

1-1643Z24_03.02.2018
Page 14

Lia Javier:       Yes.

KPRP Rep:       Okay. Okay. [Unintelligible].

Lia Javier:       [Unintelligible].

KPRP Rep:       I'm going to place you --

Lia Javier:       [Unintelligible].

KPRP Rep:       -- on a qu-- brief hold while I get this typed up and, um, and send it out to-to the supervisors. Okay?

Lia Javier:       Thank you.

KPRP Rep:       Okay. Thank you. One moment. Okay. Ms. Javier?

Lia Javier:       Uh-huh.

KPRP Rep:       Okay. So I have gone ahead and escalated this issue, um, to our administration and our team of supervisors. So they're going to do some research, probably view the calls that were made to the other team, um, and get back to you. Now, this is going to take a few days, about four to five days before you hear back from us. Okay?

Lia Javier:       Okay.

KFHP000460

DB 1807 094

**1-1643Z24_03.02.2018**
Page 15

KPRP Rep:        Okay. Um, I do believe that there may be an option that they can, um, because you still have the check, right?

Lia Javier:       Yes.

KPRP Rep:        Okay.

Lia Javier:       Uh-huh.

KPRP Rep:        So, I-I do believe that there's-there's an option there. Um, but I-I don't want to get your hopes up too high. Okay?

Lia Javier:       Yes.

KPRP Rep:        Um, but I-I-I know that we-we can assist with this. And I'm so sorry that this happened, and that you weren't able to, you know, enjoy the money, you know, and-and make it work for you. But we can -- we're going to try to fix this. Okay? So, um --

Lia Javier:       Thank you.

KPRP Rep:        Yes. So, give it -- give us about four or five days. Um, if you don't hear anything by Friday, um, give us a callback and we'll-we'll, uh, send another email, but you should hear something about Thursday or Friday. Okay?

KFHP000461

DB 1807 095

| | |
|---|---|
| Lia Javier: | Could you be-be able to call me back? You? |
| KPRP Rep: | No, it would be a supervisor. |
| Lia Javier: | [Unintelligible]. |
| KPRP Rep: | Yes. It would be a supervisor. Yes. Because they have -- they have better access and they can -- they can look into those other calls and stuff. Okay? |
| Lia Javier: | Okay. What is your name? |
| KPRP Rep: | My name is KPRP Rep, and that's K-A-R-A-H. |
| Lia Javier: | KPRP Rep, thank you. |
| KPRP Rep: | Okay. |
| Lia Javier: | I just [unintelligible]. |
| KPRP Rep: | You're welcome. |
| Lia Javier: | I wished somebody would have talked to me and let me -- |
| KPRP Rep: | Yes. |
| Lia Javier: | -- know and -- |

KFHP000462

DB 1807 096

| | |
|---|---|
| KPRP Rep: | Yes. |
| Lia Javier: | Yes. |
| KPRP Rep: | I'm sorry that they didn't refer you to just the-the normal retirement, um, because they're-they're no longer in, um, you know, in action right now after that-that deadline. So, I'm sorry that that happened, but we're-we're going to work it out for you. Okay? And we're -- |
| Lia Javier: | Thank you. |
| KPRP Rep: | -- going to do our best. |
| Lia Javier: | [Unintelligible]. |
| KPRP Rep: | Okay. |
| Lia Javier: | Thank you so much. |
| KPRP Rep: | All right. You're welcome. Okay. |
| Lia Javier: | Okay. Bye. |
| KPRP Rep: | You'll be hearing from us soon. Thank you. All right. |
| Lia Javier: | Thank -- bye. |

KFHP000463

DB 1807 097

1-1643Z24_03.02.2018
Page 18

KPRP Rep:        Okay. Bye-bye.

[End of recorded material]

KFHP000464

DB 1807 098

# Exhibit 7

# Exhibit 7

# Exhibit 7

KFHP000465

DB 1807 099

**1-16651EW_03.07.2018**

[Start of recorded material]

| | |
|---|---|
| KPRP Rep: | Thank you for calling the Kaiser Permanente Retirement Center. My name is KPRP Rep. Can I have your full name, please? |
| KPRP Rep: | KPRP Rep, you might want to hang up. |
| KPRP Rep: | [Unintelligible]. |
| KPRP Rep: | Yes, I got -- I got a bad line. Okay. |
| KPRP Rep: | Oh, okay. |
| KPRP Rep: | Um, did she pull up Lia Jav-- is it -- |
| KPRP Rep: | Javier? |
| KPRP Rep: | -- Javier? Yes. You might want to go into a service request. Um, the last one that was made, uh, 3265 is the last four of the service request. |
| KPRP Rep: | Thirty-four, sixty-five. Okay. I'm waiting for it to pull up. |
| KPRP Rep: | Yes. |
| KPRP Rep: | Oh, there it is. Okay. Okay. I've got it here. |

KFHP000466

DB 1807 100

1-16651EW_03.07.2018
Page 2

KPRP Rep:    So, kind of a run down. Uh, sh-- it's for pension. She had a pension check -- commencement check.

KPRP Rep:    Mm-hmm.

KPRP Rep:    And she received it, but she thinks she, um, is mentally, um, disabled.

KPRP Rep:    Mm-hmm.

KPRP Rep:    So sh-- they -- she should have known her rights before they did this.

KPRP Rep:    Okay.

KPRP Rep:    So, it might -- it might turn into a supervisor call. I just want you to know that.

KPRP Rep:    Oh, yes. You know what? I actually talked to this lady.

KPRP Rep:    Yes, because they're like --

KPRP Rep:    Yes.

KFHP000467

DB 1807 101

1-16651EW_03.07.2018
Page 3

KPRP Rep:        -- they told her, "No." They said -- they said advise -- she's already
                 gone through the entire commencement process and has received
                 her check. She's not able to rescind her commencement.

KPRP Rep:        Okay.

KPRP Rep:        But --

KPRP Rep:        Okay.

KPRP Rep:        -- I just thought it's going to be a -- not a good one for you. So, I'm
                 sorry.

KPRP Rep:        Okay.

KPRP Rep:        I owe you a candy bar, okay?

KPRP Rep:        Oh, no problem.

KPRP Rep:        Here's the phone number, okay?

KPRP Rep:        Okay. Yes.

KPRP Rep:        Um,                    .

KPRP Rep:        Mm-hmm.

KFHP000468

DB 1807 102

**1-16651EW_03.07.2018**
Page 4

KPRP Rep:               .

KPRP Rep:         Okay.

KPRP Rep:               .

KPRP Rep:         Okay.

KPRP Rep:         All right.

KPRP Rep:         Okay. whenever you're ready.

KPRP Rep:         All right. All -- I'll get it to you. Hold on, just a moment.

KPRP Rep:         Okay-okay.

KPRP Rep:         Lia?

Lia Javier:       Uh-huh.

KPRP Rep:         Thank you so much for holding. I have KPRP Rep on the phone, and she's going to assist you further from Pension Department, okay?

Lia Javier:       Okay. Thank you.

KPRP Rep:         Thank you. Have a great day.

KFHP000469

DB 1807 103

1-16651EW_03.07.2018
Page 5

| | |
|---|---|
| Lia Javier: | You too. |
| KPRP Rep: | Okay, ho--, KPRP Rep? |
| Lia Javier: | Hello? |
| KPRP Rep: | Hello. Yes, my name is KPRP Rep. Um, what's your full name, please? |
| Lia Javier: | I've spoken to you last week. I remember KPRP Rep, right? I spoke to you last week, Lia Javier. |
| KPRP Rep: | Yes, we did speak. Okay. Yes, I see it here. Um, what's a good call back number for you, Lia? |
| Lia Javier: | Um, |
| KPRP Rep: | Mm-hmm. |
| Lia Javier: | |
| KPRP Rep: | Okay. Thank you. All right. Let me look at the notes here, so bear with me just a moment. Okay. Okay. So I'm just reading the notes here, and it says, um, the employment event shows that you retired under a normal termination, not disability retirement. Um, the |

KFHP000470

DB 1807 104

1-16651EW_03.07.2018
Page 6

Salary Retirement Plan A also does not allow for disability retirement even if you did retire due to a disability event.

Um, you should have had -- wait. You would have had to wait until the normal retirement date of August 1, 2035, to commence otherwise. Um, and so since you've gone through the entire process, you're not able to rescind the commencement process that you've already gone through.

Lia Javier:     Well, my whole thing is like I told them, I -- that's not what I'm fighting about the disability stuff. Uh, that's not what I'm fighting about. What I'm fighting about when I asked them what to do -- I don't know what it entails. They did not transfer me to you guys to- to actually speak to me and tell me what this involves.

Because if they really would have pulled the calls, I know I could ask me about Social Security. I don't work. All -- I'm dis-- I'm ment-mentally disabled.

I told them everything. And instead of them transferring me, they didn't. I don't care about disability or what they're trying to say. I told them if you're going to mess with my Social Security -- they kept saying we can't help you with that. Then you need to give me to someone that can help me with that. They should have done that, and they didn't.

KPRP Rep:      We wouldn't --

KFHP000471

DB 1807 105

1-16651EW_03.07.2018
Page 7

Lia Javier:       [Unintelligible].

KPRP Rep:       -- [unintelligible] help you with the Social Security either. We don't deal --

Lia Javier:       Well, I'm saying --

KPRP Rep:       -- with Social Security.

Lia Javier:       Okay.

KPRP Rep:       Yes.

Lia Javier:       What I'm --

KPRP Rep:       So we don't -- hmm?

Lia Javier:       -- saying --

KPRP Rep:       Mm-hmm.

Lia Javier:       -- what I'm saying -- and I'm going to keep saying this until I speak to someone that is high up in your thing. If I'm mentally disabled -- if you cannot help me, then tell me -- not these people, but you guys who are -- who have my records. I am so tired of explaining this to everybody. If they couldn't help me when they kept saying, "Well,

KFHP000472

DB 1807 106

1-16651EW_03.07.2018
Page 8

we're not -- this is a different company." All they had to do is transfer me to you guys. Regardless if this is Social Security --

KPRP Rep:      Why would they have --

Lia Javier:      -- [unintelligible].

KPRP Rep:      -- to tran-- I don't understand why you would want them to have transferred you to us. You were calling about your early commencement options. Why would they have connected you to the normal retirement department?

Lia Javier:      To you guys to tell me what this is about. They didn't give me --

KPRP Rep:      They --

Lia Javier:      -- any information but A, B, C, B, E. If-if I'm mulling what it entails when I kept asking them, they said, "We can't tell you anything." They should have let me speak with you guys. When I talked with the other lady last time, she told me we would have given you a breakdown of what happened. That's what I needed. See --

KPRP Rep:      A breakdown --

Lia Javier:      -- I don't understand --

KPRP Rep:      -- what do you mean a breakdown --

KFHP000473

DB 1807 107

1-16651EW_03.07.2018
Page 9

Lia Javier:        -- [unintelligible] --

KPRP Rep:        -- of what happened?

Lia Javier:        -- breakdown [unintelligible] --

KPRP Rep:        What do you mean a breakdown of what happened?

Lia Javier:        All [unintelligible] -- a breakdown of this-this can affect -- even to
                   tell me that it doesn't, but this can affect your Social Security. If I'm
                   saying, I'm mentally disabled. I don't work. I'm on disability Social
                   Security, SSDI, that would have told me everything that I needed to
                   know, and that's what the lady told me last time. We would have
                   broke it down [unintelligible] -- you need to call this place. You
                   need to call that place. You need to call this place. That's what I'm
                   saying.

                   She knows she said, we know a lot more than the people who we
                   gave to do this knows. So you're trying to tell me something -- I'm
                   going to argue with you. I asked to speak to someone, and for them
                   to pull the calls and they didn't. Because I kept asking the questions,
                   "What do I do?" And-and-and they were, "We can't answer that."
                   "Well, who can you lead me to?" And they would not give me you
                   guy's phone number.

KFHP000474

DB 1807 108

1-16651EW_03.07.2018
Page 10

| | |
|---|---|
| KPRP Rep: | All right. Just-just one moment, Ms. Javier. Okay. What I can do, is I can -- I can have our administration review the calls. Um, and if they-they can send you out a claim form. |
| Lia Javier: | Oh. |
| KPRP Rep: | -- once they reviewed -- |
| Lia Javier: | Who else -- |
| KPRP Rep: | -- these calls. |
| Lia Javier: | [Unintelligible]. |
| KPRP Rep: | I'm sorry. |
| Lia Javier: | Who else is there because I'm asking who because I talked to you last time and I explained the situation, and you act like you knew what I was talking about? |
| KPRP Rep: | I do know what your -- |
| Lia Javier: | And now -- |
| KPRP Rep: | -- talking about. |
| Lia Javier: | -- [unintelligible] -- |

KFHP000475

DB 1807 109

| | |
|---|---|
| KPRP Rep: | And I'm telling you -- |
| Lia Javier: | [Unintelligible]. |
| KPRP Rep: | -- that you went through this whole process and you called the department -- |
| Lia Javier: | If you're asking me -- |
| KPRP Rep: | -- about early -- |
| Lia Javier: | -- [unintelligible] trying to tell me now that me and you talked last week and I told you what happened. And you said, "Okay. They're going to pull the calls." You was like -- |
| KPRP Rep: | Nobody -- |
| Lia Javier: | -- [unintelligible] -- |
| KPRP Rep: | -- said they were going pull -- |
| Lia Javier: | -- [unintelligible] -- |
| KPRP Rep: | -- the calls. |
| Lia Javier: | -- [unintelligible] -- |

KFHP000476

DB 1807 110

1-16651EW_03.07.2018
Page 12

| | |
|---|---|
| KPRP Rep: | I did not say they were going to pull the calls. I did not -- |
| Lia Javier: | Yes, you did. |
| KPRP Rep: | -- say that. |
| Lia Javier: | You did say they were going to pull -- you-you did say that -- |
| KPRP Rep: | I said -- |
| Lia Javier: | -- [unintelligible] -- |
| KPRP Rep: | -- may. |
| Lia Javier: | -- [unintelligible] -- |
| KPRP Rep: | I said they may. I didn't say that they were. |
| Lia Javier: | But-but if you're telling me that, then why would it be different. Is there someone else I can speak to because -- |
| KPRP Rep: | Just a moment -- |
| Lia Javier: | -- if this is [unintelligible] -- |
| KPRP Rep: | -- I sure will get someone -- |

KFHP000477

DB 1807 111

1-16651EW_03.07.2018
Page 13

| | |
|---|---|
| Lia Javier: | -- [unintelligible] -- |
| KPRP Rep: | -- for you. Just a moment. |
| Lia Javier: | Thank you. Thank you. |
| KPRP Rep: | Okay. Ms. Javier? |
| Lia Javier: | Mm-hmm. |
| KPRP Rep: | Okay. I'm going to get you to my Supervisor, and his name is Patrick. Okay? |
| Lia Javier: | Hmm? |
| KPRP Rep: | Just one -- |
| Lia Javier: | Mm-hmm. |
| KPRP Rep: | I'm sorry. Let me try that one more time. |
| Patrick: | All right, KPRP Rep, you can bring her on the line. |
| KPRP Rep: | Okay. Okay. Thank you for holding, Ms. Javier. I have Patrick on the line, and he'll go ahead and assist you. Okay? |

KFHP000478

DB 1807 112

1-16651EW_03.07.2018
Page 14

| | |
|---|---|
| Lia Javier: | Uh-huh. |
| KPRP Rep: | Thank you. |
| Patrick: | Okay. Um, like she said, my name is Patrick. I'm one of the Supervisors here at the Kaiser Permanente Retirement Center. Um, and I understand that the issue right now is you're wanting to try to appeal, uh, basically, your participation in the early cash-out, uh, that you believed there might be a chance that you had the ability to commence your pension through disability, um -- |
| Lia Javier: | No. |
| Patrick: | -- no? |
| Lia Javier: | No, I didn't. No. |
| Patrick: | Okay. |
| Lia Javier: | No, that is not the main thing. The -- I asked them about -- because I am disabled, and I asked them all the questions that I needed to know because I'm telling them, I don't know what I'm doing. I'm telling them I'm mentally disabled. I want to know everything. I have to write things down because my daughter will tell you they wouldn't speak to her. |

KFHP000479

DB 1807 113

1-16651EW_03.07.2018
Page 15

So I'm like I got to write things down, tell me. They said, "Well, we can't help you with anything. We're not that dept-- we're not that -- we're just a company that they, you know, hired." And I'm telling them, "Well, who do I need to speak to?" Not once did they give me guy's your number. Like I say, they need to talk to your retirement department, and they need to go over things with you.

Patrick:    Okay.

Lia Javier:    So I -- what-what is the problem? They transferred me to someone, and when I was -- I-I can't remember who it was, and they said -- I'm asking them to -- look, I'm disabled. I don't know what I'm doing. You know, what will this effect? Um, tell me, you know, with everything going on like what-what will happen?

I'm asking questions that I have no clue of what I'm doing. And no one's -- no one's told me anything. No one tells me like -- when I spoke with someone, and I can't remember her name. I want to say, Melinda. I don't even know. I spoke with someone else in your department. They went over everything with me, and she told me, "They should have told you this. They should have transferred you to us so we could have told you what everything was."

When she broke it down, I said, "Oh, no one told me that." So everything is affecting everything. I tried to call Social Security before, and they were telling me, "No, it-it-it should not mess with anything in your, uh, viewer information." But now when I called

KFHP000480

DB 1807 114

1-16651EW_03.07.2018
Page 16

|  |  |
|---|---|
|  | back, um, after I got the-the money, they told me, "Oh, you have to be careful it -- when you -- when you're -- when you're older it-it might affect it." Which -- okay, I'm like, okay, if you guys said one thing then -- and then I was told, "Well, you're disabled, so you shouldn't have to, uh, have a big amount taken out and [unintelligible] --" |
| Patrick: | So -- |
| Lia Javier: | -- your [unintelligible] security. |
| Patrick: | Uh, okay. So I -- |
| Lia Javier: | Like no one -- |
| Patrick: | -- think -- so looking at -- so looking at -- that would be the conversation in January. Reviewing that, the notes we have on our end is that your tax advisor was telling you that your 1099 is supposed to be coded for disability. But the issue is you didn't take your commencement as a disability commencement. Um, when you do the cash-out option, it's not considered disability payment, and that's why your 1099 has the normal distribution code. |
| Lia Javier: | Yes, that's what they told me, but I'm saying when I spoke to you guys at, um, not -- I think it was September or October -- end of September, October. Not you guys, but the other place. I asked them all the questions that -- telling them, "Look, I don't know what |

KFHP000481

DB 1807 115

1-16651EW_03.07.2018
Page 17

I'm doing. What am I supposed to do?" And they did not say let us let you speak to your retirement department because they will give you the information.

All they kept telling me was that "We can't help you." I know that. Give me to someone that can help me before I make this decision. So what they told me, "Go ahead. Make the decision, um, and you have, um, a month to-to-to say no." So they still didn't give me you guy's number to say -- you know what, they told me -- well, you know what? I'm telling them, "Well, I'm disabled." And they were like, "Well, we can't tell you anything. So you can call your-your," uh, what do you call it? Your disability? Or you could call them.

Not once did they give me the number to you guys, so then I could have been told, this is what you need to do. You're mentally disabled. We cannot help you right now. You need to do A, B, C, D, or whatever, but no one gave me that option. So I had no clue. Everything was quickly done. You got to do it now. If you don't do it now, you're not going to get this.

Instead of giving me you guy's numbers to say, um -- because all they kept saying, "We can't let you speak to," like, "They're not going to speak to you because this is -- this -- they're doing this program." That's what they kept saying. "We're doing this program so, um, there is -- no one can help you." They're telling you what you -- what you need to do. "Did you get the package?" And I said, "No." "Then look online, and read the-the things that are going on."

KFHP000482

DB 1807 116

So I'm sitting up here trying to read everything online which doesn't make sense. Instead of just giving me you guys to say, talk to them, they can explain it. I'm not knowing because me and my daughter is looking at everything like, "What does this mean?" We have no clue of what to do.

And I'm telling them, "Look, I kept calling --," I don't know what I'm doing. I don't -- well you have -- you have a few more days. You have until October 31st to make this decision. We're trying to call people about disability, and nobody can help us. They said, "That's your retirement program."

So instead of them giving me your number that I got now, they should have done that so that you guys could have broke it down to me and my daughter to say, this is what needs to be done. Don't do this if you don't work. If you weren't on disability and mentally disabled, do not do this. And it's not telling me what to do just giving me my options. I'm not saying that you have to tell me what to do but could say, A, B, C, D, E, um, you know, what are the options do I have and what [unintelligible] my Social Security, my disability, what are the options. You know.

Do I need to need to get a doctor's approval so to prove that I'm okay to make any deci-- anything. No one told me anything, and that's why I'm irritated. So I told my daughter, "I'm not cashing the

KFHP000483

DB 1807 117

1-16651EW_03.07.2018
Page 19

check because it's going to mess with my-my-my life when I'm older." But nobody said anything when I kept asking them.

Patrick:        So --

Lia Javier:     So, I'm -- I told my daughter was that I'm-I'm at this point -- I'm mentally disabled which means I get anger rages, and I'm tired of being nice. I've been taking my medicine, but I don't -- I'm-I'm sick of being calm when no one is listening to me. Once again, no one listens when I keep asking somebody, "I want to speak to someone else." Give me the number -- when I talked to the other lady she said, "They should have given you our number so we could have explained things a little better." And no one did it. And no one wants to pull the calls to see that I kept calling to ask for help.

Patrick:        Uh, well, here's-here's-here's what we have to do going forward. Because right now the-the real issue with pulling some of those calls is related to the fact that the-the cash-out option was run through the assistance of another call center. So we would have to get in touch with them to do any sort of call polls.

                The problem we have right now is that since you completed, and signed, and did all the paperwork, outside of a claim on the plan, we wouldn't -- we can't -- it's not like we can cancel the check because we've gone -- you've gone through all the steps of the early cash-out disbursement.

KFHP000484

DB 1807 118

1-16651EW_03.07.2018
Page 20

So right now the-the next step would basically be -- we would have to send you out a claim initiation form or get a written inquiry from yourself about the situation at the time to officially start, basically, an appeal. Because right now what-what we have from the cash-out team is, basically, that you completed all the paperwork correctly, the disbursement was proceeded, and now you have your check.

Lia Javier:    Well, I [unintelligible] --

Patrick:    Uh.

Lia Javier:    -- I don't -- I [unintelligible] -- I had to do everything online because I didn't -- I did any [unintelligible] anything, and I told them that. I just a card in the mail, and it was giving me a-a little time frame. I think I had a day to make a decision, or three days, or two days. The card came in the mail, and I'm, "Oh, what's this," because I was losing my home. I was like, "Wow, this is -- this is a blessing. What's going on?" And it was a very short time frame that I had to make a decision. So even if I [unintelligible] well, I kept calling -- I called her like three times.

The call [unintelligible] -- the lady said, well, go ahead and just sign the stuff, you can always rescind it in-in-in a month. But, you know, and I said, "Okay. Is there a number that I can speak with?" Like I need to know what I'm doing. She said, "Just go ahead and sign it. Call the people around that you need to call."

KFHP000485

DB 1807 119

Instead of her giving me you guy's number, she should have said, here's the number that you need to call. Talk to these people so you can get the information and see what to do. And make sure you and your daughter -- because I kept explaining my daughter [unintelligible] my stuff. Make sure you guys understand before you accept it because I know I had a certain amount of days to say, "No."

And I'm sitting up here trying to get help, calling Social Security. My daughter is talking to these people, and they're telling her one thing, and -- it doesn't -- it doesn't much make sense to us at all. We're like, "What -- is this going to bother my Social Security?" That's all I wanted to know. Is it going to mess with-with my tax [unintelligible] because I don't work? I don't work.

And I don't have any money to [unintelligible] because this is going all go to pay my home. I'm asking these questions, and no one is answering me. So I do want to make an appeal, and I want them to stop doing stuff quickly. When people tell you they need help, give them to the right people who is going to help them.

Now I'm stressed out because I don't know. And I'm like -- I'm like [unintelligible] because I'm not going to put myself in this predicament where I'm going to be in some rest home or somewhere later with no money. Like this is my life, and I'm telling them, instead of them saying let us let you speak to them. You

KFHP000486

DB 1807 120

1-16651EW_03.07.2018
Page 22

know, um, here's the number that you need to call. They should help you better than we can. They did not do that.

So I want to -- I'm going to make an appeal, and whatever I have to do. If I have to get my psychiatrist to write things out because I should not have been able to make these decisions without people talking to me or my daughter, and nobody would.

Patrick:        Okay. So what --

Lia Javier:     That's my Social Security Department to talk to us. It's your department to talk to me. It's my retirement. This -- I went -- I was with Kaiser for years. So -- and no one wants to speak to me at Kaiser which makes it-it-it just -- it's so horrible.

Patrick:        So what I'm -- what I'm going to do on my end here, um, is basically -- I'll be putting in a request to get the claim information sent to you. Um, I want to check and make sure we have the correct address for you. I want to -- what I'm going to be requesting is, if possible, we send it overnight with a -- with a return label so that you can get it overnighted back to us as soon as you've been able to-to basically write-write your appeal, um, get any supporting documents you want. You know you get the things that you-you believe you have on your end, um, for everything that-that went wrong during the process of the early cash-out.

KFHP000487

DB 1807 121

1-16651EW_03.07.2018
Page 23

Um, how that process works after that is basically, we'll take all your documentation, um, since you're -- since you'll be including, kind of, basically, we need to reference the calls from the early cash-out. Um, any-any calls that need to be pulled for research would be done on our end. Um, and then it actually goes to a, um, the Kaiser Permanente Administrative Committee. Um, and they will -- they will review the appeal.

I do want to let you know the time frame for that notice of approval or denial is 90 days. Um, and you actually get a written letter about the decision. So just kind of -- I want you to be aware of the time frame on that, um, as it can take up to 90 days, but what I'm going to do is try to get you to the point where-where we can have a-a good appeal in front of the-the administrative committee, um, in-in a timely fashion.

Um, from-from what you're telling me right here on this call, um, I-I want to apologize just one, that-that you went through this process not-not being aware of what was going on, and not feeling like you had the support. Um, because-because that's not what's intended when you're going through retirement, it's supposed to be informative, and it's supposed to be something you're understanding.

Um, but outside of the appeal process, there's not going to be a way for us to try to make any corrections. So that's where-where I want to get this process started right away. Um, because, basically, you're

KFHP000488

DB 1807 122

1-16651EW_03.07.2018
Page 24

going to be appealing the documentation you signed, and-and the
state that you signed it in. The informed -- and that you were not
informed while signing it. So that's-that's the-the direction we're
going -- we're going to go to try to-to get some sort of-of correction
here.

Lia Javier:        Thank you. Thank you, very much.

Patrick:           Absolutely. Um, so Ms. Javier, right now, we have for your address,
                   um, 805 Fieldstone Court, Brentwood, California, zip code 94513.
                   Is that still a good address for you?

Lia Javier:        Yes.

Patrick:           Okay. Um, so let me get this over to the administrative team. Um,
                   and your phone number is
                                    ?

Lia Javier:        Yes.

Patrick:           Okay. So you should expect to -- you'll get a call back from me,
                   um, before Friday of this week just letting you know that the form
                   is on its way. Um, and I'll be able to give you -- give you the
                   tracking number. Okay? So that you can, um, you can kind of keep
                   track of that, and knowing to expect it. Okay?

Lia Javier:        Okay. What is your name?

KFHP000489

DB 1807 123

1-16651EW_03.07.2018
Page 25

Patrick:          It's Patrick.

Lia Javier:       Patrick.

Patrick:          Okay. Um, you know, I -- and I -- and I'm sorry that-that it had to
                  get all the way to this point before-before we're-we're being able to
                  kind of go through this step so that this is the only option that we
                  have left. And that this wasn't caught, you know, and this wasn't
                  explained earlier in the process. Um, but I want to make sure going
                  forward we're doing a very good job of explaining everything that
                  we're -- that we're trying to do to get this corrected. Okay?

Lia Javier:       Got it. Thank you, Patrick. Thank you very much.

Patrick:          Absolutely. And I-I look forward to-to touching base with you
                  before the end of the week. Um, and we will -- we will get working
                  on this to get you set up to-to appeal this, um, and-and work
                  through everything that way. Okay? Um, now --

Lia Javier:       Okay.

Patrick:          -- I will let you know that sometimes there is situations that cannot
                  be appealed. Um. I'm --

Lia Javier:       Mm-hmm.

KFHP000490

DB 1807 124

**1-16651EW_03.07.2018**
Page 26

Patrick:         -- so to this one, uh, this one is kind of unique in that I-I never quite run across this one yet. I'm not sure if this is one of those situations. If it is, I will be calling you back and going over any other options you might have. Um, but as of right now, the best bet to get this corrected the way you want it to be, would be we-we go through the claim initiation form and the appeals process. Okay?

Lia Javier:      Okay. And thank you so much.

Patrick:         Absolutely. Um, so I will get back to you before the end of day on Friday. Um, I really do hope you have a good rest of your day. Um, and I look forward to-to touching base with you later in the week. Okay.

Lia Javier:      You too. Thank you, Patrick.

Patrick:         All right. Bye.

Lia Javier:      Uh-huh. Bye-bye.

[End of recorded material]

DB 1807 125

# Exhibit 8

# Exhibit 8

# Exhibit 8

KFHP000492

DB 1807 126



KFHP000493

DB 1807 127

## Claim Initiation

 **KAISER PERMANENTE**®

### COMPLETE THIS FORM AND PROVIDE ALL REQUESTED INFORMATION

Claimant Name: **Lia** **Javier**
First Name          Last Name

Participant Name (if Not Claimant): First Name          Last Name

Claimant Address: **805 Fieldstone Ct.**
Street Line 1

Street Line 2

Street Line 3
**Brentwood**          **Ca**          **94513**
City                State          Zip

Participant Social Security Number:

**Include the following:**
- Completed **Claim Initiation** form – Claimant must complete and sign this form.
- This written form must be submitted to the address shown below in order to start the formal process of having your claim reviewed.
- Include an explanation of the pension benefits claim you are making (e.g., calculation of service, plan, or benefit eligibility).
- Include a statement describing the reasons why you believe your pension benefits were not calculated correctly or you are entitled to a pension benefit.
- Attach copies of all documents, correspondence and information you have to support your claim for pension benefits. **Please do not submit any original documentation. Documents submitted for claim processing cannot be returned to you.**
- If your claim for pension benefits involves previous discussions/communications, include the date(s), person(s) with whom you spoke, details of the conversation, etc.

INCLUDE ALL FACTS AND SPECIFIC CIRCUMSTANCES THAT YOU WOULD LIKE TO BE CONSIDERED WHEN REVIEWING YOUR CLAIM.

Hi, my name is Lia Javier. I didn't get the form in the mail. I got the information on the card 2 days before it ended. I called on end of august or in september 2017. I talked to a man and asked him about the kaiser payout. He said he couldn't help me, so I asked him who could. He said they were a company hired to help. Early payout read info. I told him I couldn't get info in mail only a card to help me get a payoff to save my home. He said he couldn't help Me. That wasn't his job to answer those questions, he can't give me advice. So I called



Package003-1870473d6fau1.t

00025

KFHP000494

DB 1807 128

**Claim Initiation**

| Claimant Name: Lia C. Javier | First Name: Lia | Last Name: Javier |
|---|---|---|
| Participant Name (if Not Claimant): | First Name: | Last Name: |

**(Claim Facts and Circumstances Continued)**
Attach additional pages if needed.

back, spoke with a lady the day before sign-up ended, she suggested I end up taking # if I could cancel but she gave me no info to call to get help. I explained to both of them that I am mentally disabled. I didn't understand. They told me to call my tax person and social security people for help but they didn't tell me to call KP. I got into it after I received the check. They said they had to speak to me not my daughter. I can't think when people are like mean, (and they didn't want to be nice or help me.

**Claim Submission Process**
I understand that Kaiser Foundation Health Plan, Inc. will send me a written notice of its determination within 90 days of receipt of my claim. I understand that if Kaiser Foundation Health Plan, Inc. needs additional time to process the claim, I will receive a written notice of the need for a longer processing period prior to the expiration of the initial 90-day period, the reasons for the longer period, and the date on which I can expect my claim to be processed. I understand that in no event shall the extension exceed a period of 90 days from the end of the initial period.

Limitations on Claims and Legal Action: Any claim under the Plan - including any challenge to whether you have a vested benefit, your years of vesting service, credited service, compensation, or any other component of your benefit - must be filed within 2 years following the latest of:
(i)  December 31, 2017,
(ii)  Your termination of employment, and
(iii) The date you were provided with written notice (including electronic information made available to you by
     the Plan) of your vested status and/or the components of your benefit.

If, however, your claim relates solely to the failure to pay or begin to pay your Plan benefit as of your benefit commencement date, your form of payment, or the adjustment to your benefit for commencement before normal retirement date, your claim must be filed within 1 year of your elected benefit commencement date. Any legal action must be brought within 1 year after the later of the date of the initial claim denial or, in the event of a timely appeal, the date the appeal is denied. Additionally, any legal action may only be brought in the U.S. District Court of the Northern District of California.

In signing this form, I also authorize the release of all records and/or information pertinent to this case to Kaiser Foundation Health Plan, Inc.

_____          3/22/18
Claimant Signature                          Date

**MAIL COMPLETED FORM AND DOCUMENTATION TO:**

Kaiser Permanente Retirement Center


#23Z328SUBX

KFHP000495

DB 1807 129

I didn't cash the check, cause I didn't know what to do, it would mess up my Social Security, and my living life, money has to last. I needed help and no one helped me. I don't want This money please help me. Nobody helped me, I didn't spend the check I only got it to help with my house, but a program helped me with saving my home. I told them about my pension They said no, it will not be ok to use, and did my pension people help me I said no Please help me.

Lia C Javier

KFHP000496

DB 1807 130

 **SOCIAL SECURITY ADMINISTRATION**

Refer To:                                    Office of Disability Adjudication and Review
                                             SSA ODAR Hearing Ofc
                                             Suite 200 N
                                             1301 Clay Street
                                             Oakland, CA 94612-9837

                                             Date: August 27, 2013

Lia Crasona Javier
805 Fieldstone Ct
Brentwood, CA 94513

### Notice of Senior Attorney Adjudicator Decision    Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision on
your application(s) for a period of disability, disability insurance benefits, and Supplemental
Security Income. I found that your disability began on January 1, 2013. I explain the basis for my
decision in the attached decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements
for Supplemental Security Income payments. That office may ask you for more information. If
you do not hear anything within 60 days of the date of this notice, please contact your local
office. The contact information for your local office is at the end of this notice.

**If You Agree With My Decision**

If you agree with my decision, you will not have a hearing with an administrative law judge.

**If You Disagree With My Decision**

If you disagree with my decision, you may still have a hearing with an administrative law judge.
If you still want to have a hearing, you or your representative must ask us to continue with your
request for a hearing. You must make your request in writing. Mail your request to the address
shown at the top of this notice. Please put the Social Security number shown above on any
request you make. If you need help, you may go to any Social Security or hearing office.

If you ask for further review of a favorable decision, an administrative law judge will consider
the entire case record including the decision. Further review may result in a new decision that is
less favorable or unfavorable to you.

**Time Limit For Asking to Continue With A Hearing**

You must ask us to continue with your hearing request **within 60** days after you receive this
notice. We assume you received this notice five days after the date of the notice unless you show
you did not get it within five days. If your request to continue with your hearing is timely, you

Form HA-L10 (11-2011)

See Next Page

KFHP000497

DB 1807 131

Lia Crasona Javier (          )                                    Page 2 of 2

will have a hearing. We will give you more time if you show that you had good cause, or a good reason, for missing the deadline.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.

If the Appeals Council does not review my decision on its own and you have not asked us to continue with your hearing request, my decision will become final. We will change a final decision only under special circumstances. You will not have the right to Federal court review.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866)331-2324. Its address is:

Social Security
2508 Verne Roberts Cir
Antioch, CA 94509-7916

Judith A. Dickman
Senior Attorney Adjudicator

Enclosures:
Decision Rationale

cc:    Johna Littlejohn
       1030 36th St
       Richmond, CA 94804

Form HA-L10 (11-2011)

KFHP000498

DB 1807 132

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

**IN THE CASE OF**                        **CLAIM FOR**

Lia Crasona Javier                        Period of Disability, Disability Insurance
_____                   Benefits, and Supplemental Security Income
(Claimant)                                _____

_____                   _____
(Wage Earner)                             (Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

This case is before me on a request for hearing dated July 5, 2013 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The evidence of record supports a fully favorable decision; therefore no hearing has been held (20 CFR 404.948(a) and 416.1448(a)). The claimant is represented by Johna Littlejohn, an attorney.

The claimant has amended the alleged onset date of disability to January 1, 2013.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2017. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, I find that the claimant has been disabled from January 1, 2013, through the date of this decision. I also find that the insured status requirements of the Social Security Act were met as of the date disability is established.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

See Next Page

DB 1807 133

Lia Crasona Javier (                    )                                    Page 2 of 8

disabled (20 CFR 404.1520(a) and 416.920(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, or work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b) and 416.965).  If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual

See Next Page

KFHP000500

DB 1807 134

Lia Crasona Javier (                )                                     Page 3 of 8

functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1.    The claimant's date last insured is September 30, 2017.**

**2.    The claimant has not engaged in substantial gainful activity since January 1, 2013, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

There is no evidence that the claimant has engaged in substantial gainful activity at any time since January 1, 2013 (see, Earnings Records, Dis. Rpt. & Wk. Hx. Rpt.). Therefore, a finding of disability is not precluded on the basis of work activity.

**3.    The claimant has the following severe impairment: a depressive disorder (20 CFR 404.1520(c) and 416.920(c)).**

The claimant has alleged disability on the basis of depression, anxiety and schizophrenia. Her symptoms include hearing voices, suicidal thoughts, tearfulness, fatigue and feeling stressed. She has also alleged number of disabling physical problems including hypertension, headaches, a heart problem, kidney problems, shortness of breath, neck and body pain, welts and swelling in her feet, a compromised immune system and poor vision at times, and has also reported that she is afraid that she will have a heart attack or stroke. The claimant reported that she often stays in bed, neglects her personal hygiene and self-grooming, cannot be around people for too long, may not eat for days at a time and generally has difficulty functioning on a day-to-day basis (see, Dis. Rpt., Dis. Rpt.-Appeal & Func. Rpt.). The claimant's daughter, Chelseay Javier, stated that the claimant spends her days watching TV and crying (see, 3rd Party Func. Rpt.).

As will be discussed below, the findings reported in the claimant's medical records indicate that the above impairment has more than a minimal effect on her ability to work. I therefore find that the claimant's mental impairment is "severe."

Although the claimant has also alleged disabling high blood pressure, no significant positive objective findings or complications associated with that condition have been reported in her treatment records which indicate that that condition is generally well-controlled (see, Tx. Notes fr. Kaiser Hospital, Brentwood Health Center & Contra Costa Regional Medical Center). There

See Next Page

KFHP000501

DB 1807 135

Lia Crasona Javier (                    )                              Page 4 of 8

is nothing in the claimant's medical records to suggest that her hypertension has more than a minimal effect on her ability to work and I find that it is "non-severe."

**4.    The severity of the claimant's impairments meet the criteria of section 12.04 and section 12.06 of the Listing of Impairments found at 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) and 416.925).**

Although the claimant has a long history of multiple somatic complaints, no significant positive objective findings have been reported on physical examinations or laboratory testing performed in connection with those complaints. Instead, the claimant's somatic complaints have repeatedly been linked to psychological symptoms.

Thus, when the claimant reported dizziness/disequilibrium on a visit to Kaiser Hospital in October 2008, her physician suspected that the problem was stress-related (10/30/08 Tx. Note). Thereafter, in April 2011, when the claimant presented to the emergency room at Contra Costa Regional Medical Center stating that she feared that she had irritation due to an STD, her emergency room physician noted that the claimant appeared extremely paranoid and concluded that her irritation was likely stress-related (4/2/11 Contra Costa Regional Medical Center ER Report). When the claimant returned to the emergency room in the following month reporting high blood pressure, she was diagnosed with a generalized anxiety disorder with panic attacks (5/2/11 ER Report).

Moreover, when the claimant reported blurry vision, lightheadedness, dizziness and poor sleep in July 2011 on a visit to Brentwood Health Center, her visual acuity was measured at 20/20 in both eyes and no physical source of her complaints was identified. The claimant was again diagnosed with anxiety and psychotropic medication was prescribed (7/21/11 Tx. Note). In the following month, on complaints of insomnia and fatigue, the claimant was diagnosed with depression and anxiety, and additional psychotropic medication was prescribed (8/5/11 Tx. Note).

When the claimant returned to Brentwood Health Center in May and June 2012 with various physical complaints, her blood pressure was found to be normal and physical examinations were unremarkable. The claimant's health concerns were again linked to anxiety at that time (5/4/12 & 6/15/12 Tx. Notes). Thereafter, the claimant began seeing Holly Hand, LMFT, a therapist, on a weekly basis beginning in September 2012 (9/12/12 Tx. Note).

In October 2012, the claimant told consultative psychologist, Dr. Khalifeh, that she felt depressed, had difficulty sleeping, had had changes in her appetite, had feelings of hopelessness, helplessness and worthlessness, had no interest in her usual activities, was struggling to make it through most days, had difficulty completing her activities of daily living and was spending her days day crying and watching television. On mental status examination, the claimant's mood was depressed, and she was tearful and upset. Dr. Khalifeh diagnosed a major depressive disorder and assigned the claimant a GAF score of 41 indicating serious symptoms. See, DSM-IV-TR (Washington, DC, American Psychi. Ass'n., 2004). She then concluded that the claimant would have significant emotional difficulties maintaining a consistent work schedule, would have a moderate impairment in her ability to maintain adequate pace, concentration and persistence throughout an 8 hour workday, would have a moderate impairment in her ability to

See Next Page

KFHP000502

DB 1807 136

Lia Crasona Javier (                    )                                   Page 5 of 8

manage routine changes in a work environment and would have a moderate impairment in her ability to interact appropriately with coworkers, supervisors and the public (10/16/12 Report).

In November 2012, when Ms. Hand saw the claimant, she noted that she was rambling, tangential, irritable and angry, had pressured speech and racing thoughts and exhibited forgetfulness (11/13/12, 11/20/12 & 11/27/12 Tx. Notes). In the following month, Ms. Hand assessed the claimant's overall functioning. She noted that the claimant had symptoms including "borderline anorexia," social isolation, significant interpersonal conflicts with family members and friends, paranoia and was pre-occupation with resentments/hostility towards others. In addition, Ms. Hand noted that the claimant had limited insight, significant mood swings/agitation, difficulty with concentration, a significant perceptual and thought disturbance, tangentiality, mania, pressured/rapid speech, delusions, paranoid ideation and some evidence of disorganization. She also observed that the claimant's interpersonal relationships were significantly impacted by her hostility and argumentativeness and, consequently, she was becoming increasingly isolated over time. Ms. Hand diagnosed a bipolar disorder, borderline personality disorder, a delusional disorder and anorexia nervosa and concluded that the claimant's intensive level of hostility, paranoia and anger rendered her unemployable except under very limited circumstances (12/11/12 Mental Disorder Q'aire. Form).

The claimant also began receiving treatment from Dr. Sachdev in December 2012. Dr. Sachdev diagnosed a major depressive disorder, severe, with possible paranoid thoughts and a possible bipolar disorder. He then ordered changes in the claimant's psychotropic medications (12/21/12 Tx. Note). In January 2013, Dr. Sachdev noted that the claimant continued to struggle with depression and anger, was irritable and had a hard time being around other people. On mental status examination, the claimant appeared anxious, had a depressed mood and irritable affect and exhibited some paranoia (1/18/13 Tx. Note). Thereafter, when Ms. Hand saw the claimant in February 2013, she noted that the claimant continued to have rapid and rambling speech as well as agitation and irritation (2/19/13 Tx. Note).

In April 2013, the claimant told her physician at Brentwood Health Center that she was still experiencing anxiety and was withdrawn from others despite taking her psychotropic medications. The claimant also complained of feeling that she was immune-compromised but her physician noted that all work-ups performed in connection with that complaint had been unremarkable and, while the claimant was "worried about the possibility of immunodeficiency...there really seem[ed] to be no evidence of this." Finally, the claimant complained of joint pain in the same month, but x-rays of her hands were negative (4/10/13 and 4/21/13 Tx. Notes & 4/16/13 X-ray Report).

In May 2013, Ms. Hand reevaluated the claimant and diagnosed a borderline personality disorder, a delusional disorder and anorexia nervosa. She also stated that under stress, the claimant was experiencing transient paranoid ideation, that her thoughts were frequently distorted and confused and that she had had significant impairments in understanding, memory and sustain concentration. Ms. Hand further noted that the claimant had significant affective instability with marked reactivity of mood resulting in displays of inappropriate anger, argumentativeness and irritability that had caused a long history of difficulty interacting with friends, family, care providers and strangers, unstable and intense relationships, and frequent

See Next Page

KFHP000503

DB 1807 137

Lia Crasona Javier (              )                                    Page 6 of 8

disruption of her functioning. Thus, in Ms. Hand's opinion, the claimant was disabled from any employment involving cooperative interaction with others (5/3/13 Letter).

When Dr. Sachdev saw the claimant in the same month, he reported pressured speech, irritability and some paranoia. Dr. Sachdev then confirmed the diagnosis of bipolar disorder and concluded that the claimant had poor abilities to complete a normal work day and work week without interruptions from psychologically-based symptoms and respond appropriately to changes in a work setting (5/11/13 Tx. Note & Short-Form Evaluation for Mental Disorders). In August 2013, Dr. Sachdev stated that the claimant continued to be extremely unstable with worsening of her psychological condition despite her maintenance on multiple psychotropic medications. He then stated that in his opinion, the claimant was incapable of maintaining any type of employment (8/9/13 Letter).

The findings reported in the claimant's medical records indicate that the severity of her mental impairment meets the criteria of Section 12.04. The "paragraph A" criteria of Section 12.04 are satisfied because the record describes anhedonia, an appetite disturbance, a sleep disturbance, psychomotor agitation, feelings of worthlessness, difficulty concentrating, thoughts of suicide and paranoid thinking.

In terms of the "paragraph B" criteria of section 12.04, although the claimant has reported that she has been able to care for her son, washed dishes and go grocery shopping, she has also reported that she needs assistance from her son to maintain their household and complete errands. In addition, she has reported that she often stays in bed, will go for long periods of time without washing her hair, has severely restricted food intake and needs reminders from her son to take care of her personal needs and grooming. The claimant and her daughter further reported that the claimant generally spends her days at home watching TV and crying. Although the claimant attempted to return to school in 2013, she did not do well and was placed on probation (see, Dis. Rpt.-Appeal, Func. Rpt., 3rd Party Func. Rpt., 10/16/12 Report of Dr. Khalifeh, 12/11/12 Mental Disorder Q'aire. Form fr. Ms. Hand & 5/11/13 Tx. Note fr. Dr. Sachdev). Consequently, I find that the claimant's impairment causes a marked restriction in activities of daily living.

Furthermore, the record describes the claimant's increasing social isolation, paranoia and anger towards other. Thus, in October 2012, Dr. Khalifeh noted that the claimant had "significant emotional difficulties" which impeded her ability to interact with others (10/16/12 Report); in December 2012, Ms. Hand noted that the claimant had become increasingly isolated because of her hostility and argumentativeness, and that her intensive level of hostility, paranoia and anger rendered her essentially unemployable (12/11/12 Mental Disorder Q'aire. Form); social isolation was noted by the claimant's physician at Brentwood Health Center in April 2013 (4/10/13 & 4/21/13 Tx. Notes); in January 2013, Dr. Sachdev noted that the claimant was irritable, paranoid and had a hard time being around other people (1/18/13 Tx. Note); and in May 2013, Ms. Hand noted that the claimant had a long history of unstable and intense relationships with difficulty interacting with friends, family, care providers and strangers, and that her functioning was frequently disrupted due to displays of inappropriate anger, argumentativeness and irritability (5/3/13 Letter). Consistent with this evidence, I find that the claimant has marked difficulties in maintaining social functioning,

See Next Page

KFHP000504

DB 1807 138

Lia Crasona Javier (                 )                                    Page 7 of 8

The evidence of record thus satisfies all of the criteria of Section 12.04 for a Listing level affective disorder. In so concluding, I have considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-6p and 06-3p. I give great weight to the findings by Ms. Hand, Dr. Sachdev and Dr. Khalifa whose opinions are consistent with the claimant's history and supported by the findings reported on psychological examinations. While the State Agency physician found that the claimant had no Listing level mental impairment, I do not find that opinion persuasive and entitled to great weight since it is not consistent with the record as a whole including the August 2013 report by Dr. Sachdev which was not before the State Agency at the time of its determination.

I have also considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.

**5.   The claimant has been under a disability as defined in the Social Security Act since January 1, 2013, the amended alleged onset date of disability, and disability is reasonably expected to last for at least 12 continuous months (20 CFR 404.1520(d) and 416.920(d)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on July 6, 2012, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since January 1, 2013, and disability is reasonably expected to last for at least 12 continuous months.

Based on the application for supplemental security income protectively filed on July 6, 2012, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act since January 1, 2013, and disability is reasonably expected to last for at least 12 continuous months.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

Medical improvement is expected with appropriate treatment. Consequently, a continuing disability review is recommended in 36 months.

See Next Page

KFHP000505

DB 1807 139

Lia Crasona Javier (          )                          Page 8 of 8

/s/ *Judith A. Dickman*
_____
Judith A. Dickman
Senior Attorney Adjudicator

August 27, 2013
_____
Date

KFHP000506

DB 1807 140

# Exhibit 9

# Exhibit 9

# Exhibit 9

KFHP000507

DB 1807 141

 **KAISER PERMANENTE.**

<u>NOTICE OF DENIAL</u>

June 21, 2018

*Via Federal Express*

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
      Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on
March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser
Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to revoke your
pension election under the limited one-time pension election opportunity program (the "Special
Distribution Program"). This letter explains the reasons for the denial.

<u>Background</u>

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election
opportunity to certain former employees who have a vested pension benefit. This postcard
informed you to be on the lookout for your personalized election kit, and that you would need to
act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit
contained instructions and forms to complete in order to receive a single lump sum payment or a
monthly annuity. The election kit also provided that you must mail your completed forms or
complete your election online and provide any required documentation no later than October 5,
2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5,
2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you
of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
175641.v1

KFHP000508

DB 1807 142

 KAISER PERMANENTE®

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that the Plan does not permit Disability Retirement Benefits and you stated that that was not the reason you wanted to file a claim. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

175641.v1

2

DB 1807 143

 **KAISER PERMANENTE**

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment. You also signed that you understood that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

175641.v1

KFHP000510

DB 1807 144

 **KAISER PERMANENTE.**

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**Your Appeal Rights**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

4

175641.v1

DB 1807 145

 **KAISER PERMANENTE**®

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,

Benefits Compliance
Kaiser Foundation Health Plan, Inc.

175641.v1

KFHP000512

DB 1807 146

 **KAISER PERMANENTE**

**APPENDIX A
APPLICABLE PLAN PROVISIONS
KAISER PERMANENTE RETIREMENT PLAN**

2.8    <u>Benefit Commencement Date.</u>  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

<div align="center">****</div>

2.30    <u>Election Period.</u>  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

<div align="center">****</div>

8.1    <u>Payment Election.</u>

<div align="center">****</div>

(c)    <u>Participant Election.</u>  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

<div align="center">****</div>

9.7    <u>Miscellaneous</u>

(d)    <u>Notices and Missing Persons</u>.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****

**APPENDIX 9
2017 SPECIAL DISTRIBUTION ELECTION**

1.1    <u>2017 Special Distribution Election</u>. This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

175641.v1

KFHP000513

DB 1807 147

**KAISER PERMANENTE**®

****

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

****

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.                    A-2
175641.v1

KFHP000514

DB 1807 148

# Exhibit 10

# Exhibit 10

# Exhibit 10

KFHP000515

DB 1807 149

June 28, 2018

## Appeal

To Whom it May concern, I, Chelsey Farris and writing in behalf of my mother Lisa C. Farris. We have sent in her appeals with her proof that she is mentally disabled. I take care of all of her Bills, I am power of attorney over all of her things. Please let me understand how you have let a mentally disabled person, take a life financial sum from her retirement, she has constantly asked people to help her and explain to her. She had no clue how to do any of this she just wanted to save her home. She is permanently disabled, and she is very low income. I need to understand what part of that don't you get? You should have never given such a sum to a disabled person. This will mess up her Social Security, her food stamps and her taxes. If this appeal of the appeal is denied, we will take it to

KFHP000516

DB 1807 150

Lia C. Javier

KFHP000517

| **From:** | Benjamin Spater |
|---|---|
| **Sent:** | Monday, December 10, 2018 4:42 PM |
| **To:** | Jahiz N. Agard |
| **Cc:** | Sarah Kanter |
| **Subject:** | FW: Signed Appeal Letters from 12-5-18 Meeting |
| **Attachments:** | REDACTED     #179020 Javier_Lia 12.10.18.pdf; |

Please give the PRB letters to Mikaela and the DB letters to Kelly.  Thanks!

**Benjamin Spater | Director | Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | F. 1-415-421-2017
E. bspater@truckerhuss.com | truckerhuss.com

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Kelly M Zakimi [mailto:Kelly.M.Zakimi@kp.org]
**Sent:** Monday, December 10, 2018 4:40 PM
**To:** Shirley H Liu; Benjamin Spater
**Cc:** Leighton N Hasegawa
**Subject:** Signed Appeal Letters from 12-5-18 Meeting

Good afternoon,

The appeal letters were signed and mailed out around 1:30pm HST.  Please see attached for the signed copies of all thirteen letters.  If you have any questions or need help with anything, please let me know.

Thank you!

**Kelly Zakimi**
Management Assistant
Executive Office Support

**Hawaii Permanente Medical Group**
Kaiser Permanente
Strategy, Leadership and Communications
Mapunapuna Medical Office
2828 Pa'a Street
Honolulu, HI 96819

1

Office: (808) 432-5870
Fax: (808) 432-5827
Email: kelly.m.zakimi@kp.org

**http://careers.hawaiipermanente.com/**

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

KFHP000519

 **KAISER PERMANENTE**®

Kaiser Permanente Administrative Committee
c/o Kaiser Foundation Health Plan, Inc.
One Kaiser Plaza, Floor 20B
Oakland, CA 94612

*Notice of Decision on Appeal*

December 10, 2018

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Re:**     Eligibility to Revoke Pension Election
**Plan:**   Kaiser Permanente Salaried Retirement Plan Supplement To the Kaiser
           Permanente Retirement Plan

Dear Ms. Javier:

The Appeals Subcommittee of the Kaiser Permanente Administrative Committee (the "Committee") has reviewed your appeal to revoke your lump sum pension election made under the limited one-time pension election opportunity program (the "Special Distribution Program"). For the reasons explained below, the Committee has denied your appeal.

<u>Background</u>

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election opportunity to certain former employees who have a vested pension benefit. This postcard informed you to be on the lookout for your personalized election kit, and that you would need to act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit contained instructions and forms to complete in order to receive a single lump sum payment or a monthly annuity. The election kit also provided that you must mail your completed forms or complete your election online and provide any required documentation no later than October 5, 2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5, 2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you of the deadline.

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that the postcard was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information, and then called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. During this call, you stated that this was a hard decision for you because you are disabled. You also asked if there was a way to cancel an election to participate in the Special Distribution Program, and the representative explained that the deadline to cancel an election would be October 31st. Later than day, you called the PEHD again to speak with a third representative, who answered your questions about how to complete the election kit online.

That same day, you completed your online election kit and elected a lump sum payment.

On November 10, 2017, a check in the net amount of $29,263.94 was issued to you. Out of the gross amount payable of $37,517.88, $8,253.94 was withheld from your lump sum payment for federal and state tax withholding.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability, and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you were disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback, and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that because you are mentally disabled, someone should have explained your options to you and informed you that your benefits from the

2

KFHP000521

Social Security Administration would be impacted.  The KPRC representative stated that they would send you a claim initiation form ("CIF").

On March 26, 2018, the Plan received your CIF, in which you stated that the PEHD representative that you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request.  You also stated that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash.  You also submitted a Notice of Adjudicator Decision – Fully Favorable (the "Social Security Determination") from the Social Security Administration dated August 27, 2013, which provides that you have alleged disability on the basis of depression, anxiety, and schizophrenia.  The Social Security Determination finds that you have a depressive disorder that significantly limits your ability to perform basic work activities, and that you have marked difficulties in maintaining social function.  The Social Security Determination also states that medical improvement is expected with appropriate treatment, and that a continuing disability review is recommended in 36 months.

On June 21, 2018, the Plan sent you a notice of denial on the grounds that you did not revoke your election within the period of time prescribed by the Plan and that your election was now irrevocable.  The notice of denial also explained that you completed an election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment, and that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

On October 2, 2018, an appeal letter was received from your daughter, on your behalf.  In the letter, your daughter states that you are mentally disabled and that you should never have been allowed to make a lump sum election.  She also states that the lump sum will affect your Social Security benefits, food stamps, and taxes.

**Governing Provisions**

The Plan's applicable governing provisions are included as Appendix A.

**Analysis**

The Plan provides that a participant has a limited time during which he or she can revoke an election to receive benefits and the form of payment of those benefits.  The Plan provides that a participant may elect a Form of Payment during the Election Period, which is the 90-day period ending on the participant's elected Benefit Commencement Date.  The Plan also provides that a participant may revoke such an election at any time during the Election Period, but that an election is irrevocable when the Election Period expires.  (See Section 8.1(c) in Appendix A).

3

KFHP000522

Under federal law applicable to employee benefit plans, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Plan must be administered in accordance with its terms. Your elected Benefit Commencement Date was November 1, 2017. Therefore, under the terms of the Plan, your election of a lump sum became irrevocable on that date. Accordingly, the Committee has denied your appeal.

### ERISA Rights

The decision of the Committee is final. Your appeal to the Committee is the last step in the Plan's administrative appeal process. If you disagree with the Committee's decision, you have the right to bring a civil action under Section 502(a) of ERISA within one year of the date of this letter. Additionally, you are entitled to receive, upon request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to your claim for benefits (other than documents or records that are protected and privileged).

Sincerely,

Leighton N. Hasegawa
Chairperson
Appeals Subcommittee of the Kaiser Permanente Administrative Committee


cc:     Shirley H. Liu
        Benjamin F. Spater

4

KFHP000523

## Appendix A

## APPLICABLE PLAN PROVISIONS[1]

## KAISER PERMANENTE RETIREMENT PLAN

2.8    Benefit Commencement Date.  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

2.30    Election Period.  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

8.1    Payment Election.

****

(c)    Participant Election.  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

****

9.7    Miscellaneous

****

(d)    Notices and Missing Persons.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****

### APPENDIX 9
### 2017 SPECIAL DISTRIBUTION ELECTION

---

[1] A sequence of four asterisks (* * * *) means a portion of the Plan text has been omitted.

KFHP000524

1.1    <u>2017 Special Distribution Election</u>. This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

<center>****</center>

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

<center>****</center>

<center>6</center>

KFHP000525

**Laura Walker**

| | |
|---|---|
| **From:** | Freeman Levinrad |
| **Sent:** | Sunday, October 14, 2018 2:30 PM |
| **To:** | Irving, Kelly-Ann L; Benjamin Spater |
| **Cc:** | Robert Gower; Jahiz N. Agard; Adrine Adjemian; Shannon Oliver; Figueroa, Aurellymar |
| **Subject:** | RE: Lia Javier - Appeal Inquiry |

Hi Kelly,

Yes, we have received her appeal.

Best,

**Freeman Levinrad** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8068 | F. 1-415-421-2017
E. flevinrad@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Irving, Kelly-Ann L [mailto:Kelly-Ann.Irving@mercer.com]
**Sent:** Friday, October 12, 2018 8:59 AM
**To:** Benjamin Spater
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver; Figueroa, Aurellymar
**Subject:** RE: Lia Javier - Appeal Inquiry

Hello –

Following up on the below.  Please let us know if Trucker Huss is in receipt of Ms. Javier's appeal.

Thanks,
Kelly

**From:** Figueroa, Aurellymar
**Sent:** Tuesday, October 02, 2018 4:42 PM
**To:** Benjamin Spater
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver; Irving, Kelly-Ann L
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Ben –

Below is the link to Ms. Javier's previously denied claim. Please note that we are inquiring about the receipt of her appeal paperwork, per her inquiry to the KPRC.

https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_2eb0c

1

KFHP000526

Thanks!
Aurellymar

**From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 4:35 PM
**To:** Figueroa, Aurellymar
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver
**Subject:** Re: Lia Javier - Appeal Inquiry

Can you send the link to her claim please ?

Sent from my iPhone

On Oct 2, 2018, at 1:19 PM, Figueroa, Aurellymar <Aurellymar.Figueroa@mercer.com> wrote:

> Hi Ben –
>
> We need confirmation of Lia Javier's appeal.
>
> Aurellymar
>
> **From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
> **Sent:** Tuesday, October 02, 2018 3:44 PM
> **To:** Figueroa, Aurellymar
> **Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver
> **Subject:** RE: Lia Javier - Appeal Inquiry
>
> So for whose case are looking for confirmation of an appeal?
>
> **Benjamin Spater** | Director | **Trucker Huss, APC**
> ERISA and Employee Benefits Attorneys
> One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
> T. 1-415-788-3111 | F. 1-415-421-2017
> E. bspater@truckerhuss.com | truckerhuss.com
>
> This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.
>
>  Please consider the environment before printing this email
>
> **From:** Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
> **Sent:** Tuesday, October 02, 2018 12:43 PM
> **To:** Shannon Oliver
> **Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
> **Subject:** RE: Lia Javier - Appeal Inquiry
>
> Hi Shannon –
>
> My apologizes. I used an older email and did not delete the previous email chain.
>
> Lia Javier has no connection to REDACTED

2

KFHP000527

Aurellymar

**From:** Shannon Oliver [mailto:SOliver@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 12:46 PM
**To:** Figueroa, Aurellymar
**Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Aurellymar,

The link and original message below relates to REDACTED          We sent REDACTED ᴵ a notice of CIF receipt on 9/12/18. Is Lia Javier related in some way to REDACTED ᴵ?

Thank you!

Shannon Oliver | Paralegal | Trucker Huss, APC
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.
Π Please consider the environment before printing this email

-----Original Message-----
From: Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
Sent: Tuesday, October 02, 2018 9:04 AM
To: Diane.M.Anderson@kp.org; Benjamin Spater; Billie.J.Ponder@kp.org; Robert Gower; Jahiz
N. Agard; Freeman Levinrad; Shannon Oliver
Cc: Irving, Kelly-Ann L; Proefrock, Heather
Subject: Lia Javier - Appeal Inquiry

Hi -

Ms. Javier has contacted the KPRC in reference to her appeal paperwork recently submitted and is looking for confirmation of receipt. Please confirm if her appeal has been received?

Thanks!
Aurellymar

-----Original Message-----
From: Figueroa, Aurellymar
Sent: Monday, September 10, 2018 4:53 PM
To: Irving, Kelly-Ann L; Collentro, Jen; Proefrock, Heather; Diane.M.Anderson@kp.org;
BSpater@TruckerHuss.com; Billie.J.Ponder@kp.org; rgower@truckerhuss.com;

3

KFHP000528

jagard@truckerhuss.com; FLevinrad@truckerhuss.com; Soliver@truckerhuss.com; Habib, Mikaela
Cc: Figueroa, Aurellymar
Subject: eRoom alert - CIF Received on 9/7/2018 - Josephine Romero

Please check out this item in the Kaiser Permanente - DB and PRB Claims eRoom:

Kaiser Permanente - DB and PRB Claims/ DB Claims and Appeals/ Claims and Appeals Database/ REDACTED
https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_4040a

To turn on notification for this item, go to:
https://connectweb5.mercer.com/eRoomASP/FormDispatcher.asp?Dlg=DlgNotifications&ID=0_4040a&Ctxt=.MercerNA-US1.KaiserPermanente-DBandPRBClaims.0_4040a

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here.**

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

**Disclaimer**

KFHP000529

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000530

**Laura Walker**

| | |
|---|---|
| **From:** | Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com> |
| **Sent:** | Friday, October 12, 2018 8:59 AM |
| **To:** | Benjamin Spater |
| **Cc:** | Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver; Figueroa, Aurellymar |
| **Subject:** | RE: Lia Javier - Appeal Inquiry |

Hello –

Following up on the below.  Please let us know if Trucker Huss is in receipt of Ms. Javier's appeal.

Thanks,
Kelly

**From:** Figueroa, Aurellymar
**Sent:** Tuesday, October 02, 2018 4:42 PM
**To:** Benjamin Spater
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver; Irving, Kelly-Ann L
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Ben –

Below is the link to Ms. Javier's previously denied claim. Please note that we are inquiring about the receipt of her appeal paperwork, per her inquiry to the KPRC.

https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_2eb0c

Thanks!
Aurellymar

**From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 4:35 PM
**To:** Figueroa, Aurellymar
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver
**Subject:** Re: Lia Javier - Appeal Inquiry

Can you send the link to her claim please ?

Sent from my iPhone

On Oct 2, 2018, at 1:19 PM, Figueroa, Aurellymar <Aurellymar.Figueroa@mercer.com> wrote:

> Hi Ben –
>
> We need confirmation of Lia Javier's appeal.
>
> Aurellymar

1

KFHP000531

**From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 3:44 PM
**To:** Figueroa, Aurellymar
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver
**Subject:** RE: Lia Javier - Appeal Inquiry

So for whose case is looking for confirmation of an appeal?

**Benjamin Spater** | Director | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | F. 1-415-421-2017
E. bspater@truckerhuss.com | truckerhuss.com

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
**Sent:** Tuesday, October 02, 2018 12:43 PM
**To:** Shannon Oliver
**Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Shannon –

My apologizes. I used an older email and did not delete the previous email chain.

Lia Javier has no connection to REDACTED

Aurellymar

**From:** Shannon Oliver [mailto:SOliver@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 12:46 PM
**To:** Figueroa, Aurellymar
**Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Aurellymar,

The link and original message below relates to REDACTED     We sent REDACTED a notice of CIF receipt on 9/12/18. Is Lia Javier related in some way to REDACTED ?

Thank you!

Shannon Oliver | Paralegal | Trucker Huss, APC
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

2

KFHP000532

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

Π Please consider the environment before printing this email

-----Original Message-----
From: Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
Sent: Tuesday, October 02, 2018 9:04 AM
To: Diane.M.Anderson@kp.org; Benjamin Spater; Billie.J.Ponder@kp.org; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Shannon Oliver
Cc: Irving, Kelly-Ann L; Proefrock, Heather
Subject: Lia Javier - Appeal Inquiry

Hi -

Ms. Javier has contacted the KPRC in reference to her appeal paperwork recently submitted and is looking for confirmation of receipt. Please confirm if her appeal has been received?

Thanks!
Aurellymar

-----Original Message-----
From: Figueroa, Aurellymar
Sent: Monday, September 10, 2018 4:53 PM
To: Irving, Kelly-Ann L; Collentro, Jen; Proefrock, Heather; Diane.M.Anderson@kp.org; BSpater@TruckerHuss.com; Billie.J.Ponder@kp.org; rgower@truckerhuss.com; jagard@truckerhuss.com; FLevinrad@truckerhuss.com; Soliver@truckerhuss.com; Habib, Mikaela
Cc: Figueroa, Aurellymar
Subject: eRoom alert - CIF Received on 9/7/2018 - REDACTED

Please check out this item in the Kaiser Permanente - DB and PRB Claims eRoom:

Kaiser Permanente - DB and PRB Claims/ DB Claims and Appeals/ Claims and Appeals Database/ REDACTED
https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_4040a

To turn on notification for this item, go to:
https://connectweb5.mercer.com/eRoomASP/FormDispatcher.asp?Dlg=DlgNotifications&ID=0_4040a&Ctxt=.MercerNA-US1.KaiserPermanente-DBandPRBClaims.0_4040a

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure,

KFHP000533

distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

KFHP000534

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000535

 **KAISER PERMANENTE**®

June 21, 2018

***Via Federal Express***

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
    Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on
March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser
Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to revoke your
pension election under the limited one-time pension election opportunity program (the "Special
Distribution Program"). This letter explains the reasons for the denial.

**<u>Background</u>**

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election
opportunity to certain former employees who have a vested pension benefit. This postcard
informed you to be on the lookout for your personalized election kit, and that you would need to
act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit
contained instructions and forms to complete in order to receive a single lump sum payment or a
monthly annuity. The election kit also provided that you must mail your completed forms or
complete your election online and provide any required documentation <u>no later than October 5,
2017</u>.

On September 11, 2017, you were sent another postcard reminding you about the October 5,
2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you
of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
175641.v1

 **KAISER PERMANENTE**®

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that the Plan does not permit Disability Retirement Benefits and you stated that that was not the reason you wanted to file a claim. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

KFHP000537

 **KAISER PERMANENTE.**

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment. You also signed that you understood that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

KFHP000538

**KAISER PERMANENTE**

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**Your Appeal Rights**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

175641.v1

KFHP000539

 **KAISER PERMANENTE.**

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,

Benefits Compliance
Kaiser Foundation Health Plan, Inc.

175641.v1

KFHP000540

 **KAISER PERMANENTE**®

### APPENDIX A
### APPLICABLE PLAN PROVISIONS
### KAISER PERMANENTE RETIREMENT PLAN

2.8    <u>Benefit Commencement Date.</u>  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

****

2.30    <u>Election Period.</u>  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

****

8.1    <u>Payment Election.</u>

****

(c)    <u>Participant Election.</u>  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

****

9.7    <u>Miscellaneous</u>

(d)    <u>Notices and Missing Persons.</u>  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****

### APPENDIX 9
### 2017 SPECIAL DISTRIBUTION ELECTION

1.1    <u>2017 Special Distribution Election</u>.  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

A-1

175641.v1

KFHP000541

**ᛘᛉᛄ KAISER PERMANENTE**₀

<div align="center">****</div>

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

<div align="center">****</div>

---

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.    A-2

175641.v1

KFHP000542

 **KAISER PERMANENTE**⊚

bcc:    Diane M. Anderson (via email): Diane.M.Anderson@kp.org
         Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
         Jennifer Collentro (via email): Jennifer.collentro@mercer.com
         Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
         Karen Worcester (via email): Karen.Worcester@mercer.com
         Bryan Start (via email): bryan.start@mercer.com
         Benjamin F. Spater (via email): bspater@truckerhuss.com

175641.v1

KFHP000543

**Laura Walker**

| | |
|---|---|
| **From:** | Freeman Levinrad |
| **Sent:** | Thursday, October 4, 2018 10:54 AM |
| **To:** | Shirley H Liu |
| **Cc:** | Benjamin Spater; Shannon Oliver |
| **Subject:** | Javier - Acknowledgment of Appeal |
| **Attachments:** | DOCS-#178087-v1-Javier_Acknowledgment_of_Appeal.DOCX |

Hi Shirley,

Please find attached an appeal acknowledgment letter to Lia Javier.

There are highlighted blanks to complete based on the date of the next meeting after the 10/16 meeting.

Please let me know if you have any questions and provide us with a copy of the letter when it is transmitted.

Thank you,

Freeman

**Freeman Levinrad | Associate | Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8068 | F. 1-415-421-2017
E. flevinrad@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

KFHP000544

[INSERT DATE]

***Via USPS Overnight Delivery***

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

Re:  ***Appeal for Eligibility for Limited One-Time Pension Election Opportunity***
Plan:  ***Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan***

Dear Ms. Javier:

The Appeals Subcommittee of the Kaiser Permanente Administrative Committee (the "Subcommittee") has received your letter appealing the denial of your claim for eligibility for limited one-time pension election opportunity benefits under the Plan.

We are in the process of preparing your appeal for presentation to the Committee.  If you have additional information that you want the Committee to consider or if you wish to bring to the Committee's attention a particular aspect of your appeal, we must receive this information no later than [INSERT DATE FOR TWO WEEKS PRIOR TO MEETING DATE].  If you need more time to gather this information, you may request that the Committee postpone consideration of your appeal to a later meeting.  Please send all communications to the Committee at the following address:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> One Kaiser Plaza, Floor 20B
> Oakland, CA 94612

Unless additional time is necessary to complete the review of your appeal (for which you will be notified), the Committee will make a decision regarding your appeal at its next scheduled meeting (on or around [INSERT NEXT MEETING DATE]).  You may expect to receive a written response shortly thereafter.

Sincerely,


Shirley H. Liu
Secretary
Kaiser Permanente Administrative Committee


178087.v1

KFHP000545

**Laura Walker**

| | |
|---|---|
| **From:** | Shirley H Liu <Shirley.H.Liu@kp.org> |
| **Sent:** | Wednesday, October 3, 2018 2:20 PM |
| **To:** | Shannon Oliver |
| **Cc:** | Benjamin Spater |
| **Subject:** | RE: Lia Javier - KPRP Appeal Received? |

Hi Shannon,

I just forwarded the appeal over to Ben.  It was received in our mailroom yesterday.

Thanks,

Shirley

**From:** Shannon Oliver <SOliver@truckerhuss.com>
**Sent:** Tuesday, October 02, 2018 2:04 PM
**To:** Shirley H Liu <Shirley.H.Liu@kp.org>
**Subject:** Lia Javier - KPRP Appeal Received?
**Importance:** High

**Caution:** This email came from outside Kaiser Permanente. Do not open attachments or click on links if you do not recognize the sender.

Hi Shirley,

Lia Javier has inquired with the KPRC regarding receipt of her appeal letter.  Did you happen to receive any appeal correspondence from Ms. Javier?

Thank you!

**Shannon Oliver** | Paralegal | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**Disclaimer**

1

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

**NOTICE TO RECIPIENT:**  If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents.  If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them.  Thank you.

KFHP000547

**Laura Walker**

| | |
|---|---|
| **From:** | Shannon Oliver |
| **Sent:** | Tuesday, October 2, 2018 4:57 PM |
| **To:** | Benjamin Spater |
| **Cc:** | Jahiz N. Agard; Freeman Levinrad |
| **Subject:** | FW: Lia Javier - KPRP Appeal Received? |
| | |
| **Importance:** | High |

FYI.

**Shannon Oliver** | Paralegal | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Shannon Oliver
**Sent:** Tuesday, October 02, 2018 2:04 PM
**To:** 'Shirley.H.Liu@kp.org'
**Subject:** Lia Javier - KPRP Appeal Received?
**Importance:** High

Hi Shirley,

Lia Javier has inquired with the KPRC regarding receipt of her appeal letter.  Did you happen to receive any appeal correspondence from Ms. Javier?

Thank you!

**Shannon Oliver** | Paralegal | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

KFHP000548

**Laura Walker**

| | |
|---|---|
| **From:** | Shannon Oliver |
| **Sent:** | Tuesday, October 2, 2018 2:04 PM |
| **To:** | 'Shirley.H.Liu@kp.org' |
| **Subject:** | Lia Javier - KPRP Appeal Received? |

**Importance:**        High

Hi Shirley,

Lia Javier has inquired with the KPRC regarding receipt of her appeal letter.  Did you happen to receive any appeal correspondence from Ms. Javier?

Thank you!

**Shannon Oliver** | Paralegal | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

KFHP000549

## Laura Walker

| | |
|---|---|
| **From:** | Shannon Oliver |
| **Sent:** | Tuesday, October 2, 2018 1:51 PM |
| **To:** | Benjamin Spater; Jahiz N. Agard |
| **Cc:** | Robert Gower; Freeman Levinrad; Adrine Adjemian |
| **Subject:** | FW: Lia Javier - Appeal Inquiry |

Hi Ben, Jahiz,

I have no record of receiving Ms. Javier's appeal.  Shirley would've sent it to us correct?

Thank you,

**Shannon Oliver | Paralegal | Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
**Sent:** Tuesday, October 02, 2018 1:42 PM
**To:** Benjamin Spater
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver; Irving, Kelly-Ann L
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Ben –

Below is the link to Ms. Javier's previously denied claim. Please note that we are inquiring about the receipt of her appeal paperwork, per her inquiry to the KPRC.

https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_2eb0c

Thanks!
Aurellymar

**From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 4:35 PM
**To:** Figueroa, Aurellymar
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver
**Subject:** Re: Lia Javier - Appeal Inquiry

Can you send the link to her claim please ?

1

KFHP000550

Sent from my iPhone

On Oct 2, 2018, at 1:19 PM, Figueroa, Aurellymar <Aurellymar.Figueroa@mercer.com> wrote:

Hi Ben –

We need confirmation of Lia Javier's appeal.

Aurellymar

**From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 3:44 PM
**To:** Figueroa, Aurellymar
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver
**Subject:** RE: Lia Javier - Appeal Inquiry

So for whose case are looking for confirmation of an appeal?

**Benjamin Spater** | Director | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | F. 1-415-421-2017
E. bspater@truckerhuss.com | truckerhuss.com

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
**Sent:** Tuesday, October 02, 2018 12:43 PM
**To:** Shannon Oliver
**Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Shannon –

My apologizes. I used an older email and did not delete the previous email chain.

Lia Javier has no connection to REDACTED

Aurellymar

**From:** Shannon Oliver [mailto:SOliver@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 12:46 PM
**To:** Figueroa, Aurellymar
**Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Aurellymar,

The link and original message below relates to REDACTED          . We sent REDACTED  a notice

2

KFHP000551

of CIF receipt on 9/12/18. Is Lia Javier related in some way to REDACTED

Thank you!

Shannon Oliver | Paralegal | Trucker Huss, APC
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.
Π Please consider the environment before printing this email

-----Original Message-----
From: Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
Sent: Tuesday, October 02, 2018 9:04 AM
To: Diane.M.Anderson@kp.org; Benjamin Spater; Billie.J.Ponder@kp.org; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Shannon Oliver
Cc: Irving, Kelly-Ann L; Proefrock, Heather
Subject: Lia Javier - Appeal Inquiry

Hi -

Ms. Javier has contacted the KPRC in reference to her appeal paperwork recently submitted and is looking for confirmation of receipt. Please confirm if her appeal has been received?

Thanks!
Aurellymar

-----Original Message-----
From: Figueroa, Aurellymar
Sent: Monday, September 10, 2018 4:53 PM
To: Irving, Kelly-Ann L; Collentro, Jen; Proefrock, Heather; Diane.M.Anderson@kp.org; BSpater@TruckerHuss.com; Billie.J.Ponder@kp.org; rgower@truckerhuss.com; jagard@truckerhuss.com; FLevinrad@truckerhuss.com; Soliver@truckerhuss.com; Habib, Mikaela
Cc: Figueroa, Aurellymar
Subject: eRoom alert - CIF Received on 9/7/2018 - REDACTED

Please check out this item in the Kaiser Permanente - DB and PRB Claims eRoom:

Kaiser Permanente - DB and PRB Claims/ DB Claims and Appeals/ Claims and Appeals Database/ REDACTED
https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_4040a

3

KFHP000552

To turn on notification for this item, go to:
https://connectweb5.mercer.com/eRoomASP/FormDispatcher.asp?Dlg=DlgNotifications&ID=0
_4040a&Ctxt=.MercerNA-US1.KaiserPermanente-DBandPRBClaims.0_4040a

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you

KFHP000553

received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000554

**Laura Walker**

| | |
|---|---|
| **From:** | Figueroa, Aurellymar <Aurellymar.Figueroa@mercer.com> |
| **Sent:** | Tuesday, October 2, 2018 1:42 PM |
| **To:** | Benjamin Spater |
| **Cc:** | Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver; Irving, Kelly-Ann L |
| **Subject:** | RE: Lia Javier - Appeal Inquiry |

Hi Ben –

Below is the link to Ms. Javier's previously denied claim. Please note that we are inquiring about the receipt of her appeal paperwork, per her inquiry to the KPRC.

https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_2eb0c

Thanks!
Aurellymar

---

**From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 4:35 PM
**To:** Figueroa, Aurellymar
**Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver
**Subject:** Re: Lia Javier - Appeal Inquiry

Can you send the link to her claim please ?

Sent from my iPhone

On Oct 2, 2018, at 1:19 PM, Figueroa, Aurellymar <Aurellymar.Figueroa@mercer.com> wrote:

> Hi Ben –
>
> We need confirmation of Lia Javier's appeal.
>
> Aurellymar
>
> ---
>
> **From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
> **Sent:** Tuesday, October 02, 2018 3:44 PM
> **To:** Figueroa, Aurellymar
> **Cc:** Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian; Shannon Oliver
> **Subject:** RE: Lia Javier - Appeal Inquiry
>
> So for whose case are looking for confirmation of an appeal?
>
> **Benjamin Spater | Director | Trucker Huss, APC**
> ERISA and Employee Benefits Attorneys
> One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
> T. 1-415-788-3111 | F. 1-415-421-2017
> E. bspater@truckerhuss.com | truckerhuss.com

1

KFHP000555

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
**Sent:** Tuesday, October 02, 2018 12:43 PM
**To:** Shannon Oliver
**Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Shannon –

My apologizes. I used an older email and did not delete the previous email chain.

Lia Javier has no connection to REDACTED.

Aurellymar

**From:** Shannon Oliver [mailto:SOliver@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 12:46 PM
**To:** Figueroa, Aurellymar
**Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Aurellymar,

The link and original message below relates to REDACTED     . We sent REDACTED a notice of CIF receipt on 9/12/18. Is Lia Javier related in some way to REDACTED ?

Thank you!

Shannon Oliver | Paralegal | Trucker Huss, APC
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.
Π Please consider the environment before printing this email

-----Original Message-----
From: Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
Sent: Tuesday, October 02, 2018 9:04 AM
To: Diane.M.Anderson@kp.org; Benjamin Spater; Billie.J.Ponder@kp.org; Robert Gower; Jahiz

2

KFHP000556

N. Agard; Freeman Levinrad; Shannon Oliver
Cc: Irving, Kelly-Ann L; Proefrock, Heather
Subject: Lia Javier - Appeal Inquiry

Hi -

Ms. Javier has contacted the KPRC in reference to her appeal paperwork recently submitted and is looking for confirmation of receipt. Please confirm if her appeal has been received?

Thanks!
Aurellymar

-----Original Message-----
From: Figueroa, Aurellymar
Sent: Monday, September 10, 2018 4:53 PM
To: Irving, Kelly-Ann L; Collentro, Jen; Proefrock, Heather; Diane.M.Anderson@kp.org; BSpater@TruckerHuss.com; Billie.J.Ponder@kp.org; rgower@truckerhuss.com; jagard@truckerhuss.com; FLevinrad@truckerhuss.com; Soliver@truckerhuss.com; Habib, Mikaela
Cc: Figueroa, Aurellymar
Subject: eRoom alert - CIF Received on 9/7/2018 - REDACTED

Please check out this item in the Kaiser Permanente - DB and PRB Claims eRoom:

Kaiser Permanente - DB and PRB Claims/ DB Claims and Appeals/ Claims and Appeals Database/ REDACTED
https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_4040a

To turn on notification for this item, go to:
https://connectweb5.mercer.com/eRoomASP/FormDispatcher.asp?Dlg=DlgNotifications&ID=0_4040a&Ctxt=.MercerNA-US1.KaiserPermanente-DBandPRBClaims.0_4040a

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited

3

and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message

4

KFHP000558

is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000559

 **KAISER PERMANENTE**₀

June 21, 2018

*Via Federal Express*

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to revoke your pension election under the limited one-time pension election opportunity program (the "Special Distribution Program"). This letter explains the reasons for the denial.

**Background**

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election opportunity to certain former employees who have a vested pension benefit. This postcard informed you to be on the lookout for your personalized election kit, and that you would need to act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit contained instructions and forms to complete in order to receive a single lump sum payment or a monthly annuity. The election kit also provided that you must mail your completed forms or complete your election online and provide any required documentation no later than October 5, 2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5, 2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
175641.v1



All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that the Plan does not permit Disability Retirement Benefits and you stated that that was not the reason you wanted to file a claim. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

175641.v1

KFHP000561

 **KAISER PERMANENTE.**

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment. You also signed that you understood that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

175641.v1

KFHP000562

 **KAISER PERMANENTE**®

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**Your Appeal Rights**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

175641.v1

4

**KAISER PERMANENTE**®

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,

Benefits Compliance
Kaiser Foundation Health Plan, Inc.

175641.v1

5

KFHP000564

 **KAISER PERMANENTE**®

## APPENDIX A
## APPLICABLE PLAN PROVISIONS
## KAISER PERMANENTE RETIREMENT PLAN

2.8     Benefit Commencement Date. Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

\*\*\*\*

2.30     Election Period. Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

\*\*\*\*

8.1     Payment Election.

\*\*\*\*

(c)     Participant Election. The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee. The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires. The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

\*\*\*\*

9.7     Miscellaneous

(d)     Notices and Missing Persons. Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address. Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan. \*\*\*\*

## APPENDIX 9
## 2017 SPECIAL DISTRIBUTION ELECTION

1.1     2017 Special Distribution Election. This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

A sequence of four asterisks (\*\*\*\*) means a portion of the Plan text has been omitted.

A-1

175641.v1

KFHP000565

**KAISER PERMANENTE.**

\*\*\*\*

(b)     <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. \*\*\*\* The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

\*\*\*\*

A sequence of four asterisks (\*\*\*\*) means a portion of the Plan text has been omitted.        A-2
175641.v1

KFHP000566

 **KAISER PERMANENTE**®

bcc:  Diane M. Anderson (via email): Diane.M.Anderson@kp.org
Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
Jennifer Collentro (via email): Jennifer.collentro@mercer.com
Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
Karen Worcester (via email): Karen.Worcester@mercer.com
Bryan Start (via email): bryan.start@mercer.com
Benjamin F. Spater (via email): bspater@truckerhuss.com

175641.v1

KFHP000567

| | |
|---|---|
| **From:** | Figueroa, Aurellymar <Aurellymar.Figueroa@mercer.com> |
| **Sent:** | Tuesday, October 2, 2018 12:43 PM |
| **To:** | Shannon Oliver |
| **Cc:** | Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian |
| **Subject:** | RE: Lia Javier - Appeal Inquiry |

Hi Shannon –

My apologizes. I used an older email and did not delete the previous email chain.

Lia Javier has no connection to REDACTED

Aurellymar

**From:** Shannon Oliver [mailto:SOliver@truckerhuss.com]
**Sent:** Tuesday, October 02, 2018 12:46 PM
**To:** Figueroa, Aurellymar
**Cc:** Benjamin Spater; Robert Gower; Jahiz N. Agard; Freeman Levinrad; Adrine Adjemian
**Subject:** RE: Lia Javier - Appeal Inquiry

Hi Aurellymar,

The link and original message below relates to REDACTED          We sent REDACTED a notice of CIF receipt
on 9/12/18. Is Lia Javier related in some way to REDACTED ?

Thank you!

Shannon Oliver | Paralegal | Trucker Huss, APC
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8067 | F. 1-415-421-2017
E. soliver@truckerhuss.com | truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you
are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are
hereby notified that any review, disclosure, copying, distribution or use of any of the information contained
herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-
mail and destroy the original transmission and any attachments without reading or saving in any manner.
Π Please consider the environment before printing this email

-----Original Message-----
From: Figueroa, Aurellymar [mailto:Aurellymar.Figueroa@mercer.com]
Sent: Tuesday, October 02, 2018 9:04 AM
To: Diane.M.Anderson@kp.org; Benjamin Spater; Billie.J.Ponder@kp.org; Robert Gower; Jahiz N. Agard;
Freeman Levinrad; Shannon Oliver
Cc: Irving, Kelly-Ann L; Proefrock, Heather
Subject: Lia Javier - Appeal Inquiry

1

Hi -

Ms. Javier has contacted the KPRC in reference to her appeal paperwork recently submitted and is looking for confirmation of receipt. Please confirm if her appeal has been received?

Thanks!
Aurellymar

-----Original Message-----
From: Figueroa, Aurellymar
Sent: Monday, September 10, 2018 4:53 PM
To: Irving, Kelly-Ann L; Collentro, Jen; Proefrock, Heather; Diane.M.Anderson@kp.org;
BSpater@TruckerHuss.com; Billie.J.Ponder@kp.org; rgower@truckerhuss.com; jagard@truckerhuss.com;
FLevinrad@truckerhuss.com; Soliver@truckerhuss.com; Habib, Mikaela
Cc: Figueroa, Aurellymar
Subject: eRoom alert - CIF Received on 9/7/2018 - REDACTED

Please check out this item in the Kaiser Permanente - DB and PRB Claims eRoom:

Kaiser Permanente - DB and PRB Claims/ DB Claims and Appeals/ Claims and Appeals Database/ REDACTED :

https://connectweb5.mercer.com/eRoom/MercerNA-US1/KaiserPermanente-DBandPRBClaims/0_4040a

To turn on notification for this item, go to:
https://connectweb5.mercer.com/eRoomASP/FormDispatcher.asp?Dlg=DlgNotifications&ID=0_4040a&Ctxt=.
MercerNA-US1.KaiserPermanente-DBandPRBClaims.0_4040a

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the

KFHP000569

intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000570

| | |
|---|---|
| **From:** | Michael V. Bresso |
| **Sent:** | Thursday, June 21, 2018 4:45 PM |
| **To:** | 'Diane.M.Anderson@kp.org'; 'Shirley.H.Liu@nsmtp.kp.org'; 'Jennifer.collentro@mercer.com'; 'Kelly-Ann.Irving@mercer.com'; 'Karen.Worcester@mercer.com'; 'bryan.start@mercer.com'; Benjamin Spater |
| **Cc:** | Adrine Adjemian; Shannon Oliver |
| **Subject:** | L. Javier - Notice of Denial |
| **Attachments:** | Denial LTO L. Javier.pdf |

*Please refer to the attached.  Thank you.*

**Michael V. Bresso** | Legal Secretary | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8030 | F. 1-415-421-2017
E. mbresso@truckerhuss.com | www.truckerhuss.com

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

1

KFHP000571

 **KAISER PERMANENTE.**

June 21, 2018

*Via Federal Express*

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on
March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser
Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to revoke your
pension election under the limited one-time pension election opportunity program (the "Special
Distribution Program"). This letter explains the reasons for the denial.

<u>**Background**</u>

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election
opportunity to certain former employees who have a vested pension benefit. This postcard
informed you to be on the lookout for your personalized election kit, and that you would need to
act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit
contained instructions and forms to complete in order to receive a single lump sum payment or a
monthly annuity. The election kit also provided that you must mail your completed forms or
complete your election online and provide any required documentation no later than October 5,
2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5,
2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you
of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
175641.v1

 **KAISER PERMANENTE®**

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that the Plan does not permit Disability Retirement Benefits and you stated that that was not the reason you wanted to file a claim. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

175641.v1

KFHP000573

 **KAISER PERMANENTE**

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment. You also signed that you understood that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

175641.v1

3

KFHP000574

**KAISER PERMANENTE®**

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**Your Appeal Rights**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

4

KFHP000575

**KAISER PERMANENTE®**

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,

Benefits Compliance
Kaiser Foundation Health Plan, Inc.

175641.v1

KFHP000576

 **KAISER PERMANENTE**®

## APPENDIX A
## APPLICABLE PLAN PROVISIONS
## KAISER PERMANENTE RETIREMENT PLAN

2.8    <u>Benefit Commencement Date.</u>  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

<p align="center">****</p>

2.30    <u>Election Period.</u>  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

<p align="center">****</p>

8.1    <u>Payment Election.</u>

<p align="center">****</p>

    (c)    <u>Participant Election.</u>  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

<p align="center">****</p>

9.7    <u>Miscellaneous</u>

    (d)    <u>Notices and Missing Persons.</u>  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****

## APPENDIX 9
## 2017 SPECIAL DISTRIBUTION ELECTION

1.1    <u>2017 Special Distribution Election.</u>  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

A-1

175641.v1

KFHP000577

**KAISER PERMANENTE**

****

(b)  <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

****

KFHP000578

 **KAISER PERMANENTE.**

bcc:   Diane M. Anderson (via email): Diane.M.Anderson@kp.org
       Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
       Jennifer Collentro (via email): Jennifer.collentro@mercer.com
       Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
       Karen Worcester (via email): Karen.Worcester@mercer.com
       Bryan Start (via email): bryan.start@mercer.com
       Benjamin F. Spater (via email): bspater@truckerhuss.com

175641.v1

KFHP000579

**Laura Walker**

| | |
|---|---|
| **From:** | Diane M Anderson <Diane.M.Anderson@kp.org> |
| **Sent:** | Thursday, June 21, 2018 3:38 PM |
| **To:** | Adrine Adjemian |
| **Cc:** | Benjamin Spater |
| **Subject:** | FW: Notice of Denial - Lia Javier |
| **Attachments:** | DOCS-#175641-v1-Javier_-_Notice_of_Denial.DOCX |

Good to go.    Thanks!

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

🏔 **KAISER PERMANENTE.**

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Thursday, June 21, 2018 2:44 PM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Cc:** Bryan.Start (mercer.com) <Bryan.Start@mercer.com>; Kelly-Ann.Irving@mercer.com; Benjamin Spater
<BSpater@truckerhuss.com>
**Subject:** RE: Notice of Denial - Lia Javier

Hi Diane,

Attached is a revised Word version addressing the issues you and Kelly noted.  I apologize that the Word document was
converted to PDF.

I also added an additional sentence to the notes from the March 7 call (during which she said she was not complaining
about not receiving the disability retirement benefit) and added to the second paragraph in the explanation section that
she was informed of the tax withholding amounts in the election kit.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or
person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of
the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and
destroy the original transmission and any attachments without reading or saving in any manner.

KFHP000580

 Please consider the environment before printing this email

**From:** Diane M Anderson [mailto:Diane.M.Anderson@kp.org]
**Sent:** Thursday, June 21, 2018 1:26 PM
**To:** Adrine Adjemian
**Cc:** Bryan.Start (mercer.com); Kelly-Ann.Irving@mercer.com; Benjamin Spater
**Subject:** FW: Notice of Denial - Lia Javier
**Importance:** High

Adrine,

I'm confused…. the first part of the letter states that her claim is she shouldn't have been
allowed to participate in the cash out because she was disabled.  She also complains because
$10,000 was withheld from her lump sum for taxes and she didn't know that was going to happen.
Further in the letter it says her claim is denied because she had to make a valid election by
10/5/2017.  It looks like she received a lump sum so she made an election.  Shouldn't the last
denial paragraph state what she can't change her election now?  Also, the Footer isn't correct.

Thanks!

Diane

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

KAISER PERMANENTE.

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 1:34 PM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Cc:** Bryan.Start (mercer.com) <Bryan.Start@mercer.com>; Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com>; Benjamin
Spater <BSpater@truckerhuss.com>
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

Caution: This email came from outside Kaiser Permanente. Do not open attachments or click on links if you do not recognize the
sender.

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims
that she is disabled and should not have been permitted to make an election.

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date
of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments.  This letter must go out by **Friday, June 22**.

2

KFHP000581

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

KFHP000582

**KAISER PERMANENTE.®**

January 7, 2020

*Via Federal Express*

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
       Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on
March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser
Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to revoke your
pension election under the limited one-time pension election opportunity program (the "Special
Distribution Program"). This letter explains the reasons for the denial.

**Background**

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election
opportunity to certain former employees who have a vested pension benefit. This postcard
informed you to be on the lookout for your personalized election kit, and that you would need to
act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit
contained instructions and forms to complete in order to receive a single lump sum payment or a
monthly annuity. The election kit also provided that you must mail your completed forms or
complete your election online and provide any required documentation no later than October 5,
2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5,
2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you
of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
Error! Unknown document property name.

KFHP000583



All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that the Plan does not permit Disability Retirement Benefits and you stated that that was not the reason you wanted to file a claim. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

Error! Unknown document property name.

KFHP000584

 KAISER PERMANENTE.

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment. You also signed that you understood that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

Error! Unknown document property name.

KFHP000585

 **KAISER PERMANENTE**®

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**Your Appeal Rights**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

Error! Unknown document property name.

KFHP000586

 **KAISER PERMANENTE**®

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,


Benefits Compliance
Kaiser Foundation Health Plan, Inc.

Error! Unknown document property name.

KFHP000587

 **KAISER PERMANENTE**®

### APPENDIX A
### APPLICABLE PLAN PROVISIONS
### KAISER PERMANENTE RETIREMENT PLAN

2.8   Benefit Commencement Date.  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

\*\*\*\*

2.30  Election Period.  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

\*\*\*\*

8.1   Payment Election.

\*\*\*\*

(c)   Participant Election.  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

\*\*\*\*

9.7   Miscellaneous

(d)   Notices and Missing Persons.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  \*\*\*\*

### APPENDIX 9
### 2017 SPECIAL DISTRIBUTION ELECTION

1.1   2017 Special Distribution Election.  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

---

A sequence of four asterisks (\*\*\*\*) means a portion of the Plan text has been omitted.

A-1

**Error! Unknown document property name.**

**KAISER PERMANENTE®**

\*\*\*\*

(b)     <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. \*\*\*\* The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

\*\*\*\*

---

A sequence of four asterisks (\*\*\*\*) means a portion of the Plan text has been omitted.          A-2

**Error! Unknown document property name.**

KFHP000589

 KAISER PERMANENTE.

bcc:   Diane M. Anderson (via email): Diane.M.Anderson@kp.org
       Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
       Jennifer Collentro (via email): Jennifer.collentro@mercer.com
       Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
       Karen Worcester (via email): Karen.Worcester@mercer.com
       Bryan Start (via email): bryan.start@mercer.com
       Benjamin F. Spater (via email): bspater@truckerhuss.com

KFHP000590

| From: | Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com> |
|---|---|
| Sent: | Thursday, June 21, 2018 3:13 PM |
| To: | Adrine Adjemian; Diane M Anderson |
| Cc: | Start, Bryan; Benjamin Spater |
| Subject: | RE: Notice of Denial - Lia Javier |

Adrine –

Letter looks good.

Thanks,
Kelly

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Thursday, June 21, 2018 5:44 PM
**To:** Diane M Anderson
**Cc:** Start, Bryan; Irving, Kelly-Ann L; Benjamin Spater
**Subject:** RE: Notice of Denial - Lia Javier

Hi Diane,

Attached is a revised Word version addressing the issues you and Kelly noted.  I apologize that the Word document was converted to PDF.

I also added an additional sentence to the notes from the March 7 call (during which she said she was not complaining about not receiving the disability retirement benefit) and added to the second paragraph in the explanation section that she was informed of the tax withholding amounts in the election kit.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Diane M Anderson [mailto:Diane.M.Anderson@kp.org]
**Sent:** Thursday, June 21, 2018 1:26 PM
**To:** Adrine Adjemian
**Cc:** Bryan.Start (mercer.com); Kelly-Ann.Irving@mercer.com; Benjamin Spater

KFHP000591

**Subject:** FW: Notice of Denial - Lia Javier
**Importance:** High

Adrine,

I'm confused…. the first part of the letter states that her claim is she shouldn't have been allowed to participate in the cash out because she was disabled.  She also complains because $10,000 was withheld from her lump sum for taxes and she didn't know that was going to happen. Further in the letter it says her claim is denied because she had to make a valid election by 10/5/2017.  It looks like she received a lump sum so she made an election.  Shouldn't the last denial paragraph state what she can't change her election now?  Also, the Footer isn't correct.

Thanks!

Diane

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

KAISER PERMANENTE.

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 1:34 PM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Cc:** Bryan.Start (mercer.com) <Bryan.Start@mercer.com>; Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com>; Benjamin Spater <BSpater@truckerhuss.com>
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

Caution: This email came from outside Kaiser Permanente. Do not open attachments or click on links if you do not recognize the sender.

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims that she is disabled and should not have been permitted to make an election.

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments.  This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys

2

KFHP000592

One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000593

| | |
|---|---|
| **From:** | Adrine Adjemian |
| **Sent:** | Thursday, June 21, 2018 2:44 PM |
| **To:** | Diane M Anderson |
| **Cc:** | Bryan.Start (mercer.com); Kelly-Ann.Irving@mercer.com; Benjamin Spater |
| **Subject:** | RE: Notice of Denial - Lia Javier |
| **Attachments:** | DOCS-#175641-v1-Javier_-_Notice_of_Denial.DOCX |

Hi Diane,

Attached is a revised Word version addressing the issues you and Kelly noted. I apologize that the Word document was converted to PDF.

I also added an additional sentence to the notes from the March 7 call (during which she said she was not complaining about not receiving the disability retirement benefit) and added to the second paragraph in the explanation section that she was informed of the tax withholding amounts in the election kit.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard
_____

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

---

**From:** Diane M Anderson [mailto:Diane.M.Anderson@kp.org]
**Sent:** Thursday, June 21, 2018 1:26 PM
**To:** Adrine Adjemian
**Cc:** Bryan.Start (mercer.com); Kelly-Ann.Irving@mercer.com; Benjamin Spater
**Subject:** FW: Notice of Denial - Lia Javier
**Importance:** High

Adrine,

I'm confused…. the first part of the letter states that her claim is she shouldn't have been allowed to participate in the cash out because she was disabled. She also complains because $10,000 was withheld from her lump sum for taxes and she didn't know that was going to happen. Further in the letter it says her claim is denied because she had to make a valid election by 10/5/2017. It looks like she received a lump sum so she made an election. Shouldn't the last denial paragraph state what she can't change her election now? Also, the Footer isn't correct.

Thanks!

Diane

KFHP000594

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

🏔 KAISER PERMANENTE.

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 1:34 PM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Cc:** Bryan.Start (mercer.com) <Bryan.Start@mercer.com>; Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com>; Benjamin
Spater <BSpater@truckerhuss.com>
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

Caution: This email came from outside Kaiser Permanente. Do not open attachments or click on links if you do not recognize the
sender.

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims
that she is disabled and should not have been permitted to make an election.

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date
of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments.  This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or
person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of
the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and
destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**Disclaimer**

2

KFHP000595

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

KFHP000596

 **KAISER PERMANENTE.**

<u>NOTICE OF DENIAL</u>

January 7, 2020

*Via Federal Express*

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on
March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser
Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to revoke your
pension election under the limited one-time pension election opportunity program (the "Special
Distribution Program"). This letter explains the reasons for the denial.

**<u>Background</u>**

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election
opportunity to certain former employees who have a vested pension benefit. This postcard
informed you to be on the lookout for your personalized election kit, and that you would need to
act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit
contained instructions and forms to complete in order to receive a single lump sum payment or a
monthly annuity. The election kit also provided that you must mail your completed forms or
complete your election online and provide any required documentation <u>no later than October 5,
2017</u>.

On September 11, 2017, you were sent another postcard reminding you about the October 5,
2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you
of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
Error! Unknown document property name.

 **KAISER PERMANENTE** ®

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that the Plan does not permit Disability Retirement Benefits and you stated that that was not the reason you wanted to file a claim. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

Error! Unknown document property name.

KFHP000598

 **KAISER PERMANENTE.**

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that the second representative you spoke with suggested that you make an election which could be canceled upon request. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment. You also signed that you understood that if payment was made directly to you, federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld, if applicable.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

Error! Unknown document property name.

KFHP000599

 KAISER PERMANENTE.

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**<u>Your Appeal Rights</u>**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

>   Kaiser Permanente Administrative Committee
>   c/o Kaiser Foundation Health Plan, Inc.
>   1 Kaiser Plaza, Floor 20B
>   Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

4

KFHP000600

**KAISER PERMANENTE**®

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,

Benefits Compliance
Kaiser Foundation Health Plan, Inc.

5

**Error! Unknown document property name.**

 KAISER PERMANENTE®

## APPENDIX A
## APPLICABLE PLAN PROVISIONS
## KAISER PERMANENTE RETIREMENT PLAN

2.8    Benefit Commencement Date.  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

**** 

2.30    Election Period.  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

**** 

8.1    Payment Election.

**** 

    (c)    Participant Election.  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

**** 

9.7    Miscellaneous

    (d)    Notices and Missing Persons.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****

## APPENDIX 9
## 2017 SPECIAL DISTRIBUTION ELECTION

1.1    2017 Special Distribution Election.  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

A-1

Error! Unknown document property name.

KFHP000602

 **KAISER PERMANENTE**®

**\*\*\*\***

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. \*\*\*\* The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

**\*\*\*\***

A sequence of four asterisks (\*\*\*\*) means a portion of the Plan text has been omitted.          A-2

**Error! Unknown document property name.**

KFHP000603

 KAISER PERMANENTE.

bcc:    Diane M. Anderson (via email): Diane.M.Anderson@kp.org
       Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
       Jennifer Collentro (via email): Jennifer.collentro@mercer.com
       Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
       Karen Worcester (via email): Karen.Worcester@mercer.com
       Bryan Start (via email): bryan.start@mercer.com
       Benjamin F. Spater (via email): bspater@truckerhuss.com

KFHP000604

| | |
|---|---|
| **From:** | Diane M Anderson <Diane.M.Anderson@kp.org> |
| **Sent:** | Thursday, June 21, 2018 1:26 PM |
| **To:** | Adrine Adjemian |
| **Cc:** | Bryan.Start (mercer.com); Kelly-Ann.Irving@mercer.com; Benjamin Spater |
| **Subject:** | FW: Notice of Denial - Lia Javier |
| **Attachments:** | DOCS-#175641-v1-Javier_-_Notice_of_Denial.pdf |

**Importance:**        High

Adrine,

I'm confused…. the first part of the letter states that her claim is she shouldn't have been
allowed to participate in the cash out because she was disabled.  She also complains because
$10,000 was withheld from her lump sum for taxes and she didn't know that was going to happen.
Further in the letter it says her claim is denied because she had to make a valid election by
10/5/2017.  It looks like she received a lump sum so she made an election.  Shouldn't the last
denial paragraph state what she can't change her election now?  Also, the Footer isn't correct.

Thanks!

Diane

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

**🏰 KAISER PERMANENTE.**

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 1:34 PM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Cc:** Bryan.Start (mercer.com) <Bryan.Start@mercer.com>; Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com>; Benjamin Spater <BSpater@truckerhuss.com>
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

**Caution:** This email came from outside Kaiser Permanente. Do not open attachments or click on links if you do not recognize the sender.

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims
that she is disabled and should not have been permitted to make an election.

1

KFHP000605

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments. This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian | Associate | Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

KFHP000606

 **KAISER PERMANENTE**®

<u>**NOTICE OF DENIAL**</u>

June 20, 2018

***Via Federal Express***

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on
March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser
Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to receive a lump
sum payment of your pension under the limited one-time pension election opportunity program
(the "Special Distribution Program"). This letter explains the reasons for the denial.

<u>**Background**</u>

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election
opportunity to certain former employees who have a vested pension benefit. This postcard
informed you to be on the lookout for your personalized election kit, and that you would need to
act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit
contained instructions and forms to complete in order to receive a single lump sum payment or a
monthly annuity. The election kit also provided that you must mail your completed forms or
complete your election online and provide any required documentation <u>no later than October 5,
2017</u>.

On September 11, 2017, you were sent another postcard reminding you about the October 5,
2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you
of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
Error! Unknown document property name.

KFHP000607

 **KAISER PERMANENTE.**

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that

2

**Error! Unknown document property name.**



the second representative you spoke with suggested that you make an election because you could cancel that election. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you did not make a valid election by October 5, 2017, and no valid exception applies, the Plan has determined that you are not eligible for the Special Distribution Program.

3

Error! Unknown document property name.

KFHP000609

 **KAISER PERMANENTE**

## Your Appeal Rights

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures

**Error! Unknown document property name.**

KFHP000610

 **KAISER PERMANENTE**®

described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,


Benefits Compliance
Kaiser Foundation Health Plan, Inc.

**Error! Unknown document property name.**

KFHP000611



## APPENDIX A
## APPLICABLE PLAN PROVISIONS
## KAISER PERMANENTE RETIREMENT PLAN

2.8    Benefit Commencement Date.  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

<div align="center">****</div>

2.30    Election Period.  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

<div align="center">****</div>

8.1    Payment Election.

<div align="center">****</div>

    (c)    Participant Election.  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

<div align="center">****</div>

9.7    Miscellaneous

    (d)    Notices and Missing Persons.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****


## APPENDIX 9
## 2017 SPECIAL DISTRIBUTION ELECTION

1.1    2017 Special Distribution Election.  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

---

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

A-1

**Error! Unknown document property name.**

**KAISER PERMANENTE**®

****

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

****

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.                    A-2
**Error! Unknown document property name.**

KFHP000613

 KAISER PERMANENTE.

bcc:    Diane M. Anderson (via email): Diane.M.Anderson@kp.org
        Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
        Jennifer Collentro (via email): Jennifer.collentro@mercer.com
        Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
        Karen Worcester (via email): Karen.Worcester@mercer.com
        Bryan Start (via email): bryan.start@mercer.com
        Benjamin F. Spater (via email): bspater@truckerhuss.com

**Error! Unknown document property name.**

KFHP000614

| | |
|---|---|
| **From:** | Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com> |
| **Sent:** | Thursday, June 21, 2018 12:49 PM |
| **To:** | Adrine Adjemian; Diane M Anderson |
| **Cc:** | Benjamin Spater; Start, Bryan |
| **Subject:** | RE: Notice of Denial - Lia Javier |
| **Attachments:** | DOCS-#175641-v1-Javier_-_Notice_of_Denial - KAI Edits.docx |

Hi Adrine –

I've made 2 additional minor edits.

Please note that I converted the document to Word for ease of editing so there may be a slight change in the formatting.

Thanks,
Kelly

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Thursday, June 21, 2018 3:06 PM
**To:** Diane M Anderson
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Start, Bryan
**Subject:** RE: Notice of Denial - Lia Javier
**Importance:** High

Hi Diane,

Attached for your review is a revised notice of denial to Lia Javier, which we must mail tomorrow.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Start, Bryan [mailto:Bryan.Start@mercer.com]
**Sent:** Thursday, June 21, 2018 11:30 AM
**To:** Adrine Adjemian
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

KFHP000615

Adrine,

The check is already stale/expired and most financial institutions would not accept it as its older than 6 months (5/10/2018). The trustee will change the status of the check to purged in early July and from that point on a new check would need to be issued in order for it to be cashed or deposited.

Thanks,
Bryan

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Thursday, June 21, 2018 1:49 PM
**To:** Start, Bryan
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

Thanks, Bryan. I will send a revised draft shortly.

Do you know when the check will expire so I can include that in the letter too?

Best,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Start, Bryan [mailto:Bryan.Start@mercer.com]
**Sent:** Thursday, June 21, 2018 6:42 AM
**To:** Adrine Adjemian
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

Hi Adrine,

The date of the call in question was January 17, 2018.

After reviewing the draft, I want to point out that Ms. Javier did make an election and received a lump sum check dated 11/10/2017 and this check is still outstanding. It may be worth pointing out she should deposit this check or contact the KPRC if she needs it reissued. My understanding of her claim was it was her attempt to revoke her election, which the letter addresses, but the last paragraph of the Explanation of Denial Decision section states "... the Plan has determined that you are not eligible for the Special Distribution Program." This may need to be updated.

Thank you,
Bryan

KFHP000616

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 4:34 PM
**To:** Diane M Anderson
**Cc:** Start, Bryan; Irving, Kelly-Ann L; Benjamin Spater
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims that she is disabled and should not have been permitted to make an election.

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments.  This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian | Associate | Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message

3

KFHP000617

is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000618



June 21, 2018

*Via Federal Express*

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan (the "Plan") has denied your claim to ~~be eligible to receive a lump sum payment of~~ revoke your pension election under the limited one-time pension election opportunity program (the "Special Distribution Program"). This letter explains the reasons for the denial.

**Background**

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election opportunity to certain former employees who have a vested pension benefit. This postcard informed you to be on the lookout for your personalized election kit, and that you would need to act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The– kit contained instructions and forms to complete in order to receive a single lump sum payment or a monthly annuity. The election kit also provided that you must mail your completed forms or complete your election online and provide any required documentation no later than October 5, 2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5, 2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you of the deadline.

**Kaiser Permanente Retirement Administration**
Error! Unknown document property name.



**KAISER PERMANENTE.**
1 Kaiser Plaza, Oakland, CA 94612

Error! Unknown document property name.

KFHP000620

**KAISER PERMANENTE.**

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that

2

*Error! Unknown document property name.*

KFHP000621

**KAISER PERMANENTE**

the second representative you spoke with suggested that you make an election because you could cancel that election. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Commented [IKL1]:** This sentence needs to be reworded – …suggested that you make an election which could be canceled upon request.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

3

Error! Unknown document property name.

KFHP000622

 **KAISER PERMANENTE.**

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**<u>Your Appeal Rights</u>**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

        Kaiser Permanente Administrative Committee
        c/o Kaiser Foundation Health Plan, Inc.
        1 Kaiser Plaza, Floor 20B
        Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

<p align="center">4</p>

Error! Unknown document property name.

KFHP000623

 **KAISER PERMANENTE.**

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied. In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal. Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,


Benefits Compliance
Kaiser Foundation Health Plan, Inc.

Error! Unknown document property name.

KFHP000624

**KAISER PERMANENTE.**

**APPENDIX A**
**APPLICABLE PLAN PROVISIONS**
**KAISER PERMANENTE RETIREMENT PLAN**

2.8     Benefit Commencement Date.  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

**\*\*\*\***

2.30    Election Period.  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

**\*\*\*\***

8.1     Payment Election.

**\*\*\*\***

(c)     Participant Election.  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee. The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires. The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

**\*\*\*\***

9.7     Miscellaneous

(d)     Notices and Missing Persons.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  **\*\*\*\***

**APPENDIX 9**
**2017 SPECIAL DISTRIBUTION ELECTION**

1.1     2017 Special Distribution Election.  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

A sequence of four asterisks (**\*\*\*\***) means a portion of the Plan text has been omitted.

A-1

**Error! Unknown document property name.**

KFHP000625



**\*\*\*\***

(b)  <u>Special Election Period.</u> Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. \*\*\*\* The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

**\*\*\*\***

A sequence of four asterisks (\*\*\*\*) means a portion of the Plan text has been omitted.                    A-2

**Error! Unknown document property name.**

KFHP000626



bcc:    Diane M. Anderson (via email): Diane.M.Anderson@kp.org
        Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
        Jennifer Collentro (via email): Jennifer.collentro@mercer.com
        Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
        Karen Worcester (via email): Karen.Worcester@mercer.com
        Bryan Start (via email): bryan.start@mercer.com
        Benjamin F. Spater (via email): bspater@truckerhuss.com

Error! Unknown document property name.



KFHP000627

| | |
|---|---|
| **From:** | Adrine Adjemian |
| **Sent:** | Thursday, June 21, 2018 12:06 PM |
| **To:** | Diane M Anderson |
| **Cc:** | Irving, Kelly-Ann L; Benjamin Spater; Start, Bryan |
| **Subject:** | RE: Notice of Denial - Lia Javier |
| **Attachments:** | DOCS-#175641-v1-Javier_-_Notice_of_Denial.pdf |
| **Importance:** | High |

Hi Diane,

Attached for your review is a revised notice of denial to Lia Javier, which we must mail tomorrow.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Start, Bryan [mailto:Bryan.Start@mercer.com]
**Sent:** Thursday, June 21, 2018 11:30 AM
**To:** Adrine Adjemian
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

Adrine,

The check is already stale/expired and most financial institutions would not accept it as its older than 6 months (5/10/2018). The trustee will change the status of the check to purged in early July and from that point on a new check would need to be issued in order for it to be cashed or deposited.

Thanks,
Bryan

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Thursday, June 21, 2018 1:49 PM
**To:** Start, Bryan
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

1

KFHP000628

Thanks, Bryan. I will send a revised draft shortly.

Do you know when the check will expire so I can include that in the letter too?

Best,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

---

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Start, Bryan [mailto:Bryan.Start@mercer.com]
**Sent:** Thursday, June 21, 2018 6:42 AM
**To:** Adrine Adjemian
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

Hi Adrine,

The date of the call in question was January 17, 2018.

After reviewing the draft, I want to point out that Ms. Javier did make an election and received a lump sum check dated 11/10/2017 and this check is still outstanding. It may be worth pointing out she should deposit  this check or contact the KPRC if she needs it reissued.  My understanding of her claim was it was her attempt to revoke her election, which the letter addresses, but the last paragraph of the Explanation of Denial Decision section states ".. the Plan has determined that you are not eligible for the Special Distribution Program." This may need to be updated.

Thank you,
Bryan

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 4:34 PM
**To:** Diane M Anderson
**Cc:** Start, Bryan; Irving, Kelly-Ann L; Benjamin Spater
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims that she is disabled and should not have been permitted to make an election.

2

KFHP000629

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments. This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

KFHP000630

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000631

 **KAISER PERMANENTE**®

June 21, 2018

*Via Federal Express*

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
      Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to receive a lump sum payment of your pension under the limited one-time pension election opportunity program (the "Special Distribution Program"). This letter explains the reasons for the denial.

**Background**

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election opportunity to certain former employees who have a vested pension benefit. This postcard informed you to be on the lookout for your personalized election kit, and that you would need to act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit contained instructions and forms to complete in order to receive a single lump sum payment or a monthly annuity. The election kit also provided that you must mail your completed forms or complete your election online and provide any required documentation no later than October 5, 2017.

On September 11, 2017, you were sent another postcard reminding you about the October 5, 2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
Error! Unknown document property name.

 KAISER PERMANENTE.

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that

2

Error! Unknown document property name.

 KAISER PERMANENTE.®

the second representative you spoke with suggested that you make an election because you could cancel that election. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check, which you did not cash. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you elected to receive a lump sum payment and did not revoke your election during the Election Period, the Plan has determined that you may no longer revoke your election.

3

**Error! Unknown document property name.**

KFHP000634

 **KAISER PERMANENTE.**

For the reasons described above, the Plan has denied your claim.

KPRC representatives are available Monday through Friday from 6:00 a.m. to 6:00 p.m. Pacific Time. Please contact the KPRC at 866-627-2826 to have a new check reissued to you.

**<u>Your Appeal Rights</u>**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

4

**Error! Unknown document property name.**

KFHP000635

 KAISER PERMANENTE.®

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures described above, and have been notified by the Appeals Subcommittee that your appeal has been denied.  In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal.  Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,


Benefits Compliance
Kaiser Foundation Health Plan, Inc.

Error! Unknown document property name.

KFHP000636

 KAISER PERMANENTE.®

### APPENDIX A
### APPLICABLE PLAN PROVISIONS
### KAISER PERMANENTE RETIREMENT PLAN

2.8     Benefit Commencement Date.  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

<div align="center">****</div>

2.30    Election Period.  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

<div align="center">****</div>

8.1     Payment Election.

<div align="center">****</div>

(c)     Participant Election.  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

<div align="center">****</div>

9.7     Miscellaneous

(d)     Notices and Missing Persons.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****

### APPENDIX 9
### 2017 SPECIAL DISTRIBUTION ELECTION

1.1     2017 Special Distribution Election.  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

A-1

**Error! Unknown document property name.**

KFHP000637



****

(b)  Special Election Period. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. **** The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

****

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

**Error! Unknown document property name.**

A-2

KFHP000638



bcc:    Diane M. Anderson (via email): Diane.M.Anderson@kp.org
        Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
        Jennifer Collentro (via email): Jennifer.collentro@mercer.com
        Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
        Karen Worcester (via email): Karen.Worcester@mercer.com
        Bryan Start (via email): bryan.start@mercer.com
        Benjamin F. Spater (via email): bspater@truckerhuss.com

**Error! Unknown document property name.**

KFHP000639

**From:**    Start, Bryan <Bryan.Start@mercer.com>
**Sent:**    Thursday, June 21, 2018 11:30 AM
**To:**    Adrine Adjemian
**Cc:**    Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:**    RE: Notice of Denial - Lia Javier

Adrine,

The check is already stale/expired and most financial institutions would not accept it as its older than 6 months (5/10/2018). The trustee will change the status of the check to purged in early July and from that point on a new check would need to be issued in order for it to be cashed or deposited.

Thanks,
Bryan

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Thursday, June 21, 2018 1:49 PM
**To:** Start, Bryan
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

Thanks, Bryan. I will send a revised draft shortly.

Do you know when the check will expire so I can include that in the letter too?

Best,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Start, Bryan [mailto:Bryan.Start@mercer.com]
**Sent:** Thursday, June 21, 2018 6:42 AM
**To:** Adrine Adjemian
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

Hi Adrine,

1

KFHP000640

The date of the call in question was January 17, 2018.

After reviewing the draft, I want to point out that Ms. Javier did make an election and received a lump sum check dated 11/10/2017 and this check is still outstanding. It may be worth pointing out she should deposit this check or contact the KPRC if she needs it reissued.  My understanding of her claim was it was her attempt to revoke her election, which the letter addresses, but the last paragraph of the Explanation of Denial Decision section states ".. the Plan has determined that you are not eligible for the Special Distribution Program." This may need to be updated.

Thank you,
Bryan

---

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 4:34 PM
**To:** Diane M Anderson
**Cc:** Start, Bryan; Irving, Kelly-Ann L; Benjamin Spater
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims that she is disabled and should not have been permitted to make an election.

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments.  This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

---

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in

KFHP000641

Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000642

**From:**        Adrine Adjemian
**Sent:**        Thursday, June 21, 2018 10:49 AM
**To:**        Start, Bryan
**Cc:**        Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:**        RE: Notice of Denial - Lia Javier

Thanks, Bryan. I will send a revised draft shortly.

Do you know when the check will expire so I can include that in the letter too?

Best,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Start, Bryan [mailto:Bryan.Start@mercer.com]
**Sent:** Thursday, June 21, 2018 6:42 AM
**To:** Adrine Adjemian
**Cc:** Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson
**Subject:** RE: Notice of Denial - Lia Javier

Hi Adrine,

The date of the call in question was January 17, 2018.

After reviewing the draft, I want to point out that Ms. Javier did make an election and received a lump sum check dated 11/10/2017 and this check is still outstanding. It may be worth pointing out she should deposit this check or contact the KPRC if she needs it reissued. My understanding of her claim was it was her attempt to revoke her election, which the letter addresses, but the last paragraph of the Explanation of Denial Decision section states ".. the Plan has determined that you are not eligible for the Special Distribution Program." This may need to be updated.

Thank you,
Bryan

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 4:34 PM
**To:** Diane M Anderson

1

**Cc:** Start, Bryan; Irving, Kelly-Ann L; Benjamin Spater
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims that she is disabled and should not have been permitted to make an election.

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments.  This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

2

KFHP000644

| | |
|---|---|
| **From:** | Start, Bryan <Bryan.Start@mercer.com> |
| **Sent:** | Thursday, June 21, 2018 6:42 AM |
| **To:** | Adrine Adjemian |
| **Cc:** | Irving, Kelly-Ann L; Benjamin Spater; Diane M Anderson |
| **Subject:** | RE: Notice of Denial - Lia Javier |

Hi Adrine,

The date of the call in question was January 17, 2018.

After reviewing the draft, I want to point out that Ms. Javier did make an election and received a lump sum check dated 11/10/2017 and this check is still outstanding. It may be worth pointing out she should deposit this check or contact the KPRC if she needs it reissued. My understanding of her claim was it was her attempt to revoke her election, which the letter addresses, but the last paragraph of the Explanation of Denial Decision section states ".. the Plan has determined that you are not eligible for the Special Distribution Program." This may need to be updated.

Thank you,
Bryan

---

**From:** Adrine Adjemian [mailto:aadjemian@truckerhuss.com]
**Sent:** Wednesday, June 20, 2018 4:34 PM
**To:** Diane M Anderson
**Cc:** Start, Bryan; Irving, Kelly-Ann L; Benjamin Spater
**Subject:** Notice of Denial - Lia Javier
**Importance:** High

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims that she is disabled and should not have been permitted to make an election.

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments. This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of

1

KFHP000645

the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000646

| | |
|---|---|
| **From:** | Adrine Adjemian |
| **Sent:** | Wednesday, June 20, 2018 1:34 PM |
| **To:** | Diane M Anderson |
| **Cc:** | Start, Bryan; Irving, Kelly-Ann L; Benjamin Spater |
| **Subject:** | Notice of Denial - Lia Javier |
| **Attachments:** | DOCS-#175641-v1-Javier_-_Notice_of_Denial.pdf |

| | |
|---|---|
| **Importance:** | High |

Hi Diane,

Attached for your review is a notice of denial to Lia Javier, who received a lump sum benefit payment but who claims that she is disabled and should not have been permitted to make an election.

I am copying Mercer because there is one call on Connect which did not have a date, and we would like to add the date of that call to the next to last paragraph on page 2.

Please let us know if you have any questions or comments. This letter must go out by **Friday, June 22**.

Thank you,

Adrine

**Adrine Adjemian** | Associate | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8012 | F. 1-415-421-2017
E. aadjemian@truckerhuss.com | www.truckerhuss.com | Download vCard

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

KFHP000647

 **KAISER PERMANENTE**®

June 20, 2018

***Via Federal Express***

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
       Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

We are writing in response to your Claim Initiation Form ("CIF") received in our office on March 26, 2018. The Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan (the "Plan") has denied your claim to be eligible to receive a lump sum payment of your pension under the limited one-time pension election opportunity program (the "Special Distribution Program"). This letter explains the reasons for the denial.

<u>**Background**</u>

On August 8, 2017, you were sent a postcard announcing a limited one-time pension election opportunity to certain former employees who have a vested pension benefit. This postcard informed you to be on the lookout for your personalized election kit, and that you would need to act by October 5, 2017 in order to take advantage of the opportunity.

On August 18, 2017, you were sent a Special Distribution Program election kit. The kit contained instructions and forms to complete in order to receive a single lump sum payment or a monthly annuity. The election kit also provided that you must mail your completed forms or complete your election online and provide any required documentation <u>no later than October 5, 2017</u>.

On September 11, 2017, you were sent another postcard reminding you about the October 5, 2017 deadline. You were also sent a third postcard on September 25, 2017, again reminding you of the deadline.

**Kaiser Permanente Retirement Administration**
**1 Kaiser Plaza, Oakland, CA 94612**
Error! Unknown document property name.

KFHP000648

 **KAISER PERMANENTE**®

All of the above correspondence sent to you regarding the Special Distribution Program was sent to the last address you had on file with the Plan.

On October 4, 2017, you called the Pension Election Help Desk (the "PEHD") and stated that you received a Special Distribution Program postcard reminding you about the October 5, 2017 deadline but that you had not received any other information. The PEHD representative stated that that was in reference to a lump sum offer. You asked to speak with another representative who could provide you with more information and the representative stated that anyone would be able to assist you, so you called the PEHD back to speak with a different representative. You asked the second representative for an extended deadline because people had been stealing your mail and you had to have your mail forwarded. The representative stated that no extension could be provided but that you could complete your election kit online. That same day, you completed your online election kit.

On November 16, 2017, you called the PEHD to state that you believed taxes would not be withheld from your lump sum payment amount because of your disability and that you were not informed of the option to rollover your benefits. The PEHD representative stated that all of your options were detailed in both the printed election kit which was mailed to you and the online election kit. You stated that because you are disabled, you should not have been expected to make an informed decision.

On November 17, 2017, a PEHD representative provided you with a callback and you stated that you were working with a tax advisor to resolve the issue.

On January 11, 2018, you called the Kaiser Permanente Retirement Center (the "KPRC") and stated that you had approximately $10,000 withheld from your lump sum payment in taxes. You stated that you only received a postcard reminder of the deadline for the Special Distribution Program and only had one day and a half to make your decision. You also stated that you believed you would have had less taxes withheld because of your disability.

On March 2, 2018, you called the KPRC and stated that the only reason you chose to participate in the Special Distribution Program was so that you would have the funds to save your home. You also stated that you should not have been rushed to make such a decision and that the representatives should not have spoken with you because you are disabled.

On March 7, 2018, you called the KPRC and stated that someone should have informed you that your benefits from the Social Security Administration would be impacted. The KPRC representative stated that they would send you a CIF.

You also either called the KPRC or received a call back with more information on January 17, 2018, March 7, 2018, March 14, 2018, March 15, 2018, and March 22, 2018.

On March 26, 2018, the Plan received your completed CIF in which you state that the PEHD representative you spoke with on October 4, 2017 did not help to answer your questions and that

**Error! Unknown document property name.**

KFHP000649

 **KAISER PERMANENTE**®

the second representative you spoke with suggested that you make an election because you could cancel that election. You also state that although the representatives told you to speak with a tax advisor and the Social Security Administration, no one told you to call the KPRC until after you received your check. You also submitted a Notice from the Social Security Administration dated August 27, 2013, which provides that you have been disabled since January 1, 2013, that your disability is reasonably expected to last for at least 12 continuous months and that medical improvement is expected with appropriate treatment, so a continuing disability review is recommended in 36 months.

**Relevant Plan Provisions**

Please see Appendix A for the relevant Plan provisions.

**Explanation of Denial Decision**

The Plan provides that a Special Distribution Program election must be made no later than October 5, 2017 (see Appendix 9, Section 1.1(b) of the Plan). You were sent an announcement postcard, the election kit, and two additional postcards informing you of the October 5, 2017 deadline to participate in the Special Distribution Program. Although you state that you only received one postcard informing you of the October 5, 2017 deadline, all of these mailings were sent to your last address on file.

You also state that you should not have been permitted to participate in the Special Distribution Program because you are disabled. However, you completed your election kit on which you signed that you understood that you should consult your professional tax advisor about receiving the lump sum benefit payment.

Moreover, the Plan is clear that you have a limited time during which you can revoke an election to receive benefits and the form of payment of those benefits. The Plan provides that you may elect a Benefit Commencement Date and Form of Payment during the Election Period. The Election Period is the 90-day period ending on your Benefit Commencement Date. The Benefit Commencement Date means the first day of the month in which you begin receiving payments. The Plan also provides that you may revoke such an election at any time during the Election Period but that an election is irrevocable when the Election Period expires. (*See* Appendix A, Section 8.1(c)).

Your Benefit Commencement Date for the Plan was November 1, 2017. Therefore, your Election Period expired on November 1, 2017, and your election is now irrevocable.

The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and under ERISA, the Plan must be administered in accordance with its terms. Because you did not make a valid election by October 5, 2017, and no valid exception applies, the Plan has determined that you are not eligible for the Special Distribution Program.

**Error! Unknown document property name.**

KFHP000650

 KAISER PERMANENTE®

**Your Appeal Rights**

If you disagree with the above explanation and determination, you or your authorized representative may submit a written appeal to have this claim denial reviewed by the Kaiser Permanente Administrative Committee Appeals Subcommittee ("Appeals Subcommittee"). Your appeal must be received within ninety (90) days of the date of this letter.

Mail your appeal to:

> Kaiser Permanente Administrative Committee
> c/o Kaiser Foundation Health Plan, Inc.
> 1 Kaiser Plaza, Floor 20B
> Oakland, CA 94612

You may submit any statements, documents, records or written arguments in support of your appeal. In addition, you or your authorized representative may submit a written request to the Appeals Subcommittee at the address above to receive, free of charge, copies of all documents, records or other information (not subject to legal privilege) relevant (within the meaning of 29 CFR section 2560.503-1(m)(8)) to your claim denial.

In reviewing your appeal, the Appeals Subcommittee will take into account all comments, documents, records and other information submitted relating to the claim without regard to whether such information was submitted or considered during the initial claim determination.

The Appeals Subcommittee will make a determination regarding your appeal at its next regularly scheduled meeting following receipt of your request for review. If the request for review is received within thirty (30) days prior to the date of such meeting, the determination may be made during the second regularly scheduled meeting following the receipt of your request for review. If special circumstances require a further extension of time for processing, the Appeals Subcommittee will make a determination on your appeal no later than the next regularly scheduled meeting following the date the appeal was originally scheduled to be reviewed. Before the extension occurs, you will be given written notice of the extension describing the special circumstances requiring the extension and the date as of which the determination will be made.

The Appeals Subcommittee will notify you in writing of its final decision within five (5) days of its determination. The decision letter will include the specific reasons for the decision and identify those terms of the Plan on which the decision is based. The decision of the Appeals Subcommittee after review shall be final and conclusive upon all persons, except as appropriate judicial actions may be afforded.

As described in the Plan, no legal action (whether in law, in equity, or otherwise) for benefits under the Plan may be brought until you have submitted a written claim for benefits in accordance with the procedures described in the Plan, have been notified by the Plan that your claim has been denied, have filed a written appeal in accordance with the appeal procedures

4

KFHP000651

**KAISER PERMANENTE**®

described above, and have been notified by the Appeals Subcommittee that your appeal has been denied.  In the event that your appeal is denied, you may bring a legal action under section 502(a) of ERISA regarding the final denial of your benefit claim, except that no legal action may be commenced or maintained against the Plan, the Plan Administrator, the Kaiser Permanente Administrative Committee or its Appeals Subcommittee more than one (1) year after the denial of your appeal.  Any legal action must be brought in the U.S. District Court of the Northern District of California where the Plan is administered.

Sincerely,


Benefits Compliance
Kaiser Foundation Health Plan, Inc.

5

**Error! Unknown document property name.**

KFHP000652

 **KAISER PERMANENTE**

**APPENDIX A**
**APPLICABLE PLAN PROVISIONS**
**KAISER PERMANENTE RETIREMENT PLAN**

2.8     <u>Benefit Commencement Date.</u>  Benefit Commencement Date means the first day of the month in which the Participant may begin receiving payments.

<p style="text-align:center">****</p>

2.30    <u>Election Period.</u>  Election Period means the 90-day period ending on the Participant's Benefit Commencement Date.

<p style="text-align:center">****</p>

8.1     <u>Payment Election.</u>

<p style="text-align:center">****</p>

    (c)    <u>Participant Election.</u>  The Participant shall elect a Benefit Commencement Date and Form of Payment during the Election Period in the manner established by the Administrative Committee.  The Participant may revoke such an election at any time during the Election Period but that election is irrevocable when the Election Period expires.  The Participant may also designate a Beneficiary to receive death benefits that may become payable from the Plan in the event of the Participant's death in the manner established by the Administrative Committee.

<p style="text-align:center">****</p>

9.7     <u>Miscellaneous</u>

    (d)    <u>Notices and Missing Persons</u>.  Each Participant and each other person who is entitled to benefits under the Plan must file with the Administrative Committee from time to time in writing such person's post office address and each change of post office address.  Any communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan.  ****

**APPENDIX 9**
**2017 SPECIAL DISTRIBUTION ELECTION**

1.1     <u>2017 Special Distribution Election</u>.  This Appendix describes a special distribution window during which certain Vested Participants who have incurred a Termination of Employment and who are not otherwise eligible to commence receiving Retirement Income may elect an immediate distribution of their entire Plan benefit (the "Special Distribution Election.")

A sequence of four asterisks (****) means a portion of the Plan text has been omitted.

A-1

**Error! Unknown document property name.**

KFHP000653

**KAISER PERMANENTE**®

**\*\*\*\***

(b)    <u>Special Election Period</u>. Any Special Distribution Election under this Appendix must be made on or after August 21, 2017 and before October 6, 2017, in a manner authorized by the Administrative Committee, or its delegate. \*\*\*\* The Special Distribution Election under this Appendix will be offered only once, during the election period described in this subsection, will not be available thereafter, and will not be considered part of the Participant's Accrued Benefit after the end of the election period described in this subparagraph.

**\*\*\*\***

---

A sequence of four asterisks (\*\*\*\*) means a portion of the Plan text has been omitted.    A-2

**Error! Unknown document property name.**

KFHP000654

 **KAISER PERMANENTE.**

bcc:    Diane M. Anderson (via email): Diane.M.Anderson@kp.org
        Shirley H. Liu (via email): Shirley.H.Liu@nsmtp.kp.org
        Jennifer Collentro (via email): Jennifer.collentro@mercer.com
        Kelly-Ann Irving (via email): Kelly-Ann.Irving@mercer.com
        Karen Worcester (via email): Karen.Worcester@mercer.com
        Bryan Start (via email): bryan.start@mercer.com
        Benjamin F. Spater (via email): bspater@truckerhuss.com

**Error! Unknown document property name.**

KFHP000655

**Laura Walker**

| | |
|---|---|
| **From:** | Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com> |
| **Sent:** | Wednesday, April 4, 2018 9:14 AM |
| **To:** | Collentro, Jen; Malnicof, Craig; Harris, Matthew; Worcester, Karen; Start, Bryan; Gasper, Steven; diane.m.anderson@kp.org; Habib, Mikaela; Benjamin Spater; Jahiz N. Agard; Robert Gower; Freeman Levinrad; julie.glass@kp.org; Michelle.P.Thomas@kp.org; candida.m.freer@kp.org; Brenda K Lim; Latasha Mahar; Adrine Adjemian |
| **Subject:** | Mercer, KP, Trucker Huss Touch Base Meeting Notes - 04/04/2018 |

## Mercer, KP, Trucker Huss Touch Base Meeting Notes - 04/04/2018

**TVCO Claim Forms received:**
- Lia Javier

# REDACTED

Attendees:
Trucker Huss
    Jahiz Agard
    Robert Gower
Kaiser Permanente
    Candi Freer
    Brenda Lim
Mercer
    Kelly-Ann Irving
    Mikaela Habib
    Steve Gasper

1

KFHP000656

Bryan Start


**Kelly-Ann Irving,** Associate
Client Services Team Leader | Defined Benefit

Mercer | 1 Investors Way, Norwood, MA 02062, USA
P: +1 857 362 5551
M: +1 339 206 6160
kelly-ann.irving@mercer.com
www.mercer.com | Mercer (US) Inc.

**Making a difference in the health, wealth and careers of 110 million people every day**

---

**MERCER    MAKE TOMORROW, TODAY**

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

KFHP000657

| | |
|---|---|
| **From:** | Michael V. Bresso |
| **Sent:** | Monday, April 2, 2018 11:07 AM |
| **To:** | 'Billie.J.Ponder@kp.org' |
| **Cc:** | Adrine Adjemian; Shannon Oliver |
| **Subject:** | L. Javier - Notice of Receipt |
| **Attachments:** | Receipt LTO L. Javier.pdf |

*Please refer to the attached.  Thank you.*

**Michael V. Bresso** | Legal Secretary | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | D. 1-415-277-8030 | F. 1-415-421-2017
E. mbresso@truckerhuss.com | www.truckerhuss.com

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

1

KFHP000658

**KAISER PERMANENTE.**

April 2, 2018

Lia Javier
805 Fieldstone Ct.
Brentwood, CA 94513

**Plans:** Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente
Retirement Plan
**Benefit Claim for:** Eligibility for Limited One-Time Pension Election Opportunity
**Date of Benefit Claim:** March 26, 2018
**Participant:** Lia Javier

Dear Ms. Javier:

This letter is to acknowledge receipt of your Claim Initiation Form received in our office on
March 26, 2018.

Your claim is being processed and unless special circumstances occur, you can expect to receive
a letter of determination within 90 days of the date your claim was received. If special
circumstances require additional time to process your claim, you will be notified of the delay.

Sincerely,

Kaiser Permanente Retirement Administration
Kaiser Foundation Health Plan, Inc.

**Kaiser Permanente Retirement Administration**
1 Kaiser Plaza, Oakland, CA 94612
174133.v1

Lia Javier
April 2, 2018
Page 2

bcc:     Billie J. Ponder (via email: Billie.J.Ponder@kp.org)

KFHP000660

| | |
|---|---|
| **From:** | Strong, Jennifer (Detroit) <Jennifer.Strong@willistowerswatson.com> |
| **Sent:** | Monday, April 2, 2018 7:38 AM |
| **To:** | Benjamin Spater; Adrine Adjemian |
| **Cc:** | harmoni.piazza@kp.org; Wilson, Benjamin (Dallas); Prangley, Melody (Detroit); Giannini, Don (San Diego); Untal, Ronna (San Diego) |
| **Subject:** | Kaiser TVCO 2017 Wave 2 Claim Files |

Hi Ben,

I've posted the zip file for Lia Javier to Connect in the Escalation Log folder (I also sent a notification for a direct link). The password for the audio files is blskaiser2017. Please let me know if you have any questions.

Thanks,
Jenny

**Jennifer Strong**
Actuarial Analyst

**Willis Towers Watson**
26555 Evergreen I Suite 1600 I Southfield, MI 48076

T +1 248 936 7585
Jennifer.Strong@willistowerswatson.com
www.willistowerswatson.com

*Notice of Confidentiality*
This email contains confidential material prepared for the intended addressees only and it may contain intellectual property of Towers Watson, its affiliates or a third party. This material may not be suitable for, and we accept no responsibility for, use in any context or for any purpose other than for the intended context and purpose. If you are not the intended recipient or if we did not authorize your receipt of this material, any use, distribution or copying of this material is strictly prohibited and may be unlawful. If you have received this communication in error, please return it to the original sender with the subject heading "Received in error," then delete any copies.

This e-mail has come to you from Towers Watson Delaware Inc.

1

| | |
|---|---|
| **From:** | Diane M Anderson <Diane.M.Anderson@kp.org> |
| **Sent:** | Thursday, March 8, 2018 4:11 PM |
| **To:** | Benjamin Spater |
| **Subject:** | RE: VTCO Claim Form Request - Lia Javier |

No, just wanted to be sure.   I have never seen such a request….

Thanks!

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

**KAISER PERMANENTE.**

**From:** Benjamin Spater [mailto:BSpater@truckerhuss.com]
**Sent:** Thursday, March 08, 2018 1:19 PM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Subject:** RE: VTCO Claim Form Request - Lia Javier

Hi Diane,

I think this is perhaps a better reason for a CIF than some of the others. ☺

Did you think of anything different?

**Benjamin Spater | Director | Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | F. 1-415-421-2017
E. bspater@truckerhuss.com | truckerhuss.com

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Diane M Anderson [mailto:Diane.M.Anderson@kp.org]
**Sent:** Thursday, March 08, 2018 12:59 PM
**To:** Benjamin Spater
**Subject:** FW: VTCO Claim Form Request - Lia Javier

Ben,

Please see the email below.  What do you think?

1

KFHP000662

Diane

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

**KAISER PERMANENTE**

**From:** Thibodeau, Erica [mailto:Erica.Thibodeau@mercer.com]
**Sent:** Thursday, March 08, 2018 9:29 AM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Cc:** Gasper, Steven <steven.gasper@mercer.com>; Dangora, Majbritt <Majbritt.Dangora@mercer.com>; Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com>; Manheim, Jonathan <jonathan.manheim@mercer.com>; Bryan.Start (mercer.com) <Bryan.Start@mercer.com>; Strong, Jennifer (Detroit) <Jennifer.Strong@willistowerswatson.com>; Prangley, Melody (Detroit) <melody.prangley@willistowerswatson.com>; Untal, Ronna (San Diego) <ronna.untal@willistowerswatson.com>; Giannini, Don (San Diego) <Don.Giannini@willistowerswatson.com>; Hendrickson, Adam (Houston) <adam.hendrickson@willistowerswatson.com>; Wilson, Benjamin (Dallas) <benjamin.wilson@willistowerswatson.com>
**Subject:** VTCO Claim Form Request - Lia Javier

**Caution:** This email came from outside Kaiser Permanente. Do not open attachments or click on links if you do not recognize the sender.

Hi Diane,

Participant Lia Javier has requested a Claim Initiation Form as she would like to rescind the election that she previously made under the VTCO. According to the participant, she has a mental disability and should not have been signing her pension paperwork. She claims that she was not properly informed about the VTCO and therefore completed the process without being fully aware of what she was doing and felt pressured by the timeframe.

Her VTCO check has not yet been cashed. Can we mail her a CIF, or do we have to push back?

Thank you,
Erica

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.
NOTICE TO RECIPIENT:  If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents.  If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them.  Thank you.

2

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

KFHP000664

| | |
|---|---|
| **From:** | Benjamin Spater |
| **Sent:** | Thursday, March 8, 2018 1:19 PM |
| **To:** | 'Diane M Anderson' |
| **Subject:** | RE: VTCO Claim Form Request - Lia Javier |

Hi Diane,

I think this is perhaps a better reason for a CIF than some of the others. ☺

Did you think of anything different?

**Benjamin Spater** | Director | **Trucker Huss, APC**
ERISA and Employee Benefits Attorneys
One Embarcadero Center, 12th Floor | San Francisco, CA 94111-3617
T. 1-415-788-3111 | F. 1-415-421-2017
E. bspater@truckerhuss.com | truckerhuss.com

This e-mail message and any attachments may contain confidential information that is legally privileged. If you are not the intended recipient(s), or person responsible for delivering it to the intended recipient(s), you are hereby notified that any review, disclosure, copying, distribution or use of any of the information contained herein is strictly prohibited. If you have received this transmission in error, please contact the sender by reply e-mail and destroy the original transmission and any attachments without reading or saving in any manner.

 Please consider the environment before printing this email

**From:** Diane M Anderson [mailto:Diane.M.Anderson@kp.org]
**Sent:** Thursday, March 08, 2018 12:59 PM
**To:** Benjamin Spater
**Subject:** FW: VTCO Claim Form Request - Lia Javier

Ben,

Please see the email below.  What do you think?

Diane

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

**KAISER PERMANENTE.**

**From:** Thibodeau, Erica [mailto:Erica.Thibodeau@mercer.com]
**Sent:** Thursday, March 08, 2018 9:29 AM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Cc:** Gasper, Steven <steven.gasper@mercer.com>; Dangora, Majbritt <Majbritt.Dangora@mercer.com>; Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com>; Manheim, Jonathan <jonathan.manheim@mercer.com>; Bryan.Start (mercer.com) <Bryan.Start@mercer.com>; Strong, Jennifer (Detroit) <Jennifer.Strong@willistowerswatson.com>;

1

Prangley, Melody (Detroit) <melody.prangley@willistowerswatson.com>; Untal, Ronna (San Diego) <ronna.untal@willistowerswatson.com>; Giannini, Don (San Diego) <Don.Giannini@willistowerswatson.com>; Hendrickson, Adam (Houston) <adam.hendrickson@willistowerswatson.com>; Wilson, Benjamin (Dallas) <benjamin.wilson@willistowerswatson.com>
**Subject:** VTCO Claim Form Request - Lia Javier

**Caution:** This email came from outside Kaiser Permanente. Do not open attachments or click on links if you do not recognize the sender.

---

Hi Diane,

Participant Lia Javier has requested a Claim Initiation Form as she would like to rescind the election that she previously made under the VTCO. According to the participant, she has a mental disability and should not have been signing her pension paperwork. She claims that she was not properly informed about the VTCO and therefore completed the process without being fully aware of what she was doing and felt pressured by the timeframe.

Her VTCO check has not yet been cashed. Can we mail her a CIF, or do we have to push back?

Thank you,
Erica

---

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.
NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

KFHP000666

| | |
|---|---|
| **From:** | Diane M Anderson <Diane.M.Anderson@kp.org> |
| **Sent:** | Thursday, March 8, 2018 12:59 PM |
| **To:** | Benjamin Spater |
| **Subject:** | FW: VTCO Claim Form Request - Lia Javier |

Ben,

Please see the email below.  What do you think?

Diane

**Diane M. Anderson**
**Sr. Manager**
**Retirement Administration**
**Total Rewards**
office: 510.267.2997   tie-line: 8.423.2997 Mobile:  510.289.8589
email:  Diane.M.Anderson@kp.org

**KAISER PERMANENTE**

---

**From:** Thibodeau, Erica [mailto:Erica.Thibodeau@mercer.com]
**Sent:** Thursday, March 08, 2018 9:29 AM
**To:** Diane M Anderson <Diane.M.Anderson@kp.org>
**Cc:** Gasper, Steven <steven.gasper@mercer.com>; Dangora, Majbritt <Majbritt.Dangora@mercer.com>; Irving, Kelly-Ann L <Kelly-Ann.Irving@mercer.com>; Manheim, Jonathan <jonathan.manheim@mercer.com>; Bryan.Start (mercer.com) <Bryan.Start@mercer.com>; Strong, Jennifer (Detroit) <Jennifer.Strong@willistowerswatson.com>; Prangley, Melody (Detroit) <melody.prangley@willistowerswatson.com>; Untal, Ronna (San Diego) <ronna.untal@willistowerswatson.com>; Giannini, Don (San Diego) <Don.Giannini@willistowerswatson.com>; Hendrickson, Adam (Houston) <adam.hendrickson@willistowerswatson.com>; Wilson, Benjamin (Dallas) <benjamin.wilson@willistowerswatson.com>
**Subject:** VTCO Claim Form Request - Lia Javier

---

**Caution:** This email came from outside Kaiser Permanente. Do not open attachments or click on links if you do not recognize the sender.

---

Hi Diane,

Participant Lia Javier has requested a Claim Initiation Form as she would like to rescind the election that she previously made under the VTCO. According to the participant, she has a mental disability and should not have been signing her pension paperwork. She claims that she was not properly informed about the VTCO and therefore completed the process without being fully aware of what she was doing and felt pressured by the timeframe.

Her VTCO check has not yet been cashed. Can we mail her a CIF, or do we have to push back?

Thank you,
Erica

1

KFHP000667

This email and any attachments may be confidential or proprietary. Any review, use, disclosure, distribution or copying of this email is prohibited except by or on behalf of the intended recipient. If you received this message in error or are not the intended recipient, please delete or destroy the email message and any attachments or copies and notify the sender of the erroneous delivery by return email. To the extent that this message or its attachments were sent without encryption, we cannot guarantee that the contents have not been changed or tampered with. Any advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be used for any other purpose without our prior written consent.

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

KFHP000668

5/21/2020                                    DB Claims and Appeals Database - Lia Javier

| | |
|---|---|
| Claimant Name | Lia Javier |
| Issue No. | 387 |
| Participant SSN | **REDACTED** |
| Plan(s) | 2 - Salaried Retirement Plan-Plan A |
| Documents Requested? | |
| Status | Closed - Complete |
| Type | Appeal |
| VCP? | No |
| Prior Escalation | None |
| CIF Open Date | 3/26/2018 |
| CIF Due Date | |
| Extended CIF Resolution Date | |
| CIF Determination | |
| Appeal Received Date | |
| Appeal Meeting Date | |
| Appeal Determination | |
| Description | TVCO Election Revocation Claim |
| Root Cause | |
| Links | Attachment: Mercer Documents ; WTW Conversion Documents |
| Discussion | ☐ System Account (1/17/2020 3:51 AM): **TVCO CIF Received**(Start, Bryan, 3/29/2018 11:29:24 AM) Documentation and ROS attached. Requested calls to be pulled and uploaded ASAP. CIF forwarded to WTW so they can prepare their materials. |
| | The participant has stated she has a mental disability and should not have been signing her pension paperwork. She states she was not correctly informed by the PEHD about the process and did so without full awareness of what she was doing and under the duress of the timeframe imposed. She provided documentation of her disability along with her completed CIF. |
| | I have provided a copy of the Trustee's check ledger as of 3/29/2018 in the Mercer Documents folder in support of her statement that she has not cashed the check. |
| | Bryan |
| | **TH Request**(Adrine Adjemian, 4/18/2018 8:40:14 PM) Hi Bryan, |

KFHP000669

The calls in the "Call" zip file do not have the dates. Could you please provide us with that information or upload the calls again?

Thank you,

Adrine

**Mercer Response**(Start, Bryan, 4/27/2018 9:36:58 AM)
Hi Adrine,

The 'Call' zip file has been uploaded again with the call dates.

Bryan

**TH Request No. 2**(Adrine Adjemian, 6/19/2018 12:45:42 PM)
Hi Bryan,

What is the date of the call for "Call1.zip"?

Adrine

**Mercer**(Figueroa, Aurellymar, 6/22/2018 10:12:45 AM)
Lia Javier's claim has been denied. Letter attached below. Closing

**Mercer**(Figueroa, Aurellymar, 10/19/2018 1:45:31 PM)
No additional documentation received or mailed post the claim denial. Requested post denial calls to be pulled and uploaded ASAP.

Status Change Date

| date | member | field | change |
|---|---|---|---|
| 9 Jan 20 | Figueroa, Aurellymar | | added "VTCO Lia Javier Claims files for TH.zip" |
| 9 Jan 20 | Figueroa, Aurellymar | | added "Call.zip" |
| 9 Jan 20 | Figueroa, Aurellymar | | added "Call1.zip" |
| 9 Jan 20 | Figueroa, Aurellymar | | added "Lia Javier Calls.zip" |
| 21 Feb 19 | Irving, Kelly-Ann L | Status | Closed - Complete |
| 13 Dec 18 | Shannon Oliver | | added "Appeal Determination Letter_Javier_Lia 12.10.18.pdf" |
| 22 Oct 18 | White, Stephen | | added "Lia Javier Calls.zip" |
| 19 Oct 18 | Figueroa, Aurellymar | | added "Mercer" |
| 19 Oct 18 | Figueroa, Aurellymar | Status | In Review with Trucker Huss |
| 19 Oct 18 | Figueroa, Aurellymar | Type | Appeal |
| 19 Oct 18 | Figueroa, Aurellymar | | added "2018-10-02 Appeal Letter.pdf" |

KFHP000670

| | | | |
|---|---|---|---|
| 22 Jun 18 | Figueroa, Aurellymar | | added "Mercer" |
| 22 Jun 18 | Figueroa, Aurellymar | Status | Closed - Complete |
| 22 Jun 18 | Figueroa, Aurellymar | | added "Denial LTO L. Javier.pdf" |
| 19 Jun 18 | Adrine Adjemian | | added "TH Request No. 2" |
| 27 Apr 18 | Start, Bryan | | added "Mercer Response" |
| 27 Apr 18 | Start, Bryan | | added "Call.zip" |
| 18 Apr 18 | Adrine Adjemian | | added "TH Request" |
| 5 Apr 18 | Start, Bryan | | added "Call1.zip" |
| 5 Apr 18 | Start, Bryan | | added "VTCO Lia Javier Claims files for TH.zip" |
| 5 Apr 18 | Start, Bryan | | added "Call.zip" |
| 29 Mar 18 | Start, Bryan | Open Date | 26 Mar 18 |
| 29 Mar 18 | Start, Bryan | | edited "TVCO CIF Received" |
| 29 Mar 18 | Start, Bryan | | added "TVCO CIF Received" |
| 29 Mar 18 | Start, Bryan | | added "2017-10-09 TVCO Kit In Good Order Notice.pdf" |
| 29 Mar 18 | Start, Bryan | | added "2017-08-16 TVCO Election Kit.pdf" |
| 29 Mar 18 | Start, Bryan | | added "WTW Conversion Documents" |
| 29 Mar 18 | Start, Bryan | | added "Trustee Check Ledger as of 03.29.2018.pdf" |
| 29 Mar 18 | Start, Bryan | | added "2018-03-26 TVCO CIF Received - Lia Javier.pdf" |
| 29 Mar 18 | Start, Bryan | | added "2018-03-09 CIF Sent.pdf" |
| 29 Mar 18 | Start, Bryan | | added "Mercer Documents" |
| 29 Mar 18 | Start, Bryan | | added "Data Profile - Javier, Lia.xlsx" |
| 29 Mar 18 | Start, Bryan | | added "2018-03-26 TVCO CIF Received - Lia |

KFHP000671

5/21/2020                          DB Claims and Appeals Database - Lia Javier

| | | | Received - Lia Javier.pdf" |
|---|---|---|---|
| 29 Mar 18 | Start, Bryan | Status | In Review with Trucker Huss |
| 29 Mar 18 | Start, Bryan | Open Date | 29 Mar 18 |
| 29 Mar 18 | Start, Bryan | VCP? | No |
| 29 Mar 18 | Start, Bryan | Requested By | Start, Bryan |
| 29 Mar 18 | Start, Bryan | Type | Claim |
| 29 Mar 18 | Start, Bryan | Participant Name | Lia Javier |
| 29 Mar 18 | Start, Bryan | Participant SSN | REDACTED |
| 29 Mar 18 | Start, Bryan | Plan(s) | 2 - Salaried Retirement Plan-Plan A |
| 29 Mar 18 | Start, Bryan | Description | TVCO Election Revocation Claim |

Attachments            2018-03-26 TVCO CIF Received - Lia Javier.pdf
                       2018-10-02 Appeal Letter.pdf
                       Appeal Determination Letter_Javier_Lia 12.10.18.pdf
                       Call.zip
                       Call1.zip
                       Data Profile - Javier, Lia.xlsx
                       Denial LTO L. Javier.pdf
                       Lia Javier Calls.zip
                       VTCO Lia Javier Claims files for TH.zip

Content Type: Item
Version: 1.0
Created at 3/29/2018 10:50 AM  by ☐ connectmigration@mercer.com
Last modified at 1/17/2020 3:51 AM  by ☐ System Account

[ Close ]

KFHP000672



KAISER PERMANENTE.

# Data Profile - Detail Report

## PERSON

**SSN** REDACTED
**Name Prefix**
**First Name** Lia
**Middle Name**
**Last Name** Javier
**Name Suffix**
**Date Of Birth** REDACTED
**Date Of Death**
**Gender** F

## EMPLOYEE

**Employee ID** 00386072
**Key Executive** Non-Executive
**Department**
**Work Location** CN7401
**Work Area**
**Martial Status** Unknown
**Marriage Date**

## ADDRESS

**Address Type** Mailing
**Address Line 1** 805 Fieldstone Court
**Address Line 2**
**Address Line 3**
**City** Brentwood
**State** CA
**Province**
**Country** USA
**Postal Code** 94513
**Phone-Home** (510) 701-1771
**Email-Work**

**Address Type** Residence
**Address Line 1** 805 Fieldstone Court
**Address Line 2**
**Address Line 3**
**City** Brentwood
**State** CA
**Province**
**Country** USA
**Postal Code** 94513
**Phone-Home** (510) 701-1771
**Email-Work**

## BENEFICIARY

| Plan # | Plan Name | SSN | First Name | Middle Name | Last Name | Birth Date | Gender | Relationship | Type | Percentage |
|---|---|---|---|---|---|---|---|---|---|---|

## EMPLOYMENT EVENT

| Effective Date | Sequence # | Org Unit Name | Event | Event Reason | Plan # | Controlled Group |
|---|---|---|---|---|---|---|
| 05/14/2010 | 0 | My HR PO Health Plan Employees | TERM | TERM | 2 | 1 |
| 06/29/2009 | 0 | My HR PO Health Plan Employees | ACT | RETLOA | 2 | 1 |
| 06/09/2009 | 0 | My HR PO Health Plan Employees | PLA | LOA | 2 | 1 |
| 02/16/2009 | 0 | My HR PO Health Plan Employees | PLA | LOA | 2 | 1 |
| 01/15/2001 | 0 | My HR PO Health Plan Employees | ACT | HIRE | 2 | 1 |
| 10/06/2000 | 0 | My HR PO Health Plan Employees | TERM | TERM | 2 | 1 |
| 08/14/2000 | 0 | My HR PO Health Plan Employees | ACT | HIRE | 2 | 1 |

## PERSON STATUS

| Plan Code | Person Type Code | Person Status |
|---|---|---|
| 2 | EMPL | Paidout |

## PERSON STATUS PARAMETER

| Effective Date | Plan # | Plan Name | Parameter Name | Parameter Value |
|---|---|---|---|---|

## EMPLOYMENT CLASSIFICATION

| Effective Date | Sequence # | Org Unit Name | FLSA | Scheduled Hours | Job Group | Job Category | Pay Rate | Pay Rate Frequency | Salary Grade |
|---|---|---|---|---|---|---|---|---|---|
| 10/03/2009 | 1 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.9400 | Hourly | |
| 10/03/2009 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.9400 | Hourly | |
| 08/01/2009 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.9400 | Hourly | |
| 06/29/2009 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.9400 | Hourly | |
| 02/16/2009 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.9400 | Hourly | |
| 08/17/2008 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.9400 | Hourly | |
| 04/25/2008 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.9400 | Hourly | |
| 03/30/2008 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.9400 | Hourly | |
| 04/01/2007 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $21.1900 | Hourly | |
| 03/19/2006 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $3,566.6700 | Monthly | |
| 03/20/2005 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $3,333.3300 | Monthly | |
| 03/21/2004 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $3,038.9200 | Monthly | |
| 03/23/2003 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $2,979.3400 | Monthly | |
| 03/24/2002 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $2,892.5800 | Monthly | |
| 01/15/2001 | 0 | My HR PO Health Plan Employees | Non-Exempt | 40 | | Regular Full Time | $2,808.3300 | Monthly | |
| 08/14/2000 | 0 | My HR PO Health Plan Employees | Unknown | 40 | | Regular Full Time | $3,308.3300 | Monthly | |

## EMPLOYMENT CLASSIFICATION USER DEFINED

| Effective Date | Sequence # | Region | Entity | Benefit Program | Employee Group | Hourly/Salary Indicator | Bargaining Unit Code | Job Code | LMP Indicator | Common Plan Work Schedule | Additional Pay Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/03/2009 | 1 | Northern California | Health Plan | Sal and followers | Non Union Employee | H | | 921003 | N | | |
| 10/03/2009 | 0 | Northern California | Health Plan | Used for all pre 09042012 entrees | Non Union Employee | H | | 921003 | N | | |
| 08/01/2009 | 0 | Northern California | Health Plan | Used for all pre 09042012 entrees | Non Union Employee | H | | 921003 | | | |
| 06/29/2009 | 0 | Northern California | Health Plan | Used for all pre 09042012 entrees | Non Union Employee | H | | 921003 | | | |
| 02/16/2009 | 0 | Northern California | Health Plan | Used for all pre 09042012 entrees | Non Union Employee | H | | 921003 | | | |

| Effective Date | | | Org Unit Name | Earning Amount | Earnings Type | Earnings Frequency | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/17/2008 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | H | | 921003 | | | |
| 04/25/2008 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | H | | 921003 | | | |
| 03/30/2008 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | S | | 921003 | | | |
| 04/01/2007 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | S | | 921003 | | | |
| 03/19/2006 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | S | | 921003 | | | |
| 03/20/2005 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | S | | 921003 | | | |
| 03/21/2004 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | S | | 921003 | | | |
| 03/23/2003 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | S | | 921003 | | | |
| 03/24/2002 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | U | | 921003 | | | |
| 01/15/2001 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | U | | 921003 | | | |
| 08/14/2000 | 0 | | Northern California | Health Plan | Used for all pre 09042012 retirees | Non Union Employee | U | | | | | |

**EMPLOYEE EARNINGS**

| Effective Date | Payroll Date | Org Unit Name | Earning Amount | Earnings Type | Earnings Frequency |
|---|---|---|---|---|---|

**EMPLOYEE HOURS**

| Effective Date | Payroll Date | Org Unit Name | Hours Worked | Hours Type | Hours Frequency |
|---|---|---|---|---|---|
| 05/22/2010 | 05/22/2010 | My HR PO Health Plan Employees | 221.21 | Actual Hours | Unknown |
| 05/22/2010 | 05/22/2010 | My HR PO Health Plan Employees | 120.80 | Extended Sick Leave Hours | Unknown |
| 05/22/2010 | 05/22/2010 | My HR PO Health Plan Employees | 181.21 | Vacation Payoff Hours | Unknown |
| 05/08/2010 | 05/08/2010 | My HR PO Health Plan Employees | 80.00 | Actual Hours | Unknown |
| 04/24/2010 | 04/24/2010 | My HR PO Health Plan Employees | 80.00 | Actual Hours | Unknown |
| 04/10/2010 | 04/10/2010 | My HR PO Health Plan Employees | 80.00 | Actual Hours | Unknown |
| 03/27/2010 | 03/27/2010 | My HR PO Health Plan Employees | 80.00 | Actual Hours | Unknown |
| 03/13/2010 | 03/13/2010 | My HR PO Health Plan Employees | 80.61 | Actual Hours | Unknown |
| 02/27/2010 | 02/27/2010 | My HR PO Health Plan Employees | 80.60 | Actual Hours | Unknown |
| 02/13/2010 | 02/13/2010 | My HR PO Health Plan Employees | 81.43 | Actual Hours | Unknown |
| 01/30/2010 | 01/30/2010 | My HR PO Health Plan Employees | 80.10 | Actual Hours | Unknown |
| 01/16/2010 | 01/16/2010 | My HR PO Health Plan Employees | 81.60 | Actual Hours | Unknown |
| 01/02/2010 | 01/02/2010 | My HR PO Health Plan Employees | 80.18 | Actual Hours | Unknown |
| 12/19/2009 | 12/19/2009 | My HR PO Health Plan Employees | 81.70 | Actual Hours | Unknown |
| 12/05/2009 | 12/05/2009 | My HR PO Health Plan Employees | 78.88 | Actual Hours | Unknown |
| 11/21/2009 | 11/21/2009 | My HR PO Health Plan Employees | 79.92 | Actual Hours | Unknown |
| 11/07/2009 | 11/07/2009 | My HR PO Health Plan Employees | 80.39 | Actual Hours | Unknown |
| 10/24/2009 | 10/24/2009 | My HR PO Health Plan Employees | 80.70 | Actual Hours | Unknown |
| 10/10/2009 | 10/10/2009 | My HR PO Health Plan Employees | 80.19 | Actual Hours | Unknown |
| 09/26/2009 | 09/26/2009 | My HR PO Health Plan Employees | 80.51 | Actual Hours | Unknown |
| 09/12/2009 | 09/12/2009 | My HR PO Health Plan Employees | 79.74 | Actual Hours | Unknown |
| 08/29/2009 | 08/29/2009 | My HR PO Health Plan Employees | 79.72 | Actual Hours | Unknown |
| 08/15/2009 | 08/15/2009 | My HR PO Health Plan Employees | 82.35 | Actual Hours | Unknown |
| 08/01/2009 | 08/01/2009 | My HR PO Health Plan Employees | 81.01 | Actual Hours | Unknown |
| 07/18/2009 | 07/18/2009 | My HR PO Health Plan Employees | 81.84 | Actual Hours | Unknown |
| 07/04/2009 | 07/04/2009 | My HR PO Health Plan Employees | 79.99 | Actual Hours | Unknown |
| 06/20/2009 | 06/20/2009 | My HR PO Health Plan Employees | 80.32 | Actual Hours | Unknown |
| 06/06/2009 | 06/06/2009 | My HR PO Health Plan Employees | 81.61 | Actual Hours | Unknown |
| 05/23/2009 | 05/23/2009 | My HR PO Health Plan Employees | 82.69 | Actual Hours | Unknown |
| 05/09/2009 | 05/09/2009 | My HR PO Health Plan Employees | 76.97 | Actual Hours | Unknown |
| 04/25/2009 | 04/25/2009 | My HR PO Health Plan Employees | 80.89 | Actual Hours | Unknown |
| 04/11/2009 | 04/11/2009 | My HR PO Health Plan Employees | 80.50 | Actual Hours | Unknown |
| 03/28/2009 | 03/28/2009 | My HR PO Health Plan Employees | 79.95 | Actual Hours | Unknown |
| 03/14/2009 | 03/14/2009 | My HR PO Health Plan Employees | 83.16 | Actual Hours | Unknown |
| 02/28/2009 | 02/28/2009 | My HR PO Health Plan Employees | 76.47 | Actual Hours | Unknown |
| 02/14/2009 | 02/14/2009 | My HR PO Health Plan Employees | 84.72 | Actual Hours | Unknown |
| 01/31/2009 | 01/31/2009 | My HR PO Health Plan Employees | 79.97 | Actual Hours | Unknown |
| 01/17/2009 | 01/17/2009 | My HR PO Health Plan Employees | 83.57 | Actual Hours | Unknown |
| 01/03/2009 | 01/03/2009 | My HR PO Health Plan Employees | 79.31 | Actual Hours | Unknown |
| 12/20/2008 | 12/20/2008 | My HR PO Health Plan Employees | 74.95 | Actual Hours | Unknown |
| 12/06/2008 | 12/06/2008 | My HR PO Health Plan Employees | 79.84 | Actual Hours | Unknown |
| 11/22/2008 | 11/22/2008 | My HR PO Health Plan Employees | 80.55 | Actual Hours | Unknown |
| 11/08/2008 | 11/08/2008 | My HR PO Health Plan Employees | 79.45 | Actual Hours | Unknown |
| 10/25/2008 | 10/25/2008 | My HR PO Health Plan Employees | 80.43 | Actual Hours | Unknown |
| 10/11/2008 | 10/11/2008 | My HR PO Health Plan Employees | 82.20 | Actual Hours | Unknown |
| 09/27/2008 | 09/27/2008 | My HR PO Health Plan Employees | 80.11 | Actual Hours | Unknown |
| 09/13/2008 | 09/13/2008 | My HR PO Health Plan Employees | 80.69 | Actual Hours | Unknown |
| 08/30/2008 | 08/30/2008 | My HR PO Health Plan Employees | 81.81 | Actual Hours | Unknown |
| 08/16/2008 | 08/16/2008 | My HR PO Health Plan Employees | 81.46 | Actual Hours | Unknown |
| 08/02/2008 | 08/02/2008 | My HR PO Health Plan Employees | 81.76 | Actual Hours | Unknown |
| 07/19/2008 | 07/19/2008 | My HR PO Health Plan Employees | 81.05 | Actual Hours | Unknown |
| 07/05/2008 | 07/05/2008 | My HR PO Health Plan Employees | 80.04 | Actual Hours | Unknown |
| 06/21/2008 | 06/21/2008 | My HR PO Health Plan Employees | 80.09 | Actual Hours | Unknown |
| 06/07/2008 | 06/07/2008 | My HR PO Health Plan Employees | 81.35 | Actual Hours | Unknown |
| 05/24/2008 | 05/24/2008 | My HR PO Health Plan Employees | 82.10 | Actual Hours | Unknown |
| 05/10/2008 | 05/10/2008 | My HR PO Health Plan Employees | 79.63 | Actual Hours | Unknown |
| 04/26/2008 | 04/26/2008 | My HR PO Health Plan Employees | 80.92 | Actual Hours | Unknown |
| 04/12/2008 | 04/12/2008 | My HR PO Health Plan Employees | 79.56 | Actual Hours | Unknown |
| 03/29/2008 | 03/29/2008 | My HR PO Health Plan Employees | 88.89 | Actual Hours | Unknown |
| 03/15/2008 | 03/15/2008 | My HR PO Health Plan Employees | 73.17 | Actual Hours | Unknown |
| 03/01/2008 | 03/01/2008 | My HR PO Health Plan Employees | 81.53 | Actual Hours | Unknown |
| 02/16/2008 | 02/16/2008 | My HR PO Health Plan Employees | 82.57 | Actual Hours | Unknown |
| 02/02/2008 | 02/02/2008 | My HR PO Health Plan Employees | 80.67 | Actual Hours | Unknown |
| 01/19/2008 | 01/19/2008 | My HR PO Health Plan Employees | 80.05 | Actual Hours | Unknown |
| 01/05/2008 | 01/05/2008 | My HR PO Health Plan Employees | 80.00 | Actual Hours | Unknown |
| 12/31/2007 | 12/31/2007 | My HR PO Health Plan Employees | 8.80 | Actual Hours | Unknown |
| 12/22/2007 | 12/22/2007 | My HR PO Health Plan Employees | 84.20 | Actual Hours | Unknown |
| 12/08/2007 | 12/08/2007 | My HR PO Health Plan Employees | 76.17 | Actual Hours | Unknown |
| 11/24/2007 | 11/24/2007 | My HR PO Health Plan Employees | 77.55 | Actual Hours | Unknown |
| 11/10/2007 | 11/10/2007 | My HR PO Health Plan Employees | 82.46 | Actual Hours | Unknown |
| 10/27/2007 | 10/27/2007 | My HR PO Health Plan Employees | 79.78 | Actual Hours | Unknown |
| 10/13/2007 | 10/13/2007 | My HR PO Health Plan Employees | 80.74 | Actual Hours | Unknown |
| 09/29/2007 | 09/29/2007 | My HR PO Health Plan Employees | 82.97 | Actual Hours | Unknown |
| 09/15/2007 | 09/15/2007 | My HR PO Health Plan Employees | 81.20 | Actual Hours | Unknown |
| 09/01/2007 | 09/01/2007 | My HR PO Health Plan Employees | 81.42 | Actual Hours | Unknown |
| 08/18/2007 | 08/18/2007 | My HR PO Health Plan Employees | 79.37 | Actual Hours | Unknown |
| 08/04/2007 | 08/04/2007 | My HR PO Health Plan Employees | 82.69 | Actual Hours | Unknown |
| 07/21/2007 | 07/21/2007 | My HR PO Health Plan Employees | 79.70 | Actual Hours | Unknown |
| 07/07/2007 | 07/07/2007 | My HR PO Health Plan Employees | 78.60 | Actual Hours | Unknown |
| 06/23/2007 | 06/23/2007 | My HR PO Health Plan Employees | 81.50 | Actual Hours | Unknown |
| 06/09/2007 | 06/09/2007 | My HR PO Health Plan Employees | 81.89 | Actual Hours | Unknown |
| 05/26/2007 | 05/26/2007 | My HR PO Health Plan Employees | 80.44 | Actual Hours | Unknown |

KFHP000674

| Date | Date | Plan | Hours | Status |
|---|---|---|---|---|
| 05/12/2007 | 05/12/2007 | My HR PO Health Plan Employees | 80.07 Actual Hours | Unknown |
| 04/28/2007 | 04/28/2007 | My HR PO Health Plan Employees | 79.95 Actual Hours | Unknown |
| 04/14/2007 | 04/14/2007 | My HR PO Health Plan Employees | 88.48 Actual Hours | Unknown |
| 03/31/2007 | 03/31/2007 | My HR PO Health Plan Employees | 112.00 Actual Hours | Unknown |
| 03/17/2007 | 03/17/2007 | My HR PO Health Plan Employees | 112.00 Actual Hours | Unknown |
| 03/03/2007 | 03/03/2007 | My HR PO Health Plan Employees | 79.41 Actual Hours | Unknown |
| 02/17/2007 | 02/17/2007 | My HR PO Health Plan Employees | 80.08 Actual Hours | Unknown |
| 02/03/2007 | 02/03/2007 | My HR PO Health Plan Employees | 63.68 Actual Hours | Unknown |
| 01/20/2007 | 01/20/2007 | My HR PO Health Plan Employees | 80.99 Actual Hours | Unknown |
| 01/06/2007 | 01/06/2007 | My HR PO Health Plan Employees | 76.20 Actual Hours | Unknown |
| 12/23/2006 | 12/23/2006 | My HR PO Health Plan Employees | 81.00 Actual Hours | Unknown |
| 12/09/2006 | 12/09/2006 | My HR PO Health Plan Employees | 79.23 Actual Hours | Unknown |
| 11/25/2006 | 11/25/2006 | My HR PO Health Plan Employees | 80.06 Actual Hours | Unknown |
| 11/11/2006 | 11/11/2006 | My HR PO Health Plan Employees | 96.11 Actual Hours | Unknown |
| 10/28/2006 | 10/28/2006 | My HR PO Health Plan Employees | 112.00 Actual Hours | Unknown |
| 10/14/2006 | 10/14/2006 | My HR PO Health Plan Employees | 112.00 Actual Hours | Unknown |
| 09/30/2006 | 09/30/2006 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 09/16/2006 | 09/16/2006 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 09/02/2006 | 09/02/2006 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 08/19/2006 | 08/19/2006 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 08/05/2006 | 08/05/2006 | My HR PO Health Plan Employees | 81.14 Actual Hours | Unknown |
| 07/22/2006 | 07/22/2006 | My HR PO Health Plan Employees | 81.93 Actual Hours | Unknown |
| 07/08/2006 | 07/08/2006 | My HR PO Health Plan Employees | 80.54 Actual Hours | Unknown |
| 06/24/2006 | 06/24/2006 | My HR PO Health Plan Employees | 80.40 Actual Hours | Unknown |
| 06/10/2006 | 06/10/2006 | My HR PO Health Plan Employees | 78.26 Actual Hours | Unknown |
| 05/27/2006 | 05/27/2006 | My HR PO Health Plan Employees | 80.93 Actual Hours | Unknown |
| 05/13/2006 | 05/13/2006 | My HR PO Health Plan Employees | 80.05 Actual Hours | Unknown |
| 04/29/2006 | 04/29/2006 | My HR PO Health Plan Employees | 79.93 Actual Hours | Unknown |
| 04/15/2006 | 04/15/2006 | My HR PO Health Plan Employees | 80.59 Actual Hours | Unknown |
| 04/01/2006 | 04/01/2006 | My HR PO Health Plan Employees | 79.99 Actual Hours | Unknown |
| 03/18/2006 | 03/18/2006 | My HR PO Health Plan Employees | 82.74 Actual Hours | Unknown |
| 03/04/2006 | 03/04/2006 | My HR PO Health Plan Employees | 77.94 Actual Hours | Unknown |
| 02/18/2006 | 02/18/2006 | My HR PO Health Plan Employees | 76.92 Actual Hours | Unknown |
| 02/04/2006 | 02/04/2006 | My HR PO Health Plan Employees | 79.82 Actual Hours | Unknown |
| 01/21/2006 | 01/21/2006 | My HR PO Health Plan Employees | 77.56 Actual Hours | Unknown |
| 01/07/2006 | 01/07/2006 | My HR PO Health Plan Employees | 80.08 Actual Hours | Unknown |
| 12/24/2005 | 12/24/2005 | My HR PO Health Plan Employees | 80.07 Actual Hours | Unknown |
| 12/10/2005 | 12/10/2005 | My HR PO Health Plan Employees | 81.79 Actual Hours | Unknown |
| 11/26/2005 | 11/26/2005 | My HR PO Health Plan Employees | 81.15 Actual Hours | Unknown |
| 11/12/2005 | 11/12/2005 | My HR PO Health Plan Employees | 82.41 Actual Hours | Unknown |
| 10/29/2005 | 10/29/2005 | My HR PO Health Plan Employees | 78.08 Actual Hours | Unknown |
| 10/15/2005 | 10/15/2005 | My HR PO Health Plan Employees | 78.03 Actual Hours | Unknown |
| 10/01/2005 | 10/01/2005 | My HR PO Health Plan Employees | 76.62 Actual Hours | Unknown |
| 09/17/2005 | 09/17/2005 | My HR PO Health Plan Employees | 85.22 Actual Hours | Unknown |
| 09/03/2005 | 09/03/2005 | My HR PO Health Plan Employees | 79.80 Actual Hours | Unknown |
| 08/20/2005 | 08/20/2005 | My HR PO Health Plan Employees | 72.67 Actual Hours | Unknown |
| 08/06/2005 | 08/06/2005 | My HR PO Health Plan Employees | 80.07 Actual Hours | Unknown |
| 07/23/2005 | 07/23/2005 | My HR PO Health Plan Employees | 81.12 Actual Hours | Unknown |
| 07/09/2005 | 07/09/2005 | My HR PO Health Plan Employees | 78.46 Actual Hours | Unknown |
| 06/25/2005 | 06/25/2005 | My HR PO Health Plan Employees | 79.09 Actual Hours | Unknown |
| 06/11/2005 | 06/11/2005 | My HR PO Health Plan Employees | 78.75 Actual Hours | Unknown |
| 05/28/2005 | 05/28/2005 | My HR PO Health Plan Employees | 78.00 Actual Hours | Unknown |
| 05/14/2005 | 05/14/2005 | My HR PO Health Plan Employees | 79.53 Actual Hours | Unknown |
| 04/30/2005 | 04/30/2005 | My HR PO Health Plan Employees | 80.18 Actual Hours | Unknown |
| 04/16/2005 | 04/16/2005 | My HR PO Health Plan Employees | 80.08 Actual Hours | Unknown |
| 04/02/2005 | 04/02/2005 | My HR PO Health Plan Employees | 79.84 Actual Hours | Unknown |
| 03/19/2005 | 03/19/2005 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 03/05/2005 | 03/05/2005 | My HR PO Health Plan Employees | 79.64 Actual Hours | Unknown |
| 02/19/2005 | 02/19/2005 | My HR PO Health Plan Employees | 79.96 Actual Hours | Unknown |
| 02/05/2005 | 02/05/2005 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 01/22/2005 | 01/22/2005 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 01/08/2005 | 01/08/2005 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 12/25/2004 | 12/25/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 12/11/2004 | 12/11/2004 | My HR PO Health Plan Employees | 82.20 Actual Hours | Unknown |
| 11/27/2004 | 11/27/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 11/13/2004 | 11/13/2004 | My HR PO Health Plan Employees | 160.00 Actual Hours | Unknown |
| 10/16/2004 | 10/16/2004 | My HR PO Health Plan Employees | 160.00 Actual Hours | Unknown |
| 09/18/2004 | 09/18/2004 | My HR PO Health Plan Employees | 160.00 Actual Hours | Unknown |
| 08/21/2004 | 08/21/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 08/07/2004 | 08/07/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 07/24/2004 | 07/24/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 07/10/2004 | 07/10/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 06/26/2004 | 06/26/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 06/12/2004 | 06/12/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 05/29/2004 | 05/29/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 05/21/2004 | 05/21/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 05/07/2004 | 05/07/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 04/09/2004 | 04/09/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 03/26/2004 | 03/26/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 02/27/2004 | 02/27/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 02/13/2004 | 02/13/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 01/30/2004 | 01/30/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 01/16/2004 | 01/16/2004 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 01/02/2004 | 01/02/2004 | My HR PO Health Plan Employees | 80.10 Actual Hours | Unknown |
| 12/19/2003 | 12/19/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 12/05/2003 | 12/05/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 11/21/2003 | 11/21/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 11/07/2003 | 11/07/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 10/24/2003 | 10/24/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 10/10/2003 | 10/10/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 09/26/2003 | 09/26/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 09/12/2003 | 09/12/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 08/29/2003 | 08/29/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 08/15/2003 | 08/15/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 08/01/2003 | 08/01/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 07/18/2003 | 07/18/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 07/03/2003 | 07/03/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 06/20/2003 | 06/20/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |
| 06/06/2003 | 06/06/2003 | My HR PO Health Plan Employees | 80.00 Actual Hours | Unknown |

KFHP000675

| 05/23/2003 | 05/23/2003 | My HR PO Health Plan Employees | | 72.00 Actual Hours | Unknown |
| 05/09/2003 | 05/09/2003 | My HR PO Health Plan Employees | | 72.00 Actual Hours | Unknown |
| 01/01/2003 | 04/30/2003 | My HR PO Health Plan Employees | | 744.00 Actual Hours | Unknown |
| 01/01/2002 | 12/31/2002 | My HR PO Health Plan Employees | | 2,080.00 Actual Hours | Annually |
| 01/01/2001 | 12/31/2001 | My HR PO Health Plan Employees | | 1,915.00 Actual Hours | Annually |
| 08/14/2000 | 12/31/2000 | My HR PO Health Plan Employees | | 332.30 Actual Hours | Unknown |
| 08/14/2000 | 08/14/2000 | My HR PO Health Plan Employees | | 22.30 Vacation Payoff Hours | Unknown |

**PARAMETER**

| Effective Date | Plan # | Plan Name | Parameter Name | Parameter Value |
|---|---|---|---|---|
| 12/07/2017 | 999 | No Specific Plan | Call Center Phone Number Selection-613 | 1 |
| 11/01/2017 | 2 | Salaried Retirement Plan-Plan A | Lump Sum Factor-5614 | 70.7484 |
| 11/01/2017 | 2 | Salaried Retirement Plan-Plan A | Lump Sum Paid-614 | 37517.88 |
| 11/01/2017 | 999 | No Specific Plan | Total LS-KPRP Plan for Participants-5609 | 37517.88 |
| 12/31/2016 | 2 | Salaried Retirement Plan-Plan A | Current Calculated Credited Service-616 | 0 |
| 12/31/2016 | 2 | Salaried Retirement Plan-Plan A | Current Calculated Vesting Service-615 | 10 |
| 01/22/2016 | 999 | No Specific Plan | Panther exclusion with no benefit impact | 1 |
| 12/31/2015 | 2 | Salaried Retirement Plan-Plan A | Current Calculated Credited Service-616 | 0 |
| 12/31/2015 | 2 | Salaried Retirement Plan-Plan A | Current Calculated Vesting Service-615 | 10 |
| 11/04/2015 | 999 | No Specific Plan | Panther Failure D15 | Panther Failure D15 |
| 12/31/2014 | 2 | Salaried Retirement Plan-Plan A | Current Calculated Credited Service-616 | 0 |
| 12/31/2014 | 2 | Salaried Retirement Plan-Plan A | Current Calculated Vesting Service-615 | 10 |
| 12/31/2010 | 2 | Salaried Retirement Plan-Plan A | Vesting Service @ Termination-123 | 10.00 |
| 06/19/2010 | 2 | Salaried Retirement Plan-Plan A | Accrued Benefit Already Paid | 530.3 |
| 06/19/2010 | 2 | Salaried Retirement Plan-Plan A | Normal Retirement Benefit-119 | 530.30 |
| 06/19/2010 | 2 | Salaried Retirement Plan-Plan A | Previously Paid Accrued Benefit BCD-5605 | 11/1/2017 |
| 01/01/2003 | 2 | Salaried Retirement Plan-Plan A | Date of Participation-100 | 20010814 |

**SPECIAL REVIEW**

| Plan # | Plan Name | Special Review Name |
|---|---|---|
| 999 | No Specific Plan | Participant included in Term Vested Cashout - Wave 2 |

**PRE-ELECTION 409A**

| Plan # | Plan Name | Payment Event for Election | Call Received Date | Event Occurred Date | Elected BCD | Elected Form of Payment | Election Elected? |
|---|---|---|---|---|---|---|---|

KFHP000676