Clarissa A. Kang, No. 210660
Dylan D. Rudolph, No. 278707
TRUCKER ✦ HUSS
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 788-3111
Facsimile: (415) 421-2017
E-mail: ckang@truckerhuss.com
drudolph@truckerhuss.com

Attorneys for Defendant
KAISER FOUNDATION HEALTH
PLAN, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| LIA C. JAVIER,<br><br>        Plaintiff,<br><br>vs.<br><br>KAISER PERMANENTE RETIREMENT,<br><br>        Defendant. | Case No. 3:20-cv-00725-JD<br><br>**KAISER FOUNDATION HEALTH PLAN, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. Pro. 52]**<br><br>Date: October 21, 2021<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

# Table of Contents

**Page(s)**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF ISSUE TO BE DECIDED ................................................................... 2

III. STATEMENT OF FACTS ................................................................................................. 2

    A. Background. ........................................................................................................... 2

    B. Procedural history. ................................................................................................. 6

        1. Plaintiff's single claim for relief. ............................................................... 6

        2. Evidence in this lawsuit is limited to the Administrative Record. ............ 6

IV. STANDARD OF REVIEW ................................................................................................ 8

V. ARGUMENT ...................................................................................................................... 8

    A. The Committee's decision to deny Plaintiff's benefit claim is reviewed for abuse of discretion. ......................................................................................................... 8

    B. Under the abuse of discretion standard, the Court's review of evidence is limited to the Administrative Record and no extrinsic evidence should be considered. ........ 9

    C. The Committee did not abuse its discretion when it denied Plaintiff's claim because she failed to timely revoke her lump sum benefit election by the deadline. ................................................................................................................ 11

VI. CONCLUSION ................................................................................................................ 12

# Table of Authorities

Page(s)

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
 458 F.3d 955 (9th Cir. 2006) ............................................................................................. 9, 10

*Bendixen v. Standard Ins. Co.*,
 185 F.3d 939 (9th Cir.1999) ................................................................................................... 10

*Cuevas v. Peace Officers Research Ass'n of California Legal Def. Fund*,
 No. 14-CV-02540-BLF, 2016 WL 2754434, (N.D. Cal. May 12, 2016) ............................. 8

*EduMoz, LLC v. Republic of Mozambique*,
 968 F. Supp. 2d 1041 (C.D. Cal. 2013) ................................................................................. 2

*Firestone Tire & Rubber Co. v. Bruch*,
 489 U.S. 101 (1989) ................................................................................................................. 9

*Ghazali v. Moran*,
 46 F.3d 52 (9th Cir. 1995) .................................................................................................... 10

*Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income Prot. Plan,*
 349 F.3d 1098 (9th Cir. 2003) ................................................................................................. 9

*Kearney v. Standard Ins. Co.*,
 175 F.3d 1084 (9th Cir. 1999) ................................................................................................. 8

*King v. Atiyeh,*
 814 F.2d 565 (9th Cir.1987) .................................................................................................. 10

*Parr v. First Reliance Std. Life Ins. Co.*,
 No. 15-CV-01868-HSG, 2017 WL 1364610 (N.D. Cal. Mar. 31, 2017) .............................. 9

*Prado v. Allied Domecq Spirits & Wine Group Disability Income Policy*,
 800 F. Supp. 2d 1077 (N.D. Cal. 2011) ................................................................................. 8

*Reed v. Cal.*,
 2009 WL 637114 (E.D. Cal. 2009) ....................................................................................... 11

*Salomaa v. Honda Long Term Disability Plan*,
 642 F.3d 666 (9th Cir. 2011) ................................................................................................... 9

*Scurlock v. GTE Long Term Disability Plan*,
 2000 WL 33728202 (9th Cir. 2000) ....................................................................................... 9

*Shappell v. Sun Life Assur. Co.*,
 2012 WL 2376463 (E.D. Cal. 2012) .................................................................................... 10

*Tveter v. Martinez,*
 2009 WL 4931778 (C.D. Cal. 2009) .................................................................................... 10

*U.S. v. Bernal–Obeso,*
 989 F.2d 331 (9th Cir. 1993) ................................................................................................... 2

*Whitsitt v. City of Tracy*,
  2014 WL 2091363 (E.D. Cal. 2014) ................................................................................ 10

**Statutes**

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ..................................................... 1, 2, 6, 8, 9, 11

**Rules**

Fed. R. Civ. Pro. 26(a) ............................................................................................................... 10

Fed. R. Civ. Pro. 37(c)(1) ..................................................................................................... 10, 11

Fed. R. Civ. Pro. 52(a)(1) ............................................................................................................ 8

Fed. R. Evid. 201(b) .................................................................................................................... 2

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on October 21, 2021 at 10:00 a.m. (PDT), or as soon thereafter as may be considered by the above-entitled Court, located in Courtroom 11 on the 19th Floor at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Kaiser Foundation Health Plan, Inc. ("KFHP") will and hereby does move the Court for an order of judgment in its favor pursuant to Federal Rule of Civil Procedure 52 on the sole claim for relief asserted by Plaintiff Lia Javier ("Plaintiff") in her First Amended Complaint ("FAC"; Dkt. 29) under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). KFHP is entitled to judgment in its favor because the decision to deny Plaintiff's pre-litigation benefit claim was correct under the terms of the Kaiser Permanente Retirement Plan (the "Plan")[1] and was not an abuse of discretion. Plaintiff has admitted that she failed to revoke her benefit election by the applicable deadline as required under the Plan. The Plan terms do not permit any exception to that deadline.

This Motion is based upon this Notice of Motion and Motion for Judgment, the Memorandum of Points and Authorities in Support Thereof, the Administrative Record of Plaintiff's claim ("Administrative Record"; Dkt. 24, 24-1, 24-2), and all records on file with the Court relating to this matter, and any and all argument provided by counsel at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff cannot support her only claim for relief. The key facts in this case are not disputed. On October 4, 2017, Plaintiff voluntarily elected to receive a lump sum distribution of her Plan benefits. Plaintiff admits that, at the time she made that benefit election, she understood that she had until October 31, 2017 to revoke her election. (FAC; Dkt. 29, ¶ 14.) When Plaintiff tried to revoke her election **after** the October 31 deadline, her claim was properly denied. ERISA requires that the Plan be administered according to its terms, and Plaintiff failed to revoke her election timely under

---

[1] The full name of the Plan is the Kaiser Permanente Salaried Retirement Plan Supplement to the Kaiser Permanente Retirement Plan. (Dkt. 24, ¶ 1.)

KFHP'S NOTICE OF MOTION AND MOTION FOR JUDGMENT;   1
Case No. 3:20-CV-00725-JD

687361

the Plan's rules. The Plan does not provide any exceptions, and thus none can be made in this case.

Plaintiff's FAC asserts a single claim for relief under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which will be determined under the abuse of discretion standard of review. To prevail under this standard of review, KFHP only needs to demonstrate that its decision to deny Plaintiff's claim was reasonable, logical, plausible, and supported by the record. Based on Plaintiff's admitted failure to revoke her election before the October 31 deadline, the decision to deny her benefit claim was correct under the Plan's terms. It was by no means an abuse of discretion and KFHP is entitled to judgment in its favor on Plaintiff's only claim for relief.

## II. STATEMENT OF ISSUE TO BE DECIDED

Whether the Committee's decision to deny Plaintiff's benefit claim because she failed to revoke her benefit election before the applicable deadline was reasonable, logical, plausible, and supported by the record and thus should be upheld under the applicable abuse of discretion standard of review.

## III. STATEMENT OF FACTS

### A. Background.

Plaintiff was a participant in the Plan, which is sponsored and administered by KFHP. (FAC, Dkt. 29, ¶ 6; Plan Document, Dkt. 24-1, pp. 19, 21.)[2] Effective August 21, 2017, the Plan was amended to add a new Appendix 9. (Appendix 9, Dkt. 24-1, pp. 176-79.) This Appendix 9 provided for a 2017 Special Distribution Election, whereby certain vested participants in the Plan who were no longer employed by KFHP but were not yet eligible to receive Plan benefits could elect an early distribution of their benefits in various forms, including a lump sum distribution (the "Special Distribution Election"). (*Id.*) On August 8, 2017, Plaintiff was sent a postcard announcing the Special Distribution Election opportunity. (Communication Log, Dkt. 24-2, p. 180; Notification Postcard, Dkt. 24-2, pp. 182-83.)

---

[2] The "court can take judicial notice of its own docket." *EduMoz, LLC v. Republic of Mozambique*, 968 F. Supp. 2d 1041, 1049 (C.D. Cal. 2013). *See also* Fed. R. Evid. 201(b); *U.S. v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993)). For reference, KFHP refers to Bates labeled page numbers (i.e., "KFHP 000001, KFHP 000002, …") in the judicially noticeable documents without the "KFHP" prefix and omitting any zeros.

On August 18, 2017, Plaintiff was sent a hard-copy Special Distribution Program election kit ("Benefit Election Kit"), which contained instructions and forms to complete in order to receive a Special Distribution Election in the form of a single lump sum payment or monthly annuity. (Benefit Election Kit, Dkt. 24-2, pp. 184-207.) The Benefit Election Kit provided that Plaintiff could choose to receive a lump sum payment that was estimated to be $32,693.00 at that time. (*Id.*, p. 188.) The Benefit Election Kit informed Plaintiff that she, alternatively, could choose to receive monthly annuity payments in the amount of $152.83 per month. (*Id.*) The Benefit Election Kit also informed Plaintiff that she could "do nothing" and "choose to delay your benefit until your Normal Retirement Date to avoid [any] reduction" in her benefit amounts. (*Id.*)

In bold lettering, the Benefit Election Kit informed Plaintiff that, if she did nothing, the current estimate of a single life annuity payable at Plaintiff's normal retirement age (i.e. 65 years old) would be $530.30 monthly. (*Id.*) At the time Plaintiff received the Benefit Election Kit, Plaintiff was well before the age 65 normal retirement age – she was just 47 years old. (Benefit Election Kit, Dkt. 24-2, p. 191.) The difference in the amounts of Plaintiff's estimated monthly benefit at age 47 versus age 65 was based on the form of payment and the timing of when Plaintiff chose to commence her benefit (i.e., the estimated monthly payment if taken at age 47 was less than it would be at age 65 since Plaintiff would receive payments for a longer period of time if she elected to receive them early). (*Id.*)

The lump sum amount and the other annuity amounts identified in the Benefit Election Kit were actuarial equivalents, and KFHP had no financial incentive for Plaintiff elect to receive her benefit as a lump sum versus in another form. (*Id.,* p. 202 ["The relative value comparison is made by comparing the 'actuarial present value' of each available optional form of payment to the actuarial present value of the Single Life Annuity … these values are based on average circumstances for participants as a whole and do not reflect your individual situation"].) The Benefit Election Kit also informed Plaintiff that "You will be taxed on a payment from the Plan if you do not roll it over." (*Id.*, p. 203.)

Plaintiff was sent postcards reminding her of the Special Distribution Election on September 11, 2017 and September 25, 2017. (Communication Log, Dkt. 24-2, p. 180; Reminder Postcards,

Dkt. 24-2, pp. 208-11.) These mailings provided that Plaintiff was required to make this Special Distribution Election by October 5, 2017. (*Id.*)

On October 4, 2017, Plaintiff called the Pension Election Help Desk ("Help Desk") three times regarding the Special Distribution Election opportunity. (Call Transcript, Dkt. 24-2, pp. 213, 217, 233.) Plaintiff requested an extension of the October 5 deadline, and stated that she had trouble deciding whether to make the Special Distribution Election because she was disabled. (*Id.*, p. 222.) Plaintiff asked if there was a way to cancel an election under the program and the Help Desk informed her that the deadline to cancel would be October 31, 2017. (*Id.*, p. 236.) After speaking with the Help Desk a third time on October 4, Plaintiff completed an online election kit and elected a lump sum payment under the Special Distribution Election. (Election Confirmation, Dkt. 24-2, p. 242; Confirmation Letter, Dkt. 24-2, p. 243.) When Plaintiff made her benefit election, she confirmed that she had reviewed the Benefit Election Kit. (Election Confirmation, Dkt. 24-2, p. 242 [marking "TRUE" that Plaintiff "Confirmed Kit Review"].) All of Plaintiff's benefit options were contained in both the Benefit Election Kit and the online election kit that she completed on October 4, 2017. (Benefit Election Kit, Dkt. 24-2, pp. 184-207; Call Transcript, Dkt. 24-2, pp. 266-67.) She did not revoke her election by the October 31, 2017 deadline for any revocation, and, under the terms of the Plan, her election became irrevocable. (Plan Document, Dkt. 24-1, Section 8.1(c), p. 67.)

On November 10, 2017, a check in the amount of $29,263.94 was issued to Plaintiff. (Appeal Denial, Dkt. 24-2, p. 521.) The gross amount of Plaintiff's lump sum election totaled $37,517.88, which exceeded the lump sum estimate provided in the Benefit Election Kit. (*Id.*) From this gross amount, $8,253.94 was withheld for federal and state tax withholding. (*Id.*)

Plaintiff called the Help Desk on November 16, 2017 and stated that she believed no amount would be withheld from her lump sum payment because she was disabled, and she was not informed of an option to rollover her Plan benefits. (Call Transcript, Dkt. 24-2, pp. 246-48.) On January 11, 2018 and March 2, 2018, Plaintiff called the Kaiser Permanente Retirement Center (the "KPRC") and stated that she believed less money would be withheld from her lump sum distribution due to her disability. (Call Transcripts, Dkt. 24-2, pp. 282-83, 291.) On March 7, 2018, Plaintiff called the KPRC again and stated that her Social Security disability benefits had been impacted by the payment.

(*Id.*, p. 321.) The KPRC informed Plaintiff that it would send her a Claim Initiation Form ("Claim") that Plaintiff could use to make a benefit claim. (*Id.*, pp. 337-38.)

Plaintiff sent the Plan her Claim dated March 22, 2018. (Claim, Dkt. 24-2, pp. 344-47.) In her Claim, Plaintiff stated that she was not given adequate information by the Help Desk when she called on October 4, and was not told to speak with a tax advisor or the Social Security Administration ("SSA") until after she received the lump sum payment check (which she had not yet cashed). (*Id.*) Plaintiff provided a copy of a SSA disability determination letter, which detailed certain mental disorders from which she suffered. (*Id.*, pp. 348-57.)

On June 21, 2018, the Plan notified Plaintiff that her Claim was denied because she did not revoke her Special Distribution Election by the October 31, 2017 deadline ("Claim Denial"). (Claim Denial, Dkt. 24-2, pp. 358-65.) Consequently, the notice informed her, Plaintiff's election became irrevocable on November 1, 2017. (*Id.*) The notice also attached relevant Plan provisions, which provided that her election became irrevocable when the election period expired. (*Id.*, p. 363.) Finally, the notice informed Plaintiff that the election kit she completed online provided that she should consult with a tax advisor, and that federal income tax would be withheld at the rate of 20% and additional state income tax may be withheld from her payment. (*Id.*, p. 360.)

The Plan received a letter from Plaintiff's daughter, Chelseay Javier ("Chelseay"), on October 2, 2018, which appealed this decision ("Appeal"). (Appeal, Dkt. 24-2, pp. 366-67.) In reviewing Plaintiff's Appeal, the Committee considered a number of items, including: applicable Plan provisions; transcripts of Plaintiff's and Chelseay's communications with the Help Desk and KPRC on October 4, 2017, November 16, 2017, November 17, 2017, January 11, 2018, March 2, 2018, and March 7, 2018; Plaintiff's Claim; the Notice of Denial; and Plaintiff's Appeal. (Committee Packet, Dkt. 24-2, pp. 370-517.)

On December 10, 2018, the Plan informed Plaintiff that the Committee had denied her Appeal ("Appeal Denial"). (Appeal Denial, Dkt. 24-2, pp. 520-25.) This letter described the history of Plaintiff's decision to participate in the Special Distribution Election and addressed the arguments that Plaintiff raised in her Claim. (*Id.*) The letter cited Section 8.1(c) of the Plan, which provides that a "Participant may revoke such an election at any time during the Election Period but that

1   election is irrevocable when the Election Period expires." (Plan Document, Dkt. 24-1, Section 8.1(c),
2   p. 67; Appeal Denial, pp. 522-23.)  The letter further provided that the Election Period is "the 90-
3   day period ending on the Participant's Benefit Commencement Date." (Plan Document, Dkt. 24-1;
4   Section 2.30, p. 25; Appeal Denial, Dkt. 24-2, p. 524.)  Because Plaintiff's Benefit Commencement
5   Date was November 1, 2017, the letter explained, she could only revoke her election up until October
6   31, 2017 (which was consistent with what the Help Desk told Plaintiff on the October 4, 2017 call).
7   (Appeal Denial, Dkt. 24-2, pp. 522-23.)   The letter informed Plaintiff that her election was
8   irrevocable because she had not revoked it during the Election Period. (*Id.*)

### B.   Procedural history.

#### 1.   Plaintiff's single claim for relief.

On November 19, 2019, Plaintiff filed her initial Complaint in the Superior Court of California, County of Contra Costa asserting claims for state law breach of contract. (Dkt. 1, Ex. A.) KFHP filed its Notice of Removal on January 31, 2020. (Dkt. 1.)  On this same day, KFHP mailed Plaintiff a copy of its Notice of Removal with the papers filed in this Court, then filed this Notice to Plaintiff in the Superior Court of California, County of Contra Costa. (Dkt. 6.) On February 7, 2020, KFHP moved to dismiss Plaintiff's initial Complaint in its entirety based on ineffective service of process and on grounds that ERISA preempted her state law breach of contract claim. (Dkt. 11.)  On September 21, 2020, the Court granted KFHP's motion in part on grounds that Plaintiff's state law breach of contract claim was preempted by ERISA and provided Plaintiff with leave to amend her Complaint. (Dkt. 26.)  Plaintiff filed her FAC on December 3, 2020 asserting a single claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (Dkt. 29.)

On March 1, 2021, the Court appointed a pro bono attorney to represent Plaintiff in a settlement conference. (Dkt. 34.)  On April 1, 2021, the parties stipulated to set a settlement conference, and a conference was set before Magistrate Judge Laurel Beeler. (Dkt. 36, 40.)  The settlement conference went forward on June 10, 2021, but the case did not settle. (Dkt. 48.)

#### 2.   Evidence in this lawsuit is limited to the Administrative Record.

The Court set an initial case management conference in this case on May 14, 2020. (Dkt. 10.) Prior to the initial case management conference, the parties met and conferred pursuant to Federal

Rule 26(f), and during that meeting agreed that the parties would exchange initial disclosures by April 27, 2020. (Declaration of Dylan Rudolph ["Rudolph Dec."], ¶ 4.) KFHP served Plaintiff with its initial disclosures on April 24, 2020. (Dkt. 21, ¶ 7.) In its initial disclosures, KFHP only identified the relevant Plan documents and Administrative Record and individuals who could authenticate those documents. (Rudolph Dec., ¶ 5, Ex. A.) Plaintiff did not serve KFHP with any initial disclosures by the April 27, 2020 deadline. (Rudolph Dec., ¶ 6.)

On May 4, 2020, the parties filed a joint case management statement, wherein the parties agreed that "discovery in this case should be limited to the production of the Administrative Record" of Plaintiff's pre-litigation benefit claim (the "Administrative Record"). (Dkt. 21, ¶ 8.) Consistent with that agreement, the parties further agreed that KFHP would serve Plaintiff with a copy of the Administrative Record by June 5, 2020. (Dkt. 21, ¶ 17(a).) If Plaintiff disputed the completeness of the Administrative Record, she was required to file a motion to supplement the record by June 19, 2020. (*Id.*, ¶ 17(b).) If there was no dispute regarding the Administrative Record, KFHP was required to file the Administrative Record by June 26, 2020. (*Id.*, ¶ 17(c).)

KFHP served Plaintiff with a copy of the Administrative Record on June 3, 2020. (Rudolph Dec., ¶ 7.) Plaintiff did not dispute the completeness of the Administrative Record.[3] (*See* Case Docket, generally.) On June 26, 2020, KFHP filed the Administrative Record. (Dkt. 24, 24-1, 24-2.)

On April 27, 2021, the Court issued a further case scheduling order that set various case deadlines. (Dkt. 42, p. 1.) The Court's order set the fact discovery cutoff on June 11, 2021. (*Id.*) Plaintiff has not served any documents, materials, or other discovery on KFHP in this lawsuit, including prior to the June 11, 2021 fact discovery cutoff. (Rudolph Dec., ¶ 8.)

On August 19, 2021, Plaintiff's daughter, Chelseay, emailed counsel for KFHP to "confirm" that KFHP received initial disclosures that Chelseay claimed she mailed to KFHP's counsel in March 2021 (nearly one year after their due date). (Rudolph Dec., ¶ 9, Ex. B.) Counsel for KFHP informed

---

[3] On October 27, 2020, after the June 19, 2020 deadline to file a motion to supplement the Administrative Record, Chelseay emailed counsel for KFHP with a question about the recordings of Plaintiff's calls to the Help Desk. (Rudolph Dec., Ex. C.) Counsel for KFHP confirmed that the Administrative Record included a complete set of the call recordings and re-sent a courtesy copy of the complete Administrative Record to Chelseay on November 2, 2020. (*Id.*) KFHP did not receive any further communications from Plaintiff or Chelseay on this subject. (*Id.*)

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

1 Chelseay that it had not received any initial disclosures from Plaintiff in March 2021 – or otherwise. (*Id.*) KFHP's counsel further informed Chelseay that any purported initial disclosures that she claimed were served in March 2021 would have been untimely and irrelevant to the extent they disclosed documents or materials outside of the Administrative Record. (*Id.*) On August 20, 2021, Chelseay stated she would "ask how to get proof that I sent that." (*Id.*)

On August 27, 2021, counsel for KFHP received a purported set of "Amended" initial disclosures from Plaintiff (i.e., not the original set that Chelseay claimed to have served in March 2021). (Rudolph Dec., ¶ 10.) Plaintiff filed these purported "Amended" disclosures on August 26, 2021, fifteen months after the deadline to serve them. (Dkt. 50.) Plaintiff has not produced any documents to KFHP in this lawsuit. (Rudolph Dec., ¶ 8.)

## IV. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 52, "the court must find the facts specially and state its conclusions of law separately." *Cuevas v. Peace Officers Research Ass'n of California Legal Def. Fund*, No. 14-CV-02540-BLF, 2016 WL 2754434, at *1 (N.D. Cal. May 12, 2016) (citing Fed. R. Civ. P. 52(a)(1)). On a Rule 52 motion, "'the court does not determine whether there is an issue of material fact, but actually decides whether the plaintiff is entitled to benefits under the policy.'" *Id.* (quoting *Prado v. Allied Domecq Spirits & Wine Group Disability Income Policy*, 800 F. Supp. 2d 1077, 1094 (N.D. Cal. 2011); citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999)). "In making that determination, the court must evaluate the persuasiveness of conflicting testimony and decide which is more likely true in order to make findings of fact that will be subject to review under a clearly erroneous standard if appealed." *Id.* (citing *Kearney*, 175 F.3d at 1095) (internal quotation marks omitted).

## V. ARGUMENT

### A. The Committee's decision to deny Plaintiff's benefit claim is reviewed for abuse of discretion.

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) allows a participant to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Parr v. First Reliance Std.*

*Life Ins. Co.*, No. 15-CV-01868-HSG, 2017 WL 1364610 at *11 (N.D. Cal. Mar. 31, 2017). A "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

The Plan confers discretionary authority on the Committee. (Plan Document, Dkt. 24-2, Section 16.5, p. 98 [the "Administrative Committee has full discretionary power and authority to administer the Plan…"].) Where, as here, the Plan confers discretionary authority on the Plan administrator, courts "review the administrator's decision for abuse of discretion." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673 (9th Cir. 2011); *see Firestone,* 489 U.S. at 115; *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963-64 (9th Cir. 2006) (granting the administrator the authority to interpret the plan and decide questions concerning the eligibility of any employee confers discretion on the plan administrator). Plaintiff agrees that the abuse of discretion standard will govern the Court's review of the Committee's decision to deny her benefits claim. (Dkt. 21, p. 7, ¶ 15.) Under the abuse of discretion standard, the Court can overturn the Committee's decision to deny Plaintiff's benefit claim only if it determines the decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa,* 642 F.3d at 676. Simply stated, if the Committee's decision was reasonable, the Court must uphold it.

**B.    Under the abuse of discretion standard, the Court's review of evidence is limited to the Administrative Record and no extrinsic evidence should be considered.**

In determining whether the Committee's decision to deny Plaintiff's claim was reasonable, the Court's review of evidence is limited "to the administrative record [that was before the Committee] when the court is reviewing a case … for an abuse of discretion." *Abatie*, 458 F.3d at 969–70; *see also Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1110 (9th Cir. 2003) ("under an abuse of discretion standard [the court's] review is limited to the record before the plan administrator"). Where a plaintiff submits extraneous and irrelevant evidence that was not contained in the administrative record, it is properly excluded from the court's consideration. *See Scurlock v. GTE Long Term Disability Plan*, 2000 WL 33728202, at *1 (9th Cir.

2000) ("[m]ore importantly, however, the fact in question was not placed before the Plan when it made its decision, and on abuse of discretion review we limit ourselves to the administrative record") (citing *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 944 (9th Cir.1999)); *Shappell v. Sun Life Assur. Co.*, 2012 WL 2376463, at *3 (E.D. Cal. 2012) ("the abuse of discretion standard limits the evidence to the administrative record").[4]

KFHP filed the complete Administrative Record that was before the Committee when it denied Plaintiff's pre-litigation benefit claim. (Dkt. 24, 24-1, 24-2.) Plaintiff never filed any motion to dispute the completeness of the Administrative Record, including by the June 19, 2020 deadline. (*See* Case Docket, generally.) Plaintiff has never served any documents or materials on KFHP in this lawsuit, including prior to the June 11, 2021 fact discovery cutoff that the Court set in this lawsuit. (Rudolph Dec., ¶ 8.) If Plaintiff attempts to introduce any evidence that is outside of the Administrative Record with a dispositive motion or in response to KFHP's motion, that evidence must be struck because (1) it is outside of the Administrative Record and (2) any such evidence was not previously disclosed to KFHP in timely initial disclosures or during the discovery period. (*See* Fed. R. Civ. Pro. 26(a); Fed. R. Civ. Pro. 37(c)(1).)

Although KFHP recognizes that Plaintiff is representing herself pro se, she is still bound by the Federal Rules of Civil Procedure. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure") (citing *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1987)); *see also Whitsitt v. City of Tracy*, 2014 WL 2091363, at *5 (E.D. Cal. 2014) (a pro se "plaintiff is held to the same standards as licensed attorneys with respect to the duty to comply with court orders, the local rules, and the Federal Rules of Civil Procedure"); *Tveter v. Martinez*, 2009 WL 4931778, at *2 (C.D. Cal. 2009) ("as a pro se plaintiff representing herself in an action she elected to bring in this court, [the plaintiff],

---

[4] Only under limited circumstances may the court review evidence that was not before the plan administrator when it rendered its decision, such as when the court must determine whether a conflict of interest affected an administrator's decision. *See Abatie*, 458 F.3d at 970 ("[w]e have held that the court may consider evidence beyond that contained in the administrative record that was before the plan administrator, to determine whether a conflict of interest exists that would affect the appropriate level of judicial scrutiny"). Plaintiff has not alleged that any conflict of interest exists in this case (it does not), and, accordingly, the Court's review of the Committee's decision is properly limited to the Administrative Record. (Dkt. 24, 24-1, 24-2.)

1 like an attorney, is bound by the applicable federal rules including the Federal Rules of Civil Procedure"); *Reed v. Cal.*, 2009 WL 637114, at *1 (E.D. Cal. 2009) ("a party appearing *in pro per* is bound by the Federal Rules of Civil Procedure").

In addition to rules prohibiting Plaintiff from introducing extra-record evidence in support of her ERISA § 502(a)(1)(B) claim, the Federal Rules prohibit Plaintiff from introducing new evidence in support of a dispositive motion or in response to KFHP's motion that Plaintiff did not previously identify or produce to KFHP in this lawsuit before the fact discovery cutoff. (*See* Fed. R. Civ. Pro. 37(c)(1).) Accordingly, any such extra-record evidence should be struck and not considered.

### C. The Committee did not abuse its discretion when it denied Plaintiff's claim because she failed to timely revoke her lump sum benefit election by the deadline.

The Committee's decision to deny Plaintiff's claim was reasonable and consistent with the Plan's terms, which provide that an "election is irrevocable when the Election Period expires." (Plan Document, Dkt. 24-1, Section 8.1(c), p. 67.) The 90-day Election Period that governed Plaintiff's benefit election ended on October 31, 2017, which Plaintiff does not dispute. (Plan Document, Dkt. 24-1, Section 2.30, p. 25; Appeal Denial, Dkt. 24-2, pp. 522-23.) The Committee's Appeal Denial noted that ERISA requires the Committee to administer the Plan in accordance with its terms and, under those terms, Plaintiff's benefit election became irrevocable after October 31, 2017. (Appeal Denial, Dkt. 24-2, p. 523.) Plaintiff admits that she was aware of that October 31 deadline and failed to revoke her election before it passed. (FAC, Dkt. 29, ¶ 14; Call Transcript, Dkt. 24-2, p. 25.) Accordingly, the Committee's decision was correct under the Plan's terms, and it was by no means illogical, implausible, or without support, and judgment should be entered in KFHP's favor on Plaintiff's only claim for relief.

Plaintiff alleges that her disability prevented her from understanding the consequences of her lump sum benefit election under the Plan. (*See, e.g.,* Dkt. 29, ¶ 14.) There is, however, nothing in the Plan that provides for an exception to its rules regarding revocation deadlines based on mental impairment or disability. (*See, generally,* Plan Document, Dkt. 24-2, pp. 1-179.) Plaintiff has also admitted that she understood the October 31, 2017 deadline to revoke her benefit election. (*See, supra,* Dkt. 29, ¶ 14; Call Transcript, Dkt. 24-2, p. 252 [showing Plaintiff stated "…in that offer they

were like, 'Well, if you don't want it you can go ahead and deny it wh -- by October 31st'"].) And even if the Plan provided an exception to the revocation rules for mental impairment or disability (which it does not) there is no evidence in the record that Plaintiff was unable to understand the impact of the revocation deadline. To the contrary, the record shows that Plaintiff was well aware of and understood this deadline but failed to revoke her election before October 31.

Additionally, Plaintiff alleges that she never received the Benefit Election Kit that fully explained all of her payment options under the Special Distribution Election program and tax considerations. (Dkt. 29, ¶ 11; Benefit Election Kit, Dkt. 24-2, pp. 184-207.) This allegation is simply unsupported. First, Plaintiff admitted that she received the Benefit Election Kit when she elected the lump sum payment online on October 4, 2017. (Dkt. 24-2, p. 242 [showing Plaintiff "Confirmed Kit Review" as "TRUE"].) Second, all of the information provided in the hard copy Benefit Election Kit was also provided in the online forms that Plaintiff filled out when she made her election. (Call Transcript, Dkt. 24-2, pp. 266-67.) Third, the Benefit Election Kit – and the other postcards regarding the Special Distribution Election – were mailed to Plaintiff's home address at "805 Fieldstone Court, Brentwood, CA 94513." (Communication Log, Dkt. 24-2, p. 180; Benefit Election Kit, Dkt. 24-2, p. 184; Notification Postcard, Dkt. 24-2, pp. 182-83; Reminder Postcards, Dkt. 24-2, pp. 208-11.) This is the same address listed on Plaintiff's FAC. (Dkt. 29, p. 1.) Under the Plan's terms, KFHP's obligation to provide Plaintiff with the information provided in the Special Distribution Election, including the information contained in the Benefit Election Kit, was satisfied when it mailed those materials to Plaintiff's home address. (Plan Document, Section 9.7(d), Dkt. 24-2, p. 72.) This allegation is meritless.

Simply put, the Administrative Record demonstrates that the Committee's decision to deny Plaintiff's claim was correct under the Plan's terms; it was not an abuse of discretion; and judgment should be entered in KFHP's favor and against Plaintiff on her only claim for relief.

## VI. **CONCLUSION**

Judgment should be entered in KFHP's favor on Plaintiff's only claim for relief because the Committee did not abuse its discretion when it denied Plaintiff's benefit claim. Plaintiff failed to revoke her lump sum benefit election before the applicable deadline, as she admits, and the record

shows that this was a reasonable basis to deny her benefit claim consistent with the Plan's terms.

DATED: September 10, 2021  TRUCKER ✦ HUSS, APC

By: /s/ *Dylan D. Rudolph*
Clarissa A. Kang
Dylan D. Rudolph
Attorneys for Defendant KAISER
FOUNDATION HEALTH PLAN, INC.

# CERTIFICATE OF SERVICE

I, Michelle Ayala, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the within action. I am employed in the City and County of San Francisco, California. My business address is One Embarcadero Center, 12th Floor, San Francisco, California 94111. On the date indicated below, I served the within:

**DEFENDANT'S MOTION FOR JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

to the addressee(s) and in the manner indicated below:

> Lia C. Javier
> Plaintiff
> 805 Fieldstone Court
> Brentwood, CA 94513
> Telephone: (510) 701-1771
> Email: shecancer777@yahoo.com

☑ **BY ELECTRONIC MAIL:** Pursuant to the Parties' agreement to electronic service, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by electronic mail to the person[s] at the email address[es] indicated.

I certify under penalty of perjury that the foregoing is true and correct, and that this Certificate of Service was executed by me on September 10, 2021, at Grass Valley, California.

/s/ *Michelle Ayala*
Michelle Ayala