FILED

OCT 25 2021

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1 | Your Name: Lia C. Javier
2 | Address: 805 Fieldstone Ct. Brentwood, CA 94513
3 | Phone Number: 510-701-1771
4 | Fax Number: N/A
5 | E-mail Address: shecancer777@yahoo.com
6 | Pro Se Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| Lia C. Javier | ) Case Number: 3:20-cv-00725-JD |
| Plaintiff, | ) **OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT** |
| vs. | ) |
| Kaiser Foundation Health Plan, Inc. | ) DATE & TIME: Hearing Vacated [Docket. 57] |
| Defendant. | ) JUDGE: Hon. James Donato |

  I, Plaintiff Lia Javier, am a mentally disabled former employee of Kaiser on a fixed income. I respectfully request the Court deny Kaiser's Motion for Judgment because Kaiser's denial of my request to rescind the uninformed lump sum election they steered me to make was an abuse of discretion, even if the evidence is limited to the Administrative Record and inferences arising therefrom. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011). As described below, Kaiser's actions leading to my lump sum election and their subsequent denial of my request to rescind were unreasonable and unsupported because: On October 4, 2017, Defendant knew I was disabled, knew I did not receive the Benefit Election Kit in the mail, did not offer to re-mail the Benefit Election Kit to me, knew I could only access the internet on my phone, refused to verbally explain what the Benefit Election Kit options were to me over the phone, refused to allow me to timely speak with a supervisor, refused to provide me with an extension, and steered me to select an option I did not understand. Under these circumstances, their denial of my request to rescind my lump

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
CASE NO.: 3:20-cv-00725-JD _____ ; PAGE 1 OF 10

sum election was both an abuse of discretion and a breach of their fiduciary duty to provide Plan participants with complete and accurate information necessary to make an informed decision.

Moreover, Kaiser abused its discretion because its Appeal Committee's decision is not supported by the record and its own findings: the Kaiser Appeal Committee found that I had a "90-day election period" that ended on November 1, 2017, and denied my request to rescind based on a finding that I failed to revoke within my "90-day election" period. However, only 72 days elapsed between the date Special Distribution elections could begin (August 21, 2017) and November 1, 2017. 90 days from August 21, 2017, would have been November 19, 2017. Given that I requested to rescind on or before November 16, 2017, the Kaiser Appeals Committee decision to deny my request to rescind was an abuse of discretion. For the reasons discussed below, I request that Defendant's motion be denied and I be granted the relief requested in my First Amended Complaint.

## I.    FACTUAL BACKGROUND

I am mentally disabled. Docket 24-2 at KFHP000223-224, 348-357. I did not receive the Benefit Election Kit in the mail. *Id.* at KFHP000213,214, 224-225, 228, 253, 256, 257, 259, 269, 270. On October 4, 2017, I informed multiple Kaiser representatives that I did not receive the Benefit Election Kit in the mail. *Id.* at KFHP000213, 214, 224-225, 228. The only thing I received from Kaiser was on October 3, 2017, when I received a postcard telling me should "review the Election kit [I] received in early August" and I had to act "by October 5th, 2017." Dkt. 24-2 at KFHP000213-214; *id.* at KFHP000210-211. I did not understand what this was about and did what the postcard told me, which was to call the Pension Election Help Desk between 7:00am and 4:00pm. *Id.* at KFHP000212-241.

### 1. October 4, 2017, Phone Calls to the Pension Election Help Desk

On October 4, 2017, I called the Help Desk three times and spoke with three different Kaiser representatives. *Id.* On the first call, I told Kaiser representative Chris that I got got a postcard the day before, that I did not get the mailing mentioned in the postcard, and that I did not understand what the postcard was about. *Id.* at KFHP000213. Chris responded: "The information that was sent out about the lump sum? [...] Yeah, that's in reference to the current lump sum offer that's available from the plan." *Id.* at KFHP000213-214. I reiterated that I was asking what it was about because the postcard did not explain, and Chris responded that it was about the lump sum. *Id.* I asked to speak with

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
CASE NO.: 3:20-cv-00725-JD _____; PAGE 2 OF 10

1  someone else because I did not understand what was going on, but Chris told me he had the same
2  information as every representative. *Id.* I became frustrated because Chris was not explaining
3  anything to me, and he refused to transfer me to anyone and said I could call back. *Id.* at
4  KFHP000214-215.
5     I called back and spoke with another Kaiser representative named Christina. *Id* at
6  KFHP000217-231. I told her I wanted to understand what the postcard was about. She told me I
7  could go online and look at information, and that I only had one day to decide and there were no
8  exceptions or extensions. *Id.* at KFHP000219-222. I told Christina I used my phone for internet and
9  was not sure the internet would work on my phone. Id. at KFHP000218. When I asked for a
10 supervisor, Christina said there were none available and it would take one business day for a
11 supervisor to call me back. *Id.* I reiterated that this was hard for me, that I did not want to make a
12 decision about my pension, that I wanted the right to understand what it was about because the
13 postcard did not explain anything, and that I did not understand what was going on. *Id.* at
14 KFHP000223. Christina did not explain what it was about and again steered me to a website, stating
15 the website would explain. *Id* at KFHP000223-224. I told Christina I can't do this and couldn't
16 believe they don't make exceptions, stating this was hard for me "because I'm disabled and there's no
17 way I'm going to be able to make a decision within a day or a few hours. So, um, yeah, I'm
18 disabled." *Id.* Rather than explain the options and/or what the Benefit Election Kit said, Christina
19 listed the mailings that had been sent out, and I again told her I was disabled and unable to make a
20 decision. *Id.*at KFHP000224-225. I again asked to be transferred to a supervisor and Christina
21 refused, stating it would take one business day for a supervisor to call me back. *Id.* at KFHP000226. I
22 asked if Christina if this was Kaiser, she said "Yes, this is Kaiser" and that Kaiser was giving me an
23 opportunity, and "If it's missed then you won't be able to take until age 65." *Id.* at KFHP000227.
24 Christina said she wished there was something they could do, but no extensions were available and I
25 should log online, review options, and decide whether to take it. *Id* at KFHP000228-29. She said I
26 could cancel by October 31st, which made me feel better because then I would have time to really
27 read up and ask people what I should do. *Id.* at KFHP000229-30. Christina stated that the deadline
28 was strict because anything outside the window would "cost the company" and "That's the only

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
CASE NO.: 3:20-cv-00725-JD _____; PAGE 3 OF 10

reason why […] it's a limited time, okay." *Id.* at KFHP000229-230. Christina told me how to log online and the call ended.

I had difficulty logging on and called the help desk a third time. I spoke with Kaiser representative Josh, tried to help with my online password and login. *Id.* at KFHP000233-235. I explained to Josh that I was nervous online, I did not know what I was doing, that Christina said "I don't have the time to decide so she said I was able to go ahead and um, uh, opt for it. Whatever it states to opt for what I want and then I can always change it... up to October 31st." *Id.* at KFHP000235-36. I still had trouble with logging online, and Josh stayed on the phone with me to explain how to create my password to log online. *Id.* at KFHP000236-239. I then explained I was nervous because I only had a day to do this and did not understand what was going on; I asked Josh if this was a "quick thing" once I logged in, and he responded "I mean, it does take a few – it does take a little bit of time to review your information and decide what you want to do. Once you know what you want to do then it's –it doesn't take – it wouldn't take too long to go through and actually, follow that process. But it is something I would make to think about carefully." *Id* at KFHP000239-40. I continued to have trouble navigating the log in process/password, and the call eventually ended.

During my three phone calls on October 4, 2017, I was told the postcard was about the "lump sum" Kaiser was offering at least six times. *Id.* at KFHP000213-214, 223, 229. The fact that there were options other than the lump sum was mentioned only one out of these six times. (*id.* at 223), totaling four lines of one page of an approximately 25-pages of transcripts from my three calls. By contrast, Kaiser representatives spent approximately 10 pages of call transcript—more than one third of the call—explaining in detail how to log in to the website. *Id.* at KFHP000221, 231, 233-241.

**2. Phone Calls between November 16, 2017 March 7, 2018**

On November 16, 2017, I called the Pension Election Help Desk and spoke with Representative Josh. *Id.* at KFHP000245-276. I was frustrated with taxes withheld, with having done something I did not understand, and with Kaiser's failure to explain my options during my October 4, 2017, phone calls, especially given they knew about my mental disability. *Id.* I said I never would have chosen this if I was informed, particularly related to taxes, and Josh said that taxes had to be withheld unless I did a direct rollover, to which I responded: "Yeah, well, so what's a direct

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
CASE NO.: 3:20-cv-00725-JD _____ ; PAGE 4 OF 10

rollover?" *Id.* at 246-50. When Josh explained that I could have rolled over into an IRA or 401(k), I responded: "I would have been able to do that?" *Id.* at 251. Josh said yes but I could no longer do it because it was past October 31st. *Id.* When I further expressed frustration, Josh apologized if the people I previously spoke with did not answer my questions fully. *See id.* at 251-55. For the first time in any of my calls to the Pension Election Help Desk, Josh said there was section on the website that stated "Election Kit" and "you could click it and it would pull up the entire election kit with all the information as well. I'm sorry if we – if the people you spoke on the phone didn't give you as much information as you would – as you wanted. We can't provide any advice over the phone. That may have had something to do with it. Um, but, um, the information was all provided for you." *Id.* at 255-256. After further back and forth, Josh stated they could not change the election. *Id.* at 256-259. When I asked about pulling my prior phone calls and to speak with a supervisor, Josh stated he was a supervisor and the prior representatives on the phone could have "go[ne] over the kit with you." *Id.* at 259-61. I continued to express my frustration with the lack of explanation of my options when the representatives knew I only had a postcard, knew I did not have the election kit, knew that I did not have internet to access information except on my phone; with their refusal to explain what was in the election kit—all while knowing I am mentally disabled—and with their refusal to let me speak with a supervisor. *Id.* at 261-275. Among other things, I stated "I don't want to take this check." *Id.* at 275. Josh agreed to have a supervisor call me back. *Id.*

   On November 17, 2017, Kaiser Representative Rona called me back. Because Josh had stated that they could not make any changes to the election, I said I no longer wished to speak with her. *Id.* at 278-279. I called again on January 11, 2018, trying to understand tax forms, and again on March 2, 2018. During the March 2, 2018, phone conversation, in reference to the Pension Help Desk, Representative Karah stated "They don't have all the information. So they were just going by—I mean, depending on who you were speaking with, they're just going by this is the deadline to make a decision. That's all that their job was; it was to inform people about the decision and the deadline for it. They're not the retirement center. So I-I apologize for that. Now, how can I help you? What-what do you need --" *Id.* at KFHP000297. I told Karah I wanted everything rescinded and reiterated my frustration with not getting the information I needed to make a decision despite informing them of my

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
CASE NO.: 3:20-cv-00725-JD _____ ; PAGE 5 OF 10

disability. *See id.* at KFHP000297-301. Karah again stated "I understand what you're saying, and I apologize that they did not assist you the way that they were – they were supposed to." *Id.* at 300-301. Karah said she was sending this "up to my administration to see if there is an appeal process for you" and confirmed that I didn't cash the check. *Id.* She elevated the issue, said I would get a call back: "we're going to try to fix this. Okay?", that she was sorry the Pension Help Desk didn't refer me to the normal retirement number, and that I should give them four or five days to get back to me. *Id.* at 302-305. When I spoke with Karah five days later, she said I could not rescind. I became frustrated again and was transferred to supervisor Patrick, who explained I would need to appeal. *See Id.* at 316-341. Before ending the call, he apologized that I went through the process uninformed "because that's not what's intended when you're going through retirement, it's supposed to be informative, and it's supposed to be something you're understanding." *Id.* at 338, 340.

### 3. Phone Calls Not Reflected in the Administrative Record

My daughter tried to help me by calling Kaiser many different times, but no one would speak with her because she was not me. *See id.* at KFHP000296-297, 298, 313, 329, 337. For this reason, I believe there are attempts to call Kaiser before and after October 31, 2017, that are not in the Administrative Record. Additionally, I or my daughter spoke with someone named Melinda, but those calls are also not reflected in the Administrative Record. *See id.* at 289-296, 298-299, 301 (Representative Karah's acknowledgment that there was a note from Melinda in my record), 330.

### 4. The Kaiser Appeals Committee Decision

I filed my claim/appeal in late March 2018. *Id.* at KFHP000344-357. In a letter dated June 21, 2018, Kaiser denied my claim (*id.* at KFHP000358-365), stating that I had had a "90-day election period" that ended on November 1, 2019, and that after that "90-day election period", my decision became irrevocable, and for that reason, my claim was denied. *Id.* at 360. The letter included limited portions of Appendix A, which stated there was a 90 day election period, and that elections could be made "on or after August 21, 2017." *Id.* at 363-364. 90 days from August 21, 2017, was November 19, 2017. I appealed again on June 28, 2018 (*id.* at 366-367), and my appeal was denied in a decision dated December 10, 2018, with the same reasoning as the denial of the initial claim. *Id.* at 520-525.

## II.    LEGAL STANDARD

The standard of review in an ERISA case such as this one is abuse of discretion, which means Kaiser's decision must be reversed if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa*, 642 F.3d at 676. Because Kaiser confers discretionary authority on the Plan administrator (*see* Def.'s Mot. at 9), it has a structural conflict of interest (*id.* at 673-676), and the abuse of discretion standard is applied to the Plan's decision with a heightened degree of skepticism. *Id.* at 76 (ERISA abuse of discretion standard is applied with "a higher degree of skepticism [...] where the administrator has a conflict of interest.").

### III. ARGUMENT

**A. Kaiser Abused Its Discretion When It Denied My Request to Rescind My Uninformed Lump Sum Election, Even If The Evidence Is Limited To The Administrative Record And Inferences Arising From The Administrative Record**

1. Kaiser's Denial of My Request to Revoke Was Unreasonable Because Its Representatives Knew I Never Received the Benefit Election Kit, Knew I Was Disabled, Refused To Explain The Benefit Election Kit Options On The Phone, Refused My Requests To Speak With A Supervisor, Refused My Requests For An Extension, and Knowingly Told Me To Make An Election I Did Not Understand

As described above in Section I.A, there is no dispute in the Administrative Record as to the following: On October 4, 2017, Kaiser knew I did not receive a Benefit Election Kit in the mail (Docket 24-2 at KFHP000213,214, 224-225, 228, 253, 256, 257, 259, 269, 270), failed to provide an explanation of the Benefit Election Kit options on the phone despite my requests (*id.* at 213-214, 218-219, 222-223, 228-229), knew I was disabled and did not understand (*id.* at 214, 222-225, 227, 235, 239), knew I could only access the internet on my phone (*id.* at 218), refused my requests to be transferred to a supervisor (*id.* at 222-223, 226-227), told me it would take one business day for a supervisor to call me back (*id.* at 223, 226), and denied my requests for an extension, telling me extensions could not be provided because it would "cost the company money." *Id.* at 230, 222, 223, 224, 227, 228, 229.

During my three phone calls with Kaiser on October 4, 2017, I was told the postcard was about the "lump sum" Kaiser was offering at least six times. *Id.* at KFHP000213-214 (Kaiser representative response to my question about what the postcard was about: "The information that was sent out about the lump sum?" [...] "Yeah that's in reference to the current lump sum offer that's available from the plan." [...] "So that's about the current lump sum option that's available from the

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
CASE NO.: 3:20-cv-00725-JD _____ ; PAGE 7 OF 10

pension plan."), 223 ("It will give your –what they're offering, the lump sum amount as well as your options[…]"), 229 ("[…] so say you make a lump sum. You want to take it as a lump sum payment […]"). The existence of any option other than the lump sum was mentioned only one out of these six times (*id.* at KFHP000223, "("It will give your –what they're offering, the lump sum amount as well as your options. You can take it out as a lump sum payment. You can roll it over into an IRA. You can leave it where it's at or you can start to receive monthly payments."), and an actual explanation of the other options did not occur, despite my statements that I did not understand and my multiple requests for an explanation. *See generally id.* at KFHP000212-241. By contrast, Kaiser representatives were willing to spend 10 pages of the call transcript going into great detail about how to create a password so I could log into the system to "make my election." *Id.* at KFHP000221, 231, 233-241. Kaiser acted unreasonably when—after knowing I was disabled—they refused to explain the options in the Benefit Election Kit and told me the postcard was about "the lump sum" numerous times on the phone call while mentioning only once that there were any options other than the lump sum. Their actions are even more unreasonable given that the first and only time they offered to re-mail me my election kit was on November 16, 2017, (*see id.* at KFHP000270: "Do you need us to send you all your paperwork?") despite knowing that I needed it when I called on October 4, 2017. Under these circumstances, Kaiser's arguments that I knowingly made an election and failed to timely revoke are unreasonable and unsupported by the record, and the denial of my request to rescind my election was an abuse of discretion and breach of their fiduciary duty to me as a Plan participant. *See Salomaa*, 642 F.3d at 676; *Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 914 (9th Cir. 1998), amended, 179 F.3d 1252 (9th Cir. 1999).

I was told the way to make an election was to log online. Docket 24-2 at KFHP000219, 221, 223, 229, 235. While I did not have the Benefit Election Kit at the time, review of the Administrative Record in this lawsuit indicates that the only "election" that could be made online was the lump sum; it was not possible to choose anything other than the lump sum (such as monthly benefits) online. *Id. at* KFHP000185 (table in Benefit Election Kit describing options and how to choose: lump sum could be elected online but choosing monthly benefits required speaking with someone at the Pension Election Help Desk). Not only did Kaiser representatives fail to explain what the Benefit Election Kit

options were, they failed to tell me that the *only* option I could do online was the lump sum, and that they (the Pension Election Help Desk) were the ones I would have to speak with if I wanted to choose a monthly benefit payment option. It was unreasonable to tell me to go online and make my "choice" when their own documents state the only choice to elect online was the lump sum.

> 2. <u>Kaiser's Appeal Committee Denial Of My Request To Revoke Is Unreasonable Under Its Own Plan Terms Because It Was Based on a False Finding That I Had a "90-day election period" and Failed to Request Revocation Within The "90 Day Election Period"</u>

Kaiser's Appeal Committee's denial of my claim was based on its factual finding that I had a "90-day election period" that ended on November 1, 2017. KFHP000360. However, according to Kaiser, elections could not even begin until "on or after until August 21, 2017," (*id.* 364), which is only 72 days prior to November 1, 2017. A 90 day period beginning August 21, 2017, would have ended on November 19, 2017.[1] Because I asked to rescind my uninformed election on or before November 16, 2017, (*id.* at 374, 264, 268, 275; *see generally id.* at 245-276), Kaiser's decision denying my request to rescind based on their own unsupported finding that I had a 90-day election period was unreasonable, contrary to their own plan and the record, and an abuse of discretion.

**B. Kaiser Refusal to Explain my Benefit Election Kit Options or Grant Extensions For Disabled Participants Is Unreasonable, Contrary to Its Fiduciary Obligations, and Contrary to Law**

Because I am a Plan Participant, Kaiser had a fiduciary duty to give me "complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *See Farr*, 151 F.3d at 914; ERISA Section 502(a)(3); 29 U.S.C. § 1132(a)(3). As described at length above, Kaiser knew I did not have the Benefit Election Kit and refused to explain it, refused to let me timely speak with a supervisor, and refused to grant me an extension so that I could make an informed decision. Kaiser's actions were unreasonable and contrary to its fiduciary obligations for any plan participant, particularly where its own representative stated that the only reason for not allowing extensions was that it would "cost the company money." Dkt. 24-2 at KFHP000229-230. Morevoer, the fact that Kaiser knew I was disabled and refused to

---

[1] Under Federal Rule of Evidence 201(b), the number of days between calendar dates is a judicially noticeable fact because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See. e.g.*, https://www.timeanddate.com/date/duration.html.

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
CASE NO.: 3:20-cv-00725-JD _____; PAGE 9 OF 10

provide and explanation and/or extension as a reasonable accommodation makes its actions all the more unreasonable and implicates the Americans with Disabilities Act. If the Court does not deny Defendant's motion for judgment and grant relief on my Section 502(a)(1)(B) claim, I respectfully request a finding that Kaiser breached of fiduciary duty under ERISA Section 502(a)(3) and/or grant me leave to amend my pleadings to add an ERISA Section 502(a)(3) claim and/or an Americans With Disabilities Act claim, pursuant to Federal Rule of Civil Procedure 15(a)(2).

### C. Supplementing the Administrative Record

As argued, Kaiser's motion should be denied based on the Administrative Record. However, if the motion is not denied based on the Administrative Record, Kaiser should be ordered to supplement the record with the missing calls from my daughter Chelseay and my or Chelseay's contacts with Melinda that can be inferred from the existing record. *See* Dkt. 24-2 at KFHP000289-972, 298-299, 301, 313, 329, 330, 337); Declaration of Chelseay Javier ¶¶ 1-8. Kaiser should also be ordered to provide me with audio recordings of the calls in a format I can access, as there are a lot of "unintelligible" and "crosstalk" notations in the transcripts (*e.g., id.* at 215, 217-228, 231, 234-238, 240) and Kaiser did not mail the audio to me in a format I can access; my daughter told Kaiser we could not access the recordings in the format they sent and requested they be sent in a format we could access, but they did not do so. *See* Declaration of Chelseay Javier ¶ 9; *see also* Docket 25 (Certificate of Service does not attest to service of audio files).

### CONCLUSION

For the reasons above, I respectfully request that the Court deny Defendant's Motion for Judgment and grant the relief requested in the First Amended Complaint. Dkt. 29 at 8. In the alternative, I respectfully request leave under Federal Rule of Civil Procedure 15(a)(2) to file a Second Amended Complaint that includes an ERISA Section 502(a)(3) claim and/or an Americans With Disabilities Act claim.

Respectfully submitted,

Date: 10/21/21    Sign Name: /s/

Print Name: Lia Javier

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
CASE NO.: 3:20-cv-00725-JD            ; PAGE 10 OF 10