Clarissa A. Kang, No. 210660
Dylan D. Rudolph, No. 278707
TRUCKER ✦ HUSS
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, CA  94111
Telephone:  (415) 788-3111
Facsimile:  (415) 421-2017
E-mail:  ckang@truckerhuss.com
 drudolph@truckerhuss.com

Attorneys for Defendant
KAISER FOUNDATION HEALTH
PLAN, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO)

| | |
|---|---|
| LIA C. JAVIER,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>　　　　　　Defendant. | Case No. 3:20-cv-00725-JD<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT**<br><br>Hearing: Vacated (Dkt. 57)<br>Judge: Hon. James Donato |

# Table of Contents

Page(s)

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 2

    A. Plaintiff has failed to support her only claim for relief. ..................................... 2

    B. Plaintiff's Opposition does not provide any basis to deny KFHP's Motion. .............. 4

        1. The Plan does not provide any exception to its revocation rules based on a participant's disability. ................................................................................. 4

        2. KFHP provided Plaintiff with all necessary information about her benefit options under the Special Distribution Election program. ............................... 5

        3. Participants were not permitted to make elections under the Special Distribution Election program past the deadline. ............................................. 6

        4. There is no evidence in the record that Plaintiff was "steered" toward choosing a lump sum distribution. ..................................................................... 6

    C. KFHP objects to Plaintiff's extra-record evidence, which should be struck, and even if it is allowed it does not support Plaintiff's claim for relief. .................................. 8

    D. Plaintiff may not assert new theories of recovery under ERISA § 502(a)(3) or the Americans with Disabilities Act in response to KFHP's Motion for Judgment. ....... 10

III. CONCLUSION ............................................................................................................. 11

i

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT;
Case No: 3:20-cv-00725-JD

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
  458 F.3d 955 (9th Cir. 2006)................................................................................................8

*Bellah v. American Airlines, Inc.*,
  656 F. Supp. 2d 1207 (E.D. Cal., 2009)................................................................................9

*Bellisario v. Lone Star Life Ins.*,
  871 F. Supp. 374 (C.D. Cal., 1994)......................................................................................9

*Ghazali v. Moran*,
  46 F.3d 52 (9th Cir. 1995)....................................................................................................9

*Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income Prot. Plan*,
  349 F.3d 1098 (9th Cir. 2003)..............................................................................................8

*King v. Atiyeh*,
  814 F.2d 565 (9th Cir.1987).................................................................................................9

*Los Angeles News Service v. CBS Broadcasting, Inc.*,
  305 F.3d 924 (9th Cir. 2002)................................................................................................9

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007)..............................................................................................11

*Orr v. Bank of America*,
  285 F.3d 764 (9th Cir. 2002)................................................................................................9

*Perez v. Vitas Healthcare Corporation*,
  739 Fed. Appx. 405 (9th Cir. 2018)........................................................................2, 3, 6, 10

*Salomaa v. Honda Long Term Disability Plan*,
  642 F.3d 666 (9th Cir. 2011)................................................................................................3

*Tveter v. Martinez*,
  No. CV 09-3331-CJC (DTB), 2009 WL 4931778 (C.D. Cal. 2009) ...................................9

*Wasco Prod., Inc. v. Southwall Techs., Inc.*,
  435 F.3d 989 (9th Cir. 2006)....................................................................................2, 3, 6, 10

*Whitsitt v. City of Tracy*,
  No. 2:10–cv–0528-JAM, 2014 WL 2091363 (E.D. Cal. 2014).............................................9

*Young v. Shoe Palace Corporation*,
    2021 WL 2783719 (S.D. Cal., 2021)......................................................................................11

**Federal Statutes**

**ERISA**
    § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) ..........................................................................5, 6
    § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ............................................................1, 3, 9, 10, 11
    § 502(a)(3), 29 U.S.C. § 1132(a)(3) ......................................................................................2, 10

iii

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT;
Case No: 3:20-cv-00725-JD

## I. INTRODUCTION

Plaintiff's Opposition to KFHP's Motion for Judgment ("Opposition"; Dkt. 58) presents no support for her single claim for relief under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Instead, Plaintiff misrepresents the administrative record of her pre-litigation benefit claim ("Administrative Record"), misreads the relevant law that governs her sole claim for relief, and improperly asserts new theories of recovery in response to KFHP's Motion for Judgment ("Motion"; Dkt. 51). KFHP's Motion should be granted for the following reasons:

- The Committee's denial of Plaintiff's pre-litigation benefit claim was logical, reasonable, and supported by the record because Plaintiff admits that she understood that the deadline to revoke her benefit election was October 31, 2017 and that she failed to revoke her election by that date. (Dkt. 51, p. 11:11-22.)

- KFHP provided Plaintiff with all of the necessary information about her options under the Special Distribution Election program, which Plaintiff admitted she received and reviewed at the time she made the election. (*Id.*, p. 12:6-13.)

- KFHP's obligation to provide Plaintiff with the information relevant to her benefit election, including the information contained in the Benefit Election Kit, was satisfied under the Plan rules when KFHP mailed it to Plaintiff's home address, which Plaintiff does not dispute. (*Id.*, p. 12:13-21.)

- The information contained in the Benefit Election Kit also was provided to Plaintiff online when Plaintiff made her distribution election. (*Id.*, p. 12:9-11.)

- The Plan does not provide any exception to its revocation rules for disability, which Plaintiff fails to dispute, and even if it did, Plaintiff admits that she understood the October 31, 2017 deadline to revoke her election. (FAC, Dkt. 29, ¶ 14; Call Transcript, Dkt. 24-2, p. 25.)

- Plaintiff's novel theory of recovery that the Committee acted unreasonably by applying an election period that was less than 90 days may not be raised for the first time in response to KFHP's Motion. Further, it is based on a misreading of the Plan's rules, which provide the

-1-

election period *ends* on a participant's Benefit Commencement Date (i.e., November 1, 2017). (Dkt. 24-2, pp. 188, 524.) The Plan does not require that a participant be given at least 90 days to revoke an election. (*Id.*) As noted, Plaintiff admits she was aware of the October 31, 2017 deadline to revoke her election and failed to revoke by that date. (Dkt. 51, p. 11:11-22.)

- Plaintiff may not assert new theories of recovery under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) or the Americans with Disabilities Act ("ADA") in response to KFHP's Motion. *See Perez v. Vitas Healthcare Corporation*, 739 Fed. Appx. 405, 407 (9th Cir. 2018) (finding the "district court did not err by refusing to consider [a new theory of recovery] because it was advanced for the first time in opposition to summary judgment"); *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings").

Moreover, as KFHP anticipated in its Motion, Plaintiff has attempted to introduce outside evidence by way of a Declaration of Chelseay Javier ("Javier Dec.") that Plaintiff filed with her Opposition. (Dkt. 58-1.) KFHP objects to the introduction of any purported evidence in the Javier Dec. that is outside of the Administrative Record (Dkt. 24, 24-1, 24-2). Plaintiff also failed to disclose Chelseay Javier as a witness prior to the fact discovery cutoff, and the statements in the Javier Dec. are largely premised on unreliable hearsay. Even if the Court were to consider the Javier Dec. (which it should not), the statements in the Javier Dec. do not support Plaintiff's claim for relief or warrant denial of KFHP's Motion.

For the reasons stated in KFHP's Motion, the Court should grant judgment in KFHP's favor and against Plaintiff on her sole claim for relief.

## II. ARGUMENT

### A. Plaintiff has failed to support her only claim for relief.

As detailed in KFHP's Motion (Dkt. 51), which KFHP incorporates by reference, Plaintiff has failed to support her only claim for relief because she has not demonstrated that the Kaiser Permanente Administrative Committee (the "Committee") abused its discretion when it denied Plaintiff's pre-litigation benefit claim. In Plaintiff's First Amended Complaint ("FAC"), she asserts a single claim

for relief under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). To succeed on that claim, Plaintiff must demonstrate that the Committee's decision to deny her benefit claim was illogical, implausible, or without support in the record. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011). Plaintiff has failed to carry that burden. Most notably, Plaintiff *admits* that she failed to revoke her benefit election by the applicable October 31, 2017 deadline as required under the Plan. The Plan terms do not permit any exception to that deadline, which Plaintiff's Opposition does not dispute.

Moreover, for the first time in this lawsuit, Plaintiff now claims that the Committee's decision to deny her benefits claim was unreasonable because the Committee determined Plaintiff failed to revoke her election during the 90-day election period, and "only 72 days elapsed between the date the Special Distribution elections could begin (August 21, 2017) and November 1, 2017. (Dkt. 58, p. 2:3-8.) First, this novel theory should not be considered because Plaintiff has raised it for the first time in response to KFHP's Motion. *See Perez*, 739 Fed. Appx. at 407; *Wasco*, 435 F.3d at 992. It was never raised before at any point pre-litigation during the claims and appeals process or at any point during this litigation.

Second, this argument lacks merit because it is premised on a misreading of the applicable Plan provisions. Under the Plan's terms, and as provided in the Committee's Appeal Denial letter, the "Benefit Commencement Date" is defined as the "first day of the month in which the Participant may begin receiving payments." (Dkt. 24-2, Section 2.8, p. 524.) For participants who elected to receive a benefit under the Special Distribution Election Program, their Benefit Commencement Date was November 1, 2017. (*Id.*, p. 188.) The Plan further provides that the "Participant may revoke such an election at any time during the Election Period but that **election is irrevocable** when the Election Period expires." (*Id.*, p. 524) (emphasis added). Although the "Election Period" is defined in the Plan as a 90-day period ending on the Participant's Benefit Commencement Date, there is nothing in the Plan providing that a participant *must* be given 90 days to revoke an election. (*Id.*) The relevance of the Election Period, as noted in the Denial Letter, is that it *ends* on the Benefit Commencement Date, which, in this case, was November 1, 2017. (*Id.*, pp. 188, 524.) And, as noted, Plaintiff admits that

-3-

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT;
Case No: 3:20-cv-00725-JD

she was aware of the October 31, 2017 deadline to revoke her election prior to the November 1, 2017 Benefit Commencement Date and she failed to revoke her election by that deadline.

The Committee's decision to deny Plaintiff's claim was consistent with the Plan's terms and was by no means an abuse of discretion.[1]

### B. Plaintiff's Opposition does not provide any basis to deny KFHP's Motion.

Instead of contesting the single dispositive the fact that Plaintiff failed to revoke her benefit election before the October 31 deadline, Plaintiff's Opposition alleges, without support, that KFHP's purported "actions" involving her benefit election and subsequent claim were unreasonable because KFHP allegedly: (1) knew she was disabled at the time she made her election; (2) knew she did not receive the Benefit Election Kit; (3) refused to explain the Benefit Election Kit options over the phone or allow her to "timely" speak to a supervisor; (4) refused to provide her with an extension to make the election; and (5) steered her toward making a lump sum distribution election.[2] (Dkt. 58, pp. 1:23-2:2.) Each of these arguments is insufficient to support Plaintiff's only claim for relief.

#### 1. The Plan does not provide any exception to its revocation rules based on a participant's disability.

KHFP is required to administer the Plan by its terms, and the Plan does not provide for any exception to its rules regarding Plaintiff's deadline to revoke her election. Plaintiff does not dispute this fact. Although KFHP is sensitive to Plaintiff's disability, Plaintiff *admitted* that she understood the October 31, 2017 deadline to revoke her election before the election period expired and failed to revoke her election by that date. (FAC, Dkt. 29, ¶ 14; Call Transcript, Dkt. 24-2, p. 25.) The Committee addressed Plaintiff's disability in its denial letter and correctly concluded that Plaintiff had been provided with all of this information. (*See* Denial Letter, Dkt. 24-2, pp. 360-61.) Nothing

---

[1] Plaintiff also makes the novel claim that the Committee's decision to deny her benefits claim should be reviewed with a heightened degree of skepticism because the Committee operated under a structural conflict of interest. (Dkt. 58, p. 7:1-7.) Plaintiff presents no support that the Committee abused its discretion even under a heightened standard.

[2] Plaintiff also claims that KFHP's decision was unreasonable because KFHP allegedly knew that she could only access the internet over her phone. (Dkt. 58, p. 1:25.) It is unclear why Plaintiff believes this statement supports her claim for relief.

-4-

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT;
Case No: 3:20-cv-00725-JD

in the Administrative Record indicates that Plaintiff has ever had a legal guardian or power of attorney appointed to manage her affairs, and no such information was ever presented to the Committee. The Committee's decision must be made according to the Plan's terms and cannot anticipate each participant's unique underlying circumstances.

Moreover, the Plan does not allow KFHP to *reinstate* Plaintiff into the Plan because she later changed her mind about the lump sum benefit that she chose or regrets that choice. Such an action would require that KFHP breach its fiduciary duties by failing to follow the Plan's revocation rules. *See* ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

### 2. KFHP provided Plaintiff with all necessary information about her benefit options under the Special Distribution Election program.

Under the Plan's terms, any obligation of KFHP to provide Plaintiff with information about the forms of the early distribution, rollover options, and potential tax implications of those decisions was satisfied when it mailed those materials to Plaintiff's home address. (Plan Document, Section 9.7(d), Dkt. 24-2, p. 72.) The Plan provides that "[a]ny communication, statement or notice addressed to a person at such person's last post office address on file with the Administrative Committee shall be binding on such person for any purpose under the Plan." (*Id.*) Plaintiff does not dispute that the Benefit Election Kit and notices regarding the Special Distribution Election were mailed to her home address. (Communication Log, Dkt. 24-2, p. 180; Benefit Election Kit, Dkt. 24-2, p. 184; Notification Postcard, Dkt. 24-2, pp. 182-83; Reminder Postcards, Dkt. 24-2, pp. 208-11; Dkt. 29, p. 1.) KFHP satisfied its obligations to provide Plaintiff with this information upon mailing. Plaintiff also admitted that she received and reviewed the Benefit Election Kit at the time she made the election. (*See* Election Confirmation, Dkt. 24-2, p. 242 [marking "TRUE" that Plaintiff "Confirmed Kit Review"].) Plaintiff's claim that she did not receive this information is, therefore, contradicted by the record.

Contrary to Plaintiff's representations, Plaintiff was not "refused" information when she spoke with call representatives regarding her benefit election in the time leading up to her election. The record shows that Plaintiff spoke with Help Desk representatives prior to making her election on at least three separate calls, each of whom provided her with accurate information about her benefit

options under the Special Distribution Election program. (*See* Call Transcript, Dkt. 24-2, pp. 213, 217, 222, 233, 236.)  Notably, the website on which Plaintiff made her election (which Plaintiff had to access and viewed to make her election in the first place) contained all of the information about her benefit options. (Call Transcript, Dkt. 24-2, pp. 266-67.)  Plaintiff also admits that she was told to review her options online before making her decision. (Dkt. 58, p. 3:24-25.)  And Plaintiff admits that she was specifically told that she **"could cancel by October 31st, which made me feel better because then I would have time to really read up and ask people what I should do."** (*Id.*, p. 3:25-27) (emphasis added).

### 3. Participants were not permitted to make elections under the Special Distribution Election program past the deadline.

The Special Distribution Election program modified the Plan's terms through amendment, and, therefore, became part of the Plan document. (Appendix 9 to Plan Document, Dkt. 24-1, pp. 176-79.)  The Special Election Period under the program required that an election be made "on or after August 21, 2017 and before October 6, 2017." (*Id.*, Section 1.1(c), p. 178.)  There are no exceptions to these rules. (*Id.*)  Allowing an exception for Plaintiff would constitute a fiduciary breach for failure to follow the Plan's rules. (*See* ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).)

### 4. There is no evidence in the record that Plaintiff was "steered" toward choosing a lump sum distribution.

There is no basis in the record to support Plaintiff's claim that she was "steered" toward making a lump sum distribution election.  First, as noted, Plaintiff may not introduce this new theory of recovery in response to KFHP's Motion. *See Perez*, 739 Fed. Appx. at 407; *Wasco*, 435 F.3d at 992. Second, there is no evidence that Plaintiff was "steered" toward a lump sum distribution.  For example, Plaintiff admits that the Help Desk representatives acknowledged that the decision regarding her benefit election was something she should "think about carefully." (Dkt. 58, p. 4:14.)  Although Plaintiff claims that "lump sum" was mentioned multiple times on her telephone calls that she made to the Help Desk prior to her election, she acknowledges that she was told about the other options as well. (*Id.*, p. 4:17-18). In any event, Plaintiff was sent all of the necessary information

about her benefit options, which satisfied any obligation to provide her with that information. (*See* Section II(B)(2), above.)  And, as noted, Plaintiff admitted at the time she made the election that she had received and reviewed the Benefit Election Kit. (Dkt. 24-2, p. 242.)  Having been provided with this information, Plaintiff cannot now claim that the Help Desk representatives should have provided her with additional or different information.

Plaintiff also claims that she was "steered" toward the lump sum election because she was "told the way to make an election was to log online" and that the Benefit Election Kit (which she claims she never received) purportedly provided that only lump sum payments could be elected online. (Dkt. 58, pp. 8:22-9:4.)  This argument misrepresents the record.  The portions of the call transcripts that Plaintiff relies on to support this statement show that Plaintiff was told she could "access" the information online, and that she had the "**option** to log in, print out the retirement kit, **or** complete it out." (Dkt. 24-2, p. 219) (emphasis added).  Plaintiff also cites a portion of the transcript where the representative explicitly stated:

> Once you log on to the website you'll be able to see that information … It will give your – what they're offering, the lump sum amount **as well as your options. You can take it out as a lump sum payment. You can roll it over to an IRA. You can leave it where it's at or you can start to receive monthly payments**.

(*Id.*, p. 223) (emphasis added).  This record shows that Plaintiff was not only *not* steered toward making a lump sum distribution, but she was provided with complete information about her options under the Special Distribution Election program.  Any claim otherwise is disingenuous and contradicted by the record.

Moreover, the Benefit Election Kit provided that Plaintiff could choose to receive a lump sum payment that was estimated to be $32,693.00 at that time. (Dkt. 24-2, p. 188.)  The Benefit Election Kit also informed Plaintiff that she, alternatively, could choose to receive monthly annuity payments under other various forms. (*Id.*) The Benefit Election Kit also informed Plaintiff that she could "do nothing" and "choose to delay your benefit until your Normal Retirement Date to avoid [any] reduction" in her benefit amounts. (*Id.*)  In bold lettering, the Benefit Election Kit informed Plaintiff that, if she did nothing, the current estimate of a single life annuity payable at Plaintiff's normal

-7-

retirement age (i.e. 65 years old) would be $530.30 monthly. (*Id.*)  This amount and the other annuity amounts identified in the Benefit Election Kit were actuarial equivalents of the lump sum distribution amount.  The difference in the amounts is based on the form of payment and the timing of when Plaintiff chose to commence her benefit.  KHFP, therefore, has no financial incentive to "steer" Plaintiff to a lump sum election versus in another form of payment.

### C. KFHP objects to Plaintiff's extra-record evidence, which should be struck, and even if it is allowed it does not support Plaintiff's claim for relief.

Evidence in this lawsuit must be limited to the Administrative Record of Plaintiff's pre-litigation claim that was before the Committee when it rendered its decision. (*See* KFHP's Motion, Section V(B), Dkt. 52, pp. 9-11.)  Plaintiff has never disputed the completeness of the Administrative Record that KFHP filed in this lawsuit. (Dkt. 24, 24-1, 24-2.)[3]  Nevertheless, with her Opposition, Plaintiff submitted a declaration from her daughter, Chelseay Javier ("Javier Dec."). (Dkt. 58-1.)  Any information contained in the Javier Dec. that was not before the Committee when it denied Plaintiff's pre-litigation benefits claim is improper extra-record evidence, which should not be considered by the Court to determine of whether the Committee's decision was an abuse of discretion. *See Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 969-70 (9th Cir. 2006); *Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1110 (9th Cir. 2003) ("under an abuse of discretion standard [the court's] review is limited to the record before the plan administrator").  This purported declaration should be struck.

Additionally, Plaintiff failed to identify Chelseay Javier as a fact witness before the close of fact discovery, and she may not introduce this purported new evidence in response to KFHP's Motion.

---

[3] Plaintiff claims that she "believes" that there are call recordings not in the Administrative Record, including attempted calls that her daughter, Chelseay Javier, tried to make to the Help Desk, and a call with someone named Melinda. (Dkt. 58, p. 6:12-18.)  Plaintiff provides no information as to why these calls support her lawsuit.  Even if the calls occurred, Plaintiff failed to contest the completeness of the Administrative Record by the applicable deadline and may not do so here in response to KFHP's Motion. (Dkt. 51, p. 7:15-17.)  KFHP is not aware of any calls missing from the Administrative Record and produced a full set of call recordings and transcripts to Plaintiff in the course of this litigation.  Plaintiff never previously raised any objections or inquiries as to the completeness of the set of calls KFHP produced to her and subsequently filed, regardless of having ample opportunity to do so. (Dkt. 21, p. 7:13-24.)

(*See* Dkt. 51, p. 10 [describing Plaintiff's failure to disclose any witnesses before the close of fact discovery].)  Plaintiff was required to disclose any witness that she intended to rely on in opposition to KFHP's Motion for Judgment, and Plaintiff's pro se status does not relieve her obligations under the Federal Rules of Civil Procedure.  *See Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure"); *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1987); *Whitsitt v. City of Tracy,* No. 2:10–cv–0528-JAM, 2014 WL 2091363, at *5 (E.D. Cal. 2014); *Tveter v. Martinez,* No. CV 09-3331-CJC (DTB), 2009 WL 4931778, at *2 (C.D. Cal. 2009).

Even if the Court were to consider the Javier Dec. (which it should not), this declaration is still largely based on unreliable hearsay and is not the best evidence of the circumstances surrounding Plaintiff's benefit claim.  Any such hearsay should be excluded in the context of a dispositive motion. *See Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002) (affirming the entry of summary judgment against a plaintiff based on the district court's finding "that most of the evidence submitted … in support of her opposition to [the defendant's] motion for summary judgment was inadmissible due to inadequate authentication and hearsay"); *Bellah v. American Airlines, Inc.*, 656 F. Supp. 2d 1207, 1208 (E.D. Cal., 2009) (sustaining hearsay objections to declarations submitted in support of a summary judgment motion involving an ERISA § 502(a)(1)(B) claim because they were "rife with hearsay and statements unsupported by proper foundation" and that the "court relies only on admissible evidence"); *Bellisario v. Lone Star Life Ins.*, 871 F. Supp. 374, 380 (C.D. Cal., 1994) (sustaining hearsay objections to documents submitted with a motion for summary adjudication of an ERISA § 502(a)(1)(B) claim).  Further, these statements should be disregarded because they are not the best evidence of the circumstances surrounding Plaintiff's election. *See Los Angeles News Service v. CBS Broadcasting, Inc.,* 305 F.3d 924, 935–36 (9th Cir. 2002) (holding that the district court did not abuse its discretion in excluding hearsay evidence and evidence that violated the best evidence rule in deciding a summary judgment motion).  The best evidence of the circumstances surrounding Plaintiff's claim is the Administrative Record. (Dkt. 24-2.)

Even if it were considered, the Javier Dec. is still unhelpful to Plaintiff's claim. Ms. Javier

-9-

may have personal knowledge of the conversations that she had with the Help Desk and Retirement Center, but her declaration merely provides her memory of those conversations. (Dkt. 52-2, p. 3.) The best evidence of the content of those telephone calls are the transcripts of the calls, all of which are included in the Administrative Record. (Dkt. 24-2.) Ultimately, none of the statements in Javier Dec. dispute the fact that Plaintiff was aware of the October 31, 2017 deadline to revoke her benefit election, she understood that deadline, and Plaintiff failed to revoke her election prior to that deadline.[4]

### D. Plaintiff may not assert new theories of recovery under ERISA § 502(a)(3) or the Americans with Disabilities Act in response to KFHP's Motion for Judgment.

Plaintiff may not introduce new claims or theories of recovery in response to KFHP's Motion, and the Court should disregard Plaintiff's Opposition to the extent she attempts to present allegations related to claims of fiduciary breach under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) or the ADA. *See Perez*, 739 Fed. Appx. at 407; *Wasco*, 435 F.3d at 992. Plaintiff's sole claim for relief is asserted under ERISA § 502(a)(1)(B), and the determinative issue for this claim is whether the Committee abused its discretion when it denied Plaintiff's pre-litigation benefits claim. Allegations of fiduciary breach are irrelevant. Nevertheless, as noted, Plaintiff's claims that KFHP breached any fiduciary duties it owed to her by failing to provide the required information about her benefit options are without merit because Plaintiff cannot show that KFHP breached any fiduciary duties owed to Plaintiff based on alleged failure to provide information. (*See* Section II(B)(2), above.)

Plaintiff's allegations regarding the ADA are entirely misplaced. Again, Plaintiff may not introduce new theories of liability in response to KFHP's Motion. *See Perez*, 739 Fed. Appx. at 407;

---

[4] Plaintiff claims that she was unable to access the audio recordings of calls that she and her daughter made regarding her benefit election, which KFHP produced to Plaintiff with the Administrative Record in this lawsuit. (Dkt. 58, p. 10:12-18.) Notably, Plaintiff's daughter previously sent KFHP's counsel an email in October 2020 stating that she was "listening" to the phone call recordings, which contradicts this statement that Plaintiff was unable to access the format of the recordings. KFHP will submit a copy of that email to the Court if the Court requests. Moreover, the transcripts of the call recordings that were produced with the Administrative Record are official transcripts prepared by a third-party transcription service. (Dkt. 24-2, pp. 212-241; 245-341.) In any event, as noted, Plaintiff had the opportunity to contest the completeness of the Administrative Record earlier in this lawsuit and failed to do so. (Dkt. 21, p. 7:13-24.)

-10-

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT;
Case No: 3:20-cv-00725-JD

*Wasco*, 435 F.3d at 992. Even if she could, Plaintiff misreads the relief available under the ADA. To state a claim under the ADA, "a plaintiff must show that (1) he or she has a disability within the meaning of the ADA; (2) the defendant is a private entity that operates, leases, or owns a place of public accommodation; and (3) he or she was denied 'public accommodations by the defendant because of his or her disability.'" *Young v. Shoe Palace Corporation*, 2021 WL 2783719, at *3 (S.D. Cal., 2021) (citing *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007)). Assuming Plaintiff's disability falls under ADA protection, an ADA claim cannot be asserted against an employee benefit plan, like the Plan, based on alleged lack of access to information. A violation of the ADA involves the denial of "access to the goods and services of a physical location." *Id.* Such a claim is simply inapplicable here.

Finally, the Court previously allowed Plaintiff to amend her complaint consistent with its order granting KFHP's Motion to Dismiss. (Dkt. 26.) Plaintiff was not allowed to "add any new claims or parties without the Court's prior approval" (*id.*), and no approval was ever requested or provided. Moreover, the Court's Scheduling Order issued in April 2021 noted that the option to add parties or amend her pleadings was "Closed." (Dkt. 43.) Plaintiff may not assert new claims at this stage of the case or have a "do over" under new theories of recovery if she does not prevail under her current claims. Plaintiff's sole claim for relief is asserted under ERISA § 502(a)(1)(B), that claim is unsupported, and judgment should be entered against Plaintiff and in favor of KFHP on Plaintiff's sole claim for relief.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant KFHP's Motion for Judgment, and enter judgment in KFHP's favor and against Plaintiff on Plaintiff's single claim for relief.

DATED: November 5, 2021                               TRUCKER ✦ HUSS, APC

                                              By: *Dylan D. Rudolph*
                                                  Clarissa A. Kang
                                                  Dylan D. Rudolph
                                                  Attorneys for Defendant
                                                  KAISER FOUNDATION HEALTH
                                                  PLAN, INC.

-11-

# CERTIFICATE OF SERVICE

I, Michelle Ayala, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the within action. I am employed in the City and County of San Francisco, California. My business address is One Embarcadero Center, 12th Floor, San Francisco, California 94111. On the date indicated below, I served the within:

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT**

to the addressee(s) and in the manner indicated below:

> Lia C. Javier
> Plaintiff
> 805 Fieldstone Court
> Brentwood, CA 94513
> Telephone: (510) 701-1771
> Email: shecancer777@yahoo.com

☑ **BY ELECTRONIC MAIL:** Pursuant to the Parties' agreement to electronic service, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by electronic mail to the person[s] at the email address[es] indicated.

I certify under penalty of perjury that the foregoing is true and correct, and that this Certificate of Service was executed by me on November 5, 2021, at San Francisco, California.

/s/ *Michelle Ayala*
Michelle Ayala